Evan R. Fleck
Andrew C. Harmeyer
Bryan V. Uelk
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

Andrew M. Leblanc
Erin E. Dexter
**MILBANK LLP**
1850 K St. NW, Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile: (202) 263-7586

-and-

Gregory A. Bray
**MILBANK LLP**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Proposed Counsel for Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| GOL LINHAS AÉREAS INTELIGENTES S.A., *et al.*,[1] | : | Case No. 24-10118 (MG) |
| Debtors. | : | (Joint Administration Requested) |

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A). The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

**DEBTORS' MOTION
FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) AUTHORIZING
THEM TO (A) ASSUME CERTAIN CRITICAL
AIRLINE AGREEMENTS, (B) HONOR PREPETITION
OBLIGATIONS RELATED THERETO, AND (C) ENTER
INTO NEW CRITICAL AIRLINE AGREEMENTS; (II) MODIFYING
THE AUTOMATIC STAY; AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") respectfully state as follows in support of this motion (the "Motion"):

## RELIEF REQUESTED

1. The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and the "Final Order"), (i) authorizing, but not directing, the Debtors to (a) assume certain Critical Airline Agreements (as defined herein), (b) satisfy certain prepetition obligations related thereto, and (c) enter into new Critical Airline Agreements; (ii) modifying the automatic stay to effectuate the foregoing; and (iii) granting related relief. In addition, the Debtors request that this Court schedule a final hearing (the "Final Hearing") within approximately twenty-five days from the date hereof (the "Petition Date") to consider approval of the Motion on a final basis.

## JURISDICTION

2. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.

3. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are sections 105(a), 362, 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code").

## STATUS OF THE CASE

6. On the Petition Date, each of the Debtors filed a voluntary petition for relief under the Bankruptcy Code with this Court.

7. Each Debtor is continuing to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8. No creditors' committee has yet been appointed in these cases (the "Chapter 11 Cases"). No trustee or examiner has been appointed.

9. The Debtors have filed a motion requesting joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules").

## BACKGROUND

10. The Debtors (collectively, "GOL" or the "Company") are the leading low-cost airline in South America and one of Brazil's largest domestic carriers. Having pioneered the low-cost carrier model in South America upon its founding in 2000, GOL has grown to include over 14,000 employees, a fleet of 141 aircraft, and an extensive flight network focused on routes within Brazil and South America more broadly. GOL's flight network also includes destinations in the United States and the Caribbean.

11. Despite a viable operating business, the Company has faced financial challenges brought on by the lingering effects of the COVID-19 pandemic, during which GOL, like all airlines globally, suffered unprecedented disruption to its business. The substantial decline in air travel demand, resulting operational impediments, and dramatic reduction in revenue and cash

generation during the pandemic years led to a significant deterioration of the Company's balance sheet and liquidity.

12. To address these financial challenges, the Company has executed certain transactions and undertaken a number of other efforts, many of which have provided temporary relief, much-needed liquidity at key points in time, and substantial additional benefits. Several post-pandemic factors, however, have nonetheless continued to cause liquidity shortages for GOL, including elevated fuel prices, the consistently low valuation of the Brazilian *real* (BRL) against the U.S. dollar and, more recently, delays in the delivery of new aircraft. The delays in new aircraft deliveries in particular have led to a significant increase in GOL's operating costs and maintenance expenditures which, in turn, have reduced operating capacity. These temporary operational limitations have significantly hampered the Company's ability to generate cash, thereby leading to further operational challenges.

13. As a result, GOL commenced these Chapter 11 Cases to deleverage its balance sheet, improve liquidity, obtain an organized and efficient forum in which to reach agreements with key stakeholders, and emerge as a stronger enterprise.

14. Further information regarding GOL's business, capital structure, the circumstances leading to the commencement of these Chapter 11 Cases, and the facts and circumstances supporting the relief requested in this Motion is set forth in the *Declaration of Joseph W. Bliley in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), which is being filed contemporaneously herewith and is incorporated by reference herein.

## BACKGROUND RELEVANT TO THE MOTION

### A. Interline Agreements

15. The Debtors are party to several agreements with or administered by the International Air Transport Association ("IATA"), including the IATA Membership Agreement and IATA Multilateral Interline Traffic Agreements (collectively, the "IATA Agreements"), as well as approximately forty bilateral interline and electronic ticketing agreements with other airlines (the "Bilateral Agreements," and collectively with the IATA Agreements, the "Interline Agreements"). A non-exclusive list of the Interline Agreements is attached hereto as **Exhibit C**.[2] As noted in Exhibit C, certain agreements allow for electronic ticketing only, while others allow for full through check-in functionality,[3] and certain interline agreements include a special prorate agreement ("SPA") regarding fares and pricing.

16. The Interline Agreements are an essential part of the Debtors' transportation services. These agreements facilitate cooperation among airlines with respect to critical activities such as making reservations and transferring passengers, freight, baggage, and mail between airlines. Most major airlines participate in some form of interline agreements because of the operating efficiencies obtained through their usage.

17. Pursuant to the Interline Agreements, airlines agree to accept each other's tickets for transportation over the other airline's systems. The Interline Agreements also facilitate the purchase of tickets through travel agents and enable travel agents and airlines to issue tickets with itineraries that involve more than one airline. If an Interline Agreement is not in place, a traveler buying a ticket directly from an airline will be issued a ticket only for those segments of

---

[2] The Debtors are seeking relief with respect to all Interline Agreements, regardless of whether a particular agreement is listed in Exhibit C.

[3] Electronic ticketing is the standard process for such agreements. Through-ticketing allows for passengers to check in for both legs of a flight at one time (rather than separately) and check their luggage into the first flight without having to recheck it for the second flight.

the itinerary that involve that airline, even though the desired itinerary might necessitate the use of a second airline. Similarly, if the traveler seeks to buy a ticket from a travel agent and no interline agreement is in place, the travel agent will be required to write separate tickets for each segment that involves distinct airlines, thus making it significantly less convenient for the travel agent to sell flights on an airline that is not part of the interline system.

18. Certain of the Interline Agreements include cover through check-in procedures, which allow passengers' luggage to be transferred from one airline to another. Requiring a passenger to retrieve his or her luggage and take it to the other airline would be an inefficient and time-consuming process. The Interline Agreements permit airlines to accomplish the transfer of luggage without unduly burdening passengers.

19. In addition, airlines agree to provide cargo services for one another under the Interline Agreements. These arrangements obviate extraneous cargo handling and the need to have separate personnel and facilities devoted to cargo at each airport to which a carrier flies.

