WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2
U.S. Department of Justice
Office of the United States Trustee
Alexander Hamilton U.S. Custom House
One Bowling Green
New York, New York 10004
Telephone: (212) 510–0500
By:   Annie Wells
       Trial Attorney

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------- X
In re:                                                          :
                                                                :    Case No. 24-10118-MG
GOL LINHAS AÉREAS INTELIGENTES S.A.,                            :
*et al.*,[1]                                                    :    Chapter 11
                                                                :
            Debtors.                                            :    (Jointly Administered)
--------------------------------------------------------------- X

**RESPONSE AND RESERVATION OF RIGHTS OF THE UNITED STATES
TRSUTEE TO DEBTORS' MOTION FOR ENTRY OF FOR ENTRY OF AN
ORDER CONFIRMING THE DEBTORS' AUTHORITY TO MAKE INCENTIVE
PLAN PAYMENTS TO THEIR NON-INSIDER EMPLOYEES DURING THE
CHAPTER 11 CASES IN ACCORDANCE WITH THE WAGES ORDER**

William K. Harrington, the United States Trustee for Region 2 (the "United States

Trustee"), by his counsel, hereby submits this Response and Reservation of Rights (the

"Response and Reservation of Rights") to the Motion of GOL Linhas Aereas Inteligentes S.A.

and each of its affiliated debtors and debtors-in-possession (collectively, the "Debtors") for Entry

of an Order Confirming the Debtors' Authority to Make Incentive Plan Payments to Their Non-

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A). The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

Insider Employees During the Chapter 11 Cases [ECF. No. 704] (the "Bonus Motion"). In support thereof, the United States Trustee respectfully states:

## BACKGROUND

1. On January 25, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under the Bankruptcy Code with this Court commencing the instant Chapter 11 Cases.

2. The Debtors continue to operate their businesses and manage their properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Chapter 11 Cases are being jointly administered for procedural purposes pursuant to Bankruptcy Rule 1015(b) and the *Order (i) Directing Joint Administration of Chapter 11 Cases and (ii) Granting Related Relief*. *See* ECF No. 58.

4. As part of the Debtors' "First Day" motions for relief, the Debtors filed the *Motion for Entry of Interim and Final Orders (i) Authorizing Them to (a) Maintain Employee Programs in the Ordinary Course and (b) Pay Prepetition Employee Obligations Related Thereto and (ii) Granting Related Relief* (the "Wages Motion"), seeking, *inter alia*, approval for the payment of certain pre-petition wages. *See* ECF No. 3.

5. This Court approved the Wages Motion on an interim basis on January 29, 2024 (*see* ECF No. 61), and on a final basis on February 27, 2024 (*see* ECF No. 198, the "Final Wages Order").

6. On February 9, 2024, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee"). *See* ECF No. 114.[2]

---

[2] On February 13, 2024, the U.S. Trustee filed a notice amending the composition of the Committee. *See* Amended Notice of Appointment of Official Committee of Unsecured Creditors [ECF No. 134].

7. No trustee or examiner has been appointed in these Chapter 11 Cases.

8. On June 10, 2024, the Debtors filed the Bonus Motion confirming their authority to make payments (the "Bonus Payments") to eligible Employees[3] under the Debtors' various Incentive Plans (defined below), pursuant to Sections 105(a), 363 and 503(c) of the Bankruptcy Code. *See* Bonus Motion ¶¶ 1-7. The Bonus Motion was accompanied by the declaration of (i) Joseph W. Bliley, the Debtors' CRO, in Support of the Bonus Motion (the "Bliley Declaration"); (ii) Zachary P. Georgeson, a Managing Director at Willis Towers Watson U.S. LLC, in Support of the Bonus Motion (the "Georgeson Declaration"); and (iii) Aloizio Ribeiro Lima, a partner at Lefosse Advogados, in Support of the Bonus Motion (the "Lima Declaration").

9. As described by the Debtors, the Debtors maintain certain incentive compensation plans (collectively, the "Incentive Plans"), which are used to supplement their Employees' base wages and incentivize them to achieve various performance targets for the Debtors' business. *See id.* ¶ 11. Under the Bonus Motion, the Debtors seek authority from this Court to make payments under four current Incentive Plans, including: (i) a Revenue Sharing Program, (ii) an Incentive Bonus Program, (iii) an Operational Supervisor Incentive Program, and (iv) an Operational Reward Program. *See id.*

10. According to the Debtors, over $26 million has been paid since the Petition Date under the Incentive Plans, including over $3.5 million[4] under the Incentive Bonus Program. *See id.* ¶¶ 12-15. Specifically, the Incentive Bonus Program covers approximately 200 of the Debtors' senior non-insider Employees, "all of whom play a key role in the Debtors' business

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bonus Motion.

[4] This amount is based on the Debtors' assertion that the average payment was approximately $19,000 to approximately 200 Employees.

3

operations, and in particular the Debtors' overall performance, serve in management roles in various departments related to commercial, strategy, finance, fleet, operations, supply chain, and human resources, among others." *Id.* ¶ 13. Payments under this program are based upon the Debtors' achievement of various corporate targets, "including revenue and EBITDA metrics, fleet performance, and cost control and reduction, as well as additional targets tailored to the departments in which the Employees work," which are determined at the end of the first quarter of the following year. *See id.* For 2024, the Debtors already completed the Incentive Bonus payments in April. *See id.* ¶ 27. The next payments under the Incentive Bonus Program for 2025 is estimated to be approximately $8.5 million. *See id.* ¶ 13.

