UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>GOL LINHAS AÉREAS INTELIGENTES S.A., et al.,<br><br>    Debtor | Case Number: 24-10118(MG)<br><br>Chapter 11 |

Re: Statement on US Trustee's Reservation of Rights to Confirmation of Payments (ECF: 734)

I would like it noted for the record that I was fully resigned to retaining my written objection presented to this Court until my relevant and concise verbal statement was abruptly censored by it.  This written record is created with considerable relative excess effort as a response to the Court's, and only the Court's, suggestion at the conclusion of the hearings held on 7/1/24.  I can only hope it reaches the Court for consideration in a timely fashion as it contemplates the Order for Payment of Bonuses proposed by the Debtor.  I pray the content and spirit of these words land with considerable weight upon these proceedings as we approach the elephant in the room for many of the legacy creditors in this case: the perception of trust, transparency and integrity within these proceedings and, specifically, this Debtor.

I've read all the court transcripts and have been concerned to find that there hasn't been any mention of the fact that GOL ("the Company") remains under deferred prosecution agreement and was penalized with roughly $160 million in fines for violations of the Foreign Corrupt Practices Act less than 16 months before the filing for the protection of this Court.  It should further be noted that on the 14th of December 2023, many GOL investors would say that management first publically and openly expressed the possibility of bankruptcy due to a suddenly expected ~$200 million downdraft in cash flow.  Adjusted for time value of money at current South American DIP loan rates, this 33.3% guide down in forward year cash flow was not considerably larger than the Company's prescribed monetary penalty for bribery and

corruption, which consisted of a senior level advisor/board member bribing Brazilian politicians for their own and GOL's gain. Obviously, GOL's management discovered that the return on investment associated with blatant bribery and corruption may not always be as robust as it might seem before unsupervised payments begin changing hands. Investors should take heed.

I likely need not remind the Court of the load the US Trustee is taking on to review the very significant monthly statements (~20 thousand pages, including amended filings per US Trustee) on top of the daily load of processing proceedings and administering the Trust. If I'm not mistaken, the content of these filings are orders of magnitude larger than recent and direct peers have presented to this same court. We have been told by the US Trustee's office 2nd Region (not Ms. Wells) that, despite shouldering the responsibility, there is no true mechanized nor automated means for vetting the vast amount of information submitted to this case docket. The strategy is to meticulously and manually check each filing. This is a considerable undertaking for a force of supposed limited budget and resources.

I would like to publicly commend Mrs. Wells for her posture toward, not only the hearing today, but for this case. Her position is far from restrictive by my eye, but still wisely signals caution. She's clearly working to promote the integrity of her Office, function and this Court. Buttressing the integrity of the process and its inputs is particularly important given the recent criminal history of this petitioner. As the ONLY party to experience direct financial loss, a real person and creditor requesting to be heard at the proceedings on 7/1/24, I had wished to verbally encourage her posture to become even more cautious. She should receive significant additional resources to enhance the neutral integrity of the process for all parties directly involved, the Court and the reputation of the bankruptcy system. Her concerns, not just about this Order, but the entire process taken in whole should be heard and taken seriously by all creditors in this Case as we assist in building a process that is equitable, efficient, transparent, and as concise as possible. At this point in the process, it's relatively clear to most conversant in financial matters we'll have enough enterprise value to more than cover all creditors in this case. The issue now is how much should one trust management and the Company with the relative rights that equity holders might retain. We have the relative luxury of focusing on the quality of the process. For all parties involved, why wouldn't we make it sturdy?

I have expressed my concerns at the Creditor's Committee level. We have neither seen nor heard of any particular observable effort in outwardly improving the methods, resources or review of the inputs in this Case until Mrs. Wells' efforts this week.

My posture is very forward and guarded with respect to the credibility of this Debtor. This posture has been developed as a result of following this company's poor and, to my mind, relatively inexplicable (at least on the surface) financial decisions closely for the past 3-4 years. I am leaning in, as I would with any petitioner of a bankruptcy court with a recent and serious criminal history, until the Debtor's behavior, not its words and acts of allocating capital toward placing renderings of oversized cartoon characters on aeroplanes or bonuses to those that actively participated in bankrupting the enterprise, establishes a basis for credibility and is repeatedly proven trustworthy and logically coherent. As a seasoned financial professional, I can tell you with some certainty that the Debtor's behaviors and decisions would not be met with accolades in public markets nor any credible path toward them. We should all question why it is allowed in a safe harbor such as the geography of the once venerable Southern District of New York calls home and, more specifically, this Court.

I pray this Court would heed the reasons that have led to my posture and ask the Court to keep those reasons in mind when contemplating the amount of oversight for which Ms. Wells has argued and furthermore will be tasked with delivering through this process.

It is for these reasons that I now voice my verbally censored words, object to the Debtors Motion and join with Ms. Wells in raising the flag of concern not only unsupervised bonus remuneration, but focus the thoughts of all those involved with these proceedings on the integrity of the process and, most specifically, the inputs of the debtor.