**Presentment Date and Time: August 15, 2024 at 12:00 p.m. (ET)**
**Objection Deadline: August 14, 2024 at 4:00 p.m. (ET)**

Evan R. Fleck
Lauren C. Doyle
Bryan V. Uelk
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile:  (212) 530-5219

-and-

Gregory A. Bray
**MILBANK LLP**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile:  (213) 629-5063

Andrew M. Leblanc
Erin E. Dexter (admitted *pro hac vice*)
**MILBANK LLP**
1850 K St. NW, Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile:  (202) 263-7586

Kathryn A. Coleman
Christopher C. Gartman
**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

*Counsel for Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                        :
In re:                                  :   Chapter 11
                                        :
GOL LINHAS AÉREAS INTELIGENTES S.A.,    :   Case No. 24-10118 (MG)
et al.,1                                :
                                        :
                        Debtors.        :   (Jointly Administered)
                                        :
------------------------------------------------------------x
```

---

1   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A).  The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

**NOTICE OF PRESENTMENT OF DEBTORS'
MOTION FOR APPROVAL OF STIPULATION AND
ORDER BETWEEN DEBTORS AND COUNTERPARTIES
<u>CONCERNING CERTAIN AIRCRAFT AND ENGINES</u>**

   **PLEASE TAKE NOTICE** that the above captioned debtors and debtors-in-possession (the "<u>Debtors</u>") hereby file the *Debtors' Motion for Approval of Stipulation and Order Between Debtors and Counterparties Concerning Certain Aircraft and Engines* (the "<u>Motion</u>").

   **PLEASE TAKE FURTHER NOTICE** that the undersigned will present the Motion to the Honorable Martin Glenn, Chief United States Bankruptcy Judge for the Southern District of New York, One Bowling Green, New York, NY 10004 (the "<u>Court</u>") **on August 15, 2024 at 12:00 p.m. (prevailing Eastern time)** (the "<u>Presentment Date</u>") for approval and signature.

   **PLEASE TAKE FURTHER NOTICE** that any objections or responses to the Motion shall: (i) be in writing; (ii) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York, and the *Final Order Implementing Certain Notice and Case Management Procedures* [Docket No. 175]; (iii) be filed electronically with this Court on the docket of *In re GOL Linhas Aéreas Inteligentes S.A.*, Case No. 24-10118 (MG) by registered users of this Court's electronic filing system (which is available on this Court's website at http://www.nysb.uscourts.gov); and (iv) be served so as to be actually received by **August 14, 2024 at 4:00 p.m. (prevailing Eastern time)** (the "<u>Objection Deadline</u>"), by: (a) the Chambers of the Honorable Martin Glenn, Chief United States Bankruptcy Judge for the Southern District of New York, One Bowling Green, New York, NY 10004; (b) the Debtors, c/o GOL Linhas Aéreas Inteligentes S.A., Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Brazil (Attn: Joseph W. Bliley, Chief Restructuring Officer); (c) Milbank LLP, 55 Hudson Yards, New York, NY 10001 (Attn: Evan R. Fleck, Esq., Lauren C. Doyle Esq., Bryan V. Uelk Esq., and Gregory A. Bray, Esq.), counsel for the Debtors; (d) William K. Harrington, U.S. Department of Justice, Office of the U.S. Trustee, One Bowling Green, Suite 534, New York, NY 10004-1408 (Attn: Annie Wells, Esq. and Brian Masumoto, Esq.); (e) the Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549; (f) the Federal Aviation Administration, 800 Independence Ave., S.W. Washington, DC 20591 (Attn: Office of the Chief Counsel); (g) the U.S. Attorney's Office for the Southern District of New York, One St. Andrew's Plaza, New York, NY 10007; (h) Vedder Price, 1633 Broadway, 31st Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and William W. Thorsness, Esq.); and (i) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019 (Attn: Brett H. Miller, Esq., Todd M. Goren, Esq., Craig A. Damast, Esq., and James H. Burbage, Esq.), counsel for the Official Committee of Unsecured Creditors.

   **PLEASE TAKE FURTHER NOTICE** that if no objections or other responses are received by the Objection Deadline with respect to the Motion, the Debtors shall, on the Presentment Date, submit the Motion and proposed order to the Court, which order the Court may enter without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that if a written objection is timely filed, the Court will notify the Debtors and the objecting parties of the date and time of the hearing with respect to the Motion and of the Debtors' obligation to notify all other parties entitled to receive notice. The Debtors and objecting parties are required to attend the hearing, and failure to attend in person or by counsel may result in relief being granted or denied upon default.

*[Remainder of page intentionally left blank]*

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion can be viewed and/or obtained by: (i) accessing the Court's website at http://www.nysb.uscourts.gov, (ii) from the Debtors' claims and noticing agent, Kroll, at https://cases.ra.kroll.com/GOL, or by calling 844.553.2247 (U.S./Canada) (toll free) or +1.646.777.2315 (International) or by e-mail via GOLInfo@ra.kroll.com.  Note that a PACER password is needed to access documents on the Court's website.

Dated:  New York, New York
   August 8, 2024

**MILBANK LLP**

/s/ Evan R. Fleck
Evan R. Fleck
Lauren C. Doyle
Bryan V. Uelk
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219

Andrew M. Leblanc
Erin E. Dexter (admitted *pro hac vice*)
**MILBANK LLP**
1850 K St NW, Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile:  (202) 263-7586

Gregory A. Bray
**MILBANK LLP**
2029 Century Park East
33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile:  (213) 629-5063

-and-

Kathryn A. Coleman
Christopher C. Gartman
**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

*Counsel for Debtors and Debtors-in-Possession*

**Presentment Date and Time: August 15, 2024 at 12:00 p.m. (ET)**
**Objection Deadline: August 14, 2024 at 4:00 p.m. (ET)**

Evan R. Fleck
Lauren C. Doyle
Bryan V. Uelk
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile:  (212) 530-5219

-and-

Gregory A. Bray
**MILBANK LLP**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile:  (213) 629-5063

Andrew M. Leblanc
Erin E. Dexter (admitted *pro hac vice*)
**MILBANK LLP**
1850 K St. NW, Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile:  (202) 263-7586

Kathryn A. Coleman
Christopher C. Gartman
**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

*Counsel for Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                    :
In re:                              :    Chapter 11
                                    :
GOL LINHAS AÉREAS INTELIGENTES S.A., :    Case No. 24-10118 (MG)
*et al.*,[1]                        :
                                    :
                                    :
                     Debtors.       :    (Jointly Administered)
                                    :
---------------------------------------------------------------x

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A).  The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

## DEBTORS' MOTION FOR APPROVAL OF
## STIPULATION AND ORDER BETWEEN DEBTORS AND
## COUNTERPARTIES CONCERNING CERTAIN AIRCRAFT AND ENGINES

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors" or "GOL") respectfully state as follows in support of this motion (the "Motion"):[2]

### RELIEF REQUESTED

1.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (i) authorizing the Debtors to enter into the stipulation (as defined below) (ii) approving the stipulation and order, substantially in the form annexed hereto as **Exhibit B** (which includes the Term Sheet (as defined herein) and the exhibits, appendices and attachments thereto, collectively, the "Stipulation") between the Debtors and the parties listed on Exhibit A to the Stipulation (the "Counterparties"), concerning certain lease agreements (the "Agreements") relating to certain aircraft (the "Aircraft") and engines (the "Engines"). The Term Sheet and the other portions of the Stipulation, among other things, set forth certain terms for the Agreements during the pendency of the Chapter 11 Cases (as defined herein), the terms and conditions for certain modifications to the Agreements, certain capital contributions or similar arrangements, the terms regarding the assumption of the Leases, other than the Lease for the Retained Aircraft (each as defined in the Stipulation) and other Agreements (as modified by the Term Sheet) and other terms relating to the leasing of the three Aircraft that are the subject thereof.

2.      Pursuant to the *Order Authorizing and Approving Procedures for Sealing and Redacting Confidential Information* [Docket No. 233], certain provisions of the term sheet attached to the Stipulation (together with all schedules, annexes, and exhibits attached thereto, the "Term Sheet") are redacted in the publicly filed version of this Motion. The unredacted Term

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Stipulation or Term Sheet, as applicable.

Sheet has been provided, subject to confidentiality restrictions, to the Chambers of this Court, the United States Trustee and, on a professional eyes-only basis, counsel to the Committee (as defined herein) and to the debtor-in-possession lenders.

3.      In support of the relief requested herein, the Debtors submit the *Declaration of Gregory S. Ethier in Support of Debtors' Motion for Approval of Stipulation and Order Between Debtors and Counterparties Concerning Certain Aircraft and Engines* (the "Ethier Declaration"), attached hereto as **Exhibit C** and incorporated by reference herein.

## JURISDICTION

4.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.

5.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

6.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The bases for the relief requested herein are sections 105(a), 363, 364, 365, 503, 553, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), Rules 6004, 6006, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 6006-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## STATUS OF THE CASES

8.      On January 25, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

9.      The Debtors continue to operate their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' cases (the "Chapter 11 Cases") are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order (i) Directing*

*Joint Administration of Chapter 11 Cases and (ii) Granting Related Relief* [Docket No. 58]. On February 9, 2024, the U.S. Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee"). *See Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 114]. On February 13, 2024, the U.S. Trustee filed a notice amending the composition of the Committee. *See Amended Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 134]. No trustee or examiner has been appointed in these cases.

10. Further information regarding the Debtors' business, capital structure, and the facts and circumstances leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Joseph W. Bliley in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 11].

## THE STIPULATION

11. A core component of these Chapter 11 Cases and the Debtors' restructuring is the Debtors' fleet and their relationships with their aircraft and engine lessors, lenders, and various other counterparties. *See* Ethier Decl. ¶ 5. The Debtors are in the process of restructuring agreements governing their fleet of aircraft on terms consistent with the Debtors' commercial objectives. *See id.*

12. As a result of substantial arm's-length negotiations, the Debtors and the Counterparties have agreed to the Stipulation. By this Motion, the Debtors are seeking approval of the Stipulation concerning the leases governing nine Aircraft listed on Appendix 1 to the Term Sheet (the "Leases"), under which the applicable entities listed therein as "Lessor" (the "Lessors") serve as lessors and GOL Linhas Aéreas S.A. serves as lessee (the "Lessee").

13.     The Term Sheet and the Stipulation provide for the modification of certain obligations related to, among other things, (i) provisions regarding the payment of rent, (ii) the amendment of the terms of certain lease schedules subject to the Leases with respect to the Aircraft, and (iii) assumption of such amended Leases (other than the Lease for the Retained Aircraft) under a chapter 11 plan of reorganization on the effective date of such plan of reorganization. Additionally, under the Term Sheet, each relevant Lessor has agreed to provide an Engine Maintenance Contribution (as defined in the term sheet) to the Lessee, under the terms set forth in the Term Sheet, in connection with the performance of certain engine maintenance services.

14.     The Term Sheet and Stipulation also provide for the assertion of certain administrative priority claims by the Counterparties and the framework for the assertion of unsecured claims by the Counterparties related to the Aircraft and Engines.  The Stipulation further resolves the parties' respective rights and obligations under section 365(d) of the Bankruptcy Code and the Cape Town Convention on International Interests in Mobile Equipment and the Protocol thereto on Matters Specific to Aircraft Equipment, each as opened for signature on November 16, 2001 (the "Cape Town Convention"), to the extent applicable.

15.     The Debtors seek to enter into the Stipulation with the Counterparties in order to minimize the Debtors' operating costs and the Counterparties' administrative claims under the Agreements.  The Stipulation accomplishes that by, among other things (i) adjusting the amount of basic rent to be paid for the remaining lease term, (ii) agreeing to an engine title swap and early redelivery of certain equipment, and (iii) agreeing to amend certain end of lease obligations. Lessors have also agreed under the Term Sheet to contribute towards the costs incurred by Lessee in connection with the performance of certain engine maintenance services.

16.     The Stipulation and Term Sheet also provide that, in exchange for the Lessors'
Glide Notes (as defined in the Term Sheet), the Lessors shall receive, under and on the effective
date of the Chapter 11 Plan approved by the Court, new notes in a principal amount equal to the
outstanding principal amount of the Glide Notes as of the Petition Date (less any amortization
payments made during the pendency of the Chapter 11 Cases) on the terms set forth in the Term
Sheet.

