**Presentment Date and Time: August 23, 2024 at 12:00 p.m. (ET)**
**Objection Deadline: August 16, 2024 at 4:00 p.m. (ET)**

Evan R. Fleck
Lauren C. Doyle
Bryan V. Uelk
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

Andrew M. Leblanc
Erin E. Dexter (admitted *pro hac vice*)
**MILBANK LLP**
1850 K St. NW, Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile: (202) 263-7586

-and-

Gregory A. Bray
**MILBANK LLP**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Counsel for Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
:
In re:                                                            :    Chapter 11
                                                                  :
GOL LINHAS AÉREAS INTELIGENTES S.A.,                              :    Case No. 24-10118 (MG)
*et al.*,[1]                                                      :
                                                                  :
                                                                  :
                                 Debtors.                         :    (Jointly Administered)
                                                                  :
-----------------------------------------------------------------x

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A). The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

**NOTICE OF PRESENTMENT OF DEBTORS'
MOTION FOR ENTRY OF AN ORDER AUTHORIZING
THEM TO ENTER INTO A SETTLEMENT WITH BANCO PINE S.A.**

**PLEASE TAKE NOTICE** that the above captioned debtors and debtors-in-possession (the "Debtors") hereby file the *Debtors' Motion for Entry of an Order Authorizing Them to Enter into a Settlement with Banco Pine S.A.* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that the undersigned will present the Motion to the Honorable Martin Glenn, Chief United States Bankruptcy Judge for the Southern District of New York, One Bowling Green, New York, NY 10004 (the "Court") **on August 23, 2024, at 12:00 p.m. (prevailing Eastern time)** (the "Presentment Date") for approval and signature.

**PLEASE TAKE FURTHER NOTICE** that any objections or responses to the Motion shall: (i) be in writing; (ii) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York, and the *Final Order Implementing Certain Notice and Case Management Procedures* [Docket No. 175]; (iii) be filed electronically with this Court on the docket of *In re GOL Linhas Aéreas Inteligentes S.A.*, Case No. 24-10118 (MG) by registered users of this Court's electronic filing system (which is available on this Court's website at http://www.nysb.uscourts.gov); and (iv) be served so as to be actually received by **August 16, 2024, at 4:00 p.m. (prevailing Eastern time)** (the "Objection Deadline"), by: (a) the Chambers of the Honorable Martin Glenn, Chief United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004; (b) the Debtors, c/o GOL Linhas Aéreas Inteligentes S.A., Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Brazil (Attn: Joseph W. Bliley, Chief Restructuring Officer); (c) Milbank LLP, 55 Hudson Yards, New York, NY 10001 (Attn: Evan R. Fleck, Esq., Lauren C. Doyle, Esq., and Bryan V. Uelk Esq.), counsel for the Debtors; (d) William K. Harrington, U.S. Department of Justice, Office of the U.S. Trustee, One Bowling Green, Suite 534, New York, NY 10004-1408 (Attn: Annie Wells, Esq. and Brian Masumoto, Esq.); (e) the Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549; (f) the Federal Aviation Administration, 800 Independence Ave., S.W. Washington, DC 20591 (Attn: Office of the Chief Counsel); (g) the U.S. Attorney's Office for the Southern District of New York, One St. Andrew's Plaza, New York, NY 10007; and (h) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019 (Attn: Brett H. Miller, Esq., Todd M. Goren, Esq., Craig A. Damast, Esq., and James H. Burbage, Esq.), counsel for the Official Committee of Unsecured Creditors.

**PLEASE TAKE FURTHER NOTICE** that if no objections or other responses are received by the Objection Deadline with respect to the Motion, the Debtors shall, on the Presentment Date, submit the Motion and proposed order to the Court, which order the Court may enter without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that if a written objection is timely filed, the Court will notify the Debtors and the objecting parties of the date and time of the hearing with respect to the Motion and of the Debtors' obligation to notify all other parties entitled to receive

notice.  The Debtors and objecting parties are required to attend the hearing, and failure to attend in person or by counsel may result in relief being granted or denied upon default.

*[Remainder of page intentionally left blank]*

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion can be viewed and/or obtained by: (i) accessing the Court's website at http://www.nysb.uscourts.gov, (ii) from the Debtors' claims and noticing agent, Kroll, at https://cases.ra.kroll.com/GOL, or by calling 844.553.2247 (U.S./Canada) (toll free) or +1.646.777.2315 (International) or by e-mail via GOLInfo@ra.kroll.com.  Note that a PACER password is needed to access documents on the Court's website.

Dated:  New York, New York
         August 9, 2024

**MILBANK LLP**

*/s/ Evan R. Fleck*
Evan R. Fleck
Lauren C. Doyle
Bryan V. Uelk
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219

-and-

Andrew M. Leblanc
Erin E. Dexter (admitted *pro hac vice*)
**MILBANK LLP**
1850 K St NW, Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile:  (202) 263-7586

-and-

Gregory A. Bray
**MILBANK LLP**
2029 Century Park East
33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile:  (213) 629-5063

*Counsel for Debtors and Debtors-in-Possession*

**Presentment Date and Time: August 23, 2024 at 12:00 p.m. (ET)**
**Objection Deadline: August 16, 2024 at 4:00 p.m. (ET)**

Evan R. Fleck
Lauren C. Doyle
Bryan V. Uelk
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile:  (212) 530-5219

Andrew M. Leblanc
Erin E. Dexter (admitted *pro hac vice*)
**MILBANK LLP**
1850 K St. NW, Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile:  (202) 263-7586

-and-

Gregory A. Bray
**MILBANK LLP**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile:  (213) 629-5063

*Counsel for Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| GOL LINHAS AÉREAS INTELIGENTES S.A., *et al.*,[1] | : | Case No. 24-10118 (MG) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

--------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A).  The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

**DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING
THEM TO ENTER INTO A SETTLEMENT WITH BANCO PINE S.A.**

The above-captioned debtors and debtors-in-possession (the "Debtors") respectfully state

as follows in support of this motion (the "Motion"):

**RELIEF REQUESTED**

1.      The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A**, authorizing them to enter into the settlement (the "Settlement")[2] with Banco Pine S.A.

("Pine") on the terms memorialized in the memorandum of understanding attached hereto as

**Exhibit B** (the "MOU").[3]

2.      In support of the relief requested herein, the Debtors submit (i) the *Declaration of*

*Joseph W. Bliley in Support of Debtors' Motion for Entry of an Order Authorizing Them to Enter*

*into a Settlement with Banco Pine S.A.* (the "Bliley Declaration"), attached hereto as **Exhibit C**

and (ii) the *Declaration of Fábio Rosas in Support of Debtors' Motion for Entry of an Order*

*Authorizing Them to Enter into a Settlement with Banco Pine S.A.* (the "Rosas Declaration"),

attached hereto as **Exhibit D**.

3.      The Debtors have discussed the relief requested herein with counsel for the Official

Committee of Unsecured Creditors (the "Committee"), and the Committee supports the requested

relief.

**JURISDICTION**

4.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and

1334 and *Amended Standing Order of Reference from the United States District Court for the*

*Southern District of New York*, dated January 31, 2012.

---

[2]    Nothing in this Motion shall be deemed to waive any rights, claims, or defenses that the Debtors may assert in
connection with any litigation with Pine in any jurisdiction should the Settlement not be approved

[3]    Exhibit B contains the Portuguese execution version of the MOU as well as an English translation.

5.     This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

6.     Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.     The bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## STATUS OF THE CASES

8.     On January 25, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

9.     The Debtors continue to operate their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' cases (the "Chapter 11 Cases") are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order (i) Directing Joint Administration of Chapter 11 Cases and (ii) Granting Related Relief* [Docket No. 58].  On February 9, 2024, the U.S. Trustee appointed the Committee. *See Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 114].  On February 13, 2024, the U.S. Trustee filed a notice amending the composition of the Committee.  *See Am. Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 134].  No trustee or examiner has been appointed in these cases.

10.     Further information regarding the Debtors' business, capital structure, and the facts and circumstances leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Joseph W. Bliley in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 11].

