**Hearing Date and Time: December 20, 2024 at 4:00 PM (ET)**
**Objection Deadline: December 13, 2024 at 4:00PM (ET)**

Evan R. Fleck                                Andrew M. Leblanc
Lauren C. Doyle                              Erin E. Dexter (admitted *pro hac vice*)
Bryan V. Uelk                                **MILBANK LLP**
**MILBANK LLP**                              1850 K St. NW, Suite 1100
55 Hudson Yards                              Washington, DC 20006
New York, NY 10001                           Telephone: (202) 835-7500
Telephone: (212) 530-5000                    Facsimile: (202) 263-7586
Facsimile: (212) 530-5219

-and-

Gregory A. Bray
**MILBANK LLP**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Counsel for Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| GOL LINHAS AÉREAS INTELIGENTES S.A., *et al.*,[1] | : | Case No. 24-10118 (MG) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

---------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A). The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

**NOTICE OF DEBTORS' MOTION FOR ENTRY
OF AN ORDER AUTHORIZING THE DEBTORS TO ENTER INTO A
SETTLEMENT AGREEMENT WITH THE BRAZILIAN GOVERNMENT PARTIES**

**PLEASE TAKE NOTICE** that a hearing (the "Hearing") will be held **on December 20, 2024 at 4:00 p.m. (prevailing Eastern time)** before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004 to consider *Debtors' Motion for Entry of an Order Authorizing the Debtors to Enter into a Settlement Agreement with the Brazilian Government Parties* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that the Hearing will take place via Zoom for Government only. Parties wishing to appear at the Hearing must make an electronic appearance (an "eCourtAppearance") through the Court's website at https://www.nysb.uscourts.gov/ecourt-appearances no later than 4:00 p.m. (prevailing Eastern time) on December 19, 2024.

**PLEASE TAKE FURTHER NOTICE** that any objections or responses to the relief requested in the Motion shall: (i) be in writing; (ii) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York, and the *Final Order Implementing Certain Notice and Case Management Procedures* [Docket No. 175]; (iii) be filed electronically with this Court on the docket of *In re GOL Linhas Aéreas Inteligentes S.A.*, Case No. 24-10118 (MG) by registered users of this Court's electronic filing system (which is available on this Court's website at http://www.nysb.uscourts.gov); and (iv) be served so as to be actually received by **December 13, 2024 at 4:00 p.m. (prevailing Eastern time)**, by: (a) the Chambers of the Honorable Martin Glenn, Chief United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004; (b) the Debtors, c/o GOL Linhas Aéreas Inteligentes S.A., Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Brazil (Attn: Joseph W. Bliley, Chief Restructuring Officer); (c) Milbank LLP, 55 Hudson Yards, New York, NY 10001 (Attn: Evan R. Fleck, Esq., Lauren C. Doyle, Esq., and Bryan V. Uelk, Esq.), counsel for the Debtors; (d) William K. Harrington, U.S. Department of Justice, Office of the U.S. Trustee, One Bowling Green, Suite 534, New York, NY 10004-1408 (Attn: Annie Wells, Esq. and Brian Masumoto, Esq.); (e) the Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549; (f) the Federal Aviation Administration, 800 Independence Ave., S.W. Washington, DC 20591 (Attn: Office of the Chief Counsel); (g) the U.S. Attorney's Office for the Southern District of New York, One St. Andrew's Plaza, New York, NY 10007; and (h) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019 (Attn: Brett H. Miller, Esq., Todd M. Goren, Esq., Craig A. Damast, Esq., and James H. Burbage, Esq.), counsel for the Official Committee of Unsecured Creditors.

**PLEASE TAKE FURTHER NOTICE** that your rights may be affected. You should read the Motion carefully and discuss the relief requested with your attorney, if you have one in connection with the chapter 11 cases. (If you do not have an attorney, you may wish to consult with one.)

**PLEASE TAKE FURTHER NOTICE** that if you do not want the Court to grant the relief requested in the Motion, or if you want the Court to consider your view on the Motion, then you or your attorney must attend the Hearing.  If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter orders granting the relief requested in the Motion with no further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or at a later hearing.

*[Remainder of page intentionally left blank]*

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion can be viewed and/or obtained by: (i) accessing the Court's website at http://www.nysb.uscourts.gov, (ii) from the Debtors' claims and noticing agent, Kroll, at https://cases.ra.kroll.com/GOL, or by calling 844.553.2247 (U.S./Canada) (toll free) or +1.646.777.2315 (International) or by e-mail via GOLInfo@ra.kroll.com.  Note that a PACER password is needed to access documents on the Court's website.

Dated:  New York, New York
         November 29, 2024

**MILBANK LLP**

*/s/ Evan R. Fleck*
Evan R. Fleck
Lauren C. Doyle
Bryan V. Uelk
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219

-and-

Andrew M. Leblanc
Erin E. Dexter (admitted *pro hac vice*)
**MILBANK LLP**
1850 K St NW, Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile:  (202) 263-7586

-and-

Gregory A. Bray
**MILBANK LLP**
2029 Century Park East
33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile:  (213) 629-5063

*Counsel for Debtors and Debtors-in-Possession*

**Hearing Date and Time: December 20, 2024 at 4:00 PM (ET)**
**Objection Deadline: December 13, 2024 at 4:00PM (ET)**

Evan R. Fleck
Lauren C. Doyle
Bryan V. Uelk
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

Andrew M. Leblanc
Erin E. Dexter (admitted *pro hac vice*)
**MILBANK LLP**
1850 K St. NW, Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile: (202) 263-7586

-and-

Gregory A. Bray
**MILBANK LLP**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Counsel for Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------x
                                                          :
In re:                                                    :    Chapter 11
                                                          :
GOL LINHAS AÉREAS INTELIGENTES S.A.,                      :    Case No. 24-10118 (MG)
*et al.*,[1]                                              :
                                                          :
                              Debtors.                    :    (Jointly Administered)
                                                          :
--------------------------------------------------------------------x

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A). The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

**DEBTORS' MOTION FOR ENTRY OF**
**AN ORDER AUTHORIZING THE DEBTORS TO ENTER INTO A**
**SETTLEMENT AGREEMENT WITH THE BRAZILIAN GOVERNMENT PARTIES**

The above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>")

respectfully state as follows in support of this motion (the "<u>Motion</u>"):

**RELIEF REQUESTED**

1.      The Debtors seek entry of an order, substantially in the form attached hereto as

**<u>Exhibit A</u>** (the "<u>Order</u>"),[2] (i) authorizing them to enter into the settlement agreement with the

(a) Brazilian Federal Revenue Service and (b) General Counsel for the National Treasury

(collectively, the "<u>Government Parties</u>") a substantially final draft of which is attached hereto as

**<u>Exhibit B</u>** (the "<u>Settlement Agreement</u>")[3] and any related ancillary documentation and (ii)

granting related relief.

2.      In support of the relief requested herein, the Debtors submit (i) the *Declaration of*

*Renata Fonseca in Support of Debtors' Motion for Entry of an Order Authorizing the Debtors to*

*Enter into a Settlement Agreement with the Brazilian Government Parties* (the

"<u>Fonseca Declaration</u>"), attached hereto as **<u>Exhibit C</u>** and (ii) the *Declaration of John E. Luth in*

*Support of Debtors' Motion for Entry of an Order Authorizing the Debtors to Enter into a*

*Settlement Agreement with the Brazilian Government Parties* (the "<u>Luth Declaration</u>"), attached

hereto as **<u>Exhibit D</u>**.

---

[2]     The Debtors intend on filing the proposed form of Order in advance of the objection deadline to the Motion of December 13, 2024, at 4:00 PM (ET).

[3]     The Annexes to the Settlement Agreement (the "<u>Annexes</u>") are confidential and highly sensitive.  As such, the Debtors intend on filing with the Court such Annexes, once they have been translated, under seal.  Copies of the Annexes will be shared on a confidential basis with the (i) U.S. Trustee, (ii) advisors to the Committee, and (iii) advisors to the DIP Lenders (each as defined herein).

3.      The Debtors have discussed the requested relief with counsel to the Official Committee of Unsecured Creditors (the "Committee"), and the Committee does not oppose such relief.

## JURISDICTION

4.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.

5.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

6.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## STATUS OF THE CASES

8.      On January 25, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

9.      The Debtors continue to operate their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' cases (the "Chapter 11 Cases") are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order (i) Directing Joint Administration of Chapter 11 Cases and (ii) Granting Related Relief* [Docket No. 58].  On February 9, 2024, the U.S. Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Committee. *See Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 114].  On February 13, 2024, the U.S. Trustee filed a notice amending the composition of the Committee.  *See Am. Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 134].  No trustee or examiner has been appointed in these cases.

10.    Further information regarding the Debtors' business, capital structure, and the facts and circumstances leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Joseph W. Bliley in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 11].

