**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
:
In re:                                              :    Chapter 11
:
GOL LINHAS AÉREAS INTELIGENTES S.A.,               :    Case No. 24-10118 (MG)
*et al.*,[1]                                         :
:    (Jointly Administered)
Debtors.                      :
----------------------------------------------------------------x

**SUPPLEMENTAL DECLARATION**
**OF BRUNO MATTAR GALVÃO IN SUPPORT OF SECOND INTERIM FEE**
**APPLICATION OF ERNST & YOUNG AUDITORES INDEPENDENTES S/S LTDA.**
**FOR THE PERIOD FROM JUNE 1, 2024 THROUGH SEPTEMBER 30, 2024**

I, Bruno Mattar Galvão, make this supplemental declaration (this "Supplemental

Declaration") pursuant to 28 U.S.C. § 1746 and Rule 2014(a) of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and state:

1.       I am a partner of Ernst & Young Auditores Independentes S/S Ltda ("EY

Auditores").[2]  I submit this Supplemental Declaration on behalf of EY Brazil in support of the

*Second Interim Fee Application of Ernst & Young Auditores Independentes S/S Ltda. for*

*the Period from June 1, 2024 Through September 30, 2024* [Docket No. 1083] (the "Second

Interim Application").[3]

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A);
GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A.
(N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo
S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A);
Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento
no Exterior (N/A); and Gol Equity Finance (N/A).  The Debtors' service address is Praça Comandante Linneu
Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

[2]    EY Auditores and Ernst & Young Assessoria Empresarial Ltda. ("EY Assessoria" and together, "EY Brazil") are
each EYGL member firms, as described in the declaration attached to the Retention Application (as defined
below) that operate in Brazil.

[3]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Second Interim
Application.

2.       On February 21, 2024, the Debtors filed the *Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Ernst & Young Auditores Independentes S/S Ltda. as Auditor for the Debtors Effective as of the Petition Date* [Docket No. 168] (the "<u>Retention Application</u>") by which the Debtors sought approval to retain EY Auditores on the terms and conditions set forth in the engagement letter attached to the Application as <u>Exhibit B</u>.  On March 18, 2024, the Bankruptcy Court entered the *Order Authorizing the Employment and Retention of Ernst & Young Auditores Independentes S/S Ltda. as Auditor for the Debtors Effective as of the Petition Date* [Docket No. 290] (the "<u>Retention Order</u>").

3.       In accordance with the provisions of the Retention Order, on April 29, 2024, the Debtors filed a *Notice of Filing of Additional Engagement Letter in Accordance with the Order Authorizing the Employment and Retention of Ernst & Young Auditores Independentes S/S Ltda. As Auditor for the Debtors Effective as of the Petition Date* [Docket No. 545] (the "<u>First Supplemental Engagement Notice</u>").  No timely objections to the First Supplemental Engagement Notice were filed, and EY Brazil was therefore deemed authorized pursuant to the Retention Order to provide the additional services set forth in the supplemental engagement letter attached to the First Supplemental Engagement Notice.

4.       In accordance with the provisions of the Retention Order, on June 10, 2024, the Debtors filed a *Notice of Filing of (I) Additional Engagement Letter and (II) Supplemental Declaration of José Carlos Zerbini Junior in Accordance with the Order Authorizing the Employment and Retention of Ernst & Young Auditores Independentes S/S Ltda. As Auditor for the Debtors Effective as of the Petition Date* [Docket No. 701] (the "<u>Second Supplemental Engagement Notice</u>").  No timely objections to the Second Supplemental Engagement Notice were filed, and EY Brazil was therefore deemed authorized pursuant to the Retention Order to provide

the additional services set forth in the supplemental engagement letter attached to the Second Supplemental Engagement Notice.

5.      In accordance with the provisions of the Retention Order, on July 26, 2024, the Debtors filed a *Notice of Filing of Additional Engagement Letter in Accordance with the Order Authorizing the Employment and Retention of Ernst & Young Auditores Independentes S/S Ltda., as Auditor for the Debtors Effective as of the Petition Date* [Docket No. 826], (the "Third Supplemental Engagement Notice").  No timely objections to the Third Supplemental Engagement Notice were filed, and EY Brazil was therefore deemed authorized pursuant to the Retention Order to provide the additional services set forth in the supplemental engagement letter attached to the Third Supplemental Engagement Notice.

6.      I am authorized to submit this Supplemental Declaration on behalf of EY Brazil, and am submitting this Supplemental Declaration to provide additional information and clarification regarding EY Brazil's compensation and expenses requested in the Second Interim Application.

7.      The facts set forth in this Supplemental Declaration are based upon my personal knowledge, upon information and belief, or upon client matter records kept in the ordinary course of business that were reviewed either by me or other employees of EY Brazil under my supervision and direction.  If called and sworn as a witness, I could and would testify competently to the facts set forth herein.

## THE ENGAGEMENT LETTERS

8.      EY Brazil is party to four (4) separate engagement letters with the Debtors (collectively, the "Engagement Letters"):

    a.    the original engagement letter attached to the Retention Application as Exhibit B (the "Original Engagement Letter");

b.     the engagement letter attached to the First Supplemental Engagement Notice, and reattached hereto as **Exhibit A** (the "First Supplemental Engagement Letter");

c.     the engagement letter attached to the Second Supplemental Engagement Notice (the "Second Supplemental Engagement Letter"); and

d.     the engagement letter attached to the Third Supplemental Engagement Notice, and reattached hereto as **Exhibit B** (the "Third Supplemental Engagement Letter").

## SECOND INTERIM FEE PERIOD SERVICES AND FIXED FEES

9.     During the Fee Period, EY Brazil provided audit services pursuant to the First Supplemental Engagement Letter and the Third Supplemental Engagement Letter.

10.     More specifically, pursuant to the First Supplemental Engagement Letter, EY Brazil provided the Debtors with audits of internal controls, quarterly review procedures, and financial statements audit procedures.  Pursuant to the Second Interim Application, EY Brazil is seeking fixed fees relating to such services in the aggregate amount of $481,459.08 (converted from BRL at a conversion rate of 1 BRL = 0.18 USD),[4] comprised of four installments of approximately $120,000 each.  *See* Exh. A. at 8 (installment payment schedule).

11.     Pursuant to the Third Supplemental Engagement Letter, EY Brazil provided the Debtors with a "limited assurance report" on the Debtors' Environmental, Social, and Governance Indicators contained in the Debtors' Sustainability Report, as well as consistency of disclosures in relation to Task Force on Climate-Related Financial Disclosures (TCFD) recommendations for base year 2023.  Additionally, EY Brazil prepared an improvement recommendations report relating to the foregoing.  Pursuant to the Second Interim Application, EY Brazil is seeking fixed

---

[4]     EY Brazil uses the currency conversion values on the Brazilian Central Bank's website (https://www.bcb.gov.br/) on the day it prepares the monthly fee statements.  The Central Bank of Brazil is the regulatory body for all financial institutions in Brazil.

fees relating to such services in the aggregate amount of $24,173.60 (converted from BRL 134,000 at a conversion rate of 1 BRL = 0.18 USD).  *See* Exh. B at 5 (Fees).

## SUPPLEMENTAL EXPENSE DETAIL

12.     Attached hereto as **Exhibit C** is a table with additional detail in support of EY Brazil's expenses incurred during the Fee Period (as further detailed and supported in the Second Interim Fee Application).

13.     All parking expenses requested in the Second Interim Fee Application relate to EY Brazil employees who were required pay for parking while performing services for the Debtors on-site at the Debtors' headquarters located at the airport in São Paulo, Brazil.

14.     None of the requested reimbursements for individual meals in the Second Interim Fee Application exceed $20.

15.     All requests for meal reimbursements in the Second Interim Application are for EY Brazil professionals when they were required to perform services for the Debtors on weekends or after 8:00 p.m., or if a professional dined before 8:00 p.m., such professional continued to work for at least 1.5 hours thereafter.

16.     The vast majority of requests for reimbursement of ground transportation expenses in the Second Interim Application are primarily for rides after 8:00 p.m. for professionals working on site for at least four hours.  Some of the requested expenses are for rides to the Debtors' headquarters at the airport, either outside of regular work hours or in lieu of incurring parking charges.

*[Signature page follows]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge.  Executed on this 17th day of January 2025.


Dated:   January 17, 2025                    */s/ Bruno Mattar Galvão*
                                             Bruno Mattar Galvão
                                             Ernst & Young Auditores Independentes S/S Ltda.

## <u>Exhibit A</u>

**First Supplemental Engagement Letter**



São Paulo Corporate Towers
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

A/C Mr. Celso Guimarães Ferrer Junior - President                                    April 29, 2024
A/C Mr. Mario Liao – Vice-President
**GOL LINHAS AÉREAS INTELIGENTES S.A.**
Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto
São Paulo/SP – 04626-020

Gentlemen's:

This agreement (together with the General Terms and Conditions hereto, the "Agreement") confirms the engagement of Ernst & Young Auditores Independentes S.S. Ltda. ("we" or "EY") by the Audit Committee of Gol Linhas Aéreas Inteligentes S.A. (the "GLAI" or "Company") to audit and review Company's financial statements.

**Scope of services**

Statutory financial Statements (Comissão de Valores Mobiliários - CVM)

Audit the individual and consolidated financial statements, identified as Individual and Consolidated, respectively, for the year ended on December 31, 2024, which will be prepared by management in accordance with the accounting practices adopted in Brazil and with the International Financial Reporting Standards (IFRS), issued by the International Accounting Standards Board (IASB). We will conduct our audit procedures in accordance with Brazilian and International Standards on Auditing ("ISA").

Quarterly review the individual and consolidated interim financial information, contained in the Quarterly Information Form (ITR) for the quarters ended on March 31, 2024 and quarters to be ended on June 30, 2024 and September 30, 2024. Individual and consolidated interim financial information will be prepared by management in accordance with Accounting Pronouncement NBC TG 21 – Interim Financial Reporting, and IAS 34 – Interim Financial Reporting, issued by the International Accounting Standards Board (IASB), as well as for the fair presentation of this information in conformity with the rules issued by the Brazilian Securities and Exchange Commission (CVM) applicable to the preparation of the Quarterly Information Form (ITR). We will conduct our review in accordance with Brazilian and international standards on review engagements (NBC TR 2410 and ISRE 2410 - Review of Interim Financial Information performed by the Independent Auditor of the Entity, respectively).

---

BG                              (GF)                              [signature]

Gol Linhas Aéreas Inteligentes S.A.
Page 1 of 20





São Paulo Corporate Towers
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

Statutory financial Statements (ANAC Resolution nr. 342 of September 09, 2014, applicable to Gol Linhas Aéreas S.A. ("GLA")):

Audit the individual financial statements for the year ended on December 31, 2024, which will be prepared by management in accordance with the accounting practices adopted in Brazil and with the International Financial Reporting Standards (IFRS), issued by the International Accounting Standards Board (IASB). We will conduct our audit procedures in accordance with Brazilian and International Standards on Auditing ("ISA").

Review of the individual interim financial information, for the three and six-month period ended on June 30,2024. Consolidated interim financial information will be prepared by management in accordance with Accounting Pronouncement NBC TG 21 – Interim Financial Reporting, and IAS 34 – Interim Financial Reporting, issued by the International Accounting Standards Board (IASB). We will conduct our review in accordance with Brazilian and international standards on review engagements (NBC TR 2410 and ISRE 2410 - Review of Interim Financial Information performed by the Independent Auditor of the Entity, respectively).

Internal control over financial reporting (ICFR)

As requested by Management, we will audit the internal control over financial reporting of Gol Linhas Aereas Inteligentes S.A. in accordance with PCAOB AS 5. The results of the work performed on ICFR will be issued in the form of a Summary of Control Deficiencies identified and communicated to Management and the Audit Committee.

The term "individual and consolidated financial statements" or "individual financial statements" described in this agreement are collectively referred to as the "financial statements".

The terms "individual and consolidated interim financial information" or "individual interim financial information" described in this agreement are collectively referred to as "interim financial information."

All services described in this agreement are collectively referred to as "services", "audit services" or "audit".

Our performance of Audit Services is contingent upon the Bankruptcy Court's approval of our notice of additional engagement letter. This Agreement shall be effective as of April 29, 2024.

**Audit responsibilities and limitations**

The objective of the audit of the financial statements is to express an opinion ("Report") on whether the financial statements are presented fairly, in all material respects, in conformity with IFRS or applicable financial reporting structure, in line with the specification of the standards applicable in compliance with the CVM. Should conditions not now anticipated preclude us from completing either the audit of the financial statements or the review of the interim financial information and issuing our report(s) thereon, we will advise the Audit Committee, Management and Bankruptcy Court promptly and take such action as we deem appropriate.

BG          (GF)          (W)

JURÍDICO
GOL
6TH
APROVADO



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

Our audit work on the individual and consolidated financial statements of Gol Linhas Aereas Inteligentes S.A., which will be filed with the CVM prepared in accordance with the accounting practices adopted in Brazil and IFRS, will be carried out in accordance with Brazilian and international auditing standards (IFRS). These standards require us to obtain reasonable, rather than absolute, assurance that such individual and consolidated financial statements are free from material misstatement, whether due to error or fraud.

As management is aware, there are inherent limitations in the audit process, including, for example, selective testing and the possibility that collusion or forgery may preclude the detection of material error, fraud or non-compliance with laws and regulations. Accordingly, there is some risk that a material misstatement of the financial statements, prepared according with IFRS would remain undetected. Also, an audit of the financial statements is not designed to detect error or fraud that is immaterial to the financial statements, prepared according with IFRS.

We will consider the Company's internal control over financial reporting in determining the nature, timing and extent of our audit procedures for the purpose of expressing our opinion on the financial statements prepared in accordance with the accounting practices adopted in Brazil and IFRS to be filed with the CVM.

