## **Exhibit A**

Confirmation Hr'g Tr.

*In re CareMax, Inc.*, No. 24-80093 (MVL) (Bankr. N.D. Tex. Jan. 28, 2025)

```
                    IN THE UNITED STATES BANKRUPTCY COURT
                    FOR THE NORTHERN DISTRICT OF TEXAS
                             DALLAS DIVISION

                                      )    Case No. 24-80093-mvl-11
      In Re:                          )
                                      )    Dallas, Texas
      CAREMAX, INC., et al.,          )    January 28, 2025
                                      )    9:30 a.m. Docket
           Debtors.                   )
                                      )    OMNIBUS HEARING
      _____)

                       TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE MICHELLE V. LARSON,
                   UNITED STATES BANKRUPTCY JUDGE.

      APPEARANCES:

      For the Debtors:              Jason L. Hufendick
                                    SIDLEY AUSTIN, LLP
                                    One South Dearborn
                                    Chicago, IL  60603
                                    (312) 853-0826

      For the Debtors:              Thomas Robert Califano
                                    Anthony R. Grossi
                                    Jon Muenz
                                    SIDLEY AUSTIN, LLP
                                    787 7th Avenue
                                    New York, NY  10019
                                    (212) 839-5300

      For the Debtors:              Juliana Hoffman
                                    SIDLEY AUSTIN, LLP
                                    2021 McKinney Avenue, Suite 2000
                                    Dallas, TX  75201
                                    (214) 969-3581

      For the Debtors,             John D. Gaither
      Conflicts Counsel:           Douglas J. Buncher
                                    NELIGAN, LLP
                                    4851 LBJ Freeway, Suite 700
                                    Dallas, TX  75244
                                    (214) 840-5300
```

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 3 of 107

2

```
1    APPEARANCES, cont'd.:

2    For the Official Committee    Judith Elkin
     of Unsecured Creditors:       Robert J. Feinstein
3                                   John Morris
                                    PACHULSKI STANG ZIEHL & JONES
4                                   780 Third Avenue, 34th Floor
                                    New York, NY  10017-2024
5                                   (212) 561-7781

6    For the Official Committee    Bradford J. Sandler
     of Unsecured Creditors:       PACHULSKI STANG ZIEHL & JONES
7                                   919 North Market Street,
                                      17th Floor
8                                   Wilmington, DE  19801
                                    (484) 275-5442
9
     For the Official Committee    S. Jason Teele
10   of Unsecured Creditors:       SILLS CUMMIS & GROSS, P.C.
                                    The Legal Center
11                                  One Riverfront Plaza
                                    Newark, NJ  07102
12                                  (973) 643-4779

13   For ClareMedica Viking:       Cassandra A. Shoemaker
                                    MCGUIRE WOODS
14                                  2601 Olive Street, Suite 2100
                                    Dallas, TX  75201
15                                  (469) 372-3931

16   For ClareMedica Viking:       Demetra Liggins
                                    MCGUIRE WOODS
17                                  Texas Tower
                                    845 Texas Avenue, 24th Floor
18                                  Houston, TX  77002-2906
                                    (713) 353-6661
19
     For ClareMedica Viking:       Shawn R. Fox
20                                  MCGUIRE WOODS
                                    1251 Avenue of the Americas,
21                                    20th Floor
                                    New York, NY  10020-1104
22                                  (212) 548-2165

23   For ClareMedica Viking:       Jacob R. Broadway
                                    MCGUIRE WOODS
24                                  Tower Two-Sixty
                                    260 Forbes Avenue, Suite 1800
25                                  Pittsburgh, PA  15222-3142
                                    (412) 667-6017
```

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 4 of 107

3

```
 1   APPEARANCES, cont'd.:

 2   For Suzanne A. Koenig,        Casey Roy
     Patient Care Ombudsman:       ROSS, SMITH & BINFORD, P.C.
 3                                 Plaza of the Americas
                                   700 N. Pearl Street, Suite 1610
 4                                 Dallas, TX  75201
                                   (214) 377-7879
 5
     For the U.S. Department of    I-Heng Hsu
 6   Justice:                      UNITED STATES DEPARTMENT OF
                                     JUSTICE, CIVIL DIVISION
 7                                 1100 L Street NW, Room 7102
                                   Washington, DC  20005-4035
 8                                 (202) 616-3619

 9   For the Securities and        Jolene M. Wise
     Exchange Commission:          UNITED STATES SECURITIES AND
10                                 EXCHANGE COMMISSION
                                   175 W. Jackson Blvd., Suite 1450
11                                 Chicago, IL  60604
                                   (312) 886-3948
12
     For Atlantic Specialty        Duane J. Brescia
13   Insurance Company:            CLARK HILL, PLC
                                   3711 South Mopac Expressway,
14                                   Bldg. One, Suite 500
                                   Austin, TX  78746
15                                 (512) 499-3647

16   For the Ad Hoc Group of       Matthew M. Roose
     Holders of Term Loans:        ROPES & GRAY, LLP
17                                 1211 Avenue of the Americas
                                   New York, NY  10036
18                                 (212) 596-9788

19   For the Ad Hoc Group of       Robbie Clarke
     Unaffiliated Holders of       KELLY HART & HALLMAN, LLP
20   Term Loans:                   201 Main Street, Suite 2500
                                   Fort Worth, TX 76102
21                                 (817) 878-3516

22   For PAW Holdings, LLC:        C. Andrew Roy
                                   WINDERWEEDLE, HAINES, WARD &
23                                   WOODMAN, P.A.
                                   329 Park Avenue North,
24                                   Second Floor
                                   P.O. Box 880
25                                 Winter Park, FL  32790-0880
                                   (407) 423-4246
```

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban    Pg 5 of 107

4

```
 1   APPEARANCES, cont'd.:

 2   For Certain Landlord          Steven Yachik
     Creditors:                    KELLEY DRYE & WARREN, LLP
 3                                 3 World Trade Center
                                   175 Greenwich Street
 4                                 New York, NY 10007
                                   (212) 808-7568
 5
     For Cigna Health & Life       Jeffrey C. Wisler
 6   Insurance:                    CONNOLLY GALLAGHER, LLP
                                   1201 North Market Street,
 7                                    20th Floor
                                   Wilmington, DE  19801
 8                                 (302) 888-6258

 9   For Cardinal Health:          Terri Jane Freedman
                                   CSG LAW
10                                 105 Eisenhower Parkway
                                   Roseland, NJ 07068
11                                 (973) 530-2152

12   For Preferred Care            Rachael L. Smiley
     Network, Inc., et al.:        FERGUSON BRASWELL FRASER KUBASTA,
13                                    P.C.
                                   2500 Dallas Parkway, Suite 600
14                                 Plano, TX  75093
                                   (972) 826-4457
15
     For Preferred Care            Nicole Lapenta
16   Network, Inc., et al.:        SHIPMAN & GOODWIN, LLP
                                   One Constitution Plaza
17                                 Hartford, CT  06103-1919
                                   (860) 251-5054
18
     For Thompson Logistics        Deborah M. Perry
19   Assets, LLC:                  MUNSCH HARDT KOPF & HARR, P.C.
                                   3800 Lincoln Plaza
20                                 500 North Akard Street
                                   Dallas, TX  75201-6659
21                                 (214) 855-7565

22   For Humana, et al.:           Sarah M. Mattingly
                                   DINSMORE & SHOHL, LLP
23                                 101 S. Fifth Street, Suite 2500
                                   Louisville, KY  40202
24                                 (859) 425-1096

25
```

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 6 of 107

5

```
 1   APPEARANCES, cont'd.:

 2   For Cigna Health and        Jeffrey C. Wisler
     Life Insurance Company:     CONNOLLY GALLAGHER, LLP
 3                               1201 N. Market Street, 20th Floor
                                 Wilmington, DE  19801
 4                               (302) 757-7300

 5   For Kimco Realty            Michelle E. Shriro
     Corporation:               SINGER & LEVICK, P.C.
 6                               16200 Addison Road, Suite 140
                                 Addison, TX  75001
 7                               (972) 380-5533

 8   For Brady Health Buyer,     Peter A. Candel
     LLC, et al.:               KIRKLAND & ELLIS
 9                               333 West Wolf Point Plaza
                                 Chicago, IL  60654
10                               (312) 862-4092

11   For the United States       Meredyth Kippes
     Trustee:                    OFFICE OF THE UNITED STATES
12                                 TRUSTEE
                                 1100 Commerce Street, Room 976
13                               Dallas, TX  75242
                                 (214) 767-1079
14
     For Ross & Ross, Landlord   Jeremy Mack
15   Creditor:

16   For Jo Ann Johnson,         Jo Ann Rainbow Heart Johnson
     Pro Se:
17
     Recorded by:                Hawaii S. Jeng
18                               UNITED STATES BANKRUPTCY COURT
                                 1100 Commerce Street, 12th Floor
19                               Dallas, TX  75242
                                 (214) 753-2006
20
     Transcribed by:             Kathy Rehling
21                               311 Paradise Cove
                                 Shady Shores, TX  76208
22                               (972) 786-3063

23

24
            Proceedings recorded by electronic sound recording;
25              transcript produced by transcription service.
```

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 7 of 107

6

1          <u>DALLAS, TEXAS - JANUARY 28, 2025 - 10:28 A.M.</u>

2          THE CLERK:  All rise.  The United States Bankruptcy

3  Court for the Northern District of Texas, Dallas Division, is

4  now in session, the Honorable Michelle Larson presiding.

5          THE COURT:  Please be seated.  Good morning,

6  everyone.  We are here on our 9:30 docket.  We have one matter

7  on the docket this morning, and that is Case No. 24-80093,

8  CareMax, Inc.  I'll go ahead and take appearances for the

9  record, and I'll start with those in the courtroom, and then I

10  will announce the roll call that I have for WebEx, and then

11  any other folks who want to make an appearance can do so at

12  that time.

13      So, please, Mr. Grossi?

14          MR. GROSSI:  Good morning, Your Honor.  Anthony

15  Grossi, Sidley Austin, counsel for the Debtors, joined here

16  today by my partner Mr. Tom Califano, Mr. Jon Muenz, Mr. Jason

17  Hufendick, and Ms. Juliana Hoffman.  Thank you, Your Honor.

18          THE COURT:  All right.

19          MS. ELKIN:  Good morning, Your Honor.  Judith Elkin,

20  Pachulski Stang Ziehl & Jones, for the Official Committee of

21  Unsecured Creditors.  And I am joined by my partners Rob

22  Feinstein and John Morris, who are in the courtroom here.

23          THE COURT:  All right.

24          MS. ELKIN:  Thank you.  I think I have a couple of

25  partners on the phone, but I'll let you go through that list

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 8 of 107

7

1 | separately.

2 |      THE COURT:  Excellent.  Thank you.

3 |   Ms. Kippes?

4 |      MS. KIPPES:  Good morning, Your Honor.  Meredyth

5 | Kippes on behalf of the United States Trustee.

6 |      THE COURT:  Good morning.

7 |      MR. ROOSE:  Good morning, Your Honor.  Matthew Roose

8 | of Ropes & Gray on behalf of the First Lien Term Loan Lenders

9 | and DIP Lenders.  Thank you.

10 |      THE COURT:  Good morning.

11 |      MS. LIGGINS:  Good morning, Your Honor.  Demetra

12 | Liggins with McGuire Woods.  I also have in the courtroom with

13 | me my partner, Shawn Fox, and Cassandra Shoemaker.  We have

14 | some other lawyers on the phone.  We're on behalf of

15 | ClareMedica Viking.  Our client is also on the phone, Your

16 | Honor:  Ren Mullinix.

17 |      THE COURT:  Okay.  Thank you very much.

18 |      MS. LIGGINS:  Thank you.

19 |      MR. GAITHER:  Good morning, Your Honor.  John Gaither

20 | and Doug Buncher, conflicts counsel to the Debtors.

21 |      THE COURT:  Good morning.  It's been a while, Mr.

22 | Gaither.  Nice to see you guys.

23 |      MR. ROY:  Good morning.  Casey Roy with Ross, Smith &

24 | Binford on behalf of Suzanne Koenig, the Patient Care

25 | Ombudsman.

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 9 of 107

8

 1              THE COURT:  Thank you.  All right.  So that is

 2    everyone that is in the courtroom --

 3              MS. JOHNSON:  Hello.

 4              THE COURT:  -- that wishes to make an appearance.

 5    I'll now turn to the electronic roll and announce who's made

 6    an appearance that way.

 7         With Dinsmore & Shohl, I have Ms. Sarah Mattingly for

 8    Humana.

 9         On behalf of PAW Holdings, with the Winderweedle Haines

10    law firm, I have Christopher Andrew Roy.

11         On behalf of some Landlord creditors, with Kelley Drye, I

12    have Steven Yachik.  I hope I'm pronouncing that properly.

13         On behalf of Cigna Health & Life Insurance, with Connolly

14    Gallagher, I have Mr. Jeffrey Wisler.

15         On behalf of the United States of America, I have I-Heng

16    Hsu.

17         Also on behalf of the Official Committee of Unsecured

18    Creditors, with the Pachulski firm, I have Mr. Brad Sandler.

19    And with  Sills Cummis & Gross, I have Jason Teele.

20              MR. TEELE:  Good morning.

21              THE COURT:  On behalf of Cardinal Health, with CSG

22    Law, I have Terri Freedman.

23         On behalf of ClareMedica Viking, with McGuire Woods, I

24    have Mr. Jacob Broadway.

25         On behalf of -- I'm trying to skip over those that have

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 10 of 107

9

1  made appearances -- on behalf of the SEC, I have Ms. Jolene

2  Wise.

3          MS. JOHNSON:  Hello?

4          THE COURT:  On behalf of Preferred Care Network,

5  Inc., Preferred Care Partners, Inc., and UnitedHealthcare,

6  with Ferguson Braswell, I have Ms. Rachael Smiley.  And with

7  Shipman & Goodwin, I have Nicole Lapenta.

8      On behalf of Thompson Logistics Assets with the --

9          A VOICE:  If the courtroom deputy can hear us, the

10  virtual participants have lost audio.

11          THE COURT:  Okay.  Thank you very much for letting us

12  know.

13          MS. JOHNSON:  Hello?  Hello?

14          THE COURT:  All right.  Let me see if I can -- I've

15  got some folks in the courtroom with the Court that are

16  listening in, so I can try to test it.

17          MS. JOHNSON:  Hello.  My name is Jo Ann Rainbow Heart

18  Johnson, if anyone can hear me.

19          A VOICE:  I can hear you, but it seems like the

20  Court's line is on mute.

21          MS. JOHNSON:  Okay.

22      (Pause.)

23          OPERATOR:  This meeting is being recorded and

24  summarized.

25      (Pause.)

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban    Pg 11 of 107

10

1              THE COURT:  All right.  Are we good, Ms. Jeng?

2              THE CLERK:  Yes.

3              THE COURT:  All right.  So we're back on.  I have

4    heard from, again, my staff that folks were probably able to

5    hear me through the McGuireWoods group.  So I'll just repeat

6    that one, which is Mr. Jacob Broadway on behalf of ClareMedica

7    Viking.

8         With the SEC, it's Jolene Wise.

9              MS. JOHNSON:  Hello.  It's --

10             THE COURT:  I'm going to finish the roster I have.

11   Ms. Jolene Wise with the SEC.

12        With Preferred Care Network, Preferred Care Partners, and

13   UnitedHealthcare, with the Ferguson Braswell firm, I have Ms.

14   Rachael Smiley.  And with Shipman and Goodwin, I have Ms.

15   Nicole Lapenta.

16        On behalf of Thompson Logistics, with the Munsch Hardt law

17   firm, I have Ms. Deborah Perry.

18        On behalf of the Ad Hoc Group of Unaffiliated Holders of

19   Term Loans, with the Kelly Hart & Hallman law firm, I have

20   Robbie Clarke.

21        And the final name on my list is Ms. Michelle Shriro with

22   Singer & Levick on behalf of Kimco Realty Corporation.

23        Is there anyone on WebEx that would like to make an

24   appearance that I haven't called.

25             MS. JOHNSON:  Yes, please.

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 12 of 107

11

1          THE COURT:  Please proceed.

2          MS. JOHNSON:  My name is Jo Ann Rainbow Heart

3    Johnson.  I'm a patient and a victim and am seeking up to a

4    million dollars for being illegally Baker Act-ed.  And I just

5    want to explain quickly that they -- they gave me the wrong

6    records to a different patient.  They had access to other

7    patients' documents inside of an activity cart.

