**<u>Exhibit C</u>**

Confirmation Hr'g Tr.

*In re The Container Store Grp., Inc.*, No. 24-90627 (ARP) (Bankr. S.D. Tex. Jan. 24, 2025)

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 24-90627-11 |
| | § | HOUSTON, TEXAS |
| THE CONTAINER STORE GROUP, | § | FRIDAY, |
| INC., ET AL, | § | JANUARY 24, 2025 |
| DEBTORS. | § | 12:59 P.M. TO 2:02 P.M. |

**CONFIRMATION HEARING**

BEFORE THE HONORABLE ALFREDO R. PEREZ
UNITED STATES BANKRUPTCY JUDGE

| | |
|---|---|
| APPEARANCES: | SEE NEXT PAGE |
| COURTROOM DEPUTY: | AKEITA HOUSE |
| COURT RECORDER: | AKEITA HOUSE |

TRANSCRIPTION SERVICE BY:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 Eldridge Road, #144
Sugar Land, TX 77478
281-277-5325
mary@judicialtranscribers.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

24-10118-mg    Doc 1270-3    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.    Inc.    No. 24    Pg 3 of 47

2

**APPEARANCES (VIA HYBRID)**:

```
FOR THE DEBTORS:               HUNTON ANDREWS KURTH, LLP
                               Ashley Harper, Esq.
                               Tad Davidson, Esq.
                               Philip Guffy, Esq.
                               600 Travis, Ste. 4200
                               Houston, TX  77002
                               713-220-3810

                               LATHAM & WATKINS
                               Hugh Murtagh, Esq.
                               Jonathan Weischselbaum, Esq.
                               Amy Quartarolo, Esq.

                               Tim Dillman, Esq.


FOR THE TRUSTEE:               OFFICE OF THE US TRUSTEE
                               Ha Nguyen, Esq.
                               515 Rusk St., Ste. 3516
                               Houston, TX  77002
                               202-590-7962


FOR THE AD HOC GROUP
OF TERM LENDERS:               PAUL HASTINGS, LLP
                               Charles Persons, Esq.
                               2001 Ross Avenue
                               Suite 700-168
                               Dallas, TX  75201
                               972-936-7500


FOR US SECURITIES AND
EXCHANGE COMMISSION:           SECURITIES & EXCHANGE
                               COMMISSION
                               Patricia Schrage, Esq.
                               100 Pearl Street
                               New York, NY  10004
                               212-336-0163


(Please also see Electronic Appearances.)
```

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 4 of 47

3

**INDEX**

| WITNESSES: | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|

(None called)

| EXHIBITS: | Admitted |
|---|---|

DEBTORS':
ECF 171-1 to 171-18     35
ECF 171-19              9
ECF 171-20              8
ECF 171-21              9
ECF 179                 10

\*\*\*

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 5 of 47

4

1          **HOUSTON, TEXAS; FRIDAY, JANUARY 24, 2025; 12:59 P.M.**

2          THE COURT:  All right.  Good afternoon.  It is

3     Friday, January 24th.  We're here for the 1:00 o'clock Docket,

4     the confirmation hearing in Case Number 24-90627, The

5     Container Store.

6          MS. HARPER:  Good afternoon, Your Honor.  Ashley

7     Harper, Tad Davidson, and Philip Guffy from Hunton Andrews

8     Kurth on behalf of the Debtors.

9          And from the Latham & Watkins team, Hugh Murtagh,

10    Jonathan Weichselbaum, Amy Quartarolo.  And on GoToMeeting,

11    Ted Dillman.

12         THE COURT:  Thank you.

13         MR. NGUYEN: Good afternoon, Your Honor.  Ha Nguyen,

14    for the United States Trustee.

15         THE COURT:  Thank you.

16         MR. PERSONS:  Good afternoon, Your Honor.  Charles

17    Persons of Paul Hastings for the Ad Hoc Group of Lenders and

18    DIP Lenders.

19         THE COURT:  All right.  Anyone wish to make an

20    appearance on the phone?

21         (No verbal response)

22         THE COURT:  Any appearances on the phone?

23         (No verbal response)

24         MS. SCHRAGE:  Hello, Your Honor.  Patricia Schrage

25    for the Securities and Exchange Commission.

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 6 of 47

5

1          THE COURT:  Good afternoon, Ms. Schrage.

2          All right.  Who's going to take the lead?

3          MR. MURTAGH:    That's me.  Good afternoon, Your

4    Honor.  Hugh Murtagh from Latham & Watkins on behalf of the

5    Debtors.

6          It is my privilege to appear this morning on behalf

7    of the Debtors for confirmation of the plan and a pleasure to

8    be in front of Your Honor for the first time.  Thank you to

9    you and your staff for accommodating us today and over the

10   course of the last five or six weeks.

11         I would also like to take a minute at the outset to

12   thank the company's many creditors, stakeholders, their

13   counsel and advisor, some of whom are here today, and the U.S.

14   Trustee for working with us over the past several weeks to

15   resolve the vast majority of the comments and objections that

16   were raised on the plan and other issues along the way.

17         As of today, Your Honor, there are two outstanding

18   objections to the plan, one from the Office of the United

19   States Trustee and one from the SEC, both relating to the

20   third-party releases, and we'll come to those.

21         As we'll discuss in some detail, we're very pleased

22   to be seeking confirmation of the prepackaged Chapter 11 cases

23   that substantially de-leverage the Debtors' balance sheet and

24   that received unanimous support from all voting closes -- or

25   the sole voting class in these cases.

24-10118-mg    Doc 1270-3    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24    Pg 7 of 47

6

1    As I just said, Your Honor, we have unanimous

2    support from the sole voting class.  We've resolved every

3    objection, other than the UST and the SEC, with regard to the

4    third-party releases.

5    And we have a plan to confirm that substantially de-

6    levers the company by reducing its total funded debt by

7    approximately $88 million, through equitization of a

8    significant portion of the pre-petition term loan claims,

9    while still paying all unsecured creditors in full in the

10    ordinary course.  All vendors will be paid or otherwise

11    satisfied in full and over 3,800 jobs will be preserved.  And

12    all of that is a testament to the hard work of the

13    stakeholders and the professionals in this case and we think

14    to the fairness of the plan.  So we're very encouraged and

15    happy to be here, Your Honor.

16    If I could also make a few introductions:

17    First, as Ms. Harper said, I'm joined by Ms.

18    Quartarolo and Mr. Weichselbaum from Latham.

19    We're joined in the courthouse by Mr. Chad Coben,

20    who is the Debtors' chief restructuring order -- Chief

21    Restructuring Officer.  And he has submitted a declaration in

22    support of confirmation, which is at Docket 162.

23    Mr. Adam Dunayer is also here, managing director in

24    the financial restructuring group at Houlihan Lokey, the

25    Debtors' financial advisor.  He submitted a declaration in

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 8 of 47

7

1    support of confirmation, which can be found at Docket 163.

2         And finally, importantly, we're joined virtually by

3    Darlene Calderon, who is a Director of Corporate Restructuring

4    at the Debtors' claims and noticing agent Verita.  She

5    submitted a declaration in support of confirmation, which can

6    be found at Docket 164.

