**Exhibit D**

Confirmation Hr'g Tr.

*In re Digital Media Solutions, Inc.*, No. 24-90468 (ARP) (Bankr. S.D. Tex. Jan. 15, 2025)

```
                    UNITED STATES BANKRUPTCY COURT
                  SOUTHERN DISTRICT OF TEXAS (HOUSTON)

                                       .
IN RE:                                 .  Case No. 24-90468
                                       .  Chapter 11
DIGITAL MEDIA SOLUTIONS,               .
INC., et al.,                          .  515 Rusk Street
                                       .  Houston, TX 77002
                Debtors.               .
                                       .  Wednesday, January 15, 2025
. . . . . . . . . . . . . . . .        .  9:58 a.m.



                 TRANSCRIPT OF CONFIRMATION HEARING
                BEFORE THE HONORABLE ALFREDO R. PEREZ
                 UNITED STATES BANKRUPTCY COURT JUDGE




APPEARANCES:


For the Debtors:          Kirkland & Ellis
                          By:  ALEXANDRA SCHWARZMAN, ESQ.
                               MICHAEL C. WHALEN, ESQ.
                          333 West Wolf Point Plaza
                          Chicago, IL 60654
                          (312) 862-2000

                          Kirkland & Ellis
                          By:  ELIZABETH JONES, ESQ.
                          601 Lexington Avenue
                          New York, NY 10022
                          (212) 446-4800

APPEARANCES CONTINUED.

Audio Operator:           Akeita House, ECR

Transcription Company:    Access Transcripts, LLC
                          10110 Youngwood Lane
                          Fishers, IN 46048
                          (855) 873-2223
                          www.accesstranscripts.com


     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

24-10118-mg   Doc 1270-4   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit D -
Confirmation Hrg Tr. - In re Digital Media Solutions   Inc.   No. 24-   Pg 3 of 23

2

```
APPEARANCES (Continued):


For the United States      Office of the United States Trustee
Trustee:                   By:  JANA SMITH WHITWORTH, ESQ.
                           515 Rusk Street, Suite 3516
                           Houston, TX 77002
                           (713) 718-4650

For the Official           Willkie Farr Gallagher LLP
Committee of Unsecured     By:  JENNIFER JAYE HARDY, ESQ.
Creditors:                 600 Travis Street, Suite 2310
                           Houston, TX 77002
                           (713) 510-1766

TELEPHONIC APPEARANCES:

For the Debtors:           Porter Hedges
                           By:  JOHN F. HIGGINS IV, ESQ.
                                M. SHANE JOHNSON, ESQ.
                                JAMES KEEFE, ESQ.
                           1000 Main Street, Suite 3600
                           Houston, TX 77002-6336
                           (713) 226-6648

For the Official           Willkie Farr Gallagher LLP
Committee of Unsecured     By:  JAMES H. BURBAGE, ESQ.
Creditors:                 787 Seventh Avenue
                           New York, NY 10019-6099
                           (212) 728-8000

For the United States      United States Attorney's Office
of America:                By:  PAUL B. MOORE, ESQ.
                           1000 Louisiana, Suite 2300
                           Houston, TX 77002
                           (713) 567-9779

For the DIP Lenders:       Ropes & Gray LLP
                           By:  BENJAMIN RHODE, ESQ.
                           191 North Wacker Drive, 32nd Floor
                           Chicago, IL 60606-4302
                           (312) 845-1200

For Albany Road -          Singer & Levick P.C.
Meridian Concourse LLC     By:  MICHELLE E. SHRIRO, ESQ.
and Clearwater Realty      16200 Addison Road #140
IN LLC:                    Addison, TX 75001
                           (972) 380-5533
```

24-10118-mg   Doc 1270-4   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit D -
Confirmation Hrg Tr. - In re Digital Media Solutions   Inc.   No. 24-   Pg 4 of 23

3

```
 1          (Proceedings commence at 9:59 a.m.)

