Evan R. Fleck
Lauren C. Doyle
Bryan V. Uelk
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

Andrew M. Leblanc
Erin E. Dexter (admitted *pro hac vice*)
**MILBANK LLP**
1850 K St. NW, Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile: (202) 263-7586

-and-

Gregory A. Bray
**MILBANK LLP**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Counsel for Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
:
In re:                                                    :    Chapter 11
:
GOL LINHAS AÉREAS INTELIGENTES S.A.,    :    Case No. 24-10118 (MG)
*et al.*,[1]                                              :
:
                                         Debtors.       :    (Jointly Administered)
:
-------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A). The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

**NOTICE OF FILING OF**
**SUPPLEMENTAL ENGAGEMENT LETTER**
**IN ACCORDANCE WITH ORDER AUTHORIZING THE EMPLOYMENT**
**AND RETENTION OF ERNST & YOUNG AUDITORES INDEPENDENTES S/S**
**LTDA. AS AUDITOR FOR THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

   **PLEASE TAKE NOTICE** that on February 21, 2024, the Debtors filed the *Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Ernst & Young Auditores Independentes S/S Ltda. as Auditor for the Debtors Effective as of the Petition Date* [Docket No. 168].

   **PLEASE TAKE FURTHER NOTICE** that on March 18, 2024, the Court entered the *Order Authorizing the Employment and Retention of Ernst & Young Auditores Independentes S/S Ltda. as Auditor for the Debtors Effective as of the Petition Date* [Docket No. 290] (the "EY Retention Order").

   **PLEASE TAKE FURTHER NOTICE** that paragraph 11 of the EY Retention Order provides, in relevant part, that if the Debtors and Ernst & Young Auditores Independentes S/S Ltda. ("EY Brazil") enter into additional engagement letters or statements of work, the Debtors shall file a notice thereof with the Court and serve such additional engagement letter or statement of work on the Official Committee of Unsecured Creditors, the Office of the United States Trustee, and the remainder of the Master Service List (as defined in the *Final Order Implementing Certain Notice and Case Management Procedures* [Docket No. 175]) (collectively, the "Notice Parties").

   **PLEASE TAKE FURTHER NOTICE** that pursuant to paragraph 11 of the EY Retention Order, an additional engagement letter entered into by the Debtors and EY Brazil is attached hereto as **Exhibit A** (the "Supplemental Engagement Letter").

   *[Remainder of page intentionally left blank]*

**PLEASE TAKE FURTHER NOTICE** that pursuant to paragraph 11 of the EY Retention Order, the Notice Parties have fourteen (14) days after service of the Supplemental Engagement Letter to object. Thereafter, the Supplemental Engagement Letter shall be deemed approved.

Dated: New York, New York
April 23, 2025

**MILBANK LLP**

*/s/ Evan R. Fleck*
Evan R. Fleck
Lauren C. Doyle
Bryan V. Uelk
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

-and-

Andrew M. Leblanc
Erin E. Dexter (admitted *pro hac vice*)
**MILBANK LLP**
1850 K St NW, Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile: (202) 263-7586

-and-

Gregory A. Bray
**MILBANK LLP**
2029 Century Park East
33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Counsel for Debtors and Debtors-in-Possession*

## **EXHIBIT A**

**Supplemental Engagement Letter**



São Paulo Corporate Towers
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

A/C Mr. Celso Guimarães Ferrer Junior - President                    April 17, 2025
**GOL LINHAS AÉREAS INTELIGENTES S.A.**

R. Verbo Divino, 1661 - Chácara Santo Antônio
São Paulo/SP – 04719-002

Gentlemen's:

This agreement (together with the General Terms and Conditions hereto, the "Agreement") confirms the engagement of Ernst & Young Auditores Independentes S.S. Ltda. ("we" or "EY") by the Audit Committee of Gol Linhas Aéreas Inteligentes S.A. (the "GLAI" or "Company") to audit and review Company's financial statements.

This Agreement sets out the contractual structure for the provision of services ("Services") by EY to Company subsequent to Company filing a petition under Chapter 11 ("Chapter 11") of the United States Bankruptcy Code ("Bankruptcy Code") on January 24, 2024, with the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). EY's performance of Services is contingent upon the Bankruptcy Court's approval of EY's retention in accordance with the terms and conditions that are set forth in this Agreement.

Considering that the contracting of the audit firm to provide audit services for the year ending December 31, 2025, of ABRA Group Limited ("ABRA"), the company that will consolidate the Company, is in progress, if EY is not appointed as ABRA's auditor, the Company may terminate this Agreement, or any specific Service, immediately after informing EY Brazil in writing. The Company shall make payment to EY Brazil for all work in progress, services already rendered, costs related to demobilization of the professionals allocated to serve Gol and expenses incurred by us up to the date of termination of this Agreement. Payment shall be made within thirty (30) days of receipt of our invoice.

**Scope of services**

Statutory financial Statements (Comissão de Valores Mobiliários - CVM)

Audit the individual and consolidated financial statements, identified as Individual and Consolidated, respectively, for the year ended on December 31, 2025, which will be prepared by management in accordance with the accounting practices adopted in Brazil and with the International Financial Reporting Standards (IFRS), issued by the International Accounting Standards Board (IASB). We will conduct our audit procedures in accordance with Brazilian and International Standards on Auditing ("ISA").

Quarterly review the individual and consolidated interim financial information, contained in the Quarterly Information Form (ITR) for the quarters ended on March 31, 2025 and quarters to be ended on June 30, 2025 and September 30, 2025. Individual and consolidated interim financial information will be prepared by management in accordance with Accounting Pronouncement NBC TG 21 – Interim Financial Reporting, and IAS 34 – Interim Financial Reporting, issued by the International Accounting Standards Board (IASB), as well as for the fair presentation of this information in conformity with the rules issued by the Brazilian Securities and Exchange Commission (CVM) applicable to the preparation of the Quarterly

BMG



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

Information Form (ITR). We will conduct our review in accordance with Brazilian and international standards on review engagements (NBC TR 2410 and ISRE 2410 - Review of Interim Financial Information performed by the Independent Auditor of the Entity, respectively).

<u>Statutory financial Statements (ANAC Resolution nr. 342 of September 09, 2014, applicable to Gol Linhas Aéreas S.A. ("GLA")):</u>

Audit the individual financial statements for the year ended on December 31, 2025, which will be prepared by management in accordance with the accounting practices adopted in Brazil and with the International Financial Reporting Standards (IFRS), issued by the International Accounting Standards Board (IASB). We will conduct our audit procedures in accordance with Brazilian and International Standards on Auditing ("ISA").

Review of the individual interim financial information, for the three and six-month period ended on June 30,2025. Consolidated interim financial information will be prepared by management in accordance with Accounting Pronouncement NBC TG 21 – Interim Financial Reporting, and IAS 34 – Interim Financial Reporting, issued by the International Accounting Standards Board (IASB). We will conduct our review in accordance with Brazilian and international standards on review engagements (NBC TR 2410 and ISRE 2410 - Review of Interim Financial Information performed by the Independent Auditor of the Entity, respectively).

<u>Internal control over financial reporting (ICFR)</u>

As requested by Management, we will audit the internal control over financial reporting of Gol Linhas Aereas Inteligentes S.A. in accordance with PCAOB AS 5. The results of the work performed on ICFR will be issued in the form of a Summary of Control Deficiencies identified and communicated to Management and the Audit Committee.

The term "individual and consolidated financial statements" or "individual financial statements" described in this agreement are collectively referred to as the "financial statements".

The terms "individual and consolidated interim financial information" or "individual interim financial information" described in this agreement are collectively referred to as "interim financial information."

All services described in this agreement are collectively referred to as "services", "audit services" or "audit".

Our performance of Audit Services is contingent upon the Bankruptcy Court's approval of our notice of additional engagement letter. This Agreement shall be effective as of April 17, 2025.

**Audit responsibilities and limitations**

The objective of the audit of the financial statements is to express an opinion ("Report") on whether the financial statements are presented fairly, in all material respects, in conformity with IFRS or applicable financial reporting structure, in line with the specification of the standards applicable in compliance with the CVM. Should conditions not now anticipated preclude us from completing either the audit of the financial statements or the review of the interim financial

BMG 



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

information and issuing our report(s) thereon, we will advise the Audit Committee, Management and Bankruptcy Court promptly and take such action as we deem appropriate.