20. Some of the Interline Agreements terminate every year unless renewed by both parties and can be terminated by either party on thirty days' written notice. Certain other of the Debtors' Interline Agreements have an indefinite term but can be terminated by either party on thirty days' written notice.

21. The Debtors' continued ability to enforce and perform under the Interline Agreements is critical to the Debtors' operation of their business. The Debtors cannot afford the risk of any of the counterparties to the Interline Agreements questioning the Debtors' ability to continue participating in the Interline Agreements. Even the slightest interruption in the Debtors' ability to seamlessly integrate their ticketing, passenger, cargo, and other services with those of other airlines could be disastrous to the Debtors' businesses and cripple their

opportunity to reorganize. Without these agreements and relationships, the Debtors' passengers and airline partners would be alienated, and the Debtor would be deprived of much needed future cash streams.

**B. Codeshare Agreements**

22. The Debtors have signed codeshare agreements with fourteen other airlines (the "Codeshare Agreements"). As a part of the Codeshare Agreements, these airlines offer transportation of passengers under the Debtors' flight designator codes, and under which the Debtors, in certain circumstances, carry passengers under other airlines' designator codes. Pursuant to a Codeshare Agreement, a marketing airline markets and sells air transportation to its passengers in conjunction with the scheduled services provided by another airline. The Debtors are also party to two-way Codeshare Agreements whereby tickets may be sold by both airlines party to the agreement. The Debtors' codeshare network affords customers access to more than 130 destinations and nearly 260 additional routes that complement the network operated directly by the Debtors. A non-exclusive list of the Codeshare Agreements is attached hereto as **Exhibit D**.[4]

23. Maintaining a strong relationship with the counterparties to the Codeshare Agreements is vital to the Debtors' operations because those relationships enable the traveling public to make convenient connections at airports served by the Debtors for, among other things, various destinations. Without these connections, the size and scope of the Debtors' network would be significantly reduced, and the Debtors would be unable to maintain competitive levels of passengers and cargo traffic.

[4] The Debtors are seeking relief with respect to all Codeshare Agreements, regardless of whether a particular agreement is listed in Exhibit D.

### C. Frequent Flyer Program Agreements

24. The Debtors also have frequent flyer program agreements (the "Frequent Flyer Program Agreements") with various airlines that are settled through Clearinghouses (as defined herein) or directly with the counterparty airline. Pursuant to the Frequent Flyer Program Agreements, each airline agrees to offer the members of its frequent flyer program the opportunity to accrue benefits and sometimes to utilize program awards for travel on the other airlines' flights. A non-exclusive list of the Frequent Flyer Program Agreements is attached hereto as **Exhibit E**.[5]

25. The Debtors have Frequent Flyer Program Agreements with several airlines, including, but not limited to, American Airlines, Air France, KLM, Air Canada, and Avianca. The Frequent Flyer Program Agreements are important to the Debtors' operations because they broaden the Debtors' network of service capabilities by providing customers with the opportunity to earn frequent flyer miles on multiple airlines' flights.

### D. The Airline Clearinghouse Agreements

26. The Debtors settle their mutual payment obligations arising under many of their agreements with other airlines and various other airline-associated companies, including the Interline Agreements, Codeshare Agreements, and Frequent Flyer Program Agreements, through the IATA Clearinghouse and the Brazilian National Union of Airlines (SNEA) (collectively, the "Clearinghouses"). The Debtors' participation in the Clearinghouses is governed by agreements with the Clearinghouses, and agreements through which the Debtors provide invoicing and other billing related information to the Clearinghouses (collectively, the

[5] The Debtors are seeking relief with respect to all Frequent Flyer Program Agreements, regardless of whether a particular agreement is listed in Exhibit E.

"Airline Clearinghouse Agreements"). A non-exclusive list of the Airline Clearinghouse Agreements is attached hereto as **Exhibit F**.[6]

27. The settlements through the Clearinghouses include amounts related to passenger, airfreight, frequent flyer program, Universal Air Travel Plan ("UATP"),[7] and non-transportation billings. As participants in the Clearinghouses, the Debtors settle obligations with other airlines through the Clearinghouses.

28. On a weekly basis, the Clearinghouses aggregate the amounts invoiced by other airlines to the Debtors, and by the Debtors to other airlines, and calculate a net balance. For any given period, the Debtors may be required to make net payments to the other participants, or they may be entitled to receive net payments from the other participants. Settlements among Clearinghouse participants for billings attributable to transactions in any given period normally occur within eight to ten business days after the close of the transaction period. As a result, billings that have been settled through the Clearinghouses remain subject to audit and adjustments under rejection/chargeback, rebilling, and dispute resolution procedures set forth in the applicable Clearinghouse rules.

29. For 2023, the Debtors made cumulative net settlement payments of approximately $103 million through the Clearinghouses.[8] The Airline Clearinghouse Agreements are critical to the Debtors' business operations. The Debtors' inability to preserve the Airline Clearinghouse Agreements would make it impossible for the Debtors to perform under other agreements described herein and provide necessary services to their customers.

---

6 The Debtors are seeking relief with respect to all Airline Clearinghouse Agreements, regardless of whether a particular agreement is listed in Exhibit F.

7 UATP is a global payment network for the travel industry.

8 Unless stated otherwise herein, all amounts included herein are listed in U.S. dollars, and Brazilian *reals* have been converted to U.S. dollars using an exchange rate of 1 USD: 4.97 BRL on January 23, 2024.

### E. Other Airline and Industry Agreements

30. The Debtors are party to various other agreements with other airlines including reprotection agreements, lounge access agreements, and agreements regarding maintenance and other services with other airlines (collectively, the "Other Airline Agreements"). Certain of these agreements allow the Debtors, among other things, to smoothly operate in areas where they do not otherwise have their own substantial support presence. For example, under the reprotection agreements, the Debtors and other airlines may accept passengers from other airlines when their flights have been delayed or cancelled. As such, the Other Airline Agreements are crucial to the Debtors' continued business operations.

31. In addition, the Debtors are party to industry-standard fare publication, booking, and other industry agreements, such as agreements with the Airline Tariff Publishing Company, Billing and Settlement Plan Agreements ("BSPs"), and certain other agreements (the "Industry Agreements," together with the Other Airline Agreements, the "Other Airline and Industry Agreements," and together with the Interline Agreements, Codeshare Agreements, Frequent Flyer Program Agreements, and Airline Clearinghouse Agreements, the "Critical Airline Agreements"). The Industry Agreements facilitate transactions amongst airlines and also provide for fare publication, appointment of travel agencies, and foreign currency clearing procedures, among other things. As such, the Debtors' ability to continue performing under the Industry Agreements is important to their operations.