## RESPONSE AND RESERVATION OF RIGHTS

At the outset, the Debtors "believe they have authority to make payments under the Incentive Plans pursuant to the Final Wages Order," and as ordinary course payments under Section 363 of the Bankruptcy Code; but they nevertheless filed the Bonus Motion out of an abundance of caution at the request of the United States Trustee. *See* Bonus Motion ¶ 24. Such belief is misplaced. The classic "First Day" wage motion in any chapter 11 case is the type of motion the Bankruptcy Court typically adjudicates under the doctrine of necessity to accommodate debtors with relief limited to that which is necessary to continue operations while a business stabilizes immediately after the filing of a Chapter 11 case; and with respect to a debtor's employees, further limited to certain categories of pre-petition wages deemed to be priority wages under Section 507 of the Bankruptcy Code, and capped in amounts under that section. The Bonus Payments the Debtors seek to pay here—aggregating in the millions and under multiple Incentive Plans—are plainly not that. Nor should they be considered payments in the ordinary course of business, unless it is the Debtors' ordinary course of business to be

4

operating in U.S. bankruptcy proceedings. Rather, the BAPCPA amendments to the Bankruptcy Code makes clear that post-petition administrative expenses on account of a debtor's bonus programs are governed by standards under Section 503(c) of the Bankruptcy Code, approval for which should be sought by separate motion. *See* 11 U.S.C. § 503(c); *see generally, In re Global Home Prods., LLC*, 369 B.R. 778, 783-84 (Bankr. D. Del. 2007) (noting that the amendments were added to "eradicate the notion that executives were entitled to bonuses simply for staying with the Company through the bankruptcy process."); *In re Pilgrim's Pride Corp.*, 401 B.R. 229, 234 (Bankr. N.D. Tex. 2009) ("Section 503(c) was enacted to limit a debtor's ability to favor powerful insiders economically and at estate expenses during a chapter 11 case." (citing *In re Airway Indus., Inc.*, 354 B.R. 82, 87 n.12 (Bankr. W.D. Pa. 2006))); *In re Journal Register Co.*, 407 B.R. 520, 535 (Bankr. S.D.N.Y. 2009) (citing *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98. 101 (2d Cir. 1960)) (same). Moreover, while the United States Trustee and the Committee received notice of these payments, they were made without any filed notice to this Court or to other parties-in-interest. The need for complete transparency in these Chapter 11 Cases, and sufficient time for all stakeholders to fully review the various Incentive Plans and the payments thereunder logically requires the filing of the Bonus Motion.

As filed, the Bonus Motion contains several misleading data points. Specifically, with respect to the Incentive Bonus Program, for example, the Debtors assert that the average payout per Employee is approximately $19,000. *See* Bonus Motion ¶ 6. However, information provided to the United States Trustee by the Debtors show that top recipients of the cash incentives under this program received amounts well in excess of $19,000, while most received much less. The Debtors also emphasize that the Bonus Payments are obligated under the applicable CBAs with various Brazilian labor unions, as among the facts and circumstances

5

justifying these payments, but admits that the Incentive Bonus Program is not, in fact, mandated by any CBA. *See* Bonus Motion, n.7. Lastly, in describing the timing of the Incentive Bonus payments, the Debtors state that "payment is made to Employees annually in the second quarter of that year" (*see id.* ¶ 13), which contradicts the September timing described in the Wages Motion. *See* Wages Motion ¶ 38 ("The bonuses under the Incentive Bonus Program will become due in September 2024.").

Nevertheless, as noted by the Debtors, the United States Trustee previously engaged in extensive discussions with the Debtors, who worked cooperatively to provide additional information concerning the Incentive Plans, the eligible employees, and the payments that were made in April and May, as requested. *See* Bonus Motion ¶¶ 27-29. Based on those discussions, the United States Trustee determined that the Debtors had satisfied their burden under Section 503(c) of the Bankruptcy Code in justifying those payments, and therefore, did not object. And for the avoidance of doubt, the United States Trustee is not hereby objecting to the Bonus Motion *per se*. However, the Debtors seek *prospective* approval from this Court for all future payments under the Incentive Plans, including the payment under the Incentive Bonus Plan in September of 2025 (which is currently estimated to be approximately $8.5 million), as well as payments under the Revenue Sharing Program estimated to be approximately $26.8 million. *See* Bonus Motion, n.17. The United States Trustee, this Court, and the parties do not have sufficient information at this time to assess any such future payments, including whether there might be changes to the Debtors' Employees pool/eligibility, or whether the metrics and performance targets would be achieved and properly determined (and/or approved). Therefore, should the Debtors seek subsequent approval (as opposed to prospective approval now) for any future payments under any Incentive Plan (or at the very least provide adequate notice and information

in support therefor), the rights of the United States Trustee to object to such payments at the appropriate time are hereby fully reserved.

Dated: New York, New York
June 24, 2024

                      Respectfully submitted,

                      WILLIAM K. HARRINGTON
                      UNITED STATES TRUSTEE, REGION 2

                      By:    /s/ *Annie Wells*
                            Annie Wells
                            Trial Attorney
                            U.S. Department of Justice
                            Office of the United States Trustee
                            Alexander Hamilton U.S. Custom House
                            One Bowling Green
                            New York, New York 10004
                            Telephone: (212) 510–0500