17.     Moreover, under the Stipulation and Term Sheet, and subject to certain reservations
of rights, Lessors have also agreed not to sell, assign, transfer, dispose of or otherwise convey any
claim it may have against any of the Debtors that relates to or arises from the Stipulation, the
Leases or the related documents, the Term Sheet, the Aircraft, and/or any other transactions that
are the subject of the Term Sheet; *provided* that such Lessors may, with respect to any such claim,
sell, dispose of or otherwise convey a participation in such Lessors' rights to receive any
distributions on account of such claim under the Chapter 11 Plan; *provided, further*, that any such
sale, transfer, disposition, or other conveyance of such participation permitted under the foregoing
provisos shall not be effective until the voting deadline established by the Court for the Chapter
11 Plan has passed.

18.     The Stipulation provides that the Debtors' compliance with the terms and
conditions set forth therein shall satisfy any and all (i) obligations of the Debtors and (ii) claims
and rights of the Counterparties to administrative expense status or priority in payment, in each
case, under any applicable provisions of the Bankruptcy Code, and any similar provision under the
Cape Town Convention, that arise out of or relate to the Agreements or the related equipment, to
the extent any such provision of the Cape Town Convention is applicable to the Chapter 11 Cases.

19.    The Debtors respectfully submit that the Court should enter the Order approving the Stipulation in order to allow the Debtors to minimize costs and administrative expenses incurred during these Chapter 11 Cases.

## **BASIS FOR RELIEF**

A.    **Entry into the Stipulation Constitutes a Sound Exercise of the Debtors' Business Judgment.**

20.    The Debtors respectfully submit that the relief requested herein is fair, equitable, reasonable, the product of the Debtors exercising their sound business judgment, and in the best interests of the Debtors' estates and is, thus, justified under sections 105(a), 363(b), and 365(a) of the Bankruptcy Code.  As described above and in Ethier Declaration and First Day Declaration, the Debtors are seeking to reset their fleet and attendant costs to a market level.  As part of this process, the Debtors have evaluated their fleet of aircraft, engines and equipment, reviewing the relevant underlying leases and agreements, and, to the extent prudent, are negotiating amendments to such leases and agreements for aircraft, engines and equipment that the Debtors desire to maintain.  In doing so, the Debtors compared the Leases and the Aircraft to available alternatives and ultimately negotiated (at arm's-length, in good faith, and in consultation with their key stakeholders) new economically favorable terms, as set forth in the Term Sheet and the other portions of the Stipulation.  Finally, the Debtors have determined (based on the exercise of their sound business judgment) that the terms of the Leases (including, without limitation, the lease schedules thereto), as modified under the Term Sheet and the other portions of the Stipulation, represent the best available transactions under the circumstances (*i.e.*, the Chapter 11 Cases), but also would be commercially beneficial transactions irrespective of such circumstances. *See* Ethier Decl. ¶ 6.

21.     Section 363(b)(1) of the Bankruptcy Code empowers the Court to allow the debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  A debtor's decisions to use, sell or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor.  *See Off. Comm. of Unsecured Creditors of Enron Corp. v. Enron Corp. (In re Enron Corp.)*, 335 B.R. 22, 27–28 (S.D.N.Y. 2005) (holding that a good business reason must exist to use property other than in the ordinary course of business); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a section 363(b) motion is "good business reason").

22.     The business judgment rule is satisfied "when the following elements are present: (1) a business decision, (2) disinterestedness, (3) due care, (4) good faith, and (5) according to some courts and commentators, no abuse of discretion or waste of corporate assets." *Off. Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (internal quotations omitted), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).  In fact, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  Courts in this district have consistently and appropriately been loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence and will uphold a board's decisions as long as they are attributable to any "rational business purpose." *In re Integrated Res.*, 147 B.R. at 656.

23.     Further, the Debtors seek authority to assume the Leases (other than the Lease for the Retained Aircraft), subject to the terms and provisions set forth in the Stipulation, upon the effective date of a Chapter 11 Plan for the Lessee pursuant to Section 365 of the Bankruptcy Code. Section 365 of the Bankruptcy Code allows a debtor in possession (with bankruptcy court approval) to maximize the value of its estates by, among other things, assuming executory contracts and unexpired leases. *See* 11 U.S.C. § 365(a); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521–22 (1984); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993).

24.     In determining whether to permit a debtor to assume or reject a contract or lease, "the debtor's interests are paramount." *COR Route 5 Co. v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d 373, 383 (2d Cir. 2008). Accordingly, the decision to assume or reject an executory contract or unexpired lease is governed by the business judgment rule, which requires that a debtor determine that the requested assumption would be beneficial to its estates. *See Grp. of Institutional Invs. v. Chicago, M., St. P. & P.R. Co.*, 318 U.S. 523, 550 (1943) (finding that the question of assumption "is one of business judgment"); *In re Penn Traffic*, 524 F.3d at 383 (same); *In re Old Carco LLC*, 406 B.R. 180, 188 (Bankr. S.D.N.Y. 2009) (same); *In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006) (same).

25.     In considering a motion to assume an executory contract or unexpired lease, a debtor "should examine a contract and the surrounding circumstances and apply its best 'business judgment' to determine if [assumption] would be beneficial or burdensome to the estate." *In re Orion Pictures*, 4 F.3d at 1099; *see also In re Gucci*, 193 B.R. 411, 415 (S.D.N.Y. 1996). A debtor's decision to assume or reject an executory contract or unexpired lease based on its business judgment will generally not be disturbed "absent a showing of bad faith, or an abuse of business

discretion." *In re Old Carco*, 406 B.R. at 188 (quoting *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994)); *see also In re MF Glob. Inc.*, No. 11-2790 (MG), 2011 WL 6792758, at *2 (Bankr. S.D.N.Y. Dec. 20, 2011) ("The assumption or rejection of an executory contract may be approved if such action would benefit the debtor's estate and is an exercise of sound business judgment."); *In re Chipwich, Inc.*, 54 B.R. 427, 430–31 (Bankr. S.D.N.Y. 1985). The party opposing a debtor's exercise of its business judgment has the burden of rebutting the presumption of validity. *See In re Integrated Res.*, 147 B.R. at, 656.

26.    Given the potential implications of applicable law, the Debtors believe that their agreement to assume the Leases in the future at the time that the Debtors' Chapter 11 plan becomes effective, subject to the terms, protections, and provisions in the Stipulation, is well supported by the Debtors' business judgment.

27.    Moreover, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

28.    The Debtors respectfully submit that the requested relief represents a sound exercise of their business judgment and is justified under sections 363(b), 365 and section 105(a) of the Bankruptcy Code. Specifically, this standard is satisfied because, among other things, the Stipulation will minimize the amount of operating costs and administrative expenses that the Debtors accrue during these Chapter 11 Cases. The Stipulation also consensually resolves potential litigation over the amount of the administrative claims due under the Agreements as well as certain other claims arising under the Leases. The arrangements contemplated by the Stipulation will further allow the Debtors to continue to generate revenue while they analyze their future fleet needs. Moreover, the Stipulation was negotiated with the Counterparties and their counsel at arms'

length and in good faith for the purpose of benefitting the estates.  Analogous usage stipulations have recently been approved by Bankruptcy Courts in the Southern District of New York.  *See, e.g.*, *In re LATAM Airlines Grp. S.A.*, No. 20-11254 (JLG) (Bankr. S.D.N.Y. Aug. 12, 2020) [Docket No. 1681] (stipulations and orders between debtors and aircraft counterparties concerning certain aircraft); *In re Avianca Holdings S.A.*, No. 20-11133 (MG) (Bankr. S.D.N.Y. Jul. 7, 2020) [Docket Nos. 391–432] (same).

29.     In light of the foregoing, and for the reasons detailed in the Ethier Declaration, the Debtors respectfully submit that the approval of the Stipulation, the Term Sheet and the associated transactions, in accordance with the terms and conditions set forth in the Term Sheet and the other portions of the Stipulation, (a) are the result of the Debtors exercising their sound business judgment in accordance with their duties, (b) are in the best interests of their estates and economic stakeholders, (c) further serve to maximize value for the benefit of all creditors, and (d) represent the best available transactions under the circumstances of the Chapter 11 Cases.

**B.     The Court Should Approve the Settlements and Modifications of the Agreements Embodied in the Term Sheet and the Other Portions of the Stipulation Under Bankruptcy Rule 9019.**

30.     As further discussed herein, the Stipulation and Term Sheet resolve certain disputes related to, among other things, unpaid rent.

31.     A court should exercise its discretion to approve settlements "in light of the general public policy favoring settlements."  *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).  However, courts in this District have made clear that "[a]s a general matter, 'settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate.'"  *In re Dewey & LeBouef LLP*, 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012) (citations omitted); *see also Motorola, Inc. v. Off. Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 455 (2d

Cir. 2007) (stating that settlements "help clear a path for the efficient administration of the bankrupt estate").

32.    Under Bankruptcy Rule 9019 and governing case law, a court should approve a compromise or settlement where it makes an independent determination that the compromise or settlement is fair and equitable, reasonable, and in the best interests of the debtor's estate. *See, e.g.*, *In re Genesis Glob. Holdco, LLC*, 2023 WL 6543250, at *5 (Bankr. S.D.N.Y. Oct. 6, 2023); *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. of Chi. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 426 (S.D.N.Y. 1993).  In so doing, a court "may consider the opinions of the trustee or debtor and their counsel that the settlement is fair and equitable."  *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

33.    Furthermore, when assessing whether or not to approve a settlement, "the court need not conduct a 'mini-trial' to determine the merits of the underlying litigation."  *See In re Purofied Down Prods.*, 150 B.R. at 522.  Instead, a court should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'"  *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (alteration in original) (citations omitted).  In this regard, "[t]he 'reasonableness' of the settlement depends upon all factors, including probability of success, the length and cost of the litigation, and the extent to which the settlement is truly the product of 'arms-length' bargaining, and not fraud or collusion." *Ionosphere Clubs*, 156 B.R. at 428.

34.    The Stipulation and Term Sheet were negotiated at arm's length and in good faith among the separate and independent advisors of the Debtors and the Counterparties. *See* Ethier

Decl. ¶ 6.  The Debtors have determined that the terms of the Stipulation and Term Sheet are in the best interests of their estates.  *See id.* ¶ 13.

35.     The Debtors respectfully submit that the Stipulation and Term Sheet satisfy the range of reasonableness test described above.   Rather than engage in costly and value-destructive litigation over the Debtors' obligations to the Counterparties and the classification of the Counterparties' claims, the parties negotiated a consensual resolution as documented in the Stipulation and Term Sheet.  Any efforts to resolve such disputes through litigation would be time-consuming and expensive, and would delay the Debtors' exit from bankruptcy protection and recoveries by their creditors.

36.     Thus, the Stipulation and Term Sheet are fair and equitable, are in the best interests of the Debtors' estates, creditors, and other stakeholders, and should be approved.

C.    **The Court Should Approve the Engine Maintenance Contribution.**

37.     Section 364(b) of the Bankruptcy Code provides that the Court, "after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense."  11 U.S.C. § 364(b).  Here, the Engine Maintenance Contribution will be an unsecured post-petition administrative claim.  The Debtors believe the terms of the Engine Maintenance Contribution is fair and reasonable, and that the Engine Maintenance Contribution is necessary for the Debtors to complete critical engine maintenance.  *See* Ethier Decl. at ¶ 16.

38.     Accordingly, the Debtors request that the Court approve the Lessor Engine Contribution.

## REQUEST FOR WAIVER OF STAY

39.     The Debtors seek a waiver of any stay of the effectiveness of the Order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).

40.     The relief requested herein is necessary to avoid the immediate and irreparable harm to the Debtors.  *See* Ethier Decl. ¶ 16.  Accordingly, such relief is appropriate under the circumstances and under Bankruptcy Rule 6004(h).

## NOTICE

41.     Notice of this Motion has been provided in accordance with the procedures set forth in the *Final Order Implementing Certain Notice and Case Management Procedures* [Docket No. 175].  The Debtors respectfully submit that no further notice is required.

## NO PRIOR REQUEST

42.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of the Order granting the relief requested herein and granting such other relief as is just.


Dated:  New York, New York
        August 8, 2024                  */s/ Evan R. Fleck*_____
                                        Evan R. Fleck
                                        Lauren C. Doyle
                                        Bryan V. Uelk
                                        **MILBANK LLP**
                                        55 Hudson Yards
                                        New York, NY 10001

Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219

Andrew M. Leblanc
Erin E. Dexter (admitted *pro hac vice*)
**MILBANK LLP**
1850 K St NW, Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile:  (202) 263-7586

Gregory A. Bray
**MILBANK LLP**
2029 Century Park East
33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile:  (213) 629-5063

-and-

Kathryn A. Coleman
Christopher C. Gartman
**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

*Counsel for Debtors and Debtors-in-Possession*

**<u>EXHIBIT A</u>**

**Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                         :

In re:                              :     Chapter 11

GOL LINHAS AÉREAS INTELIGENTES S.A.,   :     Case No. 24-10118 (MG)
*et al.*,[1]                          :

                        :     (Jointly Administered)

            Debtors.         :

----------------------------------------------------------------x

## ORDER AUTHORIZING ENTRY INTO STIPULATION

Upon consideration of the motion (the "Motion")[2] of the above-captioned Debtors, seeking

entry of an order pursuant to sections 105(a), 363, 364, 365, 503 and 507 of the Bankruptcy Code,

Bankruptcy Rules 6004 and 6006, and Local Rule 6006-1 (i) authorizing the Debtors[3] to enter into

the Stipulation and (ii) approving the Stipulation between the Debtors and the Counterparties, all

as set forth in and pursuant to the Stipulation and Term Sheet, each as described more fully in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein

in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-*

*431*, dated January 31, 2012 (Preska, C.J.); and it appearing that venue of these Chapter 11 Cases

and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A). The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

[3]    For the avoidance of doubt, each reference to the Debtors herein shall be construed as a reference to the applicable Debtor entity or entities that are party to the related existing transaction and related transaction documents, and each such reference to the Debtors herein shall not, unless otherwise specified, be construed as a reference to all, or any of the other, Debtors.