3

# BACKGROUND

### A.    Pine's Claim

11.    On September 21, 2022, GOL Linhas Aéreas S.A. ("GLA") issued a Bank Credit Note–Loan No. 0651/22 (the "Bank Credit Note") to Pine in the principal amount of approximately $8,124,796.[4]  Bliley Decl. ¶ 4.  The Bank Credit Note accrues interest at 18.5% per year, is amortized in monthly installments until it matures in September 2024, and 30% of the principal amount of the Bank Credit Note is secured by receivables related to short-term investment securities held by GLA at Pine (the "Cash Collateral"), which were pledged by GLA through a fiduciary assignment.  *Id*.  As of the Petition Date, there was approximately $3,611,020 outstanding on the Bank Credit Note, inclusive of principal and accrued interest.  Bliley Decl. ¶ 4; *See Amended Schedules of Assets and Liabilities for Gol Linhas Aéreas S.A.* (Case No. 24-10119) [Docket No. 513; Schedule D, Schedule E/F].[5]

### B.    Pine's Actions to Enforce its Claim

12.    Following the Petition Date, Pine demanded that the Debtors make monthly amortization and interest payments under the Bank Credit Note.  Bliley Decl. ¶ 5.  In response, the Debtors informed Pine that they did not have authority under the Bankruptcy Code to pay the prepetition obligations and that Pine's payment demand violated the automatic stay in effect under section 362 of the Bankruptcy Code as well as the *Order (I) Enforcing the Protections of 11 U.S.C. §§ 362, 365, 525, and 541(c); (II) Approving the Form and Manner of Notice; and (III) Granting Related Relief* [Docket No. 31] (the "Automatic Stay Order").  *Id*.

---

[4]    All amounts included herein are in U.S. dollars; Brazilian reals have been converted to U.S. dollars using the exchange rate as of the Petition Date of 1 USD: 4.92 BRL.

[5]    Pine's claim was erroneously listed in the Debtors' amended schedules as being fully secured when it should have been reflected as partially given that the Cash Collateral does not secure all of the claim.

13.     On February 21, 2024, the Debtors inadvertently remitted approximately $528,111 to Pine on account of the Bank Credit Note.  Bliley Decl. ¶ 6.  Pine collected these inadvertently remitted funds and refused to return them.  *Id*.

14.     On February 26, 2024, Pine informed the Debtors that, on February 21, 2024 and on February 22, 2024, it had exercised its remedies under Brazilian law by sweeping the Cash Collateral in the amount of approximately $1,091,529 (the "Cash Collateral Sweep").  Bliley Decl. ¶ 7.

15.     Upon learning of Pine's refusal to return the inadvertently remitted funds and the Cash Collateral Sweep, the Debtors notified Pine that these actions violated the Bankruptcy Code and the Automatic Stay Order and reserved all of their rights and remedies to take action against Pine.  Bliley Decl. ¶ 8.

16.     As a result of Pine's retention of the inadvertently remitted approximately $528,111 and the Cash Collateral Sweep, Pine collected, postpetition, approximately $1,615,708 on the Bank Credit Note.  Bliley Decl. ¶ 9.

17.     On June 28, 2024, Pine commenced a collection lawsuit against GLA in the Court of Justice of São Paulo ("Brazilian Court") seeking recovery of the remaining amounts due under the Bank Credit Note (the "Pine Litigation").  Bliley Decl. ¶ 10.

18.     The Debtors considered all potential options available to them to address Pine's demands for payment and the Pine Litigation, including commencing an adversary proceeding in the Chapter 11 Cases and defending the Pine Litigation. Bliley Decl. ¶ 11.  However, given that Pine is a Brazilian Bank with potentially limited (if any) business operations in the United States, it is likely that Pine would continue to ignore a United States' court order, forcing the Debtors to also pursue separate litigation in Brazil to enforce any judgment obtained from this Court against

Pine.  Moreover, Pine most likely would continue the Pine Litigation, which the Debtors would have to defend.  *Id.*

19.      The Pine Litigation presents a significant risk to the Debtors. Bliley Decl. ¶ 12.  Not only may the Brazilian Court refuse to acknowledge the automatic stay or honor the Automatic Stay Order, but the costs to the Debtors' estates associated with defending the Pine Litigation would be significant, especially relative to the size of Pine's remaining claim, which totals approximately $2,199,963.87. Bliley Decl. ¶ 12.  Any opposition or defense proceeding by the Debtors to adjudicate the merits of Pine's right to collect or to enforce the automatic stay would be an expensive and lengthy process.  *Id.*

20.      Notably, if the Brazilian Court elected not to respect the automatic stay in the Pine Litigation, the Debtors will be required to deposit with the Brazilian court the amount in dispute. Rosas Decl. ¶ 11.  Should the Debtors fail to post a bond or other collateral with a value equal to the full amount in controversy, the Brazilian Court could also freeze the Debtors' bank accounts in Brazil, impose judgment liens on the Debtors' other property, or seize the Debtors' assets outright.  *Id.*  In addition, if the amounts due under the Bank Credit Note remain unpaid, Pine could seek to initiate a liquidation of the Debtors in Brazil.  *Id.*  In that case, the Debtors would need to satisfy the unpaid amounts or commence a *recuperação judicial*, which is a Brazilian proceeding designed to restructure businesses.  *Id*

### C.      The Proposed Settlement

21.      Given the costs and uncertainty attendant to any litigation, and the relatively small amount of Pine's claim, the Debtors attempted to reach a negotiated resolution with Pine.  Bliley Decl. ¶ 13.

22.     On July 15, 2024, the Debtors and Pine agreed to file a joint petition with the Brazilian Court to stay the Pine Litigation until July 30, 2024 so that the parties could work toward a consensual resolution.  Bliley Decl. ¶ 14.

23.     On July 31, 2024, after several weeks of negotiations and the exchange of multiple counterproposals, the Debtors and Pine agreed, subject to Court approval, to the following terms of the Settlement:[6]

- in satisfaction of the remaining amounts owed by the Debtors under the Bank Credit Note (after taking into account the setoff already effected by Pine on account of the collection of the unremitted funds and the Cash Collateral Sweep), the Debtors and Pine will amend their existing agreements or enter into new ones, which will evidence an obligation of approximately $2,199,963 (the "Agreed Claim");

- the Debtors will make monthly principal payments to Pine on account of the Agreed Claim of less than approximately $60,000, with the first installment due on September 24, 2024 and the final installment due on August 24, 2028 (the "Maturity Date");

- the Debtors will also make monthly interest payments to Pine at an annual interest rate of 15.8% until the Maturity Date;

- Pine will provide the Debtors with a new credit line of approximately $3,046,798.83 to allow them to enter into derivative financial instruments related to currency or oil and its subproducts (the "New Credit Line"); and

- Pine will dismiss the Pine Litigation and not undertake any judicial or extrajudicial measures to collect any prepetition amounts due to under the Bank Credit Note.

Bliley Decl. ¶ 15.

24.     In the Debtors' business judgment, and for the reasons set forth below, the Settlement provides the best outcome for the Debtors' estates and creditors because it allows the Debtors to avoid the significant cost and risk associated with litigation in Brazil, which significantly outweighs the cost of the Debtors' performance under the Settlement.

---

[6]   To the extent that any conflict, discrepancy, or inconsistency arises between this summary and the MOU, the MOU shall control.

**BASIS FOR RELIEF**

**A.      The Settlement Should be Approved Under Bankruptcy Rule 9019.**

25.      A court should exercise its discretion to approve settlements "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). Courts in this District have made clear that "[a]s a general matter, 'settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate.'" *In re Dewey & LeBouef LLP*, 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012) (citations omitted); *see also Motorola, Inc. v. Off. Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 455 (2d Cir. 2007) (stating that settlements "help clear a path for the efficient administration of the bankrupt estate").

26.      Under Bankruptcy Rule 9019 and the governing case law, a court should approve a compromise or settlement where it makes an independent determination that the compromise or settlement is fair and equitable, reasonable, and in the best interests of the debtor's estate. *See, e.g.*, *In re Genesis Glob. Holdco, LLC*, 2023 WL 6543250, at *5 (Bankr. S.D.N.Y. Oct. 6, 2023); *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. of Chi. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 426 (S.D.N.Y. 1993). In so doing, a court "may consider the opinions of the trustee or debtor and their counsel that the settlement is fair and equitable." *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

27.      Courts in the Second Circuit evaluate whether a settlement is "fair and equitable" and thus should be approved after considering the following seven interrelated factors, known as the "*Iridium* factors":

    (i)      the balance between the litigation's possibility of success and the settlement's future benefits;

(ii)    the likelihood of complex and protracted litigation, "with its attendance expense, inconvenience, and delay," including the difficulty in collecting the judgment;

(iii)   the "paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement";

(iv)    whether other parties in interest support the settlement;

(v)     the "competency and experience of counsel" who support the settlement;

(vi)    the "nature and breadth of releases to be obtained by officers and directors"; and

(vii)   the "extent to which the settlement is the product of arm's length bargaining."

*Motorola, Inc. v. Off. Comm. of Unsecured Creditors & JPMorgan Chase Bank, N.A.* (*In re Iridium Operating LLC*), 478 F.3d 452, 462 (2d Cir. 2007) (quoting *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)); *see also In re Motors Liquidation Co.*, 555 B.R. 355, 365 (Bankr. S.D.N.Y. 2016).