## THE SETTLEMENT AGREEMENT

11.    In April 2023, the Debtors and the Government Parties commenced negotiations regarding the Debtors' eligibility for a government support program that would reduce the Debtors' tax and other obligations to the Government Parties, in the alleged amount of up to $1.1 billion[4] (the "Government Liability"). Fonseca Decl. ¶ 4. The Government Liability includes approximately $185 million on account of social security taxes, approximately $700 million on account of other federal taxes, and approximately $117 million of outstanding navigation fees owed to the Brazilian Department of Air Space Control (*Departamento de Controle do Espaço Aéreo*, or "DECEA"). *Id.* The Government Liability arises from, among other things, (i) certain amounts claimed by the Government Parties to be due that remain under dispute in judicial and administrative proceedings in Brazil, (ii) approximately $360 million that accrued and were deferred since the start of the COVID-19 pandemic and which the Debtors were unable to pay due to financial difficulties resulting from the pandemic, and (iii) certain amounts that are now due and owing as a result of the reversal of a judicial decision related to certain taxes. *Id.*

12.    The negotiations among the Debtors, their advisors, and the Government Parties have been extensive. *Id.* ¶ 5. For over a year and a half, the parties held numerous discussions and meetings, conducted a review of the Debtors' financial performance metrics to assess

---

[4]    Unless stated otherwise, all amounts referred to in the Motion are in U.S. dollars, with Brazilian *reals* having been converted to U.S. dollars using the exchange rate on October 8, 2024 (1 USD: 5.54 BRL).

eligibility for a government support program, determined the appropriate collateral to secure the

Debtors' obligations under the Settlement Agreement, and exchanged numerous proposals and

counterproposals.  *Id.*

13.    The following is a summary of the principal terms of the Settlement Agreement:[5]

- the Government Liability will be reduced by approximately $750 million, resulting in an outstanding amount owed to the Government Parties of approximately $250 million (the "Settlement Amount"), which reflects both a discount on the Government Liability and the application of certain tax losses—some of these tax losses would not otherwise have been available to offset the Debtors' tax liability for approximately ten years;

- the Settlement Amount will be paid pursuant to installment payment plans of (i) sixty consecutive monthly payments for the social security taxes and (ii) 120 consecutive monthly payments for all other federal taxes and fees owed to DECEA;

- the following property of the Debtors (the "Settlement Collateral") will be pledged by the Debtors to secure the obligations of GOL Linhas Aéreas Inteligentes S.A. ("GLAI") and GOL Linhas Aéreas S.A. ("GLA") under the Settlement Agreement on a "second lien" basis and only in case an event of default has occurred:

    a. certain airport slots recorded on the Debtors' balance sheet with a value in the amount of approximately $188 million, which represents approximately 20% of the overall value of the Debtors' airport slots;

    b. all of the receivables from the ticket sales contract with the Ministry of Management and Innovation in Public Services (the "Ministry");

    c. all of the receivables from the ticket sales contract with CVC Brasil Operadora E Agência De Viagens S.A. (the "Travel Agency");[6] and

    d. all of the receivables derived from the use of the Debtors' media spaces;

- the aggregate amount of obligations secured by the Settlement Collateral shall be 120% of the Settlement Amount;

- the second lien pledged to the Government Parties will be junior to existing senior claims against the Settlement Collateral that have been perfected under Brazilian law and such senior lien may be transferred one time in connection with the Debtors' restructuring; and

---

[5]    This summary is qualified in its entirety by the Settlement Agreement.  To the extent that any conflict, discrepancy, or inconsistency exists between this summary and the Settlement Agreement, the Settlement Agreement controls.

[6]    The total value of the receivables generated from the agreements relating to the sale of passenger tickets with the Ministry and the Travel Agency is approximately $90 million, representing approximately 3% of the Debtors' estimated 2024 passenger revenues.  *Id.* ¶ 6.

- the Debtors acknowledge that, absent the Settlement Agreement, they owe the full amount of the Government Liability to the Government Parties, and if the Debtors breach the Settlement Agreement, the Government Parties can pursue the full amount of the Government Liability against the Debtors; subject to the terms and conditions of the Settlement Agreement.

*Id.* ¶ 6.

14.    The grant of  liens with respect to the Settlement Collateral to the Government Parties requires the consent of the Required Holders as defined in the Indenture, dated as of February 21, 2024, among Gol Finance (Luxembourg), the guarantors party thereto, GLAS Trust Company LLC, as trustee, registrar, transfer agent and paying agent, and TMF Group New York, LLC, as collateral agent (as amended, restated, supplemented or otherwise modified from time to time) (the "DIP Indenture").  *See* DIP Indenture § 9.02.  Under the terms of the DIP Indenture, the Debtors cannot incur new liens on their assets, other than Permitted Liens (as defined in the DIP Indenture) (*see* DIP Indenture § 4.16) and the liens proposed to be granted under the Settlement Agreement do not constitute Permitted Liens.  The Debtors have been in discussions with the advisors to the noteholders under the Debtors' debtor in possession financing facility (the "DIP Lenders"), however, due to the confidential and sensitive nature of the Settlement Agreement negotiations, the DIP Lenders have not been able to consider the request prior to the filing of this Motion.  Given the significant benefits to the Debtors' estates emanating from the Settlement Agreement and the neutral impact on the DIP Lenders, the Debtors anticipate that the Required Holders will consent to the second lien pledge of the Settlement Collateral prior to the hearing on this Motion.[7]  Luth Decl. ¶ 7.

---

[7]    The DIP Indenture will be amended to account for the pledge of the Settlement Collateral on a "second lien" basis once DIP Lender consent to do so is obtained.  Pursuant to paragraph 35 of the *Final Order (a) Authorizing the Debtors to Obtain Postpetition Financing, (b) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (c) Granting Adequate Protection to the Prepetition Secured Parties, (d) Modifying the Automatic Stay, (e) Authorizing the Debtors to Use Cash Collateral, and (F) Granting Related Relief* (the "DIP Order") the Debtors and the DIP Lenders are permitted to amend the DIP Indenture accordingly.

15.     The substantially final draft of the Settlement Agreement has been approved by the board of directors of GLAI.  Fonseca Decl. ¶ 7.  After obtaining the requisite consent from the DIP Lenders and upon entry of the Order, the Debtors intend to execute the Settlement Agreement. Luth Decl. ¶ 7.

16.     The Settlement Agreement, which took over a year and a half to negotiate between the Debtors and the Government Parties reflects a major achievement in these Chapter 11 Cases. Fonseca Decl. ¶ 8.  The settlement of the Government Liability will significantly reduce the Debtors' overall obligations to the Government Parties enhancing the Debtors' free cash flow and will reduce their short-term cash liquidity needs through the deferral of payments.  Luth Decl. ¶ 4. As a result, the Settlement Agreement will enhance recoveries for the Debtors' stakeholders and strengthen the Debtors' restructured balance sheet.  *Id.*  Specifically, the Settlement Agreement generates approximately $184 million of liquidity for the Debtors through 2029, including approximately $150 million in liquidity in the first twenty-four months.  *Id.*  Moreover, the Settlement Agreement substantially enhances the likelihood that the Debtors will successfully secure the $1.85 billion of targeted exit financing to support the Debtors' reorganization.  *Id.* ¶ 5. As a result, the Plan Support Agreement dated November 5, 2024, between the Debtors, Abra Group Limited ("Abra"), and the Committee (the "Plan Support Agreement"), already provides that in the event the Debtors are able to secure the benefits of the Settlement Agreement, distributions to holders of general unsecured claims (the "GUCs") will be increased by an amount equal to $25 million upon the Settlement Agreement becoming effective.  *Id.* ¶ 6.

---

*See* DIP Order ¶ 35.  This Motion shall serve as the notice to counsel to the Committee and the U.S. Trustee of the amendments to the DIP Indenture set forth herein, as required under paragraph 35 of the DIP Order.

**BASIS FOR RELIEF**

**A.    The Settlement Agreement Should Be Approved Under Bankruptcy Rule 9019.**

17.    A court should exercise its discretion to approve settlements "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). Courts in this District have made clear that "[a]s a general matter, 'settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate.'" *In re Dewey & LeBouef LLP*, 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012) (citations omitted); *see also Motorola, Inc. v. Off. Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 455 (2d Cir. 2007) (stating that settlements "help clear a path for the efficient administration of the bankrupt estate").

18.    Under Bankruptcy Rule 9019 and the governing case law, a court should approve a compromise or settlement upon making a determination that it is fair and equitable, reasonable, and in the best interests of the debtor's estate. *See, e.g.*, *In re Genesis Glob. Holdco, LLC*, 2023 WL 6543250, at *5 (Bankr. S.D.N.Y. Oct. 6, 2023); *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. of Chi. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 426 (S.D.N.Y. 1993). In so doing, a court "may consider the opinions of the trustee or debtor and their counsel that the settlement is fair and equitable." *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

19.    Courts in the Second Circuit evaluate whether a settlement is "fair and equitable" and thus should be approved after considering the following seven interrelated factors, known as the "*Iridium* factors":

(i)    the balance between the litigation's possibility of success and the settlement's future benefits;

(ii)   the likelihood of complex and protracted litigation, "with its attendance expense, inconvenience, and delay," including the difficulty in collecting the judgment;

(iii)   the "paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement";

(iv)   whether other parties in interest support the settlement;

(v)   the "competency and experience of counsel" who support the settlement;

(vi)   the "nature and breadth of releases to be obtained by officers and directors"; and

(vii)   the "extent to which the settlement is the product of arm's length bargaining."