As part of the audit process, EY Brazil will also (a) conclude on the appropriateness of management's use of the operational continuity assumption and, based on the audit evidence obtained, whether there is significant uncertainty related to events or conditions that may raise significant doubt as to the Company's ability to continue operating; (b) evaluate the overall presentation, structure and content of the financial statements, including related disclosures, and whether the financial statements adequately represent the respective transactions and operations in such a way that those financial statements are adequately presented; and (c) obtain sufficient appropriate audit evidence on the Company's financial information to express an opinion on the individual and consolidated financial statements. We are responsible for directing, supervising and executing the Company's audit. We remain solely responsible for our audit opinion.

In accordance with auditing standards, we will communicate certain matters related to the planning, conduct and results of the audit to the Audit Committee, and also may make certain inquiries of the Audit Committee. Changes to the scope of the Audit Services may occur as a result of the issuance of new standards and interpretations or inspections findings. We will communicate any significant changes in the scope of the Audit Services and related procedures to management and the Audit Committee on a timely basis.

We will obtain pre-approval from the Audit Committee for any services we are to provide to the Company pursuant to the Audit Committee's pre-approval process, policies, and procedures, in accordance with the standards and rules enforceable. We also will communicate at least annually with the Audit Committee on independence matters as required by the auditing standards.

BG                    (GF)                    /W





**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

If we determine that there is evidence that fraud or possible non-compliance with laws and regulations may have occurred, we will bring such matters to the attention of the appropriate level of management. If we become aware of fraud involving senior management or fraud (whether committed by senior management or other employees) that causes a material misstatement of the financial statements, we will report this matter directly to the Audit Committee. We will determine that the Audit Committee and appropriate members of management are adequately informed of instances of non-compliance with laws and regulations that come to our attention unless they are clearly inconsequential (according with item 42 of NBC TA 240). We also will inform the Audit Committee and appropriate members of management of misstatements noted during our audit procedures other than those that are clearly trivial.

We will communicate, in accordance with Brazilian and international auditing standards to the Statutory Audit Committee or other body responsible for governance, other matters in addition to those indicated above, related to the conduct and outcome of the audit process, including: (a) the responsibility of EY Brazil under Brazilian and international auditing standards to express an opinion on the financial statements prepared by management with the supervision of those charged with governance and the fact that this audit does not replace the responsibilities of management and those charged with governance; (b) an overview of the planned scope and timeline of the audit process, including the significant risks we may identified and the scope of work to be performed on the financial statements of the significant components of the Company in the work to be performed by the auditors of those components; (c) Important matters identified during the audit, including (1) EY Brazil's view of the qualitative aspects of the Company's accounting practices, including accounting policies, accounting estimates and disclosures included in the financial statements; (2) any significant difficulties encountered during the audit process; (3) uncorrected errors other than those considered immaterial by EY Brazil; (4) any disagreements with the administration, whether or not they have been satisfactorily resolved; (5) other matters, if any, arising from the audit process, considered by EY Brazil to be significant and pertinent to those charged with governance with respect to the oversight of the financial reporting process, including significant matters related to the Company's related parties; (d) circumstances that affect the form and content of our Report, including those set forth later in this Agreement; and (e) written representations requested from management and any significant matters arising out of the audit process discussed, or subject to written communication to management.

**Reviews of unaudited interim financial information**

The review of the Company's unaudited interim financial information will be performed in accordance with the standards of CPC 21 (R1) will be performed in accordance with NBC TR 2410 rules. The review of the Company's unaudited interim financial information prepared in accordance with IAS 34 will be performance according with PCAOB.

Gol Linhas Aéreas Inteligentes S.A.
Page 4 of 20

BG                    (GFJ)                    $\mathcal{M}$





**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

A review of interim financial information consists principally of performing analytical procedures and making inquiries of management responsible for financial and accounting matters. It also involves the review of the unaudited interim information presented in the ITR form and does not include prior earnings reports or other similar information. A review is substantially less in scope than an audit conducted in accordance with the standards of the PCAOB, the objective of which is (1) the expression of an opinion regarding the financial statements taken as a whole, prepared according to Brazilian practices and with IFRS and (2) an opinion on the consolidated financial statements taken together, prepared in accordance with IFRS, respectively. As such, we will not express an opinion on the interim accounting information prepared in accordance with CPC 21 (R1) and IAS 34.

A review includes obtaining sufficient knowledge of the Company's business and its internal control as it relates to the preparation of both annual and interim financial information to: identify the types of potential material misstatements in the interim financial information and consider the likelihood of their occurrence; and select the inquiries and analytical procedures that will provide us with a basis for communicating whether we are aware of any material modifications that should be made to the interim financial information for it to conform with CPC 21 (R1) and IAS 34.A review is not designed to provide assurance on internal control or to identify significant deficiencies. However, we will communicate to the Audit Committee any significant deficiencies noted during our review procedures.

If, during our review procedures, we determine that there is evidence that fraud or possible non-compliance with laws and regulations may have occurred, we will bring such matters to the attention of the appropriate level of management. If we become aware of fraud involving senior management or fraud (whether committed by senior management or other employees) that causes a material misstatement of the interim financial information, we will report this matter directly to the Audit Committee. We will determine that the Audit Committee and appropriate members of management are adequately informed of instances of non-compliance with laws and regulations that come to our attention unless they are clearly inconsequential (according with item 42 of NBC TA 240). We also will inform the Audit Committee and appropriate members of management of misstatements noted during our review procedures other than those that are clearly trivial.

**Management's responsibilities and representations**

The financial statements (including disclosures) prepared in accordance with the accounting practices adopted in Brazil and IFRS and the unaudited interim financial information, prepared in accordance with CPC 21 (R1) and IAS 34 are the responsibility of management. Management is responsible for establishing and maintaining effective internal control over financial reporting relevant to the preparation and fair presentation of financial statements that are free of material misstatement, whether due to error or fraud, for properly recording transactions in the accounting records, for safeguarding assets, and for the overall fair presentation of the consolidated financial statements and unaudited interim financial information in conformity with Brazilian and IFRS generally accepted accounting principles. Management also is responsible for the identification of, and for the Company's compliance with, laws and regulations applicable to its activities.

Management is responsible for adjusting the individual and consolidate financial statements, prepared according with accounting practices adopted in Brazil and IFRS and unaudited interim financial information, prepared according with CPC 21 (R1) and IAS 34 rules, to correct material misstatements and for affirming to us in its letter of representations that the

Gol Linhas Aéreas Inteligentes S.A.
Page 5 of 20





**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

effects of any uncorrected misstatements aggregated by us during the applicable Audit Services and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements and unaudited interim financial information taken as a whole. Management is also responsible for evaluating the Company's operational continuity assumption, disclosing when applicable, issues related to operational continuity and using the assumption of operational continuity unless management intends to liquidate the Company, cease operations, or has no alternative but to do so.

Management is responsible for providing EY Brazil with (1) timely access to all information known to management that is pertinent to the preparation of the financial statements and related disclosures, and to unaudited interim accounting information such as records, documentation and other matters; (2) additional information that may be requested from management by EY Brazil for audit purposes; (3) unfettered access to the Company's individuals determined by EY Brazil in order to obtain audit evidence as well as from the subsidiaries, affiliates, their employees and auditors for the group's audit purposes. Failure by management to provide the information referred to above or access to the Company's professionals and its subsidiaries and affiliates may lead to a delay in the report, modification of procedures or even termination of this Agreement.

As required by professional standards, we will make specific inquiries of management about the representations contained in the financial statements and unaudited interim financial information and management's assessment of the effectiveness of internal control over financial reporting. Professional standards also require that, at the conclusion of the applicable Audit Services, we obtain a letter of representations from certain members of management about these matters and to represent that management has fulfilled its responsibilities as set forth in this Agreement, including that all material transactions have been recorded in the accounting records and are reflected in the financial statements and unaudited interim financial information in accordance with accounting practices adopted in Brazil and IFRS to be filed with the CVM and that all transactions were recorded and were reflected in the financial statements and unaudited interim accounting information. The responses to those inquiries, the written representations, and the results of our procedures comprise evidence on which we will rely in completing the applicable Audit Services.







**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

The Company acknowledges that the Company and EY share responsibility for compliance with auditor independence rules. Accordingly, management shall discuss any independence matters with EY that, in management's judgment, could bear on EY's Brazil independence. In addition, management shall promptly assist EY in identifying the Company's affiliates and any beneficial owners (known through reasonable inquiry) of the Company's or its affiliates' equity securities where such beneficial owner has significant influence over the Company and the entities included in the Company's financial statements. The Company's subsidiaries and affiliates include: (a) an entity that has control over the Company or an entity that the Company controls; (b) an entity that is under common control with the Company, including subsidiaries and other controlled investees of the entity that controls the Company; (c) an entity over which the Company exercises significant influence (a "Investee"), unless the Investee is not relevant to the Company; and (d) an entity that exerts significant influence over the Company (an "investor"), unless the Company is not relevant to the investor."

Management shall make appropriate inquiries to the Company's significant officers, directors and shareholders to determine the existence of a relationship between such officers, directors and shareholders (or any entity for or in which such substantial officers, directors or shareholders act in a similar capacity) and EY Brazil or any other member firm of the EY global organization (any of which,  an "EY Firm"), which is not a relationship in which the EY Firm provides professional services or in which the EY Firm is a client in the ordinary course of business. To that end, inquiries should be made to an individual shareholder (and not an entity) that owns ten percent (10%) or more of the voting shares (or less than 10% of the voting shares, but that possesses certain contractual rights, such as the right to appoint members of the board of directors or special or disproportionate voting rights

Management will promptly communicate, to the extent it is aware, of (1) unauthorized access to information technology systems that has occurred or is reasonably likely to have occurred up to the date of our audit report based on the Company's investigation, including reports submitted by third parties (including regulatory agencies and security consultants),  to the extent that such unauthorized access to information technology systems is reasonably likely to have a material effect on the financial statements, in each case or in a set of cases, and (2) ransomware attacks when the Company has paid or is planning to pay the ransom, regardless of the amount involved



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

## Fees and billings

The fees for the performance of the audit services shall be BRL6.736.515 (six million, seven hundred and thirty and six thousand, five hundred and fifteen Brazilian reais) and will be invoiced by EY and paid by the Company as below:

| Installment | Issuance Date | Payment Date | Fees | Taxes | Surcharge | Total |
|---|---|---|---|---|---|---|
| 1 | 03/05/2024 | 02/06/2024 | 544.946,00 | 90.560,00 | 38.146,00 | 673.652,00 |
| 2 | 02/06/2024 | 02/07/2024 | 544.946,00 | 90.560,00 | 38.146,00 | 673.652,00 |
| 3 | 02/07/2024 | 01/08/2024 | 544.946,00 | 90.560,00 | 38.146,00 | 673.652,00 |
| 4 | 01/08/2024 | 31/08/2024 | 544.946,00 | 90.560,00 | 38.146,00 | 673.652,00 |
| 5 | 31/08/2024 | 30/09/2024 | 544.946,00 | 90.560,00 | 38.146,00 | 673.652,00 |
| 6 | 30/09/2024 | 30/10/2024 | 544.946,00 | 90.560,00 | 38.146,00 | 673.652,00 |
| 7 | 30/10/2024 | 29/11/2024 | 544.946,00 | 90.560,00 | 38.146,00 | 673.652,00 |
| 8 | 29/11/2024 | 29/12/2024 | 544.946,00 | 90.560,00 | 38.146,00 | 673.652,00 |
| 9 | 29/12/2024 | 28/01/2024 | 544.946,00 | 90.560,00 | 38.146,00 | 673.652,00 |
| 10 | 28/01/2025 | 27/02/2025 | 544.944,00 | 90.555,00 | 38.148,00 | 673.647,00 |
| **Total** | | | **5.449.458,00** | **905.595,00** | **381.462,00** | **6.736.515,00** |

We will submit an itemized and detailed billing statement, and we will request payment of our fees and expenses, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules for the United States Bankruptcy Court for the Southern District of New York ("Local Rules") and any relevant administrative orders.

We will submit our invoices as the work progresses and payment of them will be made upon receipt, or as quickly as the Bankruptcy Code, the Bankruptcy Rules, Local Rules and any relevant administrative orders allow. We acknowledge that payment of our fees and expenses hereunder is subject to (i) the jurisdiction and approval of the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code, any order of the Bankruptcy Court approving the retention of us and the U.S. Trustee Guidelines, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications.

Should our assumptions with respect to these matters be incorrect or should the documentation of internal control, results of our procedures, condition of records, degree of cooperation, extent of procedures performed by the Company to support management's assessment or other matters beyond our reasonable control require additional commitments by us beyond those upon which our estimates are based, we may adjust our fees, subject to Bankruptcy Court approval, and planned completion dates. Fees for any special audit-related projects, such as proposed business combinations or research

BG          (GFJ)





**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

and/or consultation on special business or financial issues, will be billed separately from the fees referred to above, and will be the subject of other written agreements which shall be subject to Bankruptcy Court approval.

**Other matters**

From time to time, and depending on the circumstances, subject to Bankruptcy Court approval, we may subcontract portions of the Audit Services to other EY Firms (listed at www.ey.com), who may deal with the Company or its affiliates directly, although EY Brazil alone will remain responsible to you for the Audit Services, and personnel (including non-certified public accountants) from an affiliate of EY or another EY Firm or any of their respective affiliates, or from independent third-party service providers (including independent contractors), may participate in providing the Audit Services. Unless prohibited by applicable law, we may provide Company information to other EY Firms and their personnel, as well as third-party service providers acting on our or their behalf, who may collect, use, transfer, store or otherwise process (collectively, "Process") it in various jurisdictions in which they operate to facilitate performance of the Audit Services, to comply with regulatory requirements, to check conflicts, to provide financial accounting and other administrative support services, or for quality and risk management purposes. We shall be responsible to you for maintaining the confidentiality of Company information, regardless of where or by whom such information is Processed on our behalf. Either EY or the Company may use electronic media to correspond or transmit information relating to the Audit Services, and such use will not, in itself, constitute a breach of any confidentiality obligations.