8          THE COURT:  Okay.

9          MS. JOHNSON:  People left their records laying out.

10          THE COURT:  Ms. Johnson?  Ms. Johnson?

11          MS. JOHNSON:  Yes.  So I just want --

12          THE COURT:  Okay.  Well, all I'm doing at this point

13    is taking appearances.  And I have your --

14          MS. JOHNSON:  Okay.

15          THE COURT:  I have your name down.  So, as we go

16    through the appearances, I'll turn to you in a moment to see

17    kind of what your issues are.

18          MS. JOHNSON:  Okay.

19          THE COURT:  Have you participated in the bankruptcy

20    to date?

21          MS. JOHNSON:  I have filed notices and everything and

22    they've sent me the documents to file and that I was able to

23    participate in today's hearing.

24          THE COURT:  Okay.

25          MS. JOHNSON:  As a victim and -- I was advised.

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 13 of 107

12

1    That's how I was able to log in.  So, thank you, Your Honor.

2    I appreciate it.

3            THE COURT:  You're welcome, Ms. Johnson.

4        All right.  Is there anyone else who wishes to make an

5    appearance from WebEx?

6            MR. BRESCIA:  Yes.  Good morning, Your Honor.  This

7    is Duane Brescia with the law firm of Clark Hill on behalf of

8    Atlantic Specialty Insurance Company.  We did file a limited

9    objection, but I think it's resolved.

10           THE COURT:  Okay.  Thank you very much, Mr. Brescia.

11           MR. CANDEL:  Good morning, Your Honor.  Peter Candel

12   with Kirkland & Ellis on behalf of the ACO Purchaser.

13           THE COURT:  Good morning.  Anyone else who wishes to

14   make an appearance?

15           MR. MACK:  Good morning, Your Honor.  Jeremy Mack

16   with Ross & Ross, a Landlord creditor.

17           THE COURT:  Is Ross & Ross the firm or the creditor?

18           MR. MACK:  The creditor.

19           THE COURT:  Okay.  And your last name again?

20           MR. MACK:  Mack.  M-A-C-K.

21           THE COURT:  Thank you very much.

22       All right.  Anyone else?

23       All right.  We have a number of matters on the docket this

24   morning.  I've signed those unopposed orders and those agreed

25   orders and the orders that had certificates of no objection to

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 14 of 107

13

1  them after the running of --

2       (WebEx interruption.)

3           THE COURT:  -- of negative notice.

4      If you're on WebEx, please mute your line until you wish

5  to speak on a specific topic, because we're getting a little

6  feedback into the court.

7      So I was saying I have signed a number of them.  At least

8  a number of the employment orders have fallen off, and maybe a

9  few other last night.

10     So, with that, Mr. Grossi, I'll turn it over to your team

11 and you can tell us where we are, maybe give us a roadmap of

12 today.

13          MR. GROSSI:  Thank you, Your Honor.  Again, Anthony

14 Grossi; Sidley Austin; counsel to the Debtors, for the record.

15     We will not bury the lede and appreciate your time and

16 flexibility, Your Honor, this morning.  During the

17 adjournment, we were able to reach a resolution with the

18 Unsecured Creditors' Committee with respect to their

19 objections, and are pleased to announce that we have a

20 consensual Chapter 11 plan, subject to the objections on

21 behalf of the U.S. Trustee's Office and the SEC, which we'll

22 address shortly, plus any other parties in interest who raise

23 issues today.

24          THE COURT:  Sure.

25          MR. GROSSI:  Your Honor, these Chapter 11 cases are

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 15 of 107

14

1   an unequivocal success.  As we stated when we started these

2   Chapter 11 cases, our goals were to ensure patient continuity,

3   support our physicians, preserve jobs, and to prosecute a

4   comprehensive and orderly resolution of these healthcare

5   businesses.  Our proposed plan and our proposed confirmation

6   order accomplishes each of these objectives.

7       With respect to our core centers, we're moving forward to

8   close those sales with our stalking horse purchaser.  As

9   you'll recall, Your Honor, the core centers are those physical

10  units that house physicians and provide direct patient care.

11  No other bidder emerged for the core center assets, which we

12  believe is a reflection of the exhaustive prepetition

13  marketing process.

14      Similarly, while we were open for bids on our MSO business

15  line, no party came out of the woodwork with respect to those

16  assets, so we're moving forward to reorganize the Debtor

17  entities that comprise those businesses.  The MSO business

18  line is the support services for the former Steward physicians

19  and also a pathway to receive those MSSP payments.

20      As part of our sales process, certain -- two pharmacies

21  and one optometry clinic were identified as excluded assets.

22  We were able to react quickly, identify buyers, who happened

23  to be the resident pharmacist and optometrist at those

24  respective clinics.  We negotiated for consideration and were

25  able to transfer liabilities associated with those assets to

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 16 of 107

15

1   the buyers.  Net-net consideration to the estate and avoid

2   wind-down costs, so overall a success.

3            THE COURT:  It looks like it was like three that --

4            MR. GROSSI:  Three.  Exactly.

5            THE COURT:  Okay.

6            MR. GROSSI:  So, all in all, we have five separate

7   sales that are proposed to be approved as part of today's

8   confirmation order, which is an enormously positive result

9   that preserves jobs for the overwhelming majority of our

10  physicians, as well as ensures a virtual uninterrupted

11  transfer of care for our patients.

12       No party has objected to the approval of the sales.  We

13  have some cure objections, Your Honor, but our anticipation is

14  that we'll be able to resolve those in the ordinary course.

15           THE COURT:  Okay.  And most of the cure objections,

16  from my review of the agenda, were being punted.

17           MR. GROSSI:  Exactly.  Yes.

18           THE COURT:  But I'm sure there's a better word.

19           MR. GROSSI:  Yeah.  Exactly.  Exactly right, Your

20  Honor.

21       We're in ongoing discussions with those parties, but we're

22  -- we feel cautiously optimistic we'll be able to get there.

23       The result that we have today was not, by any stretch, a

24  foregone conclusion when we started this process, which was

25  well before we entered this courtroom.

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 17 of 107

16

1          THE COURT:  So it appeared.

2          MS. HAYES:  The Debtors, and notably the officers and

3    the directors, spent countless hours dedicating their time,

4    including their nights, their weekends, often at great

5    personal sacrifice.  I can attest, Your Honor, many times we

6    started conversations with an apology as they were stepping

7    out of birthday parties or dinners or canceling plans to

8    address issues.  We would simply not be here without their

9    dedication and support, so we thank them for that.

10         We'd also like to thank our disinterested director, Mr.

11   Ed Borkowski, who is here today, and we suspect after today

12   will be taking a long vacation from speaking to any lawyers

13   for a long period of time.

14         As it relates to the resolution with the Committee, I'm

15   going to read into the record the agreement that we have.

16         The Committee objections to the proposed disclosure

17   statement, the second amended plan, and the confirmation order

18   are resolved, including with respect to the Debtor and third-

19   party releases.  The Debtors, the Secured Lenders, and the

20   Committee have agreed to amend the confirmation order and the

21   second amended plan to provide that $2.9 million in the

22   aggregate to be funded into a segregated account for the

23   Creditors' Committee's allowed professional fees and

24   distribution to Class 3 Unsecured Creditors.  The Plan

25   Administrator will monetize any Unencumbered Assets, as

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 18 of 107

17

1  defined in the second amended plan, for the benefit of the

2  Class 3 Unsecured Creditors, using only funds in the general

3  unsecured segregated account and not the wind-down.  The

4  holders of the first lien debt claims agree to waive any

5  deficiency claims. The Creditors' Committee can select the

6  Plan Administrator but must be reasonably acceptable to the

7  holders of the first lien debt claims.  And the Debtors, the

8  wind-down amount will be capped at $2 million, with any

9  unspent wind-down amounts reverted back to holders of first

10  lien debt claims.  No part of the wind-down amount can be

11  spent monetizing unencumbered assets, and the Plan

12  Administrator to set up a segregated account for the MSSP

13  receivables, with the Plan Administrator distributing amounts

14  received to holders of the first lien debt claims.

15      I'll touch on process in a second with respect to how

16  we're going to take that record and convert it into a proposed

17  order for Your Honor.  But we do want to thank the Committee

18  for working with us to get to a resolution.  I also want to

19  thank the Secured Lenders and their advisors for supporting

20  the business and the process at every step of the way.

21      As it relates to the pending objections by the U.S.

22  Trustee and the SEC, we've briefed these in our papers, Your

23  Honor, so won't repeat all of the arguments, but did want to

24  highlight a few items.

25      The third-party releases are consensual.  Sixty-six

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 19 of 107

18

1    parties, which is almost twice as many as voted against the

2    plan, elected to opt out of the third-party releases.  Our

3    process worked.

4        The noticing of these parties is analogous to notices that

5    are routinely approved by state and federal courts, including

6    those located in Texas and New York.  And this is well

7    established -- this is a well-established process with well-

8    established law.  We're not breaking any new ground with

9    respect to our releases.

10       Further, we included a gatekeeper provision in our

11   proposed confirmation order to ensure that anyone who attempts

12   to use our third-party release beyond the bounds of its

13   purpose -- for example, to shield doctors from medical

14   malpractice claims -- will have to come before this Court and

15   Your Honor before attempting to do so.

16       As it relates to shareholder suits, predominantly all of

17   their claims are derivative and are being released as part of

18   the plan.  Further, they all received notice, had an

19   opportunity to opt out of the releases.  Several chose to do

20   so.  The scope of the release is supported by all economic

21   stakeholders, including the Unsecured Creditors' Committee.

22       Your Honor, we know that the U.S. Trustee would like to

23   cross-examine certain of our witnesses, so we're not going to

24   stand on ceremony.  We want to be very efficient with the

25   Court's time.

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 20 of 107

19

1      As it relates to process, subject to hearing arguments on

2   the third-party releases by the U.S. Trustee and the SEC and

3   any ruling on that point, our plan was to submit a revised

4   Chapter 11 plan and a confirmation order on certification of

5   counsel to the Court.  We're hoping to submit those documents

6   no later than the end of the day on Thursday, if not earlier,

7   subject to the Court's preference.  We have our proposed sales

8   slated to close on Monday, and so we would respectfully ask if

9   we could have an order entered by the end of the day Friday so

10  we can close those sales.

11      THE COURT:  I'm not on the bench on Friday, but I'll

12  certainly make time to review them and get signatures to you

13  on Friday.

14      MR. GROSSI:  Thank you, Your Honor.  And our goal

15  would be to try to beat that deadline.

16      THE COURT:  Of course, again, so long that they would

17  be under certification of counsel.

18      MR. GROSSI:  Absolutely.

19      Just a couple housekeeping items before I turn it over to

20  Ms. Kippes.  The Debtors filed an amended witness and exhibit

21  list at Docket 557.  We understand no party is contesting any

22  of these exhibits.  We are just asking to move the entire

23  exhibit list into the record.

24      THE COURT:  All right.  Do I have your exhibits?

25      MR. GROSSI:  I believe so, Your Honor.

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 21 of 107

20

1              MS. HOFFMAN:  Yes.

2         (Pause.)

3              THE COURT:  I'm kidding, Ms. Hoffman.  Take your

4    time.  Take your time.

5              MS. HOFFMAN:  May I approach, Your Honor?

6              THE COURT:  Yes, you may.

7         (Pause.)

8              THE COURT:  All right.  So, in terms of the record,

9    are these all found at 557?

10             MR. GROSSI:  They are, Your Honor.

11             THE COURT:  Okay.  All right.

12        Is there any objection to Debtors' 1 through 94?

13        All right.  Hearing no objection, Debtors' 1 through 94,

14   found at Docket 557, are hereby admitted.

15             MR. GROSSI:  Okay.  Thank you, Your Honor.

16        (Debtors' Exhibits 1 through 94 are admitted.)

17             MR. GROSSI:  We'll reserve for closing, but will cede

18   the podium to Ms. Kippes.

19             THE COURT:  All right.  Before I hear from Ms.

20   Kippes, does the Committee have anything further?  And then

21   I'll turn to Ms. Kippes.  And obviously by way of opening, but

22   if anybody wants to just kind of reserve their time for

23   evidence, that's fine as well.

24             MR. FEINSTEIN:  Thank you, Your Honor.  Robert

25   Feinstein; Pachulski Stand Ziehl & Jones; counsel for the

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 22 of 107

21

1   Official Creditors' Committee.

2      Your Honor, I can confirm that the Committee is onboard

3   with the settlement.  I think while the parties have disagreed

4   on many, many things over the past few weeks, we can agree

5   this was a hard-fought settlement.  And we reached it last

6   night.

7      I want to thank Mr. Roose for reaching out to us at 10:00,

8   10:30 last night with a new proposal that set us on a course

9   to settle today.  He and Mr. Grossi brought it home with my

10   partner, Mr. Sandler, who's on the line.  Very appreciative of

11   all their efforts.  Very pleased with the outcome.  And, as

12   indicated, we withdraw our objection and support confirmation

13   of the plan as revised.

14      I'm happy to answer any questions.

15          THE COURT:  All right.  I don't think I have any at

16   the moment.  I'll probably have some when I kind of sit down

17   with the order.  But I appreciate it.  Thank you so much.

18          MR. FEINSTEIN:  Thank you, Your Honor.

19          THE COURT:  Ms. Kippes?

20          MS. KIPPES:  Thank you, Your Honor.  Meredyth Kippes

21   on behalf of the United States Trustee.

22      I don't want to waste the Court's time right now with

23   making arguments with regard to the releases.  I will say that

24   the exculpation objection has been resolved because they pared

25   it back to *Highland*.

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 23 of 107

22

```
 1                THE COURT:  I saw that.

 2                MS. KIPPES:  And they have included in the I think

 3    most recent version of the proposed order the language we

 4    requested with regard to governmental claims.

 5                THE COURT:  Okay.

 6                MS. KIPPES:  So we are down to the third-party

 7    release issue.

 8                THE COURT:  Okay.  Thank you very much, Ms. Kippes.

 9                MS. KIPPES:  And I will want to --

10                THE COURT:  Yes, no, and I'll give you, obviously,

11    your time --

12                MS. KIPPES:  Yes.

13                THE COURT:  -- with the witnesses and then time in

14    closing.

15                MS. KIPPES:  Yes.

16                THE COURT:  I think it's probably best spent.

17                MS. KIPPES:  Yes.  I agree.  Thank you.

18                THE COURT:  All right.  Thank you.  Appreciate it.

19        All right.  Anyone else want to be heard by way of

20    opening?

21                MS. JOHNSON:  Your Honor, I don't want -- you want me

22    to wait, correct?  My name is Jo Ann Johnson.

23                THE COURT:  Mr. Grossi, I'd like to hear Ms. Johnson

24    out.  I'll swear her in and then hear her out with respect to

25    her position today.  And I think perhaps at that time, once we
```

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 24 of 107

23

1  hear her issues, query whether the time would be best spent of

2  having someone from your office get on the horn with Ms.

3  Johnson and see how we can best address her issues.  Because,

4  candidly, I have a feeling it's not necessarily straight-on

5  confirmation-related, but I certainly want to give her her

6  opportunity to speak.

7         MR. GROSSI:  Absolutely, Your Honor.

8         THE COURT:  Okay.  Thank you, Mr. Grossi.

9     So, Ms. Johnson, --

10        MS. JOHNSON:  Thank you, Your Honor.

11        THE COURT:  -- I'm going to go ahead and I'm going to

12  swear you in as I would a witness, given that you're not

13  represented here by counsel today.  And then I'll let you give

14  the Court whatever evidence that you would like to give me.

15  And then what I'm going to ask is that you reach out to the

16  Debtors' law firm, and they're going to make someone available

17  to speak to outside of court to see if maybe some of your

18  issues can be addressed from a process perspective.

19     So, but first --

20        MS. JOHNSON:  Okay.

21        THE COURT:  -- let me go ahead and swear you in.  If

22  you could raise your right hand for me.

23        MS. JOHNSON:  Yes, I -- yes, I do.  And I have it

24  raised.

25        THE COURT:  Appreciate that.

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 25 of 107

Johnson - Examination by the Court        24

1                    JO ANN JOHNSON, SWORN

2              THE COURT:  All right.  So, please, ma'am.

3              THE WITNESS:  Yes, Your Honor.

4              THE COURT:  And, again, your name for the record is

5    Jo Ann Rainbow Heart Johnson; is that correct?

6              THE WITNESS:  Yes, it is.  And it's J-O capital A-N-

7    N.  There's no E on it.

8              THE COURT:  Okay.  It's a beautiful name.

9              THE WITNESS:  Or A.

10             THE COURT:  All right.  So, --

11             THE WITNESS:  Thank you.  Thank you so much.

12   Appreciate, Your Honor.

13             THE COURT:  So, what did you want to share with us

14   today?