7         Notably, Your Honor, Ms. Calderon also has prepared

8    and just recently, within the last hour, submitted a

9    supplemental declaration in support of confirmation, which I

10   believe is at Docket 179.  Your Honor, that brief declaration

11   sets forth some factual matters or additional detail on the

12   noticing and that -- and opt-outs that were received.  And I

13   expect Your Honor has not had an opportunity to review it yet,

14   but I'd be happy to pass it up if it would be helpful.

15        THE COURT:  I can find it.

16        MR. MURTAGH:  Okay.  Let me make sure that I have a

17   copy in front of me, Your Honor.  I don't know how I lost that

18   on the way to the podium, but I've got another one now.

19        (Laughter)

20        MR. MURTAGH:  Okay.

21        THE COURT:  Give me a minute.

22        MR. MURTAGH:  Those are the declarants or the

23   potential witnesses in support to offer evidence.

24        Your Honor, if it's acceptable to you, I would

25   propose to start by introducing the declarations, subject to

24-10118-mg    Doc 1270-3    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.    Inc.    No. 24    Pg 9 of 47

8

1    cross-examination, if there's no objections; and then briefly

2    turning to adequacy of the Disclosure Statement, which is

3    technically a matter before Your Honor today; and then to turn

4    to the plan, and very briefly, Your Honor, really, with

5    everything, except to the expected argument over the third-

6    party releases.

7            THE COURT:  Okay.  So what -- the supplemental

8    declaration at 179, let me jut review it.

9            MR. MURTAGH:  Yes, Your Honor.

10       (Pause in proceedings)

11            THE COURT:  Okay.

12            MR. MURTAGH:  So, Your Honor, that brings a total of

13    four declaration.  I'll step through them.

14            The first declaration we would propose to submit is

15    the declaration of Chad Coben in support of confirmation, and

16    that's at Docket Number 162.

17            THE COURT:  All right.  Does anyone object to the

18    admission of the declaration of Mr. Coben?  It is in the

19    Debtors' witness and exhibit list, Docket Number 171-20.

20       (No verbal response)

21            THE COURT:  All right.  No objections.  It will be

22    admitted.

23       (Debtors' Exhibit ECF 171-20 received in evidence)

24            THE COURT:  And we'll reserve cross-examination

25    until all of them are considered.

24-10118-mg    Doc 1270-3    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 10 of 47

9

1          MR. MURTAGH:  Understood.

2          The second is the declaration of Adam Dunayer in

3     support confirmation.  As I said, Mr. Dunayer is here in the

4     courtroom.  It's Docket Number 163.

5          THE COURT:  All right.  Does anyone oppose the

6     admission of the declaration of Mr. Adam Dunayer as his direct

7     testimony found at Docket 171-21?

8          (No verbal response)

9          THE COURT:  All right.  Hearing no objections, it's

10    admitted.

11         (Debtors' Exhibit ECF 171-21 received in evidence)

12         THE COURT:  And we'll reserve on cross-examination.

13         MR. MURTAGH:  The third, Your Honor, is the first

14    declaration of Ms. Calderon, regarding solicitation of votes

15    and tabulation of ballots cast on the prepackaged joint plan,

16    and that's Docket Number 164.

17         THE COURT:  All right.  Does anyone object to the

18    admission as direct evidence, the declaration of mister -- of

19    Ms. Darlene Calderon at Docket Number 171-19?

20         (No verbal response)

21         THE COURT:  All right.  Hearing none, we will admit

22    that.

23         (Debtors' Exhibit ECF 171-19 received in evidence)

24         MR. MURTAGH:  Your Honor, I believe that that Docket

25    number is -- for the original declaration, is 164.

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 11 of 47

10

1        THE COURT:  Yeah, it's 164.  But on the witness and

2    exhibit --

3            MR. MURTAGH:  Witness --

4        THE COURT:  -- list --

5            MR. MURTAGH:  I'm sorry.

6        THE COURT:  -- it's 171-19.

7            MR. MURTAGH:  Understood.

8        And the final, Your Honor, is the one we were just

9    talking about, it's the supplemental declaration of Ms.

10   Calderon, it's Docket 179.  It -- as I said -- and Your Honor

11   had, I know, only a moment to review it, but it was intended

12   to provide additional detail that the Office of the United

13   States Trustee had asked for.  And I -- my understanding is

14   that, with the submission of this declaration, the office is

15   happy with the completeness of the factual record and will not

16   be seeking to cross-examine.  But obviously, the Office of the

17   U.S. Trustee can speak for itself on that point.  It's Docket

18   Number 179.

19       THE COURT:  All right.  Does anyone object to the

20   declaration of miss -- the supplemental declaration of Ms.

21   Darlene Calderon found at Docket Number 179?

22       (No verbal response)

23       THE COURT:  All right.  That will be admitted.

24       (Debtors' Exhibit ECF 179 received in evidence)

25       THE COURT:  All right.  Does anyone wish to

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 12 of 47

11

1    cross-examine Ms. Calderon, Mr. Coben, or Mr. Dunayer?

2         (No verbal response)

3              THE COURT:  Okay.  Hearing none, I will allow that

4    testimony in.

5              Go ahead.

6              MR. MURTAGH:  Thank you, Your Honor.

7              Let me touch very briefly on adequacy of the

8    Disclosure Statement.

9              Your Honor, as you know, there was one voting class

10   here.  Everybody in that class voted in favor of the plan.  We

11   have not received any objections, concerns, comments, or

12   otherwise on the Disclosure Statement or the adequacy thereof.

13             And unless Your Honor has questions about the

14   Disclosure Statement at this point, we would ask the Court to

15   approve the Disclosure Statement on a final basis.

16             THE COURT:  All right.  Does anyone wish to be heard

17   with respect to the approval of the Disclosure Statement on a

18   final basis?

19             (No verbal response)

20             THE COURT:  All right.  Hearing none.

21             I have reviewed the Disclosure Statement in

22   connection with both preparation for this hearing, as well as

23   at the time that I entered the initial order.  And based on my

24   reading and based on the record in the case and the fact that

25   there have been no objections filed, I find that the

24-10118-mg    Doc 1270-3    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.    Inc.    No. 24    Pg 13 of 47

12

1    Disclosure Statement has adequate information, so it is

2    approved.

3                MR. MURTAGH:  Thank you, Your Honor.

4                Then turning to the main event, the plan.

5                Your Honor, six weeks ago, on December 21st, we

6    really began this brief journey with a transition services

7    agreement that was executed by holders over 90 percent of the

8    outstanding principal amount of term loans and the consenting

9    stockholder, which is LGP in this case.

10               On the same day, we began solicitation of the term

11   loan holders on the plan.

12               On the 22nd, we filed our petitions.

13               And of course, on the 23rd, we were before Your

14   Honor for the first-day hearing.

15               Since that time, things have gone remarkably

16   smoothly up to today, and I -- hopefully, today will be no

17   different.