 2               THE COURT:  All right.  Good morning.  It is

 3   Wednesday, January 15th, 2025.  We're here for Case Number

 4   24-90468, Digital Media Solutions, for the confirmation

 5   hearing.  Let me take the appearances of counsel in the

 6   courtroom, and then I'll take appearances online.

 7               MS. SCHWARZMAN:  Good morning, Your Honor.  Alexandra

 8   Schwarzman of Kirkland & Ellis on behalf of the debtors.  I'm

 9   joined by my colleagues, Mike Whalen and Elizabeth Jones.

10               MS. WHITWORTH:  Morning, Judge Perez.  Jana Whitworth

11   on behalf of the United States Trustee.

12               THE COURT:  Thank you.

13          (Audio malfunction from 10:00:31 through 10:00:43)

14               MS. HARDY:  I'm also joined by my partner, Jim

15   Burbage, on the phone.

16               THE COURT:  Thank you.

17               All right.  Anyone else on -- anyone on the phone

18   wish to make an appearance?

19               MR. RHODE:  Can you hear me, Your Honor?  Yes.

20   Benjamin Rhode from Ropes & Gray on behalf of the DIP lenders,

21   Your Honor.  Thank you.

22               THE COURT:  Thank you.

23               Anyone else?

24               MS. SHRIRO:  Yes, Your Honor.  This is Michelle

25   Shriro for the former landlord, Albany Road, and the current
```

24-10118-mg   Doc 1270-4   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit D -
Confirmation Hrg Tr. - In re Digital Media Solutions   Inc.   No. 24-   Pg 5 of 23

4

1   landlord, Clearwater.

2           THE COURT:  Thank you.

3           All right.  Ms. Schwarzman?

4           MS. SCHWARZMAN:  Good morning, Your Honor.  Alexandra

5   Schwarzman on behalf of debtors.  Your Honor, we're thrilled to

6   be in front of you today seeking final approval of our

7   disclosure statement and confirmation of our plan.  As you'll

8   recall, when we filed this case just about four months ago, I

9   came to you on the first day and I said, we're here to enact

10  one or more sale transactions to maximize the value of these

11  estates.  Gave you a timeline.  We sort of adhered to it.  Said

12  we were going to be asking for a late October sale hearing and

13  hopefully going effective in November.  We were close.  We went

14  with an early November sale hearing, as you'll recall.  We used

15  that extra time to cut a deal with our committee and to get all

16  the key stakeholders on board with what's in the plan before

17  you today.  And, of course, took us a little bit more time to

18  get here on confirmation than originally anticipated.  But very

19  happy to tell you that we're here on an almost uncontested

20  basis.

21          We do have two formal objections that Ms. Jones will

22  argue today, as well as our case-in-chief.  But we don't have

23  any objections to the economics of our plan and the economic

24  treatment of stakeholders.  And I think that's really a

25  testament to the hard work of all the stakeholders working

24-10118-mg    Doc 1270-4    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit D -
Confirmation Hrg Tr. - In re Digital Media Solutions    Inc.    No. 24-    Pg 6 of 23

5

1  together to collaborate to maximize value for the benefit of

2  all parties in interest.

3        So before I cede the podium, I just do want to extend

4  a big thank you to all the other parties in this case, the DIP

5  lenders, the prepetition lenders, to the Committee, and to

6  Ms. Whitworth.  Although she's opposing us today, she's been

7  delightful to work with throughout this case.  And, of course,

8  to Your Honor and your chambers.  And I would be remiss --

9        UNIDENTIFIED:  (Indiscernible).

10        AUTOMATED VOICE:  Conference muted.

11        MS. SCHWARZMAN:  I'd be remiss if I didn't mention

12  the company and its management team and its employees.  This is

13  a founder-run business, and there's really no substitute for

14  the passion and the dedication that founders bring to their own

15  business.  The management team has worked tirelessly to keep

16  the business not just together but thriving throughout this

17  period.  I really do believe the headwinds that DMS faced are

18  in the rearview mirror.  The business has been doing great

19  since we've been in bankruptcy.  And the employees have been

20  working just tirelessly to set the company up for a bright

21  future.  So a huge thank you to them.

22        And without further ado, I'll cede the podium to

23  Ms. Jones.