Our audit work on the individual and consolidated financial statements of Gol Linhas Aereas Inteligentes S.A., which will be filed with the CVM prepared in accordance with the accounting practices adopted in Brazil and IFRS, will be carried out in accordance with Brazilian and international auditing standards (IFRS). These standards require us to obtain reasonable, rather than absolute, assurance that such individual and consolidated financial statements are free from material misstatement, whether due to error or fraud.

As management is aware, there are inherent limitations in the audit process, including, for example, selective testing and the possibility that collusion or forgery may preclude the detection of material error, fraud or non-compliance with laws and regulations. Accordingly, there is some risk that a material misstatement of the financial statements, prepared according with IFRS would remain undetected. Also, an audit of the financial statements is not designed to detect error or fraud that is immaterial to the financial statements, prepared according with IFRS.

We will consider the Company's internal control over financial reporting in determining the nature, timing and extent of our audit procedures for the purpose of expressing our opinion on the financial statements prepared in accordance with the accounting practices adopted in Brazil and IFRS to be filed with the CVM.

As part of the audit process, EY Brazil will also (a) conclude on the appropriateness of management's use of the operational continuity assumption and, based on the audit evidence obtained, whether there is significant uncertainty related to events or conditions that may raise significant doubt as to the Company's ability to continue operating; (b) evaluate the overall presentation, structure and content of the financial statements, including related disclosures, and whether the financial statements adequately represent the respective transactions and operations in such a way that those financial statements are adequately presented; and (c) obtain sufficient appropriate audit evidence on the Company's financial information to express an opinion on the individual and consolidated financial statements. We are responsible for directing, supervising and executing the Company's audit. We remain solely responsible for our audit opinion.

In accordance with auditing standards, we will communicate certain matters related to the planning, conduct and results of the audit to the Audit Committee, and also may make certain inquiries of the Audit Committee. Changes to the scope of the Audit Services may occur as a result of the issuance of new standards and interpretations or inspections findings. We will communicate any significant changes in the scope of the Audit Services and related procedures to management and the Audit Committee on a timely basis.

We will obtain pre-approval from the Audit Committee for any services we are to provide to the Company pursuant to the Audit Committee's pre-approval process, policies, and procedures, in accordance with the standards and rules enforceable. We also will communicate at least annually with the Audit Committee on independence matters as required by the auditing standards.



BMG



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

If we determine that there is evidence that fraud or possible illegal acts may have occurred, we will bring such matters to the attention of the appropriate level of management. If we become aware of fraud involving senior management or fraud (whether committed by senior management or other employees) that causes a material misstatement of the financial statements, we will report this matter directly to the Audit Committee. We will determine that the Audit Committee and the appropriate level of management are duly informed of any unlawful acts that come to our attention unless they are clearly inconsequential (pursuant item 42 of NBC TA 240). We also will inform the Audit Committee and appropriate members of management of misstatements noted during our audit procedures other than those that are clearly trivial.

We will communicate, in accordance with Brazilian and international auditing standards to the Statutory Audit Committee or other body responsible for governance, other matters in addition to those indicated above, related to the conduct and outcome of the audit process, including: (a) the responsibility of EY Brazil under Brazilian and international auditing standards to express an opinion on the financial statements prepared by management with the supervision of those charged with governance and the fact that this audit does not replace the responsibilities of management and those charged with governance; (b) an overview of the planned scope and timeline of the audit process, including the significant risks we may identified and the scope of work to be performed on the financial statements of the significant components of the Company in the work to be performed by the auditors of those components; (c) Important matters identified during the audit, including (1) EY Brazil's view of the qualitative aspects of the Company's accounting practices, including accounting policies, accounting estimates and disclosures included in the financial statements; (2) any significant difficulties encountered during the audit process; (3) uncorrected errors other than those considered immaterial by EY Brazil; (4) any disagreements with the administration, whether or not they have been satisfactorily resolved; (5) other matters, if any, arising from the audit process, considered by EY Brazil to be significant and pertinent to those charged with governance with respect to the oversight of the financial reporting process, including significant matters related to the Company's related parties; (d) circumstances that affect the form and content of our Report, including those set forth later in this Agreement; and (e) written representations requested from management and any significant matters arising out of the audit process discussed, or subject to written communication to management.

**Reviews of unaudited interim financial information**

The review of the Company's unaudited interim financial information will be performed in accordance with the standards of CPC 21 (R1) will be performed in accordance with NBC TR 2410 rules. The review of the Company's unaudited interim financial information prepared in accordance with IAS 34.

A review of interim financial information consists principally of performing analytical procedures and making inquiries of management responsible for financial and accounting matters. It also involves the review of the unaudited interim information presented in the ITR form and does not include prior earnings reports or other similar information. A review is substantially less in scope than an audit conducted in accordance with the standards of the NBC TR 2410, the objective of which is (1) the expression of an opinion regarding the financial statements taken as a whole, prepared according to Brazilian practices and with IFRS and (2) an opinion on the consolidated financial statements taken together, prepared in accordance with IFRS, respectively. As such, we will not express an opinion on the interim accounting information prepared in accordance with CPC 21 (R1) and IAS 34.

BMG  



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

A review includes obtaining sufficient knowledge of the Company's business and its internal control as it relates to the preparation of both annual and interim financial information to: identify the types of potential material misstatements in the interim financial information and consider the likelihood of their occurrence; and select the inquiries and analytical procedures that will provide us with a basis for communicating whether we are aware of any material modifications that should be made to the interim financial information for it to conform with CPC 21 (R1) and IAS 34.A review is not designed to provide assurance on internal control or to identify significant deficiencies. However, we will communicate to the Audit Committee any significant deficiencies noted during our review procedures.

If, during our review procedures, we determine that there is evidence that fraud or possible non-compliance with laws and regulations may have occurred, we will bring such matters to the attention of the appropriate level of management. If we become aware of fraud involving senior management or fraud (whether committed by senior management or other employees) that causes a material misstatement of the interim financial information, we will report this matter directly to the Audit Committee. We will determine that the Audit Committee and appropriate members of management are adequately informed of instances of non-compliance with laws and regulations that come to our attention unless they are clearly inconsequential (according with item 42 of NBC TA 240). We also will inform the Audit Committee and appropriate members of management of misstatements noted during our review procedures other than those that are clearly trivial.

**Management's responsibilities and representations**

The financial statements (including disclosures) prepared in accordance with the accounting practices adopted in Brazil and IFRS and the unaudited interim financial information, prepared in accordance with CPC 21 (R1) and IAS 34 are the responsibility of management. Management is responsible for establishing and maintaining effective internal control over financial reporting relevant to the preparation and fair presentation of financial statements that are free of material misstatement, whether due to error or fraud, for properly recording transactions in the accounting records, for safeguarding assets, and for the overall fair presentation of the consolidated financial statements and unaudited interim financial information in conformity with Brazilian and IFRS generally accepted accounting principles. Management also is responsible for the identification of, and for the Company's compliance with, laws and regulations applicable to its activities.

Management is responsible for adjusting the individual and consolidate financial statements, prepared according with accounting practices adopted in Brazil and IFRS and unaudited interim financial information, prepared according with CPC 21 (R1) and IAS 34 rules, to correct material misstatements and for affirming to us in its letter of representations that the effects of any uncorrected misstatements aggregated by us during the applicable Audit Services and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements and unaudited interim financial information taken as a whole. Management is also responsible for evaluating the Company's operational continuity assumption, disclosing when applicable, issues related to operational continuity and using the assumption of operational continuity unless management intends to liquidate the Company, cease operations, or has no alternative but to do so.

Management is responsible for providing EY Brazil with (1) timely access to all information known to management that is pertinent to the preparation of the financial statements and related disclosures, and to unaudited interim accounting



Docusign Envelope ID: 66D522ED-785B-438A-8208-752ED8E72985



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

information such as records, documentation and other matters; (2) additional information that may be requested from management by EY Brazil for audit purposes; (3) unfettered access to the Company's individuals determined by EY Brazil in order to obtain audit evidence as well as from the subsidiaries, affiliates, their employees and auditors for the group's audit purposes. Failure by management to provide the information referred to above or access to the Company's professionals and its subsidiaries and affiliates may lead to a delay in the report, modification of procedures or even termination of this Agreement.