32. A non-exclusive list of the Other Airline and Industry Agreements is attached hereto as **Exhibit G**.[9]

[9] The Debtors are seeking relief with respect to all Other Airline and Industry Agreements, regardless of whether a particular agreement is listed in Exhibit F.

## BASIS FOR RELIEF

33. The worldwide airline business is an interdependent industry based upon a vast global network of agreements that govern virtually all aspects of air travel and airline operations. Without agreements for coordination between airlines and airline services, efficient service by domestic and international airlines would be virtually impossible. Any interruption or cessation of the Debtors' ability to perform under the Critical Airline Agreements would precipitate a disruption in performance and thus could have a material adverse effect on the Debtors' business and their prospects for successful reorganization.

### A. The Debtors Should Be Authorized to Assume Certain Critical Airline Agreements.

34. By this Motion, the Debtors seek authority, at their discretion, to assume the Critical Airline Agreements that the Debtors deem to be in the best interests of their estates. As a practical matter, there are no competing vendors that could provide the Debtors with a substitute for the vital services they receive under the Critical Airline Agreements. The Critical Airline Agreements are crucial to the Debtors' operations, and the non-renewal or termination of these agreements would result in severe disruptions to the Debtors' operations.

35. Section 365(a) of the Bankruptcy Code provides that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The United States Court of Appeals for the Second Circuit has stated that "[t]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting 2 Collier on Bankruptcy ¶ 365.01[1] (15th ed. 1993)).

36. In considering a motion to assume or reject an executory contract or unexpired lease, the court "should examine a contract and the surrounding circumstances and apply its best 'business judgment' to determine if [the contract or lease] would be beneficial or burdensome to the estate." *Orion*, 4 F.3d at 1099.

37. A debtor's decision to assume an executory contract based on its business judgment will generally not be disturbed "absent a showing of bad faith or abuse of business discretion." *In re Chipwich, Inc.*, 54 B.R. 427, 430–31 (Bankr. S.D.N.Y. 1985); *see also In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994), *aff'd, John Forsyth Co., Inc. v. G Licensing, Ltd.*, 187 B.R. 111 (S.D.N.Y. 1995). Upon finding that the debtor has exercised its sound business judgment in determining that the assumption of an agreement is in the best interests of the debtor, its creditors and all parties in interest, the court should approve the assumption under section 365(a) of the Bankruptcy Code. *See, e.g.*, *In re Gucci*, 193 B.R. 411, 417 (S.D.N.Y. 1996); *In re Child World, Inc.*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992).

38. As demonstrated above, the assumption, in the Debtors' discretion, of many of the Critical Airline Agreements is not only advantageous to the Debtors; it is also critical to their continued business operations. Accordingly, the Debtors have satisfied the business judgment test.

39. The Debtors' right to assume an executory contract is expressly conditioned under section 365(b) of the Bankruptcy Code upon the Debtors' (i) duty to cure any monetary defaults thereunder and (ii) providing adequate assurance of future performance. 11 U.S.C. § 365(b). These conditions are intended to provide protections for the non-debtor counterparties.

40. The Debtors are current under the Critical Airline Agreements (*i.e.*, no amounts are presently due and payable thereunder). Accordingly, there are no monetary defaults to cure as a precondition to their assumption.

41. In addition, the Debtors' request to assume certain of the Critical Airline Agreements is conditioned upon this Court's determination that no deposit or other form of security will be required (other than deposits, if any, acceptable to the Debtors).[10] Thus, there is little or no downside to the Debtors' assumption of these key business contracts at this time. The Critical Airline Agreements do not impose any additional economic burdens on the Debtors' estates. The Critical Airline Agreements can either be terminated on relatively short notice, or their usage can be significantly reduced through airline inventory management.

42. Requests to assume interline, industry, and/or clearinghouse agreements have been granted by courts in this District in large chapter 11 cases involving airlines. *See, e.g.*, *In re SAS AB,* No. 22-10925 (MEW) (Bankr. S.D.N.Y. Aug. 4. 2022) [ECF No. 172] (final order granting authority to assume critical airline agreements); *In re Grupo Aeroméxico, S.A.B. de C.V.*, No. 20-11563 (SCC) (Bankr. S.D.N.Y. Aug. 20, 2020) [ECF No. 307] (same); *In re LATAM Airlines Grp. S.A.,* No. 20-11254 (JLG) (Bankr. S.D.N.Y July 13, 2020) [ECF No. 543] (same); *In re Avianca Holdings S.A.*, No. 20-11133 (MG) (Bankr. S.D.N.Y. June 9, 2020) [ECF No. 257] (same); *In re Republic Airways Holdings Inc.*, No. 16-10429 (SHL) (Bankr. S.D.N.Y. Mar. 23, 2016) [ECF No. 202] (same). Accordingly, this Court should authorize the Debtors to assume, at their discretion, certain Critical Airline Agreements.

[10] To the extent any of these agreements provide for the posting of a deposit or another security at the discretion of the counterparty, any demand for a "discretionary" deposit at this time could only be seen as an *ipso facto* financial condition demand, which would necessarily be deemed unenforceable pursuant to sections 365(e)(1)(A) and 365(b)(2)(A) of the Bankruptcy Code.

**B. The Debtors Should be Authorized to Perform All Obligations Under Critical Airline Agreements.**

43. The Debtors also seek authority, but not direction, to perform all obligations arising under the Critical Airline Agreements, including making all payments owing to other airlines to the extent such obligations have historically been settled through the Clearinghouses and certain other prepetition payments under the enumerated agreements as described herein. The Court has authority, pursuant to sections 363(b) and 105(a) of the Bankruptcy Code and the "necessity of payment doctrine" established by case law, to authorize the Debtors to perform all such obligations and make any related payments.

44. The bankruptcy court may authorize a debtor-in-possession to utilize property of the estate under section 363 of the Bankruptcy Code. *See* 11 U.S.C. § 363. In determining whether to approve the debtor's use of estate property, a court must find that a "good business reason" exists for the use of such assets. *See, e.g.*, *Off. Comm. of Unsecured Creditors v. Enron Corp. (In re Enron Corp.)*, 335 B.R. 22, 27–28 (S.D.N.Y. 2005) (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)). Here, section 105(a) provides a statutory basis for the Court to permit the use of estate funds under section 363 to authorize payment of a prepetition obligation, outside a plan of reorganization, when the payment is essential to the continued operation of the debtor's business. *In re Boston & Maine Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) ("[C]ourts have used their equitable power under section 105(a) . . . to authorize the payment of pre-petition claims when such payment is deemed necessary to the survival of a debtor in a chapter 11 reorganization."); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (reasoning that because the debtor-in-possession has

fiduciary duties it must meet, it is logical that the bankruptcy court may "authorize satisfaction of the pre-petition claim in aid of preservation or enhancement of the estate" under section 105(a)).