that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that proper

and adequate notice of the Motion has been given and that no other or further notice is necessary

under the circumstances; and upon the Motion and the Ethier Declaration; and upon the statements

of counsel in support of the relief requested in the Motion at the hearing before the Court; and all

of the proceedings had before the Court; and this Court having determined that the relief requested

in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-

in-interest; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as provided herein.  To the extent any objections or

reservations of rights to the Motion have not been withdrawn or resolved, they are overruled in all

respects on the merits.

2.      Pursuant to sections 363, 364, 365, 503, 507, 553, and 105(a) of the Bankruptcy

Code, the Term Sheet and the other portions of the Stipulation are hereby approved and "so

ordered" as provided herein.

3.      The Debtors and the Counterparties are authorized and directed to enter into the

Stipulation and effect the transactions contemplated thereunder.

4.      The Term Sheet and the other portions of the Stipulation and the transactions

contemplated therein represent a valid exercise of the Debtors' business judgment and are hereby

approved in all respects.

5.      The Debtors and the Counterparties are authorized and directed to (i) execute and

deliver all documentation necessary to implement and effectuate the terms and conditions of the

Term Sheet, the other portions of the Stipulation, and this Order, (ii) comply with all obligations

outlined in the Term Sheet and the other portions of the Stipulation, and (iii) take any additional

actions as are necessary or appropriate to implement and effectuate the entry into and performance under the Stipulation, the Term Sheet, and the Documentation.  It being the intent of this Court that the Term Sheet and the other portions of the Stipulation be approved in their entirety, the failure to specifically describe or include any provision in the Term Sheet or the other portions of the Stipulation herein shall not diminish or impair the effectiveness of such provision.  For the avoidance of doubt, the automatic stay imposed under section 362(a) of the Bankruptcy Code, to the extent applicable, is hereby modified and lifted to permit the parties to enter into and perform under the Stipulation, the Term Sheet, and the Documentation.

6.      Pursuant to section 363 and 365 of the Bankruptcy Code, the Debtors and the Counterparties are authorized to amend the Agreements and enter into lease amendments on the terms set forth in the Term Sheet, subject to the terms and provisions of the Stipulation and the Term Sheet, in each case effective upon the effective date of a Chapter 11 plan for the Lessee (or its successors and assigns).

7.      Pursuant to section 364(b) of the Bankruptcy Code, the Debtors and the Counterparties are authorized to enter into the Engine Maintenance Contribution.  The Engine Maintenance Contribution constitutes legal, valid and binding obligations of the Lessee and its successors and assigns, enforceable against the Lessee and its successors and assigns, including any trustee, in accordance with their terms.  Each of the Engine Maintenance Contribution and the obligations of the Debtors thereunder shall constitute postpetition obligations of the Debtors and any amounts accruing or owing thereunder to the Lessors or the Counterparties, including but not limited to damages arising out of a breach by the Debtors of any of the documents and agreements relating to the Engine Maintenance Contribution, shall constitute administrative expenses entitled to priority pursuant to section 503(b)(1) of the Bankruptcy Code.

3

8.      Nothing herein or in the documents and agreements relating to the Engine Maintenance Contributions shall constitute a finding with respect to, or have any effect upon, whether the Engine Maintenance Contributions transactions constitute an agreement to extend "financial accommodations" within the meaning of Section 365(c)(2) and 365(e)(2)(B) of the Bankruptcy Code, issues with respect to which no finding has been requested or made and all parties' rights are reserved.

9.      The Debtors and the Counterparties, along with their agents, representatives and trustees, have negotiated and have and are entering into the Engine Maintenance Contribution in compliance with section 364(e) of the Bankruptcy Code and in good faith, within the meaning of Bankruptcy Code Section 364(e), in all respects.   The Counterparties shall have all of the protections of Section 364(e).

10.     Nothing herein waives the Debtors' rights to contest any claims that are subject to bona fide dispute or any available defenses within the framework of the Stipulation.

11.     Payments permitted hereunder shall be subject to and in compliance with the Approved Budget (as defined in the Final DIP Order[4]) (subject to permitted variances) and nothing herein shall constitute a waiver by the DIP Lenders (as defined in the Final DIP Order) of any default under the terms of the Final DIP Order or any DIP Documents (as defined in the Final DIP Order); *provided, however*, that nothing in this paragraph shall prohibit or restrict the Debtors from making any payments permitted hereunder, or relieve the Debtors from their obligation to make such payments, to the extent required by or provided for in this Order, the Term Sheet, and the other portions of the Stipulation *provided, further*, that nothing in this paragraph shall limit the

---

[4]    "Final DIP Order" means the *Final Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (C) Granting Adequate Protection to the Prepetition Secured Parties, (D) Modifying the Automatic Stay, (E) Authorizing the Debtors to Use Cash Collateral, and (F) Granting Related Relief* [Docket No. 207].

amount of allowed administrative expense claims pursuant to sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code or any remedies of the Counterparties or the Lessors for the failure of the Debtors to pay any amounts or otherwise perform under this Order, the Stipulation, the Term Sheet, the Documentation, and the Leases and including (without limitation) any damages resulting from an Event of Default thereunder.

12.     The Court's approval of the Stipulation shall in no way be deemed a finding binding on the Committee that any particular transfer of a claim subject to the "Claim Assignment and Voting Rights" provision of the Stipulation (the "Claim Transfer Provision") complies with Section 1126 of the Bankruptcy Code or other applicable law.  All rights of the Committee (but no other party) to challenge the applicability of the Claim Transfer Provision to any actual claim assignment or participation interest are fully reserved in connection with solicitation or confirmation of any plan of reorganization.  For the avoidance of doubt, to the extent the Court ultimately determines, based on an objection filed by the Committee in connection with the reservation of rights contained in this paragraph, that a party who purchased an interest in a claim subject to the Claim Transfer Provision is the proper party to vote on a plan of reorganization for any reason, such determination shall in no way be deemed a breach by the Counterparties of the Stipulation or invalidate the Stipulation, the relevant claim assignment or any vote properly lodged in connection with such claim.  Nothing in this paragraph imposes any notice or reporting obligations on the Lessors.

13.     To the extent provided under the Stipulation and/or applicable law, the obligations of the Debtors under the Stipulation and the Leases and the other Agreements (as modified by the Term Sheet) shall constitute administrative expenses of the applicable Debtor's estate(s) pursuant to sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

14.     Notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates and their creditors, their respective affiliates, successors, and assigns, and any affected third parties, including, but not limited to, the Counterparties and all other persons asserting interests in the relevant Aircraft.

15.     To the extent that there may be any inconsistency between the terms of the Motion and the express terms of this Order, the express terms of this Order shall govern.

16.     Notice of the Motion is adequate under Bankruptcy Rule 6004(a).

17.     The terms and provisions of this Order shall be immediately effective and enforceable upon its entry.  The effectiveness of this Order shall not be stayed pursuant to Bankruptcy Rules 6004(h), 6006(d) or 7062 or otherwise.

18.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

19.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order, the Engine Maintenance Contribution, the Term Sheet and the other portions of the Stipulation.


Dated: _____, 2024        _____
        New York, New York                      THE HONORABLE MARTIN GLENN
                                                CHIEF UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT B

**Stipulation**

Evan R. Fleck
Lauren C. Doyle
Bryan V. Uelk
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

-and-

Gregory A. Bray
**MILBANK LLP**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

Andrew M. Leblanc
Erin E. Dexter (admitted *pro hac vice*)
**MILBANK LLP**
1850 K St. NW, Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile: (202) 263-7586

Kathryn A. Coleman
Christopher C. Gartman
**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

*Counsel for Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re:                                                              :    Chapter 11
                                                                     :
GOL LINHAS AÉREAS INTELIGENTES S.A., *et* :    Case No. 24-10118 (MG)
*al.,*[1]                                                          :
                                                                     :
                      Debtors.                             :    (Jointly Administered)
------------------------------------------------------------x

### STIPULATION AND ORDER BETWEEN DEBTORS AND
### COUNTERPARTIES CONCERNING CERTAIN EQUIPMENT

This Stipulation (including **Exhibit A** and **Exhibit B** hereto, collectively, this

"Stipulation") is entered into on the date hereof by and among the debtors in the above-captioned

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A).  The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil

case (the "Debtors") and each of the parties set forth in **Exhibit A** hereto (the "Counterparties", and the Counterparties together with the Debtors, the "Parties") with respect to the aircraft lease agreements between GOL Linhas Aéreas S.A. (the "Airline Debtor") and the relevant lessor Counterparty (each, a "Lease") and the related operative documents (howsoever defined in such Lease) with respect to such Lease (collectively, and including each Lease, the "Agreements" and each an "Agreement"), relating to, as applicable, the airframe, engines, appliances, related parts and equipment, and all records, logs and documents relating thereto (all as more specifically identified in the applicable Lease, collectively, the "Equipment") listed on **Exhibit A** hereto, in addition to any agreement(s) related to the Senior Glide Notes (as defined in the Term Sheet).

### Recitals

A.      On January 25, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court") commencing these cases under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are authorized to operate their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

B.      The Debtors and the Counterparties have engaged in good faith negotiations to assist the Debtors in their efforts to rationalize their fleet on a cost-effective basis while protecting the respective Counterparty's rights and interests in the Equipment.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, and other good and valuable consideration, the Parties, intending to be legally bound, stipulate and agree as follows:

2

1.      This Stipulation is effective with respect to the Agreements and the related Equipment for the period from the Petition Date through the earliest to occur of (i) the effective date of the assumption of the Leases and the other related Agreements with respect to the Retained Equipment (as defined in the Term Sheet, the "Amended Agreements") pursuant to the terms of the term sheet attached hereto as **Exhibit B** (the "Term Sheet"), which shall be the effective date of a plan of reorganization filed for the Debtors or such earlier date as the parties in a further stipulation agree, (ii) the date the Equipment is returned to the Counterparties following a Rejection Event (as defined in paragraph 8 below)), (iii) the date the Equipment is returned to the Counterparties following a termination by the Counterparties pursuant to paragraph 7 hereof and (iv) solely with respect to the Equipment with MSN 35825 (as defined below), the date such Equipment is returned to the applicable Counterparty in accordance with the terms of the Term Sheet (such period of effectiveness, the "Stipulation Period").  Unless otherwise agreed by the Parties, the date that the Stipulation Period is terminated (except pursuant to paragraph 1(i)) shall be deemed to be the rejection date for purposes of section 365 of the Bankruptcy Code for all of the Agreements with respect to the Equipment. The Agreements relating to MSN 35825 that will not be assumed pursuant to the Term Sheet shall be deemed rejected upon the dates they are terminated in accordance with the Term Sheet, and the rejection claims that relate to or arise from such Agreements that are being rejected shall be limited to the claims with respect thereto set forth in this Stipulation or the Term Sheet, as applicable.