28.     In addition, the business judgment of the debtor in recommending the settlement should be factored into the court's analysis." *In re MF Global Inc.,* No. 11-2790, 2012 WL 3242533 at *5 (Bankr. S.D.N.Y. Aug. 10, 2012) (citing *JP Morgan Chase Bank, N.A. v. Charter Commc'ns Operating LLC (In re Charter Commc'ns)*, 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009)).

29.     When assessing whether to approve a settlement, "the court need not conduct a 'mini-trial' to determine the merits of the underlying litigation." *See In re Purofied Down Prods.*, 150 B.R. at 522. Instead, a court should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (alteration in original) (citations omitted). In this regard, "[t]he 'reasonableness' of the settlement depends upon all factors, including probability of success, the length and cost of the litigation, and the extent to which the settlement is truly the product of 'arms-length' bargaining, and not fraud or collusion." *Ionosphere Clubs*, 156 B.R. at 428.

30.     The Debtors respectfully submit that the settlement satisfies the *Iridium* factors and falls well within the range of reasonableness.  Entry into the Settlement will allow the Debtors to avoid the adverse and costly effects of litigation in the United States and in Brazil.  Bliley Decl. ¶ 16.  As set forth in the Rosas Declaration, if Pine were to continue the Pine Litigation, the Debtors would likely need to post a bond in the full amount that Pine asserts it is owed or face having judgment liens placed on the Debtors' property in Brazil, the seizure of the Debtors' assets, and/or the freezing of the Debtors' bank accounts.  Bliley Decl. ¶ 16; Rosas Decl. ¶ 11.  In addition, there is a not insignificant risk that the Brazilian Court would rule in favor of Pine, forcing the Debtors to either pay the amount due, seek to enforce this Court's order in Brazil, or risk a liquidation proceeding in Brazil.  *Id*.  Any litigation, whether commenced by Pine or the Debtors, is likely to be complex, protracted, and, if an adverse judgment is entered against the Debtors, involve costs that far exceed the cost to the Debtors of performing under the Settlement.  *Id*.  Given these facts, failure to resolve this matter consensually would likely cause significant harm to the Debtors and their estates.  Bliley Decl. ¶ 16.

31.     Further, the Settlement provides notable economic benefits to the Debtors in that it allows them to pay the Agreed Claim over an average payment term of twenty-seven (27) months rather than all at once upon the Bank Credit Note's existing maturity in September 2024, provides for a lower monthly interest rate, and provides the Debtors with access to the New Credit Line.  Bliley Decl. ¶ 17.

32.     Moreover, the Settlement was negotiated at arm's length and in good faith among the Debtors, the Debtors' restructuring counsel, Milbank LLP, their Brazilian counsel, Lefosse Advogados, and Pine.  Bliley Decl. ¶ 18.

33.     In addition, throughout the course of the negotiations with Pine, the Debtors'
advisors engaged with counsel for the Committee, and the Committee supports the relief requested.
Bliley Decl. ¶ 19.

34.     Accordingly, for all of these reasons, the *Iridium* factors weigh heavily in favor of
providing the Debtors with approval to enter into the Settlement.

**B.     The Debtors' Entry into the Settlement Should be Approved Under Bankruptcy Code Section 363.**

35.     To the extent that the Settlement requires the Debtors to use estate property, such
use is a justified exercise of the Debtors' business judgment pursuant to section 363 of the
Bankruptcy Code.  Section 363(b) of the Bankruptcy Code provides, in relevant part, that the
debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of
business, property of the estate."  11 U.S.C. § 363(b)(1).  To approve the use of estate property
under section 363(b)(1) of the Bankruptcy Code, the Second Circuit requires a debtor to show that
the decision to use the property outside of the ordinary course of business was based on the debtor's
sound business judgment.  *See, e.g.*, *Off. Comm. of Unsecured Creditors v. LTV Corp. (In re
Chateaugay)*, 973 F.2d 141, 143 (2d Cir. 1992) (affirming the bankruptcy court's approval of the
debtors' asset sale pursuant to section 363(b) as a reasonable exercise of business judgment);
*Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir.
1983) (holding that the application of section 363(b) must be supported by "some articulated
business justification, other than appeasement of major creditors"); *In re Ionosphere Clubs, Inc.*,
100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a section
363(b) motion is "a good business reason"); *In re Borders Grp., Inc.*, 453 B.R. 459, 473 (Bankr.
S.D.N.Y. 2011) ("In approving a transaction conducted pursuant to section 363(b)(1), courts
consider whether the debtor exercised sound business judgment.").

36.     Once a debtor articulates a valid business justification, a strong presumption arises that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *Off. Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (citations and quotations omitted), appeal dismissed, 3 F.3d 49 (2d Cir. 1993).   Thus, if a debtors' actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1).

37.     For the reasons set forth above, the Debtors have determined that, in their business judgment, the terms of the Settlement are in the best interests of their estates and creditors and constitute an efficient and cost-effective way to avoid the adverse effects of litigation with Pine. Bliley Decl. ¶ 20.

38.     Thus, the Settlement is fair and equitable, is a sound exercise of the Debtors' business judgment, is in the best interests of the Debtors' estates, creditors, and other stakeholders, and should be approved.

## NOTICE

39.     Notice of this Motion has been provided in accordance with the procedures set forth in the *Final Order Implementing Certain Notice and Case Management Procedures* [Docket No. 175].  The Debtors respectfully submit that no further notice is required.

## NO PRIOR REQUEST

40.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

*[Remainder of page intentionally left blank]*

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request entry of the Order granting the relief requested herein and granting such other relief as is just.

Dated:  New York, New York    **MILBANK LLP**
        August 9, 2024

                                */s/ Evan R. Fleck*
                                Evan R. Fleck
                                Lauren C. Doyle
                                Bryan V. Uelk
                                **MILBANK LLP**
                                55 Hudson Yards
                                New York, NY 10001
                                Telephone:  (212) 530-5000
                                Facsimile:  (212) 530-5219

                                -and-

                                Andrew M. Leblanc
                                Erin E. Dexter (admitted *pro hac vice*)
                                **MILBANK LLP**
                                1850 K St NW, Suite 1100
                                Washington, DC 20006
                                Telephone: (202) 835-7500
                                Facsimile:  (202) 263-7586

                                -and-

                                Gregory A. Bray
                                **MILBANK LLP**
                                2029 Century Park East
                                33rd Floor
                                Los Angeles, CA 90067
                                Telephone: (424) 386-4000
                                Facsimile:  (213) 629-5063

                                *Counsel for Debtors and Debtors-in-Possession*

## EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                                                :
In re:                                                          :    Chapter 11
                                                                :
GOL LINHAS AÉREAS INTELIGENTES S.A.,                            :    Case No. 24-10118 (MG)
*et al.*,[1]                                                     :
                                                                :    (Jointly Administered)
                                Debtors.                        :
                                                                :
-----------------------------------------------------------------x

## ORDER AUTHORIZING THE DEBTORS TO
## ENTER INTO A SETTLEMENT WITH BANCO PINE S.A.

Upon the motion (the "Motion")[2] of the above-captioned Debtors, seeking entry of an order

pursuant to section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, authorizing them

to enter into the Settlement with Pine, as described more fully in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012

(Preska, C.J.); and it appearing that venue of these Chapter 11 Cases and the Motion in this District

is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core

proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that proper and adequate notice of the

Motion has been given and that no other or further notice is necessary under the circumstances;

and upon the Motion, the Bliley Declaration, and the Rosas Declaration; and all of the proceedings

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A);
GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A.
(N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo
S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A);
Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento
no Exterior (N/A); and Gol Equity Finance (N/A).  The Debtors' service address is Praça Comandante Linneu
Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

had before the Court; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and after due deliberation thereon; and good and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The Settlement is hereby approved pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a) as being (a) within the range of reasonableness, (b) supported by reasonable consideration, (c) fair and equitable and in the best interest of the Debtors' estates, and (d) is a sound exercise of the Debtors' business judgement.

3.      The Debtors and Pine are authorized and directed to fully perform their respective obligations under the MOU and to execute and deliver any and all instruments, documents, and agreements, including the Definitive Instruments (as defined in the MOU), and take any and all actions as necessary or appropriate to perform their respective obligations under the MOU and Settlement.

4.      The automatic stay in effect under section 362(a) of the Bankruptcy Code is hereby modified to permit the Debtors and Pine to perform their obligations under the MOU and the Settlement.

5.      The MOU and the Settlement were negotiated at arm's-length and in good faith. The consideration to be provided by each party as part of the Settlement is fair and reasonable. Entry into the MOU and the Settlement is not the result of fraud or collusion.

6.      To the extent that there may be any inconsistency between the Motion, the MOU, and this Order, this Order shall govern.