*Motorola, Inc. v. Off. Comm. of Unsecured Creditors & JPMorgan Chase Bank, N.A.* (*In re Iridium Operating LLC*), 478 F.3d 452, 462 (2d Cir. 2007) (quoting *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)); *see also In re Motors Liquidation Co.*, 555 B.R. 355, 365 (Bankr. S.D.N.Y. 2016).

20.    In addition, even though "courts have discretion to approve settlements, the business judgment of the debtor in recommending the settlement should be factored into the court's analysis." *In re MF Global Inc.,* No. 11-2790, 2012 WL 3242533, at *5 (Bankr. S.D.N.Y. Aug. 10, 2012) (citing *JP Morgan Chase Bank, N.A. v. Charter Commc'ns Operating LLC (In re Charter Commc'ns)*, 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009)).

21.    When assessing whether to approve a settlement, "the court need not conduct a 'mini-trial' to determine the merits of the underlying litigation." *See Purofied Down Prods.*, 150 B.R. at 522.  Instead, a court should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (alteration in original) (citations omitted).  In this regard, "[t]he 'reasonableness' of the settlement depends upon all factors, including probability of success,

the length and cost of the litigation, and the extent to which the settlement is truly the product of 'arms-length' bargaining, and not fraud or collusion." *Ionosphere Clubs*, 156 B.R. at 428.

22.     The Debtors respectfully submit that the Settlement Agreement satisfies the *Iridium* factors and falls well within the range of reasonableness.  The Settlement Agreement decreases the Government Liability by approximately $750 million (nearly a 75% reduction in overall claimed liabilities) and generates approximately $184 million in available liquidity for the Debtors through 2029.  Luth Decl. ¶ 4.  As such, the Settlement Agreement provides a significant source of value for the Debtors' estates; allowing the Debtors to maximize their value for the benefit of all other stakeholders and enhance their likelihood for a successful restructuring and exit from chapter 11. *Id.* ¶ 3.  Absent the Settlement Agreement, the Debtors would either be forced to pay the full amount of the Government Liability, a potential liability in excess of $750 million over the Settlement Amount or continue to defend against the Government Liability through costly and time-consuming litigation in Brazil.  Fonseca Decl. ¶ 9.  Either path would clearly be value destructive for the Debtors' and their estates. *Id.*  Moreover, given the uncertainties around litigation, continuing to pursue litigation with the Government Parties to reduce the overall amount of the Government Liability could result in a judicial determination that the amounts owed are far higher than the amounts agreed to in the Settlement Agreement and could impact the Debtors' relationship with the Government Parties and go-forward operations. *Id.*

23.     Moreover, the Settlement Agreement was negotiated at arm's length and in good faith among the Debtors, the Debtors' restructuring counsel, Milbank LLP, their Brazilian counsel, Lefosse Advogados, their special tax counsel, MJ Alves, Burle e Viana Advogados, and the Government Parties. *Id.* ¶ 10.

24.     In addition, the Debtors advisors have discussed the requested relief with counsel to the Committee, and the Committee does not oppose such relief.  *Id.* ¶ 11.  The Debtors also anticipate that the Required Holders will consent to the second lien pledge of the Settlement Collateral prior to the hearing on the Motion.  Luth Decl. ¶ 7.

25.     Accordingly, for all of these reasons, the *Iridium* factors weigh heavily in favor of providing the Debtors with approval to enter into the Settlement Agreement.

**B.      The Debtors' Entry into the Settlement Agreement Should Be Approved Under Bankruptcy Code Section 363.**

26.     To the extent that the Settlement Agreement requires the Debtors to use estate property, such use is a justified exercise of the Debtors' sound business judgment pursuant to section 363 of the Bankruptcy Code.  Section 363(b) of the Bankruptcy Code provides, in relevant part, that the debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  To approve the use of estate property under section 363(b)(1) of the Bankruptcy Code, the Second Circuit requires a debtor to show that the decision to use the property outside of the ordinary course of business was based on the debtor's sound business judgment.  *See, e.g.*, *Off. Comm. of Unsecured Creditors v. LTV Corp. (In re Chateaugay)*, 973 F.2d 141, 143 (2d Cir. 1992) (affirming the bankruptcy court's approval of the debtors' asset sale pursuant to section 363(b) as a reasonable exercise of business judgment); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) (holding that the application of section 363(b) must be supported by "some articulated business justification, other than appeasement of major creditors"); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a section 363(b) motion is "a good business reason"); *In re Borders Grp., Inc.*, 453 B.R. 459, 473 (Bankr.

S.D.N.Y. 2011) ("In approving a transaction conducted pursuant to section 363(b)(1), courts consider whether the debtor exercised sound business judgment.").

27.    Once a debtor articulates a valid business justification, a strong presumption arises that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *Off. Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (citations and quotations omitted), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).   Thus, if a debtors' actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

28.    The Debtors respectfully submit that entering into the Settlement Agreement is a sound exercise of their business judgment.   Fonseca Decl. ¶ 12.   The Settlement Agreement represents a major achievement towards the Debtors' restructuring goals as it will allow the Debtors to significantly reduce the Government Liability, unlocking significant value for their estates and stakeholders, enhance liquidity through 2029, and reduce the costs and risks associated with prolonged litigation.   Luth Decl. ¶ 4; Fonseca Decl. ¶ 9.

29.    As discussed above, the Settlement Agreement is a product of arms' length, good faith negotiations between the Debtors and the Government Parties.   Fonseca Decl. ¶ 10.   The Settlement Agreement not only reduces the Government Liability by approximately 75% but it also generates approximately $184 million in liquidity through 2029, including approximately $150 million in the first twenty-four months.   Luth Decl. ¶ 4.   These benefits will enhance recoveries for the Debtors' stakeholders while also strengthening the Debtors' restructured balance sheet.   *Id.*   Thus, the Settlement Agreement is in the best interests of the Debtors' estates and creditors and should be approved.

## **NOTICE**

30.     Notice of this Motion has been provided in accordance with the procedures set forth

in the *Final Order Implementing Certain Notice and Case Management Procedures* [Docket

No. 175].  The Debtors respectfully submit that no further notice is required.

## **NO PRIOR REQUEST**

31.     No previous request for the relief sought herein has been made by the Debtors to

this or any other court.

*[Remainder of page intentionally left blank]*

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of the Order granting the relief

requested herein and granting such other relief as is just.

Dated:  New York, New York                **MILBANK LLP**
        November 29, 2024

                                          */s/ Evan R. Fleck*
                                          Evan R. Fleck
                                          Lauren C. Doyle
                                          Bryan V. Uelk
                                          **MILBANK LLP**
                                          55 Hudson Yards
                                          New York, NY 10001
                                          Telephone:  (212) 530-5000
                                          Facsimile:  (212) 530-5219

                                          -and-

                                          Andrew M. Leblanc
                                          Erin E. Dexter (admitted *pro hac vice*)
                                          **MILBANK LLP**
                                          1850 K St NW, Suite 1100
                                          Washington, DC 20006
                                          Telephone: (202) 835-7500
                                          Facsimile:  (202) 263-7586

                                          -and-

                                          Gregory A. Bray
                                          **MILBANK LLP**
                                          2029 Century Park East
                                          33rd Floor
                                          Los Angeles, CA 90067
                                          Telephone: (424) 386-4000
                                          Facsimile:  (213) 629-5063

                                          *Counsel for Debtors and Debtors-in-Possession*

# EXHIBIT A

**Order**

## EXHIBIT B

**The Settlement Agreement**

[logo:]
PGFN

[logo:] **Federal Revenue Service of Brazil**

**ORDER/PGFN/RFB**

**Application: 20240087291**

**Interested Party: VRG LINHAS AEREAS S.A.**

**Applicant's CPF (*Cadastro de Pessoas Físicas* [Individual Taxpayers' Register]) /CNPJ** (*Cadastro Nacional de Pessoa Jurídica* [National Register of Legal Entities])**:** 07.575.651/0001-59

**Subject: CONSOLIDATED DRAFT TRANSACTION TERM**

A draft of the attached transaction agreement is hereby submitted, drafted by mutual agreement between the parties, informing that it is approved by this PGFN (*Procuradoria Geral da Fazenda Nacional* [Attorney General's Office of the National Treasury]) and RFB (*Receita Federal do Brasil* [Federal Revenue Service of Brazil]).

In response to the requirements of PGFN Ordinance No. 6757/2022, the following documents/attachments shall be part of the term:

ANNEX I - List of registrations in non-social security DAU (*Dívida Ativa da União* [Active Federal Debt]) subject to the agreement.

ANNEX I - List of debts that have the DECEA (*Departamento de Controle do Espaço Aéreo Brasileiro* [Brazilian Airspace Control Department]) as the originating body.

ANNEX III - List of debts that are the subject of administrative procedures and judicial proceedings.

ANNEX IV - List of debts with a triggering fact prior to signing the Transaction Agreement, to be confessed and declared to the RFB within 30 days of signing this agreement

ANNEX V- List of debts in administrative litigation phase with the RFB.

ANNEX VI - Declaration of existence, bookkeeping regularity, availability of PF (*Prejuízo Fiscal* [Tax Loss]) /BCN (*Base de Cálculo Negativo* [Negative Social Contribution Base]) credits.

ANNEX VII - Statement of no irrefutable and liquid credit towards the Federal Government.