The Company shall not, during the term of this Agreement and for 12 months following its termination for any reason, without the prior written consent of EY, solicit for employment or a position on its Board of Directors, or hire or appoint to its Board of Directors, any current or former partner, principal, or professional employee of EY, any affiliate thereof, any other EY Firm or any of their respective affiliates if any such professional either: (i) performed any audit, review, attest, or related service for or relating to the Company at any time (a) since the date on which the Company filed its most recent periodic annual report with the SEC (or, since the beginning of the most recent fiscal year to be covered by the Company's first such report, if applicable) or (b) in the 12 months ended on that date; or (ii) influences EY's operations or financial policies or has any capital balances or any other continuing financial arrangement with EY.

EY shall remain fully responsible for the Audit Services and for all of its other responsibilities, covenants and obligations under this Agreement, notwithstanding that we may subcontract portions of the Audit Services to other EY Firms or that other EY Firms may participate in the provision of the Audit Services. The Company may not make a claim or bring proceedings relating to the Audit Services or otherwise under this Agreement against any other EY Firm and EY shall not contest its responsibility for the Audit Services on the basis that any of them were performed by another EY Firm. The Company shall make any claim or bring proceedings only against EY. This paragraph is intended to benefit the other EY Firms, which shall be entitled to enforce it. Each EY Firm is a separate legal entity.

You acknowledge that to the extent the Company is regulated by or under the supervision of a federal, state or other regulator (including, without limitation, the Board of Governors of the Federal Reserve, the Office of the Comptroller of the Currency and the New York State Department of Financial Services), you may be in possession of confidential supervisory information as defined in relevant law or regulations ("CSI"), including without limitation documents and



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

information comprising CSI arising from, relating to, or concerning inspections and examinations by such regulator(s). As set forth in paragraph 22, we may require access to such CSI in order to perform the Audit Services. However, CSI may be subject to regulatory restrictions on disclosure to and/or use by third parties. Accordingly: (1) management will identify to EY the regulators that regulate and/or exercise supervisory oversight over the Company and have specific requirements relating to CSI (each, a "Regulator"); (2) management will identify to EY all CSI in your possession; (3) to the extent management's provision of CSI to EY is not authorized by applicable law or regulation absent Regulator approval, management will obtain authorization from the applicable Regulator to provide us access to any and all CSI for the purposes of performing the Audit Services with respect to CSI already in the Company's possession immediately following execution of this Agreement (and with respect to any later-identified CSI immediately upon learning of the examination, inspection or other activity that could result in such materials being deemed CSI); and (4) management will not provide any such access prior to having received such authorization and having identified to EY with specificity the information that constitutes CSI. You acknowledge that any failure to provide any such information could be considered a restriction on the scope of the audit, and the parties agree that they shall engage in good faith discussions regarding the effect of any withholding on the Audit Services.

In order to facilitate performance of the Audit Services and for EY to more readily provide Audit Services, including audit services for subsequent audit periods and engagements, we may utilize certain internal tools, automated techniques, software solutions and other technologies ("EY Tools") to extract, process, analyze and retain Company information, including data. EY owns all right, title, interest and all intellectual property rights in and to the EY Tools, including any enhancements, modifications, and derivative works thereof. You agree that we may, subject to applicable laws, regulations and professional standards, utilize such EY Tools and retain Company information within the EY Tools to facilitate performance of the Audit Services, including, without limitation, audit services for subsequent audit periods and engagements. In the event of any such retention, we will continue to extend the protections set forth in this Agreement to any such information retained

In this manner, we may request general ledger or subledger data extracted from the Company's SAP® ERP systems. Management chose to obtain SmartExporter software from Audicon GmbH ("Audicon"), a third-party software provider, to extract requested data from SAP® ERP systems. To enable EY to use SmartExporter software for Audit Services, EY Global Services Limited has entered into an agreement with Audicon allowing EY to provide the Company with a license key for this limited purpose at no additional cost to the Company. Use of the license key provided is contingent upon the Company's acceptance of any terms and conditions accompanying the installation of the SmartExporter software, as well as the additional terms set forth in this Agreement. Management agrees to use its own skill and judgment in choosing to download and install the SmartExporter software and will follow the Company's internal testing processes before deploying the software on a live system. In doing so, management does not place reliance on any statement made by EY in relation to the software. It is not EY's intention to recommend or in any way endorse the use of the SmartExporter software and EY makes no guarantee as to the quality of the software or warrants that it will function as intended or be error-free. The SmartExporter software is, however, certified by SAP, ® and certificates and other documentation can be downloaded from the Audicon website. When using the license key to activate the SmartExporter software, management is permitted to use the SmartExporter software only to enable EY to provide the Audit Services. The Company shall not use the SmartExporter software, or any information generated by the SmartExporter software (including data extracted via SmartExporter) for any other purpose.

Gol Linhas Aéreas Inteligentes S.A.
Page 10 of 20

BG                    (GF)                    (M)





**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

**Circumstances affecting the form and content of our Report**

Among the matters that we communicate to management, we are required to determine the matters that are most important in our audit, i.e., the key audit matters (NBCTA701) in the context of the Brazilian and international auditing standards. We describe these issues in our Report unless applicable law or regulation prohibits public disclosure on such a matter of when, in extremely rare circumstances, we determine that a matter should not be reported in our Report because any adverse consequences of such communication would outweigh the public interest benefits of such communication.

We have responsibilities for other information included in the documents comprising an annual report, as described in the "Other Information Included in the Company's Annual Report" section below. We are required to include an Other Information section in our Report to be issued in accordance with Brazilian and international auditing standards, which identifies the documents subject to our responsibilities and a description of our responsibilities to read and consider such other information in conjunction with our audit. We are also required, for documents available prior to the date of our Reporting, to include a statement that we have nothing to report or a statement describing any uncorrected material errors in this other information

The final form and content of our Report will reflect the results of our audit findings and final conclusions. We will communicate to management and those charged with governance (including the Statutory Audit Committee) all circumstances affecting the final form and content of our Report

————————————————————

Gol Linhas Aéreas Inteligentes S.A.
Page 11 of 20

*BG*                    *(GF)*                    *M*





**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

**Other Information Included in the Company's Annual Report**

The Company shall provide us with the final drafts of the annual report (Management's Report) or intermediaries prior to the date of publication or filing, and where possible, prior to the date of our Report, in order for us to carry out the procedures required for our audit. The Company's management is responsible for preparing the other information contained in the annual report or documents listed above and for ensuring that such documents are free from material misstatement. We will read the documents and, in doing so, consider whether the other information contained in the documents is materially inconsistent with the financial statements or information obtained by us in the course of the audit, or otherwise appears to contain material misstatements. We have the responsibility to read and consider the annual report or documents listed above regardless of whether the documents are available before, or after our date of our Report. We will include a section of Other Information in the Report as described in the Circumstances Affecting the Form and Content of our Report section above.

If we identify that a material inconsistency appears to exist (or become aware that the other information appears to contain material misstatements), we will inform management and those charged with governance (including the Statutory Audit Committee) immediately. Where we determine that a material misstatement in the other information exists and has not been corrected, we will take appropriate action in the circumstances, including by evidencing the existence of such material misstatement in our Audit Report when identified prior to the date of our Report.

To the extent that EY Brazil is engaged for the Audit Services for the subsequent fiscal year, the terms and conditions described in this Agreement shall apply to the provision of such Audit Services, except for modifications, changes or additions specifically determined by the contracting parties. Changes in the scope of the Audit Services and estimated fees for such services in subsequent fiscal years will be communicated in supplemental letters.






**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

To the extent that EY agrees to perform Audit Services for a subsequent fiscal year and subject to Bankruptcy Court approval, the terms and conditions set forth in this Agreement shall apply to the performance of such Audit Services, except as specifically modified, amended or supplemented in writing by the parties. Changes in the scope of the Audit Services and estimated fees for such services in subsequent fiscal years will be communicated in supplemental agreements. We may terminate performance of the Audit Services and this Agreement upon written notice if we reasonably determine that we can no longer provide the Audit Services in accordance with applicable law or professional obligations, but in any event, this Agreement will expire upon the effective date of the Company's confirmed plan of reorganization, or liquidation of the Company's assets, under Chapter 11 or 7 of the Bankruptcy Code, or otherwise. Upon any termination of the Audit Services or this Agreement, the Company shall pay EY for all work-in-progress, Audit Services already performed, and expenses incurred by us up to and including the effective date of such termination. The provisions of this Agreement that give either of us rights or obligations beyond its termination including shall continue indefinitely following the termination of this Agreement and shall survive completion of the Company's bankruptcy whether through a confirmed plan of reorganization under Chapter 11, liquidation of the Company's assets under Chapter 7 of the Bankruptcy Code, or otherwise.

EY appreciates the opportunity to be of assistance to the Company. If this Agreement accurately reflects the terms on which the Company has agreed to engage EY, please sign below on behalf of the Company and return it to Bruno Galvão at São Paulo Corporate Towers, Avenida Presidente Juscelino Kubitscheck, 1.909 - Torre Norte, São Paulo - SP CEP 04543-011, Brazil.

Very truly yours,

Ernst & Young Auditores Independentes S.S. Ltda.
CRC SP 034519/O

*Bruno Galvão*
_____
Bruno M. Galvão
CRC SP 267770/O

Agreed by

**Gol Linhas Aéreas Inteligentes S.A.**

*Celso Guimarães Ferrer Junior*
_____
Celso Guimarães Ferrer Junior
President
Date:

*Mario Torres Liao*
_____
Mario Liao
Finance Vice-President and RI
Date:





São Paulo Corporate Towers
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

**General Terms and Conditions for Audit and Review Engagements**

**ERNST & YOUNG AUDITORES INDEPENDENTES S.S.** (hereinafter referred to as "EY Brazil" or "we"), a private corporate entity established pursuant to Brazilian laws, with place of business at Avenida Presidente Juscelino Kubitschek, nº 1909, 8º andar - Torre Norte, São Paulo Corporate Towers, São Paulo - SP - CEP: 04543-011, Brazil, enrolled with the Brazilian IRS Registry of Legal Entities (CNPJ/MF) under No. 61.366.936/0001-25; and

**GOL LINHAS AÉREAS INTELIGENTES S.A** (hereinafter referred to as "Company" or "you"), with place of business at Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto 04626-020, São Paulo, SP - Brazil, enrolled with the Brazilian IRS Registry of Legal Entities (CNPJ/MF) under No. 06.164.253/0001-87, hereby execute and enter into this Agreement.

This agreement for provision of to audit and review Company's financial statements services (hereinafter referred to as the "Services"), dated April 29, 2024, (hereinafter referred to as the "Agreement"), is entered into by and between EY Brazil and the Company.

Paragraph 1 – EY Brazil is a member of the global network of Ernst & Young firms ("EY Firms"), each of which is a separate legal entity.

Paragraph 2 – EY will be solely responsible to you for the Report, the performance of the Services and our other obligations under this Agreement.

Paragraph 3 – You shall be responsible for your personnel's compliance with your obligations under this Agreement.

Paragraph 4 – You may not rely on any draft Report(s).

Paragraph 5 - EY Brazil follows professional confidentiality standards and shall treat all information relating to the Company, presented by you or on your behalf ("Client Information"), as described in sections A56 through A59 of NBC PA 01 Quality Control for Independent Auditors (Legal Entities and Individuals).

Paragraph 6 – Except as otherwise permitted by this Agreement, neither of us may disclose to third parties the contents of this Agreement or any other information provided by or on behalf of the other in the ordinary course of the engagements or related services, that ought reasonably to be treated as confidential and/or proprietary.  Either of us may, however, disclose such information to the extent that it:

(a) is or becomes public other than through a breach of this Agreement;

(b) is subsequently received by the recipient from a third party who, to the recipient's knowledge, owes no obligation of confidentiality to the disclosing party with respect to that information;

(c) was known to the recipient at the time of disclosure or is thereafter created independently;

(d) is disclosed as necessary to enforce the recipient's rights under this Agreement; or

BG            (GF)            (M)





São Paulo Corporate Towers
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

(e) must be disclosed under applicable law, court order, legal process or professional regulations, in which cases EY is required to do so, refraining from giving notice thereof to the Client, including, but not limited to, the requirements provided for in Law No. 9613/98 (Anti-Money Laundering Act), as amended, and in rules and standards issued by the Brazilian Securities and Exchange Commission (CVM) and Brazil's National Association of State Boards of Accountancy (CFC), which provide for mandatory reporting, from legal entities to Brazil's Financial Activities Control Board (COAF), of any fact that might be an indication of money laundering identified in the course of performing engagements such as, even occasionally, advisory, consulting, accounting, audit, advice or any form of assistance.

Paragraph 7 – Either of us may use electronic media to correspond or transmit information and such use shall not in itself constitute a breach of any confidentiality obligations under this Agreement.

Paragraph 8 - Unless prohibited by applicable law, we may disclose Client Information to other EY Firms and EY Persons to facilitate performance of the Services, to comply with regulatory requirements, to check conflicts, for EY Brazil accounting analysis, or quality and risk management purposes.

Paragraph 9 – You agree that if we are requested or required, by government authorities or regulation agencies responsible for auditor oversight, to produce information or documents in our files relating to your affairs, including our working papers or other work product, we may provide these materials to the authorities. Except where prohibited by law, we will advise you of the request or order.

Paragraph 10 – You shall obtain from all foreign affiliates and subsidiaries included in the consolidated financial statements any authorizations, to the fullest extent permitted by applicable law, to enable compliance with requests from government authorities and regulatory agencies, to present documents or information in our hands, custody and control, as well as from affiliated professionals or from audit firms registered abroad, obtained during performance of the Services provided by the affiliate or professional.

Paragraph 11 – We may collect, use, transfer, store or otherwise process (collectively, "Process") Client Information that can be linked to specific individuals ("Personal Data"). We may process Personal Data in various jurisdictions in which we and the other EY Firms operate (which are listed at www.ey.com). We shall process the Personal Data in accordance with professional regulations and the Civil Code.  We will require any service provider that processes Personal Data on our behalf to adhere to such requirements.