15             THE WITNESS:  Your Honor, what had happened is I was

16   illegally Baker Act-ed to Wuesthoff Medical Center, and what

17   happened is they forced me into an illegal court case.  They

18   said that I was bipolar for speaking too quickly and that I

19   had inflection in my speech.

20        What happened is, while being Baker Act-ed illegally, I

21   was given records for a woman named Joanna Johnson, J-O-A-N-N-

22   A Johnson.  I advised them that it was not my name, not my

23   address, not my date of birth or my doctor.  I also, while I

24   was there, they had numerous patients' records inside of an

25   activity cart.  I walked up and handed them over and told them

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 26 of 107

Johnson - Examination by the Court          25

1   numerous times, I said, you're in violation of HIPAA laws.

2   They also had a patient walk in, leave their records on a

3   table.  They also had meal tickets that you could see

4   anybody's name, you could see your date of birth, everybody's

5   information was on our names on our tags.

6       I told them -- they gave me -- forced me into a court

7   case.  They tried to tell me again that I was bipolar, when I

8   have four college degrees, of which one is a paralegal degree.

9   And they told me -- they tried to prescribe a pill that could

10  kill me and they wanted to try to force me to take it.  I

11  refused.  It had five different times it said it could kill

12  me.

13      Then I told them that I was a victim of cyberterrorism, of

14  which I can prove that I hired Rob Moore of Moore Web

15  Solutions and he came out with a special computer and said

16  that my cell phone had been hacked, my desktop had been

17  hacked, and the router to my home had been hacked with a web

18  system.

19      So they kept me illegally.  They were in violation of

20  extensive laws.  One of the women that was there was -- would

21  go up and down the hall without a top on, rolling around on

22  the floor.  And then the one day I left -- and, really, the

23  day I was finally being discharged -- she really took poop and

24  feces and it was all over the hallway.

25      They were really mean to me and abusive to me, and they --

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 27 of 107

Johnson - Examination by the Court                26

1   they would not release me.  That's all they kept saying, is

2   that I had to speak in a monotone voice and I could not speak

3   with inflection in my voice.  I said to them, I -- Your Honor,

4   I was injured in an automobile accident when I was eight years

5   old.  So if you hear a sound like, gee, I sound like I'm

6   speaking quickly or there's like a huff in my sound, it's been

7   there since I was eight years old.  There's nothing I can do

8   about it.  I have a twisted bone.

9       So what I want to share with the Court is I threatened to

10   sue them.  I told them that they were in violation of

11   extensive HIPAA laws and treating me badly.  I'm a disabled

12   adult, and they treated me badly.  They turned around and

13   changed the name of the hospital.  And within one year of me

14   filing -- oh, and I want to let the Court know, I did file --

15   I am the person that filed a legal complaint with the State of

16   Florida for them violating the HIPAA laws and how badly they

17   were violating them, and that it was shortly after that,

18   within a year, they changed the name of the hospital from

19   Wuesthoff Hospital, which it was here -- I've been in Florida

20   since 1989.  It was Wuesthoff Hospital the entire time I've

21   been here.  They changed it from that time to Rockledge

22   Medical Center, I would say probably because they realized

23   they were in violation of HIPAA laws, that they could possibly

24   get sued by myself.  And then they turn around, change the

25   name of the hospital, and decided to sell the hospital.

Johnson - Examination by the Court                27

1    Hopefully, they have corrected some of the HIPAA laws and some

2    of the things that they have done wrong when they transferred

3    the sale of the hospital.

4         THE COURT:  Okay.  Thank you very much, Ms. Johnson.

5    And given I'm from the deep South, I can actually understand

6    you just fine.  We talk fast, too.  So,  --

7         THE WITNESS:  Thank you so much, Your Honor.  I

8    appreciate it.  God bless you.  What a -- you're a kind soul.

9    God bless you.  And you're from Texas, so I appreciate that.

10        THE COURT:  All right.  So, --

11        THE WITNESS:  I'm from -- I'm from New York

12   originally, so I appreciate it.  I appreciate that.  Thank

13   you, Your Honor.

14        THE COURT:  When people meet me, they ask me if I'm

15   from the Bronx, which clearly tells me I have a beautiful

16   accent.  But so question for you, Ms. Johnson.

17        THE WITNESS:  You do, too.  You have a beautiful --

18        THE COURT:  Have you received the paperwork from the

19   Debtors?  Have you received the bar date notice and the

20   different paperwork related to the confirmation today?  Did

21   you receive that in the mail?

22        THE WITNESS:  All I have is for today's -- they --

23   yeah, they sent me the notice of today's hearing and told me

24   that I could attend, and I went ahead and did that, because on

25   the form that was online I was not -- I did not have the

Johnson - Examination by the Court          28

1  documents with me to prove they put me through the court case

2  and my medical records with me to upload.  So I was unable to

3  upload stuff.  But they did send me this, saying that -- that

4  I could attend the hearing today and speak on my own behalf.

5  So I -- but I do not have any other documents, Your Honor.

6          THE COURT:  Okay.  So, again, counsel for CareMax and

7  each of the other CareMax entities is here in court today.

8  I'm going to ask that we -- we're going to get your contact

9  information and we're going to pass that on to the Debtors to

10 make sure that you're given each of the various documents that

11 have been sent to claimants in the case, like the bar date

12 notice and things of that nature, to see if we can --

13         THE WITNESS:  Okay.

14         THE COURT:  -- address any concerns that you have.

15 If you have claims in a case, perhaps one of the better ways

16 to deal with this is to allow you to file a proof of claim in

17 the bankruptcy.  And --

18         THE WITNESS:  Okay.

19         THE COURT:  All right.  Mr. Grossi, anything further

20 to --

21         MR. GROSSI:  I don't have anything further.

22         THE COURT:  -- that she should get process?

23         MR. GROSSI:  We'll certainly reach out on process.  I

24 would just note that Rockledge is a Steward facility.  It's

25 unrelated to the Debtors.  But we can -- we can work with --

Johnson - Examination by the Court          29

1          THE COURT:  All right.

2          MR. GROSSI:  -- with Ms. Johnson on clearing --

3          THE WITNESS:  Yes.  Yes.  Yeah, I want to -- yes,

4   that's correct, and it's true.

5       And then I just want to make sure you do have my -- I

6   currently do not have a cell phone.  I'm anti-Internet and --

7   because Facebook are cyberterrorists, so I don't deal with

8   that.  So I want to make sure that you do have my family's

9   home phone number so that they can reach out to me.

10          THE COURT:  Well, rather than give it to me on this

11   public platform, here's what I'm going to do.  I'm going to

12   ask that -- you spoke -- did you call my Clerk of Court this

13   morning?

14          THE CLERK:  No, she was on WebEx.

15          THE WITNESS:  Yes, I did.

16          THE COURT:  She was on the WebEx?  Okay.  Well, then

17   what --

18          THE WITNESS:  I called in about an hour ago and she

19   --

20          THE COURT:  Okay.  Then why don't you give me the

21   number now?  I'll write it down and I'm sure that Debtors'

22   counsel -- I'm sorry.  Just one moment.

23          THE WITNESS:  Okay.  Thank you, Your Honor.

24       (Court confers with Clerk.)

25          THE COURT:  Okay.  All right.  Just one moment.  I've

Johnson - Examination by the Court                30

1   got a number.  Or should I --

2           THE WITNESS:  Thank you so much, Your Honor.  You're

3   so kind.

4           MR. GROSSI:  Do you want me to just give her our

5   office number, and she --

6           THE COURT:  Yes.  Here's what I'm going to do, Ms.

7   Johnson.

8           THE WITNESS:  Okay.

9           THE COURT:  More logical people than me are thinking

10  right now.  I'm going to --

11          THE WITNESS:  Okay.

12          THE COURT:  I'm going to give you the office number

13  for Debtors' counsel to call.

14          THE WITNESS:  Okay.

15          THE COURT:  Okay?

16          THE WITNESS:  Okay.  And that's Sidley Austin; is

17  that correct?

18          THE COURT:  Yes.  But let me give you -- let me get a

19  number for you.

20          MR. GROSSI:  It's 212 --

21          THE WITNESS:  Okay.  Thank you.

22          THE COURT:  212.

23          THE WITNESS:  Okay.

24          MR. GROSSI:  839.

25          THE COURT:  839.

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 32 of 107

                    Johnson - Examination by the Court                    31

 1              THE WITNESS:  Okay.

 2              MR. GROSSI:  Let me call up my number, because I

 3     actually don't know it by heart.  5782.

 4              THE COURT:  5782.

 5              THE WITNESS:  Okay.

 6              MR. GROSSI:  Thank you, Your Honor.

 7              THE COURT:  All right.

 8              THE WITNESS:  Okay.

 9              THE COURT:  And you'll get New Yorkers.

10              THE WITNESS:  All right.

11              THE COURT:  They'll understand you.

12              THE WITNESS:  Okay.  Thank you so much, Your Honor.

13     I greatly appreciate your time and your kindness.  And thank

14     you for telling me that you also speak quickly, and I think

15     you speak just fine as well.  But you do speak quickly and I

16     understand everything you're saying.  So you're very kind,

17     Your Honor.  I appreciate it.

18              THE COURT:  Have a great day, Ms. Johnson.  God

19     bless.

20              THE WITNESS:  Thank you.  You as well.  Thank you.

21     God bless you.  Thank you, too.  Bye-bye.

22              THE COURT:  Bye-bye.

23         All right.  Thank you all for your patience.

24              MS. WISE:  Good morning, Your Honor.

25              THE COURT:  Good morning, Ms. Wise.

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 33 of 107

32

1          MS. WISE:  This is Jolene -- hi.  It's a pleasure to

2    be in your courtroom today.

3        I just wanted to take a moment at this time to thank

4    Debtors' counsel for working with us in resolving three of our

5    five concerns.  They added the governmental carve-out and

6    included the SEC; the amendment to the exculpation provision,

7    adding the carve-out for actual fraud, willful misconduct, and

8    gross negligence; and then revising the definition of the

9    exculpated party to comply with *Highland*.

10       And then our remaining issues, as noted previously, is

11   that this -- the SEC's position that the release is

12   nonconsensual as it applies to public shareholders.  As you

13   may know, we prefer the opt-in versus the opt-out.  And then

14   that the third-party release does not carve out actual fraud,

15   gross negligence, or willful misconduct.

16       And I can answer questions and provide my argument at the

17   appropriate time.

18          THE COURT:  All right.  Thank you very much, Ms.

19   Wise.  I think that what I'll do is I'll obviously allow you

20   any time that you want with the evidence, and then I'll hear

21   from both you and Ms. Kippes in closing with respect to

22   releases or any other objection that you might have.  So thank

23   you very much.

24          MS. WISE:  Thank you.

25          THE COURT:  Thank you.

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 34 of 107

33

1          All right.  Anyone else want to be heard by way of

2     opening?

3          Let me start like this, so, again, if there's any issues.

4     Is there anyone here on an objection that's either not listed

5     on the agenda or hasn't been resolved, other than the bigger-

6     ticket items with respect to third-party releases?  Is there

7     any objector that -- I know a number of them are going to be

8     pushed in terms of cure objections and the like and will be

9     resolved or heard at a later time.  Anyone else want to be

10    heard?

11              MS. LAPENTA:  Your Honor, if I may?

12              THE COURT:  Ms. Lapenta?

13              MS. LAPENTA:  This is Nicole Lapenta with Shipman and

14    Goodwin.  I'm here with local counsel, Rachael Smiley, from

15    Ferguson Braswell.

16         We have a pending limited objection to the sale and bid

17    procedures motion that is, you know, in the process of being

18    resolved, and I just wanted to make a brief statement on the

19    record to update the Court on where we stand with that.  But

20    (audio gap) not, we can wait until after other people are

21    heard, or whatever works best.

22              THE COURT:  Okay.  Does it make sense to have any

23    limited objections resolved at the end, or would you like to

24    hear from Ms. Lapenta now?

25              MR. GROSSI:  She can make her statement.  Yeah, she

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 35 of 107

34

1   can make her statement now if she'd like.

2           THE COURT:  Okay.  Please proceed, Ms. Lapenta.

3           MS. LAPENTA:  Thank you.  Shipman & Goodwin

4   represents Preferred Care Network, Inc., Preferred Care

5   Partners, Inc., UnitedHealthcare Insurance Company, and United

6   of Florida, Inc.  So I'm just going to refer to them

7   collectively as United.

8       And they filed a limited objection to the bid procedures

9   motion.  That objection is at Docket No. 175.  We did not

10  object to the sale itself.  This would be the core centers

11  sale of assets to ClareMedica.  But we -- our objection

12  concerned state and federal regulations that require United to

13  give advance notice to members if their providers will be

14  going out of network, to prevent any disruption to patient

15  care.

16      At the time the bid procedures were entered, we did have a

17  statement included in that order that said that the order

18  would enter without prejudice to Preferred Care and to United

19  so that the parties could continue with its discussions to

20  resolve this issue.  And we have had several discussions since

21  then, and continue to be in touch with both Debtors' counsel

22  and counsel for ClareMedica and continue to work through those

23  issues in good faith.

24      We also have a pending cure objection at Docket No. 380

25  which has been adjourned.  But ultimately, if United's

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 36 of 107

35

1  contracts are not assumed by the Debtors and are not assigned

2  to ClareMedica, then we've tentatively discussed a

3  transitional plan that would allow United adequate time to

4  meet these notice obligations to advise members that providers

5  will be going out of network.  And we expect to be able to

6  resolve these issues whichever way it goes, whether the

7  contracts are assumed or not.  But in the event that, you

8  know, that does not happen, we will certainly come back to the

9  Court for further assistance.

10      But that's the extent of what we wanted to state for

11  today.  It's nothing adversarial, really, just more of an

12  update and to make a record.

13          THE COURT:  All right.  Thank you very much, Ms.

14  Lapenta.

15      And, obviously, a number of cure objections and the like

16  will be passed beyond any confirmation.  So we'll make time to

17  address those, whether on the next omnibus day or however the

18  Debtors' process works itself out.

19          MR. FOX:  Your Honor, Shawn Fox from McGuireWoods.

20          THE COURT:  Yes.

21          MR. FOX:  I represent ClareMedica Viking.  And I

22  agree with what Ms. Lapenta put on the record.  We are talking

23  to them.  We are working through those issues.

24          THE COURT:  Excellent. Good to hear.

25          MR. FOX:  Thank you.

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 37 of 107

36

1              THE COURT:  Thank you.

2         All right.  With that, does it make sense to put on the

3    evidence?  All right.

4         And from the Debtors' perspective, Mr. Grossi, is

5    everything going to be based upon the declarations that were

6    -- they were all moved in as part of your 1 through 94, I

7    assume?

8              MR. GROSSI:  That's right, Your Honor.

9              THE COURT:  Okay.

10             MR. GROSSI:  Thank you.

11             THE COURT:  Thank you very much.  And I did have an

12   opportunity to review those prior to the hearing today.

13        Ms. Kippes?  The tie is fantastic.

14             MS. KIPPES:  Thank you.  All right.  Your Honor, I

15   feel like every time I have a lot of questions to ask I'm also

16   losing my voice.  So I apologize if I croak.

17             THE COURT:  Well, I gave you those mints last time.

18             MS. KIPPES:  Yes.  I actually have a handful of

19   Ricola.  And water.  So we'll see how we go.

20        Okay, Your Honor.  The first person I'd like to call is

21   Mr. Brian Karpuk, Karpuk, from Stretto.

22             THE COURT:  All right.  All right, sir.  And I have

23   read your declaration, but I do not recall if you're an

24   attorney.

25             MR. KARPUK:  I am not.

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 38 of 107

Karpuk - Direct                    37

1              THE COURT:  You are not?  Okay.  Let me go ahead and

2      swear you in, then.

3              BRIAN KARPUK, U.S. TRUSTEE'S WITNESS, SWORN

4              THE COURT:  Please proceed.  Thank you.

5                      DIRECT EXAMINATION

6      BY MS. KIPPES:

7      Q   Mr. Karpuk, there on the stand in front of you -- I should

8      have introduced myself.  I'm so sorry.  Meredyth Kippes.  I'm

9      a trial attorney with the Office of the United States Trustee.

10     And I have some questions to ask you about the solicitation

11     and your declaration.

12             In front of you are Exhibits D-56 through D-60, which are

13     your declaration and then the exhibits that were attached to

14     it.  It was all filed as one document with the Court, but

15     they're separate exhibits here.  Do you see those?