18               As Your Honor knows, we had no objections to the

19   final orders or the relief on a final basis on a couple of

20   motions that were left open on an interim basis, and those

21   final orders were entered on January 16th.

22               Pursuant to the solicitation procedures order, the

23   voting opt-out deadline and the plan and Disclosure Statement

24   objection deadline were set for the 21st of this month.

25               As I noted at the outset, we received only two

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 14 of 47

13

1    objections, two -- sorry -- two formal objections that are

2    unresolved from the UST and the SEC.  We did receive a filed

3    objection from one landlord whose concerns we have been able

4    to resolve by modifications to the proposed order.

5              And that brings us to today, Your Honor.

6              As Your Honor is well aware, I'm sure, the plan

7    classes the claimants to eight classes, seven of which are

8    non-voting classes.

9              Class 1, which is other secured claims;  Class 2,

10   which is ABL claims; and Class 4, which is general unsecured

11   claims, are unimpaired and are not voting.

12             Class 3, the pre-petition loan claims, is the voting

13   class.  They voted unanimously in favor.

14             Classes 5, subordinated claims, and Class 8, equity

15   interests, are not recovering and are deemed to reject the

16   plan.

17             And Classes 6 and 7 are intercompany claims and

18   intercompany interests, respectively, which are either deemed

19   to accept or reject, as applicable.

20             Just to highlight a few key aspects of the plan and

21   the transactions contemplated thereunder:

22             As I noted at the outset, the plan and the related

23   transaction documents de-lever the company by about $88

24   million by equitizing a substantial portion of the term loans.

25             The exit financing includes 40 million of new money

24-10118-mg    Doc 1270-3    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 15 of 47

14

1    through the term loan DIP and a roll of the exit financing

2    with Eclipse Business Capital, which we believe will give the

3    Debtors a solid footing as reorganized entities.

4         Again, happy to report and reiterate that all

5    general unsecureds are unimpaired.

6         And Your Honor, virtually all, with very, very

7    limited exceptions, all executory contracts and unexpired

8    leases are being assumed.

9         Finally, really the only, I think, sticking point

10    that's left, subject to hearing anybody else who may want to

11    be heard, is the third-party releases, which is obviously an

12    issue Your Honor is familiar with, and I will present an

13    argument on that.  And obviously, we'll hear from the trustee

14    and the SEC.

15         But unless Your Honor has questions about other

16    aspects of the plan that are, I don't believe in dispute, I

17    would move past those and just focus on the releases.

18         THE COURT:  Okay.  Does anyone else wish to be heard

19    on anything other than the issues raised by the U.S. Trustee

20    and the SEC?

21         (No verbal response)

22         THE COURT:  Let me -- just one question.  The U.S.

23    Trustee raised an issue regarding the fourteen-day stay.  I

24    believe Mr. Coben addressed that in his declaration.  Is there

25    any further testimony on that?

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 16 of 47

15

1          MR. MURTAGH:  No, Your Honor, there's no further

2    evidence to present on it.  I'm happy to speak to it as an

3    argument point, if you would like me to.

4          THE COURT:  Yeah, that would be -- that would be

5    fine.

6          MR. MURTAGH:  I think, as made clear in Mr. Coben's

7    declaration, the immediate effectiveness or near immediate

8    effectiveness of the plan is absolutely critical as a business

9    matter.  I did not mention it, Your Honor, but the hope is to

10   be fully effective on this plan, if not Monday, Monday or

11   Tuesday of next week.

12         This is an important company, but a company that,

13   Your Honor, is not that big, in terms of capital structure.

14   And the fees that are associated with every incremental day in

15   bankruptcy are actually meaningful to this company, quite

16   meaningful to the company and the stakeholders and the

17   creditors who are funding the exit.

18         We think it's, you know, absolutely routine here and

19   in other districts to waive that stay period to allow plans to

20   go effective, particularly given the -- a case like this and

21   the degree of consensus that we have around it.

22         So, unless Your Honor has specific questions about

23   it --

24         THE COURT:  No, I don't have any questions.

25         MR. MURTAGH:  Should I turn to the releases, Your

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 17 of 47

16

1    Honor?

2              THE COURT:  It probably makes sense for the objector

3    to go first, and then you can respond.

4              So I don't know, Mr. Nguyen, whether you or Ms.

5    Schrage wants to go first.

6              MR. NGUYEN:  I -- since I'm here, I volunteer to go

7    first, but if Ms. Schrage wants to go first, I'm happy to cede

8    the podium.

9              THE COURT:  Come on up.

10             MR. NGUYEN:  All right.  Your Honor, Ha Nguyen for

11   the United States Trustee.

12             Thank you for the opportunity to address the Court

13   with our objection.  I've done many of these objections in

14   front of Judge Lopez, I think he's a little bit tired of me

15   telling him why I think *Robertshaw* was wrongly decided.  But

16   this is my first time in front of you with this objection, so

17   I look forward to our conversation on the third-party release,

18   on this issue.

19             As Your Honor knows, and we filed a brief -- I know

20   you heard from Ms. Hersh from our Dallas office this morning

21   -- the Supreme Court in Purdue held that there is really no

22   basis for non-consensual third-party releases.  And the

23   Supreme Court really left it up to Your Honor and Bankruptcy

24   Courts like Judge Lopez and other judges around the country to

25   determine what exactly is consent, and really leave it up to

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 18 of 47

17

1       this Court to resolve the consent issue.

2               As Your Honor knows, the United States Trustee takes

3       the position that the opt-out mechanism used in this case

4       renders the third-party releases in the plan non-consensual.

5               As the Court is aware, courts all around the country

6       have been revisiting this issue since Purdue.  Judge Lopez

7       issued his decision in *Robertshaw*.  Courts in the Northern

8       District of Texas, particularly in Ebix and *Eiger*, Judge

9       Everett has a decision out there.  Judge Jernigan in *Eiger* had

10      a decision.  There are decisions in Florida in the Red Lobster

11      cases.  There's a decision in Delaware by Judge Goldblatt in

12      the Smallhold case, where he went 180 from his Arsenal case,

13      which Judge Lopez cites in his *Robertshaw* decision.

14              THE COURT:  There was a decision today by Judge

15      Stickles.

16              MR. NGUYEN:  Yes, and that was the *Lumio*, one of the

17      *Lumio* cases.

18              THE COURT:  Right.

19              MR. NGUYEN:  I think that was early.  But -- and

20      I've (indiscernible), so I think we're all really going, in

21      terms of the forefront of everything that's been going on.

22      It's coming really fast.

23              But Judge, in terms of all these views -- I know

24      Your Honor expressed a view in Independent Driller Contractors

25      [sic], and I believe it was a media --

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 19 of 47

18

1          THE COURT:  Digital Media.

2          MR. NGUYEN:  Digital Media.  Thank you.

3          But Your Honor, I would urge you to adopt the views

4     of Judge Everett in Ebix and Judge Goldblatt in Smallhold.

5     And really, the reasoning is straightforward.  You know, state

6     contract laws should really apply when you're looking at

7     consent.