24        THE COURT:  All right.  Let me see if anyone else

25  wants to be heard in the nature of an opening statement.  And

24-10118-mg    Doc 1270-4    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit D -
Confirmation Hrg Tr. - In re Digital Media Solutions    Inc.    No. 24-    Pg 7 of 23

6

1   please, on the phone, if you would hit "five star," and I will

2   unmute you if you want to speak.

3          All right.  Any other opening statements?

4          All right.  Ms. Jones, I guess you're up.

5          MS. JONES:  Good morning, Your Honor.  Elizabeth

6   Jones of Kirkland & Ellis on behalf of the debtors.  As my

7   colleague, Ms. Schwarzman, said, we're very pleased to be here

8   today seeking final approval of the disclosure statement and

9   confirmation of the plan.  Your Honor, if okay with you at the

10  start, we'd propose moving our evidence in support of the plan

11  into the record.

12         THE COURT:  Yes, that makes sense.

13         MS. JONES:  Your Honor, the debtors first filed a

14  witness and exhibit list at Docket Number 633 and then a

15  supplemental witness and exhibit list last night at Docket

16  Number 641.  We'll refer to Docket Number 641 for purposes of

17  moving evidence into the record.  Your Honor, we've identified

18  two witnesses in support of our case-in-chief and also listed

19  their declarations on the exhibit list.

20         The first is Mr. Zachary Rose, who is the chief

21  restructuring offer [sic] of the debtors.  Your Honor, his

22  declaration is listed as Exhibit Number 3 on the witness and

23  exhibit list, and his declaration is in support of confirmation

24  of the plan.  Your Honor, while Mr. Rose is here today, we

25  would propose to move his declaration into evidence in lieu of

24-10118-mg    Doc 1270-4    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit D -
Confirmation Hrg Tr. - In re Digital Media Solutions    Inc.    No. 24-    Pg 8 of 23

7

1    live testimony, and we're not currently aware of any intent to

2    cross-examine or to oppose his declaration.  But again, he is

3    here if there are any questions or if anyone wishes to do so.

4            THE COURT:  All right.  So does anyone object to the

5    admission into evidence as to direct testimony, the declaration

6    of Zachary Rose found at 641-1?  All right.  That will be

7    admitted.

8            Does anyone wish to cross-examine Mr. Rose?  All

9    right.  That's admitted.

10       (ECF Number 641-1 admitted into evidence)

11            MS. JONES:  Thank you, Your Honor.  Moving on to our

12    next witness, Mr. Jared Paul.  He is from our claims and

13    balloting agent, Omni Agent Solutions. Mr. Paul is our

14    declarant in support of the voting report and the review of

15    both the ballots and the opt-outs.  His declaration is found at

16    Exhibit Number 4 attached at -- to 641-2.  So unless anyone

17    here wishes to cross-examine, he's here in the room, but we

18    would again propose to move his declaration into evidence in

19    lieu of live testimony.

20            THE COURT:  All right.  Does anyone object to the use

21    of the declaration of Mr. Paul found at 641-2 as his direct

22    testimony?  All right.  That will be admitted.

23            Does anyone wish to cross-examine?  All right, those

24    are both in.

25       (ECF Number 641-2 admitted into evidence)

24-10118-mg   Doc 1270-4   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit D -
Confirmation Hrg Tr. - In re Digital Media Solutions   Inc.   No. 24-   Pg 9 of 23

8

1          MS. JONES:  Thank you, Your Honor.  The rest of the

2    exhibits listed on Docket 641 are probably going to be attached

3    if going through Docket Number 633.  Those were previously

4    filed, although I believe the one affidavit that we filed last

5    night with respect to the first amended plan supplement, which

6    is listed as Number 17 on our witness and exhibit list, but

7    that should be 641-3.

8          THE COURT:  All right.  Does anyone have any

9    objection to the admission of 641-3 and 634-1 through 17?  All

10   right.  There are no objections.  Those will all be admitted.

11     (ECF Numbers 641-3 and 634-1 through 634-17 admitted into

12   evidence)

13         MS. JONES:  Thank you, Your Honor.  Your Honor, that

14   concludes our evidentiary portion, so if okay with you, we'll

15   move on to our case-in-chief.

16         THE COURT:  Yes, go ahead.

17         MS. JONES:  Thank you, Your Honor.