As required by professional standards, we will make specific inquiries of management about the representations contained in the financial statements and unaudited interim financial information and management's assessment of the effectiveness of internal control over financial reporting. Professional standards also require that, at the conclusion of the applicable Audit Services, we obtain a letter of representations from certain members of management about these matters and to represent that management has fulfilled its responsibilities as set forth in this Agreement, including that all material transactions have been recorded in the accounting records and are reflected in the financial statements and unaudited interim financial information in accordance with accounting practices adopted in Brazil and IFRS to be filed with the CVM and that all transactions were recorded and were reflected in the financial statements and unaudited interim accounting information. The responses to those inquiries, the written representations, and the results of our procedures comprise evidence on which we will rely in completing the applicable Audit Services.

The Company acknowledges that the Company and EY share responsibility for compliance with auditor independence rules. Accordingly, management shall discuss any independence matters with EY that, in management's judgment, could bear on EY's Brazil independence. In addition, management shall promptly assist EY in identifying the Company's affiliates and any beneficial owners (known through reasonable inquiry) of the Company's or its affiliates' equity securities where such beneficial owner has significant influence over the Company and the entities included in the Company's financial statements. The Company's subsidiaries and affiliates include: (a) an entity that has control over the Company or an entity that the Company controls; (b) an entity that is under common control with the Company, including subsidiaries and other controlled investees of the entity that controls the Company; (c) an entity over which the Company exercises significant influence (a "Investee"), unless the Investee is not relevant to the Company; and (d) an entity that exerts significant influence over the Company (an "investor"), unless the Company is not relevant to the investor."

Management shall make appropriate inquiries to the Company's significant officers, directors and shareholders to determine the existence of a relationship between such officers, directors and shareholders (or any entity for or in which such substantial officers, directors or shareholders act in a similar capacity) and EY Brazil or any other member firm of the EY global organization (any of which, an "EY Firm"), which is not a relationship in which the EY Firm provides professional services or in which the EY Firm is a client in the ordinary course of business. To that end, inquiries should be made to an individual shareholder (and not an entity) that owns ten percent (10%) or more of the voting shares (or less than 10% of the voting shares, but that possesses certain contractual rights, such as the right to appoint members of the board of directors or special or disproportionate voting rights

Management will promptly communicate, to the extent it is aware, of (1) unauthorized access to information technology systems that has occurred or is reasonably likely to have occurred up to the date of our audit report based on the Company's investigation, including reports submitted by third parties (including regulatory agencies and security





**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

consultants), to the extent that such unauthorized access to information technology systems is reasonably likely to have a material effect on the financial statements, in each case or in a set of cases, and (2) ransomware attacks when the Company has paid or is planning to pay the ransom, regardless of the amount involved

_____

BMG



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

## Fees and billings

The fees for the performance of the audit services shall be BRL7,010,017.59 (Seven million ten thousand seventeen dollars and fifty-nine cents Brazilian reais) and will be invoiced by EY and paid by the Company as below:

| Installment | Issuance Date | Payment Date | Fees | Taxes | *Surcharge* | Total |
|---|---|---|---|---|---|---|
| 1 | 28/04/2025 | 30/05/2025 | 567,070.60 | 94,236.22 | 39,694.94 | 701,001.76 |
| 2 | 30/05/2025 | 30/06/2025 | 567,070.60 | 94,236.22 | 39,694.94 | 701,001.76 |
| 3 | 30/06/2025 | 31/07/2025 | 567,070.60 | 94,236.22 | 39,694.94 | 701,001.76 |
| 4 | 31/07/2025 | 29/08/2025 | 567,070.60 | 94,236.22 | 39,694.94 | 701,001.76 |
| 5 | 29/08/2025 | 30/09/2025 | 567,070.60 | 94,236.22 | 39,694.94 | 701,001.76 |
| 6 | 30/09/2025 | 31/10/2025 | 567,070.60 | 94,236.22 | 39,694.94 | 701,001.76 |
| 7 | 31/10/2025 | 28/11/2025 | 567,070.60 | 94,236.22 | 39,694.94 | 701,001.76 |
| 8 | 28/11/2025 | 28/12/2025 | 567,070.60 | 94,236.22 | 39,694.94 | 701,001.76 |
| 9 | 28/12/2025 | 30/01/2026 | 567,070.60 | 94,236.22 | 39,694.94 | 701,001.76 |
| 10 | 30/01/2026 | 27/02/2026 | 567,070.60 | 94,236.22 | 39,694.94 | 701,001.76 |
| **Total** | | | **5,670,705.96** | **942,362.21** | **396,949.42** | **7,010,017.59** |

We will submit an itemized and detailed billing statement, and we will request payment of our fees and expenses, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules for the United States Bankruptcy Court for the Southern District of New York ("Local Rules") and any relevant administrative orders.

We will submit our invoices as the work progresses and payment of them will be made upon receipt, or as quickly as the Bankruptcy Code, the Bankruptcy Rules, Local Rules and any relevant administrative orders allow. We acknowledge that payment of our fees and expenses hereunder is subject to (i) the jurisdiction and approval of the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code, any order of the Bankruptcy Court approving the retention of us and the U.S. Trustee Guidelines, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications.

Should our assumptions with respect to these matters be incorrect or should the documentation of internal control, results of our procedures, condition of records, degree of cooperation, extent of procedures performed by the Company to support management's assessment or other matters beyond our reasonable control require additional commitments by us beyond those upon which our estimates are based, we may adjust our fees, subject to Bankruptcy Court approval, and planned completion dates. Fees for any special audit-related projects, such as proposed business combinations, Chapter 11 related nonrecurring transactions or research and/or consultation on special business or financial issues, will be billed separately from the fees referred to above, and will be the subject of other written agreements which shall be subject to Bankruptcy Court approval.

Expenses incurred while performing our audit Services, such as: use of information technology systems, fax, long-distance communication, photocopies, mailing and other administrative expenses, shall be reimbursed by the Company based on





**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

a percentage of our fees, 7%, totaling BLR396,949.42. Such amount, denominated as Surcharge above, shall be billed additionally to the above-mentioned audit fees, also in Fees and billings.

The Company also agrees to pay EY Brazil for all expenses directly incurred in connection with the audit services. Direct expenses include customary out-of-pocket expenses such as transportation, meals, lodging and others specifically related to this Agreement. EY Brazil should keep such expenses within reasonable limits, sufficient for the execution of the Services proposed herein. Expense billings shall be issued based on the progress of the work (or in installments, if applicable) and the related payments should be made within 30 days as from their issuance dates.

### Other matters

From time to time, and depending on the circumstances, subject to Bankruptcy Court approval, we may subcontract portions of the Audit Services to other EY Firms (listed at www.ey.com), who may deal with the Company or its affiliates directly, although EY Brazil alone will remain responsible to you for the Audit Services, and personnel (including non-certified public accountants) from an affiliate of EY or another EY Firm or any of their respective affiliates, or from independent third-party service providers (including independent contractors), may participate in providing the Audit Services. Unless prohibited by applicable law, we may provide Company information to other EY Firms and their personnel, as well as third-party service providers acting on our or their behalf, who may collect, use, transfer, store or otherwise process (collectively, "Process") it in various jurisdictions in which they operate to facilitate performance of the Audit Services, to comply with regulatory requirements, to check conflicts, to provide financial accounting and other administrative support services, or for quality and risk management purposes. We shall be responsible to you for maintaining the confidentiality of Company information, regardless of where or by whom such information is Processed on our behalf. Either EY or the Company may use electronic media to correspond or transmit information relating to the Audit Services, and such use will not, in itself, constitute a breach of any confidentiality obligations.

The Company shall not, during the term of this Agreement and for 12 months following its termination for any reason, without the prior written consent of EY, solicit for employment or a position on its Board of Directors, or hire or appoint to its Board of Directors, any current or former partner, principal, or professional employee of EY, any affiliate thereof, any other EY Firm or any of their respective affiliates if any such professional either: (i) performed any audit, review, attest, or related service for or relating to the Company at any time (a) since the date on which the Company filed its most recent periodic annual report with the SEC (or, since the beginning of the most recent fiscal year to be covered by the Company's first such report, if applicable) or (b) in the 12 months ended on that date; or (ii) influences EY's operations or financial policies or has any capital balances or any other continuing financial arrangement with EY.