45. In addition, section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); *see also, e.g.*, *Schwartz v. Aquatic Dev. Grp., Inc. (In re Aquatic Dev. Grp., Inc.)*, 352 F.3d 671, 680 (2d Cir. 2003) (Straub, J., concurring) ("[I]t is axiomatic that bankruptcy courts are 'courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process.'") (citations omitted); *Off. Comm. of Unsecured Creditors v. PSS S.S. Co., Inc. (In re Prudential Lines, Inc.)*, 928 F.2d 565, 574 (2d Cir. 1991) ("This provision has been construed liberally to enjoin [actions] that might impede the reorganization process.") (quoting *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89, 93 (2d Cir. 1988). Such orders are appropriate where they are essential to the debtor's reorganization efforts and do not pose a burden on the debtor's creditors. *See U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. (In re U.S. Lines, Inc.)*, 197 F.3d 631, 640 (2d Cir. 1999); *Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process.").

46. Pursuant to a bankruptcy court's general equitable powers, as codified in section 105(a) of the Bankruptcy Code, courts have authorized the payment of prepetition debt when necessary to help preserve the debtor's operations and important business relationships. *See e.g.*, *GLM DFW, Inc. v. Windstream Holdings Inc. (In re Windstream Holdings, Inc.)*, 614 B.R. 441, 456–57 (S.D.N.Y. 2020) (citing *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr.

S.D.N.Y 1989)) (recognizing the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment "is essential to the continued operation of the debtor"); *In re Chateaugay Corp.*, 80 B.R. 279 (S.D.N.Y. 1987) (approving bankruptcy court order authorizing payment of prepetition wages, salaries, expenses and benefits), *appeal dism'd*, 838 F.2d 59 (2d Cir. 1988).

47. If the Debtors do not have the discretion to continue to perform, and satisfy related prepetition obligations, if any, under the Critical Airline Agreements, then (i) their future revenues could suffer; (ii) their ability to serve their customers' needs and continue to operate within the airline industry and, thus, reorganize, would be in jeopardy; and (iii) the other airlines may not have any incentive to continue to provide services to the Debtors or may attempt unilateral self-help measures, including setoff or recoupment, to protect their interests. Regardless of whether such actions are legally proper, any disruption to the Debtors' business, even for a short time, would be harmful to the necessary goodwill of their customers.

48. In addition, due to the manner in which transactions under the Critical Airline Agreements are reconciled, the Debtors may not immediately know the exact nature or accuracy of the obligation they are satisfying when making a payment. Accordingly, all settlements or payments made under any order authorizing the relief sought in this Motion should be subject to the normal payment reconciliation process, as requested herein. In addition, nothing in this Motion shall be deemed a waiver of the Debtors' ability to contest all or a portion of a settlement or payment in connection with such reconciliation process on any grounds, including that the settlement or payment of an obligation relating to the prepetition period was not identified by the Debtors, in their discretion, as an item to be paid under the authority of this Motion.

49. The Debtors seek authority, but not the direction, to pay prepetition obligations that have arisen under the Critical Airline Agreements. The Debtors estimate that, as of the Petition Date, they owe approximately $1 million on a net basis under the Critical Airline Agreements that are settled through the Clearinghouses (the "Critical Airline Obligations").

50. The Debtors seek this authority to pay the Critical Airline Obligations to ensure that their transition into chapter 11 does not disrupt their customers' travel experience, which depends in many instances on the cooperation between and among the airlines under all of the foregoing agreements.

51. Courts in this District have permitted payment of prepetition obligations relating to clearinghouse agreements in other airline chapter 11 cases. *See, e.g.*, *SAS*, No. 22-10925 (order granting authority to honor critical airline agreements and prepetition obligations related thereto); *Aeroméxico*, No. 20-11563 (same); *LATAM*, No. 20-11254 (same); *Avianca*, No. 20-11133 (same); *Republic Airways*, No. 16-10429 (same). As such, this Court should grant the relief requested herein.

**C. The Debtors Are Authorized to Enter into New Critical Airline Agreements in the Ordinary Course of Business.**

52. Section 363(c)(1) of the Bankruptcy Code authorizes a debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Entering into Critical Airline Agreements is within the ordinary course of the Debtors' business and therefore authorized. However, the Debtors are requesting the relief herein out of an abundance of caution.

**D. The Court Should Modify the Automatic Stay to Permit Routine Billings, Settlements, and Adjustments.**

53. Certain of the Critical Airline Agreements provide for an ongoing mutual billing, settlement, and adjustment process. The Debtors submit that modification of the automatic stay,

to the extent necessary to enable the airline counterparties to those agreements to participate in routine billings, settlements, and adjustments with respect to such settlements in accordance with the terms of such agreements, will aid in effectuating the relief requested and is appropriate and warranted as it will ensure that the Debtors' business will operate smoothly and on an uninterrupted basis.

54. Comparable relief has been granted in many prior airline-related chapter 11 cases in this District. *See, e.g.*, *SAS*, No. 22-20925 (order modifying the automatic stay to permit critical airline agreement counterparties to participate in routine billings, settlements, and adjustments); *Aeroméxico*, No. 20-11563 (same); *LATAM*, No. 20-11254 (same); *Avianca*, No. 20-11133 (same); *Republic Airways*, No. 16-10429 (same).

**E. The Court Should Authorize and Direct Banks and Other Financial Institutions to Honor and Pay Checks Issued and Make Other Transfers on Account of the Critical Airline Agreements.**

55. The Debtors request that the Court authorize and direct the Debtors' banks and other financial institutions at which the Debtors maintain disbursement accounts (the "Disbursement Banks") at the Debtors' direction, to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks drawn or electronic fund transfers requested or to be requested by the Debtors relating to any payments or settlements under the Critical Airline Agreements, whether those checks were presented prior to or after the Petition Date. The Debtors also seek authority to issue new postpetition checks, or effect new electronic fund transfers, on account of such obligations to replace any prepetition checks or electronic fund transfer requests that may be lost, dishonored, or rejected as a result of the commencement of the Debtors' Chapter 11 Cases.