2.      Upon termination of the Stipulation Period solely pursuant to paragraph 1(ii) hereof:

(a)      the Debtors shall cooperate with the relevant Counterparty on completing an orderly redelivery process by:

3

(i)      as soon as practicable, making the Equipment, including the original engines listed on Exhibit A hereto, which shall be installed on the applicable airframe (unless any such engine is not in an airworthy condition or is subject to a possessory lien relating to the pre-petition period and remains in the custody of the party holding such lien) and all other original Equipment (unless replaced in accordance with the terms of the Agreements) available for retrieval by the applicable Counterparty at such Equipment's then-current location and in such Equipment's then "as is, where is" condition and after 30 days (or such longer period as is agreed in writing by the Debtors and the applicable Counterparties) of the Equipment being made available for return, all risk of damage, injury, loss and liability of the Equipment shall pass to the applicable Counterparty and the Debtors shall have no further obligations whatsoever with respect to the Equipment except for any reasonable cooperation pursuant to subclause (b) below; provided the Counterparties retain the right to assert any claims they may have against the Debtors as set forth herein (subject to the Debtors' right to object to and/or challenge, among other things, the allowance, validity, priority, or amount of such claims and any purported liens asserted by any of the Counterparties, in each case, except as otherwise set forth in this Stipulation);

(ii)     upon the applicable Counterparty's request and at such Counterparty's sole cost and expense, cooperating in taking all actions (including filings) and signing and providing all documents reasonably required by the Counterparties with regard to the deregistration and export from the current state of registration or country of previous importation (in each case, to the extent applicable); and

4

(iii)    making available for retrieval at their then-current location, or at such other location as may be agreed upon by the applicable Counterparty and the Debtors, technical records, documents, reports and statements relating to the Equipment that are in the Debtors' possession or control (the "Technical Records"), in their then "as is, where is" condition, without certification or signature and without performing any independent verification or audit thereof, except (x) for any Technical Record that, in the reasonable judgment of the Debtors, does not require the Debtors to perform more than *de minimis* additional verification or audit and (y) the Debtors will provide all dirty fingerprint records (the "DFRs") corresponding to the period operated by the Debtors stamped and signed by the relevant Debtor, prepare and sign an accident-incident clearance statement and sign and return all maintenance summaries in the Debtors' possession; and

(b)    In connection with the return of any Equipment in accordance with the procedures set forth in paragraph 2(a) hereof, the Debtors shall, upon the applicable Counterparty's request and at such Counterparty's sole cost and expense, in a commercially reasonable manner:

(i)    use its commercially reasonable efforts, taking into account the Debtors' operational and commercial limitations, to cooperate with such Counterparty on locating, updating and verifying any Technical Records, documents, reports and statements relating to the Equipment, including any documents that such Counterparty identifies as missing, incomplete or otherwise not made available at the time of the return;

(ii)    cooperate with the Counterparties in order to assign any remaining assignable manufacturer warranties and warranty claims, or the benefit thereof, to the owner of the related Equipment;

5

(iii)     subject to entering into a mutually acceptable ferry flight agreement (and each of the Counterparties and the Debtors shall not unreasonably delay or withhold their agreement to such ferry flight agreement), deliver the Equipment, the Technical Records and all other items listed in paragraph 2(a) above, as applicable, from its or their then current location to a location in Brazil or the contiguous United States advised by such Counterparty and reasonably acceptable to the Debtors, via a ferry flight and/or shipment in the case of Equipment subject to Agreements that are engine leases (the timing, manner and scheduling of such ferry flight and/or shipment to be subject to a commercial reasonableness standard, taking into account the Debtors' operational and commercial limitations as to feasibility, timing and manner of redelivery); *provided* that the Debtors shall incur no additional costs as a result of complying with its obligations under this paragraph 2(b);

(iv)     the Counterparties shall, within 30 days of receipt of the Debtors' summary of charges therefor, reimburse the Debtors for the Debtors' actual and reasonable costs and expenses of: (i) storing, insuring and maintaining the Equipment for the period from the thirtieth day after the Equipment is made available to the Counterparty as a result of the termination of the Stipulation Period pursuant to paragraph 1(ii) hereof through the date that the Equipment is returned to the Counterparties and (ii) performing any other services or taking any other actions described in paragraph 2(b) hereof;

(v)     for the avoidance of doubt, any amounts charged by the Debtors to the Counterparties pursuant to the terms of this Stipulation for storage, maintenance or other services shall be determined as follows: (A) if performed or provided by parties other than the Debtors, such costs shall be the actual out-of-pocket amounts invoiced to the

Debtors for such services without any added profit or other mark-up and (B) if performed

by the Debtors, be charged in accordance with the Debtors' standard rates charged to third

parties for such services.  All payments to the Debtors under this Stipulation shall be made

by wire transfer in immediately available funds, without any set-off or counterclaim; and

(vi)    notwithstanding the termination of the Stipulation Period, the

Agreements with respect to Equipment shall be deemed to continue in effect through the

date that the Debtors return such Equipment to the Counterparties solely for the purpose of

enabling the Debtors to comply with its obligations hereunder.

3.    Upon termination of the Stipulation Period pursuant to paragraphs 1(iii) and 7

hereof, the Airline Debtor shall return the applicable Equipment (other than, for the avoidance of

doubt, MSN 35825, which is addressed in the next sentence) in accordance with, and in any

condition required by, the return procedures and conditions provided in the relevant Agreements,

subject to any modifications in the Term Sheet, at Debtors' cost. With respect to MSN 35825, the

Airline Debtor shall return the Equipment in accordance the Term Sheet.

4.    Except as expressly provided herein, during the Stipulation Period, the Airline

Debtor and each other Debtor that is an obligor, guarantor and/or indemnitor under the Agreements

shall comply with their respective obligations pursuant to the Agreements, subject to any

modifications set forth in the Term Sheet.

5.    Promptly following the execution of this Stipulation, the Debtors shall submit this

Stipulation for approval by the Court. The Debtors shall file a motion seeking approval of the

Stipulation and the transactions contemplated herein and hereby agree that any motion papers,

including with respect to the approval of the Term Sheet and the other terms of this Stipulation,

shall be provided to the Counterparties prior to filing such motion papers and that such motion

7

papers must be in form and substance reasonably acceptable to the Counterparties, which consent may not unreasonably withheld or delayed (and which consent may be evidenced by an exchange of emails between counsel for each of the Debtors and the Counterparties).

6.      The Debtors shall: (a) within 5 business days after the date that this Stipulation is approved by the Court, pay to the Counterparties the accrued rent and other amounts payable as set forth in the Term Sheet that relate to the period from the Petition Date through the date that an order approving this Stipulation is entered by the Court; and (b) during the Stipulation Period and subject to any modifications set forth in the Term Sheet, pay all Rent (or similar term, howsoever defined under the terms of the applicable Agreement as and to the extent modified by the Term Sheet) and any other amounts that are due and owing on the relevant payment date set forth in the applicable Agreement as and to the extent modified by the Term Sheet.

7.      If, during the Stipulation Period, the Counterparties assert that the Debtors have breached their obligations under this Stipulation or the Agreements as and to the extent modified by the Term Sheet:

(a)      To the extent a Counterparty has actual knowledge thereof, such Counterparty shall provide the Debtors with written notice of the breach (a "Specified Breach"), which notice may be provided via an email from counsel to such Counterparty to counsel for the Debtors. Nothing contained herein shall be deemed to require a Counterparty to provide the Debtors with notice of a breach if such Counterparty is not actually aware of such breach or elects to delay or refrain from enforcing its remedies with respect to such breach, and no delay or forbearance from providing notice shall be deemed to be a waiver with respect to such breach;

(b)      If a Specified Breach is capable of being cured, the Debtors shall have any cure period as may be provided in the relevant Agreement (subject to any modifications in the

8

Term Sheet), to remedy such Specified Breach (the "Cure Period"). If a curable breach is remedied within the relevant Cure Period, then the Stipulation Period shall continue as provided herein and each Counterparty shall not assert or otherwise be entitled to any administrative expense or priority in payment with respect to the Specified Breach; and

(c)      If the Debtors fail to remedy any Specified Breach within the applicable Cure Period (if any) or the Specified Breach is not curable, then, unless such breach is waived in writing by a Counterparty or the Cure Period is extended in writing by a Counterparty (which waiver or extension, in either case, shall be in such Counterparty's sole discretion), then such Counterparty, in its sole discretion, may, upon written notice to the Debtors[2]: (i) terminate the Stipulation Period as to any or all of the Agreements with respect to Equipment; (ii) direct the Debtors to (whereupon the Debtors shall) return the relevant Equipment in accordance with paragraph 3 hereof; and (iii) assert an administrative expense claim and/or an unsecured claim against the Debtors, in each case as permitted under this Stipulation, the Term Sheet, the Bankruptcy Code and/or the Cape Town Treaty (defined below) to the extent applicable. The Debtors reserve all rights and defenses with respect to any claim asserted by a Counterparty. Notwithstanding the termination of the Stipulation Period pursuant to this paragraph, the Agreements as and to the extent modified by the Term Sheet shall be deemed to continue in effect through the date that the Airline Debtor returns the Equipment to the applicable Counterparty solely for the purpose of enabling the Debtors to comply with their return obligations in accordance with this Stipulation.

8.      Except upon (a) the occurrence of a Rejection Event or (b) solely with respect to MSN 35825, the termination of the Stipulation Period pursuant to paragraph 1(iv), the Debtors

---

[2] For purposes of this paragraph, written notice may be provided via an email from counsel to the Counterparty to counsel for the Debtors.

9

may not (y) terminate the Stipulation Period; or (z) reject an Assumption Lease (as defined in the Term Sheet) pursuant to section 365 of the Bankruptcy Code. For purposes of this Stipulation, a "Rejection Event" occurs upon: (a) the entry of an order during the Stipulation Period converting the Debtors' Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or (b) pursuant to a written agreement of the Parties that does not result from a termination of the Stipulation Period by the Counterparties pursuant to paragraphs 1(iii), 1(iv) (solely with respect to MSN 35825) and 7 hereof.

9.       The Debtors and the Counterparties are authorized to enter into and perform under any amendments and other Documentation (as defined in the Term Sheet) to the extent necessary to reflect solely the commercial terms set forth in the Term Sheet. To the extent that this Stipulation is executed by any Counterparty who is the owner participant who owns and/or controls the beneficial interests in the trust in which an owner trustee is the lessor under any Lease and can direct such owner trustee who is a lessor under such Lease and the other Agreements relating to such Equipment, such owner participant Counterparty shall take all commercially reasonable actions to direct and cause all of its owner trustees who are lessors under the Leases to be bound by and to comply with the terms of this Stipulation, the Agreements as and to the extent modified by the Term Sheet and the Documentation. Each Amended Agreement shall be enforceable upon execution without any need for further Court approval, and shall become effective upon assumption as provided in paragraph 1(i).

10.      The automatic stay provided under section 362 of the Bankruptcy Code shall be and hereby is modified to allow the Debtors and the Counterparties to (i) effectuate the provisions of this Stipulation, (ii) return, transfer, move, deregister, dispose of or effect title transfer of Equipment in accordance with the terms of this Stipulation and the Agreements, as and to the

10

extent modified by the Term Sheet, (iii) allow the Counterparties to cancel or terminate any Agreements upon a rejection of the Agreements or upon a termination of the Stipulation Period in accordance with this Stipulation; and (iv) allow the Counterparties in their sole discretion to exercise their rights in the security as provided in the Agreements as and to the extent modified by the Term Sheet. The Counterparties agree that they shall not assert any claims against the Debtors in any court other than this Court, except as authorized by this Court.

11.    Except as otherwise provided herein or in the Term Sheet, the Counterparties shall have allowed administrative expense claims (subject to allowance of the amount of the claims by the Court) for: (i) any unpaid amounts due and owing during the Stipulation Period; pursuant to the Stipulation and the Agreements as and to the extent modified by the Term Sheet and (ii) any other damages, amounts payable or other obligations arising from a breach by the Debtors during the Stipulation Period of their respective obligations under this Stipulation, the Agreements as and to the extent modified by the Term Sheet. The Debtors reserve all rights and defenses with respect to the amount of any such claims.

12.    The Counterparties have and may assert (subject to allowance of the amount of the claim by the Court) as pre-petition (non-administrative priority status expense) claims any claims for the difference between the rent or other obligations payable or performable by the Debtors under the Agreements prior to modification by the Term Sheet as compared to the rent or other obligations payable or performable by the Debtors under the Agreements as modified by the Term Sheet, along with, subject to a single satisfaction (*i.e.*, not more than a 100% recovery on such claims), any other pre-petition claims that the Counterparties may have against the Debtors as set forth in the Term Sheet, and any claims for damages arising upon a Rejection Event.  In addition, with respect to any claim not subject to the Term Sheet, and to the extent not inconsistent with the

11

Term Sheet, the Counterparties may assert any other claims they may have against the Debtors whether arising under the Agreements as and to the extent modified by the Term Sheet or any other transaction or circumstance. The Debtors and any representative of the Debtors' estates reserve all defenses, rights and remedies with respect to any claim (prepetition, administrative or otherwise) asserted by any Counterparty. The terms of any general claims bar date order entered by the Court shall apply to the Counterparties, except that any such order shall provide that the Counterparties are not required to file copies of any of the Agreements in connection with the submission of any related proof of claim as set forth in the *Order (I) Establishing Bar Dates for Filing Proofs of Claim; (II) Approving Proof of Claim Forms, Bar Date Notices, and Mailing and Publication Procedures; (III) Implementing Procedures Regarding 503(b)(9) Claims and Administrative Claims; and (IV) Granting Related Relief* [Docket No. 447].