7.      Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

8.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

9.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2024        _____
        New York, New York                THE HONORABLE MARTIN GLENN
                                          CHIEF UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

## MOU

São Paulo, 30 de julho de 2024

A

**Banco Pine S.A.** ("**Banco**")

A/C:    Fernando    Fagner    Barbosa    (Fernando.Barbosa@pine.com)/    Fernando    Corsetti
(Fernando.Corsetti@pine.com)

(i)    Com cópia para: Renata Domingues da Fonseca Guinesi (rddfonseca@voegol.com.br)/ Eduardo
Guardiano Leme Gotilla (rddfonseca@voegol.com.br)

**Ref. Termo de entendimentos vinculantes sobre a Transação (conforme abaixo definida)**

Prezados Senhores e Senhoras,

Fazemos referência aos recentes entendimentos entre o Banco e a Gol Linhas Aéreas S.A. ("**Gol**") acerca
da repactuação de determinadas condições financeiras relacionadas às Dívidas Repactuadas (conforme
definido abaixo). Termos iniciados em letra maiúscula utilizados neste documento ("**Termo**") terão os
significados a eles atribuídos nas Dívidas Repactuadas.

O Banco e a Gol serão individualmente denominados "**Parte**" e, em conjunto, "**Partes**".

As Partes celebram este Termo para estabelecer as suas principais respectivas obrigações e direitos
relacionados à Transação (conforme definido abaixo), em conformidade com os termos e condições
abaixo.

1    PRINCIPAIS CARACTERÍSTICAS DA TRANSAÇÃO

TRANSAÇÃO:    Repactuação dos termos e condições das Dívidas Repactuadas (conforme
definido abaixo) ("**Transação**").

DÍVIDAS    Os contratos que serão objeto da Transação são listados a seguir ("**Dívida(s)**
REPACTUADAS:    **Repactuada(s)**"):

(i)    Cédula de Crédito Bancário sob nº 0651/22, celebrada em 21 de
setembro de 2022, no montante original de principal de
R$40.000.000,00 (quarenta milhões de reais) e juros remuneratórios
de 18,5324% a.a., e Termo de Constituição de Garantia de Cessão
Fiduciária de Direitos Creditórios e/ou Títulos de Crédito sob nº
A0651/22, celebrado em 21 de setembro de 2022.

VALOR    AGREGADO    Na data de corte de 25 de julho de 2024, as Dívidas Repactuadas representavam
DA TRANSAÇÃO:    um montante de saldo devedor agregado de principal de R$10.084.340,54 (dez

DocuSign Envelope ID: 6827EAEC-9B60-4518-A6EC-19851A752135

milhões,  oitenta e quatro mil, trezentos e quarenta reais e cinquenta e quatro centavos) ("**Saldo de Principal**") e saldo devedor agregado de encargos remuneratórios correspondente a R$746.521,59 (setecentos e quarenta e seis mil, quinhentos e vinte e um reais e cinquenta e nove centavos) ("**Saldo de Juros Remuneratórios**"), totalizando R$10.830.862,13 (dez milhões, oitocentos e trinta mil, oitocentos e sessenta e dois reais e treze centavos).

Mediante a celebração dos Instrumentos Definitivos (conforme abaixo definido), o Saldo de Juros Remuneratórios (acrescido dos encargos remuneratórios devidos entre 25 de julho de 2024 e a data de celebração dos Instrumentos Definitivos) será capitalizado ao Saldo de Principal, de forma que o montante resultante desta capitalização seja considerado como saldo devedor de principal dos Instrumentos Definitivos ("**Valor Repactuado**").

| | |
|---|---|
| **CRONOGRAMA DE PAGAMENTO:** | Após a celebração dos Instrumentos Definitivos (conforme abaixo definido), as Dívidas Repactuadas terão as seguintes condições de pagamento de principal e juros ("**Cronograma de Pagamento**"), observada a data final de vencimento em 24 de agosto de 2028 ("**Data de Vencimento**"), sendo o pagamento de principal realizado em 36 (trinta e seis) parcelas mensais, iguais e sucessivas, a partir de 24 de setembro de 2025 até a Data de Vencimento: |

| Parcela | Vencimento | Principal |
|---------|------------|-----------|
| 1 | No 30º (trigésimo) dia corrido após aprovação do Tribunal em relação à Petição 9019 ou o dia 24/09/2024, o que ocorrer primeiro. | Encargos |
| 2 | 24/10/2024 | Encargos |
| 3 | 25/11/2024 | Encargos |
| 4 | 24/12/2024 | Encargos |
| 5 | 24/01/2025 | Encargos |
| 6 | 24/02/2025 | Encargos |
| 7 | 24/03/2025 | Encargos |
| 8 | 24/04/2025 | Encargos |
| 9 | 26/05/2025 | Encargos |
| 10 | 24/06/2025 | Encargos |
| 11 | 24/07/2025 | Encargos |
| 12 | 25/08/2025 | Encargos |
| 13 | 24/09/2025 | Principal + Encargos |

| 14 | 24/10/2025 | Principal + Encargos |
|----|------------|----------------------|
| 15 | 24/11/2025 | Principal + Encargos |
| 16 | 24/12/2025 | Principal + Encargos |
| 17 | 26/01/2026 | Principal + Encargos |
| 18 | 24/02/2026 | Principal + Encargos |
| 19 | 24/03/2026 | Principal + Encargos |
| 20 | 24/04/2026 | Principal + Encargos |
| 21 | 25/05/2026 | Principal + Encargos |
| 22 | 24/06/2026 | Principal + Encargos |
| 23 | 24/07/2026 | Principal + Encargos |
| 24 | 24/08/2026 | Principal + Encargos |
| 25 | 24/09/2026 | Principal + Encargos |
| 26 | 26/10/2026 | Principal + Encargos |
| 27 | 24/11/2026 | Principal + Encargos |
| 28 | 24/12/2026 | Principal + Encargos |
| 29 | 26/01/2027 | Principal + Encargos |
| 30 | 24/02/2027 | Principal + Encargos |
| 31 | 24/03/2027 | Principal + Encargos |
| 32 | 26/04/2027 | Principal + Encargos |
| 33 | 24/05/2027 | Principal + Encargos |
| 34 | 24/06/2027 | Principal + Encargos |
| 35 | 26/07/2027 | Principal + Encargos |
| 36 | 24/08/2027 | Principal + Encargos |
| 37 | 24/09/2027 | Principal + Encargos |
| 38 | 25/10/2027 | Principal + Encargos |
| 39 | 24/11/2027 | Principal + Encargos |
| 40 | 24/12/2027 | Principal + Encargos |
| 41 | 24/01/2028 | Principal + Encargos |
| 42 | 24/02/2028 | Principal + Encargos |
| 43 | 24/03/2028 | Principal + Encargos |
| 44 | 24/04/2028 | Principal + Encargos |
| 45 | 24/05/2028 | Principal + Encargos |
| 46 | 26/06/2028 | Principal + Encargos |
| 47 | 24/07/2028 | Principal + Encargos |
| 48 | 24/08/2028 | Principal + Encargos |

**ENCARGOS REMUNERATÓRIOS:** Após a celebração dos Instrumentos Definitivos (conforme abaixo definido), as Dívidas Repactuadas estarão sujeitas aos seguintes encargos remuneratórios ("**Encargos Remuneratórios**"):

Sobre o valor total da dívida, deduzido dos valores eventualmente amortizados, incidirão os encargos acumulados decorrentes da variação de 100% do CDI,

3

calculado pela CETIP, e acrescido de 0,40 % ao mês de juros ou o equivalente a 4,9000 % ao ano, de forma capitalizada. A parcela de principal será acrescida dos encargos sobre saldo devedor apurados no respectivo período.