ATTACHMENT VIII - Declaration of remaining in the taxation regime for actual profit, while the agreement lasts.

ANNEX IX - Assessment Report of airport slots (secret)

[logo:]
PGFN

[logo:] **Federal Revenue Service of Brazil**

ANNEX X - Service Provision Agreements (secret)

ANNEX XI - Inventory with assessment of media rights (secret) ANNEX XII - List of airport slots offered in guarantee (secret)



Erica de Santana Silva Barreto
**Chief Prosecutor- Negocia 2R**



Juliana Pita Guimarães
**Attorney of the National Treasury**



Cristiano Neuenschwander Lins de Morais
**General Negotiation Coordination of the PGFN**



Ricardo Peres Martins
**Tax Auditor of the Federal Revenue Service of Brazil**



Rafael Ogawa Akama
**Tax Auditor of the Brazilian Federal Revenue Service**
**Head of Tax Credit Transaction Team**

[logo:] PGFN    [logo:] Federal Revenue Service of Brazil

Attorney General's Office of the National Treasury
Regional Attorney's Office of the National Treasury of the
2nd Region Division of Negotiations - NEGOCIA2

Special Secretariat of the Federal Revenue Service of Brazil
National Tax Credit Transaction Team - ENAT



# DRAFT

| INDIVIDUAL TRANSACTION AGREEMENT |
|---|

**ATTORNEY GENERAL'S OFFICE OF THE NATIONAL TREASURY IN RIO DE JANEIRO, agency linked to the Attorney General of the Federal Government, located at Avenida Presidente Antônio Carlos, No. 375, Centro – Rio de Janeiro/RJ, represented herein by the National Treasury Attorneys signatories hereto, pursuant to Art. 131 of the Federal Constitution and Complementary Law No. 73/1993 and SECRETARIAT OF THE FEDERAL REVENUE SERVICE OF BRAZIL, body linked to the Ministry of Finance, based in Esplanada dos Ministérios, S/N, Bloco P, 7o. andar, Zona Cívico-Administrativa - Brasília/DF, in this act represented by the undersigned Auditors of the Federal Revenue Service and the Special Secretary of the Federal Revenue Service of Brazil, hereinafter referred to as "CREDITORS", and**

**GOL LINHAS AEREAS S.A., a private legal entity, headquartered in Rio de Janeiro/RJ, at Av. Senador Salgado Filho s/n, Térreo Área Pública – ENT EIXOS 46-48 O, CEP 20021340, registered with CNPJ (*Cadastro Nacional de Pessoa Jurídica* [National Register of Legal Entities]) No. 07.575.651/0001-59, and GOL LINHAS AÉREAS INTELIGENTES S.A. private legal entity, based in São Paulo - SP, to at Praça Linneu Gomes, s/n, Portaria 03, Prédio 24, Campo Belo, São Paulo - SP, CEP 04.626-020, registered with CNPJ No. 06.164.253/0001-87, represented herein by its legal representatives CELSO GUIMARAES FERRER JUNIOR, Brazilian, married, economist, bearer of identity card RG 24982348, issued by SSP/SP, enrolled in the CPF (Cadastro de Pessoas Físicas [Individual Taxpayers' Register]) under no. 309.459.748-33 and RENATA DOMINGUES DA FONSECA GUINESI, Brazilian, married, attorney, registered with the CPF under no. 216.662.428-61 and bearer of identity card RG no. 30611305, issued by SSP/SP, both with a commercial address at Praça Comandante Linneu Gomes, s/no., portaria 03, Jardim Aeroporto, São Paulo/SP, CEP 04626-020, hereinafter referred to as "DEBTORS",**

They sign this individual transaction agreement, based on Art. 171 of Law No. 5.172, of October 25, 1966, Law 13.988, of April 14, 2020, PGFN (*Procuradoria Geral da Fazenda Nacional* [Attorney General's Office of the National Treasury]) Ordinance No. 6.757, of August 4, 2022 and RFB (*Receita Federal do Brasil* [Federal Revenue Service of Brazil]) Ordinance No. 247, of November 18, 2022, accompanied and formalized through SEI Proceedings 19726.001456/2024-15 and e-Process 13031.404266/2024-98.

**1. PURPOSE**

[logo:] PGFN                                                    [logo:] Federal Revenue Service of Brazil

Attorney General's Office of the National Treasury
Regional Attorney's Office of the National Treasury of the
2nd Region Division of Negotiations - NEGOCIA2

Special Secretariat of the Federal Revenue Service of Brazil
National Tax Credit Transaction Team - ENAT

---

1.1.    This transaction aims to calculate the liabilities of the debts of the DEBTORS (i.) registered in the DAU (*Dívida Ativa da União* [Active Federal Debt]) - of a social security nature, non-social security and that have the Airspace Control Department - DECEA - as the body of origin and (ii.) in administrative litigation under the administration of the Special Secretariat of the Federal Revenue Service of Brazil (RFB), in order to balance the interests of the parties with the termination of legal disputes, the full discharge of said debts, and the overcoming of the DEBTORS' transitional economic and financial crisis situation, observed the provisions described herein.

1.2.    The tax liability of the DEBTORS subject to this transaction is composed of:

1.2.1.    Non-social security DAU registrations, listed in ANNEX I;

1.2.2.     The DAU registrations related to the debts that have the DECEA as the body of origin, contained in ANNEX II;

1.2.3.    The debts subject to the administrative procedures and judicial proceedings contained in ANNEX III, as well as the obligations confessed and declared to the Federal Revenue Service, according to ANNEX IV, which will be included in this transaction, if and when registered in the DAU.

1.2.4.    The debts subject to the administrative procedures contained in ANNEX V, in the administrative litigation phase under the administration of the RFB.

1.3.    The debts listed in Annex IV shall be those with a triggering event prior to the signing of this agreement, which shall be declared by the DEBTORS to the Federal Revenue Service within 30 days of the signing of this agreement.

1.4.    The conclusion of this agreement results in the recognition of the existence of the actual economic group between the DEBTORS, consequently, in the co-responsibility between them.


**2.  TRANSACTED DEBT PAYMENT PLAN**

2.1.    Considering the economic situation of the Applicants, measured from the verification of the equity or economic-tax registration information provided by the debtors themselves or by third parties to the Attorney General's Office of the National Treasury or to the other agencies of the Public Administration, as well as the payment capacity revised in the SICAR Application 20230260577, the following conditions will be granted for the payment of the Transacted Debt:

2.1.1.    Payment of the debts listed in ANNEX I in 120 (one hundred and twenty) monthly and successive installments, without application of any discounts or benefits;

[logo:] PGFN

[logo:] Federal Revenue Service of Brazil

Attorney General's Office of the National Treasury
Regional Attorney's Office of the National Treasury of the
2ⁿᵈ Region Division of Negotiations - NEGOCIA2

Special Secretariat of the Federal Revenue Service of Brazil
National Tax Credit Transaction Team - ENAT

---

2.1.2.    For the debts listed in ANNEX II:

2.1.2.1.    Application of discounts to the maximum permitted by Law 13.988/2020 (65%), forbidden the reduction of the principal amount, applied only on legal additions incurred after the registration in the Active Debt of the Federal Government, pursuant to art. 84, I and II, "c" c/c §8 of Law 8981/95;

2.1.2.2.    Payment in 120 (one hundred and twenty) monthly and successive installments;

2.1.3.    For the debts listed in ANNEX III to V:

2.1.3.1.    Application of the discounts to the maximum permitted by Law 13.988/2020 (65%), forbidden the reduction of the principal amount, with the discount being applied in a proportionate manner on legal additions (fine, interest and charges);

2.1.3.2.    Use of tax loss credits and negative calculation basis of the Social Contribution on Net Profit (CSLL) for settlement of up to 60% of the outstanding balance after discounts applied in fines, interest and legal charges, pursuant to the changes made by Law No. 14.375/2022;

2.1.3.2.1.    The use mentioned in the previous item may reach up to 70%, if the balance due after the discounts applied on fines, interest and legal charges, exceeds the payment capacity revised in the SICAR Application 20230260577.

2.1.3.3.    Payment of the remaining balance, of a social security nature to be made in 60 (sixty) monthly and successive installments;

2.1.3.4.    Payment of the remaining balance, of a non-social security nature to be made in 120 (one hundred and twenty) monthly and successive installments;

2.2.    The DEBTORS agree to immediately submit the debts of the administrative proceedings listed in ANNEXES II to IV, for registration in the Active Debt of the Federal Government, with the incidence of the legal charge of 10% (ten percent) provided for in Decree-Law No. 1.025/69 on them.

2.3.    If there is a remaining balance greater than the amount projected for the last monthly payment, it must be fully collected at the time of payment of the last scheduled installment.

2.4.    The credits mentioned in clause 2.1.3.2. were attested by an accounting professional in a report submitted by the DEBTORS (ANNEX VI), which certifies their existence, bookkeeping regularity and availability.

[logo:] PGFN

[logo:] Federal Revenue Service of Brazil

Attorney General's Office of the National Treasury
Regional Attorney's Office of the National Treasury of the
2nd Region Division of Negotiations - NEGOCIA2

Special Secretariat of the Federal Revenue Service of Brazil
National Tax Credit Transaction Team - ENAT

2.5.    The CREDITORS will perform the analysis of the regularity of the use of the credits provided for in the clause

2.1.3.2. based on the tax information to be provided by the Special Secretariat of the Federal Revenue Service of Brazil regarding the existence and sufficiency of the amounts of tax loss and the basis of negative calculation of CSLL indicated by the DEBTORS.