Paragraph 12 – You warrant that you have the authority to provide the Personal Data to us in connection with the performance of the Services and that the Personal Data provided to us has been processed in accordance with the Civil Code guidelines and applicable legislation.

Paragraph 13 – Our auditor independence could be impaired if the Company solicits for employment or hires certain EY professionals. Such fact could delay the provision of the Services or lead to our termination thereof.   You shall not, during the term of this Agreement and for twenty-four months following its termination, for any reason, without our prior written consent, solicit for employment or a position on your Board of Directors or to oversee the financial reporting process, or hire or appoint to your Board of Directors or to oversee the financial reporting process, any current or former employee

BG          (GF)          W



São Paulo Corporate Towers
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

of EY Brazil or of any of the EY entities, if any such professional participates or participated, directly or indirectly, in the performance of the prior or current-year Services. The employee in the position to oversee the financial reporting process exercises, or is in the position to exercise, influence over the financial statements and over all those who participate in the preparation thereof.

Paragraph 14 – You shall pay our professional fees and specific expenses in connection with the Services as detailed in the Engagement Letter. You shall also reimburse us for other reasonable expenses incurred in performing the Services. Our fees are exclusive of taxes or similar charges, as well as customs, duties or tariffs imposed in respect of the Services, all of which you shall pay (other than taxes imposed on our income generally).

> Paragraph 14.1 - Failure to pay or delay payment of the amounts due to EY will oblige the Company to pay the amount in arrears plus a fine of 2% (two percent) plus default interest of 1% (one percent) per month, in addition to the monetary correction based on in the IGPM/FGV variation, or other index that officially replaces it in its extinction, from the date of maturity of the obligation up to the effective payment date calculated pro rata die.

Paragraph 15 – The fees provided for already include all taxes applicable to the Services under this Agreement, pursuant to current tax legislation. Should a superseding law be published (as from this date) creating, increasing or modifying taxes resulting from the engaged Services, the related impacts (positive or negative) shall be immediately included in the portion of the fees under this Agreement that has not yet been billed and/or received.

Paragraph 16 – If we are required by applicable law, legal process or government action to produce information or personnel as witnesses with respect to the Services or this Agreement, you shall reimburse us for any professional time and expenses (including reasonable external and internal legal costs) incurred to respond to the request, unless we are a party to the proceeding or the subject of the investigation.

Paragraph 17 – Except for payment obligations, neither party will be liable for non-compliance with its contractual obligations resulting from unforeseeable circumstances or force majeure until such circumstances cease. Such circumstances encompass any exceptional events that occur regardless of the party's reasonable control and that put, or may put, in risk the safety as well as the physical or mental health of its professionals, considered here, for example, climatic catastrophes, earthquakes, hurricanes, tidal waves, biological or infectious risks, wars, revolutions and strikes.

Paragraph 18 - Unless prohibited by applicable law, we may disclose Client Information to other EY Firms and EY Persons, and to any service provider acting on our behalf, who may collect, use, transfer, store or otherwise process (collectively, "Process") such information in various jurisdictions in which they operate, to facilitate performance of the Services, to comply with regulatory requirements, to check conflicts, to provide accounting and other administrative support services or for risk and quality management. We will be responsible for Client Information confidentiality, regardless of the location where or person by whom this information is Processed on our behalf.

Paragraph 19 – This Agreement applies to all Audit Services performed by EY Brazil.



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

Paragraph 20 - This Agreement shall terminate on the completion of the Services. We may terminate this Agreement, or any particular Services, immediately upon written notice to you if we reasonably determine that we can no longer provide the Services in accordance with applicable law or professional obligations.

Paragraph 21 – You shall pay us for all work-in-progress, Services already performed, and expenses incurred by us up to and including the effective date of the termination of this Agreement. Payment is due within 30 days following receipt of our invoice for these amounts.

Paragraph 22 – This Agreement, and any non-contractual obligations arising out of this Agreement or the Services, shall be governed by, and construed in accordance with, the laws of the Federative Republic of Brazil.

Paragraph 23 - Except for a claim limited solely to seeking nonmonetary or equitable relief, any dispute or claim arising out of or relating to the Services covered by this letter or hereafter provided by us to the Company (including any such matter involving any parent, affiliate, successor in interest, or agent of the Company or of EY Network, or involving any person or entity for whose benefit any such services are or have been provided) shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in paragraphs 24, 25 and 26 below. Judgment on any arbitration award may be entered in any court having jurisdiction over the subject-matter or the parties.

Paragraph 24 - The parties agree that any and all disputes resulting from and/or related to interpretation of this agreement, including any issues relating to existence, validity or contractual termination, or related to services included in this agreement, shall be necessarily, exclusively and definitively dispelled through arbitration, to be instituted and processed in accordance with the Arbitration Regulations of the Mediation and Arbitration Chamber of São Paulo (CIESP/FIESP). Management and correct development of the arbitration proceeding shall be incumbent upon the Mediation and Arbitration Chamber of São Paulo (CIESP/FIESP). The arbitration proceeding: (i) shall take place in the city of São Paulo, where the arbitration award shall be handed down; (ii) shall be carried out in the Portuguese language; and (iii) governing law shall be the law of the Federative Republic of Brazil.

Paragraph 25 - The arbitration shall be conducted by a panel of three arbitrators, to be selected one by each party. The arbitrators selected by the parties shall select together and in common agreement the third arbitrator, to be the president of the arbitration panel. If the parties do not reach a consensus about the third arbitrator within the term established in the Arbitration Rules, he or she shall be appointed by the Arbitration Chamber of São Paulo.

Paragraph 26 - All aspects of the arbitration shall be treated as confidential. None of the parties or arbitrators may disclose the existence, content or results of the arbitration, except when necessary to meet legal requirements and applicable regulations. Information related to the arbitration may not be disclosed, except with express authorization from the Arbitration Panel and the parties involved with express proof of the need to disclose said information. Before disclosing the information, the party shall previously inform this intent to the other parties, in writing, to allow them to protect their interests.

Paragraph 27 – This Agreement constitutes the entire agreement between EY Brazil and you as to the Services and the other matters it covers, and supersedes all prior agreements, understandings and representations with respect thereto, including any confidentiality agreements previously delivered.

BG                    (GFJ)                    



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

Paragraph 28 – Both of us may execute this Agreement (and modifications to it) by electronic means and each of us may sign a different copy of the same document. Both of us must agree in writing to modify this Agreement [and any Statement of Work hereunder].

Paragraph 29 – The legal representative states that upon signing this Agreement [and any Statement of Work hereunder] on behalf of the Company, he/she is expressly authorized to execute it and to bind you and any of your affiliates or others for whom Services are performed to its terms.

Paragraph 30 – EY Brazil shall own the working papers resulting from the Services.

Paragraph 31 – Neither party shall assign or novate any of its rights or obligations under this Agreement in whole or in part without the prior written consent of the other party; provided, however, that EY may assign or novate any of its rights and obligations under this Agreement to (i) any other EY Firm and/or (ii) any entity or entities resulting from, or established as part of, a restructuring, sale or transfer of an EY Firm, in whole or in part, provided further that any such assignment or novation does not materially affect the continuity of the Services. EY shall provide Client with notice of any such assignment or novation.

Paragraph 32 – If any provision of this Agreement (in whole or part) is held to be illegal, invalid or otherwise unenforceable, the other provisions shall remain in full force and effect.

Paragraph 33 – If there is any inconsistency between provisions in different parts of this Agreement, those parts shall have precedence as follows (unless expressly agreed otherwise): (a) the Cover Letter, (b) these General Terms and Conditions for Review and Audit engagements and (c) other annexes to the Agreement.

Paragraph 34 – We may use your name publically to identify you as a client, but we may refer to you only in connection with the Services, and that we are providing them (or have provided them). EY Brazil may also enter into agreements with other companies, and the Company hereby authorizes the disclosure of our professional relationship.

Paragraph 35 - In virtue of the audit services described in the engagement letter and statement of work, certain documents and information relating to your Company included in the Company's (individual and consolidated) financial statements shall be provided by you. Such documents and information relating to the year ending December 31, 2023, ("Working Papers") shall remain in the possession, custody and control of Ernst & Young Auditores Independentes S.S. which is subject to duty of confidentiality under applicable legislation.

Paragraph 36 - Accordingly, in accordance with Resolution NBC P1.6 of Brazil's National Association of State Boards of Accountancy (CFC), you hereby authorize Ernst & Young Auditores Independentes S.S., to perform the following:

(i)     to provide the CFC with the information required (e.g. the Company's total fees, total assets and net revenue), regardless of its sensitivity, in order to comply with CFC requirements for selection of clients to be audited.

Paragraph 37 - You may not disclose a Report (or any portion or summary of a Report) or refer to us or to any other EY Firm in connection with the Services to support actions that may represent a violation of Law No. 12846/13, except:

BG                        (GFJ)                        





**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

(a) to your lawyers (subject to these disclosure restrictions), who may use it only to give you advice relating to the Services;

(b) to the extent, and for the purposes, required by subpoena or similar legal process, of which you will promptly notify us; and

(c) for disclosure and publication of an auditor's report issued by us as required by applicable law and/or regulation.

Paragraph 38 - If you are permitted to disclose a Report (or a portion thereof), you shall not alter, edit or modify it from the form we provided.

Paragraph 39 - The Parties shall be fully liable for any violation of Brazilian Federal Law No. 12846/13 and other related applicable anti-corruption rules ("Anti-Corruption Legislation") you may commit. The provisions set forth in this paragraph shall remain in full force and effect even after termination of this Agreement, for whatever reason. Without prejudice to other provisions on anti-corruption issues in this Agreement, you hereby undertake and warrant to us that:

(a)    The Parties will fully comply with the Anti-Corruption Legislation, and zeal to ensure that all your employees, assigns and subcontractors will do the same;

(b)    The Parties will not engage in the commission or omission of any act that induces noncompliance with the Anti-Corruption Legislation by EY, the other EY Firms, their partners, directors, employees in general and assigns;

(c)    The Parties adopt, and will continue to adopt while this Agreement remains in effect, policies and procedures aimed to ensure compliance with the Anti-Corruption Legislation, and whenever so requested, you must disclose and make available to us these policies and procedures; and

(d)    The Parties shall expressly inform your employees, assigns, service providers and subcontractors that direct or indirect payment of bribes in any form will not be accepted or condoned, nor will any involvement in other conducts that contravene the Anti-Corruption Legislation, for or on behalf of EY, the other EY Firms, their partners, directors, employees in general and assigns, and you will report to us any suspicion that such circumstances exist.

(e)    EY is aware and undertakes to comply with GOL's Code of Ethics, as made available in the www.eticanagol.com.br.

Paragraph 40 - Subject to applicable law, we may provide Client Information to other EY Firms, EY Persons and external service providers of EY, other EY Member Firms, or EY Persons ("Service Providers") who may collect, use, transfer, store or otherwise process it (collectively "Process") for purposes related to:

(a) the provision of the Services;
(b) complying with regulatory, and legal obligations to which we are subject;
(c) conflict checking;

BG          (GF)          





**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

(d) for risk management and quality reviews; and for
(e) our internal financial accounting, information technology and other administrative support services (collectively "Processing Purposes").

We shall be responsible for maintaining the confidentiality of Client Information regardless of by whom such Information is Processed on our behalf.

Paragraph 41 - The parties hereby declare, including on behalf of their employees and subcontractors, that they comply with the applicable Brazilian privacy and data protection legislation, including, without limitation, the Brazilian General Data Protection Law, the Federal Law nº 12.965/2014 - Marco Civil da Internet, the normative decree and other sectoral or general rules for the protection of personal data, agreeing to process personal data under this Agreement for the performance of Services and only in limits and purpose of this Agreement or with appropriate lawful base.

Paragraph 42 - The parties warrant that the personal data shared under this Agreement has been collected and processed lawfully and in comply to the data subject rights, in accordance with the requirements of the Brazilian General Data Protection Law

Paragraph 43 - EY uses other EY Firms, EY Persons and Support Providers who may have access to Client Information in connection with delivery of Services as well as to provide Internal Support Services. EY shall be responsible for any use or disclosure of Client Information by other EY Firms, EY Persons or Support Providers to the same extent as if EY had engaged in the conduct itself.

Paragraph 44 - Subject to applicable law, we may provide Client Information to other EY Firms, EY Persons and external service providers of EY, other EY Member Firms, or EY Persons ("Service Providers") who may collect, use, transfer, store or otherwise process it (collectively "Process") for purposes related to:

    a)      the provision of the Services;
    b)      complying with regulatory, and legal obligations to which EY is subject to;
    c)      conflict checking;
    d)      for risk management and quality reviews; and for
    e)      EY's internal financial accounting, information technology and other administrative support services (collectively "Processing Purposes").

Paragraph 45 - Transfer of Personal Data among members of the EY network is subject to the EY Binding Corporate Rules Program, available at www.ey.com/bcr. Further information about EY's security measures and processing of Personal Data is available at www.ey.com/privacy.

Paragraph 46 - As a professional services firm, EY is required to exercise its own judgment in determining the purposes and means of processing any Personal Data when providing the Services.  Accordingly, unless otherwise specified, when processing Personal Data subject to the Federal Law nº 13.709/2018 – Brazil General Data Protection Law ("LGPD") or other applicable data protection law, EY acts as an independent controller, and not as a processor under Client's control or as a joint controller with Client.

BG                    (GF)                    (W)



## Exhibit B

**Third Supplemental Engagement Letter**



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

**GOL LINHAS AÉREAS S/A**                                    16/05/24
At.: Gilberto Silva

**Proposal for the provision of professional services**

Gentlemen,

Thank you for choosing **ERNST & YOUNG AUDITORES INDEPENDENTES  S/S LTDA,**  registered in the National Registry of Legal Entities of the Ministry of Finance (CNPJ/MF) under No. 61.366.936/0001-25, with address at Av. Pres. Juscelino Kubitschek, 1909 – Torre Norte, São Paulo – SP **("EY", "EY BRASIL" or "we")** to  provide professional services to **GOL LINHAS AÉREAS S/A.** Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto 04626-020, São Paulo, SP - Brazil, enrolled with the Brazilian IRS Registry of Legal Entities (CNPJ/MF) under No. 07.575.651/0001-59 ("Company.", Client, Contractor or "GOL").