16     A   I do.

17     Q   Okay.  Great.  Okay.  All right.  My first question is how

18     many people were solicited in Class 3?

19     A   I don't have that information in front of me here.  They

20     would be located within the certificate of service referenced

21     in what I believe is Paragraph 8.

22     Q   Okay.  I'll move on.  Let's look at I believe it's D-57,

23     which is the -- I believe it's Exhibit A to your declaration.

24     And it's basically the results of the tabulation summary.  Do

25     you have that?

Karpuk - Direct                                    38

1    A    I do.

2    Q    Okay.  So, how many people voted in favor of the plan?

3    A    Thirty-seven parties in Class 2 and seventeen parties in

4    Class 3.

5    Q    Okay.  And then right there beneath the 17 there's 39

6    rejected?

7    A    That is correct.

8    Q    Okay.  Down below is a list of various Debtors and the

9    tallies with regard to each.  I'll represent to you that

10   there's a lot of Debtors with the number 7 next to them.  Who

11   are those seven entities?  What is -- is it -- or is it all

12   the same?

13   A    In general, it is -- yes.  Where you see 7, that is

14   generally all the same party.  One of -- there were seven

15   secured lenders that also voted in Class 3, and this was

16   prepared as those parties were -- that -- those votes were

17   allocated across all but I believe seven Debtors, whichever

18   ones have the zero votes in favor, --

19   Q    Okay.

20   A    -- it looks.

21   Q    And the reason they were not allocated to those seven

22   Debtors is those Debtors are not obligors on the first lien

23   debt?

24   A    That is my understanding.

25   Q    Okay.  Okay.  Let's look at the exhibit that would be

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 40 of 107

Karpuk - Direct                                    39

1  Exhibit D-58, which is the Detailed Voting Report of All

2  Submitted Ballots.

3  A    Is that Exhibit B to my declaration?

4  Q    Exhibit B to your declaration.

5  A    Okay.

6  Q    Okay.  So, do you know who the -- well, I don't see, for

7  instance, if you go back to Exhibit D-56, or 57, I don't see

8  Debtor Analitico, for instance, listed here on this exhibit.

9  Can you explain why, even though individual Debtors are listed

10  on Exhibit D-57, why they're -- why they're not here on this

11  D-58?

12  A    There was only one ballot sent out to each party in Class

13  3.  And I guess, presentation-wise, it's listed under CareMax,

14  Inc., is how it would be listed on the consolidated basis.

15  And then for presentation of the unconsolidated, it was

16  allocated across, as indicated, the Debtors that had -- that

17  were obligated.

18  Q    Okay.  So if somebody voted for or against the CareMax,

19  Inc. entity with regard to their claim, the CareMax, Inc.

20  entity, you applied that to all of the other entities.  Is

21  that correct?

22  A    Only for the -- the class.  The -- the lenders that were

23  provided with deficiency ballots in Class 3, if they voted,

24  because there was no, you know, Debtor listed on the ballot

25  itself.  But based upon discussions with Debtors' counsel, we

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban    Pg 41 of 107

Karpuk - Direct                          40

1    were asked to present the unconsolidated basis to allocate

2    those lender votes across the -- the entities.

3    Q    Okay.  So it's just lender votes there were allocated to

4    each of the not-CareMax Debtors with regard to the

5    lienholders?

6    A    That's correct.  It's just --

7    Q    Okay.  Okay.  So, I'm on the detailed vote tabulation,

8    which is the --

9          MS. KIPPES:  I apologize, Your Honor.  Detailed

10   Voting Report of All Submitted Ballots.  That's D-58.

11         THE COURT:  Okay.

12   BY MS. KIPPES:

13   Q    So, I'm on Page --

14         THE COURT:  This is the one that starts with Class 3

15   12/26 at the top?

16         MS. KIPPES:  Yes.

17         THE COURT:  Okay.  Thank you.  I'm following.

18   BY MS. KIPPES:

19   Q    So, when -- when did you solicit the claims of the

20   lenders?  The unsecured claims of the lenders?

21   A    The unsecured claims of the lenders were solicited after

22   the auction.  I believe the certificate of service referenced

23   in Paragraph 8, at Docket 441, would indicate the exact date

24   that that went out.

25   Q    Was it before January 24, 2025?

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 42 of 107

Karpuk - Direct                              41

 1   A    I believe it was, yes.

 2   Q    Okay.

 3          THE COURT:  For your reference, Ms. Kippes, I think

 4   that that is going to be Debtors' 94, once you get to --

 5          MS. KIPPES:  Debtors' 94?  Okay.

 6          THE COURT:  -- you get there.

 7          MS. KIPPES:  Let me go grab that, Your Honor.

 8          THE COURT:  Take your time.

 9       (Pause.)

10          THE COURT:  Ms. Kippes, will the witness need a copy?

11   See if Mr. Grossi can get a copy of the Debtors' exhibits for

12   him.

13          MS. KIPPES:  Okay.

14          THE COURT:  Okay.

15       (Pause.)

16          THE COURT:  It's going to be the last notebook.

17   Thank you, Ms. Hoffman.

18   BY MS. KIPPES:

19   Q    Okay.  Mr. Karpuk -- am I saying your name correctly?

20   A    It's Karpuk, yes.

21   Q    Karpuk?  Okay.

22   A    Yes.

23   Q    If you'll look at Page 12 of 61 at the top, there's -- it

24   says, Main Document, Page x of 61.  If you go to Page 12 of

25   61.  About halfway down, it refers to service of the

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 43 of 107

Karpuk - Direct                              42

1  solicitation package to the parties on Exhibit M on January

2  21st.

3  A    That -- that is correct.  That is the correct exhibit.

4  Q    Okay.  And so Exhibit M is the -- is the service to the

5  lenders of ballot -- the Class 3?

6  A    That is correct.  The Class 2 and Class 3 on that date.

7  Q    The Class 2 and Class 3?

8  A    Yes.

9  Q    So they were not served --

10 A    They -- they were served revised Class 2 ballots --

11 Q    Revised?

12 A    -- as well as Class 3.

13 Q    Okay.  How were -- do you know how the Class 2 ballots

14 were revised?

15 A    As I believe is set forth in my declaration -- (pause).

16 The Footnote 4 of my original declaration, they were

17 originally allocated in Class 2 based -- by the Admin Agent,

18 and following cancellation of the auction and selection of the

19 winning bid, holders of first lien debt claims were also

20 solicited in Class 3 for deficiency claims.

21 Q    Okay.  So -- (pause).  Okay.  I've lost your declaration.

22 I'm sorry.  So it wasn't until January 21st that the

23 deficiency claim was solicited?

24 A    That is correct.

25 Q    Okay.  And you changed the -- initially, the -- initially,

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 44 of 107

Karpuk - Direct                              43

1   was the whole claim, deficiency claim and prepetition claim,

2   solicited -- or, and secured claim, was that all solicited in

3   Class 2?

4   A    My understanding is that the entire -- each -- each

5   individual lender's claim was included in Class 2 in the

6   December solicitation.

7   Q    Okay.  And then last week the Debtors decided to bifurcate

8   that?

9   A    That is correct.

10  Q    Okay.  Okay.  All right.  Let's go back to D-68, which is

11  the detailed voting report.  So --

12              THE COURT:  Did you say 68, Ms. Kippes?

13              MS. KIPPES:  I think it's D-68.  The detailed voting

14  report.

15              THE COURT:  Is there some other -- my 68 is a notice

16  of nonvoting status.

17              MS. KIPPES:  Hmm.

18              THE COURT:  Are you looking ECF number, by chance?

19              MS. KIPPES:  No, Your Honor, I'm looking at the

20  witness and exhibit list at Docket Entry 557.  And it's --

21  it's -- they were pulled from the exhibit binders given to me

22  today.

23              THE COURT:  Okay.  Just give me one moment, then.

24  Let me catch up.  Maybe I'm --

25              MS. KIPPES:  I'm sorry.  Did I say 68?

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 45 of 107

Karpuk - Direct                    44

1        THE COURT:  I thought so.

2        MS. KIPPES:  Okay.  58.

3        THE COURT:  Okay.

4        MS. KIPPES:  I'm not making it, Your Honor.

5        THE COURT:  Got it.  Ready when you are.

6   BY MS. KIPPES:

7   Q    Okay.  On Page 4 of that document, there are some

8   confidential creditors listed for Class 3.

9   A    Yes.  I see that.

10  Q    Okay.  Without revealing their identities, what type of

11  creditor were these?

12  A    I -- I don't have -- I don't have that answer in front of

13  me.

14  Q    Were these patients?

15  A    My understanding is that they would be patients, yes, that

16  there were patients that were scheduled in the Debtors'

17  schedules.

18  Q    Okay.

19  A    And/or they may have filed a claim as well.

20  Q    Okay.  How many patients filed proofs of claim?

21  A    I don't have that information in front of me.

22  Q    Was it -- was it more than 10?

23  A    It could be right around that number.

24  Q    Okay.

25  A    It was not, you know, dozens.

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 46 of 107

Karpuk - Direct                              45

1   Q    Okay.  Okay.  How many combined patient notices went out?

2   A    That's going to be in Docket 389, which I don't know what

3   exhibit that will be.

4              THE COURT:  91.

5              THE WITNESS:  91?

6              THE COURT:  Exhibit 91.

7   BY MS. KIPPES:

8   Q    Okay.

9   A    So, on Page 6 of that document, --

10  Q    Okay.

11  A    -- I believe it's Paragraph -- the second paragraph down.

12  On December 23rd, 437,321 confidential patients were served by

13  first class mail and 54,096 by electronic mail.

14  Q    Okay.  Do you know if the 54,000 overlapped any with the

15  437,000?

16  A    Yes, I believe that they were served by both means.

17  Q    Okay.  Do you know how many patients voted either for or

18  against the plan?

19  A    It would be listed in the ballot details as either a

20  confidential creditor -- which I see five.  And then I believe

21  there's two more on Page 8 of 10 for Schedule F Litigant 06.

22  Q    Okay.  Is Schedule F Litigant 06 the same person or a

23  different person?

24  A    It is the -- I believe it's the same -- I believe it's the

25  same person against two different Debtors.

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 47 of 107

Karpuk - Direct                          46

1    Q    Okay.  Back on Page -- would be 4 of 10, the confidential

2    creditors that are listed there, --

3    A    Yes.

4    Q    -- is it the same person or a different person?

5    A    (Pause.)

6    Q    And if you don't --

7    A    Those look -- they look like different.

8    Q    Okay.

9    A    I would think different.

10    Q    So, at most, six patients voted in connection with the

11    plan.  Is that a fair assessment?

12    A    Yes, that's a fair assessment.

13    Q    Okay.  Let's look at what would be Exhibit D-60, which is

14    the release report.

15    A    I have it.

16    Q    Okay.  And what does this report show?

17    A    This is a report of all parties who -- who opted out of

18    the releases on their ballot via a nonvote notice, or there

19    was also a couple parties from Humana that we were asked to

20    add to the -- as opting out via email.

21    Q    Okay.  And you heard Mr. Grossi say that there were 66

22    opt-outs.  Do you agree with that?

23    A    That sounds correct.

24    Q    Okay.  At the very top there, there's two opt-outs by 1675

25    JB Associates, LLC.  Do you see that?

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 48 of 107

Karpuk - Direct                              47

1    A    I do.

2    Q    Are you counting both of those opt-outs as separate opt-

3    outs?

4    A    I believe that the total, the 66 total number includes,

5    yes, all ballots or nonvote notices received, without any sort

6    of de-duping.

7    Q    Okay.  So it's not necessarily 66 creditors that opted

8    out?  There are 66 opt-outs, but you received some of them

9    from -- some of them basically duplicates, by the same --

10   A    It was 66 forms, I guess, is --

11   Q    Sixty-six forms?  So, Apex Place, PC, LLC, that's just one

12   entity?

13   A    Yeah, I guess.

14   Q    Okay.  Atlantic Specialty Insurance Company, there's one,

15   two, three, four, five there.  That's just one entity?

16   A    That looks to be correct.

17   Q    Okay.  All right.  We've got one, two, three, four, five

18   confidential creditors.  Are these the same person or a

19   different person?

20   A    The ballot number would indicate --

21   Q    At the top of the page, it's -- it says, Page 3 of 7.  And

22   then at the top of the chart it's 1/23/25.  Ballot --

23         THE COURT:  I think he wants to cross-reference the

24   ballot number --

25         THE WITNESS:  Yeah.  So, --

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 49 of 107

                        Karpuk - Direct                    48

 1              MS. KIPPES:  Okay.

 2              THE COURT:  -- to the other report.

 3              THE WITNESS:  In general, --

 4              MS. KIPPES:  Okay.

 5              THE WITNESS:  -- these are, yes, the same parties.

 6   BY MS. KIPPES:

 7   Q    The same parties from the --

 8   A    The con... yes, the con...

 9   Q    -- the detailed ballot?

10   A    From the ballot received, yes.  Those are --

11   Q    Okay.

12   A    -- received on ballots, I guess.

13   Q    Okay.  So they're separate people here?

14   A    Yes.

15   Q    Okay.  The FVP entities, do you know if they're all

16   related?

17   A    I do not know how they're related.

18   Q    Okay.  Okay.  And then you have at the top, it's Page 4 of

19   7, you've got one, two, three, four, five, six, seven, eight,

20   nine, ten Humana entities.

21   A    I see them.

22   Q    Okay.  These are all basically the same creditor, correct?

23   A    Yes.  I mean, the ones that are listed there are exactly

24   the same.

25   Q    Okay.  And the next page, it's got one more Humana, for

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 50 of 107

Karpuk - Direct                              49

1    11.

2        And on the next page, there's Preferred Care Network, Inc.

3    there twice.  That's the same entity?

4    A    It looks to be.

5    Q    Okay.  And the next page, there's Schedule F Litigant 06.

6    I believe you said this --

7    A    I believe that's the same person, yes.

8    Q    Same person?  Just one person?

9    A    Yes.

10   Q    Okay.  And at the bottom we've got one, two, three, four,

11   five UnitedHealthcare entities, and one more on the back, for

12   six.  Is that -- that's the same creditor?

13   A    Okay.  Looks to, yes.

14   Q    Okay.  So 66 forms, but far fewer creditors?

15   A    Correct.

16   Q    Correct?  Okay.  Did you receive any requests for ballots

17   or opt-out forms due to the publication notice?

18   A    I'm not aware of any.

19   Q    Okay.  Excuse me, I'm just going to --

20       (Pause.)

21           MS. KIPPES:  Your Honor, I believe I'm done with Mr.

22   Karpuk.

23           THE COURT:  All right.  Thank you very much, Ms.

24   Kippes.

25       Is there anyone else who wishes to cross-examine Mr.

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 51 of 107

                              Karpuk - Cross                          50

1 | Karpuk?

2 |            MR. MUENZ:  Hello, Your Honor.

3 |            THE COURT:  Hi.

4 |            MR. MUENZ:  Jon Muenz for the Debtors.  We don't have

5 | any questions.

6 |            THE COURT:  All right.  Thank you very much.

7 |       All right.  Ms. Wise, any further examination for Mr.

8 | Karpuk?  Or anyone else?

9 |       All right.  Hearing no takers, --

10 |            MS. WISE:  Yes, Your Honor.  If I may ask --

11 |            THE COURT:  Please go ahead, Ms. Wise.  I apologize.

12 |            MS. WISE:  Sorry.

13 |                         CROSS-EXAMINATION

14 | BY MS. WISE:

15 | Q    In looking at the release details that we were just

16 | looking at with the U.S. Trustee, were any of the opt-out

17 | forms returned by shareholders?

18 | A    I am -- I'm unsure of that.  There are five -- the FVP

19 | entities that were listed on I guess Page 3 of 7, I believe

20 | those were the only forms that came in on the nonvote notice,

21 | and they came in through our website.  But I don't -- I'm not

22 | sure who they are.

23 | Q    Okay.  It looks like they're also identified with a ballot

24 | number.  So would they be -- they're not -- they're creditors

25 | as well?  Or not sure?

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 52 of 107

Karpuk - Cross                                51

1    A    Our ballot numbering system is any form that gets

2    processed, so it is sequential.  Whether it be a ballot or a

3    nonvote notice is sequentially numbered.  So it's not an

4    indication of a ballot.

5    Q    Okay.  And those that don't have a ballot number -- I

6    think there are five entities -- what would they be classified

7    as?  A creditor?  A shareholder?  Or something other?

8    A    We were asked by Debtors' counsel to add -- add those

9    parties to the release opt-out report.  I believe they were --

10   came in by email.

11   Q    Okay.  Do you know how many nonvote status notices were

12   sent out to shareholders?