8          And also, in examining the default forfeiture

9     theory, when someone gets notice of something, what happens if

10    they don't act.  Under -- in Smallhold, Judge Goldblatt said

11    you can't really default them because you can't find that

12    remedy anywhere in the Bankruptcy Code.  And he uses like a

13    five-dollar donation to the CEO's college fund as like there's

14    no way you can default somebody if you put that provision in

15    there.  But he thinks that third-party releases are very

16    similar, in terms of the forfeiture theory.

17         One case that really stands out to me -- and I think

18    we cite it our brief -- is -- and I'm going to butcher the

19    name -- is Norcia.  It's a case where -- and it's not a

20    bankruptcy case; it's a Ninth Circuit case, where a consumer

21    bought a Samsung phone from a Verizon store.  The customer

22    walked in there, signed a customer agreement with Verizon,

23    took the Samsung phone home and, within the Samsung phone,

24    there was a product warranty.  And within that product

25    warranty, it says, you know, if you don't write to us within

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 20 of 47

19

1    30 days or if you don't call this phone number within 30 days,

2    you are consenting to arbitrate any claims that you may have

3    with Samsung.  I'm not entirely sure what happened with the

4    phone, but the customer eventually sued Samsung.  And Samsung

5    said hey, you know, you need an arbiter, you can't sue us.

6         The Ninth Circuit took it up, and one of the things

7    they said was that customer agreement with the Verizon Store

8    and the customer, that has nothing to do with Samsung, Samsung

9    was just the provider of the phone, that was a contract, very

10   similar to here, Debtor and their creditors.  We're not

11   talking about third parties.  So the Ninth Circuit said that

12   customer agreement, it's between two parties, you can't really

13   bring in a third party like Samsung.

14        And then so Samsung said well, there was consent to

15   arbitrate under this clear and conspicuous warning that we had

16   on our product's label with the warranty.  The Ninth Circuit

17   said well, really, there's no federal law that we can look to,

18   to determine whether there was consent there.  So they looked

19   at contract law under the State of California.  And really, it

20   comes back to whether failing to act, whether having silence

21   when there is something that's warning you within a product

22   label can you deem that as consent.  And the Ninth Circuit

23   really looked at that and said well, you know, silence can't

24   be consent, it's basically contract law, there was no contract

25   there.  So, you know, those arbitration agreement did not --

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 21 of 47

20

1    didn't apply.

2         You know, this is entirely applicable to the

3    contracts of a Chapter 11 case.  You know, the nonDebtor

4    released parties are really not signatories to this Chapter 11

5    plan.  As you hear from the Debtor, this is really about the

6    Class 3, it's really about a de-leveraging of the term notes.

7         And really, the Bankruptcy Code itself provides that

8    a plan is specifically to deal with how a Debtor will pay its

9    creditors.  It's not really a vehicle for claims to be

10   resolved by nonDebtor.  That's really not the purpose of the

11   Bankruptcy Code.

12        Judge, we have a lot more arguments and cites and

13   law in the brief, so I won't belabor the point.  But again, I

14   would urge you to take a look at what Judge Everett said in

15   Ebix, look at what Judge Goldblatt said in --

16        THE COURT:  Smallhold.

17        MR. NGUYEN:  -- Smallhold.  Thank you.

18        And Judge, if those two judges do not convince you,

19   I think there's a third way to look at this and -- well, a

20   second way to look at this is -- well, the first way to look

21   at it is the U.S. Trustee thinks opt-out is the -- never

22   permissible, you can't procure consent.

23        But there's another way.  And I would point you to

24   what Judge Stickles did in *Lumio* and what Judge Jernigan did

25   in *Eiger*.  Although the results were different, I think Your

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 22 of 47

21

1    Honor can apply it to this case.

2        In *Lumio*, Judge Stickles looked at the facts of the

3    case and said -- you know, she was very skeptical that silence

4    would mean consent when the general unsecured creditors were

5    not entitled to vote and they were not entitled to any

6    recovery.  So Judge Stickles, again, really examined the facts

7    of the case and said she would not allow the opt-out in a case

8    where these creditors are getting nothing and you're going to

9    send this out and expect them to return it, or else they're

10   going to be binded [sic] by the third-party release.

11       Judge Jernigan approved the use of the opt-out in

12   *Eiger* Pharmaceutical.  But one of the things that she said at

13   the hearing was that, you know, Debtors shouldn't always come

14   in here and assume that these opt-out, it's going to be

15   approved.

16       So, really, it brings this view that, you know, it's

17   not a never opt-out or an always opt-out, but maybe let's take

18   a look at the facts of the case, and it really depends on, you

19   know, the process and the type of creditors you have and the

20   purpose of the plan.

21       Judge, I know you approved the opt-outs in the past,

22   but I really don't think it binds your hands with this

23   specific case.  So, Judge, the opt-out in this case is not

24   really effective.  It's similar to like *Lumio*, and it

25   shouldn't be used in this case.

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 23 of 47

22

1          First, Your Honor, I've asked for a declaration from

2     Verita, and that's the supplemental declaration.  And one of

3     the things you notice on there is about 16,968 opt-outs were

4     sent out.  And this is where these opt-outs were sent out to a

5     non-voting class.  So you either have equity, that's getting

6     wiped, or you get creditors that are unimpaired and they're

7     riding through the bankruptcy.

8          Again, this is about de-leveraging the company as to

9     Class 3.  These other creditors are just going along with the

10    bankruptcy case.  They're not getting a recovery.  They're not

11    -- really not involved in the case, they're just --

12          THE COURT:  Well --

13          MR. NGUYEN:  -- riding through.

14          THE COURT:  -- the creditors here are getting a

15    hundred cents on the dollar.

16          MR. NGUYEN:  That's true.  But they're -- so they're

17    really riding through, based on --

18          THE COURT:  Yeah.  So it's not like --

19          MR. NGUYEN:  The unimpaired is the point, Your

20    Honor.  But the thing is the crux of the case is the de-

21    leveraging of the Class 3.  That's why -- primarily why

22    they're here.

23          But in terms of just the vote records and the opt-

24    out, 16,968 opt-outs were sent; 165 opt-outs were returned.

25    I'm doing some quick lawyer math, that's a little bit under 1

24-10118-mg    Doc 1270-3    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 24 of 47

23

1    percent, very close to 1 percent.  I rounded up, I give them 1

2    percent.

3            The Debtors, in their brief, talked about the

4    specific process as a way to determine whether releases are

5    consensual.  I believe they cite this -- the case from Energy

6    & Exploration Partners and they quote.  Quote:

7            "-- notice has gone out, parties have actually

8    gotten it, they've had the opportunity to look at it, and the

9    disclosure is adequate so that they can actually understand

10    what they're being asked to do and the options that they're

11    being given."

12            Here, it's a little bit difficult for me to apply it

13    to the facts of this case when you get 99 percent of the opt-

14    outs not returning.  People who received the notice in the

15    mail did not return the form.  Are we really going to say that

16    99 percent of these holders of claims affirmatively consented

17    to give releases to nonDebtor third parties, when, really,

18    they're riding through and they're not part of this Class 3

19    and they're not entitled to vote?  And even one class is

20    getting entirely wiped out, the equity class.  And you're

21    saying hey, we're wiping out your entire equity, and by the

22    way, you're also granting all these third-party releases to

23    these people.  I think that's inappropriate for a case like

24    this, where you're really trying to de-leverage the company

25    and make sure the Class 3 is restructured.  So applying that

24-10118-mg    Doc 1270-3    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 25 of 47

24

1      other view that Judge Jernigan and Judge Stickles, look to the

2      facts of this case.