18         Last night, the debtors filed a confirmation brief

19   seeking final approval of the disclosure statement and

20   confirmation of their plan at Docket Number 637.  Your Honor,

21   starting first with final approval of the disclosure statement,

22   following the conditional approval of the disclosure statement

23   on December 9, the debtors commenced solicitation with the

24   solicitation version of the disclosure statement filed at

25   Docket Number 522.  Your Honor, the debtors complied with the

24-10118-mg   Doc 1270-4   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit D -
Confirmation Hrg Tr. - In re Digital Media Solutions   Inc.   No. 24-   Pg 10 of 23

9

1    conditional disclosure statement order, the Bankruptcy Code,

2    and the bankruptcy rules in solicitation of the plan as further

3    set forth in our brief, and Your Honor, as set forth in the

4    brief, we believe the disclosure statement contained adequate

5    information to provide holders of claims and interest with

6    enough information to determine whether or not to vote to

7    accept the plan.

8              Your Honor, I'm happy to walk through that, but

9    otherwise, we would rest on those papers.  There's no objection

10   to the final approval of the disclosure statement, but we're

11   happy to answer any questions or address any objections live on

12   the record.

13             THE COURT:  All right.  Does anyone object to the

14   final approval of the disclosure statement?  All right.

15   Hearing no objection, I've reviewed the disclosure statement,

16   and I do believe that it contains adequate information, so I'm

17   going to approve the disclosure statement.

18             MS. JONES:  Thank you, Your Honor.

19             Your Honor, moving on now to seeking confirmation of

20   the plan, again, in our confirmation brief, we laid out in

21   detail that we believe the plan satisfies the key factors in

22   1129.  Importantly, that the plan was proposed in good faith

23   and not by any means prohibited by law, and that

24   notwithstanding that certain claims and holders of interest

25   have either rejected the plan or deemed to reject it, but it

24-10118-mg    Doc 1270-4    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit D -
Confirmation Hrg Tr. - In re Digital Media Solutions    Inc.    No. 24-    Pg 11 of 23

10

1    can be confirmed under 1129(b) because it is fair and equitable

2    and does not discriminate unfairly.

3             Your Honor, again, I'm happy to walk through each of

4    those factors, but we laid them out in detail in our brief, and

5    there's only two formal objections now to the plan left on the

6    record.  We resolved two informal comments that we've listed

7    out in the confirmation order.  I'm happy to walk through

8    those, and I'm also happy, Your Honor, to jump in to address

9    the objections now or any questions that you have or if you'd

10   like to hear from the objectors first.  We would just reserve

11   to respond.

12            THE COURT:  Why don't we hear from the objectors

13   first and then come back?  Because I don't think there's an

14   objection to anything else.

15            MS. JONES:  That's correct, Your Honor, not that

16   we're aware of.

17            THE COURT:  Why don't we start with Presidio first

18   because the way I read the plan, I'm not sure if that's --

19   there's -- I don't read the plan to impact their rights, so

20   let's start with that one.

21            All right.  Is anyone here for Presidio Interactive

22   Corporation?  If you're on the line, please hit "five star" so

23   I can unmute you.  I'm going to go ahead and unmute everyone to

24   see if anyone representing Presidio Interactive is on the line.

25            AUTOMATED VOICE:  Conference unmuted.

24-10118-mg   Doc 1270-4   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit D -
Confirmation Hrg Tr. - In re Digital Media Solutions   Inc.   No. 24-   Pg 12 of 23

11

1          THE COURT:  Is anyone representing Presidio

2    Interactive Corporation online?

3          All right.  I don't hear any objection to that, so

4    why don't we go to the U.S. Trustee, Ms. Whitworth.

5          MS. WHITWORTH:  Thank you.  Thank you, Judge.  Again,

6    Jana Whitworth representing the United States Trustee.

7          Your Honor, good morning again.  I'm not going to

8    take a lot of time this morning, Judge.  The Court is well

9    aware of the United States Trustee's position on the use of the