EY shall remain fully responsible for the Audit Services and for all of its other responsibilities, covenants and obligations under this Agreement, notwithstanding that we may subcontract portions of the Audit Services to other EY Firms or that other EY Firms may participate in the provision of the Audit Services. The Company may not make a claim or bring proceedings relating to the Audit Services or otherwise under this Agreement against any other EY Firm and EY shall not contest its responsibility for the Audit Services on the basis that any of them were performed by another EY Firm. The Company shall make any claim or bring proceedings only against EY. This paragraph is intended to benefit the other EY Firms, which shall be entitled to enforce it. Each EY Firm is a separate legal entity.



Docusign Envelope ID: 66D522ED-785B-438A-8208-752ED8E72085



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

You acknowledge that to the extent the Company is regulated by or under the supervision of a federal, state or other regulator (including, without limitation, the Board of Governors of the Federal Reserve, the Office of the Comptroller of the Currency and the New York State Department of Financial Services), you may be in possession of confidential supervisory information as defined in relevant law or regulations ("CSI"), including without limitation documents and information comprising CSI arising from, relating to, or concerning inspections and examinations by such regulator(s). As set forth in paragraph 22, we may require access to such CSI in order to perform the Audit Services. However, CSI may be subject to regulatory restrictions on disclosure to and/or use by third parties. Accordingly: (1) management will identify to EY the regulators that regulate and/or exercise supervisory oversight over the Company and have specific requirements relating to CSI (each, a "Regulator"); (2) management will identify to EY all CSI in your possession; (3) to the extent management's provision of CSI to EY is not authorized by applicable law or regulation absent Regulator approval, management will obtain authorization from the applicable Regulator to provide us access to any and all CSI for the purposes of performing the Audit Services with respect to CSI already in the Company's possession immediately following execution of this Agreement (and with respect to any later-identified CSI immediately upon learning of the examination, inspection or other activity that could result in such materials being deemed CSI); and (4) management will not provide any such access prior to having received such authorization and having identified to EY with specificity the information that constitutes CSI. You acknowledge that any failure to provide any such information could be considered a restriction on the scope of the audit, and the parties agree that they shall engage in good faith discussions regarding the effect of any withholding on the Audit Services.

In order to facilitate performance of the Audit Services and for EY to more readily provide Audit Services, including audit services for subsequent audit periods and engagements, we may utilize certain internal tools, automated techniques, software solutions and other technologies ("EY Tools") to extract, process, analyze and retain Company information, including data. EY owns all right, title, interest and all intellectual property rights in and to the EY Tools, including any enhancements, modifications, and derivative works thereof. You agree that we may, subject to applicable laws, regulations and professional standards, utilize such EY Tools and retain Company information within the EY Tools to facilitate performance of the Audit Services, including, without limitation, audit services for subsequent audit periods and engagements. In the event of any such retention, we will continue to extend the protections set forth in this Agreement to any such information retained

In this manner, we may request general ledger or subledger data extracted from the Company's SAP® ERP systems. Management chose to obtain SmartExporter software from Audicon GmbH ("Audicon"), a third-party software provider, to extract requested data from SAP® ERP systems. To enable EY to use SmartExporter software for Audit Services, EY Global Services Limited has entered into an agreement with Audicon allowing EY to provide the Company with a license key for this limited purpose at no additional cost to the Company. Use of the license key provided is contingent upon the Company's acceptance of any terms and conditions accompanying the installation of the SmartExporter software, as well as the additional terms set forth in this Agreement. Management agrees to use its own skill and judgment in choosing to download and install the SmartExporter software and will follow the Company's internal testing processes before deploying the software on a live system. In doing so, management does not place reliance on any statement made by EY in relation to the software. It is not EY's intention to recommend or in any way endorse the use of the SmartExporter software and EY makes no guarantee as to the quality of the software or warrants that it will function as intended or be

BMG



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

error-free. The SmartExporter software is, however, certified by SAP, ® and certificates and other documentation can be downloaded from the Audicon website. When using the license key to activate the SmartExporter software, management is permitted to use the SmartExporter software only to enable EY to provide the Audit Services. The Company shall not use the SmartExporter software, or any information generated by the SmartExporter software (including data extracted via SmartExporter) for any other purpose.

**Circumstances affecting the form and content of our Report**

Among the matters that we communicate to management, we are required to determine the matters that are most important in our audit, i.e., the key audit matters (NBCTA701) in the context of the Brazilian and international auditing standards. We describe these issues in our Report unless applicable law or regulation prohibits public disclosure on such a matter of when, in extremely rare circumstances, we determine that a matter should not be reported in our Report because any adverse consequences of such communication would outweigh the public interest benefits of such communication.

We have responsibilities for other information included in the documents comprising an annual report, as described in the "Other Information Included in the Company's Annual Report" section below. We are required to include an Other Information section in our Report to be issued in accordance with Brazilian and international auditing standards, which identifies the documents subject to our responsibilities and a description of our responsibilities to read and consider such other information in conjunction with our audit. We are also required, for documents available prior to the date of our Reporting, to include a statement that we have nothing to report or a statement describing any uncorrected material errors in this other information

The final form and content of our Report will reflect the results of our audit findings and final conclusions. We will communicate to management and those charged with governance (including the Statutory Audit Committee) all circumstances affecting the final form and content of our Report

———————————————





**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

### Other Information Included in the Company's Annual Report

The Company shall provide us with the final drafts of the annual report (Management's Report) or intermediaries prior to the date of publication or filing, and where possible, prior to the date of our Report, in order for us to carry out the procedures required for our audit. The Company's management is responsible for preparing the other information contained in the annual report or documents listed above and for ensuring that such documents are free from material misstatement. We will read the documents and, in doing so, consider whether the other information contained in the documents is materially inconsistent with the financial statements or information obtained by us in the course of the audit, or otherwise appears to contain material misstatements. We have the responsibility to read and consider the annual report or documents listed above regardless of whether the documents are available before, or after our date of our Report. We will include a section of Other Information in the Report as described in the Circumstances Affecting the Form and Content of our Report section above.

If we identify that a material inconsistency appears to exist (or become aware that the other information appears to contain material misstatements), we will inform management and those charged with governance (including the Statutory Audit Committee) immediately. Where we determine that a material misstatement in the other information exists and has not been corrected, we will take appropriate action in the circumstances, including by evidencing the existence of such material misstatement in our Audit Report when identified prior to the date of our Report.

To the extent that EY Brazil is engaged for the Audit Services for the subsequent fiscal year, the terms and conditions described in this Agreement shall apply to the provision of such Audit Services, except for modifications, changes or additions specifically determined by the contracting parties. Changes in the scope of the Audit Services and estimated fees for such services in subsequent fiscal years will be communicated in supplemental letters.

To the extent that EY agrees to perform Audit Services for a subsequent fiscal year and subject to Bankruptcy Court approval, the terms and conditions set forth in this Agreement shall apply to the performance of such Audit Services, except as specifically modified, amended or supplemented in writing by the parties. Changes in the scope of the Audit Services and estimated fees for such services in subsequent fiscal years will be communicated in supplemental agreements. We may terminate performance of the Audit Services and this Agreement upon written notice if we reasonably determine that we can no longer provide the Audit Services in accordance with applicable law or professional obligations, but in any event, this Agreement will expire upon the effective date of the Company's confirmed plan of reorganization, or liquidation of the Company's assets, under Chapter 11 or 7 of the Bankruptcy Code, or otherwise. Upon any termination of the Audit Services or this Agreement, the Company shall pay EY for all work-in-progress, Audit Services already performed, and expenses incurred by us up to and including the effective date of such termination. The provisions of this Agreement that give either of us rights or obligations beyond its termination including shall continue indefinitely following the termination of this Agreement and shall survive completion of the Company's bankruptcy whether through a confirmed plan of reorganization under Chapter 11, liquidation of the Company's assets under Chapter 7 of the Bankruptcy Code, or otherwise.

BMG 



São Paulo Corporate Towers
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

EY appreciates the opportunity to be of assistance to the Company. If this Agreement accurately reflects the terms on which the Company has agreed to engage EY, please sign below on behalf of the Company and return it to Bruno Galvão at São Paulo Corporate Towers, Avenida Presidente Juscelino Kubitscheck, 1.909 - Torre Norte, São Paulo - SP CEP 04543-011, Brazil.