## RESERVATION OF RIGHTS

56. Nothing contained herein is intended to be or shall be construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' right to dispute any claim; or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code, except as specified herein. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be, and should not be construed as, an admission to the validity of any claim or waiver of the Debtors' rights to dispute such claim subsequently.

## BANKRUPTCY RULE 6003 IS SATISFIED AND REQUEST FOR WAIVER OF STAY

57. The Debtors further submit that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein and in the First Day Declaration, Bankruptcy Rule 6003 has been satisfied, and the relief requested herein should be granted.

58. Bankruptcy Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001.

Fed. R. Bankr. P. 6003.

59. As described above, if the Debtors are not permitted to assume and/or honor their prepetition Critical Airline Agreement obligations on an uninterrupted basis, it would cause immediate and irreparable harm by disrupting the necessary operational arrangements between the Debtors and the other airline participants. All of the foregoing requires continued recourse

by the Debtors to the agreements, relationships, and programs as to which relief is requested herein, plainly making such relief "necessary to avoid immediate and irreparable harm" to the Debtors' businesses and thereby satisfying Bankruptcy Rule 6003(b).

60. The Debtors further seek a waiver of any stay of the effectiveness of an order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, the relief requested herein is essential to prevent immediate and irreparable damage to the Debtors' operations, going concern value, and their efforts to pursue a resolution to these Chapter 11 Cases.

61. Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rules 6003 and 6004(h).

**NOTICE**

62. The Debtors will provide notice of this Motion to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the U.S. Trustee for the Southern District of New York; (b) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (c) the holders of the five (5) largest secured claims against the Debtors (on a consolidated basis); (d) the Office of the U.S. Attorney for the Southern District of New York; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) the Federal Aviation Administration; (h) all parties to the Critical Airline Agreements; (i) the Disbursement Banks; and (j) those parties requesting notice pursuant to Bankruptcy Rule 2002.

63. In light of the nature of the relief requested, the Debtors submit that no further notice need be given.

## NO PRIOR REQUEST

64. No prior request for the relief sought in this Motion has been made to this or to any other court.

[*Remainder of page intentionally left blank*]

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of the Interim Order and Final Order granting the relief requested herein and granting such other relief as is just and proper.

Dated: New York, New York
January 25, 2024

**MILBANK LLP**

*/s/ Evan R. Fleck*
Evan R. Fleck
Andrew C. Harmeyer
Bryan V. Uelk
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

-and-

Andrew M. Leblanc
Erin E. Dexter
**MILBANK LLP**
1850 K St NW, Suite 1100,
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile: (202) 263-7586

-and-

Gregory A. Bray
**MILBANK LLP**
2029 Century Park East
33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Proposed Counsel for Debtors and Debtors-in-Possession*

# EXHIBIT A

**Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| GOL LINHAS AÉREAS INTELIGENTES S.A., *et al.*,[1] | : | Case No. 24-10118 (MG) |
| Debtors. | : | (Joint Administration Requested) |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) ASSUME CERTAIN CRITICAL AIRLINE AGREEMENTS, (B) HONOR PREPETITION OBLIGATIONS RELATED THERETO, AND (C) ENTER INTO NEW CRITICAL AIRLINE AGREEMENTS; (II) MODIFYING THE AUTOMATIC STAY; AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned Debtors, seeking entry of the Interim Order pursuant to sections 105(a), 362, 363, and 365 of the Bankruptcy Code, (i) authorizing, but not directing, the Debtors to (i) authorizing, but not directing, the Debtors to (a) assume certain Critical Airline Agreements, (b) satisfy certain prepetition obligations related thereto, and (c) enter into new Critical Airline Agreements; (ii) modifying the automatic stay to effectuate the foregoing; and (iii) granting related relief, all as described more fully in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and it appearing that

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A). The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

venue of these Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the Motion and the First Day Declaration; and upon the statements of counsel in support of the relief requested in the Motion at the hearing before the Court; and all of the proceedings had before the Court; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and after due deliberation thereon; and good and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT:**

1. On an interim basis, the Motion is GRANTED to the extent set forth herein.

2. The Final Hearing shall be held on _________, 2024, at__:__ _.m., prevailing Eastern Time. Any objections to the granting of the relief granted herein on a final basis or other responses to the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _________, 2024, and shall be served on: (a) the Office of the United States Trustee for the Southern District of New York, (b) the Debtors, (c) proposed counsel to the Debtors, (d) counsel to any statutory committee appointed in these cases, and (e) those parties requesting notice pursuant to Bankruptcy Rule 2002. In the event no objections to entry of a final order are timely received, this Court may enter the Final Order without conducting the Final Hearing.

3. The Debtors are authorized, but not directed, to assume those of the Critical Airline Agreements as the Debtors deem, in their sole discretion, to be in the best interest of their estates, without the necessity of further hearing, upon the filing on the docket of these Chapter 11 Cases a proposed order approving specific assumptions, on notice to the applicable counterparties (the "Counterparties"), which order shall provide that, pursuant to section 365(e)

of the Bankruptcy Code, the Counterparties may not demand any deposit or other form of security from the Debtors, as requested and more fully described in the Motion.

4. Any party in interest shall have twenty days from the service of the Interim Order to object to the assumption of the applicable Critical Airline Agreement. If an objection to the assumption of the applicable Critical Airline Agreement by the Objection Deadline, and is not consensually resolved by the parties, a hearing shall be scheduled for the Court to resolve any issue identified in the objection.

5. The Debtors are authorized, but not directed, to pay or otherwise honor their prepetition obligations under the Critical Airline Agreements in the ordinary course of the Debtors' business, provided that such authority shall not be deemed to be an assumption by the Debtors of any agreement or contract.

6. The Debtors are authorized, but not directed, to enter into new Critical Airline Agreements in the ordinary course of business.

7. Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

8. All Disbursement Banks are authorized and directed, when requested by the Debtors and in the Debtors' sole discretion, to receive, process, honor, and pay any and all checks and electronic funds transfer requests from the Debtors' accounts to the parties to the Critical Airline Agreements, whether those checks were presented or funds transfer requests initiated prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments.

9. Pursuant to section 362(d) of the Bankruptcy Code, the automatic stay is hereby modified solely to the extent necessary to enable the Debtors and the other counterparties to the

Critical Airline Agreements to participate, in the ordinary course of business, in routine billings, settlements, and adjustments with respect to settlements in accordance with the terms and conditions of such agreements, whether arising prior to the commencement of these chapter 11 cases or thereafter.