13.    Except in the event that an Agreement was previously rejected following a Rejection Event or, solely with respect to MSN 35825, the Stipulation Period was terminated pursuant to paragraph 1(iv) with respect to certain Equipment, it shall be a breach and event of default under this Stipulation, and the Counterparties shall be authorized to terminate the Stipulation Period as provided in paragraph 7 hereof, if a Court order approving assumption of the Amended Agreements in form and substance reasonably satisfactory to the Counterparties shall not have been entered before or in connection with confirmation of a chapter 11 plan filed for the Debtors.  Unless an Agreement previously was (i) rejected as a result of the occurrence of a Rejection Event, (ii) rejected following the termination of the Stipulation Period by the Counterparties pursuant to paragraph 7 hereof, or (iii) assumed (or assumed and assigned) pursuant to a separate order of the Court, the Debtors agree that any plan filed for the Debtors in the Chapter 11 Cases shall provide for the assumption (or assumption and assignment) of the Amended

Agreements, with the effective date of such assumption (or assumption and assignment) of the Amended Agreements being the effective date of such confirmed plan. Subject to compliance with the terms of this Stipulation, the Agreements, as and to the extent modified by the Term Sheet, all requirements under section 365 of the Bankruptcy Code shall be deemed satisfied upon assumption of the Amended Agreements pursuant to this Stipulation, there are no other cure obligations and the cash cure amount owed shall be zero dollars.

14.     This Stipulation shall be binding, *nunc pro tunc*, as of the Petition Date, upon: (i) the Debtors and any trustee or examiner that may be appointed in the Chapter 11 Cases, as well as each of their respective successors and assigns, (ii) the Counterparties and their respective successors and assigns, as either, as applicable, (a) lessors or (b) with respect to those Counterparties who are owner participants of owner trusts in which the owner trustees are the lessors, as trust beneficiaries (who have hereunder agreed to direct its owner trustees (and the associated owner trusts) to be bound by and comply with this Stipulation), (iii) the trustee in the event that the Chapter 11 Cases are converted to a case under chapter 7 of the Bankruptcy Code; and (iv) all creditors and other parties-in-interest in the Chapter 11 Cases.

15.     Nothing herein shall limit the Counterparties' standing in the Chapter 11 Cases with respect to any matters that affect their interests.

16.     Notwithstanding any other provision contained herein, if the Chapter 11 Cases are dismissed pursuant to an order of the Court and unless the Parties agree otherwise: (i) the Stipulation Period shall terminate effective as of the date such order is entered and (ii) any amendments, settlements or compromises related to the Agreements that are provided for in this Stipulation and/or the Term Sheet shall be deemed null and void and the Agreements and any claims arising thereunder that existed as of the Petition Date shall be in effect between the Parties.

17.     During the Stipulation Period, the performance by the Debtors of the terms and

conditions set forth in this Stipulation, the Agreements as and to the extent modified by the Term

Sheet, and the Term Sheet shall satisfy any and all (i) obligations of the Debtors and (ii) claims

and rights (both monetary or performance based, or lack thereof) of the Counterparties, in the case

of each of the foregoing subclauses (i) and (ii), that arise out of or relate to the Agreements or the

Equipment, and that the Counterparties assert have administrative expense status or priority in

payment, in each case, under any applicable provisions of the Bankruptcy Code, including, but not

limited to, sections 361, 362, 363, 364, 365 or 503 of the Bankruptcy Code, and any similar

provision under the Cape Town Convention on International Interests in Mobile Equipment and

the Protocol thereto on Matters Specific to Aircraft Equipment, each as opened for signature on

November 16, 2001 (the "Cape Town Convention") to the extent any such provision of the Cape

Town Convention is applicable to the Chapter 11 Cases.

18.     This Stipulation, the Term Sheet, any related exhibits or schedules thereto and any

Agreement(s) may be disclosed on an unredacted basis to the (i) Court, (ii) the U.S. Trustee, (iii)

counsel to the Official Committee of Unsecured Creditors on a confidential, professional-eyes-

only basis, (iv) counsel to the debtor-in-possession lenders on a confidential, professional-eyes-

only basis, and (iv) other parties-in-interest with the prior written consent of the Counterparties.

19.     The Agreements, as and to the extent modified by the Term Sheet, and the

Stipulation contain the entire agreement among the Parties with respect to the subject matter

hereof, and may only be modified in writing, signed by the applicable Parties or their duly

appointed agents. In the event of any conflict or inconsistency between any provision of any

Agreement, on the one hand, and any provision of this Stipulation or the Term Sheet, on the other

hand, the relevant provisions of this Stipulation or the Term Sheet shall control. In the event of

any conflict or inconsistency between any provision of this Stipulation, on the one hand, and any provision of the Term Sheet, on the other hand, the relevant provisions of the Term Sheet shall control.

20.     This Stipulation may be executed in one or more counterparts, by facsimile, electronic transmission or otherwise, each of which shall be deemed an original, and all of which, when taken together, shall constitute one and the same document.

21.     This Stipulation shall be effective immediately upon approval by the Court. The Court shall retain jurisdiction for purposes of resolving any issues arising out of or relating to this Stipulation and the Term Sheet.

**SO ORDERED**


Dated: _____, 2024     _____
           New York, New York                       THE HONORABLE MARTIN GLENN
                                                                  CHIEF UNITED STATES BANKRUPTCY JUDGE

August 8, 2024

**STIPULATED AND AGREED TO BY:**

**MILBANK LLP**

*/s/ Evan R. Fleck*
Evan R. Fleck
Lauren C. Doyle
Bryan V. Uelk
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

-and-

Andrew M. Leblanc
Erin E. Dexter (admitted *pro hac vice*)
**MILBANK LLP**
1850 K St NW, Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile: (202) 263-7586

-and-

Gregory A. Bray
**MILBANK LLP**
2029 Century Park East
33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

-and-

Kathryn A. Coleman
Christopher C. Gartman
**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

*Counsel for Debtors and Debtors-in-Possession*

VEDDER PRICE P.C., ON BEHALF OF JSA
INTERNATIONAL U.S. HOLDINGS, LLC, as
lessor for each of the Retained Aircraft


By: */s/ Michael J. Edelman*
Name: Michael J. Edelman
Title: Shareholder

*Counsel for JSA International U.S. Holdings, LLC*

WELLS FARGO TRUST COMPANY, N.A., not in
its individual capacity but solely as owner trustee,
as lessor for MSN 35825

By:‎_____

Name:

Title:

## EXHIBIT A

**Counterparties**

1. JSA International U.S. Holdings, LLC, as Lessor in respect of MSN 39617, MSN 39631, MSN 41170, MSN 41467, MSN 61582, MSN 61583, MSN 61584 and MSN 60233

2. Wells Fargo Trust Company, N.A., not in its individual capacity but solely as owner trustee, as Lessor in respect of MSN 35825

**Equipment**

Collectively, the following aircraft equipment is referred to in the Stipulation as the "**Equipment**":

The following Airframe and Engines and related equipment, as more particularly defined in the applicable Agreements related to such Equipment (along with all constituent equipment, parts and appurtenances thereto):

(a) One (1) Boeing model 737-800 airframe bearing manufacturer's serial number 39617 and registration mark PR-GXD, together with two (2) CFM International model CFM56-B24E engines respectively bearing manufacturer's serial numbers 962860 and 962752 ("**MSN 39617**").

(b) One (1) Boeing model 737-800 airframe bearing manufacturer's serial number 39631 and registration mark PR-GXN, together with two (2) CFM International model CFM56-7B24E engines respectively bearing manufacturer's serial numbers 658507 and 658508 ("**MSN 39631**").

(c) One (1) Boeing model 737-800 airframe bearing manufacturer's serial number 41170 and registration mark PR-GYA, together with two (2) CFM International model CFM56-7B27 engines respectively bearing manufacturer's serial numbers 862245 and 862258 ("**MSN 41170**").

(d) One (1) Boeing model 737-800 airframe bearing manufacturer's serial number 41467 and registration mark PR-GYD, together with two (2) CFM International model CFM56-7B27E/B1 engines respectively bearing manufacturer's serial numbers 862836 and 862837 ("**MSN 41467**").

(e) One (1) Boeing model 737-8 MAX airframe bearing manufacturer's serial number 61582 and registration mark PR-XMN, together with two (2) CFM International model CFM LEAP-1B28 engines respectively bearing manufacturer's serial numbers 603682 and 603770 ("**MSN 61582**").

(f) One (1) Boeing model 737-8 MAX airframe bearing manufacturer's serial number 61583 and registration mark PR-XMO, together with two (2) CFM International model CFM LEAP-1B28 engines respectively bearing manufacturer's serial numbers 603806 and 603814 ("**MSN 61583**").

(g) One (1) Boeing model 737-8 MAX airframe bearing manufacturer's serial number 61584 and registration mark PR-XMP, together with two (2) CFM International model CFM LEAP-1B28 engines respectively bearing manufacturer's serial numbers 603831 and 603847 ("**MSN 61584**").

(h) One (1) Boeing model 737-8 MAX airframe bearing manufacturer's serial number 60233 and registration mark PR-XMR, together with two (2) CFM International model CFM LEAP-1B28 engines respectively bearing manufacturer's serial numbers 603848 and 603856 ("**MSN 60233**").

(i) One (1) Boeing model 737-800 airframe bearing manufacturer's serial number 35825 and registration mark PR-GGJ, together with two (2) CFM International model CFM56-

7B27/B1 engines respectively bearing manufacturer's serial numbers 896892 and 896896 (“**MSN 35825**”).

**Agreements**

A. Aircraft Operating Lease Agreement MSN 39617, dated April 18, 2013, between JSA Aircraft 39617, LLC, as Lessor, and GOL Linhas Aéreas S.A. (formerly VRG Linhas Aéreas S.A.), as Lessee, in relation to MSN 39617, as amended, novated and supplemented from time to time.

B. Aircraft Operating Lease Agreement MSN 39631, dated December 20, 2013, between JSA Aircraft 39631, LLC, as Lessor, and GOL Linhas Aéreas S.A. (formerly VRG Linhas Aéreas S.A.), as Lessee, in relation to MSN 39631, as amended, novated and supplemented from time to time.

C. Aircraft Operating Lease Agreement MSN 41170, dated January 20, 2016, between JSA Aircraft 41170, LLC, as Lessor, and GOL Linhas Aéreas S.A. (formerly VRG Linhas Aéreas S.A.), as Lessee, in relation to MSN 41170, as amended, novated and supplemented from time to time.

D. Aircraft Operating Lease Agreement MSN 41467, dated January 20, 2016, between JSA Aircraft 41467, LLC, as Lessor, and GOL Linhas Aéreas S.A. (formerly VRG Linhas Aéreas S.A.), as Lessee, in relation to MSN 41467, as amended, novated and supplemented from time to time.

E. Aircraft Operating Lease Agreement MSN 61582, dated March 5, 2021, between JSA International U.S. Holdings, LLC, as Lessor, and GOL Linhas Aéreas S.A., as Lessee, in relation to MSN 61582, as amended, novated and supplemented from time to time.

F.  Aircraft Operating Lease Agreement MSN 61583, dated March 5, 2021, between JSA International U.S. Holdings, LLC, as Lessor, and GOL Linhas Aéreas S.A., as Lessee, in relation to MSN 61583, as amended, novated and supplemented from time to time.

G.  Aircraft Operating Lease Agreement MSN 61584, dated March 5, 2021, between JSA International U.S. Holdings, LLC, as Lessor, and GOL Linhas Aéreas S.A., as Lessee, in relation to MSN 61584, as amended, novated and supplemented from time to time.

H.  Aircraft Operating Lease Agreement MSN 60233, dated March 5, 2021, between JSA International U.S. Holdings, LLC, as Lessor, and GOL Linhas Aéreas S.A., as Lessee, in relation to MSN 60233, as amended, novated and supplemented from time to time.

I.  Aircraft Lease Agreement, dated March 22, 2007, between Wells Fargo Trust Company, N.A. (formerly Wells Fargo Bank Northwest, N.A.), not in its individual capacity, except as expressly provided herein, as Lessor, and GOL Transportes Aéreos S.A., as Lessee, in relation to MSN 35825, as amended, novated and supplemented from time to time.