| | |
|---|---|
| **APROVAÇÃO PELO TRIBUNAL DE FALÊNCIAS E RECUPERAÇÕES JUDICIAIS** | Após a assinatura desse Termo, Gol e os devedores afiliados (coletivamente, os "Devedores") apresentarão uma petição ("**Petição 9019**") perante o Tribunal de Falências e Recuperações Judiciais dos Estados Unidos para o Distrito Sul de Nova Iorque ("**Tribunal**"), no âmbito das ações de *chapter 11* dos Devedores apreciadas conjuntamente sob o processo de número 24-10118 ("**Ações de Chapter 11**"), com o objetivo de obter aprovação para a Transação sob a Regra 9019 das Normas Federais de Processos de Falências e Recuperações Judiciais dos Estados Unidos. |
| **INSTRUMENTOS DEFINITIVOS** | Para que os termos das Dívidas Repactuadas se adequem às condições da Transação, as Partes celebrarão aditamentos aos contratos vigentes das Dívidas Repactuadas ou novos instrumentos, conforme comum acordo entre as Partes ("**Instrumentos Definitivos**"), sendo certo que a eficácia de tais aditamentos estará condicionada à aprovação do Tribunal em relação à Petição 9019.<br><br>Os Documentos Definitivos serão celebrados para refletir exclusivamente o disposto neste Termo, de forma que, exceto mediante comum acordo entre as Partes, não serão incluídas outras condições, declarações, obrigações ou eventos de vencimento antecipado nos Documentos Definitivos, ressalvados aqueles já constantes dos instrumentos das Dívidas Repactuadas. |
| **STAND STILL E WAIVER** | A partir da assinatura deste Termo e durante a vigência dos Instrumentos Definitivos, as Partes se comprometem a, exceto pela Ação de Execução, conforme definida abaixo, não ingressarem com quaisquer medidas judiciais ou extrajudiciais para questionar, executar, excutir garantias ou cobrar as Dívidas Repactuadas, tendo em vista as negociações em andamento no âmbito de Termo e da Transação, salvo em caso de não aprovação do Tribunal em relação à Petição 9019 até a data 24/09/2024, hipótese em que o Banco poderá retomar a Ação de Execução, independentemente de qualquer aviso ou notificação prévia.<br><br>(i) No dia útil seguinte ao dia da assinatura deste Termo, as Partes suspenderão a Ação de Execução de Título Extrajudicial nº 1102324-08.2024.8.26.0100, em trâmite perante a 1ª Vara Cível do Foro Central Cível de São Paulo/SP ("**Ação de Execução**"), pelo prazo de 30 (trinta) dias, e, caso não ocorra a aprovação da Petição 9019 pelo Tribunal até o referido prazo, buscarão renovar tal suspensão até 24 de setembro de 2024, mediante protocolo de petição conjunta neste sentido; (ii) após as Partes assinarem os Instrumentos Definitivos e desde que |

4

pagos os valores indicados nos itens (a) e (b) a seguir, as Partes solicitarão a extinção da Ação de Execução; (iii) A Gol se compromete (a) a pagar honorários sucumbenciais ao patrono do Banco na Ação de Execução, no montante de 1% (um por cento) do Valor Repactuado, bem como (b) a restituir as despesas processuais incorridas pelo Banco na Ação de Execução até a presente data, no valor de R$ 106.289,55 (cento e seis mil, duzentos e oitenta e nove reais e cinquenta e cinco centavos), devendo o pagamento ocorrer no prazo de 3 (três) dia útil seguinte à aprovação do Tribunal em relação à Petição 9019.

Caso as custas processuais finais não sejam dispensadas pelo juízo da Ação de Execução, na forma do artigo 90, §3º, do Código de Processo Civil Brasileiro, estas serão de responsabilidade da Gol.

Adicionalmente, mediante assinatura deste Termo, o Banco renunciará ao direito de cobrar os eventuais encargos moratórios ou quaisquer penalidades relacionadas às Dívidas Repactuadas que poderiam ter sido devidas pela Gol até a data em que os Instrumentos Definitivos se tornarem eficazes. O Banco também renúncia, neste ato, ao eventual direito de vencer antecipadamente as Dívidas Repactuadas após a assinatura dos Instrumentos Definitivos, em decorrência de qualquer inadimplemento que possa ter ocorrido até a data em que os Instrumentos Definitivos se tornarem eficazes.

LIMITE DE CRÉDITO    Durante a vigência dos Instrumentos Definitivos, o Banco se compromete a conceder limite de crédito no valor de R$15.000.000,00 (quinze milhões de reais) para celebração de operações com instrumentos derivativos. O limite de crédito para instrumentos derivativos deve permitir operações com derivativos de moeda e de petróleo e seus derivados, sendo tal limite de crédito calculado como sendo o valor do depósito de margem inicial solicitado pela bolsa de Chicago para operações de petróleo e derivados, ou pela B3 para operações de moeda. Tal limite deverá ser concedido sem a necessidade de garantias adicionais e renovado no mesmo montante até a integral liquidação das Dívidas Repactuadas. A precificação dos derivativos deve seguir valores de mercado.

COMPROMISSO IRREVOGÁVEL E IRRETRATÁVEL:    As Partes reconhecem e aceitam que a formalização dos Instrumentos Definitivos nas condições previstas neste Termo são condições essenciais da Transação, e constituirão obrigação irretratável e irrevogável das Partes a partir da assinatura desse Termo. Se o Tribunal não aprovar a Petição 9019 os Instrumentos Definitivos não se tornarão eficazes e serão automaticamente resolvidos de pleno direito.

| | | |
|---|---|---|
| **CUSTOS E DESPESAS:** | | As Partes arcarão com seus próprios custos relacionados à Transação. |

**CONFIDENCIALIDADE:** Os termos do presente instrumento e as informações dele resultantes ("**Informações**") são confidenciais e não deverão ser divulgados pelas Partes, exceto para as afiliadas das Partes e seus respectivos conselheiros, diretores, funcionários, acionistas e assessores que tenham uma necessidade razoável de conhecer essas informações em conexão com a Transação ou caso exigido pelo Tribunal ou por outra lei ou regulamento aplicável. No caso de uma divulgação ser exigida pelo Tribunal ou por outra lei ou regulamento, a pessoa divulgadora irá, antes de fazer tal divulgação, consultar a outra Parte a respeito de tal divulgação e na medida do possível, buscar tratamento confidencial para tais partes que necessitem ser divulgadas conforme razoavelmente solicitado pela outra Parte. A obrigação confidencial prevista nesta seção deverá (i) permanecer válida e efetiva por um período de [5 (cinco)] anos após a assinatura deste Termo, ou (ii) ser renovada nos termos dos contratos definitivos de acordo com os termos e condições ali previstos.

Não obstante qualquer dispositivo em contrário, uma versão com omissões (*redacted*) desse Termo poderá ser publicamente arquivada perante o Tribunal juntamente com a Petição 9019 e as Partes concordarão razoavelmente em relação às omissões apropriadas.

**COMUNICAÇÕES:** Quaisquer notificações, comunicações e/ou avisos a serem feitos pelas Partes se realizará por meio de e-mail, carta registrada ou outro meio legal, mas somente serão considerados entregues no momento do recebimento dos originais no seguinte endereço:

**Banco:**
Avenida Presidente Juscelino Kubitschek, nº 1830 - Salas 54 e 64 - 4º, 5º e 6º andares - Bloco 4 - Edifício São Luiz - Vila Nova Conceição - São Paulo-SP, CEP 05425-070, inscrito no CNPJ/MF sob o n.º 62.144.175/0001-20
Att.: Fernando Corsetti
E-mail: Fernando.Corsetti@pine.com

**Gol**:
Praça Comandante Linneu Gomes, S/N – Portaria 3
CEP 04626-900, SP, São Paulo
Att.: Joelmir Silvestre Baumgratz / Ramon Lopes Ferreira da Silva

E-mail:    jsbaumgratz@voegol.com.br    /    ralfsilva@voegol.com.br    /
tesouraria@voegol.com.br

O presente Termo somente poderá ser alterado mediante aditivo assinado pelas Partes.

**2    DISPOSIÇÕES FINAIS**

Os Instrumentos Definitivos serão regidos e interpretados de acordo com as leis indicadas nos dispositivos aplicáveis de cada Instrumentos Definitivo. Esse Termo será regido e interpretado de acordo com as leis do Brasil. As Partes concordam que quaisquer questões decorrentes deste Termo e dos Instrumentos Definitivos serão dirimidas no foro da Comarca da Cidade e Estado de São Paulo, com exclusão de qualquer outro.

As Partes reconhecem como válida, eficaz e vinculante, para fins de comprovação de autoria, autenticidade e integridade, para todos os fins de direito, a assinatura deste Termo por meio eletrônico, emitido pela Infraestrutura de Chaves Públicas Brasileira ("**ICP Brasil**") ou não, conforme previsto no artigo 10, §2º, da Medida Provisória nº 2.200-2, de 24 de agosto de 2001.

Este Termo será válido, eficaz e vinculante mediante assinatura das Partes.



| **BANCO PINE S.A.** | **GOL LINHAS AEREAS S.A.** |

**Testemunhas:**

Nome:                                          Nome:
CPF:                                            CPF:

DocuSign Envelope ID: 6827EAEC-9B60-4518-A6EC-1985147F2135

São Paulo, July 30, 2024

To:

**Banco Pine S.A. ("Bank")**

Attn: Fernando Fagner Barbosa (Fernando.Barbosa@pine.com)/ Fernando Corsetti (Fernando.Corsetti@pine.com)

(i)       CC: Renata Domingues da Fonseca Guinesi (rddfonseca@voegol.com.br)/ Eduardo Guardiano Leme Gotilla (rddfonseca@voegol.com.br)

**Re: Binding Term Sheet for the Transaction (as defined below)**

To whom it may concern:

We are writing in reference to the recent understanding between the Bank and Gol Linhas Aéreas S.A. ("**Gol**") regarding the renegotiation of certain financial conditions related to the Restructured Debts (as defined below). Capitalized terms used in this document ("**Term Sheet**") shall have the meanings ascribed to them in the Restructured Debts.