2.6.    If the use of the credits informed is rejected, in whole or in part, the DEBTOR must, within 30 (thirty) days, counting from the summons, exclusively through the REGULARIZE platform, for the cases of the transaction accounts of the debts contained in ANNEXES I to IV, and by e-Cac if they are debts that are part of ANNEX V:

I    – provide for the payment in cash of the unduly amortized debt balance with unrecognized credits; or
II    - submit a challenge against rejected credits.

2.6.1.    The challenge and its appeal will comply with the provisions of Chapter VII of PGFN Ordinance No. 6.757, of July 29, 2022 and Chapter IV of RFB Ordinance No. 247, of November 18, 2022.

2.6.2.    The rejection of the challenge or the dismissal of the appeal, when it is not successful by payment in cash of the debtor balance unduly amortized with unrecognized credits, within 30 (thirty) days, counting from the summons of the administrative decision, exclusively through the REGULARIZE platform, for the cases of the transaction accounts of the debts contained in ANNEXES I to IV, and by e-Cac if it is debts that are part of ANNEX V, entails the termination of the transaction and:

I    - implies the removal of the granted reductions and the full collection of the registrations, minus the amounts paid;
II    – authorizes the resumption of the course of collection of credits, with the execution of the guarantees provided and the practice of other enforcement of judicial or extrajudicial acts of credit execution; and
III    – prevents the debtor, for a period of 2 (years) from the date of termination, from formalizing a new transaction, even if related to different registrations.

2.7.    The amounts of the installments will be increased with interest equivalent to the reference rate of the Special Settlement and Custody System (Selic) for federal securities, or by another index that replaces it, accumulated monthly, calculated from the month subsequent to the consolidation until the month prior to the payment, and of 1% (one percent) relative to the month in which the payment is being made.

2.8.    The payment plan will be consolidated on behalf of the debtor GOL LINHAS AEREAS S.A. and payments will be made by the last business day of each month, through:

[logo:] PGFN                                                    [logo:] Federal Revenue Service of Brazil

Attorney General's Office of the National Treasury                    Special Secretariat of the Federal Revenue Service of Brazil
Regional Attorney's Office of the National Treasury of the                    National Tax Credit Transaction Team - ENAT
2nd Region Division of Negotiations - NEGOCIA2

---

2.8.1.   Numbered DARF (*Documento de Arrecadação da Receita Federal* [Federal Revenue Service Collection Document]) issued by the DEBTORS through the REGULARIZE platform, for the cases of the transaction accounts of the debts contained in ANNEXES I to IV;

2.8.2.   DARF issued by the debtors, relating to the debts listed in ANNEX V.

2.8.2.1.   Any differences between the simulated amounts and those obtained when the transaction account is operationalized will be diluted along the past due installments.

2.9.   Once the development of the functionality of the computerized monitoring system of individual transactions within the scope of the Federal Revenue Service of Brazil is completed, the remaining balances of the debts of ANNEX V will be transferred to it.

2.10.   Any credits that the DEBTORS may have, through judiciary bonds, or by a judicial deposit withdrawal carried out in proceedings in which the Federal Government (National Treasury) is a party, linked to the proceedings/procedures indicated in Annexes I to V, must be directed to the fulfillment of the balances due to the Transaction, and the imputation must occur first in the transactions of the debts registered in the DAU and, if there is a remaining balance, in the debts under the administration of the Federal Revenue Service of Brazil.

2.11.   The formalization of the Transaction constitutes an unequivocal act of recognition by the DEBTORS of the Transacted Debt.

2.12.   Transacted Debt will only be extinguished when the requirements set forth at the time of entering into the Transaction are fully met.

## 3.  GUARANTEES

3.1.  Debts subject to this transaction will be guaranteed, in the second degree, by the following assets/rights:

3.1.1.   Airport slots recorded on the Balance Sheet in the amount of BRL 1,038,900,000.00, individualized in ANNEX XII;

3.1.2.   Total of receivables from the ticket sales agreement signed with the Ministry of Management and

[logo:] PGFN                                        [logo:] Federal Revenue Service of Brazil

Attorney General's Office of the National Treasury
Regional Attorney's Office of the National Treasury of the
2nd Region Division of Negotiations - NEGOCIA2

Special Secretariat of the Federal Revenue Service of Brazil
National Tax Credit Transaction Team - ENAT

---

Innovation in Public Services in SEI process No. 19726.001456/2024-15 (ANNEX X).

3.1.3.   Total of the receivables of the ticket sales agreement with CVC BRASIL OPERADORA E AGÊNCIA DE VIAGENS S.A. (ANNEX X).

3.1.4.   Total of receivables resulting from the use of the DEBTOR'S media spaces, as specified in the inventory of spaces, quantity and unit values (ANNEX XI).

3.2.   The guarantees specified in clauses 3.1.1 to 3.1.4 may be executed up to the limit of 120% of the outstanding balance arising from the transaction, respecting the degree of preference in relation to the other creditors of the DEBTORS.

3.3.   Within 30 (thirty) days of signing this agreement, the DEBTORS shall:

3.3.1.   Notify the contracting parties of the legal transactions indicated in clauses 3.1.2., 3.1.3, to inform them of the signing of this individual transaction agreement, as well as the offer of receivables as guarantee of the agreement.

3.3.2.   For the purposes of quantifying the legal business indicated in clause 3.1.4, the DEBTORS shall inform the CREDITORS, each semester, of the list of contractors of the assets identified in clause 3.1.4, indicating the amounts referring to these contracts in that period.

3.3.2. Notify the National Civil Aviation Agency - ANAC - to inform the signing of this individual transaction agreement, of the provision of the airport slots described in clause 3.1.1. as guarantee of the agreement, pursuant to ANAC Resolution No. 682/2022.

3.4.   The rights object of clause 3.1.1. may be subject to an onerous assignment by the DEBTORS upon prior consent and inclusion of the CREDITORS as consenting parties in the assignment agreement, as well as with the full allocation of the amount obtained in the negotiation to the settlement of the installments due from this transaction, observing the decreasing order of maturity.

3.5.   The DEBTORS undertake, within 15 (fifteen) days from the execution of the legal act, to replace the guarantees provided for in clauses 3.1.2 to 3.1.3 with new contracts of an equal nature in the event of termination of the agreements or execution of the creditor in the first degree.

[logo:] PGFN

[logo:] Federal Revenue Service of Brazil

Attorney General's Office of the National Treasury
Regional Attorney's Office of the National Treasury of the
2nd Region Division of Negotiations - NEGOCIA2

Special Secretariat of the Federal Revenue Service of Brazil
National Tax Credit Transaction Team - ENAT

---

3.6.   The DEBTORS undertake, within 15 (fifteen) days from the execution of the legal act, to replace the guarantees provided for in clauses 3.1.1 with another of the same nature in the event of execution of the creditor in the first degree.

3.7.   The CREDITORS reserve the right to require the replacement of the guarantee provided for in clause 3.1.1 with another of the same nature, of equal or greater value, if there is devaluation or loss of the right is at any time, during the term of the transaction.

3.8.   In the event that the DEBTORS are subject to any termination of the transaction agreement, the CREDITORS may resume the course of collection of credits, with the immediate execution of the guarantees provided, respecting the degree of preference in relation to the other creditors of the DEBTORS who received such guarantees, and carrying out of the other acts enforcing the debts, whether judicial or extrajudicial.

3.8.1.   In the event of execution of the guarantee provided for in clause 3.1.2. the DEBTORS hereby authorize the withholding of the consideration owed by the contractor due to the service provided by the contractor, up to the limit of 120% of the outstanding balance resulting from the transaction.

3.8.2.   In the event of execution of the guarantee provided for in clause 3.1.1, the CREDITORS will be permitted to request judicially, or carry out the disposal on their own initiative, through the platform "I BOUGHT" [*COMPREI*] or through an accredited public broker or auctioneer, pursuant to Art. 880 of the Code of Civil Procedure c/c Art. 19, §13 of Law 10.522/02, regardless of authorization from the regulatory agency or the CREDITORS.

3.8.3.   In the event of execution of the guarantees provided for in clauses 3.1.3 and 3.1.4, the contracting parties will be summoned so that they can immediately block and deposit the amounts owed to the DEBTORS, up to a limit of 120% of the outstanding balance resulting from the transaction, respecting the degree of preference in relation to the other creditors of the DEBTORS.

3.9.   Second-degree guarantees will always be subordinated to this degree in relation to creditors of indebtedness already constituted in favor of the DEBTORS where such guarantees have already been registered as first-degree guarantee.

3.10.   First-degree creditors may, once and only, restructure the debt of the DEBTORS subject to the guarantees provided, exclusively for the purposes of closing Chapter 11, and may transfer their first-degree right to new creditors of the new financial restructuring of the DEBTORS.