We appreciate the opportunity to provide limited assurance to you. and we shall be glad to begin our work.

This Agreement sets out the contractual structure for the provision of services ("Services") by EY to Company subsequent to Company filing a petition under Chapter 11 ("Chapter 11") of the United States Bankruptcy Code ("Bankruptcy Code") on January 24, 2024, with the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). EY's performance of Services is contingent upon the Bankruptcy Court's approval of EY's retention in accordance with the terms and conditions that are set forth in this Agreement.

This document is composed with the following items, which form part of the contract and are an indivisible part of it (together hereinafter, "Agreement"):

a) **Exhibit A** – Statement of Work. The Statement of Work ("SOW") sets forth the Services to be provided and the fees, terms of payment and other commercial matters.

b) **Exhibit B** – General Terms and Conditions. The General Terms and Conditions set forth the rights and responsibilities of the parties involved in the Services.

c) **Exhibit C** - Data Protection Term

d) **Exhibit D** - EY Technical and Commercial Proposal



São Paulo Corporate Towers
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

To confirm your acceptance of this letter, we request that a copy be returned signed and dated to [xxxx]. If you would like clarification on any of these materials, please contact us so that we can address the issues identified by you. before we begin to provide the Services.

Sincerely,


**ERNST & YOUNG**

Auditores Independentes S/S Ltda.

*Bruno Mattar Galvão*
5A0F8B720018414...

_____

Partner


Agreed to and accepted by:


*Danielle De Oliveira Faria*

**GOL Linhas Aéreas S/A**

Name:

Position:

*EDSON GIOVANI TOBATO FILHO*

**GOL Linhas Aéreas S/A**

Name:

Position:


Witness:

*Filipe Cesar Miguel Sobrinho*

Name:

Number I.D.:

*Dante Cirillo*

Name:

Number I.D.:


Date :5/16/2024



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

### - Exhibit A -
### STATEMENT OF WORK

This Statement of Work, dated 16 May 2024, (hereinafter referred to as "SOW") is made by the Parties (EY and GOL) and shall be executed in connection with the Company filing a petition under Chapter 11 of the United States Bankruptcy Code ("Chapter 11") on January 24, 2024, with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and describes certain services that EY will perform for the Company during the Company's Chapter 11 proceedings.

**Scope of Services**

The Company is responsible for issuing a limited Assurance report on the KPIs contained in GOL's Sustainability Report, based on the guidelines of the GRI Standards and Sustainability Accounting Standards Board (SASB), as well as the consistency of the disclosures in relation to the recommendations of the Task Force on Climate Related Financial Disclosures ("TCFD"), base year 2023.

The limited assurance engagement will be carried out in accordance with Technical Communiqué CTO 07 – 2022 issued by the CFC (Federal Accounting Council), and based on NBC TO 3000 – Assurance Engagements Other than Audit and Review, also issued by the CFC, which is equivalent to the international standard ISAE 3000 – Assurance engagements other than audits or reviews of historical financial information, issued by the International Auditing and Assurance Standards Board (IAASB).

GOL adopts the guidelines of the Global Reporting Initiative ("GRI Standards"), SASB and the Task Force on Climate Related Financial Disclosures ("TCFD") as the criteria for preparing the indicators. Assurance includes:

- The planning of the work, considering the relevance and volume of the information presented;
- Interviews with CONTRACTING PARTY professionals involved in the preparation of the report to understand the main criteria and assumptions used in the preparation of the report;
- Validation, by means of tests on sample bases, of the evidence that supports the qualitative and quantitative data of the report;
- Verification by sampling, on the basis of evidence tests, of documents, files, reports, databases and corporate policies that support the information;
- Verification of the adherence of the reporting of all indicators to the principles and protocols of the GRI Standard, consistency of disclosures in relation to the recommendations of the TCFD and NBCTO 3000;

Deliverable:

- Limited assurance report on the company's ESG indicators contained in GOL's Sustainability Report, as well as consistency of disclosures in relation to TCFD recommendations, base year 2023 (Portuguese, English and Spanish);
- Improvement recommendations report.



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

The full details of the activities and methodological approach can be found in the technical proposal (Annex C).

Our ratings do not represent any conclusion as to the effectiveness or adequacy of the Company's internal controls. Only the Company can assess whether the controls, functions, processes or programs implemented by the Company are adequate for the achievement of strategic, operational, compliance and financial disclosure objectives.

Our performance of Services is contingent upon the Bankruptcy Court's approval of our retention in accordance with the terms and conditions that are set forth in this Agreement.

**Scope Assumptions and Limitations**

The Company shall not identify, consider or correct any errors or defects that may exist in its computer systems and other devices or components ("Systems"), regardless of whether they are due to inaccuracy or ambiguity in the typing, storage, interpretation or processing or disclosure of data. The Company shall not be liable for any defect or problem arising from the processing of data in any Systems or related to such processing, unless it is found to be responsible for an act or omission that causes such error, defect or problem.

The procedures will be carried out based on information from document analysis and interviews with key people, in this way, all information made available/collected with the CLIENT's professionals will be considered true and free of distortions.  In addition, assessments under limited assurance will be based on existing data and information, and additional data generation via sample analysis (counter-evidence) is not included.

The goals, intentions and projects to be developed in the future, as well as opinions, historical information and descriptive information and subject to subjective evaluations, and information relating to previous periods, presented for comparison purposes and verified by other independent auditors, will not be within the scope of our work. To the extent that the procedures performed by us do not constitute a detailed review of the Client's business and technology processes, we will not issue any opinion or opinion on them.

For work of this nature, there are limitations inherent in our activities, including, for example, the discovery of collusion or forgery that may prevent the detection of material errors, fraud and illegal acts. Consequently, fraud and illegal acts will not be detected, nor will they be the object of attention for this work.

The work will be carried out during business hours and on a BackOffice basis and all interviews will be carried out via Conference call – we are not planning any visit to operational units.

If there is additional work effort to the planned due to aspects of the CLIENT's responsibility, the CONTRACTING PARTY, together with EY, shall determine the additional hours incurred and renegotiate such hours at a rate equivalent to that applied to define the budget for this project.



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

None of the Services or the reports shall constitute legal opinion or advice. We will not conduct any reviews to detect fraud or illegal acts.

Notwithstanding anything to the contrary in the Agreement or this Agreement, we will assume no responsibility for any third-party products, programs or services, their performance or compliance with your specifications or otherwise, which have been contracted by the Client.

Any comments or recommendations by EY regarding the functional and technical competencies of any products in use or being considered by the Client will be based solely on the information provided directly by the Client. EY assumes no responsibility for the completeness or accuracy of such information or for the confirmation of any of it.

The full details of the assumptions and constraints can be found in the technical proposal (Exhibit C) and should be considered as an integral part of this instrument.

**Timeline and term**

Unless otherwise agreed between the parties, and in accordance with the General Terms and Conditions of the Agreement, we expect to provide the Services in an average period of approximately **08 (eight) weeks** per cycle for the execution of the  complete project, which may vary, more or less, according to the environment in which the work is developed, so that the term of the contract begins on the date of signature and is **valid for 24 (twenty-four) months**.

**Contacts**

The Client identifies **Gilberto Jose da Silva Filho <GIJSFILHO@voegol.com.br>** as his/her contact, with whom the Company shall maintain communications about the Services contracted herein. Your contact at the SERVICE PROVIDER for the Services contracted herein will be **Dante Cirillo (dante.cirillo@br.ey.com).**

**Fees**

The total remuneration for the Services amounts to **R$134,000.00 (one hundred and thirty-four thousand reais).** For the provision of the Services contracted herein, the Company will pay to EY 02 (two) equal installments, the first at the time of formalization of the contract and the second after conclusion.

Once approved by the Bankruptcy Court the payment deadline will be 30 (thirty) days after the issuance of each invoice, and payments will be made only on the 10th (tenth) or 25th (twenty-five) days of the month following the acceptance of each phase by the Company, whichever occurs first, and, if one of the payment



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

dates coincides with a day when there are no bank hours (national holiday, weekend, etc.), the payment will be automatically extended to the first subsequent business day.

The fees indicated above already include the taxes levied on the provision of services, observing the current rates, corresponding to the rate of 7.6% as COFINS, 1.65% as PIS and 5% as ISS. Our fees do not include any type of expenses necessary for the performance of the services. Whenever necessary, additional expenses will be aligned with CONTRATANRE, which must agree in advance and expressly, and will be invoiced separately for the cost incurred.

The above fees represent EY's best estimate, considering our knowledge of the Company, the experience of previous work and assuming the necessary collaboration on the part of the CLIENT's professionals, to provide the necessary information for the execution of the work, as well as to be available for discussions and clarifications, according to the agreed schedules.

In the case of activities not foreseen in this estimate of fees, including due to the additional execution of certain procedures already foreseen in the scope of the work or the execution of procedures not initially foreseen, the parties undertake to discuss an increase in the amount of the fees and the change of the expected date for the completion of the work, which must be specified and signed through the signing of an addendum by the parties.

The procedures provided for in the work plan will be carried out in their entirety, therefore, the fees will be charged in their entirety even in the event of the impossibility of issuing a limited letter of assurance due to lack of controls or insufficient information on the part of the Company. In this specific case, only the report of recommendations for improvements will be delivered.

EY will submit an itemized and detailed billing statement, and will request payment of our fees and expenses, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules for the United States Bankruptcy Court for the Southern District of New York ("Local Rules") and any relevant administrative orders.

EY acknowledge that payment of our fees and expenses hereunder is subject to (i) the jurisdiction and approval of the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code, any order of the Bankruptcy Court approving the retention of us and the U.S. Trustee Guidelines, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications.

Should EY's assumptions with respect to these matters be incorrect or should the documentation of internal control, results of our procedures, condition of records, degree of cooperation, extent of procedures performed by the Company to support management's assessment or other matters beyond our reasonable control require additional commitments by us beyond those upon which our estimates are based, we may adjust our fees, subject to Bankruptcy Court approval, and planned completion dates.



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

**- Exhibit B -**
**GENERAL TERMS AND CONDITIONS**

Paragraph 1 – EY Brazil is a member of the global network of Ernst & Young firms ("EY Firms"), each of which is a separate legal entity.

Paragraph 2 – EY will be solely responsible to you for the Report, the performance of the Services and our other obligations under this Agreement.

Paragraph 3 – You shall be responsible for your personnel's compliance with your obligations under this Agreement.

Paragraph 4 – You may not rely on any draft Report(s).

Paragraph 5 - EY Brazil follows professional confidentiality standards and shall treat all information relating to the Company, presented by you or on your behalf ("Client Information"), as described in sections A56 through A59 of NBC PA 01 Quality Control for Independent Auditors (Legal Entities and Individuals).

Paragraph 6 – Except as otherwise permitted by this Agreement, neither of us may disclose to third parties the contents of this Agreement or any other information provided by or on behalf of the other in the ordinary course of the engagements or related services, that ought reasonably to be treated as confidential and/or proprietary.  Either of us may, however, disclose such information to the extent that it:

(a) is or becomes public other than through a breach of this Agreement;

(b) is subsequently received by the recipient from a third party who, to the recipient's knowledge, owes no obligation of confidentiality to the disclosing party with respect to that information;

(c) was known to the recipient at the time of disclosure or is thereafter created independently;

(d) is disclosed as necessary to enforce the recipient's rights under this Agreement; or

(e) must be disclosed under applicable law, court order, legal process or professional regulations, in which cases EY is required to do so. EY shall give notice to the Client, except the cases where, by law or professional regulations, is prevented  from doing so, for example, but not limited to,  the requirements provided for in Law No. 9613/98 (Anti-Money Laundering Act), as amended, and in rules and standards issued by the Brazilian Securities and Exchange Commission (CVM) and Brazil's National Association of State Boards of Accountancy (CFC), which provide for mandatory reporting, from legal entities to Brazil's Financial Activities Control Board (COAF), of any fact that might be an indication of money laundering identified in the course of performing



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

engagements such as, even occasionally, advisory, consulting, accounting, audit, advice or any form of assistance.

Paragraph 7 – Either of us may use electronic media to correspond or transmit information and such use shall not in itself constitute a breach of any confidentiality obligations under this Agreement.

Paragraph 8 - Unless prohibited by applicable law, we may disclose Client Information to other EY Firms and EY Persons to facilitate performance of the Services, to comply with regulatory requirements, to check conflicts, for EY Brazil accounting analysis, or quality and risk management purposes.

Paragraph 9 –If we are requested or required, by government authorities or regulation agencies responsible for auditor oversight, to produce information or documents in our files relating to your affairs, including our working papers or other work product, whenever permitted, we will notify you to allow us to provide these materials to the authorities.

Paragraph 10 – You shall obtain from all foreign affiliates and subsidiaries included in the consolidated financial statements any authorizations, to the fullest extent permitted by applicable law, to enable compliance with requests from government authorities and regulatory agencies, to present documents or information in our hands, custody and control, as well as from affiliated professionals or from audit firms registered abroad, obtained during performance of the Services provided by the affiliate or professional.

Paragraph 11 – We may collect, use, transfer, store or otherwise process (collectively, "Process") Client Information that can be linked to specific individuals ("Personal Data"). We may process Personal Data in various jurisdictions in which we and the other EY Firms operate (which are listed at www.ey.com). We shall process the Personal Data in accordance with professional regulations and the Civil Code.  We will require any service provider that processes Personal Data on our behalf to adhere to such requirements.

Paragraph 12 – You warrant that you have the authority to provide the Personal Data to us in connection with the performance of the Services and that the Personal Data provided to us has been processed in accordance with the Civil Code guidelines and applicable legislation.