13   A    I believe that's going to be in Exhibit 91.  (Pause.)  So,

14   because there's, you know, public securities here, they were

15   served via, you know, nominees in Mediant and Broadridge.  So

16   I see on -- I think this would be Exhibit C.  Or no, it's at

17   Page 3 of 114.  1,750 sets of the nonvoting status or

18   interests were sent -- sent to Broadridge.  And five copies

19   were sent to Mediant.  I believe that's the public equity

20   service.

21   Q    Okay.  And do you know what steps were taken by those

22   recipients to make sure that the notices were sent on to the

23   actual holders?

24   A    I do not.

25   Q    And, again, looking at the Exhibit D of your declaration,

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 53 of 107

Karpuk - Cross                                    52

1  the five SEP medical offices and -- and all that are listed as

2  SEP, they may or may not be shareholders?

3  A    That's correct.  I -- I'm -- I'm -- those were the five

4  that I know came in on nonvote notices.  And those were the

5  only five nonvote notices that were received.

6  Q    Okay.  So they could be unimpaired, having assumed, and

7  not voting?

8  A    That is correct.

9  Q    And, again, staying with that same document, your Exhibit

10  D to your declaration, it doesn't appear that any shareholders

11  returned an opt-out form.

12  A    I -- I believe that's correct.  I mean, that -- those were

13  the only five non -- nonvote notices returned.

14  Q    Nonvote notices?

15          MS. WISE:  All right.  Thank you very much.

16          THE COURT:  Thank you, Ms. Wise.  Any other questions

17  of the witness?

18      (No response.)

19                    EXAMINATION BY THE COURT

20          THE COURT:  Mr. Karpuk, can you just tell the Court

21  who Broadridge and Mediant are?

22          THE WITNESS:  Broadridge and Mediant, they are --

23  they handle service of public securities services in -- you

24  know, basically for proxy statements, annual statements.  And

25  they are also utilized in the solicitation of equity and

Karpuk - Examination by the Court                53

1  public bondholders, you know, in bankruptcy cases.

2          THE COURT:  All right.  And so did Stretto retain

3  them as a third-party vendor to effect the service of the

4  shareholders?

5          THE WITNESS:  We don't retain them.  We just utilize

6  them.  Because in order to reach public equity, we don't

7  generally know who the public holders are.  Right?  So we will

8  ask -- we will ask the nominees to set a record date, and they

9  will identify -- it's the nominees of the equity.  They always

10 utilize Broadridge or Mediant to notify their clients.  And so

11 that's -- all kind of public equity or public bond noticing

12 will generally go through those two entities.

13         THE COURT:  And did you or someone under your

14 supervision interface with Broadridge and Mediant to assure

15 that the service had been effected?

16         THE WITNESS:  Stretto has a dedicated public

17 securities team, and so I was -- I personally did not

18 interface with them, --

19         THE COURT:  Okay.

20         THE WITNESS:  -- but I know that we do do that, and,

21 you know, we ship -- they -- we work with them to identify how

22 many packages they need, and then we bulk ship those packages

23 to them.  They place the labels on them and/or notify them.

24         THE COURT:  All right.  Thank you for your testimony.

25     Again, anyone else have any final questions for Mr.

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 55 of 107

                          Rundell - Direct                    54

1  Karpuk?

2       You may step down.  Thank you very much, sir, for your

3  testimony.

4            THE WITNESS:  Thank you.

5       (The witness steps down.)

6            THE COURT:  Ms. Kippes?

7            MS. KIPPES:  Thank you, Your Honor.  Excuse me.

8            THE COURT:  Take your time.

9            MS. KIPPES:  Your Honor, next I'd like to call the

10  Debtors' CRO, Paul Rundell.

11           THE COURT:  All right.

12       Good morning, sir.  Could you raise your right hand for

13  me?

14            PAUL RUNDELL, U.S. TRUSTEE'S WITNESS, SWORN

15           THE COURT:  Thank you very much.

16       Please proceed, Ms. Kippes.

17           MS. KIPPES:  Thank you, Your Honor.

18                          DIRECT EXAMINATION

19  BY MS. KIPPES:

20  Q    Good morning, Mr. Rundell.  We've talked via video, but I

21  don't think we've ever been --

22  A    Good morning.

23  Q    -- live and in person before.  Do you have the exhibits

24  from Mr. Karpuk in front of you?  Do you have his --

25  A    I have exhibits.  I don't -- I don't know which one you're

Rundell - Direct                          55

 1  referring to.

 2  Q    Okay.

 3            MS. KIPPES:  Your Honor, may I approach?

 4            THE COURT:  Very big binders.  Yes.

 5            MS. KIPPES:  Thank you.

 6  BY MS. KIPPES:

 7  Q    So, Mr. Rundell, I'm looking actually at Exhibit D-60,

 8  which is the opt-out.

 9  A    I don't have that.  I have D-1.  I'm sorry.  Is there --

10            MS. KIPPES:  Your Honor, may I approach, please?

11            THE COURT:  Yes.

12  BY MS. KIPPES:

13  Q    Okay.  We have D-60 in front of you now, the release

14  report?

15  A    I do.

16  Q    Okay.  On the second page of the chart, it has some FVP

17  entities listed.  A few of them are FVP RE.  Are these -- does

18  that stand for real estate?  Do you know what these entities

19  are?

20  A    And I apologize.  So, my -- I show Page 6 of 7, and then

21  it goes 4 of 7 and 2 of 7.  Like I -- I need a little bit of

22  help what you're looking at.

23  Q    Okay.

24            THE COURT:  I think she's on Page 3 of 7.

25            THE WITNESS:  3 of 7?

Rundell - Direct                          56

1              THE COURT:  Yes.

2    BY MS. KIPPES:

3    Q    Do you see the FVP entities?

4    A    F as in Frank, V as in Victor, P as in Peter?

5    Q    Yes.

6    A    Yes.

7    Q    Are these landlords?

8    A    Yes, I believe FV -- FVP is a landlord.

9    Q    Okay.  Are they related?

10   A    I'm not sure.  Sometimes landlords have different

11   ownerships, so I don't know for sure if -- what the ownership

12   of the landlord is for each location.

13   Q    Okay.  Are these leases being assumed?

14   A    I have to look.  I believe some of them might be, but some

15   of them are not.

16   Q    Okay.  Okay.  Okay.  I'm going to -- I'm going to ask you

17   some questions about the releases.  There's some language in

18   the plan that says if you vote in favor of the plan then you

19   -- you are granting a release.  But then toward the end it

20   says, if you opt out, you are not granting for the release.

21   But do people who vote in favor of the plan and opt out, are

22   they opting out or are they held to the vote in favor of the

23   plan?

24   A    I think you're going to have to ask my counsel.  That's --

25   that's a legal question.

Rundell - Direct                    57

1  Q    Okay.  So you don't know if -- if somebody votes in favor

2  of the plan and -- I mean, it's -- the reason --

3       MS. KIPPES:  For the Court's benefit, the reason I'm

4  asking is we want to clarify because it -- the language

5  appears to conflict.  But we'll address that with counsel.

6  BY MS. KIPPES:

7  Q    Okay.  So, what claims do the Debtors/Released Parties

8  actually want released?  What kind of claims?

9  A    I mean, I think it depends.  In healthcare cases, there's

10 -- there's -- and I assume we're talking about the third

11 party.  I should ask that question.

12 Q    Yes.

13 A    Okay.

14 Q    When I ask about releases, I am asking only about the

15 third-party releases.

16 A    So, in this case, we have -- we have buyers.  I think

17 we've mentioned there's five of them.  Those buyers negotiated

18 in good faith.  We have different professional firms.  There

19 -- there's a lot of parties that got us to this point, and

20 part of the negotiation with both -- with all the parties was

21 to be included.  That was consideration.

22      So when I look at, without the releases, what could

23 happen, I've got 250,000 patients.  I have a thousand

24 employees.  All that could be impacted.  That's what I --

25 that's what I think.  When you ask about what could happen,

Rundell - Direct                    58

1  that -- damages to all those parties could happen.

2  Q    So the Debtor wants these third-party releases to be held

3  against -- enforced against the patients.  Is that correct?

4  A    No.

5  Q    No?  The third-party release will not be enforced against

6  any patients?

7  A    I'm not sure I understand the question.

8  Q    Okay.  There are patients.  There are, according to your

9  first day declaration, approximately 260,000 patients a year.

10  Is the Debtor going to enforce the third-party release against

11  patients?

12         MR. MUENZ:  Your Honor, I object to the extent these

13  questions call for a legal conclusion.

14         THE COURT:  Okay.  Make sure you get near a mic for

15  your objections.  But Mr. Muenz has objected that it calls for

16  a legal conclusion, Ms. Kippes.

17         MS. KIPPES:  Okay.

18  BY MS. KIPPES:

19  Q    What is your understanding?

20         THE COURT:  I'll allow the rephrased question.

21  Please proceed.

22         THE WITNESS:  Yeah.  Regarding, you know, those

23  claims, I do -- I do think it goes into more of a legal

24  argument than what my background is, unfortunately.

25  BY MS. KIPPES:

Rundell - Direct                                59

1   Q    Do the doctors who work at the clinics get the benefit of

2   the third-party release?

3   A    The same answer.

4   Q    Okay.  Are medical malpractice claims included in the

5   third-party release?

6   A    It'd be the same answer.

7   Q    Okay.  Were medical malpractice claims considered in your

8   negotiations with regard to the third-party release?

9   A    I think it's a, again, it's a legal conclusion, but I do

10  think -- I don't think that was intended.

11  Q    You don't think medical malpractice claims were intended

12  --

13  A    Yeah, but I think it -- I would have to look at the -- I

14  think counsel would have to answer that question.

15  Q    Okay.  So let's go down the list of released parties.

16  What claims against the Debtor do you think should be

17  released?

18  A    I think I answered that question.  I'm sorry.

19  Q    Oh.  You -- so, basically, any and all claims?

20  A    Yes.

21  Q    Okay.

22         MR. CALIFANO:  Objection.  Your Honor, there's

23  provisions.  There's release provisions in the plan.  And if

24  we want to talk about it, she should direct the witness to the

25  provisions.  And since it's legal language, I mean, we should

Rundell - Direct                                    60

 1  talk about what's in the plan as opposed to asking this

 2  witness, who operates the Debtor, as to what his understanding

 3  is on these releases.  He also said he didn't negotiate them.

 4  But the releases are set forth in the plan.  It's not

 5  something that, you know, he has to interpret.  The language

 6  is clear.

 7          THE COURT:  Ms. Kippes?

 8          MS. KIPPES:  Your Honor, if we're going to release

 9  any and all claims, the guy who runs the company ought to know

10  what claims he's asking to be released.

11          MR. CALIFANO:  Not necessarily, Your Honor.  I mean,

12  these are -- this -- there is a definition of what's claim --

13  of what's a Claim.  There's the definition of who are the

14  Released Parties.  And I wouldn't say that somebody who

15  operates it would necessarily know what they are.  And it's

16  also claims that are known and unknown.  I mean, we -- this is

17  not novel.  Okay.  The language in the release is broad

18  release language that's been used in other cases, and he's not

19  going to know what claims are released.  And it's just --

20  we're creating a mess of a record here.

21          THE COURT:  Ms. Kippes?

22          MS. KIPPES:  Okay.  Okay.  I have one more question

23  sort of in that line, Your Honor.

24          THE COURT:  Okay.

25          MS. KIPPES:  And Mr. Califano can object to it if he

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 62 of 107

Rundell - Direct                                61

1   wants.

2   BY MS. KIPPES:

3   Q    Do you know whether personal injury claims are being

4   released?

5   A    I'd have to reference the claim.

6   Q    Okay.  Okay.  There's a definition of Related Party.  And

7   can you name, can you identify by name one related party?

8           MR. CALIFANO:  Objection, Your Honor.  It's the same

9   -- it's the same objection.

10          MS. KIPPES:  Okay.

11  BY MS. KIPPES:

12  Q    Where does the universe of Related Parties stop?

13          MR. CALIFANO:  Objection.

14          THE COURT:  Ms. Kippes, I certainly understand the

15  UST's position on this one.  I guess the question is, we can

16  either put the definitions and the language in front of him,

17  or, if he's going to rely upon counsel, then it'll be more of

18  a legal argument.

19      I think it's certainly fodder for this witness to ask

20  what, if any, part of the negotiations took place, what was

21  said about releases, if they relied upon them.  But I think

22  that we've covered that, from a legal perspective, he's not

23  going to give us a great deal with respect to the language

24  itself, which I bet was drafted by counsel.

25          MS. KIPPES:  Yes, Your Honor.  Well, the Court

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 63 of 107

Rundell - Direct                              62

1   anticipated my next line of questions, so I'll move on.

2            THE COURT:  Okay.

3            MS. KIPPES:  Okay.

4   BY MS. KIPPES:

5   Q    With whom were the third-party releases negotiated?

6   A    I'm not sure I understand the question.

7   Q    Earlier, you said that the third-party releases were

8   negotiated.  Who were negotiating the third-party releases?

9   A    The Debtor and the various third parties.

10  Q    Which third parties?

11  A    There's -- there's different parties here that are in the

12  room today.  So, some of those parties happen to be the

13  Committee and other parties that would have standing in the

14  case.

15  Q    Okay.  But, well, I don't think the Committee negotiated

16  the releases because the Committee was not formed when the

17  releases were created.  You would agree with me with that,

18  right?

19  A    In the original plan, but they certainly had been formed

20  once the plan was on file.

21  Q    The plan was filed on the petition date.

22  A    Correct.

23  Q    And the releases have not changed since the plan was

24  filed.  So you're saying that the Official Committee of

25  Unsecured Creditors negotiated the terms of the third-party

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 64 of 107

Rundell - Direct                                63

 1  release even though it hasn't changed?

 2  A   Well, they've certainly talked about it since they've been

 3  formed.

 4  Q   Okay.  Who else?

 5  A   I don't recall all the parties.  But the various -- you

 6  know, the -- all of the parties that were impacted were

 7  discussed both prior to the plan being filed as well as

 8  subsequent to it being filed.  It has been discussed in -- in

 9  -- but I don't -- as I sit here, I don't -- I don't have a

10  list of those parties.

11  Q   Okay.  You said all the parties that are impacted.  Were

12  there any patients contacted?

13  A   I'm not sure, actually.

14  Q   Okay.  Were any unsecured creditors?  Other than the

15  secured creditors who have a deficiency claim?

16  A   We definitely discussed it with some of the landlords.  I

17  don't know specifically whether this was discussed, but I know

18  there were lots of conversations with landlords under -- under

19  the claims.

20  Q   I don't think I understand.  Are you saying that

21  landlords, you did discuss a third-party release with

22  landlords?

23  A   I personally had conversations with landlords on various

24  things.  I don't recall whether this was one of those.

25  Q   Okay.  So you don't remember whether you talked about the

Rundell - Direct                                  64

1   third-party release with landlords?

2   A    It would have been several months ago.  No, I don't

3   recall.

4   Q    Okay.  So could have negotiated, could have not

5   negotiated?

6   A    I think that's what I said.

7   Q    What did you say?

8   A    I think I said I don't recall what, you know, which of the

9   -- with negotiations with the landlord, I don't recall exactly

10  what parts we talked about, whether it was the releases or

11  other factors with their claim.  But I was on calls with them

12  regarding their claim.  I don't recall whether or not the

13  releases was talked about on that call.

14  Q    Okay.  Which landlords?

15  A    For -- FVP is one of them.  There's a couple other

16  ones.  I don't --

17  Q    To your knowledge, has any releasing party given an

18  indication that they intend to bring a claim against the

19  released parties?  Or any of the released parties?

20  A    I don't know.

21  Q    Okay.  Are parties who opt out of the release bound by the

22  injunction that's in the plan?

23  A    I'd have to look at the provision in the plan.

24  Q    Okay.  Do releasing parties receive a release from the

25  released parties?

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 66 of 107

Rundell - Direct                          65

1    A    Again, I'd have to see the provision in the plan that

2    specifies that.

3    Q    Okay.  If I represented to you that the definition of

4    Released Parties doesn't include releasing parties, would that

5    surprise you?

6    A    No, I'd have to see it.

7    Q    Okay.

8              MS. KIPPES:  No further questions, Your Honor.

9              THE COURT:  All right.  Thank you, Ms. Kippes.

10        All right.  So, what I'll do is, before I go to the

11   Debtors,  Ms. Wise, do you have any questions for Mr. Rundell?

12             MS. WISE:  No, Your Honor, I do not.

13             THE COURT:  Thank you.  All right.  Mr. Muenz?

14             MR. MUENZ:  Thank you, Your Honor.  Jon Muenz for the

15   Debtors.

16                       CROSS-EXAMINATION

17   BY MR. MUENZ:

18   Q    Mr. Rundell, were there discussions with economic

19   stakeholders about who would be covered under the third-party

20   releases?  And by that, I mean lenders, the Committee, buyers,

21   other stakeholders?