3              I just really -- I remember the days where -- and it

4      hasn't been so long ago because I haven't been practicing that

5      long.  But you know, third-party releases was kind of a rare

6      thing.  You know?  It brings certain claims.  But now it's par

7      the course.  It would be mis -- malpractice for these

8      attorneys not to ask for it in a case like this because every

9      single case has a third-party release.

10             But for this case, where you're actually just trying

11     to de-leverage and just trying to have somewhat of a balance

12     sheet restructure, I just don't think it's appropriate,

13     especially when everyone is unimpaired and riding through and

14     one class is getting extinguished, and that's the Class 5

15     equity.

16             Lastly, Judge, I just want to talk about the

17     "related party" definition that we raised in our objection.  I

18     know the Debtor narrowed the definition to some agency or

19     derivative claim based on the amended plan.  But I really

20     don't think that resolved the problem in our objection.

21             These related parties are still releasing something

22     against a third party; whether it's agency or derivative

23     claim, they're still releasing something.  So, if you're

24     releasing something, at a minimum, you need notice.  The

25     record is clear that the related parties were not provided

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 26 of 47

25

1    notice and they were not given the opt-out form and did not

2    consent to the third-party releases.

3          So, if the Court disagrees with all I said about the

4    opt-out, and you can deem consent under the opt-out, I would

5    simply ask the Court to just strike the related parties

6    because, simply, due process requires that these related

7    parties who are giving a release, although it's a narrow

8    release, they still have an opportunity to have notice and an

9    opportunity to object, which didn't happen here for the

10    related party.

11          So, Your Honor, for the reasons stated in our

12    objection and the arguments presented here today, we ask that

13    confirmation be denied unless the third-party release is

14    revised with an opt-in or some sort of affirmative consent.

15    Thank you, Your Honor.

16          THE COURT:  Thank you.

17          All right.  Ms. Schrage?

18          MS. SCHRAGE:  Yes, Your Honor.  Hi.  Can you hear me

19    okay?

20          THE COURT:  I can hear you fine.  Thank you so much.

21          MS. SCHRAGE:  Okay.  Great.  Okay.  So, Your Honor,

22    Patricia Schrage for the Securities and Exchange Commission.

23    This is also my first time before you, so I appreciate the

24    opportunity to allow us to come into court, especially

25    virtually.  Appreciate that.  Thank you, Your Honor.

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 27 of 47

26

1          THE COURT:  You're welcome.

2          MS. SCHRAGE:  So the --

3          THE COURT:  Any time.

4          MS. SCHRAGE:  The U.S. Trustee -- thank you.  Thank

5     you very much.

6          So the U.S. Trustee, they go through, you know, a

7     lot of the points, and the SEC agrees with the points that the

8     U.S. Trustee made today and in their papers.

9          And those points are -- particularly apply to the

10    non-voting classes.  Those are the ones that are deemed to

11    reject the plan, the public shareholders, the subordinated

12    claimants.  And so, Your Honor, in the SEC's view, the

13    Debtors' plan, as has been said in the objection and by the

14    U.S. Trustee, contains, in our view, a non-consensual third-

15    party release, which is prohibited under Purdue.

16         So, Your Honor, specifically, the release is non-

17    consensual as it applies to those public shareholders and

18    subordinated claimants because those classes are receiving no

19    consideration, they're not voting on the plan, and they're

20    deemed to reject the plan.  There is simply no incentive for

21    the shareholders and the subordinated claimants to grant the

22    third-party release.  And in these circumstances, their

23    failure to return that opt-out form, is, in our view,

24    insufficient evidence of consent of a third-party release.

25         It's the SEC's position that, in order to bind these

24-10118-mg    Doc 1270-3    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.    Inc.    No. 24    Pg 28 of 47

27

1    shareholders and the subordinated creditors to that release,

2    that you need a showing of affirmative consent.  Without the

3    affirmative consent, respectfully, they (indiscernible) on

4    whether there was consent.

5            Specifically in these case -- in this case, the

6    facts show they need affirmative consent.  The Container Store

7    is a public company.  And according to the Debtors' voting

8    declaration, only a small handful of the shareholders

9    responded.

10           In the most recent declaration that was filed, of

11   over thirty eight -- of over 3,800 forms that were sent out,

12   only 15 came back from the Class 8 equity holders.  That is a

13   very small amount.  And of those 15, only 9 actually opted

14   out.  So there would be remaining 6.  And apparently, those 6

15   didn't opt out.  There were also 297 forms returned.  So it's

16   unclear, you know, what group those return forms came from.

17           But what that does tell us is that, you know,

18   shareholders may not be getting the form.  The shareholders

19   rely on nominees to get the forms and have the forms sent to

20   them.

21           And you know -- and the other thing is it doesn't

22   tell us, you know, because there was that small number that

23   were returned, but the ones that returned the forms and didn't

24   check the box, there's also (indiscernible) it appears that

25   they didn't know why they were even receiving the form.  If

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 29 of 47

28

1    they did, they likely would have either not returned it or

2    checked the box.

3              So, Your Honor, we're not sure how comprehensive the

4    service was.  We do know the nominees were served, that's

5    clear from their papers.  And the certificate of service does

6    appear to show that forms were mailed to some of the

7    beneficial holders.  It doesn't appear and it's unlikely that

8    they would have been to all.  We do know those nominees were

9    served.

10             And Your Honor, just also, you know, I understand

11   that the U.S. Trustee did make the point about the opt-in

12   versus the opt-out.  But it is our view that the only way to

13   truly know that these shareholders were served and if they

14   consented was to include an opt-in mechanisms, versus an opt-

15   out mechanism.

16             You know, Purdue did change the legal landscape in

17   this regard, and it's cited in our objection.  There were

18   courts post-Purdue that are requiring a showing of affirmative

19   consent to bind parties to the third-party releases.  And

20   that's particularly (indiscernible) with respect to the

21   shareholders, who, in many cases, are deemed to -- are not

22   getting any consideration and are deemed to reject the plan.

23             Your Honor, so the Bankruptcy Code does not

24   authorize the nonDebtor third-party releases without the

25   consent of the affected claimant and there is no federal law

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 30 of 47

29

1    regarding consent.  As discussed in our objection and in the

2    U.S. Trustee's brief, courts have (indiscernible) basic

3    contract principles when considering whether a release is

4    consensual.  And under the basic contract law, a creditor's

5    filing is generally not sufficient with regard to consent.

6         In addition, some of the cases, including the recent

7    case from the district in *Robertshaw*, have referenced the use

8    of the opt-outs in the class action support opt-outs in the

9    Chapter 11 plan process.  However, as we state in our

10   objection, that opt-out mechanism in class actions is

11   different from the mechanism used in the Chapter 11 plan

12   process, and that is because, in a class action, there are

13   additional projection -- protections which are not available

14   here.