10   opt-out procedure and our argument substantiating that

11   position.  You've heard it all before, in fact, just last week.

12   Our objection is detailed and addresses all the applicable law.

13   It's 34-plus pages long.  In fact, again, we were here with you

14   last week on another confirmation hearing.  So I would like to

15   take the opportunity and make a record just to summarize our

16   arguments and hit the high points.

17         First of all, I don't think it's arguable that a

18   Chapter 11 plan is a special contract between the debtor and

19   its creditors through which all of the creditors' claims

20   against the debtor are resolved by operation of bankruptcy law.

21   There's no question that Congress has authorized these

22   transactions as they relate to the debtor, who put all of its

23   assets and debts on the table, as Judge Gorsuch illustrated in

24   our Purdue case, and the creditors, whose claims against the

25   debtors are also on that table.  What's not on that table,

24-10118-mg   Doc 1270-4   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit D -
Confirmation Hrg Tr. - In re Digital Media Solutions   Inc.   No. 24-   Pg 13 of 23

12

1    Judge, are the creditors' claims and rights against non-debtor

2    third parties.  The Bankruptcy Code simply does not address

3    contracts and claims that are not on that bankruptcy table.

4    The creditor's claims and rights against non-debtor entities

5    belong to those creditors and not to the bankruptcy estate.

6    And federal law does not address private contracts between

7    non-debtor parties.

8         As a result of that, this Court must look to state

9    law to determine how a contract is formed between those

10   non-debtor entities and whether there is sufficient action by

11   both of those contracting parties to establish a contract.

12   Keep in mind, Judge, it's not disputed that the non-debtor

13   party's agreement to release the claims against another

14   non-debtor party entity is a contract.

15        In the plan before you, the U.S. Trustee does not

16   think there is sufficient evidence to prove all of the affected

17   non-debtor parties have agreed to the broad sweeping

18   third-party releases contained in the plan.  In fact, this plan

19   holds that a party accepting the plan wipes out that creditor's

20   rights and claims against a non-debtor party.  In its reply

21   brief, when we had originally filed our objection to the

22   conditional approval, the debtors assert that voting on a plan

23   constitutes consent to third-party releases because a voting

24   creditor agrees to accept or reject the entire plan.  They're

25   citing a 2000 Ninth Circuit case, Bartleson, in which that

24-10118-mg    Doc 1270-4    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit D -
Confirmation Hrg Tr. - In re Digital Media Solutions   Inc.   No. 24-   Pg 14 of 23

13

1    Court rightly holds that a Chapter 11 plan is a contract

2    between the debtor and its creditors in which general rules of

3    contract interpretation apply.  I'm not disputing that.  I am

4    disputing that a Chapter 11 plan is not a contract between the

5    creditors and non-debtors, third-party entities.  And in this

6    case, there were actually two creditors who voted to accept the

7    plan but chose to opt out.  So it's -- you know, what are their

8    rights?

9            Again, affirmative -- the debtors argue that there's

10   an affirmative duty to respond, that silence constitutes

11   waivers of those rights.  Silence by failing to return the

12   opt-out form is simply not sufficient to establish an agreement

13   or contract with respect to non-debtor parties and non-estate

14   claims.

15           Looking at the evidence that was admitted earlier in

16   the form of the balloting and everything, it's interesting to

17   me, just to point out to the Court, that out of 1,500 ballots

18   and opt-out forms that were presumed to be delivered by the

19   debtor, and that's from the Omni-Agents Declaration, I

20   calculated there was 1202 ballots, Class 3 ballots and Class 4

21   ballots that were sent.  Fifty-nine of those were

22   undeliverable, so that's eleven forty-three that were presumed

23   to be delivered.  And then the opt-out forms, there were 378

24   opt-out forms sent.  Out of those 378 opt-out forms, only 8

25   were returned.  And in the ballots, there were 224.  So doing

24-10118-mg   Doc 1270-4   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit D -