Very truly yours,


Ernst & Young Auditores Independentes S.S. Ltda.
CRC SP 034519/O


_____
Bruno M. Galvão
CRC SP 267770/O


Agreed by


**Gol Linhas Aéreas Inteligentes S.A.**


_____
Celso Guimarães Ferrer Junior
President
Date: 18042025

_____
Renata Domingues da Fonseca Guinesi
Vice President
Date: 17042025



São Paulo Corporate Towers
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

**General Terms and Conditions for Audit and Review Engagements**

**ERNST & YOUNG AUDITORES INDEPENDENTES S.S. Ltda** (hereinafter referred to as "EY Brazil" or "we"), a private corporate entity established pursuant to Brazilian laws, with place of business at Avenida Presidente Juscelino Kubitschek, nº 1909, 8º andar - Torre Norte, São Paulo Corporate Towers, São Paulo - SP - CEP: 04543-011, Brazil, enrolled with the Brazilian IRS Registry of Legal Entities (CNPJ/MF) under No. 61.366.936/0001-25; and

**GOL LINHAS AÉREAS INTELIGENTES S.A** (hereinafter referred to as "Company" or "you"), with place of business at Praça Linneu Gomes, S/N, Portaria 03, Prédio 24, Parte, Campo Belo, São Paulo/SP – 04626-020, SP - Brazil, enrolled with the Brazilian IRS Registry of Legal Entities (CNPJ/MF) under No. 06.164.253/0001-87, with an address to receive notices at R. Verbo Divino, 1661 – Chácara Santo Antônio, São Paulo/SP – 04719-002, SP – Brazil, hereby execute and enter into this Agreement.

This agreement for provision of to audit and review Company's financial statements services (hereinafter referred to as the "Services"), dated April 17, 2025, (hereinafter referred to as the "Agreement"), is entered into by and between EY Brazil and the Company.

Paragraph 1 – EY Brazil is a member of the global network of Ernst & Young firms ("EY Firms"), each of which is a separate legal entity.

Paragraph 2 – EY will be solely responsible to you for the Report, the performance of the Services and our other obligations under this Agreement.

Paragraph 3 – You shall be responsible for your personnel's compliance with your obligations under this Agreement.

Paragraph 4 – You may not rely on any draft Report(s).

Paragraph 5 - EY Brazil follows professional confidentiality standards and shall treat all information relating to the Company, presented by you or on your behalf ("Client Information"), as described in sections A56 through A59 of NBC PA 01 Quality Control for Independent Auditors (Legal Entities and Individuals).

Paragraph 6 – Except as otherwise permitted by this Agreement, neither of us may disclose to third parties the contents of this Agreement or any other information provided by or on behalf of the other in the ordinary course of the engagements or related services, that ought reasonably to be treated as confidential and/or proprietary. Either of us may, however, disclose such information to the extent that it:

(a) is or becomes public other than through a breach of this Agreement;

(b) is subsequently received by the recipient from a third party who, to the recipient's knowledge, owes no obligation of confidentiality to the disclosing party with respect to that information;

(c) was known to the recipient at the time of disclosure or is thereafter created independently;

BMG





**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

(d) is disclosed as necessary to enforce the recipient's rights under this Agreement; or

(e) must be disclosed under applicable law, court order, legal process or professional regulations, in which cases EY is required to do so, refraining from giving notice thereof to the Client, including, but not limited to, the requirements provided for in Law No. 9613/98 (Anti-Money Laundering Act), as amended, and in rules and standards issued by the Brazilian Securities and Exchange Commission (CVM) and Brazil's National Association of State Boards of Accountancy (CFC), which provide for mandatory reporting, from legal entities to Brazil's Financial Activities Control Board (COAF), of any fact that might be an indication of money laundering identified in the course of performing engagements such as, even occasionally, advisory, consulting, accounting, audit, advice or any form of assistance.

Paragraph 7 – Either of us may use electronic media to correspond or transmit information and such use shall not in itself constitute a breach of any confidentiality obligations under this Agreement.

Paragraph 8 - Unless prohibited by applicable law, we may disclose Client Information to other EY Firms and EY Persons to facilitate performance of the Services, to comply with regulatory requirements, to check conflicts, for EY Brazil accounting analysis, or quality and risk management purposes.

Paragraph 9 – You agree that if we are requested or required, by government authorities or regulation agencies responsible for auditor oversight, to produce information or documents in our files relating to your affairs, including our working papers or other work product, we may provide these materials to the authorities. Except where prohibited by law, we will advise you of the request or order.

Paragraph 10 – You shall obtain from all foreign affiliates and subsidiaries included in the consolidated financial statements any authorizations, to the fullest extent permitted by applicable law, to enable compliance with requests from government authorities and regulatory agencies, to present documents or information in our hands, custody and control, as well as from affiliated professionals or from audit firms registered abroad, obtained during performance of the Services provided by the affiliate or professional.

Paragraph 11 – We may collect, use, transfer, store or otherwise process (collectively, "Process") Client Information that can be linked to specific individuals ("Personal Data"). We may process Personal Data in various jurisdictions in which we and the other EY Firms operate (which are listed at www.ey.com). We shall process the Personal Data in accordance with professional regulations and the Civil Code. We will require any service provider that processes Personal Data on our behalf to adhere to such requirements.

Paragraph 12 – You warrant that you have the authority to provide the Personal Data to us in connection with the performance of the Services and that the Personal Data provided to us has been processed in accordance with the Civil Code guidelines and applicable legislation.

Paragraph 13 – Our auditor independence could be impaired if the Company solicits for employment or hires certain EY professionals. Such fact could delay the provision of the Services or lead to our termination thereof. You shall not, during the term of this Agreement and for twenty-four months following its termination, for any reason, without our prior written

BMG





**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

consent, solicit for employment or a position on your Board of Directors or to oversee the financial reporting process, or hire or appoint to your Board of Directors or to oversee the financial reporting process, any current or former employee of EY Brazil or of any of the EY entities, if any such professional participates or participated, directly or indirectly, in the performance of the prior or current-year Services.  The employee in the position to oversee the financial reporting process exercises, or is in the position to exercise, influence over the financial statements and over all those who participate in the preparation thereof. EY declares that all EY professionals directly involved in this project are aware of and instructed in the content of this clause.

Paragraph 14 – You shall pay our professional fees and specific expenses in connection with the Services as detailed in the Engagement Letter. You shall also reimburse us for other reasonable expenses incurred in performing the Services.  Our fees are exclusive of taxes or similar charges, as well as customs, duties or tariffs imposed in respect of the Services, all of which you shall pay (other than taxes imposed on our income generally).

    Paragraph 14.1 - Failure to pay or delay payment of the amounts due to EY will oblige the Company to pay the amount in arrears plus a fine of 2% (two percent) plus default interest of 1% (one percent) per month, in addition to the monetary correction based on in the IGPM/FGV variation, or other index that officially replaces it in its extinction, from the date of maturity of the obligation up to the effective payment date calculated pro rata die.

Paragraph 15 – The fees provided for already include all taxes applicable to the Services under this Agreement, pursuant to current tax legislation. Should a superseding law be published (as from this date) creating, increasing or modifying taxes resulting from the engaged Services, the related impacts (positive or negative) shall be immediately included in the portion of the fees under this Agreement that has not yet been billed and/or received.

Paragraph 16 – If we are required by applicable law, legal process or government action to produce information or personnel as witnesses with respect to the Services or this Agreement, you shall reimburse us for any professional time and expenses (including reasonable external and internal legal costs) incurred to respond to the request, unless we are a party to the proceeding or the subject of the investigation.

Paragraph 17 – Except for payment obligations, neither party will be liable for non-compliance with its contractual obligations resulting from unforeseeable circumstances or force majeure until such circumstances cease. Such circumstances encompass any exceptional events that occur regardless of the party's reasonable control and that put, or may put, in risk the safety as well as the physical or mental health of its professionals, considered here, for example, climatic catastrophes, earthquakes, hurricanes, tidal waves, biological or infectious risks, wars, revolutions and strikes.

Paragraph 18 - Unless prohibited by applicable law, we may disclose Client Information to other EY Firms and EY Persons, and to any service provider acting on our behalf, who may collect, use, transfer, store or otherwise process (collectively, "Process") such information in various jurisdictions in which they operate, to facilitate performance of the Services, to comply with regulatory requirements, to check conflicts, to provide accounting and other administrative support services or for risk and quality management. We will be responsible for Client Information confidentiality, regardless of the location where or person by whom this information is Processed on our behalf.