10. This Interim Order shall not be construed to limit, or in any way affect, the Debtors' ability to contest any invoice or other charge or claim on any grounds.

11. Any payment made pursuant to this Interim Order is not, and shall not be, deemed an admission to the validity of the underlying obligation or waiver of any rights the Debtors may have to subsequently dispute such obligation.

12. Notwithstanding entry of this Interim Order, the Debtors' rights to enforce the automatic stay provisions of section 362(a) of the Bankruptcy Code with respect to any creditor who demands payment of their prepetition debts as a condition to doing business with the Debtors postpetition are preserved.

13. Notwithstanding the relief granted in this Interim Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with any interim or final order entered by the Court approving the Debtors' entry into any postpetition debtor in possession financing facility, and any budget or cash flow forecasts in connection therewith and/or authorizing the Debtors' use of cash collateral and any budget in connection therewith (in either case, the "DIP Order"). To the extent that there is any inconsistency between the terms of the DIP Order (if any) and any action taken or proposed to be taken hereunder, the terms of the DIP Order (if any) shall control. Nothing contained in this Order shall constitute an approval or grant of authority to use cash collateral.

14. Nothing contained in this Interim Order or in the Motion is intended to be or shall be construed as (a) an admission as to the validity or priority of any claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any claim, (c) a promise or requirement to pay any prepetition claim, or (d) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

15. Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any party.

16. This Order is effective from the date of entry through this Court's disposition of the Motion on a final basis; *provided* that the Court's ultimate disposition of the Motion on the final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order.

17. Bankruptcy Rule 6003(b) has been satisfied because the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.

18. Notwithstanding any applicability of Bankruptcy Rule 6004, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

19. The Debtors are authorized and empowered to take all actions necessary to implement the relief requested in this Interim Order.

20. This Court shall retain jurisdiction with respect to any matters, claims, rights, or disputes arising from or related to the implementation of this Interim Order.

Dated: ____________________, 2024
New York, New York

______________________________________
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT B**

**Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| GOL LINHAS AÉREAS INTELIGENTES S.A., *et al.*,[1] | : | Case No. 24-10118 (MG) |
| Debtors. | : | (Joint Administration Requested) |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) ASSUME CERTAIN CRITICAL AIRLINE AGREEMENTS, (B) HONOR PREPETITION OBLIGATIONS RELATED THERETO, AND (C) ENTER INTO NEW CRITICAL AIRLINE AGREEMENTS; (II) MODIFYING THE AUTOMATIC STAY; AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned Debtors, seeking entry of the Final Order pursuant to sections 105(a), 362, 363, and 365 of the Bankruptcy Code, (i) authorizing, but not directing, the Debtors to (a) assume certain Critical Airline Agreements, (b) satisfy certain prepetition obligations related thereto, and (c) enter into new Critical Airline Agreements; (ii) modifying the automatic stay to effectuate the foregoing; and (iii) granting related relief, all as described more fully in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and it appearing that venue of these Chapter 11 Cases and the Motion in this

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A). The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the Motion and the First Day Declaration; and upon the statements of counsel in support of the relief requested in the Motion at the hearing before the Court; and all of the proceedings had before the Court; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and after due deliberation thereon; and good and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT:**

1. The Motion is hereby GRANTED on a final basis.

2. The Debtors are authorized, but not directed, to assume those of the Critical Airline Agreements as the Debtors deem, in their sole discretion, to be in the best interest of their estates, without the necessity of further hearing, upon the filing on the docket of these Chapter 11 Cases a proposed order approving specific assumptions, on notice to the applicable counterparties (the "Counterparties"), which order shall provide that, pursuant to section 365(e) of the Bankruptcy Code, the Counterparties may not demand any deposit or other form of security from the Debtors, as requested and more fully described in the Motion.

3. The Debtors are authorized, but not directed, to pay or otherwise honor their prepetition obligations under the Critical Airline Agreements in the ordinary course of the Debtors' business, provided that such authority shall not be deemed to be an assumption by the Debtors of any agreement or contract.

4. The Debtors are authorized, but not directed, to enter into new Critical Airline Agreements in the ordinary course of business.

5. All Disbursement Banks are authorized and directed, when requested by the Debtors and in the Debtors' sole discretion, to receive, process, honor, and pay any and all checks and electronic funds transfer requests from the Debtors' accounts to the parties to the Critical Airline Agreements, whether those checks were presented or funds transfer requests initiated prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments.

6. Pursuant to section 362(d) of the Bankruptcy Code, the automatic stay is hereby modified solely to the extent necessary to enable the Debtors and the other counterparties to the Critical Airline Agreements to participate, in the ordinary course of business, in routine billings, settlements, and adjustments with respect to settlements in accordance with the terms and conditions of such agreements, whether arising prior to the commencement of these chapter 11 cases or thereafter.

7. This Final Order shall not be construed to limit, or in any way affect, the Debtors' ability to contest any invoice or other charge or claim on any grounds.

8. Any payment made pursuant to this Final Order is not, and shall not be, deemed an admission to the validity of the underlying obligation or waiver of any rights the Debtors may have to subsequently dispute such obligation.

9. Notwithstanding entry of this Final Order, the Debtors' rights to enforce the automatic stay provisions of section 362(a) of the Bankruptcy Code with respect to any creditor who demands payment of their prepetition debts as a condition to doing business with the Debtors postpetition are preserved.

10. Notwithstanding the relief granted in this Final Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with any

interim or final order entered by the Court approving the Debtors' entry into any postpetition debtor in possession financing facility, and any budget or cash flow forecasts in connection therewith and/or authorizing the Debtors' use of cash collateral and any budget in connection therewith (in either case, the "DIP Order"). To the extent that there is any inconsistency between the terms of the DIP Order (if any) and any action taken or proposed to be taken hereunder, the terms of the DIP Order (if any) shall control. Nothing contained in this Order shall constitute an approval or grant of authority to use cash collateral.

11. Nothing contained in this Final Order or in the Motion is intended to be or shall be construed as (a) an admission as to the validity or priority of any claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any claim, (c) a promise or requirement to pay any prepetition claim, or (d) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

12. Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any party.

13. Notwithstanding any applicability of Bankruptcy Rule 6004, the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

14. The Debtors are authorized and empowered to take all actions necessary to implement the relief requested in this Final Order.

15. This Court shall retain jurisdiction with respect to any matters, claims, rights, or disputes arising from or related to the implementation of this Final Order.