J.  Any and all other operative documents (howsoever defined) relating to the Equipment.

## **EXHIBIT B**

[Term Sheet]

## GOL LINHAS AÉREAS S.A. ("*GOL*")

## INDICATIVE SUMMARY OF PRINCIPAL TERMS AND CONDITIONS

### 8 August 2024

*This Indicative Summary of Principal Terms and Conditions (this "**Summary of Terms**") is a draft for discussion purposes only and remains subject to legal review by all parties. No legally binding obligations will be created prior to the Approval Date (as defined below).*

| | |
|---|---|
| **Transaction Overview** | On January 25, 2024 (the *"Petition Date"*), Lessee and certain of its affiliates (each, a "**Debtor**" and, collectively, the "**Debtors**")[1] filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (as amended or modified, the *"Bankruptcy Code"*) in the United States Bankruptcy Court for the Southern District of New York (the *"Court"* and such proceedings, the "**Chapter 11 Cases**"). |
| | Lessor and Lessee will amend the current lease agreements described in Appendix 1 (each, a "*Lease*" and together, the "*Leases*") for the aircraft described in Appendix 1 hereto (each an "*Aircraft*", together, the "*Aircraft*", and together, excluding the Aircraft bearing MSN 35825, the "*Retained Aircraft*") on the terms set forth herein. |
| | Upon finalizing this Summary of Terms, the parties will negotiate in good faith to finalize, execute, and file with the Court a stipulation approving this Summary of Terms and setting forth certain matters pending the assumption of the Leases (subject to and to the extent modified by this Summary of Terms) (the *"Stipulation"*), which shall be in substantially the same form as filed with the court under Docket No. 380. Subject to approval by the Court of the Stipulation, Lessee and Lessor will implement the terms hereof pursuant to definitive documentation (the *"Documentation"*) that reflects the terms and conditions specified in this Summary of Terms and the Stipulation, which Documentation shall incorporate commercially customary and reasonable terms for implementing the terms set forth herein. Other than as expressly set forth herein, the Leases and the related operative documents shall remain in full force and effect. The Documentation will be prepared by Lessor's counsel. |
| **Lessor** | Jackson Square Aviation, or such other affiliate of Jackson Square Aviation as specified in the applicable Lease and outlined in Appendix 1 (collectively, the "*Lessor*"). |
| **Lessee** | GOL Linhas Aéreas S.A. as lessee under each Lease (the "*Lessee*"). |
| **Basic Rent** | Promptly upon the Court's approval of the Stipulation (the "*Approval Date*"), and in any case within five (5) Business Days thereof, Lessee shall pay to the Lessor the Basic Rent (as such term, or any equivalent term, is defined in each Lease) for each Aircraft listed on Appendix 2 for any Rent Payment Date (as such term, or any equivalent term, is defined in each Lease) to occur during the period beginning on (and including) the |

---

[1] For the avoidance of doubt, each reference to the Debtors herein shall be construed as a reference to the applicable Debtor entity party to the related existing transaction and related transaction documents, and each such reference to the Debtors herein shall not, unless otherwise specified, be construed as a reference to all, or any, of the other Debtors.

|  | Petition Date and ending on the Rent Payment Date immediately prior to the Approval Date and thereafter on each Rent Payment Date with respect to each Lease in respect of the Aircraft subject to and to the extent modified by this Summary of Terms and the Documentation, as applicable, in accordance with the relevant amounts set forth in the following paragraph and Appendix 2 hereto. Such payments of Basic Rent (as modified herein) for each Aircraft that is due herein shall be without duplication of the post-petition amounts previously remitted by Lessee to Lessor in respect of Basic Rent. |
|---|---|
|  |  |
|  | In addition to other claims that Lessor may possess, in exchange for agreeing to amend Basic Rent in accordance with this Summary of Terms and as compensation therefore, Lessee and Lessor agree that each relevant Lessor shall have (subject to allowance by the Court with respect to the amount) a general unsecured claim in an amount equal to the difference between the applicable existing lease rent and the amended lease rent for each applicable Lease, which shall be measured on an NPV basis as of the Petition Date over the remaining applicable Lease Term, (the *"MTM Consideration"*), and the Debtors reserve all rights and defenses in respect of any such claim.  MTM Consideration shall be in addition to any other claims that the Lessor may possess, and the Debtors reserve all rights and defenses with respect to the amount of such claims. |
| **Engine Maintenance Contribution** | Each relevant Lessor agrees to contribute towards the costs incurred by Lessee in procuring engine shop <br><br> The Stipulation shall provide that any Engine Maintenance Contribution provided by the Lessor during the Chapter 11 Cases is being provided pursuant to Section 364(b) of the Bankruptcy Code and Lessor shall have an administrative claim under Section 503(b)(1) of the Bankruptcy Code for the Maintenance Supplemental Rent (as defined below) owed by Lessee to the Engine Lessor in connection with such Engine Maintenance Contribution. A failure to pay Maintenance Supplemental Rent under any Lease subject to and to the extent modified by this Summary of Terms shall be deemed to be a failure to pay "Basic Rent" for purposes of such applicable Lease. <br><br> Each Engine Maintenance Contribution shall be equal to |



(the "*Lessor Contribution Amount*").

Lessee and Lessor agree to enter into a tripartite agreement (the "*Tripartite Agreement*") with the relevant maintenance provider which shall detail the obligations of the parties with respect to the pro-rata payment of the invoices provided by such maintenance provider.

In return for receipt of each Engine Maintenance Contribution and as compensation thereto, Lessee shall pay to the relevant Lessor following such Engine Maintenance Contribution as supplemental rent ("*Maintenance Supplemental Rent*") an amount

Interest in respect of the Lessor Contribution Amount shall accrue from the date the relevant Lessor makes the payment of the Lessor Contribution Amount to the relevant maintenance provider under the Tripartite Agreement which, for the avoidance of doubt, may be in one or more payments depending on payment terms under such Tripartite Agreement with such maintenance provider. The Maintenance Supplemental Rent in respect of an Engine shall be paid monthly under the applicable Lease subject to and to the extent modified by this Summary of Terms, commencing on the first Rent Payment Date under such Lease following the delivery and acceptance of the applicable Engine from the maintenance provider by Lessee.

Prior to the induction of any Engine subject to Engine Maintenance Contribution, Lessor shall have approved the workscope and cost estimate with respect to such Engine.

| | |
|---|---|
| **Engine Title Swap and 35825 Early Redelivery** | The engine bearing ESN 962752 (currently titled to the Aircraft bearing MSN 39617) shall become an "Engine" under the Lease for the Aircraft bearing MSN 35825 and the engine bearing ESN 896892 (currently titled to the Aircraft bearing MSN 35825) shall become an "Engine" under the Lease for the Aircraft bearing MSN 39617 (the "*Engine Title Swap*"). |

Lessor and Lessee agree that the Aircraft bearing MSN 35825 (for avoidance of doubt, following the Engine Title Swap) will be redelivered promptly, and as soon as reasonably practical, following the Approval Date in an "as-is" condition (the "*35825 Early Redelivery*"), with all titled parts and components re-installed. Lessee shall ferry the Aircraft (or, if applicable, ship any unserviceable Engine) to a redelivery location specified by Lessor in the continental United States at Lessee's expense (such flight, the "*Ferry Flight*"; such redelivery location in the United States, the "*Redelivery Location*"). The Lessor and the Lessee agree to the following technical acceptance procedures for the MSN 35825 Aircraft:

Subject to the Lessee complying with its obligations hereunder and to the foregoing treatment, Lessee and Lessor agree that the relevant Lessor of MSN 35825 may assert a general prepetition unsecured claim for (i) any amounts outstanding under such Lease, (ii) any return condition deficiencies as a result of the 35825 Early Redelivery, or (iii) any other claim arising out of or in respect of such Lease, and receipt of the treatment provided for such general unsecured claim and/or any claim set forth in the Stipulation under the Chapter 11 Plan shall be in full and final satisfaction of any amounts outstanding; provided that Lessor reserves all rights with respect to such treatment and the Chapter 11 Plan; provided further that the Debtors reserve all rights and defenses with respect to such claim.

**End of Lease Obligations ("EOL")**

| | |
|---|---|
| |  |
| **Merger** | Notwithstanding anything to the contrary in the Leases, Lessee or any affiliate of Lessee may (i) dispose, convey or transfer all or a material part of its assets to an affiliate and (ii) consolidate or merge with any other affiliated person (whether by one or a series of transactions, related or not) (each, a "***Corporate Transaction***"), and no default or event of default (howsoever defined) shall occur as a result therefrom; provided that such transaction is pursuant to a plan of reorganization of Lessee and its affiliates filed by or on behalf of the Debtors (the "***Chapter 11 Plan***") and that, other than defaults waived pursuant to this Summary of Terms, no other default or event of default has occurred under any of the Leases, <u>provided further</u> that the Lessor shall not be economically prejudiced by such Corporate Transaction; and provided further that, if Lessee is the subject of such Corporate Transaction, the surviving entity is subject to the terms and conditions of the relevant Documentation with respect to the Aircraft and subject to completion by Lessor of satisfactory "know your customer" checks and receipt by Lessor of any documentation reasonably requested<br><br>For the avoidance of doubt and notwithstanding anything to the contrary in the Leases, but subject to the foregoing, (i) no "Change of Control" (or similar term, howsoever defined) shall be deemed to occur under the Leases subject to and to the extent modified by this Summary of Terms and, upon being executed, the Documentation as a result of any such Corporate Transaction and (ii) any change of control solely in respect of the cancellation of existing equity and/or the issuance of new equity in connection with the Chapter 11 Plan or the Chapter 11 Cases of the Debtors shall not be deemed a default or event of default. |
| **Miscellaneous** | |
| **Glide Notes** | The Lessor and the Lessee agree that upon the entry of the Approval Order and through the effective date of the Chapter 11 Plan, with respect to the Senior Glide Notes held by or for the benefit of the Lessor, the Lessor agrees not to exercise cross default rights between the Leases and the Glide Notes (a) in respect of any default or event of default currently existing under the Glide Notes, (b) arising in respect of any restructuring terms |

in respect of the Glide Notes as provided in this Summary of Terms, (c) for any defaults or events of default resulting from the transactions provided for under that certain Order (I) Authorizing the Debtors to (A) Utilize Cash Collateral and (B) Grant Adequate Protection, (II) Vacating or Modifying the Automatic Stay, and (III) Granting Related Relief, dated March 18, 2024 [Docket No. 289] (the "**Cash Collateral Order**"), and (d) with respect to other matters relating to the Leases, subject to both (i) the applicable Debtors being in compliance with their respective obligations under this Summary of Terms, the Stipulation and, when executed, the Documentation and (ii) no Termination Date having occurred under the Cash Collateral Order (as defined herein).

In exchange for a Lessor's Senior Secured Amortizing Notes (collectively, the "***Senior Glide Notes***"), the Lessor shall receive, on the effective date of the Chapter 11 Plan, new notes in a principal amount equal to the outstanding principal amount of Lessor's Glide Notes as of the Petition Date (less any amortization payments made during the pendency of the Chapter 11 Cases) (collectively, the "***Replacement Glide Notes***"). The Replacement Glide Notes shall bear the same interest rate as the Senior Glide Notes with quarterly amortization payments commencing after the effective date of the Chapter 11 Plan and a final maturity date of no later than 60 months from the effective date of the Chapter 11 Plan. The Replacement Glide Notes shall have the same priority and be secured by the same collateral as the Senior Glide Notes. Subject to the Debtors not being in breach of their obligations under the Cash Collateral Order, during the pendency of the Chapter 11 Cases, Lessor shall consent to the Debtors' continued use of cash collateral arising from the collateral pledged to secure the Senior Glide Notes, consistent with the terms and conditions of the Cash Collateral Order. The Chapter 11 Plan will provide that the Lessor will receive the treatment for the Senior Glide Notes and the issuance of the Replacement Glide Notes as set forth herein. The Lessor represents that it is the sole holder of the applicable Senior Glide Note.  The issuer shall pay (or cause to be paid) to the Senior Glide Notes held by or for the benefit of the Lessors the amount of accrued interest (excluding, for the avoidance of doubt, any default interest) under their Glide Notes during the period beginning on (and including) the payment date occurring under the Indenture immediately prior to the Petition Date and ending on the Petition Date that remains outstanding in respect of such Glide Notes no later than the date of issuance of the Replacement Glide Notes.

The Chapter 11 Plan will provide that the Lessor will receive treatment for the Glide Notes and the issuance of the Replacement Glide Notes as set forth herein.

The Chapter 11 Plan will further provide that the Lessor and any affiliated parties holding Senior Glide Notes will receive the treatment for the Glide Notes as set forth above or such better treatment (as reasonably determined by the Lessor) as may be agreed to by the Debtors and a majority of the holders of the Senior Glide Notes; provided that, if the class of Glide Notes under the Chapter 11 Plan votes to reject the Chapter 11 Plan, the Debtors reserve all rights to propose an alternative treatment for such class. For the avoidance of doubt, the change of control provision set forth in the Glide Notes is not applicable until after the effective date of the Chapter 11 Plan.