The Bank and Gol shall be individually referred to as a "**Party**" and collectively as the "**Parties**."

The Parties enter into this Term Sheet to establish their respective principal obligations and rights related to the Transaction (as defined below), in accordance with the terms and conditions set forth below.

**1        KEY FEATURES OF THE TRANSACTION**

**TRANSACTION:**

Renegotiation of the terms and conditions of the Restructured Debts (as defined below) ("**Transaction**").

**RESTRUCTURED DEBTS:**

The agreements that will be subject to the Transaction are listed below ("**Restructured Debt(s)**"):

(i)       Bank Credit Note No. 0651/22, executed on September 21, 2022, in the original principal amount of R$40,000,000.00 (forty million reais) with compensatory interest at 18.5324% per annum, and the Fiduciary Assignment of Credit Rights and/or Credit Instruments Guarantee Agreement No. A0651/22, executed on September 21, 2022.

**AGGREGATE TRANSACTION VALUE:**

As of the cut-off date of July 25, 2024, the Restructured Debts represented an aggregate outstanding principal balance of R$10,084,340.54 (ten million, eighty-four thousand, three hundred and forty reais and fifty-four cents) ("**Principal Balance**") and an aggregate outstanding balance of compensatory charges of R$746,521.59 (seven hundred and forty-six thousand, five hundred and twenty-one reais and fifty-nine cents) ("**Interest Balance**"), totaling R$10,830,862.13 (ten

DocuSign Envelope ID: 8827EAEC-9B60-4518-A6EC-1985147F2135

million, eight hundred and thirty thousand, eight hundred and sixty-two reais and thirteen cents).

Upon execution of the Definitive Instruments (as defined below), the Interest Balance (plus any interest charges accrued between July 25, 2024, and the date of execution of the Definitive Instruments) shall be capitalized to the Principal Balance, such that the resulting amount from this capitalization shall be considered as the outstanding principal balance of the Definitive Instruments ("**Restructured Amount**").

**PAYMENT SCHEDULE:**

Following the execution of the Definitive Instruments (as defined below), the Restructured Debts shall have the following principal and interest payment terms ("**Payment Schedule**"), subject to the final maturity date of August 24, 2028 ("**Maturity Date**"), with principal payments to be made in 36 (thirty-six) equal and successive monthly installments, commencing on September 24, 2025, and continuing until the Maturity Date:

| Installment | Due Date | Principal |
|:-:|:-:|:-:|
| 1 | On the 30th (thirtieth) calendar day following the Court's approval of the 9019 Motion or September 24, 2024, whichever occurs first. | Charges |
| 2 | 24/10/2024 | Charges |
| 3 | 25/11/2024 | Charges |
| 4 | 24/12/2024 | Charges |
| 5 | 24/01/2025 | Charges |
| 6 | 24/02/2025 | Charges |
| 7 | 24/03/2025 | Charges |
| 8 | 24/04/2025 | Charges |
| 9 | 26/05/2025 | Charges |
| 10 | 24/06/2025 | Charges |
| 11 | 24/07/2025 | Charges |
| 12 | 25/08/2025 | Charges |
| 13 | 24/09/2025 | Principal + Charges |
| 14 | 24/10/2025 | Principal + Charges |
| 15 | 24/11/2025 | Principal + Charges |
| 16 | 24/12/2025 | Principal + Charges |
| 17 | 26/01/2026 | Principal + Charges |
| 18 | 24/02/2026 | Principal + Charges |

DocuSign Envelope ID: 8827EAEC-9B60-4518-A6EC-1985147F2135

| 19 | 24/03/2026 | Principal + Charges |
|----|------------|---------------------|
| 20 | 24/04/2026 | Principal + Charges |
| 21 | 25/05/2026 | Principal + Charges |
| 22 | 24/06/2026 | Principal + Charges |
| 23 | 24/07/2026 | Principal + Charges |
| 24 | 24/08/2026 | Principal + Charges |
| 25 | 24/09/2026 | Principal + Charges |
| 26 | 26/10/2026 | Principal + Charges |
| 27 | 24/11/2026 | Principal + Charges |
| 28 | 24/12/2026 | Principal + Charges |
| 29 | 26/01/2027 | Principal + Charges |
| 30 | 24/02/2027 | Principal + Charges |
| 31 | 24/03/2027 | Principal + Charges |
| 32 | 26/04/2027 | Principal + Charges |
| 33 | 24/05/2027 | Principal + Charges |
| 34 | 24/06/2027 | Principal + Charges |
| 35 | 26/07/2027 | Principal + Charges |
| 36 | 24/08/2027 | Principal + Charges |
| 37 | 24/09/2027 | Principal + Charges |
| 38 | 25/10/2027 | Principal + Charges |
| 39 | 24/11/2027 | Principal + Charges |
| 40 | 24/12/2027 | Principal + Charges |
| 41 | 24/01/2028 | Principal + Charges |
| 42 | 24/02/2028 | Principal + Charges |
| 43 | 24/03/2028 | Principal + Charges |
| 44 | 24/04/2028 | Principal + Charges |
| 45 | 24/05/2028 | Principal + Charges |
| 46 | 26/06/2028 | Principal + Charges |
| 47 | 24/07/2028 | Principal + Charges |
| 48 | 24/08/2028 | Principal + Charges |

**COMPENSATORY CHARGES:**

Following the execution of the Definitive Instruments (as defined below), the Restructured Debts shall be subject to the following compensatory charges ("**Compensatory Charges**"):

The total debt amount, less any amounts that may have been amortized, shall incur accumulated charges resulting from the variation of 100% of the Interbank Deposit Certificate (CDI), as calculated by Center for Custody and Financial Settlement of Securities (CETIP), plus 0.40% per month in interest or the equivalent of 4.9000%

3

DocuSign Envelope ID: 6827EAEC-9B60-4518-A6EC-1985147F2135

per annum, on a capitalized basis. The principal installment will be increased by the charges accrued on the outstanding balance during the respective period.

| | |
|---|---|
| **APPROVAL BY THE JUDICIAL RECOVERY AND BANKRUPTCY COURT** | Following the execution of this Term Sheet, Gol and its affiliated debtors (collectively, the "Debtors") shall file a motion ("**9019 Motion**") with the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), in the context of the Debtors' chapter 11 cases jointly administered under case number 24-10118 (the "**Chapter 11 Cases**"), for the purpose of seeking approval for the Transaction under Rule 9019 of the United States Federal Rules of Judicial Recovery and Bankruptcy Procedures. |
| **DEFINITIVE INSTRUMENTS** | In order to align the terms of the Restructured Debts with the conditions of the Transaction, the Parties shall execute amendments to the existing contracts of the Restructured Debts or new instruments, as mutually agreed upon by the Parties ("**Definitive Instruments**"), provided that the effectiveness of such amendments shall be contingent upon the Court's approval of the 9019 Motion. |
| | The Definitive Documents shall be executed to reflect exclusively the provisions of this Term Sheet, such that, except by mutual agreement between the Parties, no other conditions, representations, obligations, or events of default shall be included in the Definitive Documents, other than those already contained in the instruments of the Restructured Debts. |
| **STANDSTILL AND WAIVER** | From the execution of this Term Sheet and during the effective period of the Definitive Instruments, the Parties undertake, except for the Enforcement Action as defined below, not to initiate any judicial or extrajudicial measures to challenge, enforce, foreclose on collateral, or collect on the Restructured Debts, in view of the ongoing negotiations within the scope of this Term Sheet and the Transaction, unless the Court does not approve the 9019 Motion by September 24, 2024, in which case the Bank may resume the Enforcement Action without any prior notice or notification. |
| | (i) On the business day following the execution of this Term Sheet, the Parties shall suspend the Extrajudicial Enforcement Action No. 1102324-08.2024.8.26.0100, pending before the 1st Civil Court of the Central Civil District of São Paulo/SP ("**Enforcement Action**"), for a period of 30 (thirty) days, and, if the Court does not approve the 9019 Motion within said period, they shall seek to renew such suspension until September 24, 2024, by filing a joint petition to this effect; (ii) after the Parties sign the Definitive Instruments and provided that the amounts indicated in items (a) and (b) below are paid, the Parties shall request the dismissal of the Enforcement Action; (iii) Gol commits (a) to pay attorney's fees to the Bank's counsel in the Enforcement Action, in the amount of 1% (one percent) of the Restructured Amount, as well as (b) to reimburse the legal expenses incurred by |

DocuSign Envelope ID: 6827EAEC-9B60-4518-A6EC-1985147F2135

the Bank in the Enforcement Action to date, in the amount of R$ 106,289.55 (one hundred and six thousand, two hundred and eighty-nine reais and fifty-five cents), with payment to be made within 3 (three) business days following the Court's approval of the 9019 Motion.