[logo:] PGFN                                              [logo:] Federal Revenue Service of Brazil

Attorney General's Office of the National Treasury
Regional Attorney's Office of the National Treasury of the
2ᵈ Region Division of Negotiations - NEGOCIA2

Special Secretariat of the Federal Revenue Service of Brazil
National Tax Credit Transaction Team - ENAT

---

3.11.   The debt arising from the restructuring mentioned in the item above shall have a maximum period of up to 7 (seven) years from the date of full settlement of the debt held by the creditors of indebtedness already constituted.

3.12.   After the 7 (seven) year period indicated in the item above, the CREDITORS will become holders of said guarantees in the first degree.

**4.  OF JUDICIAL AND ADMINISTRATIVE LITIGATION**

4.1.   The DEBTORS expressly give up the challenges and appeals that have as their object the Settled Debt and waive any arguments of law on which said challenges, appeals and actions are based (including declaratory ones), as well as irrevocably and irreversibly acknowledging and confessing to said debt, refraining from disputing it in future legal action.

4.2.   The DEBTORS expressly waive any arguments of law, current or future, on which legal actions are based, including collective and declaratory actions, or appeals that have the settled registered debts as their objects, which must be demonstrated by means of a request to terminate the respective process with resolution on the merit of the case, pursuant to paragraph "c" of item III of the caput of Art. 487 of Law No. 13.105, of March 16, 2015 - Code of Civil Procedure;

4.3.   The DEBTORS shall, within 30 (thirty) days from the signing of this agreement, petition in the judicial proceedings relating to the debt settled to notify the conclusion of the Transaction and give up the challenges, appeals or ongoing actions, in addition to waiving the rights on which they are based, acknowledging the debt irrevocably and irreversibly.

4.4.   The DEBTORS authorize the offsetting, at the time of effective financial availability, of amounts relating to refunds, reimbursements or back payments recognized by the Special Secretariat of the Federal Revenue Service of Brazil, with installments of the agreement signed, expired or lapsed;

4.5.   The DEBTORS authorize the offsetting, at the time of effective financial availability, of amounts related to federal judiciary bonds to which they are a creditor, in processes to which the Federal Government (National Treasury) is a party.

4.6.   Amortization of the credits provided for in clauses 4.4 and 4.5 will be carried out in the descending order of maturity of the installments of the agreement.

4.7.   The amounts deposited in court, linked to the debits settled, will be transformed into a definitive payment and attributed to the respective debits, without the incidence of any concession or benefit.

4.8.   The DEBTORS expressly agree to the debit statements of the DAU (*Divida Ativa da União* [Active Debt of the Federal Government]) entries contained in Annex II, refraining from disputing them administratively or judicially.

[logo:] PGFN                                              [logo:] Federal Revenue Service of Brazil

Attorney General's Office of the National Treasury
Regional Attorney's Office of the National Treasury of the
2nd Region Division of Negotiations - NEGOCIA2

Special Secretariat of the Federal Revenue Service of Brazil
National Tax Credit Transaction Team - ENAT

---

**5.  OF THE OTHER TERMS AND CONDITIONS**

5.1.    THE DEBTORS authorize the CREDITORS to have access to their tax statements and documents and financial information;

5.2.    All demands/evidence required by this transaction agreement must be complied with by the DEBTORS by submitting an administrative application via the REGULARIZE portal, with express mention of SEI process no. 19726.001456/2024-15 and e-Process 13031.404266/2024-98.

5.3.    The debts that are object of this agreement may not be covered by another transaction that has as its purpose an amortization plan, subject to the possibility of migration to a special instalment program created by law, or an adhesion transaction program with more beneficial conditions, which allows the adhesion of the DEBTORS, without the migration of the benefits agreed in this Individual Transaction and in compliance with the legislation in force.

5.4.    In the event of clause 5.3, regardless of specific regulation of new instalment or transaction programs, the DEBTORS undertake to maintain the guarantees already made in the form of this agreement in the case of an individual transaction.

5.5.    The guarantees associated with the debits transacted are maintained, as determined by Art. 7, II of PGFN (*Procuradoria-Geral da Fazenda Nacional* [Prosecutor General of the National Treasury]) Ordinance 6.757/2022, and the DEBTORS expressly undertake not to legally require the replacement of financial guarantees offered in legal proceedings.

5.6.    The DEBTORS declare that:

5.6.1.    During the term of the transaction agreement, they will not dispose of assets or their own rights that may make it impossible or significantly reduce the ability to pay the commitments assumed in this agreement, without properly communicating them to the National Treasury.

5.6.1.1.    The disposal of assets or own rights in an amount greater than 30% of the assets declared by the debtors, considered in the calculation of their effective payment capacity, at the time of formalization of the agreement, is assumed to be significant.

5.6.2.    They do not use an intermediary individual or legal entity to conceal or disguise the origin or destination of assets, rights and amounts, their real interests or the identity of the beneficiaries of their acts, to the detriment of the Federal Public Treasury;

[logo:] PGFN                                        [logo:] Federal Revenue Service of Brazil

Attorney General's Office of the National Treasury
Regional Attorney's Office of the National Treasury of the
2nd Region Division of Negotiations - NEGOCIA2

Special Secretariat of the Federal Revenue Service of Brazil
National Tax Credit Transaction Team - ENAT

---

5.6.3.   They will not dispose of or encumber assets or rights for the purpose of thwarting the recovery of the credits registered;

5.6.4.   The registration, property and economic-tax information provided to the tax administration is true and has not omitted information regarding the ownership of assets, rights and amounts.

5.7.   The DEBTORS undertake to:

5.7.1.   Not dispose of their own assets or rights or those of their tax managers that may significantly impair or reduce the ability to pay, compromising compliance with the transaction, without properly reporting to the National Treasury.

5.7.1.1.   The disposal of assets or own rights in an amount greater than 30% of the assets declared by the debtors, considered in the calculation of their effective payment capacity, at the time of formalization of the agreement, is assumed to be significant.

5.7.2.   Not use intermediary individuals or legal entities to conceal or disguise the origin or destination of assets, rights and amounts, their real interests or the identity of the beneficiaries of their acts, to the detriment of the Federal Public Treasury;

5.7.3.   Provide, whenever requested, information on assets, rights, amounts, transactions, operations and other acts that allow the CREDITORS to know their economic situation or any facts that imply termination of the agreement;

5.7.4.   Not to distribute dividends to shareholders above the legal minimum until the Chapter 11 payment plan is closed.

5.7.5.   Not use the transaction abusively or for the purpose of limiting, falsely or otherwise harming free competition or free economic initiative;

5.7.6.   Waive any current or future arguments of law on which legal actions are based, including class and declaratory actions, or appeals that have as their object the credits included in the transaction, by means of a request to extinguish the respective process with resolution on the merit, pursuant to paragraph "c" of item III of the caput of Art. 487 of Law No. 13.105, of March 16, 2015 - Code of Civil Procedure;

5.7.7.   Within 90 (ninety) days, pay, pay by installment or guarantee, by means of deposit, surety letter, insurance or other sufficient and reputable guarantee, any debts that become due after the formalization of the transaction agreement;

5.7.8.   Maintain correct status with the Employee Severance Guarantee Fund (*Fundo de Garantia do Tempo de Serviço* [FGTS]) and individualize the amounts collected from the respective employees, when applicable;

[logo:] PGFN                                      [logo:] Federal Revenue Service of Brazil

Attorney General's Office of the National Treasury                    Special Secretariat of the Federal Revenue Service of Brazil
Regional Attorney's Office of the National Treasury of the                     National Tax Credit Transaction Team - ENAT
2nd Region Division of Negotiations - NEGOCIA2

---

5.7.9.  Maintain their correct tax status, under penalty of termination of the transaction signed and described herein, with correct tax status defined as compliance with the main and accessory tax obligations.

5.9.  The CREDITORS undertake to:

5.9.1.   Assume the good faith of the DEBTORS in relation to the statements provided at the time of the formalization of the transaction;

5.9.2.  Notify the DEBTORS whenever the event of termination of the transaction is verified, with the granting of a deadline for the settlement of the defect;

5.9.3.  Make the signed transaction public, as well as the respective obligations, requirements and concessions, except for annexes protected by secrecy.

## 6.  THE HYPOTHESES OF TERMINATION

6.1.  The following will entail termination of the transaction, with the immediate enforceability of all acknowledged debts:

6.1.1.   Failure to pay 3 (three) consecutive installments or 6 (six) alternating installments;

6.1.2.  Failure to pay the last two or the last installment of the payment plan;

6.1.3.  Failure to comply with any of the conditions, clauses, obligations or commitments assumed in this transaction agreement, provided that the irregularity is not remedied within the period indicated by the CREDITOR;

6.1.4.   The finding, by the CREDITORS, of an act aimed at eliminating the DEBTORS' assets as a way of thwarting the fulfillment of the transaction, even if carried out prior to its execution;

6.1.5.  The decree of bankruptcy or extinction, by liquidation, of the DEBTORS;

6.1.6.  Proof of breach of public duty, graft or passive corruption in its formation;

6.1.7.  The occurrence of willful misconduct, fraud, simulation or essential error as to the person or object of the conflict;

6.1.8.  Failure to comply with any provisions set forth in the Law governing the transaction;

6.1.9.  If the CREDITORS find that the statements formalized in the Agreement were untrue;

[logo:] PGFN                                             [logo:] Federal Revenue Service of Brazil

Attorney General's Office of the National Treasury
Regional Attorney's Office of the National Treasury of the
2nd Region Division of Negotiations - NEGOCIA2

Special Secretariat of the Federal Revenue Service of Brazil
National Tax Credit Transaction Team - ENAT

---

6.1.10.    The finding that the DEBTORS are using an intermediary individual or legal entity to conceal or disguise the origin or destination of assets, rights and amounts, their real interests or the identity of the beneficiaries of their acts, to the detriment of the Federal Public Treasury;

6.1.11.    The finding that the DEBTORS have committed fraud against the execution, pursuant to Art. 185 of Law No. 5.172, of October 25, 1966 (National Tax Code), and have not reserved sufficient assets or rents for the total payment of the registered debt; and

6.1.12.    The declaration of inadequacy of the DEBTORS in the National Register of Legal Entities (CNPJ).

6.1.13.    Failure to comply with obligations with the FGTS;

6.1.14.    Rejection, in whole or in part, of the amortization of the outstanding balance using the credit provided for in clause 2.1.3.2, if the measures provided for in clause 2.6 are not adopted.