Paragraph 13 – Our auditor independence could be impaired if the Company solicits for employment or hires certain EY professionals. Such fact could delay the provision of the Services or lead to our termination thereof. You shall not, during the term of this Agreement and for twenty-four months following its termination, for any reason, without our prior written consent, solicit for employment or a position on your Board of Directors or to oversee the financial reporting process, or hire or appoint to your Board of Directors or to oversee the financial reporting process, any current employee of EY Brazil or of any of the EY entities, if any such professional participates or participated, directly or indirectly, in the performance of the prior or current-year Services.  The employee in the position to oversee the financial reporting process exercises, or is in the



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

position to exercise, influence over the financial statements and over all those who participate in the preparation thereof.

Paragraph 14 – You shall pay our professional fees and specific expenses in connection with the Services as detailed in the Engagement Letter and the Statement of Work. You shall also reimburse us for other reasonable expenses incurred in performing the Services, as long as they are previously requested and approved by you.  Our fees are exclusive of taxes or similar charges, as well as customs, duties or tariffs imposed in respect of the Services, all of which you shall pay (other than taxes imposed on our income generally).

Paragraph 14.1 - Failure to pay or delay payment of the amounts due to EY, except if the failure to pay or delay payment is due to an order by the Southern District of New York (the "Bankruptcy Court"), will oblige the Company to pay the amount in arrears plus a fine of 2% (two percent) plus default interest of 1% (one percent) per month, in addition to the monetary correction based on in the IGPM/FGV variation, or other index that officially replaces it in its extinction, from the date of maturity of the obligation up to the effective payment date calculated pro rata die.

Paragraph 15 – The fees provided for already include all taxes applicable to the Services under this Agreement, pursuant to current tax legislation. Should a superseding law be published (as from this date) creating, increasing or modifying taxes resulting from the engaged Services, the related impacts (positive or negative) shall be included in the portion of the fees under this Agreement that has not yet been billed and/or received, through an modification/amendment signed by the Parties.

Paragraph 16 – Intentionally Omitted.

Paragraph 17 – Except for payment obligations, neither party will be liable for non-compliance with its contractual obligations resulting from unforeseeable circumstances or force majeure until such circumstances cease. Such circumstances encompass any exceptional events that occur regardless of the party's reasonable control and that put, or may put, in risk the safety as well as the physical or mental health of its professionals, considered here, for example, climatic catastrophes, earthquakes, hurricanes, tidal waves, biological or infectious risks, wars, revolutions and strikes.

Paragraph 18 - Unless prohibited by applicable law, we may disclose Client Information to other EY Firms and EY Persons who may collect, use, transfer, store or otherwise process (collectively, "Process") such information in various jurisdictions in which they operate, to facilitate performance of the Services, to comply with regulatory requirements, to check conflicts, to provide accounting and other administrative support services or for risk and quality management. We will be responsible for Client Information confidentiality, regardless of the location where or person by whom this information is Processed on our behalf.

Paragraph 19 – This Agreement applies to all Audit Services performed by EY Brazil.



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

Paragraph 20 - This Agreement shall terminate on the completion of the Services. We may terminate this Agreement, or any particular Services, immediately upon written notice to you if we reasonably determine that we can no longer provide the Services in accordance with applicable law or professional obligations.

Paragraph 21 – You shall pay us for all work-in-progress, Services already performed, and expenses incurred by us up to and including the effective date of the termination of this Agreement. Payment is due within 30 days following receipt of our invoice for these amounts.

Paragraph 22 – This Agreement, and any non-contractual obligations arising out of this Agreement or the Services, shall be governed by, and construed in accordance with, the laws of the Federative Republic of Brazil.

Paragraph 23 - Any dispute or claim arising out of or relating to the Services covered by this letter or hereafter provided by us to the Company (including any such matter involving any parent, affiliate, successor in interest, or agent of the Company or of EY Network, or involving any person or entity for whose benefit any such services are or have been provided) shall be submitted to one of the Civil Courts of São Paulo/SP and shall be govern by Brazilian Law. .

Paragraph 24 - Intentionally Omitted.

Paragraph 25 - Intentionally Omitted.

Paragraph 26 - All aspects of the arbitration shall be treated as confidential. None of the parties or arbitrators may disclose the existence, content or results of the arbitration, except when necessary to meet legal requirements and applicable regulations. Information related to the arbitration may not be disclosed, except with express authorization from the Arbitration Panel and the parties involved with express proof of the need to disclose said information. Before disclosing the information, the party shall previously inform this intent to the other parties, in writing, to allow them to protect their interests.

Paragraph 27 – This Agreement constitutes the entire agreement between EY Brazil and you as to the Services and the other matters it covers, and supersedes all prior agreements, understandings and representations with respect thereto, including any confidentiality agreements previously delivered.

Paragraph 28 – Both of us may execute this Agreement (and modifications to it) by electronic means and each of us may sign a different copy of the same document. Both of us must agree in writing to modify this Agreement [and any Statement of Work hereunder].

Paragraph 29 – The legal representative states that upon signing this Agreement [and any Statement of Work hereunder] on behalf of the Company, he/she is expressly authorized to execute it and to bind you and any of your affiliates or others for whom Services are performed to its terms.



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

Paragraph 30 – Each party retains its rights in its pre-existing intellectual property. Any intellectual property developed by EY Brazil and any working papers compiled in connection with the Services (but not the Client Information contained therein) will be owned by EY Brazil.

Paragraph 31 – Neither party shall assign or novate any of its rights or obligations under this Agreement in whole or in part without the prior written consent of the other party; provided, however, that EY may assign or novate any of its rights and obligations under this Agreement to (i) any other EY Firm and/or (ii) any entity or entities resulting from, or established as part of, a restructuring, sale or transfer of an EY Firm, in whole or in part, provided further that any such assignment or novation does not materially affect the continuity of the Services. EY shall provide Client with notice of any such assignment or novation.

Paragraph 32 – If any provision of this Agreement (in whole or part) is held to be illegal, invalid or otherwise unenforceable, the other provisions shall remain in full force and effect.

Paragraph 33 – If there is any inconsistency between provisions in different parts of this Agreement, those parts shall have precedence as follows (unless expressly agreed otherwise): (a) the Cover Letter, (b) the applicable Statement of Work and any appendixes; (c) these General Terms and Conditions and (d) other annexes to the Agreement.

Paragraph 34 –We may not use your name or trademark publicly, unless expressly approved by you and only to refer to you in connection with the Services, and that we are providing them (or have provided them). EY Brazil may also enter into agreements with other companies, and the Company hereby authorizes the disclosure of our professional relationship.

Paragraph 35 - In virtue of the audit services described in the engagement letter and statement of work, certain documents and information relating to your Company included in the Company's (individual and consolidated) financial statements shall be provided by you. Such documents and information relating to the year ending December 31, 2023, ("Working Papers") shall remain in the possession, custody and control of Ernst & Young Auditores Independentes S.S. which is subject to duty of confidentiality under applicable legislation. Under the Sarbanes-Oxley Act of 2002, the Public Company Accounting Oversight Board ("PCAOB"), in the United States, is authorized to conduct audits of foreign audit firms and review their Working Papers related to audit services provided to companies with outstanding securities on the US capital market. Accordingly, we may be asked to provide certain information to the PCAOB (e.g. the Company's total fees, total assets or net revenue) relating to audit services to be provided to you.

Paragraph 36 - Accordingly, in accordance with Resolution NBC P1.6 of Brazil's National Association of State Boards of Accountancy (CFC), you hereby authorize Ernst & Young Auditores Independentes S.S., when requested by the PCAOB, to perform the following: to provide the PCAOB with the information required (e.g. the Company's total fees, total assets and net revenue), in order to comply with PCAOB requirements for



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

selection of clients to be audited. If such information needs to be treated as confidential or sensitivity EY Brazil will, whenever permitted, notify Clients before sharing it with the PCAOB.

Paragraph 36.1. - In addition, in the event that the audit engagement to be provided by EY to the Company is selected for PCAOB audit, you agree to: authorize EY Brazil to provide the PCAOB all and any Working Papers for the audit engagement relating to GOL LINHAS AÉREAS S/A financial statements for the year ending 2023, in order to meet PCAOB requirements for the presentation of Working Papers. If such information needs to be treated as confidential or sensitivity EY Brazil will, whenever permitted, notify Clients before sharing it with the PCAOB.

Paragraph 37 - You may not disclose a Report (or any portion or summary of a Report) or refer to us or to any other EY Firm in connection with the Services to support actions that may represent a violation of Law No. 12846/13, except:

(a) to your lawyers (subject to these disclosure restrictions), who may use it only to give you advice relating to the Services;

(b) to the extent, and for the purposes, required by subpoena or similar legal process, of which you will promptly notify us; and

(c) for disclosure and publication of an auditor's report issued by us as required by applicable law and/or regulation.

Paragraph 38 - If you are permitted to disclose a Report (or a portion thereof), you shall not alter, edit or modify it from the form we provided.

Paragraph 39 - EY Brazil and You shall be fully liable for any violation of Brazilian Federal Law No. 12846/13 and Law No. 9.613/1998 (Anti Laundry Money) and other related applicable anti-corruption rules ("Anti-Corruption Legislation") you or EY Brazil may commit. The provisions set forth in this paragraph shall remain in full force and effect even after termination of this Agreement, for whatever reason. Without prejudice to other provisions on anti-corruption issues in this Agreement, you and EY Brazil hereby undertake and warrant that:

 The Partieswill fully comply with the Anti-Corruption Legislation, and zeal to ensure that all your employees, assigns and subcontractors will do the same;

The Parties will not engage in the commission or omission of any act that induces noncompliance with the Anti-Corruption Legislation by the other Party, their partners, directors, employees in general and assigns;



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

The Parties adopt, and will continue to adopt while this Agreement remains in effect, policies and procedures aimed to ensure compliance with the Anti-Corruption Legislation, and whenever so requested, you must disclose and make available to us these policies and procedures; and

The Parties shall expressly inform your employees, assigns, service providers and subcontractors that direct or indirect payment of bribes in any form will not be accepted or condoned, nor will any involvement in other conducts that contravene the Anti-Corruption Legislation, for or on behalf of other party, their partners, directors, employees in general and assigns, and will report to us any suspicion that such circumstances exist.

Paragraph 40 - Subject to applicable law, we may provide Client Information to other EY Firms, EY Persons and external service providers of EY, other EY Member Firms, or EY Persons ("Service Providers") who may collect, use, transfer, store or otherwise process it (collectively "Process") for purposes related to:

(a)         the provision of the Services;
(b)         complying with regulatory, and legal obligations to which we are subject;
(c)         conflict checking;
(d)         for risk management and quality reviews; and for
(e)         our internal financial accounting, information technology and other administrative support services (collectively "Processing Purposes").

We shall be responsible for maintaining the confidentiality of Client Information regardless of by whom such Information is Processed on our behalf.

Paragraph 41 - The parties hereby declare, including on behalf of their employees and subcontractors, that they comply with the applicable Brazilian privacy and data protection legislation, including, without limitation, the Brazilian General Data Protection Law, the Federal Law nº 12.965/2014 - Marco Civil da Internet, the normative decree and other sectoral or general rules for the protection of personal data, agreeing to process personal data under this Agreement for the performance of Services and only in limits and purpose of this Agreement or with appropriate lawful base.

Paragraph 42 - The parties warrant that the personal data shared under this Agreement has been collected and processed lawfully and in comply to the data subject rights, in accordance with the requirements of the Brazilian General Data Protection Law

Paragraph 43 - EY uses other EY Firms, EY Persons and Support Providers who may have access to Client Information in connection with delivery of Services as well as to provide Internal Support Services. EY shall be responsible for any use or disclosure of Client Information by other EY Firms, EY Persons or Support Providers to the same extent as if EY had engaged in the conduct itself.



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

Paragraph 44 - Subject to applicable law, we may provide Client Information to other EY Firms, EY Persons, other EY Member Firms, or EY Persons ("Service Providers") who may collect, use, transfer, store or otherwise process it (collectively "Process") for purposes related to:

a)          the provision of the Services;

b)          complying with regulatory, and legal obligations to which EY is subject to;

c)          conflict checking;

d)          for risk management and quality reviews; and for

e)          EY's internal financial accounting, information technology and other administrative support services (collectively "Processing Purposes").

Paragraph 45 - Transfer of Personal Data among members of the EY network is subject to the EY Binding Corporate Rules Program, available at www.ey.com/bcr. Further information about EY's security measures and processing of Personal Data is available at www.ey.com/privacy.

Paragraph 46 - As a professional services firm, EY is required to exercise its own judgment in determining the purposes and means of processing any Personal Data when providing the Services.  Accordingly, unless otherwise specified, when processing Personal Data subject to the Federal Law nº 13.709/2018 – Brazil General Data Protection Law ("LGPD") or other applicable data protection law, EY acts as an independent controller, and not as a processor under Client's control or as a joint controller with Client.

Paragraph 47 - By agreement to the provision of the Services, EY is not providing a guarantee to Client that EY's performance of those services pursuant to the terms and conditions set forth in this Agreement will guarantee Client's successful reorganization under Chapter 11

Paragraph 48 - Intentionally Omitted.

Paragraph 49 - Any activities not described in this Agreement are not covered by the fees stated therein. These services will be considered outside the scope of such Statement of Work and are the responsibility of Company to perform on a timely basis unless otherwise agreed by the parties in writing (in an amendment). and approved by the Bankruptcy Court.

Paragraph 50 - EY will submit an itemized and detailed billing statement for this Agreement, and EY will request payment of EY's fees and expenses, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules for the Bankruptcy Court and any relevant administrative orders. EY will submit EY's invoices as the work progresses and payment of them will be made upon receipt, or as quickly as the Bankruptcy Code, the Bankruptcy Rules, Local Rules and any relevant administrative orders allow.

Paragraph 51 - EY acknowledges that payment of EY's fees and expenses is subject to (i) the jurisdiction and approval of the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code, any order of the



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

Bankruptcy Court approving the retention of EY and the U.S. Trustee Guidelines, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications.