22   A    Yes.

23   Q    Can you describe for the Court briefly what those

24   discussions relate to and what you know about them?

25   A    Yes.  I think, as I previously mentioned, both the

Rundell - Cross                              66

1   Committee, the various buyers, there's lots of considerations

2   that go in the deal, and this was one of them.  This was

3   heavily negotiated by lots of -- by a lot of the third-party

4   economic stakeholders as we went through the case.  And

5   although it was in the plan in the original, it doesn't

6   prevent parties from negotiating that after filing.

7   Q    Thank you, Mr. Rundell.

8           MR. MUENZ:  No further questions.

9           THE COURT:  Anyone else have any questions for Mr.

10  Rundell?

11      I have just a few, sir.

12                      EXAMINATION BY THE COURT

13          THE COURT:  Was it you that did the heaviest amount

14  of negotiations with the buyers, the prepetition lenders, and

15  the like?

16          THE WITNESS:  I was certainly involved.  It really

17  does depend on what the issues were.  So, you know, there's a

18  lot of operational issues that were involved, so I had a whole

19  management team that worked on that.  There's a thousand

20  employees that were impacted.

21      So it depends on what they were, but all the key important

22  aspects was either run by me or I was involved in, but there's

23  a lot.  You know, so this is one piece of it.  But when

24  you're, you know, I mean, when you have 46 locations and

25  250,000 patients, this was not top of mind every conversation.

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 68 of 107

Rundell - Examination by the Court                67

1   There's a lot of -- this is one important piece to people, but

2   there's other aspects.  You know, continuity of care is also a

3   very important aspect.  So, but yes, I was at the center of

4   all negotiations with both the Committee, the lender, and the

5   buyers.

6          THE COURT:  All right.  So, with respect to the

7   lenders and the buyers, is it your testimony that the third-

8   party releases were an important part of the negotiation for

9   the various things that were provided by those parties in the

10  plan?

11          THE WITNESS:  It is.

12          THE COURT:  Okay.  And was that heavily negotiated by

13  you or primarily by counsel or someone else?

14          THE WITNESS:  It was heavily negotiated by both,

15  because there's legal aspects of it that I don't involve in.

16  But it was heavily negotiated with the buyers and the lenders.

17  All the -- all the economic stakeholders.

18          THE COURT:  Okay.

19          THE WITNESS:  This issue was.

20          THE COURT:  All right.  Thank you, Mr. Rundell.

21      Is there, Ms. Kippes, any redirect, so to speak?

22          MS. KIPPES:  No, Your Honor.

23          THE COURT:  Okay.  All right.  Thank you very much.

24  You may step down, sir.

25          THE WITNESS:  Thank you, Your Honor.

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 69 of 107

68

1          THE COURT:  Thank you for your testimony.

2      (The witness steps down.)

3          MS. KIPPES:  Okay.

4          THE COURT:  Your next witness?

5          MS. KIPPES:  Your Honor, I'm not -- I don't have any

6  other witnesses to call.  I'd just like to move the U.S.

7  Trustee's exhibits in.

8          THE COURT:  Of course.

9          MS. KIPPES:  UST A through UST J.  I think that they

10  are stipulated to, but I'll let Mr. Grossi say what he needs

11  to say.

12          THE COURT:  All right.  I've got a binder of A

13  through J.  And those can be found at 453, Ms. Kippes?

14          MS. KIPPES:  Yes, Your Honor.

15          THE COURT:  All right.  Any objection to the

16  admission of the UST's A through J?

17      (No response.)

18          THE COURT:  The Court would note that much of this,

19  if not admitted as exhibits, the Court could probably take

20  judicial notice of much of what's in the exhibits as well.

21      (Pause.)

22          THE COURT:  Mr. Grossi, perhaps you didn't hear me.

23          MR. GROSSI:  Oh, I'm sorry, Your Honor.

24          THE COURT:  That's okay.  Does the Debtor stipulate

25  to the admission of the UST's A through J?

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 70 of 107

69

1        MR. GROSSI:  We do, Your Honor.

2        THE COURT:  Okay.  Excellent.

3        MR. GROSSI:  Apologies.  So sorry.

4        THE COURT:  No problem.  A through J is hereby

5  admitted.

6        MS. KIPPES:  Thank you, Your Honor.

7     (United States Trustee's Exhibits A through J are

8  admitted.)

9        MS. KIPPES:  I'd also request that the Court take

10  judicial notice of the schedules and Statements of Financial

11  Affairs filed in each of the bankruptcy cases.

12        THE COURT:  Any objection to the Court taking

13  judicial notice of the schedules and the SOFAs?

14     Hearing no objection, the Court will take judicial notice

15  of those, as it is appropriate and on her docket.

16        MS. KIPPES:  Thank you, Your Honor.

17        THE COURT:  You're welcome.

18        MS. KIPPES:  The U.S. Trustee rests.

19        THE COURT:  All right.

20     Ms. Wise, do you wish to call any further witnesses?

21        MS. WISE:  No, Your Honor.  Thank you.

22        THE COURT:  All right.  And do you have any further

23  evidence?

24        MS. WISE:  No, I don't.

25        THE COURT:  Okay.  Thank you.

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 71 of 107

70

1          Okay.  In terms of -- and I gather not, based upon the

2     agenda -- is there anyone else who wishes to lodge any sort of

3     objection at this time?

4          All right.  Hearing no responses, Mr. Grossi, does the

5     Debtor have any other further evidence or witnesses with

6     respect to confirmation?

7               MR. GROSSI:  We don't, Your Honor.

8               THE COURT:  All right.  So it looks like what we are

9     prepared for, then, is closing argument.  Let me take a few

10    estimates with respect to closing arguments.  I think the

11    answer is the same no matter what, that we'll be coming back

12    at 2:30, but let me find out.

13         Ms. Kippes?

14              MS. KIPPES:  Your Honor, probably not more than half

15    an hour.  And as the Court may know, I tend to overestimate

16    because I don't want to disappoint you by taking your time.

17              THE COURT:  You're fine.  You're fine no matter what.

18         Ms. Wise, how much time do you estimate for your closing?

19              MS. WISE:  I estimate maybe 15 minutes, maybe 20.

20              THE COURT:  Okay.  All right.  Mr. Grossi, on behalf

21    of the Debtors?

22              MR. GROSSI:  Subject to hearing the other closing, I

23    would expect it to be under 10 minutes, Your Honor.

24              THE COURT:  Okay.  All right.

25         Anyone else wish to make remarks in closing, so I can just

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 72 of 107

71

1   factor it in?

2       All right.  So, based upon the estimates, here's what I'm

3   going to recommend.  I've got a 1:30 and a 2:00 o'clock

4   docket.  I think I'll complete those both by 2:30.  And I

5   think it's probably a good time for everyone to come back at

6   that point.

7       What I would do is I would encourage the Debtors and the

8   Committee to get with Ms. Kippes and Ms. Wise, if possible, to

9   -- if there is any narrowing based upon the agreement reached

10  with the Committee, if there's anything that is specific to

11  shareholders, that is specific to patients and the like, if

12  the releases have been narrowed in any way, the inclusion of

13  fraud and gross negligence exceptions, just to make sure that

14  everyone is talking about the right version of the plan.

15  Okay?

16      And likewise, if it's not the second amended plan, I

17  recognize that the Committee resolution is not going to be in

18  there, but if it's something other than that, then the Court

19  wants to see what we're talking about, too, at the same time.

20      So, with that, the Court will stand in recess until 1:30

21  from the Court's perspective, until 2:30 for this case.  All

22  right.

23              THE CLERK:  All rise.

24              THE COURT:  Thank you.  I'll be on the bench for a

25  second.

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 73 of 107

72

1          (A recess ensued from 12:14 p.m. until 2:41 p.m.)

2                THE CLERK:  All rise.

3                THE COURT:  Please be seated.  All right.  Good

4    afternoon again.  We're going to go on the record in Case No.

5    24-80093, CareMax, Inc.

6        As I recall when we finished, I think evidence had been

7    closed and we were prepared for closing arguments.  Is there

8    anything further?  Mr. Grossi?

9                MR. GROSSI:  Your Honor, if I may, at Your Honor's

10   suggestion we had several conversations during the break.

11   After speaking with Ms. Kippes, we did want to clarify for the

12   record that --

13               THE COURT:  Sure.

14               MR. GROSSI:  -- opt-out notices were not delivered to

15   patients as patients.  So, we have hundreds of thousands of

16   patients.  They were not delivered opt-out notices.  Opt-out

17   notices.  We're not seeking third-party releases from those

18   patients.  There's a discrete number of patients who have

19   claims against the Debtors.  We delivered the bar date order

20   per our procedures, but we're not seeking third-party releases

21   against patients.

22       Further, consistent with the statements that we've been

23   making on the record, we were -- and have consulted with the

24   parties, including the Creditors' Committee, the buyer, and

25   the Secured Lenders -- we're going to add clarifying language

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban    Pg 74 of 107

73

1    to the confirmation order that we're not seeking releases from

2    patients against doctors with respect to medical malpractice

3    claims.  I know that's been a concern of a number of parties,

4    and we just wanted to add some comfort language that we're on

5    the same page on that front.

6        I know that Your Honor asked some questions to our witness

7    from Stretto.  We are working with Stretto and will file a

8    supplemental affidavit that explains Stretto's interactions

9    with Broadridge and how they were able to get comfort that

10    Broadridge effected service to the shareholders.

11            THE COURT:  Yes, thank you.  And again, right when

12    the WebEx was probably cutting off, that is something the

13    Court would ask, is that -- and again, I'm still willing to

14    hear closing arguments with respect to shareholders and the

15    like -- but I do want to better understand how and what was

16    delivered to the shareholders and get the record supplemented

17    in that way.  So thank you very much, Mr. Grossi.

18            MR. GROSSI:  Thank you, Your Honor.  With that, I'll

19    let Ms. Kippes provide her closing.

20            THE COURT:  All right.  And Mr. Grossi, am I correct

21    that the operative language that we'll be discussing today is

22    in the second amended plan?

23            MR. GROSSI:  Yes, Your Honor.  I concur.

24            THE COURT:  Okay.  Thank you.

25            MS. KIPPES:  Your Honor, before I get to my main

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 75 of 107

74

1   argument, I just wanted to address an issue that I raised to

2   the Court in evidence about the definition of Releasing Party.

3   This needs to be clarified either by the Debtors or I'd

4   request that the Court do it.  Definition of Releasing Party,

5   which is in Article 1 of the plan.  I'm looking at Docket 480-

6   2, which I think is the second --

7           THE COURT:  Yes, I'm following you.

8           MS. KIPPES:  -- the second amended plan.  The

9   definition of Releasing Party on Page 20 -- well, it's 23 of

10  81 at the top; at the bottom, it's 16.  It says that a

11  Releasing Party includes all holders of claims or interests

12  that vote to accept the plan.  And then you go way down and it

13  says, provided that in each -- and then flip to Page 17 --

14  case an entity shall not be a Releasing Party if it elects to

15  opt out of the third-party release.

16      And I asked for clarification right before we started

17  here, and I still don't have it.  If someone voted in favor of

18  the plan and also opted out, their opt-out should be

19  recognized.  And that's -- the U.S. Trustee does not approve

20  of opt-outs and it does not agree that opt-outs work.  But

21  nevertheless, I mean, I think it's clear that if somebody says

22  "I like my treatment," check box, "but I don't like this

23  release," check box, that ought to be respected.

24      That's -- so I -- that's on that discrete definitional

25  issue, which I'll just leave for now.  And then I have a brief

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 76 of 107

75

1 argument as well.

2                THE COURT:  Please.

3          CLOSING ARGUMENT ON BEHALF OF THE UNITED STATES TRUSTEE

4                MS. KIPPES:  All right.  All right.  And Your Honor,

5 once again, Meredyth Kippes on behalf of the United States

6 Trustee.

7          First, the United States Trustee adopts the arguments made

8 by me at the hearing on December 17th in connection with the

9 conditional approval of disclosure statement.  The U.S.

10 Trustee also stands on her objection at Docket Entry #452 and

11 the arguments set forth therein.  But I would like to

12 highlight a few points in addition to what is already before

13 the Court.

14          At the beginning of the hearing, Mr. Grossi said that,

15 because they had received 66 opt-out forms, the opt-out

16 worked.  The United States Trustee respectfully disagrees.

17 Mr. Karpuk testified that many of the opt-outs on Exhibit D-

18 60, the release report, are from the same creditor.  In other

19 words, there are multiple opt-outs from the same creditor.

20 When you look at the number of individual creditors/entities

21 that opted out, that brings the number of creditors who opted

22 out down to 43.

23          By my count, there are 442 scheduled general unsecured

24 creditors among the Debtors.  Some of them are duplicates, I'm

25 sure.  But roughly those 43 creditors who opted out account

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 77 of 107

76

1    for about 10 percent of the scheduled general unsecured

2    creditors.  And those opt-outs might not be all unsecured.  I

3    assume that they are.

4         The bulk of the general unsecured creditors are in CareMax

5    Medical Group, LLC, Case No. 24-80102-mvl-11.  That case lists

6    321 general unsecured creditors.  Exhibit D-60 shows nine opt-

7    outs with regard to CareMax Medical Group, LLC.  That's two

8    percent of the creditors in CareMax Medical Group, LLC who

9    returned an opt-out form.

10         As to the parties who received nonvoting notices, the

11    numbers are bleaker.  Mr. Karpuk testified that only five

12    entities that received a nonvoting notice opted out.  That's a

13    poor showing.

14         The certificate of service at Docket Entry #389 shows,

15    again, by my count -- and I did sit in my office and count,

16    Your Honor -- 2,099 nonvoting notices went out, and that

17    includes nonvoting notices that went out to the two entities

18    that were to serve the shareholders.  And so only five opt-

19    outs were returned from the nonvoting notices, according to

20    Mr. Karpuk's testimony.  That's 0.2 percent of the nonvoting

21    notices returning opt-out forms.

22         And there may be a good reason for that.  The nonvoting

23    notices which are attached to the solicitation order as

24    Exhibit 6-A and 6-B, and they're at UST-C, okay, Page 2 of the

25    nonvoting notice tells the recipients that they are not

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 78 of 107

77

1    entitled to vote.

2         And we can't know because none of them are here, but it's

3    not beyond the realm of possibility that people just stopped

4    reading there.  It was not until Page 3 that the third-party

5    release and the need to opt out is mentioned, such that these

6    parties who would not otherwise need to respond to the plan

7    are notified that they do need to respond if they do not want

8    to have a broad release of the panoply of third parties

9    defaulted upon them.

10        And then at Page 4 of the nonvoting notice is the opt-out

11   form, and it is entitled, Optional: Opt-Out Form.

12        Further, as discussed in the U.S. Trustee's objection to

13   confirmation and as I argued at the hearing on conditional

14   approval of the disclosure statement, as a matter of law opt-

15   outs cannot confer consent.  Post-*Purdue*, we know that the

16   Supreme Court has determined that nonconsensual third-party

17   releases are not a permissible plan term.

18        As discussed in the U.S. Trustee's briefing and in my

19   argument on December 17th, you cannot do by default what you

20   cannot do straightforwardly.  Defaulting parties into giving a

21   release of nondebtors is not consent to that release.  Default

22   does not consent -- to confer consent to a release of an

23   unknowable list of claims.  Default is not enough to confer

24   consent to a release of an unidentified list of related

25   parties.

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 79 of 107

78

1       And the default concept is important here.  For instance,

2  no one would say that a party against whom a default judgment

3  is imposed has agreed to that judgment being entered, but that

4  is exactly what the Debtors are asking you to do in the

5  context of a third-party release with an opt-out.  They are

6  asking you to construe a creditor's default as affirmative and

7  non-consent, and it's just not.

8       This is why Judge Everett looked to the contract model in

9  *Ebix* to determine whether there has been affirmative consent

10  to the third-party release.  As the Court knows, the general

11  rule of contracts is that silence cannot manifest consent.

12  State law governs whether silence is consent, and none of the

13  requirements under state law governing unilateral contracts

14  applies in this case.