15        And Your Honor, you know, as the U.S. Trustee had

16   stated earlier and went through quite a few of the cases, you

17   know, the case law on this point is developing.  And courts

18   post-Purdue are reconsidering how to look at consent and how

19   consent can be applied.  So, you know, are aware that just,

20   you know, a week or so ago, in IDC, in Independence -- well,

21   I'll just call it "IDC" for now -- that Your Honor did approve

22   that opt-out mechanism, and other cases in this district have,

23   as well.

24        You know, the SEC's view is that, on these facts,

25   the Court can come to a different conclusion.  And we do

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 31 of 47

30

1        request that the Court delete the release or amend the plan to

2        carve out the shareholders and the subordinated claimants or

3        require an opt-in.  Thank you, Your Honor.

4                    THE COURT:  Thank you.  All right.

5                    MR. MURTAGH:  For the record again, Your Honor, it's

6        Hugh Murtagh from Latham & Watkins on behalf of the Debtors.

7                    I'll address both objections with the same argument.

8        I think they basically go to the same points, Your Honor.

9                    So just taking a small step back, let's start with

10       what we all agree on.  Yes, Your Honor, Purdue holds that non-

11       consensual third-party releases are not permitted under the

12       Code.  As Your Honor recently recognized in *Independence*

13       *Contract Drilling*, that was already the law in the Fifth

14       Circuit.  So, in other words, nothing has changed here.

15       Third-party releases were -- non-consensual third-party

16       releases were and remain prohibited.

17                   However, we all also agree that, long before Purdue

18       and in a substantial number of cases after Purdue, courts in

19       this district have approved opt-out third-party releases

20       because a release obtained through a properly noticed and

21       documented opt-out mechanism is a consensual release.

22                   Taking only some of the post-Purdue cases, both Your

23       Honor and Judge Lopez have held, both in public and private

24       company cases, that a proper opt-out mechanism is a sufficient

25       basis for a consensual third-party release.  Those cases

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C - Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 32 of 47

31

1       included:

2                   *Independence Contract Drilling*, which Your Honor

3       confirmed on January 9th;

4                   *Vroom*, Inc., another public company case that Judge

5       Lopez confirmed on January 8th;

6                   And also *Robertshaw*, Your Honor, which the objectors

7       referenced, reported at 662 B.R. 300, in which Judge Lopez

8       also approved opt-out releases and held, quote:

9                   "There is nothing improper with an opt-out feature

10      for consensual third-party releases in a Chapter 11 plan.  And

11      what constitutes consent, including opt-out features and

12      deemed consent for not opting out, has long been settled in

13      this District.  Hundreds of Chapter 11 cases have been

14      confirmed in this District with consensual third-party

15      releases with an opt-out.  And, again, Purdue did not change

16      the law in this Circuit."

17                  So, Your Honor, this is common ground.  It's the

18      well-established, unbroken precedent in this district, both

19      before and after Purdue, that a properly accomplished opt-out

20      released is consensual and permissible.  And I'm aware that's

21      not the practice in every district, or at least uniformly in

22      certain other districts.  And those decisions taking another

23      tact are thoughtful, but Your Honor, we disagree with them and

24      it's not been the practice in this court.

25                  There is no basis to assume that the only way to

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 33 of 47

32

1      sufficiently manifest consent is on basic non-judicial

2      contract principles.  As this Court and I think Judge Lopez

3      have referenced, there is federal court practice that deems

4      consent based on a proper process, including, but not limited

5      to class actions.

6           And what the process does here is not just bless

7      silence.  It blesses a decision.  If it is done properly, an

8      opt-out mechanism puts a decision in front of a creditor or

9      stakeholder whether they want to grant the release or not.

10     And that stakeholder is told in clear and conspicuous language

11     how to do it.  And the creditor's or interest holder's

12     decision should be respected.

13          And there's no evidence in the record as to why

14     anyone who received an opt-out form did not return it.  And to

15     speculate it's because they didn't understand it or because

16     they wanted to opt out, but it was too burdensome, or anything

17     else is purely speculation.

18          The only evidence we have, Your Honor, the

19     uncontroverted evidence is the four declarations before Your

20     Honor, and that includes robust evidence, which I'll come to,

21     about the extent of the noticing and the process that was

22     followed to put that decision in front of creditors and

23     interest holders, so that they could make a decision.

24          This isn't a contract, it's not an adhesion

25     contract, where you bought something you needed and you just

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 34 of 47

33

1    have to deal with what the contract says or there was a third

2    party's contract buried inside a box.  This is something that

3    is put conspicuously and purposefully, in bold capital

4    letters, in front of these creditors and interest holders, to

5    give them an opportunity to make the decision.  And we should

6    respect the decision that is manifested by the process,

7    whether they returned an opt-out or decided not to return it

8    and not opt out.  And I think, as Your Honor has made clear,

9    that's the view in this district.

10            And the question becomes, then:

11            A, was the opt-out process reasonable and effective?

12            And B, are the releases narrowly tailored and core

13    to the proceedings?

14            So let's turn to those facts because I agree with

15    the objectors that the facts are important, and these are the

16    important facts:

17            So, first, as to process, Your Honor, as set forth

18    in the declarations of Ms. Calderon, the Debtors served

19    solicitation packages with a release opt-out election on the

20    only voting class on December 21st.

21            The Debtors served notices of non-voting status and

22    release opt-out forms on all other classes on or before

23    December 27th.

24            As is set forth in the declarations, sufficient

25    forms were sent to nominees to forward to beneficial holders,

24-10118-mg    Doc 1270-3    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24    Pg 35 of 47

34

1    and the solicitation procedures order directed nominees to

2    make such forwarding happen.

3        In all cases, the notice and opt-out materials

4    conspicuously described the nature of the release, included

5    all of the operative release language from the plan, and

6    explained the consequences of not returning the completed opt-

7    out form.

8        Creditors and interest holders were given until

9    January 21st to make an election by mail, overnight courier,

10    hand-delivery, or electronic submission via the case website.

11        As of today, Your Honor, including some forms that

12    were received after the deadline and as the objectors noted,

13    we received -- I believe, if you count -- if you compare it to

14    the total number that went out, it may be around one percent,

15    but several -- a couple hundred were returned, executed, and

16    they were returned executed across classes, including other

17    secured claims, ABL claims, general unsecured claims, and

18    existing equity interests.

19        So, again, Your Honor, to return to what that

20    evidence shows, is that the noticing that was supposed to

21    happen happened.  Creditors and interest holders who were

22    supposed to get notices got them.  There is no evidence to the

23    contrary.  And creditors and interest holders who wanted to

24    opt out returned opt-out forms.  That's the only evidence

25    before this Court, is that the process works for people who

24-10118-mg    Doc 1270-3    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24    Pg 36 of 47

35

1    chose to opt out.  They knew how to do it if they were in

2    secured claims, ABL claims, unsecured claims, or even equity

3    interests recover nothing, whether they were individuals or

4    whether they were entities.