Confirmation Hrg Tr. - In re Digital Media Solutions   Inc.   No. 24-   Pg 15 of 23

14

1   my little spreadsheet math using Excel Judge, there were

2   approximately 1,521 opt-outs and ballot forms that were

3   presumed to be delivered.  Out of that, there were 232

4   creditors who responded to that.

5          So what does that mean?  That means that there were

6   1,289 who did not respond.  Almost 85 percent of the folks who

7   received these did not respond.  They didn't participate in the

8   process.  So effectively what's happening, Judge, by confirming

9   this plan and endorsing the opt-out provisions, this court --

10  this bankruptcy court is wiping out almost 85 percent of the

11  non-creditors' -- or excuse me, non-debtors' claims.  The

12  creditors' claims against non-debtors and third parties are

13  being wiped away.

14         We -- and again, we don't believe that silence is

15  that powerful to -- these people did not participate in

16  imposing non-contract law on that, just a mere procedure that's

17  pre -- that predates the Purdue opinion.  It was a process that

18  was adopted by this court and other courts in this district.

19  It's simply not -- doesn't constitute consent.

20         Again, I'm harping on this.  The debtors insist that

21  it is sufficient to use a procedure to convert a party's

22  silence into consent.  But the U.S. Trustee's position is that

23  inferred consent is not actual or affirmative consent.

24         With regard to the injunction, Judge, the U.S.

25  Trustee believes that the fact that the injunction provisions

24-10118-mg   Doc 1270-4   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit D -
Confirmation Hrg Tr. - In re Digital Media Solutions   Inc.   No. 24-   Pg 16 of 23

15

1   are even needed to enforce these third-party releases shows

2   that there's no consent.  So, Your Honor, at the end of the

3   day, the U.S. Trustee requests that the court uphold, sustain

4   our objection on the third -- with regard to the third-party

5   releases and do not -- and then not enter an order confirming.

6   Thank you, Your Honor.

7            THE COURT:  Thank you.

8            MS. JONES:  Elizabeth Jones, Your Honor, Kirkland &

9   Ellis, on behalf of the debtors.

10           Your Honor, I won't go into detail with what we

11  already responded to in the brief, but there are a few points

12  that Ms. Whitworth made that I think are worth noting.  First,

13  overall, Your Honor, the third-party releases that we're

14  proposing here are consensual.  The consensual aspect of

15  third-party releases in the Fifth Circuit has always relied on

16  process, whether notice and information has been sent out such

17  that parties are able to evaluate what they are being asked to

18  do and given instructions on how to act, whether they agree or

19  disagree.  Our releases do that here, and our plan and

20  solicitation procedures provide that information.  They clearly

21  explain that if you vote to accept the plan, you cannot opt out

22  of the releases.  They explain that if you do not wish to

23  accept the releases, you can either abstain and opt out or vote

24  to reject and opt out.

25           With respect to Ms. Whitworth's comments that two

24-10118-mg   Doc 1270-4   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit D -
Confirmation Hrg Tr. - In re Digital Media Solutions   Inc.   No. 24-   Pg 17 of 23

16

1   parties voted to accept the plan and also checked the opt-out,

2   there's nothing in the record that can go to what their intent

3   was with selecting the opt-out, whether they intended to

4   actually opt out of those releases or misunderstood the

5   instructions.  Because the record is silent with respect to

6   what their intent is, the only appropriate way to calculate

7   those ballots and opt-outs is through the clear voting and

8   tabulation procedures, which explained that if you vote to

9   accept, you cannot opt out.  So we are not presuming to intend

10  whether they really did or didn't want to opt out.  Rather,

11  we're calculating them in accordance with the voting and

12  tabulation procedures.

13          Again, Your Honor, I think that goes to one of her

14  other points that silence is not consent here and the lack of

15  participation by a large number of parties should demonstrate

16  that parties don't really understand what's being asked of

17  them.  Again, Your Honor, there's no evidence on the record