BMG





**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

Paragraph 19 – This Agreement applies to all Audit Services performed by EY Brazil.

Paragraph 20 - This Agreement shall terminate on the completion of the Services. We may terminate this Agreement, or any particular Services, immediately upon written notice to you if we reasonably determine that we can no longer provide the Services in accordance with applicable law or professional obligations.

Paragraph 21 – You shall pay us for all work-in-progress, Services already performed, and expenses incurred by us up to and including the effective date of the termination of this Agreement. Payment is due within 30 days following receipt of our invoice for these amounts.

Paragraph 22 – This Agreement, and any non-contractual obligations arising out of this Agreement or the Services, shall be governed by, and construed in accordance with, the laws of the Federative Republic of Brazil.

Paragraph 23 - Any dispute or claim arising out of or relating to the Services covered by this letter or hereafter provided by us to the Company (including any such matter involving any parent, affiliate, successor in interest, or agent of the Company or of EY Network, or involving any person or entity for whose benefit any such services are or have been provided) shall be submitted to one of the Civil Courts of São Paulo/SP and shall be govern by Brazilian Law.

Paragraph 27 – This Agreement constitutes the entire agreement between EY Brazil and you as to the Services and the other matters it covers, and supersedes all prior agreements, understandings and representations with respect thereto, including any confidentiality agreements previously delivered.

Paragraph 28 – Both of us may execute this Agreement (and modifications to it) by electronic means and each of us may sign a different copy of the same document. Both of us must agree in writing to modify this Agreement [and any Statement of Work hereunder].

Paragraph 29 – The legal representative states that upon signing this Agreement [and any Statement of Work hereunder] on behalf of the Company, he/she is expressly authorized to execute it and to bind you and any of your affiliates or others for whom Services are performed to its terms.

Paragraph 30 – EY Brazil shall own the working papers resulting from the Services.

Paragraph 31 – Neither party shall assign or novate any of its rights or obligations under this Agreement in whole or in part without the prior written consent of the other party; provided, however, that EY may assign or novate any of its rights and obligations under this Agreement to (i) any other EY Firm and/or (ii) any entity or entities resulting from, or established as part of, a restructuring, sale or transfer of an EY Firm, in whole or in part, provided further that any such assignment or novation does not materially affect the continuity of the Services. EY shall provide Client with notice of any such assignment or novation.

Paragraph 32 – If any provision of this Agreement (in whole or part) is held to be illegal, invalid or otherwise unenforceable, the other provisions shall remain in full force and effect.

BMG





**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

Paragraph 33 – If there is any inconsistency between provisions in different parts of this Agreement, those parts shall have precedence as follows (unless expressly agreed otherwise): (a) the Cover Letter, (b) these General Terms and Conditions for Review and Audit engagements and (c) other annexes to the Agreement.

Paragraph 34 – We may use your name publically to identify you as a client, with prior express authorization, but we may refer to you only in connection with the Services, and that we are providing them (or have provided them). EY Brazil may also enter into agreements with other companies, and the Company hereby authorizes the disclosure of our professional relationship.

Paragraph 35 - In virtue of the audit services described in the engagement letter and statement of work, certain documents and information relating to your Company included in the Company's (individual and consolidated) financial statements shall be provided by you. Such documents and information relating to the year ending December 31, 2025, ("Working Papers") shall remain in the possession, custody and control of Ernst & Young Auditores Independentes S.S. Ltda which is subject to duty of confidentiality under applicable legislation.

Paragraph 36 - Accordingly, in accordance with Resolution NBC P1.6 of Brazil's National Association of State Boards of Accountancy (CFC), you hereby authorize Ernst & Young Auditores Independentes S.S. Ltda, to perform the following:

(i)    to provide the CFC with the information required (e.g. the Company's total fees, total assets and net revenue), regardless of its sensitivity, in order to comply with CFC requirements for selection of clients to be audited.

Paragraph 37 - You may not disclose a Report (or any portion or summary of a Report) or refer to us or to any other EY Firm in connection with the Services to support actions that may represent a violation of Law No. 12846/13, except:

> (a) to your lawyers (subject to these disclosure restrictions), who may use it only to give you advice relating to the Services;

> (b) to the extent, and for the purposes, required by subpoena or similar legal process, of which you will promptly notify us; and

> (c) for disclosure and publication of an auditor's report issued by us as required by applicable law and/or regulation.

Paragraph 38 - If you are permitted to disclose a Report (or a portion thereof), you shall not alter, edit or modify it from the form we provided.

Paragraph 39 - The Parties shall be fully liable for any violation of Brazilian Federal Law No. 12846/13, and Law No. 9.613/1998 (Anti Laundry Money), and other related applicable anti-corruption rules ("Anti-Corruption Legislation") you or EY Brazil may commit. The provisions set forth in this paragraph shall remain in full force and effect even after termination of this Agreement, for whatever reason. Without prejudice to other provisions on anti-corruption issues in this Agreement, you hereby undertake and warrant to us that:

> (a)    The Parties will fully comply with the Anti-Corruption Legislation, and zeal to ensure that all your employees, assigns and subcontractors will do the same;

BMG





**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

(b)     The Parties will not engage in the commission or omission of any act that induces noncompliance with the Anti-Corruption Legislation by EY, the other EY Firms, their partners, directors, employees in general and assigns;

(c)     The Parties adopt, and will continue to adopt while this Agreement remains in effect, policies and procedures aimed to ensure compliance with the Anti-Corruption Legislation, and whenever so requested, you must disclose and make available to us these policies and procedures; and

(d)     The Parties shall expressly inform your employees, assigns, service providers and subcontractors that direct or indirect payment of bribes in any form will not be accepted or condoned, nor will any involvement in other conducts that contravene the Anti-Corruption Legislation, for or on behalf of EY, the other EY Firms, their partners, directors, employees in general and assigns, and you will report to us any suspicion that such circumstances exist.

(e)     EY is aware and undertakes to comply with GOL's Code of Ethics, as made available in the www.eticanagol.com.br, and the Client acknowledges that it has read the EY Global Code of Conduct, the EY Supplier Code of Conduct, the EY Brazil Anti-Bribery Policy and the EY Brazil Anti-Money Laundering Policy, available on the Ethics Committee page on the EY website: *Comitê de Ética e Conformidade | EY Brasil.*", and Each party will comply with the provisions of its internal documents.

Paragraph 40 - Subject to applicable law, we may provide Client Information to other EY Firms, EY Persons and external service providers of EY, other EY Member Firms, or EY Persons ("Service Providers") who may collect, use, transfer, store or otherwise process it (collectively "Process") for purposes related to:

(a) the provision of the Services;
(b) complying with regulatory, and legal obligations to which we are subject;
(c) conflict checking;
(d) for risk management and quality reviews; and for
(e) our internal financial accounting, information technology and other administrative support services (collectively "Processing Purposes").

We shall be responsible for maintaining the confidentiality of Client Information regardless of by whom such Information is Processed on our behalf.

Paragraph 41 - The parties hereby declare, including on behalf of their employees and subcontractors, that they comply with the applicable Brazilian privacy and data protection legislation, including, without limitation, the Brazilian General Data Protection Law, the Federal Law nº 12.965/2014 - Marco Civil da Internet, the normative decree and other sectoral or general rules for the protection of personal data, agreeing to process personal data under this Agreement for the performance of Services and only in limits and purpose of this Agreement or with appropriate lawful base.

Paragraph 42 - The parties warrant that the personal data shared under this Agreement has been collected and processed lawfully and in comply to the data subject rights, in accordance with the requirements of the Brazilian General Data Protection Law.

BMG 



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

Paragraph 43 - EY uses other EY Firms, EY Persons and Support Providers who may have access to Client Information in connection with delivery of Services as well as to provide Internal Support Services. EY shall be responsible for any use or disclosure of Client Information by other EY Firms, EY Persons or Support Providers to the same extent as if EY had engaged in the conduct itself.

Paragraph 44 - Subject to applicable law, we may provide Client Information to other EY Firms, EY Persons and external service providers of EY, other EY Member Firms, or EY Persons ("Service Providers") who may collect, use, transfer, store or otherwise process it (collectively "Process") for purposes related to:

a)       the provision of the Services;
b)       complying with regulatory, and legal obligations to which EY is subject to;
c)       conflict checking;
d)       for risk management and quality reviews; and for
e)       EY's internal financial accounting, information technology and other administrative support services (collectively "Processing Purposes").