Dated: ____________________, 2024
New York, New York

______________________________________
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT C

## IATA Agreements

| Contract Name | Contact Information |
|---|---|
| IATA Membership Agreement<br>IATA Multilateral Interline Traffic Agreement - Passenger<br>IATA Multilateral Interline Traffic Agreement - Cargo | 800 Place Victoria<br>PO Box 113<br>Montreal - H4Z 1M1<br>Quebec – Canada |

## Bilateral Agreements

| Code | Counterparty Airline Name | Electronic Ticketing and SPA | InterAirline Through Check-In | Contact Information |
|---|---|---|---|---|
| AR | Aerolinas Argentinas | Yes | Yes | Aeroparque Jorge Newbery, Av. Rafael Obligado S/N, T 4 – 5° Piso<br>C1425DAA, Buenos Aires, Argentina |
| AM | Aeromexico | Yes | Yes | Paseo de la Reforma 243 Piso 25 Mexico City, DF 06500 Mexico |
| AC | Air Canada | Yes | Yes | 7373 CÃ´te-Vertu Blvd. West Saint-Laurent, QC, CANADA, H4Y 1H4 |
| TX | Air Caraibes | Yes | | Parc d'activité de la Providence, 97139, Les Abymes, Guadeloupe |
| CA | Air China | Yes | | West 7th Floor Air China HQ Building No 30 Tianzhu Road Tianzhu Airport Economic Development Zone<br>101312, Beijing, China |
| UX | Air Europa | Yes | Yes | Centro Empresarial Globalia, Carretera Llucmajor, km, 21.5<br>P.O. Box 132<br>07620, Llucmajor, Spain |
| AF | Air France | Yes | Yes | 45 Rue de Paris 95747 Roissy CDG, France |
| AZ | ITA Airways | Yes | Yes | Via Venti Settembre 97<br>00187, Rome, Italy |
| NH | ANA | Yes | | Shiodome-City Center, 1-5-2, Higashi-Shimbashi, Minato-ku, Tokyo 105-7140, Japan |
| AA | American Airlines | Yes | Yes | 1 Skyview Drive<br>Fort Worth, TX 76155, USA |
| GP | APG Airlines | Yes | | 66 avenue des Champs Elysees, 75008 Paris, France |
| AV | Avianca | Yes | Yes | Av Calle 26 No 59-15 Piso 6, Bogota, Colombia |

| Code | Counterparty Airline Name | Electronic Ticketing and SPA | InterAirline Through Check-In | Contact Information |
|---|---|---|---|---|
| BA | British Airways | Yes | | Waterside PO Box 365 Harmondsworth, UB7 0GB, United Kingdom |
| CM | Copa Airlines | Yes | Yes | Box 0816-06819 Panama, Republic of Panama |
| CU | Cubana de Aviacion | Yes | | Calle 23 No. 64, La Rampa, Vedado 10400, Ciudad de La Habana, Cuba |
| DL | Delta Air Lines | Yes | Yes | 1030 Delta Boulevard Atlanta, GA 30354-1989 United States |
| LY | El Al Israel Airlines | Yes | | P.O. Box 41 Ben Gurion Airport, Zip Code 7015001, Israel |
| EK | Emirates | Yes | Yes | PO Box 686, Dubai, UAE |
| ET | Ethiopian Airlines | Yes | Yes | Bole International Airport, P.O. Box 1755, Addis Ababa, Ethiopia |
| EY | Etihad Airways | Yes | | New Airport Road, Khalifa City 'A', PO Box 35566, Abu Dhabi, UAE |
| HR | Hahn Air | Yes | | An der Trift 65, 63303 Dreieich, Germany |
| IB | Iberia | Yes | Yes | Calle de Martínez Villergas, 49, 28027 Madrid, Spain |
| JL | Japan Airlines | Yes | | Nomura Real Estate Bldg., 2-4-11 Higashi-Shinagawa, Shinagawa-ku, Tokyo, Japan |
| KL | KLM | Yes | Yes | P.O. Box 7700, 1117 ZL Schiphol, The Netherlands |
| KE | Korean Air | Yes | | 260, Haneul-gil, Gangseo-gu, Seoul, Republic of Korea |
| JJ | LATAM Brasil | Yes | | Av. Jurandir, No. 856, Hangar 7, Jardim Aeroporto, CEP 04072-000, Sao Paulo, Brazil |
| LA | LATAM Chile | Yes | | Pdte. Riesco 5711, 20th floor, Las Condes, Santiago, Chile |
| LH | Lufthansa | Yes | Yes | Venloer Straße 151-153, 50672 Köln, Germany |
| QF | Qantas | Yes | | 10 Bourke Road, Mascot NSW 2020, Australia |
| QR | Qatar Airways | Yes | Yes | Qatar Airways Tower, Doha, Qatar |
| AT | Royal Air Maroc | Yes | Yes | Aéroport de Casa-Anfa, Casablanca, Morocco |
| S4 | Sata Internacional | Yes | | Rua Dr. José Bruno Tavares Carreiro, n 6 \|7º Piso 9500-119 Ponta Delgada Azores - Portugal |
| PY | Surinam Airways | Yes | | Mr Jagernath Lachmonstraat 136 PO Box 2029 Paramaribo- Suriname |

| Code | Counterparty Airline Name | Electronic Ticketing and SPA | InterAirline Through Check-In | Contact Information |
|---|---|---|---|---|
| SA | South African Airways | Yes | | South African Airways SOC Limited Airways Park O R Tambo International Airport, 1627 South Africa |
| LX | Swiss | Yes | Yes | Malzgasse 15, CH-4052 Basel, Switzerland |
| DT | TAAG | Yes | Yes | 123, Rua da Missao, Luanda, Angola |
| TP | TAP Portugal | Yes | Yes | Edifício 25 do Aeroporto de Lisboa, 1700-008 Lisbon Portugal |
| TK | Turkish Airlines | Yes | Yes | Turkish Airlines General Management Building, Ataturk Airport, Yesilkoy 34149 Istanbul, Turkey |
| UA | United Airlines | Yes | Yes | 233 South Wacker Drive, Chicago, Illinois 60606, USA |
| VS | Virgin Atlantic | Yes | | The VHQ, Fleming Way, Crawley, West Sussex, RH10 9DF, England |