The Lessor's agreement to the treatment of the Glide Notes as provided in this Glide Notes section of this Summary of Terms is conditioned upon the following further terms and conditions: (a) subject to the applicable noteholders and/or the trustee not having terminated the consensual use of cash collateral as provided under the terms of the Cash Collateral Order while the Debtors are not in breach of the terms of such Cash Collateral

| | |
|---|---|
| | Order, both (i) the Debtors shall not seek to recharacterize the interest and other payments made by the Debtors under the terms of the Cash Collateral Order and (ii) no Termination Date has occurred under the Cash Collateral Order; (b) either (i) a majority of both the noteholders holding the Senior Secured Amortizing Notes and the Subordinated Secured Amortizing Notes that are the subject of the Cash Collateral Order have accepted the proposed terms for the restructuring of such notes as set forth in this Glide Notes section of this Summary of Terms (as modified with respect to the Senior Secured Amortizing Notes to reflect the differences between the Senior Secured Amortizing Notes and the Subordinated Secured Amortizing Notes) or (ii) such treatment meets the requirements for treatment of the claims represented by the Senior Secured Amortizing Notes and the Subordinated Secured Amortizing Notes under Section 1129 of the Bankruptcy Code; and (c) with respect to any other terms provided for in the Replacement Glide Notes that differ from the Glide Notes and/or the identity of the issuer, Lessor is not economically prejudiced by such other terms. |
| **Cross-Default** | The Leases, as modified hereby and, upon being executed, the Documentation (excluding, for the avoidance of doubt, the Replacement Glide Notes), shall only be cross defaulted and cross collateralized to each other from and after the effective date of the Chapter 11 Plan with respect to any obligations that relate to or arise from the Leases as and to the extent modified by this Summary of Terms or, upon being executed, the Documentation (excluding the Replacement Glide Notes) incurred by Lessee from and after the Petition Date. Notwithstanding the foregoing, to the extent existing in any current Lease, the Leases, as modified hereby and, upon being executed, the Documentation, shall not include cross-default and cross-collateralization provisions with respect to any other lease or other agreement of Lessee or an affiliate of the Lessee including, without limitation, with respect to the termination of such other lease or related agreement.

Without limiting the requirement for the Lessee to assume the Leases subject to and to the extent modified hereby and, upon being executed, the Documentation (*i.e.*, the Lessee cannot cherry-pick the assumption of such Leases and the Documentation without violating such cross-default and/or cross-acceleration provisions), any currently existing cross-default and/or any existing cross-acceleration as provided under the Leases shall be tolled until, and deemed cured and de-accelerated upon, the effective date of the Chapter 11 Plan; underlined provided that the Lessee is in compliance with this Summary of Terms, the Stipulation, the Leases (subject to and to the extent modified by this Summary of Terms), and, upon being executed, the Documentation; underlined provided, further, that, any cross-default or cross-acceleration provision shall apply only to the obligations of the Lessee under the Leases subject to and to the extent modified by this Summary of Terms, and, upon being executed, the Documentation (excluding, for the avoidance of doubt, the Replacement Glide Notes), as applicable, from and after the Petition Date. |
| **Confidentiality** | This Summary of Terms is strictly confidential and must not be revealed by Lessor or Lessee to any person other than those employees, directors, officers, or professional advisers of the parties hereto or their affiliates (as applicable) who are responsible for analyzing, negotiating, and approving the transaction and who are made aware of the confidential nature of this Summary of Terms; underlined provided that, Lessee and its representatives may disclose this Summary of Terms on a confidential basis to the Court, the Office of the United States Trustee, the Official Committee of Unsecured Creditors (the "***Committee***") and the lenders under a debtor-in-possession financing, in each case, on a "professional eyes only basis" in the Chapter 11 Cases and to the extent necessary to obtain Court approval as described herein. |

|  | Lessor and Lessee agree that a redacted version of this Summary of Terms will be attached to the Stipulation filed with the Court, but a full version of this Summary of Terms will be provided to the Court and the United States Trustee on a confidential basis. |
|---|---|
| **Claim Assignment and Voting Rights** | Each Lessor agrees that it may not sell, assign, transfer, dispose of or otherwise convey any general prepetition unsecured claim it may have against any of the Debtors that relates to or arises from the Stipulation, the Leases or the related documents, this Summary of Terms, the Aircraft, and/or any other transactions that are the subject of this Summary of Terms; provided that such Lessor may, with respect to any such general prepetition unsecured claim, sell, dispose of or otherwise convey a participation in such Lessor's rights to receive any distributions on account of such general prepetition unsecured claim under the Chapter 11 Plan; *provided, further,* that any such sale, transfer, disposition, or other conveyance of such participation permitted under the foregoing provisos shall not be effective until the voting deadline established by the Court for the Chapter 11 Plan has passed. Any such sale, assignment, transfer, disposition, or other conveyance in violation of the foregoing provisos shall be null and void. Each Lessor represents and warrants to the Lessee that such Lessor is the sole beneficial and legal holder of all rights associated with the general prepetition unsecured claims referenced herein as of the date hereof. |
| **Bankruptcy Terms and Conditions** | Lessee and each Lessor agree that this Summary of Terms shall be annexed to the Stipulation (in the form as specified above). This Summary of Terms and the Stipulation are subject to approval of the Court. The terms of this Summary of Terms shall control over any inconsistent terms or provisions set forth in the Stipulation.<br><br>The Lessee agrees that it will, as of the Effective Date, assume each Lease for a Retained Aircraft (subject to and to the extent modified by this Summary of Terms) and, upon being executed, the Documentation pursuant to the Chapter 11 Plan. For the avoidance of doubt, the Lease with respect to the MSN 35825 Aircraft is not being assumed.<br><br>Subject to the Lessee being in compliance with the terms of the Leases subject to and to the extent modified by the terms hereof and with the Stipulation, each Lessor and Lessee agree that there are no cure (as defined in Section 365(b) of the Bankruptcy Code) obligations or any cure amounts due upon assumption of Leases, as modified hereby, and, upon being executed, the Documentation; *provided, however,* that, once the Leases subject to and to the extent modified by this Summary of Terms and, upon being executed, the Documentation (for avoidance of doubt with the exception of the Lease for the MSN 35825 Aircraft) are assumed by the Lessee pursuant to the Chapter 11 Plan on the effective date of the Chapter 11 Plan, such amount shall not limit the Lessee's obligations under the terms of the Leases subject to and to the extent modified by this Summary of Terms and the Documentation, as applicable.<br><br>The Debtors agree that they will promptly file a motion or other appropriate pleading seeking the approval of the terms of this Summary of Terms, the Stipulation and the transactions contemplated hereunder as soon as reasonably practicable, all in accordance with Sections 363 and 365 of the Bankruptcy Code, which motion (or other pleading) and proposed order approving this Summary of Terms, the Implementing Stipulation and the transactions contemplated herein (such order, an "***Approval Order***") (along with any changes to such proposed Approval Order), must be in form and substance reasonably |

| | |
|---|---|
| | acceptable to both Lessor and Lessee. Such proposed Approval Order shall authorize and approve the terms of this Summary of Terms and the transactions contemplated herein, including, without limitation, (i) the modifications of the Leases as provided herein, (ii) the assumption of the Leases for the Retained Aircraft (as modified by this Summary of Terms) and, upon being executed, the Documentation under to the Chapter 11 Plan on the effective date of the Chapter 11 Plan upon the terms and conditions set forth herein on the effective date of the Chapter 11 Plan and (iii) Lessee and each Lessor entering into the Documentation, and for such Documentation to become effective upon the effective date of the Chapter 11 Plan, without the need for further order of the Court. Additionally, Lessee agrees to promptly file such motion and seek such approvals from the Court as soon as reasonably practicable after this Summary of Terms and the Stipulation is executed by the parties hereto, and each Lessor consents to such filing. |
| | Each Lessor agrees that, until the effective date of the Chapter 11 Plan, any bankruptcy, reorganization, insolvency or financial indebtedness (or, in each case, related cross-defaults) related default or event of default is waived (but excluding any relating to the conversion of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code or any after the dismissal of the Chapter 11 Case of the Lessee, which defaults or events of defaults are not being waived hereunder). |
| **Documentation** | Subject to approval by the Court of the Stipulation, each Lease will be amended to incorporate the terms contained herein and, to the extent the terms contained herein are inconsistent with the term of the relevant Lease, to replace such inconsistent terms of such Lease. |
| | Except as expressly provided herein, the terms of the Leases, as amended by this Summary of Terms, shall remain in full force and effect and shall not be otherwise amended or modified in any way. |
| **Jurisdiction** | The parties agree to submit to the non-exclusive jurisdiction of state and federal courts (including, during the pendency of the Chapter 11 Cases, the Court) sitting in the State and City of New York, Borough of Manhattan to settle any dispute arising in connection with the Stipulation to which this Summary of Terms is attached or, as applicable, the Documentation; provided however that the Court shall (i) have exclusive jurisdiction to hear disputes arising from or related to the Leases, as modified hereby, and, upon being executed, the Documentation during the pendency of the Chapter 11 Cases and (ii) retain such jurisdiction pursuant to the terms of a plan of reorganization confirmed by the Court with respect to (x) the order entered by the Court with respect to the Stipulation and this Summary of Terms, (y) assumption of the Leases for the Retained Aircraft (as modified by this Summary of Terms) and, upon being executed, the Documentation, and (z) administrative expense claims or unsecured claims against the bankruptcy estates of one or more Debtors in the Chapter 11 Cases under the relevant Lease, the related Documentation and their respective related documents. |
| **Summary of Terms Controls** | To the extent that there is any inconsistency between the Summary of Terms and the Stipulation, this Summary of Terms shall control. |
| **Costs and Expenses** | Whether the transaction is consummated or does not close for any reason, Lessee and Lessor will bear their own respective costs and expenses in the negotiation and completion of this Summary of Terms, the Stipulation, the Documentation, the Chapter 11 Plan, and |

|  | in connection with the Chapter 11 Cases (collectively, the "***Costs and Expenses***"); <u>provided</u> that, Lessor may assert only a general prepetition unsecured claim in an amount equal to the reasonable costs and expenses of Lessor's external legal counsel and/or external technical representatives, and the Debtors reserve all rights and defenses with respect to the amount of any such claims. |

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

## APPENDIX 1

### Aircraft

| MSN | ESN #1 | ESN #2 | Lease Expiry | Lessor |
|---|---|---|---|---|
| 35825 | | | | Wells Fargo Bank Northwest N.A. (as Owner Trustee) |
| 39617 | | | | JSA International U.S. Holdings, LLC  (as successor to JSA Aircraft 39617, LLC) |
| 39631 | | | | JSA International U.S. Holdings, LLC  (as successor to JSA Aircraft 39631, LLC) |
| 41170 | | | | JSA International U.S. Holdings, LLC  (as successor to JSA Aircraft 41170, LLC) |
| 41467 | | | | JSA International U.S. Holdings, LLC  (as successor to JSA Aircraft 41467, LLC) |
| 60233 | | | | JSA International U.S. Holdings, LLC |
| 61582 | | | | JSA International U.S. Holdings, LLC |
| 61583 | | | | JSA International U.S. Holdings, LLC |
| 61584 | | | | JSA International U.S. Holdings, LLC |

1. the Aircraft Lease Agreement dated March 22, 2007 (as amended, novated, supplemented or otherwise modified from time to time) as amended and supplemented by letter amendments dated March 22, 2007, October 24, 2007 and April 30, 2007 (the "ASLA"), incorporating the terms of an Aircraft Lease Common Terms Agreement dated September 30, 2005 between GE Capital Aviation Services Limited formerly known as GE Commercial Aviation Services Limited and the Lessee (the "CTA") and as amended by the Lease Agreement Amendment dated May 17, 2011, and the Lease Amendment Agreement No. 2 dated October 31, 2014, the Lease Amendment Agreement No. 3 dated August 31, 2016, the Lease Amendment Agreement No. 4 dated December 30, 2019, and the Amendment No. 5 to Aircraft Lease Agreement dated August 1, 2020, each between the Wells Fargo Trust Company, National Association (formerly known as Wells Fargo Bank Northwest), as lessor and the Lessee relating to one Boeing 737-800 aircraft with manufacturer's serial number 35825 ("**MSN 35825**").

2. the Aircraft Operating Lease Agreement MSN 36917 dated as of April 18, 2013 (as amended, novated, supplemented or otherwise modified from time to time) as amended by Amendment Agreement dated as of October 31, 2014, Amendment No. 2 to Aircraft Operating Lease Agreement MSN 39617 dated as of August 31, 2016, and Amendment No. 3 to Aircraft Operating Lease Agreement MSN 39617 dated August 1, 2020, each entered into between JSA International U.S. Holdings, LLC (as successor by merger to JSA Aircraft MSN 39617, LLC), as lessor and Lessee relating to one Boeing 737-800 aircraft with manufacturer's serial number 39617 ("**MSN 39617**").