In the event that the final court costs are not waived by the court overseeing the Enforcement Action, pursuant to Article 90, §3 of the Brazilian Code of Civil Procedure, these costs shall be borne by Gol.

Additionally, upon execution of this Term Sheet, the Bank shall waive its right to charge any default interest or penalties related to the Restructured Debts that may have been due by Gol up to the date on which the Definitive Instruments become effective. The Bank also hereby waives any potential right to accelerate the Restructured Debts after the execution of the Definitive Instruments, as a result of any default that may have occurred up to the date on which the Definitive Instruments become effective.

**CREDIT LIMIT**
During the term of the Definitive Instruments, the Bank commits to grant a credit limit in the amount of R$15,000,000.00 (fifteen million reais) for the execution of transactions with derivative instruments. The credit limit for derivative instruments shall allow for operations with currency derivatives and oil derivatives and related products, with such credit limit calculated as the value of the initial margin deposit requested by the Chicago exchange for oil and derivatives operations, or by B3 for currency operations. This limit shall be granted without the need for additional collateral and renewed for the same amount until the full settlement of the Restructured Debts. The pricing of derivatives shall adhere to market values.

**IRREVOCABLE AND UNCONDITIONAL COMMITMENT:**
The Parties acknowledge and accept that the formalization of the Definitive Instruments under the conditions set forth in this Term Sheet are essential conditions of the Transaction, and shall constitute an irrevocable and unconditional obligation of the Parties upon execution of this Term Sheet. If the Court does not approve the 9019 Motion, the Definitive Instruments shall not become effective and shall automatically terminate by operation of law.

**COSTS AND EXPENSES:**
The Parties shall bear their own costs related to the Transaction.

**CONFIDENTIALITY:**
The terms of this instrument and the information resulting therefrom ("**Information**") are confidential and shall not be disclosed by the Parties, except to the Parties' affiliates and their respective advisors, directors, employees, shareholders, and consultants who have a reasonable need to know such information in connection with the Transaction or as required by the Court or other applicable law or regulation. In the event disclosure is required by the Court or other law or regulation, the disclosing person shall, prior to making such disclosure, consult with the other Party regarding such disclosure and, to the extent possible, seek

5

DocuSign Envelope ID: 6827EAEC-9B60-4518-A6EC-1985147F2135

confidential treatment for such portions that need to be disclosed as reasonably requested by the other Party. The confidentiality obligation provided in this section shall (i) remain valid and effective for a period of [5 (five)] years after the execution of this Term Sheet, or (ii) be renewed under the terms of the definitive agreements in accordance with the terms and conditions set forth therein.

Notwithstanding any provision to the contrary, a redacted version of this Term Sheet may be publicly filed with the Court along with the 9019 Motion, and the Parties shall reasonably agree on appropriate redactions.

**NOTICES:**    Any notifications, communications, and/or notices to be made by the Parties shall be made by email, registered mail, or other legal means, but shall only be considered delivered upon receipt of the originals at the following address:

**Bank:**
Avenida Presidente Juscelino Kubitschek, nº 1830 - Salas 54 e 64 - 4º, 5º e 6º andares - Bloco 4 - Edifício São Luiz - Vila Nova Conceição - São Paulo-SP, CEP 05425-070, registered with Corporate Taxpayer Registry (CNPJ/MF) under No. 62.144.175/0001-20
Attn.: Fernando Corsetti
Email: Fernando.Corsetti@pine.com

**Gol**:
Praça Comandante Linneu Gomes, S/N – Portaria 3
CEP 04626-900, SP, São Paulo
Attn.: Joelmir Silvestre Baumgratz / Ramon Lopes Ferreira da Silva
E-mail:    jsbaumgratz@voegol.com.br    /    ralfsilva@voegol.com.br    /
tesouraria@voegol.com.br

DocuSign Envelope ID: 6827EAEC-9B60-4518-A6EC-1985147F2135

This Term Sheet may only be amended by an addendum signed by the Parties.

## 2    FINAL PROVISIONS

The Definitive Instruments shall be governed by and construed in accordance with the laws indicated in the applicable provisions of each Definitive Instrument. This Term Sheet shall be governed by and construed in accordance with the laws of Brazil. The Parties agree that any disputes arising from this Term Sheet and the Definitive Instruments shall be resolved in the courts of the City and State of São Paulo, to the exclusion of any other.

The Parties acknowledge as valid, effective, and binding, for the purposes of proving authorship, authenticity, and integrity, for all legal purposes, the electronic signature of this Term Sheet, whether issued by the Brazilian Public Key Infrastructure ("**ICP Brazil**") or otherwise, as provided in Article 10, §2, of Provisional Measure No. 2,200-2, dated August 24, 2001.

This Term Sheet shall be valid, effective, and binding upon signature by the Parties.



**BANCO PINE S.A.**                    **GOL LINHAS AEREAS S.A.**

**Witnesses:**



Name:                                   Name:

Individual Taxpayer Registry (CPF) No.:    CPF:



I, Daniel Warren, hereby certify that I am competent to translate from Portuguese to English and that the attached translation is, to the best of my knowledge and belief, a true and accurate translation of the document entitled "Pine Term Sheet [Execution Version]" from Portuguese to English.

Daniel Warren
Daniel Warren

August 3, 2024
Date

## EXHIBIT C

**Bliley Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                                                 :
In re:                                                           :    Chapter 11
                                                                 :
GOL LINHAS AÉREAS INTELIGENTES S.A.,                             :    Case No. 24-10118 (MG)
*et al.*,[1]                                                      :
                                                                 :
                              Debtors.                           :    (Jointly Administered)
                                                                 :
-----------------------------------------------------------------x

### DECLARATION OF JOSEPH W. BLILEY IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THEM TO ENTER INTO A SETTLEMENT WITH BANCO PINE S.A.

I, Joseph W. Bliley, make this declaration under 28 U.S.C. § 1746:

1.      I am the Chief Restructuring Officer of GOL Linhas Aéreas Inteligentes S.A. ("GOL"), one of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), and have served in this position since December 17, 2023.

2.      I have more than twenty-five years of experience in the financial sector and was most recently a Managing Director and Co-Head of Global Financial Services Investment Banking at Lincoln International, based in New York, New York.  Previously, I held senior positions in Investment Banking at Stephens, Inc. and Bank of America where I was a Managing Director in the Corporate Finance and Restructuring group.  Throughout my career, I have worked with companies and their stakeholders in a variety of complex transactions, including recapitalizations,

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A).  The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

in-court and out-of-court restructurings, mergers, divestitures, and initial public offerings. My experience is global, having worked in New York and Europe with companies throughout the world, including in Latin America.

3.      I submit this declaration (the "Declaration") in support of the *Debtors' Motion for Entry of an Order Authorizing Them to Enter into a Settlement with Banco Pine S.A.* (the "Motion").[2] Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge, my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, and information obtained from other members of the Debtors' management team. If called to testify, I would testify to each of the facts set forth herein based on such personal knowledge, discussions, review of documents, or my opinions based upon my professional experience.

## PINE'S CLAIM

4.      On September 21, 2022, GLA issued the Bank Credit Note to Pine in the principal amount of approximately $8,124,796.[3] The Bank Credit Note accrues interest at 18.5% per year, is amortized in monthly installments until it matures in September 2024, and 30% of the principal amount of the Bank Credit Note is secured by the Cash Collateral pledged by GLA through a fiduciary assignment. As of the Petition Date, there was approximately $3,611,020 outstanding on the Bank Credit Note, inclusive of principal and accrued interest.

## PINE'S ACTIONS TO ENFORCE ITS CLAIM

5.      Following the Petition Date, Pine demanded that the Debtors make monthly amortization and interest payments under the Bank Credit Note. In response, the Debtors informed

---

[2]     Capitalized terms used but not otherwise defined herein have the meanings set forth in the Motion.

[3]     All amounts included herein are in U.S. dollars; Brazilian reals have been converted to U.S. dollars using the exchange rate as of the Petition Date of 1 USD: 4.92 BRL.

Pine that they did not have authority under the Bankruptcy Code to pay the prepetition obligations and that Pine's payment demand violated the automatic stay in effect under section 362 of the Bankruptcy Code as well as the Automatic Stay Order.

6.      On February 21, 2024, the Debtors inadvertently remitted approximately $528,111 to Pine on account of the Bank Credit Note.  Pine collected these inadvertently remitted funds and refused to return them.

7.      On February 26, 2024, Pine informed the Debtors that, on February 21, 2024 and on February 22, 2024, it had exercised its remedies under Brazilian law by sweeping all of the Cash Collateral in the amount of approximately $1,091,529.