6.1.15.    The rejection of the challenge or the dismissal of the appeal provided for in clause 2.6, II, when the payment of the debtor balance unduly amortized with unrecognized credits is unsuccessful, within 30 (thirty) days, counting from the notification of the administrative decision.

6.2.    Termination of the transaction will result in the removal of the benefits granted and the full collection of the debts, deducting the amounts paid, as well as authorizing the resumption of the course of collection of the credits, with execution of the guarantees provided judicially and carrying out of the other acts executing the credit, judicial or extrajudicial;

6.3.    Once the transaction is terminated, for a period of 2 (two) years from the date of termination, the formalization of a new transaction, even if related to different debts, is prohibited;

6.4.    The DEBTORS may, within 30 (thirty) days from the notification of the cause of termination of the transaction, settle the defect or present a challenge, with the transaction being preserved in all its terms during this period;

6.4.1.    The challenge must be submitted via the REGULARIZE platform in the cases of the debts from ANNEX I to ANNEX IV and by the e-Cac if the debts of ANNEX V are involved, and it must contain all the elements that undermined the hypotheses of rescission, whereby the attachment of documents is possible;

6.4.2.    Once the challenge is submitted, all subsequent communications will be made through the REGULARIZE platform in the cases of the debts of ANNEX I to IV and by e-Cac in the case of the debts of ANNEX V, and the DEBTORS will be responsible for monitoring the respective processing;

6.4.3.    The challenge will be assessed by the Prosecutor of the National Treasury located at the Regional Prosecutor General's Office of the National Treasury of the 2nd Region, observing the internal rules of

[logo:] PGFN                                        [logo:] Federal Revenue Service of Brazil

Attorney General's Office of the National Treasury
Regional Attorney's Office of the National Treasury of the
2nd Region Division of Negotiations - NEGOCIA2

Special Secretariat of the Federal Revenue Service of Brazil
National Tax Credit Transaction Team - ENAT

---

distribution of activities or by the Tax Auditor of the Federal Revenue Service located at the National Transaction Team.

6.4.4.    The DEBTORS will be notified of the decision through the REGULARIZE platform in the cases of the debits of ANNEX I to IV and by the e-Cac in the case of the debts of ANNEX V, and they will be allowed to file an administrative appeal within 10 (ten) days, with suspensive effect;

6.4.5.    If there is no reconsideration by the authority responsible for the appealed decision, the appeal will be forwarded to the higher authority;

6.4.6.    The competent authority for the judgment of the appeal shall be the Chief Prosecutor of Active Debt of the 2nd Region in the cases of the debts of ANNEX I to IV and the Supervisor of the National Transaction Team in the case of the debts of ANNEX V.

6.4.7.    The filing by the DEBTORS of any legal action whose object fully or partially coincides with the challenge shall represent a waiver of the appeal and any appeal that may be filed will not be heard;

6.5.    Until the challenge to the termination of the transaction is definitively judged, the DEBTORS shall comply with all the requirements of the agreement;

6.6.    If the appeal is upheld, the circumstance determining the termination of the transaction will become null;

6.7.    If the appeal is dismissed; the transaction will be definitively terminated;

**7.    FINAL PROVISIONS**

7.1.    This Individual Transaction was authorized in the manner provided for in Art. 63 of PGFN (*Procuradoria General da Fazenda Nacional* [General Prosecutor's Office of the National Treasury]) Ordinance No. 6.757, of July 29, 2022 and in Art. 48 of RFB Ordinance No. 247, of November 18, 2022, and begins to take effect on the date of its signature by the Parties, under the condition subsequent of payment of the first monthly installment.

7.2.    The account of the Settled Debt is considered approved and consolidated from the payment of the first agreed installment.

7.3.    The execution of this Transaction does not provide exemption from the payment of current tax obligations owed by the DEBTORS, nor even the fulfillment of ancillary obligations.

7.4.    This transaction and the interpretation of its clauses cannot imply the waiver of guarantees and privileges of tax credit.

[logo:] PGFN                                                    [logo:] Federal Revenue Service of Brazil

Attorney General's Office of the National Treasury                Special Secretariat of the Federal Revenue Service of Brazil
Regional Attorney's Office of the National Treasury of the                National Tax Credit Transaction Team - ENAT
2nd Region Division of Negotiations - NEGOCIA2

---

**7.5.**    This transaction does not prevent the regular accrual of interest, by the legal index in force for the updating of the tax credits of the Federal Government, on the debts registered in Active Debt of the Federal Government (*Dívida Ativa da União* [DAU]) that is the object of this transaction.

**7.6.**    This transaction cannot imply the reduction of the principal amount, fine and interest levied on the credit until the date of registration of Active Debt under the debts contained in ANNEX II.

**7.7.**    This transaction binds and produces effects for the DEBTORS, their successors and acquirers of any kind, even if the Federal Government has not been aware of any possible contractual, corporate, successor changes, and all the rights and obligations of this instrument are transferred.

With regard to the requirements of PGFN Ordinance No. 6757/2022, the following appendices are included as part of this act.

ANNEX I - List of registrations in non-social security DAU subject to the agreement.

ANNEX II - List of debts that have the DECEA (*Departamento de Controle do Espaço Aéreo* [Aerospace Control Department]) as the originating body.

ANNEX III - List of debts subject to administrative and judicial proceedings, which will be included in the transaction if and when registered in the DAU.

ANNEX IV - List of debts with a triggering fact prior to signing the Transaction Agreement, to be acknowledged and declared to the RFB (*Receita Federal do Brasil* [Brazilian Federal Revenue Service]) within 30 days of signing this Agreement.

ANNEX V – List of debts in the administrative litigation phase with the RFB.

ANNEX VI - Declaration of existence, bookkeeping regularity, availability of PF/BCN (*Banco de Crédito Nacional* [National Credit Bank]) credits.

ANNEX VII - Statement of no net and certain credit vis-a-vis the Federal Government.

ANNEX VIII - Declaration of remaining in the taxation regime for actual profit, while the agreement lasts.

ANNEX IX - Assessment Report of airport slots (secret)

ANNEX X - Service Provision Agreements (secret)

ANNEX XI - Inventory with media rights assessment (secret)

ANNEX XII - List of airport slots offered in guarantee (secret)

**TRANSPERFECT**

# CERTIFICATION

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

File Name(s):
- Despacho.pdf
- Minuta.pdf

Source Language(s):     Portuguese

Target Language(s):     English

*Authorized Signature:*

*Alexander Heppell*

Alexander Heppell (Nov 29, 2024 13:41 GMT)

*Name:* ALEXANDER HEPPELL
*Title:*   Senior Project Manager
*Date:*   29-Nov-2024

Reason for signature: I approve the accuracy of this document content as written

## **EXHIBIT C**

**Fonseca Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                    :
In re:                                              :        Chapter 11
                                                    :
GOL LINHAS AÉREAS INTELIGENTES S.A.,                :        Case No. 24-10118 (MG)
*et al.*,[1]                                         :
                                                    :
                        Debtors.                    :        (Jointly Administered)
                                                    :
-------------------------------------------------------------------x

**DECLARATION OF RENATA FONSECA**
**IN SUPPORT OF DEBTORS' MOTION FOR ENTRY**
**OF AN ORDER AUTHORIZING THE DEBTORS TO ENTER INTO A**
**SETTLEMENT AGREEMENT WITH THE BRAZILIAN GOVERNMENT PARTIES**

I, Renata Domingues da Fonseca Guinesi, make this declaration under 28 U.S.C. § 1746:

1.       I am the Chief Legal Officer and Executive Institutional Relations Director of

GLAI, one of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"),

and have served in various roles at GLAI since 2012.

2.       I hold a bachelor's degree in Law and a specialist degree in Tax Law from Pontifícia

Universidade Católica de Campinas, as well as a Master's of Business Administration degree in

Business Management from Fundação Dom Cabral.  I also hold several degrees in Civil and Tax

Law.  I have served in leadership roles at GLAI in civil, consumer, labor, and tax litigation areas,

and I have vast knowledge of the aeronautical regulatory sector.