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

**Exhibit C**
**Data Protection**

Considering that the activities related to the Agreement may, eventually, result in the Processing of personal data between **EY and** GOL, the **Parties resolve to establish the obligations for the protection and processing of personal data through this Exhibit C, which is an integral part of the Agreement.**

The Parties mutually declare and warrant, including on behalf of their partners, employees and subcontractors, that they comply with the applicable legislation on privacy and protection of personal data ("Applicable Data Protection Legislation"), including, but not limited to, Federal Law No. 13,709/2018 - General Personal Data Protection Law ("LGPD"), normative decrees and/or other sectoral or general rules for the protection of personal data,  undertaking to process the personal data related to and necessary for the execution of this Agreement, for the provision of the Services and only within the limits, purposes and with appropriate legal basis.

1. Within the scope of this Agreement and for the execution of its object, the terms of the LGPD, with the respective definitions and concepts contained in the aforementioned legal provision, shall apply, regardless of whether they are written with capital or lower case letters, in the singular or plural.

2. The Parties guarantee that the Personal Data shared between them under this Agreement has been collected and is Processed in a lawful manner and in accordance with the rights of the respective Personal Data Subject, in accordance with the requirements and requirements imposed by the LGPD.

**3. As a professional services firm, EY is required to exercise its own judgment in determining the purposes and means of Processing any Personal Data indispensable to the provision of the Services. Accordingly, unless otherwise specified, when Processing Personal Data subject to Applicable Data Protection Legislation, EY will act as an independent Controller, and not as a Personal Data Processor, when it would be bound by the Client's instructions for the purposes of the Processing or as a Co-controller with the Client (Joint Personal Data Controllership), when the purposes and means for the Processing are defined jointly'between two or more Processing Agents.**

4. In the event of any Processing of Personal Data shared between the Parties due to this Agreement for purposes unrelated to its execution, it is hereby agreed for all purposes that this Processing activity will occur out of context, and the respective Personal Data Controller shall be fully responsible for such Processing, with the other Party being free of any obligation or responsibility arising therefrom.



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

5. EY relies on other EY Firms and Service Providers (the latter primarily for support purposes) who may have access to Client Information (including Personal Data under their responsibility) in connection with the provision of Services, as well as to provide Internal Support Services, including but not limited to:

(a) provision of the Services,

(b) compliance with regulatory and legal obligations to which EY is subject,

(c) verification of the existence of conflicts;

(d) risk management and quality reviews, and

(e) EY's internal financial accounting, information technology, and other administrative support services.

6. If it is necessary, for the execution of a Statement of Work or Contract, the international transfer of Personal Data from Brazil by any of the Parties, and if the destination country does not have an adequate level of protection of Personal Data as determined by the National Data Protection Authority ("ANPD"), the Party sharing the Personal Data must ensure that such international transfer is carried out in accordance with one of the mechanisms provided for by the Applicable Data Protection Legislation, including, but not limited to, those provided for in Article 33 et seq. of the LGPD.

7. The international transfer of Personal Data from Brazil to other EY Firms is subject to the EY Global Corporate Rules ("EY Binding Corporate Rules" or simply "BCRs") signed by EYG and the Swiss Data Protection Supervisory Authority, available on the www.ey.com/bcr website, which document shall be considered and interpreted in conjunction with the provisions of this chapter,  in this Agreement.

8. In the cases provided for in this Exhibit C , EY will remain fully responsible for the confidentiality of the information (whether Personal Data or not) shared.

9. The Parties shall adopt technical and administrative (organizational) security measures capable of ensuring the privacy, confidentiality, availability, and integrity of the Personal Data subject to any Processing, under the terms established in the Applicable Data Protection Legislation. Such measures should be evaluated and tested periodically so that they are effective and constantly improved.

10. Whenever applicable, the Parties shall cooperate with each other within the limits of their activities to ensure compliance with the exercise of rights by the Personal Data Subjects, as well as for obligations or requests imposed by competent government authorities, including, but not limited to, the ANPD, in compliance with the Applicable Data Protection Legislation.



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

11. Under the terms of the clause above, the Parties shall notify each other, within a maximum period of twenty-four (24) hours from the date of knowledge, in the event of receipt of a request/requisition by the Personal Data Subject, when related to any Processing activity carried out in the context of this Agreement, as well as share the content of the response sent to the Data Subject,  when so requested by the other Party.

12. If one of the Parties is the recipient of any court order or official communication that determines the provision or disclosure of Personal Data Processed under its responsibility, it must pay attention to the provision of paragraph 6 of this Agreement.

13. Pursuant to the clause above, the notice must contain, at a minimum, sufficient information to enable the other Party to comply with any requirements imposed by Applicable Data Protection Legislation, including, but not limited to, (i) the date and time of the event; (ii) Personal Data affected by the event; (iii) number of Data Subjects affected by the event; (iv) possible consequences and impacts of the event; (v) mitigating measures adopted to contain damages.

14. The Parties shall keep a record of Security Incidents, which contains, at a minimum, a description of (i) the nature of the event; (ii) the consequences of the event; and (iii) the measures taken or proposed by the Parties to respond to and remedy the Security Incident.

15. The Parties shall not disclose any information about the Security Incident, pursuant to the above clauses, unless expressly agreed between them, or there is a legal or regulatory obligation to do so, or as determined by any governmental authority, pursuant to Applicable Data Protection Legislation.

16.      Where notification of the Security Incident is required, both Parties shall approve the communication, which shall be provided by the Party responsible for the Security Incident.

17. For effective communication between the Parties and to obtain further information about any Security Incident, the Parties indicate below the contact details of their respective Data Protection Officers/DPOs:

· EY – data.protection@br.ey.com, e

· Client – dpo@voegol.com.br.

18. By entering into this Agreement, EY declares to be aware of and authorizes, by scheduling at least 10 (business days) in advance of the date of receipt of the notification, the performance of audits on its documents and/or internal procedures related to its privacy and personal data governance program that are necessary to complement or complete the analyses and certifications of the Client or the competent authority, access to EY's physical premises and systems is expressly prohibited, and the Client bears all costs due to this audit.



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

18.1. In the event of identification of inconsistencies or irregularities when conducting audits documentary, the Client shall notify EY of such conclusion in a reasoned manner, allowing EY to carry out its analyses and provide for the containment, correction, remediation, restoration and prevention of security, proving to the Client, if requested and within a period not exceeding 10 (business days) from the date of receipt of the notification, the mitigating and remedial measures adopted, unless EY does not agree with the conclusion, at which time it will forward its opinion to the Client, with due justification as to why it understands that there is no action to be taken.

19. The Parties shall indemnify, defend and hold harmless the other Party and/or its affiliates, subsidiaries, from any and all liability, loss, claim, damage, penalty, expense, fines, pain and suffering, costs of remediation efforts, attorneys' fees and costs arising out of or related to any third party action, claim or allegation, including, but not limited to, any regulatory or governmental authority, arising out of non-compliance with this Agreement and/or non-compliance with Applicable Data Protection Legislation, provided that it is duly proven.

20. In the event that the ANPD imposes sanctions on the Parties related to this Agreement, and the guilt, willful misconduct or other element of responsibility of one of the Parties is proven, the Party that has caused the sanction shall indemnify the other Party, in addition to any costs and expenses incurred by the injured Party throughout the administrative proceeding.

21. This Agreement does not create joint and several liability between the Parties for any penalties related to the Processing activities carried out in their context, and each Party shall be held individually liable to the extent of its activities.

22. The indemnification obligations under this chapter are in addition to, and do not exclude, any indemnification obligation contained in the other chapters of this Agreement.

23. Intentionally Omitted.

24. If the Client requires EY to access or use the Client's or the third party's systems or devices, EY shall have no responsibility for the information security controls (confidentiality, availability and integrity), security or data protection of such systems or devices or for their performance or compliance with the Client's requirements or applicable law.

25. To facilitate the performance of the Services, EY may provide access to or make available technology-enabled collaboration tools and platforms to Client's employees or third parties acting on or at Client's request. Customer shall be responsible for all such person's compliance with the terms applicable to their use of such tools and platform.



São Paulo Corporate Towers
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

**- Exhibit D -**
**EY TECHNICAL AND COMMERCIAL PROPOSAL**







**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000







**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000





## **Exhibit C**

**Supplemental Expense Detail**

| Employee | Transaction Date | Transaction Type | Description | Total in USD |
|---|---|---|---|---|
| Rodrigo Santos | 06 Jun 2024 | Parking | Parking in customer visit | 3.93 |
| Paulo Roberto Moreira | 06 Jun 2024 | Parking | Parking in customer visit | 6.21 |
| Rodrigo Santos | 13 Jun 2024 | Parking | Mileage | 4.84 |
| Carlos Jose | 13 Jun 2024 | Parking | Mileage | 3.92 |
| Carlos Jose | 13 Jun 2024 | Parking | Parking in customer visit | 6.21 |
| Rodrigo Santos | 13 Jun 2024 | Parking | Parking in customer visit | 6.21 |
| Pedro Rivellino | 13 Jun 2024 | Parking | Mileage | 4.15 |
| Pedro Rivellino | 13 Jun 2024 | Parking | Parking in customer visit | 7.98 |
| Cleyner Fonseca | 18 Jun 2024 | Meals | Meals due to overtime worked | 2.64 |
| Cleyner Fonseca | 18 Jun 2024 | Meals | Meals due to overtime worked | 5.30 |
| Cleyner Fonseca | 18 Jun 2024 | Ground transportation | Taxi/uber in travel due to inventory/flight tracking procedures | 3.68 |
| Cleyner Fonseca | 18 Jun 2024 | Ground transportation | Taxi/uber in travel due to inventory/flight tracking procedures | 16.83 |
| Cleyner Fonseca | 19 Jun 2024 | Meals | Meals due to overtime worked | 4.43 |
| Cleyner Fonseca | 19 Jun 2024 | Ground transportation | Taxi/uber in travel due to inventory/flight tracking procedures | 3.94 |
| Cleyner Fonseca | 19 Jun 2024 | Ground transportation | Taxi/uber in travel due to inventory/flight tracking procedures | 21.27 |
| Henrico Bruxela | 10 Jul 2024 | Ground transportation | Taxi/uber due to overtime | 10.28 |
| Henrico Bruxela | 10 Jul 2024 | Ground transportation | Taxi/uber due to overtime | 27.93 |
| Ariane Freitas | 15 Jul 2024 | Parking | Parking in customer visit | 7.22 |
| Gabriel Pais | 17 Jul 2024 | Ground transportation | Taxi/uber due to overtime | 6.10 |
| Rodrigo Santos | 17 Jul 2024 | Parking | Mileage | 5.16 |
| Rodrigo Santos | 17 Jul 2024 | Parking | Parking in customer visit | 7.22 |
| Rodrigo Santos | 18 Jul 2024 | Parking | Mileage | 5.16 |
| Gabriel Pais | 22 Jul 2024 | Ground transportation | Taxi/uber due to overtime | 5.61 |
| Pedro Nascimento | 23 Jul 2024 | Ground transportation | Taxi/uber due to overtime | 6.20 |
| Pedro Nascimento | 23 Jul 2024 | Meals | Meals due to overtime worked | 10.89 |
| Pedro Rivellino | 23 Jul 2024 | Meals | Meals due to overtime worked | 9.90 |
| Rodrigo Barone | 23 Jul 2024 | Ground transportation | Taxi/uber due to overtime | 8.94 |
| Rodrigo Barone | 23 Jul 2024 | Meals | Meals due to overtime worked | 14.04 |
| Aparecida Estevão | 23 Jul 2024 | Ground transportation | Taxi/uber due to overtime | 10.69 |
| Aparecida Estevão | 23 Jul 2024 | Meals | Meals due to overtime worked | 8.79 |
| Haroldo Vinhas | 23 Jul 2024 | Ground transportation | Taxi/uber due to overtime | 5.94 |
| Haroldo Vinhas | 23 Jul 2024 | Meals | Meals due to overtime worked | 11.87 |

| Gabriel Pais | 23 Jul 2024 | Parking | Parking in customer visit | 5.41 |
|---|---|---|---|---|
| Ariane Freitas | 23 Jul 2024 | Ground transportation | Taxi/uber due to overtime | 7.21 |
| Pedro Rivellino | 23 Jul 2024 | Ground transportation | Taxi/uber due to overtime | 6.06 |
| Tereza Silva | 23 Jul 2024 | Ground transportation | Taxi/uber due to overtime | 7.21 |
| Pedro Nascimento | 24 Jul 2024 | Meals | Meals due to overtime worked | 10.68 |
| Pedro Rivellino | 24 Jul 2024 | Parking | Mileage | 4.22 |
| Pedro Rivellino | 24 Jul 2024 | Parking | Parking in customer visit | 8.12 |
| Pedro Nascimento | 24 Jul 2024 | Ground transportation | Taxi/uber due to overtime | 8.51 |
| Ariane Freitas | 24 Jul 2024 | Parking | Parking in customer visit | 7.22 |
| Rodrigo Santos | 24 Jul 2024 | Parking | Mileage | 5.16 |
| Rodrigo Santos | 24 Jul 2024 | Parking | Parking in customer visit | 7.22 |
| Pedro Rivellino | 25 Jul 2024 | Parking | Mileage | 4.22 |
| Pedro Rivellino | 25 Jul 2024 | Parking | Parking in customer visit | 8.12 |
| Gabriel Pais | 25 Jul 2024 | Meals | Meals due to overtime worked | 12.39 |
| Gabriel Pais | 25 Jul 2024 | Parking | Parking in customer visit | 8.12 |
| Pedro Nascimento | 25 Jul 2024 | Ground transportation | Taxi/uber due to overtime | 6.39 |
| Rodrigo Santos | 25 Jul 2024 | Parking | Mileage | 5.16 |
| Rodrigo Santos | 25 Jul 2024 | Parking | Parking in customer visit | 7.22 |
| Pedro Rivellino | 26 Jul 2024 | Parking | Mileage | 4.22 |
| Pedro Rivellino | 26 Jul 2024 | Parking | Parking in customer visit | 8.12 |
| Gabriel Sampaio | 26 Jul 2024 | Ground transportation | Taxi/uber in travel due to inventory/flight tracking procedures | 10.27 |
| Gabriel Sampaio | 26 Jul 2024 | Ground transportation | Taxi/uber in travel due to inventory/flight tracking procedures | 5.97 |
| Gabriel Pais | 26 Jul 2024 | Parking | Parking in customer visit | 8.12 |
| Rodrigo Santos | 26 Jul 2024 | Parking | Mileage | 5.16 |
| Rodrigo Santos | 26 Jul 2024 | Parking | Parking in customer visit | 7.22 |
| Gabriel Sampaio | 26 Jul 2024 | Meals | Lunch (in inventory procedures) | 12.97 |
| Gabriel Sampaio | 26 Jul 2024 | Meals | Lunch (in inventory procedures) | 6.67 |
| Pedro Rivellino | 29 Jul 2024 | Parking | Mileage | 4.22 |
| Pedro Rivellino | 29 Jul 2024 | Parking | Parking in customer visit | 8.12 |
| Gabriel Pais | 29 Jul 2024 | Ground transportation | Taxi/uber due to overtime | 7.22 |
| Tecia Souza | 29 Jul 2024 | Ground transportation | Taxi/uber due to overtime | 9.20 |
| Rodrigo Santos | 29 Jul 2024 | Parking | Parking in customer visit | 7.22 |
| Rodrigo Santos | 29 Jul 2024 | Parking | Mileage | 6.10 |