15       Under the state law of contracts, whether you apply Texas

16  law or New York law, which is the governing law in the plan,

17  there are three such exceptions that may render silence as

18  consent.  One, assent to contract is supported by the party's

19  course of conduct; two, assent to contract arises where the

20  offeree accepts a benefit of the offer; and three, assent to

21  contracts arises where the offeree misleads the offeror that

22  the offeree may remain -- by remaining silent intends to

23  accept the offer.

24       And with regard to the third one, Judge Everett explained

25  in his *4 West* ruling that "The exception does not apply absent

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 80 of 107

79

1   some element of deception or dishonesty."

2       There is no course of conduct between the third parties

3   and the releasing parties that would imply consent to a third-

4   party release.  There's no benefit of the offer to release --

5   the offer to release nondebtor third parties for the releasing

6   parties to accept.

7       And the offeree's silence and their failure -- their

8   failure to opt out is not misleading.  There's no deception or

9   dishonesty here on the part of the releasing parties who did

10  not submit an opt-out form.  They are simply being defaulted

11  into giving a release.

12      Finally, the release language in the plan regarding third-

13  party releases is broad and far-reaching.  Related parties

14  could reach deep into corporate structure, and maybe even to

15  relatives of individuals.  Personal injury claims or claims

16  wholly unrelated to these bankruptcy cases could conceivably

17  be reached by the third-party release.

18      The U.S. Trustee is gratified by the removal or the

19  clarification with regard to patients in the third-party

20  release, but it is not enough.  The releasing parties -- the

21  released parties are receiving an extraordinary gift of third-

22  party release with no consideration.  There's not a mutual

23  release.  There is nothing.

24      And to the extent the Debtors would like to characterize

25  distributions under the plan as consideration for a release,

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 81 of 107

80

1    creditors are entitled to distributions under a plan whether

2    or not they grant a release.

3        Thank you, Your Honor.  I am ready for any questions, if

4    you have any.

5            THE COURT:  Let me hear the remainder of the

6    arguments and then I'll --

7            MS. KIPPES:  Okay.

8            THE COURT:  I'll address any questions at that time.

9    Thank you very much, Ms. Kippes.

10           MS. KIPPES:  Thank you.

11           THE COURT:  Ms. Wise?

12      CLOSING ARGUMENT ON BEHALF OF THE SECURITIES AND EXCHANGE

13                            COMMISSION

14           MS. WISE:  Good afternoon, Your Honor.  For the

15   record, Jolene Wise appearing on behalf of the Securities and

16   Exchange Commission.

17       As you know, we filed our limited objection at Docket 466,

18   which sets out a lot of information which has been circulated

19   to the parties and to Your Honor.  I want to focus on the

20   facts in this case regarding primarily shareholders.

21           THE COURT:  Uh-huh.

22           MS. WISE:  Shareholders are a nonvoting class.  Their

23   interests are being canceled.  They're not receiving any

24   distribution, meaning they're not receiving any consideration.

25   The notice of nonvoting status is a lengthy 10 pages, and

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 82 of 107

81

1    while the release is disclosed and conspicuous with the

2    single-spaced legalese paragraphs, which lawyers and perhaps

3    sophisticated investors might be able to understand, but would

4    the average retail investor be able to understand what rights

5    they're being asked to relinquish?  And did the shareholders

6    receive the nonvoting notice?  And we want to look at that

7    point first.

8        The Debtors requested and received court authority to not

9    file the list of equity holders.  That's at Docket 78, Page 3.

10    Ascertaining addresses for return mail was waived in the

11    solicitation order at Docket 270 at Page 5.  We learned today

12    that a little -- that over 1,700 nonvoting status packages

13    were provided through a third-party vendor for distribution.

14    And having not seen the additional supplemental information

15    that Debtors' counsel indicated is coming, I'm going to go

16    forward with what I have heard today and do know.  The Debtor

17    has 3.8 million shares issued and outstanding.  And while

18    about 60 percent of those shares are held by six parties, that

19    leaves a significant number of shares held by retail public

20    shareholders.

21        There's no confirmation that record holders received the

22    notice, and there's no confirmation that nominee holders

23    forwarded the notice or shareholders timely received the

24    notice or beneficial holders received the notice at all or in

25    a timely manner.

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 83 of 107

82

1    And I just want to give an anecdote that in the middle of

2    December I mailed my holiday card at the main post office in

3    Chicago and just found out last week that some are being

4    delivered here in Chicago.  So the mail system, especially

5    over the holidays, I believe they've been overwhelmed.  And

6    again, we're not sure who received the notices and if they

7    were received timely.

8    Ms. Kippes pointed out the 66 opt-out forms, that many

9    were duplicative.  Many -- most or all were by creditors and

10    possibly a landlord.  But it appears that none were

11    shareholders.  And again, we don't know if shareholders

12    received the notice, again, in a timely fashion or knew what

13    to do with them.

14    So I want to turn now to did the shareholders understand

15    the notice.  Even if they received them, can an average

16    shareholder follow the several pages of single-spaced

17    legalese, all the instructions?  I think it's Page 3 or 4 of

18    the nonvoting status notice, at the bottom it says, This is

19    for informational purposes only.  Seeing that, what would an

20    average shareholder think?  And then, as Ms. Kippes pointed

21    out, the opt-out form says optional.

22    Do the shareholders understand what rights they are giving

23    up, especially in light of the third-party release not carving

24    out actual fraud, willful misconduct, and gross negligence?

25    Additionally, in the package, the nonvoting status

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 84 of 107

83

1  package, looking at the ninth page of the ten pages, or I

2  believe it's Page 5 of the opt-out form, shareholders are

3  required to certify four statements to the Bankruptcy Court

4  and the Debtors, including a statement that holders have

5  received a copy of the nonvoting status to holder conclusively

6  presumed to accept the plan, when in fact the shareholder

7  received the notice of nonvoting status to holders of impaired

8  claims or interests conclusively presumed to reject the plan.

9  I believe that this discrepancy would cause confusion for

10  those desiring to opt out but being unwilling to certify to

11  the Court.  It would, to me, as a professional, as a lawyer

12  reading it.  I think an average shareholder would be confused

13  about, what am I supposed to do?  Do I certify to the Court

14  and is that lie?  Am I going to be in trouble?

15      When thinking about it, can/would/should shareholders be

16  expected to take on the burden of hiring an attorney to advise

17  them, especially when their shares are canceled, they've lost

18  their investment, and they're receiving no consideration in

19  exchange for that?

20      So, under these circumstances, respectfully, the SEC

21  believes the Court should not assume the shareholder who did

22  not submit an opt-out form received the form, was willing to

23  certify they received a document they did not receive, and

24  fully understood they were giving up rights against released

25  parties, especially without the carve-out in the third-party

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 85 of 107

84

1 | release.

2 |     And turning to the carve-out, it's particularly harmful to

3 | shareholders to be precluded from pursuing (inaudible) based

4 | claims.  And as the Debtor mentioned, these might be

5 | derivative claims, but we don't know.  And there could be

6 | additional claims out there that affect creditors and possibly

7 | shareholders outside of actual fraud, but they are being

8 | released.  And what this does is it releases wrongful

9 | behavior, and is that right?  And in doing so, provides a

10 | greater benefit to releasees to which they're not entitled,

11 | and they wouldn't be entitled if they filed for bankruptcy

12 | themselves.

13 |     Additionally, the plan does provide a gatekeeping

14 | provision which creates a mechanism which would determine

15 | which lawsuits may go forward, so if the Debtors are concerned

16 | about a flood of lawsuits against the released parties, they

17 | had already taken care of that with the gatekeeping provision.

18 |     The proposed confirmation order at Paragraph 129 which

19 | addresses executory contracts surrounding the purchase and the

20 | core center purchasers, those provide a carve-out in this

21 | discrete instance for gross negligence and willful misconduct,

22 | and so I have to question why those two things, along with

23 | actual fraud, cannot be included in the third-party release.

24 |     In the SEC's view, silence by a shareholder who is not

25 | allowed to vote, is receiving no consideration under the plan,

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 86 of 107

85

1   and may not have received notice or understood the notice, is

2   not an affirmative act constituting consent.  And therefore,

3   the SEC respectfully requests this Court to require the

4   released be amended to carve out actual fraud, willful

5   misconduct, and gross negligence, and to either deny

6   confirmation of the plan, as the release is not consensual, or

7   alternatively deem shareholders' silence is not an affirmative

8   act of consent.  Therefore, shareholders are not bound by the

9   third-party release.

10      Are there any questions?

11          THE COURT:  Not at this time, Ms. Wise.  Thank you

12   very much for your argument.  Appreciate it.

13      Anyone else wish to be heard with respect to confirmation

14   before I go to the Debtors?

15      Mr. Grossi?

16              CLOSING ARGUMENT ON BEHALF OF THE DEBTORS

17          MR. GROSSI:  Thank you, Your Honor.  Anthony Grossi,

18   Sidley Austin, on behalf of the Debtors.

19      We will primarily rely on our papers and the evidence

20   before the Court.  I just wanted to highlight a few points

21   after hearing some of the arguments by Ms. Kippes and Ms.

22   Wise.

23      The Fifth Circuit and courts in this district routinely

24   find that notice is consent.  That notice is not predicated on

25   a brightline response rate.  We served notice on parties, and

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 87 of 107

86

1    the evidence shows that people read that notice, they elected

2    to opt out, and they turned that ballot in.  The process that

3    we served notice on shareholders is consistent with how notice

4    is provided to equity holders in analogous situations.

5        I understand that the Court and Ms. Wise would like to

6    better understand the details around that, and we absolutely

7    will provide that.  But that affidavit will show that it's

8    precisely how notice is provided to shareholders in virtually

9    every shareholder interaction.

10       Further, not a single shareholder objected to the plan.

11   Not one.  No one's here objecting or complaining about the

12   case.  In addition to the publication notice that we had, this

13   case has received its fair attention in the press.  If there

14   was a shareholder who had a grievance, we strongly suspect

15   they would be here before the Court today vocalizing their

16   concerns.

17       Only the SEC has risen on behalf of the shareholders, and

18   on the behalf of hypothetical shareholders.  Our third-party

19   releases were absolutely integral to our Chapter 11 plan and

20   the overall restructuring transaction.  It was a key item and

21   something that Your Honor may have observed with the reams of

22   paper that was on the docket previous to settlement that was

23   reached.

24       It was a key component of the settlement.  It was

25   important to the Committee.  It was important to our buyers,

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A - Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 88 of 107

87

1   who are purchasing reorganized debtors and assets from the

2   estates.  And it was important to our secured lenders, who

3   expended new capital and who are taking a significant

4   impairment on account of their secured debt.

5       With respect to consideration, these parties, the secured

6   lenders expended capital.  The Committee is compromising

7   rights.  The buyers are putting in cash consideration.  And

8   our board and our officers shepherded this case through this

9   process.

10       The alterative to all of this is it could have been a

11   massively value-destructive liquidation.  There could not have

12   been returns to creditors, and it could have resulted in

13   potential liability rather than release to shareholders.

14   These Chapter 11 cases are a home run result for all

15   stakeholders, and the support that we have before the Court is

16   indicative of that.  Not a single economic stakeholder is up

17   here objecting to these releases, only the Government.

18       We respectfully request that the Court overrule these

19   objections, approve the third-party releases proposed in our

20   plan, subject to the clarifying edits we discussed at the

21   outset, and confirm the case subject to the order that we're

22   proposing.

23       Thank you, Your Honor.

24           THE COURT:  All right.  Thank you.

25       I'm going to take a brief recess, and I'll come out and

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 89 of 107

88

1    I'll discuss with you my ruling.  And here's where I am right

2    now.  And so before I give a ruling when I come out, I'll give

3    parties an option to speak further to the extent that there's

4    any movement.

5         I appreciate that the Debtor has clarified that patients

6    are not being held to the third-party releases.  What I'll say

7    with respect to this is none of the issues with respect to

8    third-party releases affect whether or not, if you had claims

9    against these Debtors, you had to file them.  And so once you

10    get to the due process of receiving the bar date notice,

11    whether or not you sent in a proof of claim form, and

12    essentially that which the plan does to claimants, that's all

13    aside from third-party releases.  So I'll say that, again, I

14    am thankful that that clarification is going to be made.

15         I can tell you that with respect to third-party releases,

16    one of the things that is always key to this Court is due

17    process.  I appreciate that the process worked to the extent

18    of about 10 percent with respect to creditors.  In the whole

19    scheme of things, as big as these cases are, as much dollars

20    as are involved, and really with the importance of what the

21    Debtor provides to the community, all of that being equal, it

22    was a relatively small number of claimants in the case.  I

23    think we have less than 500 general unsecured claimants.  And

24    so although we have in the neighborhood of 10 percent of opt-

25    outs -- and I grant the United States Trustee, all 66 do not

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 90 of 107

89

1    represent 66 individual -- but at the same time, individual

2    creditors are what they are.  I don't remember the exact name

3    of the entities, but KPV RE Florida is a different entity than

4    KPV RE Georgia, for example, and I'm making up a hypothetical

5    name there.

6        So, from that perspective, the Court sees some

7    differentiation there.

8        I am troubled that any release would not have a carve-out

9    for fraud, willful misconduct, or gross negligence.  I don't

10   believe that I've ever approved one without that, so the

11   Debtors need to consider that.

12       The next thing that I'll note is if the Debtor is going to

13   tell me that there are narrow third-party releases, I really

14   need to take a look at your definition of Related Party.  I'm

15   not sure who misses related party.  That is a really, really

16   broad definition.

17       Although there is some evidence of there being

18   consideration for releases for those that receive under the

19   plan, I appreciate the compromise and the settlement that was

20   reached with the Unsecured Creditors' Committee, and that does

21   bear a lot of weight with respect to the Court, because at the

22   end of the day, you are correct, Mr. Grossi, the economic

23   participants and the economic beneficiaries under this plan

24   have primarily agreed.

25       But at the same time, I can't approve something -- I'll

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 91 of 107

90

1   just give you an example.  Any person, any entity, current or

2   former directors, managers, officers, Committee  members,

3   members of any Governing Body, which has its own definition,

4   equity holders, affiliated investment funds, investment

5   vehicles, managed account funds, predecessors, participants,

6   successors, assigns:  I can literally go on for what appears

7   to be 10 more lines.  In what world is a shareholder of a

8   released party entitled to a release, a third-party release?

9   That is overly broad.  And so I'll let you guys take a look at

10  it before I come back out.

11       With respect to the opt-outs, the only time I ever approve

12  opt-outs is if, at the end of the day, service can be proven.

13  I will require that the affidavit or a declaration that

14  explains the service to the shareholders be out there.

15       I'm still going to consider a little bit harder of whether

16  or not the shareholder opt-out works.  Query whether it's

17  something that is critical to the Debtors.

18       Again, if consideration is not a requirement from the

19  Debtors' perspective, what are they getting?  They're getting

20  canceled.  They're getting zeroed out.  And so what cause of

21  action could a shareholder have against the purchasers?  What

22  cause of action could a shareholder have against the First

23  Term DIP Lenders?  So I want to think a little bit more about

24  that and find out the importance of that to the parties.

25       And the only other thing is with respect to the gatekeeper

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 92 of 107

91

1   provision.  I know that that's been brought in a lot of

2   different plans in this district.  Actually, I think, approved

3   by the Fifth Circuit.  I want to make clear to the parties

4   that notwithstanding anything in the plan, that no party is

5   going to be bound by a release if they didn't receive notice

6   of the plan and an opportunity to opt out of the release

7   thereunder.  So, again, service is going to be key.  Due

8   process is going to be key.

9       So I'll give the parties the benefit of those preliminary

10   comments.  I'm going to go and sit with your order for a

11   moment, and I'll come out and give my ruling.

12             THE CLERK:  All rise.

13       (A recess ensued from 3:12 p.m. to 3:27 p.m.)

14             THE CLERK:  All rise.

15             THE COURT:  Please, be seated.  All right.  We're

16   going to go back on the record in Case No. 24-80093.

17       All right.  Before the Court is the confirmation of the

18   Debtors' plan in CareMax.  Based upon the settlement reached

19   with the Unsecured Creditors' Committee on the eve of the

20   hearing, there was, I guess, little disagreement, few

21   objections remaining with respect to the plan and the primary

22   let's just say 1129 and 1123 factors.

23       And so the Court finds that, obviously, with respect to

24   those factors, that the plan satisfies the greater part of

25   Section 1129 of the Code as it pertains to confirmation in

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 93 of 107

92

1    this context.

2         Most of the angst, if you will, was with respect to the

3    releases that were found in the plan.  This Court in

4    particular has approved opt-out releases in a number of cases,

5    but as I've always said, I'll turn a phrase from my chief

6    judge, facts matter and due process matters, and I always

7    require both.