5         We cannot speculate as to why others made a decision

6    not to opt out.  But consistent with the practice in this

7    district, the process afforded that opportunity, a decision

8    was made not to opt out, and it should be respected.  Anything

9    else is just speculation about why a creditor or interests

10   holder who didn't return form didn't return a form.  It should

11   be viewed as it is intended to be viewed, as it is explained

12   to the creditor, who should be deemed to understand it, that

13   not opting out means you're granting the release.

14        And to shortcut the point, Your Honor, the Debtors

15   followed substantially the same process followed in

16   *Independence Contract Drilling* and *Vroom* and *Robertshaw* and

17   other cases noted in our briefing, and we should see the same

18   result here, Your Honor.  This was a fair and effective opt-

19   out process for consensual releases.

20        I -- I'll move on to tailoring, Your Honor, and

21   pause briefly on injunction.  But let me stop there in case

22   Your Honor has questions on the core point.

23        THE COURT:  Nope.

24        MR. MURTAGH:  So, as to tailoring, Your Honor, just

25   briefly.  The third-party releases are narrowly tailored.  The

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 37 of 47

36

1     releases themselves release only claims related to the Debtors

2     and these cases, just as in all of the precedent cases we've

3     been discussing.

4            As set forth in Mr. Coben's declaration,

5     specifically at Paragraph 56, the third-party releases were a

6     core consideration among the parties to the TSA, instrumental

7     in development of the plan, and critical to gaining and

8     growing support for the plan and the cases from released

9     parties.  Like most everything here, Your Honor, that evidence

10    is also unchallenged.  So the releases are necessary and

11    appropriately tailored.

12           Finally, Your Honor, and as briefly covered in

13    *Independence Contract Drilling*, the injunction follows the

14    release.  Injunctions are appropriate in connection with

15    third-party releases under Fifth Circuit law.  And again, Your

16    Honor, the evidence supports that the injunction is a

17    necessary complement to the releases, as set forth in Mr.

18    Coben's declaration at Paragraphs 60 to 62.

19           And then the final point on the related party

20    releases that the Office of the United States Trustee raised.

21    Your Honor, the structure of the releases, as modified --

22    which is intended as a clarification -- is that related

23    parties are only granting releases to the extent that the

24    primary releasing party could be forced to grant the release

25    on behalf of the related party through agency principles.  So

24-10118-mg    Doc 1270-3    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.    Inc.    No. 24    Pg 38 of 47

37

1      the power to grant the release is vested in the releasing

2      party, and the release is only effective to that extent as to

3      the related party or, similarly, for a derivative claim that

4      is, itself, released by the direct claimant's release.  So

5      there's nothing that is being taken from a related party that

6      is not already fully vested in the hands of the releasing

7      party.

8                THE COURT:  Who received notice.

9                MR. MURTAGH:  Correct, correct.

10               So, in sum, Your Honor, the third-party releases are

11     consensual and should be approved together with their

12     accompanying injunction.

13               That's all I have on the releases, Your Honor.   I

14     did have on or two housekeeping points.  But before I come to

15     that, let me pause and see if Your Honor has any questions.

16               THE COURT:  No questions.

17               MR. MURTAGH:  So, just in terms of housekeeping,

18     Your Honor, for completeness of the record, in addition to the

19     declarations already admitted into evidence as Docket Numbers

20     171-19, 171-20, 171-21, and 179, we also would offer into

21     evidence the remaining items referenced on the witness and

22     exhibit list, which are found at Docket Numbers 171-1 through

23     171-18.

24               THE COURT:  All right.  Does anyone have any

25     objection to the exhibits found at Documents Number 171-1

24-10118-mg    Doc 1270-3    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.    Inc.    No. 24    Pg 39 of 47

38

1      through 171-18?

2              And they include Mr. Coben's original declaration

3      for the Disclosure Statement, that's Exhibit Number 171-1.

4              171-2 is the Disclosure Statement.

5              171-3 are the financial projections.

6              171-4 is the liquidation analysis.

7              171-5 is the valuation analysis.

8              171-6 is the prepackaged joint plan.

9              171-7 is the certificate of service on the

10     solicitation dated December 23rd, 2024.

11             171-8 is the order scheduling the combined hearing.

12             And then 171-9 through 171-15 are the various

13     certificates of service and affidavits filed by the claims

14     agent in connection with the service of the plan.

15             And 171-16 is the first amended prepackaged plan.

16             And 171-17 is the redlines of the prepackaged plan

17     of the amended plan.

18             And 171-18 is notice of the filing of the first

19     amended prepackaged plan.

20             Any objections?

21        (No verbal response)

22        THE COURT:  All right.  Hearing none, they'll be

23     admitted.

24        (Debtors' Exhibits ECF 171-1 through 171-18 received in

25     evidence)

24-10118-mg    Doc 1270-3    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 40 of 47

39

1           MR. MURTAGH:  Thank you, Your Honor.

2           That concludes the Debtors' presentation, and we'd

3     respectfully request that the Court enter the order confirming

4     the plan found at Docket Number 177.

5           THE COURT:  All right.

6           MR. MURTAGH:  Thank you again.

7           THE COURT:  Mr. Nguyen?

8           MR. NGUYEN:  Nothing further, Your Honor.  Thank

9     you.

10          THE COURT:  Okay.  Ms. Schrage?

11          MS. SCHRAGE:  Nothing further, Your Honor.  Thank

12    you.

13          THE COURT:  Okay.

14        (Pause in proceedings)

15          THE COURT:  Okay.  Before the Court today is the

16    Debtors' hearing on confirmation of the first amended plan and

17    related matters.

18          With respect to all of the issues found in 1129-1 --

19    and I will deal with the objection separately -- I find that

20    the -- number one, that I have jurisdiction; that confirmation

21    of the plan is a core matter; that, you know, the Court has an

22    independent obligation to review the plan, which I have done.

23    And I believe that, based on the uncontroverted evidence, the

24    plan meets all of the requirements of 1129 of the Bankruptcy

25    Code, in order to obtain confirmation.  And that is based on,

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 41 of 47

40

1    not only the exhibits that were admitted, but also the

2    declarations of Mr. Coben, Mr. Dunayer, and the voting

3    declaration filed by Ms. Calderon.

4         So now let me turn to the objections raised by the

5    U.S. Trustee and the SEC.

6         So I want to -- and I do think that the facts

7    matter, and I do view every plan on the facts.  There is no

8    set rule with respect to how third-party releases will be

9    treated.  I think it is based on the facts and I do think that

10   facts matter.

11        And based on the evidence before me, what I have is

12   a situation of a -- if I look at the liquidation analysis,

13   this company would be hopelessly insolvent, the secured

14   creditor would receive pennies on the dollar.  And but for the

15   negotiation that was had by the company in this charge of its

16   fiduciary obligations with its ad hoc group of creditors, we

17   have now reached a plan where the unsecured creditors are

18   getting a hundred cents on the dollar; the ABL was paid off,

19   they got a hundred cents on the dollar.