18  that a party's failure to submit a ballot or opt-out

19  demonstrates that they were unaware of what would happen.  It's

20  very likely that a number of these parties read through,

21  understood, and chose to do nothing and knew that by doing

22  nothing, they would be bound to the releases.

23          So because, Your Honor, again, the record is clear

24  with what can and cannot be counted and that as we set forth in

25  our brief that the opt-out provision that we have proposed is

24-10118-mg    Doc 1270-4    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit D -
Confirmation Hrg Tr. - In re Digital Media Solutions   Inc.   No. 24-   Pg 18 of 23

17

1   consistent with Fifth Circuit case law, there is no reason here

2   to presume that parties did not understand what they were or

3   weren't doing with respect to staying silent.  So unless Your

4   Honor has any other questions, we rest on our response in the

5   brief, but I wanted to make sure to address those two

6   additional points.

7            THE COURT:  All right.  Does anyone else wish to be

8   heard?  And if you're on the phone, I've unmuted you so you can

9   speak.

10           MR. BURBAGE:  Good morning, Your Honor.  Tim Burbage

11  of Willkie Farr & Gallagher on behalf of the Committee.  Can

12  you hear me?

13           THE COURT:  Yes, sir.

14           MR. BURBAGE:  Good morning, Your Honor.  Again, for

15  the record, Tim Burbage of Willkie Farr & Gallagher on behalf

16  of the Official Committee of Unsecured Creditors.  I'll be

17  brief.

18           Throughout these cases, the Committee has worked

19  diligently to discharge its fiduciary duties.  At the same

20  time, the Committee has also worked collaboratively with the

21  debtors and the debt lenders to reach a committee settlement

22  that provides meaningful value to general unsecured creditors

23  in these cases.  The Committee is supportive of confirmation as

24  the committee settlement and subsequent modifications thereto

25  have been reflected in the plan and the confirmation order.

24-10118-mg    Doc 1270-4    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit D -
Confirmation Hrg Tr. - In re Digital Media Solutions    Inc.    No. 24-    Pg 19 of 23

18

1    Accordingly, the Committee believes that the objections to

2    confirmation should be overruled.  Thank you.

3              THE COURT:  Thank you.

4              All right.  Anyone else wish to be heard?

5              All right.  Before the Court today is the motion to

6    confirm the Digital Media Solutions plan.  I find that I have

7    jurisdiction.  It's a core matter.  In addition to that, I've

8    reviewed, obviously reviewed, all of the filings, the two

9    declarations that have been admitted into evidence, and

10   listened to the arguments of counsel.

11             We have two objections pending from the U.S. Trustee

12   and from Presidio.  Aside from these objections, I find that

13   the plan meets the requirements of the Bankruptcy Code 1129 and

14   each of those requirements as they were detailed in the brief,

15   and I believe that plan meets all those requirements.

16             The declaration of Mr. Rose, the testimony, states

17   that he believes the plan is a good result for the creditors

18   because it provides meaningful recovery to unsecured claims

19   that are otherwise hundreds of millions of dollars out of the

20   money, and in reviewing both the liquidation analysis as well

21   as the valuation, the DIP lenders here are taking significantly

22   less than they're entitled to in order to have a recovery, a

23   meaningful recovery to unsecured creditors.  So I think the

24   result in the plan is good.

25             First, let me address the Presidio Interactive

24-10118-mg    Doc 1270-4    Filed 02/06/25    Entered 02/06/25 21:15:16    Exhibit D -
Confirmation Hrg Tr. - In re Digital Media Solutions    Inc.    No. 24-    Pg 20 of 23

19

1    objection.  I think that, in essence, they're asking -- their

2    objection is that nothing in the exculpatory provisions should

3    be interpreted to limit their liability.  Their claims arise as

4    a result of alleged willful misconduct.  That is excluded from

5    the exculpatory provisions.  Obviously, the plan will likely

6    have a significant impact on their recoveries, but that is the

7    discharge provisions and not the exculpatory provisions.

8          Next, let me address the objections of the U.S.