Paragraph 45 - Transfer of Personal Data among members of the EY network is subject to the EY Binding Corporate Rules Program, available at www.ey.com/bcr. Further information about EY's security measures and processing of Personal Data is available at www.ey.com/privacy.

Paragraph 46 - As a professional services firm, EY is required to exercise its own judgment in determining the purposes and means of processing any Personal Data when providing the Services.  Accordingly, unless otherwise specified, when processing Personal Data subject to the Federal Law nº 13.709/2018 – Brazil General Data Protection Law ("LGPD") or other applicable data protection law, EY acts as an independent controller, and not as a processor under Client's control or as a joint controller with Client.

Paragraph 47 - All doubts, notes or directions necessary in case of incidents with any personal data transacted as a result of this Agreement by EY must be sent to the DPO (Data Privacy Officer/Data Protection Officer) of GOL, through the e-mail dpo@voegol.com.br.

Paragraph 48 - The Parties commit to maintaining a security program that includes measures and safeguards to protect against Security Risks and/or Information Security Incidents as defined below..

 "Security Risks": Information security risks are considered to be any identified vulnerabilities or threats that compromise data and systems of one of the parties. And if exploited, they may result in information security incidents.

 "Information Security Incidents": means any event or action that compromises the confidentiality, integrity or availability of information or information systems. These incidents may occur intentionally, such as in cyber attacks, or accidentally, due to human or technical failures.

Paragraph 49 - The Parties agree that, in their activities related to this Agreement or when acting in the interest or on behalf of each other, they will comply with the requirements of the Applicable Standards mainly with regard to: (i)

BMG





**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

identification of critical information and risk management; (ii) information security management system; (iii) cybersecurity or information security policies; (iv) information sharing; (iv) incident response plans; (v) background investigation and training; and (vi) training and awareness.

Paragraph 50 - EY must use software and/or minimum solutions that guarantee the security, confidentiality, integrity and availability of information and data exchanged for the execution of this Agreement.

Paragraph 51 - EY is fully responsible for ensuring that all its employees, directors, shareholders and intermediaries receive adequate training on cybersecurity standards, including those stipulated in the Applicable Standards and in this Agreement. It is also committed to carrying out periodic training, ensuring continuous compliance with the guidelines established herein. If EY's employees are allocated to activities at Client, through a body shop or resource allocation — that is, professionals temporarily allocated to work directly on Client's team without an employment relationship with the latter —, they must participate in internal information and cybersecurity awareness training indicated by the Client's Cybersecurity area.

Paragraph 52 – In what does not conflict with its own internal policies, EY is aware of a the Client's Information Security Policy for Third Parties, available at https://www.voegol.com.br/sobre-a-gol/fornecedores ("IS Policy").

Paragraph 53 - With the execution of this Agreement, EY declares to be aware and authorizes, by scheduling at least with 10 (days) business days in advance, the performance of audits in its documents and/or related internal procedures related to its personal data privacy and governance program, that is necessary to complement or complete the analyzes and certifications of the Client or the competent authority, being, however, strictly prohibited any and all access to its physical facilities and/or EY systems, with the Client bearing all costs in reason for this audit.

Paragraph 54 - EY shall communicate, within 24 (twenty-four) hours of becoming aware of the facts, in writing, the occurrence of any security incidents ("Incident"), and shall also keep all records of the event, inform all measures adopted as well as the information/data involved in the Incident, without prejudice to additional collaboration regarding any other requests made by Client.

Paragraph 55 - It is EY's exclusive responsibility to resolve Incident that occurs in its own environment, regardless of whether they are directly related to the object of this Agreement. EY must take all necessary measures to mitigate risks, correct vulnerabilities and ensure the security of its operations, including timely and appropriate communication to Client if any Incident has a potential impact on the services provided. In addition, EY undertakes to maintain an updated incident response plan in accordance with market best practices, aiming to minimize possible impacts to Client.

Paragraph 56 - The Incident report must contain, as a minimum, the following information:

a.      Incident Description: A clear and concise summary of what occurred, including the type of attack (e.g., ransomware, phishing, etc.).
b.      Incident Date and Time: When the incident was identified and when it occurred, if available.
c.      Incident Scope: What systems, data or operations were affected and the extent of the breach.

BMG





**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

d.      Nature of Compromised Data: Identify the type and sensitivity of the information improperly accessed or disclosed, that is, the nature of the compromised data including – without limitation – information if: (i) there is personal data, (ii) there is sensitive data, (iii) there is critical corporate data, such as trade secrets, strategic plans, operationally sensitive data, data that can affect the company's competitiveness and reputation. For all purposes, the classification of personal data and sensitive data is considered, as stipulated in the Brazilian General Data Protection Law "LGPD".

e.      Volumetry: Provide the requested information, including the volumetry of data accessed improperly or leaked.

f.      Immediate Actions Taken: Provide detailed information on the measures adopted, considering contingency, damage mitigation and effects of the Incident.

g.      Response and Recovery Plans: What is being done to resolve the problems and consequences of the Incident, as well as, if applicable, what is being done to safely restore systems and operations.

h.      Potential Impact: Preliminary assessment of the potential impact that the Incident may have on its operations and legal obligations. This includes identifying the necessary notifications to regulatory bodies, as well as analyzing the effects that the company may suffer, such as unavailability of systems and services, interruptions in operations and other significant impacts.

i.      Follow-up Contact: Contact information for a designated person or team to provide updates and answer additional questions about the incident.

j.      Update Schedule: Sharing an updated schedule considering the addition of information about the frequency and format of communications about the Incident.

k.      Additional Documentation: Any report, documentation or evidence available that may assist in the assessment of the Incident must be forwarded to Client.

Paragraph 57 - In case of Incident, communication should be sent to the following email address: csirt@voegol.com.br.

Paragraph 58 - If EY does not have all the information listed in the clause above at the time of sending the communication to Client, the missing information must be forwarded within 05 (five) calendar days or, as expressly agreed with Client in a separate notification.

Paragraph 59 - Without prejudice to the other provisions of this Agreement, EY will be  liable, subject to the limits of liability established in this Agreement, for any  direct damages proven caused to Client as a result of acts or omissions related to compliance with the provisions herein formalized, as its sole fault.

Paragraph 60 - In the event of any action, complaint, report, investigation or demand ("Demand") by any third parties, against Client, as a result of proven violations by EY's sole fault, in relation to information security obligations set out in this clause 47, the latter undertakes to assume any and all responsibility linked to such Demand, subject to the limit of liability on the total amount of fees paid under this Agreement,requesting, at the first opportunity, the replacement and/or exclusion of Client as a passive party in said Demand.

Paragraph 61 - Regardless of whether or not the replacement and/or exclusion of the passive party is accepted, as provided above, EY undertakes to indemnify Client for direct damages proven to be incurred in relation to the claims, including costs, fees and reasonable attorney's fees that may be incurred by Client, within a period of up to 30 (thirty) days, counted from the receipt of the notification sent by Client to EY in this regard.

BMG 



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

Paragraph 62 - By agreement to the provision of the Services, EY is not providing a guarantee to Client that EY's performance of those services pursuant to the terms and conditions set forth in this Agreement will guarantee Client's successful reorganization under Chapter 11.

Paragraph 63 - Any activities not described in this Agreement are not covered by the fees stated therein.  These services will be considered outside the scope of such Statement of Work and are the responsibility of Company to perform on a timely basis unless otherwise agreed by the parties in writing (in an amendment), and approved by the Bankruptcy Court.

Paragraph 64 - EY will submit an itemized and detailed billing statement for this Agreement, and EY will request payment of EY's fees and expenses, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules for the Bankruptcy Court and any relevant administrative orders. EY will submit EY's invoices as the work progresses and payment of them will be made upon receipt, or as quickly as the Bankruptcy Code, the Bankruptcy Rules, Local Rules and any relevant administrative orders allow.

Paragraph 65 - EY acknowledges that payment of EY's fees and expenses is subject to (i) the jurisdiction and approval of the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code, any order of the Bankruptcy Court approving the retention of EY and the U.S. Trustee Guidelines, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications.