# EXHIBIT D

## Codeshare Agreements

| Code | Counterparty Airline Name | Contact Information |
|---|---|---|
| AR | Aerolinas Argentinas | Aeroparque Jorge Newbery, Av. Rafael Obligado S/N, T 4 – 5° Piso<br>C1425DAA, Buenos Aires, Argentina |
| AM | Aeromexico | Paseo de la Reforma 243 Piso 25<br>Mexico City, DF 06500 Mexico |
| AC | Air Canada | 7373 CÃ´te-Vertu Blvd. West<br>Saint-Laurent, QC, CANADA, H4Y 1H4 |
| UX | Air Europa | Centro Empresarial Globalia, Carretera Llucmajor, km, 21.5<br>P.O. Box 132<br>07620, Llucmajor, Spain |
| AF | Air France | 45 Rue de Paris 95747 Roissy CDG, France |
| AA | American Airlines | 1 Skyview Drive<br>Fort Worth, TX 76155, USA |
| AV | Avianca | Av Calle 26 No 59-15 Piso 6, Bogota, Colombia |
| CM | Copa Airlines | Box 0816-06819 Panama, Republic of Panama |
| EK | Emirates | PO Box 686, Dubai, UAE |
| ET | Ethiopian Airlines | Bole International Airport, P.O. Box 1755, Addis Ababa, Ethiopia |
| KL | KLM | P.O. Box 7700, 1117 ZL Schiphol, The Netherlands |
| DT | TAAG | 123, Rua da Missao, Luanda, Angola |
| TP | TAP Portugal | Edifício 25 do Aeroporto de Lisboa, 1700-008 Lisbon Portugal |
| TK | Turkish Airlines | Turkish Airlines General Management Building, Ataturk Airport, Yesilkoy 34149 Istanbul, Turkey |

# **EXHIBIT E**

## Frequent Flyer Program Agreements

| Code | Counterparty Airline Name | Contact Information |
|---|---|---|
| AR | Aerolinas Argentinas | Aeroparque Jorge Newbery, Av. Rafael Obligado S/N, T 4 – 5° Piso C1425DAA, Buenos Aires, Argentina |
| AM | Aeromexico | Paseo de la Reforma 243 Piso 25 Mexico City, DF 06500 Mexico |
| AC | Air Canada | 7373 CÃ´te-Vertu Blvd. West Saint-Laurent, QC, CANADA, H4Y 1H4 |
| UX | Air Europa | Centro Empresarial Globalia, Carretera Llucmajor, km, 21.5 P.O. Box 132 07620, Llucmajor, Spain |
| AF | Air France | 45 Rue de Paris 95747 Roissy CDG, France |
| AA | American Airlines | 1 Skyview Drive Fort Worth, TX 76155, USA |
| AV | Avianca | Av Calle 26 No 59-15 Piso 6, Bogota, Colombia |
| CM | Copa Airlines | Box 0816-06819 Panama, Republic of Panama |
| EK | Emirates | PO Box 686, Dubai, UAE |
| ET | Ethiopian Airlines | Bole International Airport, P.O. Box 1755, Addis Ababa, Ethiopia |
| KL | KLM | P.O. Box 7700, 1117 ZL Schiphol, The Netherlands |
| KE | Korean Air | 260, Haneul-gil, Gangseo-gu, Seoul, Republic of Korea |
| SA | South African Airways | South African Airways SOC Limited Airways Park O R Tambo International Airport, 1627 South Africa |
| TP | TAP Portugal | Edifício 25 do Aeroporto de Lisboa, 1700-008 Lisbon Portugal |
| TK | Turkish Airlines | Turkish Airlines General Management Building, Ataturk Airport, Yesilkoy 34149 Istanbul, Turkey |

# EXHIBIT F

## Airline Clearinghouse Agreements

| Contract Name | Contact Information |
| --- | --- |
| IATA Clearinghouse Membership | 800 Place Victoria<br>PO Box 113<br>Montreal - H4Z 1M1<br>Quebec – Canada |
| Sindicato Nacional das Empresas Aeroviárias (SNEA) Membership and Clearinghouse Agreement | Rua Barão de Goiânia, 76 – Congonhas<br>CEP: 04612-020 São Paulo – SP, Brazil |

# EXHIBIT G

## Other Airline and Industry Agreements

| Counterparty Name | Contract Type | Contact Information |
|---|---|---|
| Azul Linhas Aerea Brasileiras S.A. | Reprotection agreement | Avenida Marcos Penteado de Ulhôa Rodrigues, 939, 8th floor, in the city of Barueri, state of São Paulo, Brazil |
| TAM Linhas Aereas S.A. | Reprotection agreement | Av. Jurandir, No. 856, Hangar 7, Jardim Aeroporto, CEP 04072-000, Sao Paulo, Brazil |
| Aerovias del Continente Americano S.A. Avianca, TACA International Airlines, S.A., and LifeMiles Ltd., | Reciprocal lounge access agreement | Av Calle 26 No 59-15 Piso 6, Bogota, Colombia |
| TAAG Linhas Aereas de Angola S.A. | Lounge access agreement | 123, Rua da Missao, Luanda, Angola |
| Ethiopian Airlines Group | Lounge access agreement | Bole International Airport, P.O. Box 1755, Addis Ababa, Ethiopia |
| British Airways Plc | Lounge access agreement | Waterside PO Box 365 Harmondsworth, UB7 0GB, United Kingdom |
| Societe Air France and KLM Royal Dutch Airlines | Lounge access agreement | 45 Rue de Paris 95747 Roissy CDG, France |
| American Airlines Inc. | Master cooperation agreement | 1 Skyview Drive, Fort Worth, TX 76155, USA |
| Air France – KLM S.A. | Strategic commercial cooperation agreement | 45 Rue de Paris 95747 Roissy CDG, France |
| Airline Tariff Publishing Company (ATPCO) | Data subscription contract | Washington Dulles International Airport, 45005 Aviation Drive, Dulles, VA 20166, USA |
| IATA | Billing and Settlement Plan (BSP) Agreement | 800 Place Victoria<br>PO Box 113<br>Montreal - H4Z 1M1<br>Quebec – Canada |
| Airlines Reporting Corporation | Carrier Services Agreement | Airlines Reporting Corporation<br>3000 Wilson Boulevard<br>Suite 300<br>Arlington, VA 22201-3862 |
| Sabre Global Technologies Limited | Sabre Participating Carrier Distribution and Services Agreement | 1 Church Road, Richmond, TW9 2QE, United Kingdom |
| Associação Brasileira das Empresas Aéreas (ABEAR) | Membership Agreement | Av. Ibirapuera, 2332 - Conj. 21 Torre Ibirapuera; 04028-002; Moema; São Paulo/SP |