3. the Aircraft Operating Lease Agreement MSN 39631 dated as of December 20, 2013 (as amended, novated, supplemented or otherwise modified from time to time) as amended by Amendment Agreement dated as of 31 October 2014, Amendment No. 2 to Aircraft Operating Lease Agreement MSN 39631 dated as of August 31, 2016, and Amendment No. 3 to Aircraft Operating Lease Agreement MSN 39631 dated August 1, 2020, each entered into between JSA International U.S. Holdings, LLC (as successor by merger to JSA Aircraft MSN 39631, LLC), as lessor and Lessee relating to one Boeing 737-800 aircraft with manufacturer's serial number 39631 ("**MSN 39631**").

4. the Aircraft Operating Lease Agreement MSN 41170 dated as of January 20, 2016 (as amended, novated, supplemented or otherwise modified from time to time) as amended by Amendment No. 1 to

Aircraft Operating Lease Agreement MSN 41170 dated as of August 31, 2016 and Amendment No. 2 to Aircraft Operating Lease Agreement MSN 41170 dated August 1, 2020, each entered into between JSA International U.S. Holdings, LLC (as successor by merger to JSA Aircraft MSN 41170, LLC), as lessor and Lessee relating to one Boeing 737-800 aircraft with manufacturer's serial number 41170 ("**MSN 41170**").

5. the Aircraft Operating Lease Agreement MSN 41467 dated as of January 20, 2016 (as amended, novated, supplemented or otherwise modified from time to time) as amended by Amendment No. 1 to Aircraft Operating Lease Agreement MSN 41467 dated as of August 31, 2016 and Amendment No. 2 to Aircraft Operating Lease Agreement MSN 41467 dated August 1, 2020, each entered into between JSA International U.S. Holdings, LLC (as successor by merger to JSA Aircraft MSN 41467, LLC), as lessor and Lessee relating to one Boeing 737-800 aircraft with manufacturer's serial number 41467 ("**MSN 41467**").

6. the Aircraft Lease Agreement MSN 60233 dated March 5, 2021 (as amended, novated, supplemented or otherwise modified from time to time) entered into between JSA International U.S. Holdings, LLC, as lessor and Lessee relating to one Boeing 737-8 MAX aircraft with manufacturer's serial number 60233 ("**MSN 60233**").

7. the Aircraft Lease Agreement MSN 61582 dated March 5, 2021 (as amended, novated, supplemented or otherwise modified from time to time) entered into between JSA International U.S. Holdings, LLC, as lessor and Lessee relating to one Boeing 737-8 MAX aircraft with manufacturer's serial number 61582 ("**MSN 61582**").

8. the Aircraft Lease Agreement MSN 61583 dated March 5, 2021 (as amended, novated, supplemented or otherwise modified from time to time) entered into between JSA International U.S. Holdings, LLC, as lessor and Lessee relating to one Boeing 737-8 MAX aircraft with manufacturer's serial number 61583 ("**MSN 61583**").

9. the Aircraft Lease Agreement MSN 61584 dated March 5, 2021 (as amended, novated, supplemented or otherwise modified from time to time) entered into between JSA International U.S. Holdings, LLC, as lessor and Lessee relating to one Boeing 737-8 MAX aircraft with manufacturer's serial number 61584 ("**MSN 61584**").

**APPENDIX 2 – New Fixed Rent**

| MSN | Current Rent | Interim Rent | Fixed Rent |
|---|---|---|---|
| 35825 | | | |
| 39617 | | | |
| 39631 | | | |
| 41170 | | | |
| 41467 | | | |
| 60233 | | | |
| 61582 | | | |
| 61583 | | | |
| 61584 | | | |

**APPENDIX 3 – Engines Subject to Engine Maintenance Contributions**



**APPENDIX 4 – Indicative Maintenance Supplemental Rent**

The table below sets forth an indicative compensation profile for Lessor in return for providing an Engine Maintenance Contributions. The schedule is indicative only and revised schedules shall be generated with respect to each Engine Maintenance Contribution by application of the same methodology used to generate this indicative profile. ███████████████████████████████████████████████

| Month | Engine Maintenance Contribution | Maintenance Supplemental Rent | Rent Premium Amount |
|-------|-------------------------------|-------------------------------|---------------------|
| 1 | ████████ | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |
| 29 | | | |
| 30 | | | |
| 31 | | | |
| 32 | | | |
| 33 | | | |
| 34 | | | |
| 35 | | | |
| 36 | | | |
| 37 | | | |
| 38 | | | |
| 39 | | | |
| 40 | | | |
| 41 | | | |
| 42 | | | |
| 43 | | | |
| 44 | | | |
| 45 | | | |
| 46 | | | |
| 47 | | | |
| 48 | | | |

| | |
|---|---|
| 49 | |
| 50 | |
| 51 | |
| 52 | |
| 53 | |
| 54 | |
| 55 | |
| 56 | |
| 57 | |
| 58 | |
| 59 | |
| 60 | |

**<u>EXHIBIT C</u>**

**Ethier Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
In re:                                                     :    Chapter 11
:
GOL LINHAS AÉREAS INTELIGENTES S.A.,     :    Case No. 24-10118 (MG)
*et al.*,[1]                                                  :
:
Debtors.                         :    (Jointly Administered)
:
---------------------------------------------------------------x

### DECLARATION OF GREGORY S. ETHIER IN SUPPORT OF DEBTORS' MOTION FOR APPROVAL OF STIPULATION AND ORDER BETWEEN DEBTORS AND COUNTERPARTIES CONCERNING CERTAIN AIRCRAFT AND ENGINES

I, Gregory S. Ethier, make this declaration under 28 U.S.C. § 1746:

1.      I am a Managing Director and Partner at Seabury International Corporate Finance LLC ("Seabury").[2] I joined Seabury's principal advisory practice in 2020. I have over twenty-five years of corporate and advisory experience covering aircraft finance, fleet planning, cash management, business planning, and crisis management. At Seabury, I have advised numerous airline clients on a variety of projects, including business planning/valuation, corporate finance, fleet financing, and airline restructuring in general. I have been involved in over fifteen airline restructurings (in court and out of court proceedings), including the following chapter 11 cases: Aerovías de México, S.A. de C.V. (operating as Aeroméxico), Northwest Airlines Corp., US

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A). The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion (as defined herein).

Airways (1 and 2), Air Canada (CCAA), Gemini Air Cargo, Frontier Airlines, and Kitty Hawk Aircargo.  In addition, I have been a leader in airline restructuring cases around the world, including Kenya Airways PLC and Azul S.A.

2.      The Debtors engaged Seabury as their principal restructuring advisor, as co-lead investment banker, and financial advisor to Milbank LLP, as counsel to the Debtors, with respect to a comprehensive restructuring of the Debtors' general financial obligations.  I lead the Seabury team in providing fleet restructuring strategy and advice to the Debtors, including analysis of the Debtors' fleet financing arrangements and current market conditions, lender/lessor negotiating strategies, and fleet planning.

3.      I submit this declaration (the "Declaration") in support of the *Debtors' Motion for Approval of Stipulation and Order Between Debtors and Counterparties Concerning Certain Aircraft and Engines* (the "Motion").  I am not being specifically compensated for this testimony other than through payments received by Seabury as a professional retained by the Debtors.  I am over the age of eighteen and authorized to submit this Declaration on behalf of the Debtors.

4.      Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge of the Debtors' operations and finances gained throughout Seabury's engagement by the Debtors, my discussions with the Debtors' senior management, other members of the Seabury team, and the Debtors' other advisors, my review of relevant documents, and my opinion based upon my experience.  If called to testify, I would testify to each of the facts set forth herein based on such personal knowledge, discussions, review of documents, or my opinions based upon my related professional experience.

**THE STIPULATION**

5.      A core component of these Chapter 11 Cases and the Debtors' restructuring is

2

the Debtors' fleet and their relationships with their aircraft and engine lessors, lenders, and various other counterparties.  The Debtors are in the process of restructuring the agreements governing their fleet of aircraft on terms consistent with the Debtors' commercial objectives.

6.      As part of this process, the Debtors have evaluated their fleet of aircraft and equipment, reviewing the relevant underlying lease and agreements, and, to the extent prudent, are negotiating amendments to such lease and agreements for aircraft and equipment that the Debtors desire to maintain.  In doing so, the Debtors compared the Leases and the Aircraft to available alternatives and ultimately negotiated (at arm's-length, in good faith, and in consultation with their key stakeholders) new terms, as set forth in the Term Sheet and the other portions of the Stipulation. I believe that the terms of the Leases, as modified under the Term Sheet and the other portions of the Stipulation, represent the best available transactions under the circumstances (i.e., the Chapter 11 Cases), but also would be commercially beneficial transactions irrespective of such circumstances.

7.      As a result of substantial arm's-length negotiations, the Debtors and the Counterparties have agreed to, among other things (i) adjusting the amount of basic rent to be paid for the remaining lease term, (ii) agreeing to an engine title swap and early redelivery of certain equipment, and (iii) agreeing to amend certain end of lease obligations.  Lessors have also agreed under the Term Sheet to contribute towards the costs incurred by Lessee in connection with the performance of certain engine maintenance services.

8.      The Stipulation and Term Sheet also provide that, in exchange for the Lessors' Glide Notes (as defined in the Term Sheet), the Lessors shall receive, under and on the effective date of the Chapter 11 Plan approved by the Court, new notes in a principal amount equal to the outstanding principal amount of the Glide Notes as of the Petition Date (less any amortization

payments made during the pendency of the Chapter 11 Cases) on the terms set forth in the Term Sheet.

9.      Moreover, under the Stipulation and Term Sheet, Lessors have also agreed not to sell, assign, transfer, dispose of or otherwise convey any claim it may have against any of the Debtors that relates to or arises from the Stipulation, the Leases or the related documents, the Term Sheet, the Aircraft, and/or any other transactions that are the subject of the Term Sheet; *provided* that such Lessors may, with respect to any such claim, sell, dispose of or otherwise convey a participation in such Lessors' rights to receive any distributions on account of such claim under the Chapter 11 Plan; *provided, further*, that any such sale, transfer, disposition, or other conveyance of such participation permitted under the foregoing provisos shall not be effective until the voting deadline established by the Court for the Chapter 11 Plan has passed.

10.     Under the Stipulation and Term Sheet, the Leases (other than the Lease for the Retained Aircraft), as modified, will be assumed on the effective date of the Debtors' chapter 11 plan.  The Term Sheet and Stipulation also provide for the assertion of certain administrative priority claims by the Counterparties and the framework for the assertion of unsecured claims by the Counterparties related to the Aircraft and Engines.

11.     Given the potential implications of applicable law, I believe that the agreement to assume the Leases in the future at the time that the Debtors' Chapter 11 plan becomes effective, subject to the terms, protections, and provisions in the Stipulation, is well supported by the Debtors' business judgment.

12.     Furthermore, the Stipulation provides that the Debtors' compliance with the terms and conditions set forth therein shall satisfy any and all (i) obligations of the Debtors and (ii) claims and rights of the Counterparties to administrative expense status or priority in

4

payment, in each case, under any applicable provisions of the Bankruptcy Code, and any similar provision under the Cape Town Convention, that arise out of or relate to the Agreements or the related equipment, to the extent any such provision of the Cape Town Convention is applicable to the Chapter 11 Cases.

13.    I believe that the Debtors' entry into the Stipulation is in the best interest of their estates and constitutes a proper exercise of their sound business judgment.  The transactions set forth in the Term Sheet are an important component of the Debtors' long-term business plan. The Term Sheet was negotiated at arm's length and in good faith by each of the Counterparties and the Debtors, and Seabury and the Debtors have determined that the terms of the Term Sheet are commercially beneficial transactions.

14.    Entry into the Stipulation will enable the Debtors to continue to use the applicable leased Aircraft on a cost-effective basis, while generating significant revenue for their estates and minimizing disruption to their day-to-day operations and forging a path for a more stable operating environment.  The arrangements contemplated by the Stipulation and Term Sheet will allow the Debtors to continue to generate revenue while they analyze their future fleet needs.

15.    I believe that the approval of Stipulation, the Term Sheet, and the associated transactions, in accordance with the terms and conditions set forth in the Term Sheet and the other portions of the Stipulation, (a) are the result of the Debtors exercising their sound business judgment in accordance with their duties, (b) are in the best interests of their estates and economic stakeholders, (c) further serve to maximize value for the benefit of all creditors, and (d) represent the best available transactions under the circumstances of the Chapter 11 Cases.

16.    I believe the terms of the Engine Maintenance Contribution is fair and reasonable, and such financing is critical to completion of certain maintenance events associated with the

Engines.

17.     It is my belief that the relief requested herein is necessary to avoid the immediate

and irreparable harm to the Debtors and their estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my information, knowledge, and belief.

Dated: August 8, 2024                    /s/ *Gregory S. Ethier*
                                         Gregory S. Ethier
                                         Managing Director and Partner
                                         Seabury International Corporate Finance LLC