8.      Upon learning of Pine's refusal to return the inadvertently remitted funds and the Cash Collateral Sweep, the Debtors notified Pine that these actions violated the Bankruptcy Code and the Automatic Stay Order and reserved all of their rights and remedies to take action against Pine.

9.      As a result of Pine's retention of the inadvertently remitted approximately $528,111 and the Cash Collateral Sweep, Pine collected, postpetition, approximately $1,615,708 on the Bank Credit Note.

10.      On June 28, 2024, Pine commenced a collection lawsuit against GLA in the Brazilian Court seeking recovery of the remaining amounts due under the Bank Credit Note.

11.      The Debtors considered all potential options available to them to address Pine's payment demands and the Pine Litigation, including commencing an adversary proceeding in the Chapter 11 Cases and defending the Pine Litigation.  However, given that Pine is a Brazilian bank with potentially limited (if any) business operations in the United States, I believe it is likely that Pine would continue to ignore a United States' court order, forcing the Debtors to also pursue

separate litigation in Brazil to enforce any judgment obtained from this Court against Pine. Moreover, Pine most likely would continue the Pine Litigation, which the Debtors would have to defend.

12.     The Pine Litigation presents a significant risk to the Debtors.  I understand that the Brazilian Court may refuse to acknowledge the automatic stay or honor the Automatic Stay Order. I also understand that the costs to the Debtors' estates associated with enforcing the automatic stay in the Pine Litigation would be significant, especially relative to the size of Pine's remaining claim, which totals approximately $2,199,963.87.  I further understand that any opposition or defense proceeding by the Debtors to adjudicate the merits of Pine's right to collect or to enforce the automatic stay would be an expensive and lengthy process.

## THE PROPOSED SETTLEMENT

13.     Given the costs and uncertainty attendant to any litigation, and the relatively small amount of Pine's claim, the Debtors attempted to reach a negotiated resolution with Pine.

14.     On July 15, 2024, the Debtors and Pine agreed to file a joint petition with the Brazilian Court to stay the Pine Litigation until July 30, 2024 so that the parties could work toward a consensual resolution.

15.     On July 31, 2024, after several weeks of negotiations and the exchange of multiple counterproposals, the Debtors and Pine agreed, subject to Court approval, to the terms of the Settlement, which is set forth in the MOU.

16.     I believe that entry into the Settlement will allow the Debtors to avoid the adverse and costly effects of litigation in the United States and in Brazil.  I understand that if Pine seeks to continue the Pine Litigation, the Debtors would likely need to post a bond in the full amount that Pine asserts it is owed or face having judgment liens placed on the Debtors' property in Brazil, the

seizure of the Debtors' assets, and/or the freezing of the Debtors' bank accounts.  In addition, there is a not insignificant risk that the Brazilian Court would rule in favor of Pine, forcing the Debtors to either seek to enforce this Court's order in Brazil, pay the amount due, or risk a liquidation proceeding in Brazil.  I believe that any litigation, whether commenced by Pine or the Debtors, is likely to be complex, protracted, and involve costs that far exceed the cost to the Debtors of performing under the Settlement.  Given these facts, I believe that failure to resolve this matter consensually would likely cause significant harm to the Debtors and their estates.

17.    Further, the Settlement provides notable economic benefits to the Debtors in that it allows them to pay the Agreed Claim over an average payment term of twenty-seven (27) months rather than all at once upon the Bank Credit Note's existing maturity in September 2024, provides for a lower monthly interest rate, and provides the Debtors with access to the New Credit Line.

18.    Moreover, the Settlement was negotiated at arm's length and in good faith among the Debtors, the Debtors' restructuring counsel, Milbank LLP, their Brazilian counsel, Lefosse Advogados, and Pine.

19.    In addition, throughout the course of the negotiations with Pine, the Debtors' advisors engaged with counsel for the Committee, and the Committee supports the relief requested.

20.    For all of these reasons, I agree with the Debtors' determination that the terms of the Settlement are in the best interests of their estates and creditors and constitute an efficient and cost-effective way to avoid the adverse effects of litigation with Pine.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated: August 9, 2024

*/s/ Joseph W. Bliley*
Joseph W. Bliley
Chief Restructuring Officer
GOL Linhas Aéreas Inteligentes S.A.

# EXHIBIT D

**Rosas Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                                             :
In re:                                                       :    Chapter 11
                                                             :
GOL LINHAS AÉREAS INTELIGENTES S.A.,                         :    Case No. 24-10118 (MG)
*et al.*,[1]                                                 :
                                                             :
                              Debtors.                       :    (Jointly Administered)
                                                             :
-------------------------------------------------------------x

### DECLARATION OF FÁBIO ROSAS IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THEM TO ENTER INTO A SETTLEMENT WITH BANCO PINE S.A.

Pursuant to 28 U.S.C. § 1746, I, Fábio Rosas, declare that the following is true to the best of my knowledge, information, and belief:

1.      I am a partner at Lefosse Advogados ("Lefosse").  I joined Lefosse's practice in 2022.  I have over twenty-five years of experience in restructuring and insolvency law in Brazil. At Lefosse, I have advised numerous national and international companies in insolvency and restructuring matters, both transactional and judicial, credit recovery and enforcement proceedings, before both the Brazilian bankruptcy and civil courts.

2.      The Debtors engaged Lefosse as their local corporate and restructuring advisor.  I am a member of Lefosse's restructuring and insolvency team providing legal advice to the Debtors.

3.      I submit this declaration (the "Declaration") in support of the *Debtors' Motion for*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A).  The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

*Entry of an Order Authorizing Them to Enter into a Settlement with Banco Pine S.A.* (the "Motion").[2]  I am not being specifically compensated for this testimony other than through payments received by Lefosse as a professional firm retained by the Debtors.  I am over the age of eighteen and authorized to submit this Declaration on behalf of the Debtors.

4.     Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge of the Debtors' operations and finances gained throughout Lefosse's engagement by the Debtors, my discussions with the Debtors' senior management, other members of the Lefosse team, and the Debtors' other advisors, my review of relevant documents, and my opinion based upon my experience.  If called to testify, I would testify to each of the facts set forth herein based on such personal knowledge, discussions, review of documents, or my opinions based upon my related professional experience.

5.     I am fluent in both Portuguese and English.  While I consider my English to be fluent and I make this Declaration without the aid of a translator, if called upon to testify to the matters addressed in this Declaration, I would testify with the aid of a translator, as English is a second language for me.

### BACKGROUND

6.     On September 21, 2022, I understand that GLA issued the Bank Credit Note to Pine in the principal amount of approximately $8,124,796.  I understand that the Bank Credit Note is secured by the Cash Collateral which was pledged through a fiduciary assignment.

7.     I understand that Pine has demanded that the Debtors make monthly amortization and principal payments under the Bank Credit Note during the pendency of the Chapter 11 Cases.

8.     I understand that on February 21, 2024, Pine collected approximately $528,111 of

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

2

funds that were inadvertently remitted to Pine by the Debtors.

9.    I understand that on February 26, 2024, Pine informed the Debtors that it had effectuated the Cash Collateral Sweep.

10.    On June 28, 2024, I understand that Pine commenced a collection lawsuit against the Debtors in the Brazilian Court seeking recovery of the remaining amounts due under the Bank Credit Note.

## BRAZILIAN COLLECTION LAW

11.    The Brazilian Court may refuse to acknowledge the automatic stay or honor the Automatic Stay Order. If the Brazilian Court elected not to respect the automatic stay in the Pine Litigation, the Debtors will be required to deposit with the Brazilian court the amount in dispute. Should the Debtors fail to post a bond or other collateral with a value equal to the full amount in controversy, the Brazilian Court could freeze the Debtors' bank accounts in Brazil, impose judgment liens on the Debtors' other property, or seize the Debtors' assets outright. In addition, any opposition or defense proceeding by the Debtors to adjudicate the merits of Pine's right to collect or to enforce the automatic stay in Brazil would likely be an expensive and lengthy process. Further, if the amounts due under the Bank Credit Note remain unpaid, Pine could seek to initiate a liquidation of the Debtors in Brazil. In that case, the Debtors could be forced to either satisfy the unpaid amounts or commence a *recuperação judicial*, which is a Brazilian proceeding designed to restructure businesses. I believe there is a not insignificant risk that the Brazilian Court would rule in favor of Pine, forcing the Debtors to either pay the amount due, seek to enforce this Court's order in Brazil, or risk a liquidation proceeding in Brazil. Ultimately, any litigation, whether commenced by Pine or the Debtors, is likely to be complex, protracted, and, if an adverse judgement is entered against the Debtors, involve costs that far exceed the cost to the Debtors of

performing under the Settlement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my information, knowledge, and belief.

Dated: August 9, 2024                              /s/ *Fábio Rosas*
                                                   Fábio Rosas
                                                   Partner
                                                   Lefosse Advogados