3.       I submit this declaration (the "Declaration") in support of the *Debtors' Motion for*

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A).  The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

*Entry of an Order Authorizing the Debtors to Enter into a Settlement Agreement with the Brazilian Government Parties* (the "Motion").[2]  Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge, my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, and information obtained from other members of the Debtors' management team.  If called to testify, I would testify to each of the facts set forth herein based on such personal knowledge, discussions, review of documents, or my opinions based upon my professional experience.

## THE SETTLEMENT AGREEMENT

4.      In April 2023, the Debtors and the Government Parties commenced negotiations regarding the Debtors' eligibility for a government support program that would reduce the Government Liability, which is alleged to be up to approximately $1.1 billion.  The Government Liability includes approximately $185 million on account of social security taxes, approximately $700 million on account of other federal taxes, and approximately $117 million of outstanding navigation fees owed to DECEA.  The Government Liability arises from, among other things, (i) certain amounts claimed by the Government Parties to be due that remain under dispute in judicial and administrative proceedings in Brazil, (ii) approximately $360 million that accrued and were deferred since the start of the COVID-19 pandemic and which the Debtors were unable to pay due to financial difficulties resulting from the pandemic, and (iii) certain amounts that are now due and owing as a result of the reversal of a judicial decision related to certain taxes.

5.      The negotiations among the Debtors, their advisors, and the Government Parties have been extensive.  For over a year and a half, the parties held numerous discussions and meetings, conducted a review of the Debtors' financial performance metrics to assess eligibility

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings set forth in the Motion.

for a government support program, determined the appropriate collateral to secure the Debtors'

obligations under the Settlement Agreement, and exchanged numerous proposals and

counterproposals.

6.    The following is a summary of the principal terms of the Settlement Agreement:[3]

- the Government Liability will be reduced by approximately $750 million, resulting in the Settlement Amount of approximately $250 million, which reflects both a discount on the Government Liability and the application of certain tax losses—some of these tax losses would not otherwise have been available to offset the Debtors' tax liability for approximately ten years;

- the Settlement Amount will be paid pursuant to installment payment plans of (i) sixty consecutive monthly payments for the social security taxes and (ii) 120 consecutive monthly payments for all other federal taxes and fees owed to DECEA;

- the following Settlement Collateral will be pledged by the Debtors to secure the obligations of GLAI and GLA under the Settlement Agreement on a "second lien" basis and only in case an event of default has occurred:

  a. certain airport slots recorded on the Debtors' balance sheet with a value in the amount of approximately $188 million, which represents approximately 20% of the overall value of the Debtors' airport slots;

  b. all of the receivables from the ticket sales contract with the Ministry;

  c. all of the receivables from the ticket sales contract with the Travel Agency;[4] and

  d. all of the receivables derived from the use of the Debtors' media spaces;

- the aggregate amount of obligations secured by the Settlement Collateral shall be 120% of the Settlement Amount;

- the second lien pledged to the Government Parties will be junior to existing senior claims against the Settlement Collateral that have been perfected under Brazilian law and such senior lien may be transferred one time in connection with the Debtors' restructuring; and

- the Debtors acknowledge that, absent the Settlement Agreement, they owe the full amount of the Government Liability to the Government Parties, and if the Debtors breach the Settlement Agreement, the Government Parties can pursue the full amount

---

[3]    This summary is qualified in its entirety by the Settlement Agreement.  To the extent that any conflict, discrepancy, or inconsistency exists between this summary and the Settlement Agreement, the Settlement Agreement controls.

[4]    The total value of the receivables generated from the agreements relating to the sale of passenger tickets with the Ministry and the Travel Agency is approximately $90 million, representing approximately 3% of the Debtors' estimated 2024 passenger revenues.

of the Government Liability against the Debtors; subject to the terms and conditions of the Settlement Agreement.

7.      The substantially final draft of the Settlement Agreement has been approved by the board of directors of GLAI.

8.      I believe that the Settlement Agreement, which took over a year and a half to negotiate between the Debtors and the Government Parties reflects a major achievement in these Chapter 11 Cases.

9.      I understand that absent the Settlement Agreement, the Debtors would either be forced to pay the full amount of the Government Liability, a potential liability in excess of $750 million over the Settlement Amount or continue to defend against the Government Liability through costly and time-consuming litigation in Brazil.  Either path would clearly be value destructive for the Debtors' and their estates.  Moreover, given the uncertainties around litigation, continuing to pursue litigation with the Government Parties to reduce the overall amount of the Government Liability could result in a judicial determination that the amounts owed are far higher than the amounts agreed to in the Settlement Agreement and could impact the Debtors' relationship with the Government Parties and go-forward operations.

10.     Moreover, the Settlement Agreement was negotiated at arm's length and in good faith among the Debtors, the Debtors' restructuring counsel, Milbank LLP, their Brazilian counsel, Lefosse Advogados, their special tax counsel, MJ Alves, Burle e Viana Advogados, and the Government Parties.

11.     In addition, the Debtors advisors have discussed the requested relief with counsel to the Committee, and the Committee does not oppose such relief.

12.     For all these reasons, I agree that entry into the Settlement Agreement is a sound exercise of the Debtors' business judgment, is fair and equitable, and is in the best interests of the

Debtors' estates, creditors, and other stakeholders.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true
and correct to the best of my information, knowledge, and belief.

Dated: November 29, 2024

*/s/ Renata Domingues da Fonseca Guinesi*
Renata Domingues da Fonseca Guinesi
Chief Legal Officer
GOL Linhas Aéreas Inteligentes S.A.

## **EXHIBIT D**

**Luth Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                   :

In re:                                      :       Chapter 11
                                                   :

GOL LINHAS AÉREAS INTELIGENTES S.A.,  :       Case No. 24-10118 (MG)
*et al.*,[1]                                      :
                                                   :

                          Debtors.       :       (Jointly Administered)
                                                   :
-------------------------------------------------------------------x

### DECLARATION OF JOHN E. LUTH
### IN SUPPORT OF DEBTORS' MOTION FOR ENTRY
### OF AN ORDER AUTHORIZING THE DEBTORS TO ENTER INTO A
### SETTLEMENT AGREEMENT WITH THE BRAZILIAN GOVERNMENT PARTIES

       I, John E. Luth, make this declaration pursuant to 28 U.S.C. § 1746 and state as follows:

       1.      I am the Chairman, President & Chief Executive Officer of Seabury International Corporate Finance LLC and its FINRA-regulated broker dealer, Seabury Securities LLC (collectively, "Seabury"), an investment banking, restructuring and financial advisory firm, together with its consulting affiliated organizations, with 28 offices spread across five continents. I am duly authorized to make and submit, on behalf of Seabury, this declaration (the "Declaration") in support of the *Debtors' Motion for Entry of an Order Authorizing the Debtors to Enter into a Settlement Agreement with the Brazilian Government Parties* (the "Motion").[2]

       2.      Except as otherwise indicated, I have personal knowledge of the facts set forth

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A).  The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

herein and, if called as a witness, I would testify thereto. Certain of the disclosures set forth herein are related to matters within the knowledge of other employees of Seabury and are based on information provided to me by them.

## THE SETTLEMENT AGREEMENT

3.     Based upon my direct involvement in supporting the Debtors' management team and their Brazilian special tax counsel in negotiating this agreement, I believe that the Settlement Agreement provides a significant source of value for the Debtors' estates, allowing the Debtors to maximize their value for the benefit of all other stakeholders and enhance their likelihood for a successful restructuring and exit from chapter 11.

4.     I understand that the settlement of the Government Liability will significantly reduce the Debtors' overall obligations to the Government Parties enhancing the Debtors' free cash flow and will reduce their short-term cash liquidity needs through the deferral of payments. As a result, the Settlement Agreement will enhance recoveries for the Debtors' stakeholders and strengthen the Debtors' restructured balance sheet. Specifically, the Settlement Agreement decreases the Government Liability by approximately $750 million (nearly a 75% reduction in overall claimed liabilities) and generates approximately $184 million of liquidity for the Debtors through 2029, including approximately $150 million in liquidity in the first twenty-four months.

5.     Moreover, the Settlement Agreement substantially enhances the likelihood that the Debtors will successfully secure the $1.85 billion of targeted exit financing to support the Debtors' reorganization.

6.     As a result, the Plan Support Agreement already provides that in the event the Debtors are able to secure the benefits of the Settlement Agreement, distributions to holders of the GUCs will be increased by an amount equal to $25 million upon the Settlement Agreement

becoming effective.

7.      Given the significant benefits to the Debtors' estates emanating from the Settlement Agreement and the neutral impact on the DIP Lenders, the Debtors anticipate that the Required Holders will consent to the second lien pledge of the Settlement Collateral prior to the hearing on this Motion.  After obtaining the requisite consent from the DIP Lenders and upon entry of the Order, the Debtors intend to execute the Settlement Agreement.

8.      In my opinion, the Settlement Agreement will allow the Debtors to enhance its future cash flows, thereby providing a strong underpinning for its critical exit financing process and augmenting the value to GUCs under the Plan Support Agreement which is a foundation for the Debtors' plan of reorganization.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on: November 29, 2024

SEABURY INTERNATIONAL
CORPORATE FINANCE LLC

SEABURY SECURITIES LLC


By:      /s/ *John E. Luth*
Name:   John E. Luth
Title:    Chairman, President & CEO