| | | | | |
|---|---|---|---|---|
| Paulo Roberto Moreira | 29 Jul 2024 | Parking | Parking in customer visit | 6.31 |
| Pedro Nascimento | 29 Jul 2024 | Ground transportation | Taxi/uber due to overtime | 5.77 |
| Haroldo Vinhas | 30 Jul 2024 | Meals | Meals due to overtime worked | 13.85 |
| Haroldo Vinhas | 30 Jul 2024 | Meals | Meals due to overtime worked | 3.42 |
| Tecia Souza | 30 Jul 2024 | Meals | Meals due to overtime worked | 8.26 |
| Tecia Souza | 30 Jul 2024 | Ground transportation | Taxi/uber due to overtime | 7.58 |
| Gabriel Pais | 30 Jul 2024 | Parking | Parking in customer visit | 5.41 |
| Haroldo Vinhas | 30 Jul 2024 | Ground transportation | Taxi/uber due to overtime | 6.00 |
| Rodrigo Santos | 30 Jul 2024 | Ground transportation | Taxi/uber due to overtime | 5.55 |
| Rodrigo Santos | 30 Jul 2024 | Meals | Meals due to overtime worked | 17.68 |
| Pedro Nascimento | 30 Jul 2024 | Ground transportation | Taxi/uber due to overtime | 7.49 |
| Pedro Nascimento | 30 Jul 2024 | Meals | Meals due to overtime worked | 10.81 |
| Rodrigo Barone | 30 Jul 2024 | Ground transportation | Taxi/uber due to overtime | 4.17 |
| Rodrigo Santos | 31 Jul 2024 | Parking | Parking in customer visit | 7.22 |
| Rodrigo Santos | 31 Jul 2024 | Parking | Mileage | 5.63 |
| Pedro Nascimento | 01 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 5.89 |
| Rodrigo Santos | 01 Aug 2024 | Parking | Parking in customer visit | 7.22 |
| Rodrigo Santos | 01 Aug 2024 | Parking | Mileage | 5.63 |
| Gabriel Pais | 01 Aug 2024 | Parking | Parking in customer visit | 8.12 |
| Haroldo Vinhas | 01 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 6.57 |
| Tecia Souza | 01 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 10.39 |
| Gabriel Pais | 01 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 5.97 |
| Gabriel Pais | 02 Aug 2024 | Parking | Parking in customer visit | 5.41 |
| Rodrigo Barone | 05 Aug 2024 | Meals | Meals due to overtime worked | 12.79 |
| Pedro Nascimento | 05 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 10.08 |
| Pedro Nascimento | 05 Aug 2024 | Meals | Meals due to overtime worked | 12.05 |
| Rodrigo Barone | 05 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 7.92 |
| Rodrigo Santos | 05 Aug 2024 | Meals | Meals due to overtime worked | 10.81 |
| Haroldo Vinhas | 05 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 5.83 |
| Tecia Souza | 05 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 7.58 |
| Haroldo Vinhas | 05 Aug 2024 | Meals | Meals due to overtime worked | 11.87 |
| Lucas Bezerra | 05 Aug 2024 | Ground transportation | Taxi/uber in travel due to inventory/flight tracking procedures | 7.80 |
| Lucas Bezerra | 05 Aug 2024 | Ground transportation | Taxi/uber in travel due to inventory/flight tracking procedures | 6.73 |

| Gabriel Pais | 05 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 9.53 |
|---|---|---|---|---|
| Rodrigo Barone | 06 Aug 2024 | Meals | Meals due to overtime worked | 14.94 |
| Pedro Nascimento | 06 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 10.34 |
| Pedro Nascimento | 06 Aug 2024 | Meals | Meals due to overtime worked | 12.05 |
| Gabriel Pais | 06 Aug 2024 | Parking | Parking in customer visit | 5.41 |
| Haroldo Vinhas | 06 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 5.92 |
| Tecia Souza | 06 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 7.76 |
| Tecia Souza | 06 Aug 2024 | Meals | Meals due to overtime worked | 8.26 |
| Haroldo Vinhas | 06 Aug 2024 | Meals | Meals due to overtime worked | 11.87 |
| Haroldo Vinhas | 06 Aug 2024 | Meals | Meals due to overtime worked | 3.42 |
| Rodrigo Barone | 06 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 7.15 |
| Aparecida Estevão | 07 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 12.07 |
| Rodrigo Barone | 07 Aug 2024 | Meals | Meals due to overtime worked | 13.27 |
| Rodrigo Barone | 07 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 6.71 |
| Heitor Barbosa | 07 Aug 2024 | Parking | Mileage | 1.64 |
| Heitor Barbosa | 07 Aug 2024 | Parking | Mileage | 1.64 |
| Heitor Barbosa | 07 Aug 2024 | Parking | Parking in customer visit | 6.31 |
| Tereza Silva | 07 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 11.12 |
| Pedro Rivellino | 07 Aug 2024 | Parking | Mileage | 4.22 |
| Pedro Rivellino | 07 Aug 2024 | Parking | Parking in customer visit | 8.12 |
| Pedro Nascimento | 07 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 8.30 |
| Rodrigo Santos | 08 Aug 2024 | Parking | Mileage | 5.39 |
| Rodrigo Santos | 08 Aug 2024 | Parking | Parking in customer visit | 7.22 |
| Haroldo Vinhas | 08 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 3.11 |
| Gabriel Pais | 08 Aug 2024 | Parking | Parking in customer visit | 8.12 |
| Heitor Barbosa | 08 Aug 2024 | Parking | Parking in customer visit | 6.31 |
| Heitor Barbosa | 08 Aug 2024 | Parking | Mileage | 1.64 |
| Heitor Barbosa | 08 Aug 2024 | Parking | Mileage | 1.64 |
| Henrico Bruxela | 08 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 15.60 |
| Rodrigo Santos | 09 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 3.49 |
| Haroldo Vinhas | 09 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 3.11 |
| Tecia Souza | 09 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 8.77 |
| Tecia Souza | 09 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 4.93 |

| Haroldo Vinhas | 09 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 6.17 |
|---|---|---|---|---|
| Pedro Rivellino | 09 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 13.17 |
| Pedro Nascimento | 09 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 10.45 |
| Rodrigo Santos | 10 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 3.38 |
| Haroldo Vinhas | 10 Aug 2024 | Meals | Lunch due to work on weekends | 40.00 |
| Haroldo Vinhas | 10 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 6.09 |
| Haroldo Vinhas | 10 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 5.62 |
| Rodrigo Santos | 12 Aug 2024 | Parking | Mileage | 5.39 |
| Rodrigo Santos | 12 Aug 2024 | Parking | Parking in customer visit | 7.22 |
| Gabriel Pais | 12 Aug 2024 | Parking | Parking in customer visit | 8.12 |
| Paulo Roberto Moreira | 12 Aug 2024 | Parking | Parking in customer visit | 6.31 |
| Pedro Rivellino | 12 Aug 2024 | Parking | Mileage | 4.22 |
| Pedro Rivellino | 12 Aug 2024 | Parking | Parking in customer visit | 8.12 |
| Pedro Nascimento | 12 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 6.01 |
| Pedro Nascimento | 12 Aug 2024 | Meals | Meals due to overtime worked | 11.50 |
| Tereza Silva | 13 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 8.83 |
| Pedro Nascimento | 13 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 6.44 |
| Pedro Nascimento | 13 Aug 2024 | Meals | Meals due to overtime worked | 15.58 |
| Aparecida Estevão | 14 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 14.54 |
| Rodrigo Santos | 14 Aug 2024 | Parking | Parking in customer visit | 7.22 |
| Rodrigo Santos | 14 Aug 2024 | Parking | Mileage | 5.39 |
| Rodrigo Santos | 14 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 2.96 |
| Heitor Barbosa | 14 Aug 2024 | Parking | Parking in customer visit | 6.31 |
| Heitor Barbosa | 14 Aug 2024 | Parking | Mileage | 1.64 |
| Heitor Barbosa | 14 Aug 2024 | Parking | Mileage | 1.64 |
| Tecia Souza | 14 Aug 2024 | Meals | Meals due to overtime worked | 12.61 |
| Tecia Souza | 14 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 11.26 |
| Pedro Nascimento | 14 Aug 2024 | Ground transportation | Taxi/uber due to overtime | 8.62 |
| Rodrigo Santos | 27 Aug 2024 | Meals | Meals due to overtime worked | 6.84 |
| Pedro Rivellino | 28 Aug 2024 | Parking | Parking in customer visit | 8.12 |
| Pedro Rivellino | 28 Aug 2024 | Parking | Mileage | 4.22 |
| Rodrigo Barone | 03 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 9.61 |
| Rodrigo Santos | 04 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 6.28 |

| | | | | |
|---|---|---|---|---|
| Pedro Rivellino | 05 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 7.95 |
| Pedro Rivellino | 05 Sep 2024 | Parking | Mileage in customer visit | 4.13 |
| Rodrigo Santos | 10 Sep 2024 | Meals | Meals due to overtime worked | 8.79 |
| Haroldo Vinhas | 10 Sep 2024 | Meals | Meals due to overtime worked | 11.62 |
| Haroldo Vinhas | 10 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 6.35 |
| Rodrigo Santos | 11 Sep 2024 | Meals | Meals due to overtime worked | 8.79 |
| Pedro Rivellino | 11 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 7.95 |
| Pedro Rivellino | 11 Sep 2024 | Parking | Mileage in customer visit | 4.13 |
| Rodrigo Barone | 11 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 8.70 |
| Rodrigo Barone | 11 Sep 2024 | Meals | Meals due to overtime worked | 14.09 |
| Haroldo Vinhas | 11 Sep 2024 | Meals | Meals due to overtime worked | 11.62 |
| Gabriel Pais | 11 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 8.49 |
| Haroldo Vinhas | 11 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 6.32 |
| Rodrigo Barone | 12 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 8.39 |
| Rodrigo Barone | 12 Sep 2024 | Meals | Meals due to overtime worked | 11.83 |
| Haroldo Vinhas | 12 Sep 2024 | Meals | Meals due to overtime worked | 16.95 |
| Haroldo Vinhas | 12 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 5.49 |
| Gabriel Pais | 12 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 5.64 |
| Rodrigo Barone | 13 Sep 2024 | Meals | Meals due to overtime worked | 9.91 |
| Rodrigo Barone | 13 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 8.05 |
| Haroldo Vinhas | 13 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 3.83 |
| Haroldo Vinhas | 13 Sep 2024 | Meals | Meals due to overtime worked | 11.46 |
| Gabriel Pais | 13 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 4.66 |
| Rodrigo Barone | 16 Sep 2024 | Meals | Meals due to overtime worked | 14.62 |
| Aparecida Estevão | 16 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 11.81 |
| Rodrigo Barone | 16 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 8.28 |
| Haroldo Vinhas | 16 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 5.54 |
| Haroldo Vinhas | 16 Sep 2024 | Meals | Meals due to overtime worked | 11.62 |
| Rodrigo Barone | 17 Sep 2024 | Meals | Meals due to overtime worked | 14.09 |
| Rodrigo Barone | 17 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 9.29 |
| Haroldo Vinhas | 17 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 5.50 |
| Haroldo Vinhas | 17 Sep 2024 | Meals | Meals due to overtime worked | 11.62 |
| Gabriel Pais | 17 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 5.60 |

| Rodrigo Barone | 18 Sep 2024 | Meals | Meals due to overtime worked | 13.40 |
|---|---|---|---|---|
| Aparecida Estevão | 18 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 10.40 |
| Rodrigo Barone | 18 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 11.58 |
| Haroldo Vinhas | 18 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 3.30 |
| Pedro Rivellino | 20 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 5.21 |
| Haroldo Vinhas | 20 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 4.83 |
| Wilton Bezerra | 24 Sep 2024 | Meals | Meal due to flight tracker procedures | 9.17 |
| Wilton Bezerra | 24 Sep 2024 | Ground transportation | Taxi/uber due to flight tracker procedures | 7.22 |
| Wilton Bezerra | 24 Sep 2024 | Ground transportation | Taxi/uber due to flight tracker procedures | 4.59 |
| Wilton Bezerra | 24 Sep 2024 | Ground transportation | Taxi/uber due to flight tracker procedures | 2.64 |
| Carlos Jose | 25 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 6.00 |
| Carlos Jose | 25 Sep 2024 | Parking | Mileage in customer visit | 3.90 |
| Rodrigo Santos | 25 Sep 2024 | Ground transportation | Taxi/uber due to overtime | 6.00 |
| **Total** | | | | **1,667.33** |