8         There was no occasion for the Supreme Court to express a

9    view on what constitutes a consensual release in its recent

10   decision in *Purdue Pharma*, and the Supreme Court confined its

11   decision then to the question presented.

12        When I have approved opt-outs in my court, it's always

13   based upon the evidence that the affected parties were

14   afforded constitutional due process and a meaningful

15   opportunity to opt out.

16        As recently as in the *Serta* opinion that just came down by

17   the Fifth Circuit, the Fifth Circuit there speaks about

18   implied consent.  It speaks about a situation in which a party

19   was presented with an opportunity to object and did not.  And

20   so, from this perspective, the Court has routinely gotten

21   comfortable with the opt-out process as it pertains to plans

22   of reorganization.  And specifically as in this case, we have

23   10 percent of those creditors who received opt-out forms

24   together with their ballots and in fact did so.

25        Likewise, based upon the consideration that was given to

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 94 of 107

93

1    creditors, based upon the settlement specifically with the

2    Official Committee, the Court finds that there was

3    consideration that was given to the various primary named

4    released parties under the plan, each of which forms a very

5    critical piece towards the confirmation of the plan, whether

6    that be the purchasers, whether that be the first term lien

7    debt holders, that each of those has provided consideration as

8    part of the overall reorganization of the Debtors.

9        I don't have any problem granting the discharge in this

10    case.  There will be a wind-down estate.  Part of the practice

11    was actually not sold at auction.  And so from that

12    perspective, I'll dispose of the discharge issue very quickly.

13        I won't go deep into the opt-outs themselves.  What I'll

14    say is, again, parties in interest were provided with detailed

15    notices about the plan, the deadline to object to the plan,

16    the voting deadline, and the opportunity to opt out.

17        The language was bolded.  The language was conspicuous.

18    And here, save and except with respect to shareholders, I do

19    believe that the balloting process and the opt-out process not

20    only worked but it was designed to do so and it was designed

21    for people to be able to take in that information and

22    understand that if they were served with it that they had a

23    duty to act.

24        I also have said numerous times that I require releases to

25    be narrowly tailored to the case and that they contain a

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 95 of 107

94

1    carve-out for claims unrelated to the Debtor, for claims

2    preserved by the plan or related documents, or claims arising

3    from an act or omission involving actual fraud, gross

4    negligence, willful misconduct, or criminal conduct.  And for

5    those reasons, any release that's going to be granted in the

6    plan will require a carve-out for just those things:  fraud,

7    gross negligence, willful misconduct, or any sort of criminal

8    conduct.

9        For the aforementioned reasons, I find the definition of

10   Related Party entirely too broad.  I recognize that the

11   settlement with the Committee is going to have to be put into

12   a newly-amended plan that will be put before the Court for

13   confirmation.

14       To the extent the Debtors want one more crack at some

15   language, either in a related-party concept to do as least

16   damage to the otherwise-defined terms in your plan, or if you

17   want to work the actual parties that you think are related

18   parties and deserve a release in there.  I'll give you one

19   more crack at it.

20       But beware, I will line-item veto it if I think that the

21   definition is too broad, because the one that's contained in

22   the definitions in the plan now may include me, as much as I

23   can tell.  It's entirely too broad.  So I'll let you take a

24   shot at that.

25       Likewise, if anyone has been designated as -- there's a

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 96 of 107

95

1    process in the third-party releases about the designations by

2    Mr. Borkowski.  If there has been somebody designated, it

3    should be a little clearer.  I think it was to be designated

4    prior to the hearing.  So if someone is designated as a

5    released party, that should be clear in the plan.

6        With respect to the gatekeeper provision, I want some

7    clarifying language in there that, notwithstanding the

8    foregoing, no party shall be bound by a release that did not

9    receive notice of the plan and an opportunity to opt out of

10   the releases thereunder.  So, again, we don't have to fight

11   about the gatekeeper provision if they didn't receive notice.

12       The releasing party language, I agree with the United

13   States Trustee, seems to be a little unmatched to the terms of

14   the plan.  If someone accepted the plan and opted out, I think

15   the opt-out is good, and maybe that's just a definitional bust

16   there.  So I'll ask you to look at that.

17       With respect to the third-party releases themselves,

18   there's certainly evidence in the record that they were an

19   integral part of the plan and were the conditions of the

20   transactions themselves.

21       I do believe that plans are living and breathing

22   contracts, and that often the expectation of releases is a

23   core consideration among the parties instrumental in the

24   development of the plan and crucial in facilitating and

25   gaining support for a plan, including any concessions that

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 97 of 107

96

1    were made along the way by buyers, by first lien lenders, and

2    parties of that measure.

3        And so the Court will approve the third-party releases

4    with two exceptions.  Number one, with respect to the

5    shareholders, for the reasons articulated by Ms. Kippes and

6    Ms. Wise, I find the shareholder opt-outs to have been

7    confusing.  Again, you're receiving a nonvoting status notice

8    and then you're about four or five pages in being told that

9    your shares are being canceled and you're getting nothing when

10    you're told, oh, by the way, you have an optional opt-out.  It

11    doesn't scream "Speak now or forever hold your peace."

12        And again, I understand Mr. Grossi, when you say, well,

13    consideration is not a requirement, except that that's what

14    the plan says.  Specifically, in the third-party release

15    section, the plan specifically states "in exchange for good

16    and valuable consideration."

17        I'll be honest, I can't find consideration for

18    shareholders under this plan.  So, for those reasons, I won't

19    hold shareholders to have given the third-party releases.

20        And finally, my last comment is both in Section -- Article

21    9-A and Article 9-B, there is a paragraph that says this also

22    constitutes a 9019.  I don't think I have evidence of a 9019.

23    And at the end of the day, that 9019 would have had to have

24    been a compromise with the third-party releasors.  And again,

25    I don't think that I have evidence of that.

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 98 of 107

97

1     I believe that I can approve these third-party releases as

2     part of -- as part of the Code, as part of confirmation and

3     1123, but I don't believe that I have evidence on this record

4     of a 9019.

5          So, with those clarifying remarks, if the Debtors agree to

6     those terms, the Court will confirm the Debtors' plan of

7     reorganization.

8          Mr. Grossi?

9          MR. GROSSI:  Thank you, Your Honor.  Thank you for

10    the explanation.  Hear you loud and clear on the Related Party

11    definition.

12         Just to provide context, because we will do some surgery

13    to --

14         THE COURT:  Sure.

15         MR. GROSSI:  -- that particular definition, part of

16    the reason for the expansive nature of the definition is

17    because we're dealing with financial buyers and the financial

18    lenders and they have a Byzantine corporate structure and

19    require some type of comfort that their managers three levels

20    up --

21         THE COURT:  Right.

22         MR. GROSSI:  -- are going to be covered by the

23    release.  But I hear Your Honor's comments and we will

24    endeavor to make it as surgical as possible.

25         THE COURT:  Right.  And, again, I think that there is

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 99 of 107

98

1    a way, like you said, to do surgery to it that is constructive

2    in the way, like you said, if those affiliates, for lack of a

3    better term, are part and parcel to this transaction, then

4    there's a way to link them.  But the current definition, I'm

5    pretty sure it's me, it's my neighbor, --

6            MR. GROSSI:  Understood, Your Honor.

7            THE COURT:  -- it's my neighbor's sister.  So it's

8    really, really expansive as written.

9        So I understand why you put it into a separate definition

10   so that you don't have to continue to say successors,

11   predecessors, and assigns kind of thing repeatedly.  But at

12   the end of the day, if I'm going to reach directors and

13   officers and shareholders and things of that nature, I'm going

14   to have to really understand how I'm getting there.

15       But with that said, for the actual released parties and

16   the people in their, as you said, organizational structure,

17   I'm --

18           MR. GROSSI:  And I just had one clarifying question

19   --

20           THE COURT:  Yes.

21           MR. GROSSI:  -- on the 9019.

22           THE COURT:  Sure.

23           MR. GROSSI:  Is that related to the third-party

24   releases, or the Debtor releases and the third-party releases?

25           THE COURT:  Well, if you want to point me to where

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 100 of 107

99

1    the 9019 evidence is, I'm willing to take a look at it.  I

2    didn't find it.

3              MR. GROSSI:  Okay.

4              THE COURT:  I looked in all of the declarations,

5    which is obviously primarily what was relied upon.  Obviously,

6    I admitted a great deal of evidence.  If you want to show me

7    where the evidence is that supports either of the two 9019

8    findings that are contained or the 9019 provisions that are

9    contained in the Debtor releases and in the -- perhaps for the

10   Debtor releases, we can get there.

11             MR. GROSSI:  And that's what I was going to --

12             THE COURT:  Okay.  Let me take a look.

13             MR. GROSSI:  On the Debtor releases, you know, Mr.

14   Borkowski did run a comprehensive investigation to look at

15   material claims and found that those claims didn't have value.

16   That was the genesis for the support of the 9019 standard as

17   it relates to the Debtor releases.

18        Understand the comments with respect to the third-party

19   releases, given the other comments that Your Honor has made.

20   But I --

21             THE COURT:  I agree with you.

22             MR. GROSSI:  Thank you, Your Honor.

23             THE COURT:  I agree with you.

24             MR. GROSSI:  Okay.

25             THE COURT:  So Article 9, Section A, that paragraph

24-10118-mg   Doc 1270-1   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit A -
Confirmation Hrg Tr. - In re CareMax   Inc.   No. 24-80093 (MVL) (Ban   Pg 101 of 107

100

1  can stay in there.

2          MR. GROSSI:  Thank you, Your Honor.

3          THE COURT:  I agree.  That triggers a different part

4  of my brain that remembers that.

5          MR. GROSSI:  We will make the comments as directed

6  and suggested by Your Honor and we'll come back to you with a

7  proposed confirmation order.

8          THE COURT:  Excellent.  And so if you will file under

9  certification of counsel a version that's obviously signed off

10  by the Creditors' Committee for certain with respect to the

11  settlement that was announced here today, and if you could

12  pass that version by Ms. Kippes and Ms. Wise as well, I would

13  certainly appreciate that.  And then that version is what the

14  Court will review, along with the form of confirmation order,

15  for approval.

16          MR. GROSSI:  Thank you.

17          THE COURT:  Okay.

18          MR. GROSSI:  And thank you again, Your Honor, for

19  your Court and your staff's time and flexibility.  We really

20  appreciate the accommodations.

21          THE COURT:  You're very welcome.  And again, I am

22  around all week, although I'm not on the bench on Friday, so

23  if you're looking for me for Friday, just if you upload

24  something make sure to let Ms. Harden know that it's there so

25  that I can turn to it during the day.

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 102 of 107

101

1          MR. GROSSI:  Absolutely.  Thank you, Your Honor.

2          THE COURT:  All right.  Sir.  Mr. Fox, right?

3          MR. FOX:  Yeah.  Mr. Fox.

4          THE COURT:  Yes.

5          MR. FOX:  Yes.  From McGuireWoods on behalf of

6    ClareMedica Viking.

7       We'd ask to be included in that distribution list on the

8    certificate of counsel, as we represent one of the purchasers.

9          THE COURT:  Absolutely.  Absolutely.  Yes.  And I

10   didn't mean to cut anyone off.  I just was addressing the

11   primary objectors, and again, with the settlement that was

12   reached with the Committee.  Fair enough.

13         MR. FOX:  Thank you, Your Honor.

14         THE COURT:  Thank you.

15         MR. FEINSTEIN:  Once again, Your Honor, Robert

16   Feinstein from Pachulski for the Committee.

17      Your Honor, thank you, first of all, for all the -- I know

18   we buried you with paper and this took a lot of time and

19   attention, so we appreciate that.

20      I did want to flag one thing as part of the Committee

21   settlement which we will bake into the plan.  There'll

22   probably be some minor changes to the confirmation order.  But

23   one of the elements was that the Committee will select the

24   Plan Administrator.

25         THE COURT:  Yes.

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 103 of 107

102

1        MR. FEINSTEIN:  So there's a form of Plan

2   Administrator agreement in the plan supplement that's now

3   outdated.  We'll have a -- we may well work off of that form

4   or a different form.  There'll be a different person,

5   obviously, but also different compensation structure.  We're

6   going to try our best to get that one filed or at least

7   identify the Plan Administrator to you simultaneous with the

8   submission of the revised plan and order.

9        THE COURT:  Right.  And to the extent that it's not

10  available, just, you know, to be filed within seven days of

11  the entry of the confirmation order or something --

12       MR. FEINSTEIN:  That would be great.

13       THE COURT:  -- that you could work with and then

14  meet.

15       MR. FEINSTEIN:  That would be great, Your Honor.

16  Thank you very much.

17       THE COURT:  Thank you very much, Mr. Feinstein.

18     Also, my staff is reminding me that I think we probably

19  carried a few motions to seal to this hearing.  Are there any

20  objections to those motions?  I think those were the evidence

21  that was filed under seal by either the Committee, the Debtor,

22  or both.

23     Ms. Kippes?

24       MS. KIPPES:  Your Honor, I didn't object.  I did ask

25  for my standard --

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 104 of 107

103

1          THE COURT:  Of course.

2          MS. KIPPES:  -- "You can give me that stuff"

3    language.

4          THE COURT:  Absolutely.

5          MS. KIPPES:  Okay.

6          THE COURT:  Right.  And I think that was a question

7    that I had with Ms. Harden, is so long as they're willing to

8    give it to the United States Trustee and there's no objection,

9    that it was going to be fine with the Court.

10       So, for the record, to the extent that the Court hasn't

11   already done so, each of those motions is granted, so long as

12   they are provided to Ms. Kippes on behalf of the United States

13   Trustee's Office, noted as confidential.  All right.

14       With respect to the objections, obviously, the Debtors are

15   going to be working through those.  Just let us know when

16   those are ready to be reset, if need be.  Obviously, if

17   they're resolved by stipulations and order, that's fine with

18   the Court.  You can upload those.  And again, let Ms. Harden

19   know if they're ready for entry.  Ms. Hoffman always does.

20   Thank you for that.

21       I think that's it.  Anything further?

22          MR. GROSSI:  Thank you, Your Honor.

23          THE COURT:  All right.  You guys have a good one.

24   Court will stand adjourned for the day.

25          THE CLERK:  All rise.

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 105 of 107

104

1          (Proceedings concluded at 3:46 p.m.)

2                              --oOo--

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20                          CERTIFICATE

21      I certify that the foregoing is a correct transcript from
the electronic sound recording of the proceedings in the
above-entitled matter.

22

23      **/s/ Kathy Rehling**                          **01/31/2025**

24  _____      _____
Kathy Rehling, CETD-444                              Date
Certified Electronic Court Transcriber

25

105

INDEX

PROCEEDINGS                                                           6

WITNESSES

Jo Ann Rainbow Heart Johnson
- Examination by the Court                                          24

U.S. Trustee's Witnesses

Brian Karpuk
- Direct Examination by Ms. Kippes                                  37
- Cross-Examination by Ms. Wise                                     50
- Examination by the Court                                          52

Paul Rundell
- Direct Examination by Ms. Kippes                                  54
- Cross-Examination by Mr. Muenz                                    65
- Examination by the Court                                          66

EXHIBITS

Debtors' Exhibits 1 to 94                             Received      20

United States Trustee's Exhibits A through J     Received           69

Judicial Notice to be Taken of Debtors'                            69
Schedules and Statements of Financial Affairs

CLOSING ARGUMENT

- By Ms. Kippes                                                     75
- By Ms. Wise                                                       80
- By Mr. Grossi                                                     85

RULINGS                                                            91

    Application to Employ Ordinary Course Professionals as
    Other Professional - Debtors' Motion for Entry of an
    Order (I) Authorizing the Debtors to Retain and
    Compensate Professionals Utilized in the Ordinary Course
    of Business and (II) Granting Related Relief Filed by
    Debtor CareMax, Inc. (290)

    Confirmation Hearing and Final Approval of Disclosure
    Statement Hearing Set, Disclosure Statement filed by
    Debtor CareMax, Inc. (19)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

24-10118-mg    Doc 1270-1    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit A -
Confirmation Hrg Tr. - In re CareMax    Inc.    No. 24-80093 (MVL) (Ban    Pg 107 of 107

106

INDEX
Page 2

RULINGS, cont'd.                                                        91

     Motion to Reject Unexpired Lease filed by Debtor
     CareMax, Inc. (405)

     Debtors' Emergency Motion for Entry of an Order (I)
     Authorizing the Debtors to File Certain Exhibits
     Under Seal and (II) Granting Related Relief Filed
     by Debtor CareMax, Inc. (474)

END OF PROCEEDINGS                                                     104

INDEX                                                              105-106