20        And the ad hoc group represented by Mr. Persons'

21   client is the only impaired class, and they are receiving less

22   than they would otherwise be entitled to.  And, in essence,

23   they are -- what they have done, that has allowed funding of

24   the plan to do the things that are being -- the transactions

25   that are contemplated by the plan, paying all unsecured

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 42 of 47

41

1    creditors in full, saving the jobs, and continuing the

2    business as a going concern.  So that's the way that I view

3    the transaction that is being implemented by the plan, so I do

4    think that facts matter.

5         This company was hopelessly insolvent.  The equity

6    here, if you use the strict priority rule, if you look at the

7    liquidation analysis, most unsecured creditors would have

8    received nothing.  So, in essence, that's -- the facts do

9    matter, and that's the way that I view the plan.

10        So I'm -- I thought very carefully about Mr.

11   Nguyen's arguments and Ms. Schrage's arguments, and I'm -- and

12   I would be -- if we were writing on a blank slate, I think

13   that Mr. Nguyen's arguments would be fairly persuasive, but

14   we're not writing on a blank slate.

15        Prior to Purdue, the Fifth Circuit did not have non-

16   consensual third-party releases.  We have been in a situation

17   for years that -- since Pacific Lumber, where there have been

18   no non-consensual third-party releases in the Fifth Circuit.

19   So we have developed and refined a way to determine whether

20   the releases that are included in the plan are consensual, and

21   we've done that by the use of an opt-out mechanism that allows

22   for notice to the parties, actual notice to the parties, and

23   then allows them the opportunity to opt out.  That has been

24   refined in cases for a while.

25        So I don't think Purdue really changed anything in

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C - Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 43 of 47

42

1     the Fifth Circuit as it relates to non-consensual third-party

2     releases because there weren't any.  And the Supreme Court was

3     clear in Purdue that -- when they said nothing that we have

4     said should be construed to call into question consensual

5     third-party releases offered in connection with bankruptcy

6     organizations.

7                And having, number one, a mechanism that has been

8     developed over the cases;

9                Number two, having effective service of that

10    mechanism, I think the evidence is uncontroverted based on the

11    declaration of Ms. Calderon, based on the numerous exhibits

12    that were admitted showing service, that service was

13    effective.  You know, the nominees, who are the only people

14    that the Debtor had, received it with instructions to forward

15    them.  So I believe that the process here worked.  And giving

16    the opportunity for the Debtors [sic] to opt out is consistent

17    with having consensual third-party releases.

18                So I don't think that we're necessarily treading on

19    new ground.  I think the major goal and the major inquiry that

20    the Court has to make is:  Was this a process that was fair

21    and that it was intended to get notice to people, so that they

22    could make a decision?

23                And as Mr. Murtagh indicated, there was no evidence

24    as to why people didn't return it.  There was no evidence

25    that, because some of the shareholders returned it without

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 44 of 47

43

1    having opted out, that they somehow misunderstood it, misread

2    it, or I don't know what.  There is simply no evidence

3         So, in -- kind of in summary, I agree that facts do

4    matter.  I think that, based on the facts in this case and the

5    process that was run, that the releases are -- because of the

6    opportunity for all the parties to have opted out, are

7    consensual.

8         And furthermore, that the injunction is -- I don't

9    believe that the injunction is an additional thing that needs

10   to be added in order to make non-consensual releases

11   consensual.  I think the injunction is the way that you

12   enforce the mechanism.  It's more of a -- it's more a process

13   than it is substance.  So I don't think that the use of the

14   injunction to support a consensual release is in any way

15   prohibited by the case law, either by Purdue or in the Fifth

16   Circuit.

17        I believe that the other arguments raised by the

18   trustee, similarly, the gatekeeping function, again, Highland

19   Capital permits the gatekeeping function with respect to the

20   exculpated parties, which, in this case, is only the Debtor,

21   as well as the parties that are released.

22        So, in addressing the scope -- and that I did look

23   at very, very closely, the scope, and I agree with Mr.

24   Murtagh.  The only people -- the related parties that would be

25   giving a release would be only parties for whom the people who

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C - Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 45 of 47

44

1   received notice would have been able to opt out.  And the same

2   thing is true for the people who are being provided the

3   releases.  So I think that, in terms of the scope of the

4   releases and use of the "related party" definition, I think --

5   with the limitations that were included in the revised draft,

6   I think those, again, are perfectly appropriate because it's

7   you're only binding people who you could otherwise bind by the

8   people who got notice.

9          With respect to the request to waive the fourteen-

10  day period under 3020(e), I believe it's appropriate under the

11  circumstances.  This is not a -- you know, a mega case, in

12  terms of billions of dollars.  And I think that being able to

13  save on the administrative burden in this case is significant,

14  so I will go ahead and approve that.

15         So, for those reasons, the Court overrules the

16  objections and I will confirm the plan.

17         So is it the order that was submitted at Docket

18  Number 177?

19         MR. MURTAGH:  That's correct, Your Honor.

20     (Pause in proceedings)

21         THE COURT:  And since Ms. Shriro did not appear,

22  I -- am I to believe that the changes in Paragraph 26 and 29

23  resolved her objections?  I think you said that, but I just

24  want to make sure.

25         MR. MURTAGH:  That's correct, Your Honor.  The

24-10118-mg    Doc 1270-3    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.    Inc.    No. 24    Pg 46 of 47

45

1      modifications for the landlord objection --

2                  THE COURT:  Paragraphs --

3                  MR. MURTAGH:  -- those changes --

4                  THE COURT:  -- 26 --

5                  MR. MURTAGH:  -- resolve the ---

6                  THE COURT:  -- and 29.

7                  MR. MURTAGH:  -- objection.

8                  THE COURT:  Okay.

9          (Pause in proceedings)

10                 THE COURT:  Okay.  The confirmation order has been

11     signed and sent to docketing.

12                 MR. MURTAGH:  Thank you, Your Honor.

13                 THE COURT:  Anything else we can do?

14                 MR. MURTAGH:  On behalf of the Debtors --

15         (Participants confer)

16                 MR. MURTAGH:  Oh, one thing.

17                 UNIDENTIFIED:  Just a very quick housekeeping item.

18     We did have our retention applications on file.  The objection

19     deadline for that runs today, and then we'll be filing

20     certificates of no objection for those probably earlier next

21     week.

22                 THE COURT:  Okay.  Thank you.

23                 Anything else, anyone?

24                 MR. MURTAGH:  That's it, Your Honor.

25                 THE COURT:  All right.  Thank you very much.  You're

24-10118-mg   Doc 1270-3   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit C -
Confirmation Hrg Tr. - In re The Container Store Grp.   Inc.   No. 24   Pg 47 of 47

46

1    all excused.

2         (Proceedings concluded at 2:02 p.m.)

3                          * * * * *

4         *I certify that the foregoing is a correct transcript*

5    *to the best of my ability produced from the electronic sound*

6    *recording of the proceedings in the above-entitled matter.*

7         */S./ MARY D. HENRY*

8    *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

9    *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

10   *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

11   *JTT TRANSCRIPT #69558*

12   *DATE FILED:  JANUARY 28, 2025*