9    Trustees, and I think Ms. Whitworth did a very good job of

10   presenting the U.S. Trustees' position.  So with respect to the

11   first objection, that the Bankruptcy Code does not authorize

12   nonconsensual releases, I think the Court agrees that the

13   Bankruptcy Code does not authorize nonconsensual releases.  In

14   fact, even prior to Purdue, the Fifth Circuit had a

15   longstanding precedent rejecting the use of nonconsensual

16   third-party releases, and the Supreme Court's Purdue ruling

17   rejecting them really did not change the legal landscape in

18   this circuit.  You know, in clarifying, what the Supreme Court

19   said was, nothing that we have said should be construed to call

20   into question consensual third-party releases offered in

21   connection with the bankruptcy plan.  So therefore, the Fifth

22   Circuit looks at the process, whether the claimants -- whether

23   the parties were given a sufficient opportunity to opt out, and

24   then that was made clear.  So where you have releases that have

25   an opt-out form, I think the case law in the Fifth Circuit, as

1    it's developed the complex rules, are such that these are

2    deemed -- by failure to opt out, these are deemed to be

3    consensual third-party releases.

4            In this case, we have the situation where even if you

5    vote in favor of the plan and opt out, you can't opt out.

6    There were only two ballots that did this.  One ballot was for

7    $20.  The other ballot was for $525.  While I generally don't

8    like that formulation, in this case, the language that if you

9    voted in favor of the plan, you couldn't opt out was very plain

10   and conspicuous, literally in capital letters bolted right on

11   top of the opt-out form.  I think that that gave sufficient

12   notice for those parties.  They had to have read that before

13   they opt out.  But the -- so I think that in this particular

14   circumstance, that situation I think meets the consensual

15   requirement.  That's not to say that there might not be another

16   circumstance where that might not be the case.

17           The -- in my mind, the -- having the procedures and

18   the opt-out comports with the Fifth Circuit case law, and as a

19   result, I find that these are consensual releases and overrule

20   the U.S. Trustee's objection with respect to whether the

21   opt-out mechanism provides for a consensual release.

22           Secondly, the U.S. Trustee argues that the

23   application of the injunction to enforce the third-party

24   release violates Purdue because it makes it -- somehow makes it

25   nonconsensual.  Again, I think that nothing in Purdue prohibits

1  the use of an injunction to enforce consensual releases.  I

2  think here the use of the injunction is really for the purposes

3  of finality, not to enforce a non-consensual release.  So on

4  that basis, I would overrule the objection.  So based on the

5  evidence presented, the arguments of counsel, the case law, and

6  my ruling on the record, for all of these reasons, I overrule

7  the objections and will confirm the plan.

8          MS. JONES:  Your Honor, Elizabeth Jones of Kirkland &

9  Ellis on behalf of the debtors.  That's all for us.  Is there

10  anything else you need with respect to the confirmation order

11  that we submitted?  We attached the version of the plan that we

12  were seeking to have approved.  I believe it's Docket Number

13  639.

14          THE COURT:  My confirmation order does not have the

15  plan attached.

16          MS. JONES:  Okay.  We can upload that with the

17  version of the plan attached.

18          THE COURT:  All right, any further comments or

19  questions?  All right, we're in recess.  Thank you.

20          MS. JONES:  Thank you, Your Honor.

21      (Proceedings concluded at 10:30 a.m.)

22                          * * * * *

23

24

25

24-10118-mg   Doc 1270-4   Filed 02/06/25   Entered 02/06/25 21:15:16   Exhibit D -
Confirmation Hrg Tr. - In re Digital Media Solutions   Inc.   No. 24-   Pg 23 of 23

22

1                    **C E R T I F I C A T I O N**

2

3          I, Alicia Jarrett, court-approved transcriber, hereby

4   certify that the foregoing is a correct transcript from the

5   official electronic sound recording of the proceedings in the

6   above-entitled matter.

7

8

9

10   _____

11   ALICIA JARRETT, AAERT NO. 428      DATE: January 21, 2025

12   ACCESS TRANSCRIPTS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25