BMG 

Docusign Envelope ID: 66D522ED-785B-438A-8208-752ED8E72985



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

**Exhibit A**
**Data Protection**

Considering that the activities related to the Agreement may, eventually, result in the Processing of personal data between **EY** and GOL, the **Parties resolve to establish the obligations for the protection and processing of personal data through this Exhibit A, which is an integral part of the Agreement.**

The Parties mutually declare and warrant, including on behalf of their partners, employees and subcontractors, that they comply with the applicable legislation on privacy and protection of personal data ("Applicable Data Protection Legislation"), including, but not limited to, Federal Law No. 13,709/2018 - General Personal Data Protection Law ("LGPD"), normative decrees and/or other sectoral or general rules for the protection of personal data,  undertaking to process the personal data related to and necessary for the execution of this Agreement, for the provision of the Services and only within the limits, purposes and with appropriate legal basis.

1. Within the scope of this Agreement and for the execution of its object, the terms of the LGPD, with the respective definitions and concepts contained in the aforementioned legal provision, shall apply, regardless of whether they are written with capital or lower case letters, in the singular or plural.

2. The Parties guarantee that the Personal Data shared between them under this Agreement has been collected and is Processed in a lawful manner and in accordance with the rights of the respective Personal Data Subject, in accordance with the requirements and requirements imposed by the LGPD.

**3. As a professional services firm, EY is required to exercise its own judgment in determining the purposes and means of Processing any Personal Data indispensable to the provision of the Services. Accordingly, unless otherwise specified, when Processing Personal Data subject to Applicable Data Protection Legislation, EY will act as an independent Controller, and not as a Personal Data Processor, when it would be bound by the Client's instructions for the purposes of the Processing or as a Co-controller with the Client (Joint Personal Data Controllership), when the purposes and means for the Processing are defined jointly'between two or more Processing Agents.**

4. In the event of any Processing of Personal Data shared between the Parties due to this Agreement for purposes unrelated to its execution, it is hereby agreed for all purposes that this Processing activity will occur out of context, and the respective Personal Data Controller shall be fully responsible for such Processing, with the other Party being free of any obligation or responsibility arising therefrom.

5. EY relies on other EY Firms and Service Providers (the latter primarily for support purposes) who may have access to Client Information (including Personal Data under their responsibility) in connection with the provision of Services, as well as to provide Internal Support Services, including but not limited to:

(a) provision of the Services,

(b) compliance with regulatory and legal obligations to which EY is subject,

BMG 

Docusign Envelope ID: 66D522ED-785B-438A-8208-752ED8E72985



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

(c) verification of the existence of conflicts;

(d) risk management and quality reviews, and

(e) EY's internal financial accounting, information technology, and other administrative support services.

6. If it is necessary, for the execution of a Statement of Work or Contract, the international transfer of Personal Data from Brazil by any of the Parties, and if the destination country does not have an adequate level of protection of Personal Data as determined by the National Data Protection Authority ("ANPD"), the Party sharing the Personal Data must ensure that such international transfer is carried out in accordance with one of the mechanisms provided for by the Applicable Data Protection Legislation, including, but not limited to, those provided for in Article 33 et seq. of the LGPD.

7. The international transfer of Personal Data from Brazil to other EY Firms is subject to the EY Global Corporate Rules ("EY Binding Corporate Rules" or simply "BCRs") signed by EYG and the Swiss Data Protection Supervisory Authority, available on the www.ey.com/bcr website, which document shall be considered and interpreted in conjunction with the provisions of this chapter,  in this Agreement.

8. In the cases provided for in this Exhibit A, EY will remain fully responsible for the confidentiality of the information (whether Personal Data or not) shared.

9. The Parties shall adopt technical and administrative (organizational) security measures capable of ensuring the privacy, confidentiality, availability, and integrity of the Personal Data subject to any Processing, under the terms established in the Applicable Data Protection Legislation. Such measures should be evaluated and tested periodically so that they are effective and constantly improved.

10. Whenever applicable, the Parties shall cooperate with each other within the limits of their activities to ensure compliance with the exercise of rights by the Personal Data Subjects, as well as for obligations or requests imposed by competent government authorities, including, but not limited to, the ANPD, in compliance with the Applicable Data Protection Legislation.

11. Under the terms of the clause above, the Parties shall notify each other, within a maximum period of twenty-four (24) hours from the date of knowledge, in the event of receipt of a request/requisition by the Personal Data Subject, when related to any Processing activity carried out in the context of this Agreement, as well as share the content of the response sent to the Data Subject,  when so requested by the other Party.

12. If one of the Parties is the recipient of any court order or official communication that determines the provision or disclosure of Personal Data Processed under its responsibility, it must pay attention to the provision of paragraph 6 of this Agreement.

BMG





**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

13. Pursuant to the clause above, the notice must contain, at a minimum, sufficient information to enable the other Party to comply with any requirements imposed by Applicable Data Protection Legislation, including, but not limited to, (i) the date and time of the event; (ii) Personal Data affected by the event; (iii) number of Data Subjects affected by the event; (iv) possible consequences and impacts of the event; (v) mitigating measures adopted to contain damages.

14. The Parties shall keep a record of Security Incidents, which contains, at a minimum, a description of (i) the nature of the event; (ii) the consequences of the event; and (iii) the measures taken or proposed by the Parties to respond to and remedy the Security Incident.

15. The Parties shall not disclose any information about the Security Incident, pursuant to the above clauses, unless expressly agreed between them, or there is a legal or regulatory obligation to do so, or as determined by any governmental authority, pursuant to Applicable Data Protection Legislation.

16.      Where notification of the Security Incident is required, both Parties shall approve the communication, which shall be provided by the Party responsible for the Security Incident.

17. For effective communication between the Parties and to obtain further information about any Security Incident, the Parties indicate below the contact details of their respective Data Protection Officers/DPOs:

· EY – data.protection@br.ey.com, e

· Client – dpo@voegol.com.br.

18. By entering into this Agreement, EY declares to be aware of and authorizes, by scheduling at least 10 (business days) in advance of the date of receipt of the notification, the performance of audits on its documents and/or internal procedures related to its privacy and personal data governance program that are necessary to complement or complete the analyses and certifications of the Client or the competent authority,  access to EY's physical premises and systems is expressly prohibited, and the Client bears all costs due to this audit.

18.1. In the event of identification of inconsistencies or irregularities when conducting audits documentary, the Client shall notify EY of such conclusion in a reasoned manner, allowing EY to carry out its analyses and provide for the containment, correction, remediation, restoration and prevention of security, proving to the Client, if requested and within a period not exceeding 10 (business days) from the date of receipt of the notification, the mitigating and remedial measures adopted,  unless EY does not agree with the conclusion, at which time it will forward its opinion to the Client, with due justification as to why it understands that there is no action to be taken.

19. The Parties shall indemnify, defend and hold harmless the other Party and/or its affiliates, subsidiaries, from any and all liability, loss, claim, damage, penalty, expense, fines, pain and suffering, costs of remediation efforts, attorneys' fees and costs arising out of or related to any third party action, claim or allegation,  including, but not limited to, any regulatory or governmental authority, arising out of non-compliance with this Agreement and/or non-compliance with Applicable Data Protection Legislation, provided that it is duly proven.

BMG 



**São Paulo Corporate Towers**
Av. Presidente Juscelino Kubitschek, 1.909
6º ao 10º andar - Vila Nova Conceição
04543-011 - São Paulo - SP - Brasil

Tel: +55 11 2573-3000

20. In the event that the ANPD imposes sanctions on the Parties related to this Agreement, and the guilt, willful misconduct or other element of responsibility of one of the Parties is proven, the Party that has caused the sanction shall indemnify the other Party, in addition to any costs and expenses incurred by the injured Party throughout the administrative proceeding.

21. This Agreement does not create joint and several liability between the Parties for any penalties related to the Processing activities carried out in their context, and each Party shall be held individually liable to the extent of its activities.

22. The indemnification obligations under this chapter are in addition to, and do not exclude, any indemnification obligation contained in the other chapters of this Agreement.

23. Intentionally Omitted.

24. If the Client requires EY to access or use the Client's or the third party's systems or devices, EY shall have no responsibility for the information security controls (confidentiality, availability and integrity), security or data protection of such systems or devices or for their performance or compliance with the Client's requirements or applicable law.

25. To facilitate the performance of the Services, EY may provide access to or make available technology-enabled collaboration tools and platforms to Client's employees or third parties acting on or at Client's request. Customer shall be responsible for all such person's compliance with the terms applicable to their use of such tools and platform.

BMG