**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| GOL Linhas Aereas Inteligentes, S.A., *et al.*[1] | : | Case No. 24-10118 (MG) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-----------------------------------------------------------------x

### UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION OF THE SECOND MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF GOL LINHAS AÉREAS INTELIGENTES S.A. AND ITS AFFILIATED DEBTORS

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Intelligentsia S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundis de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A). The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ............................................................................................ 1

II.  RELEVANT FACTS ........................................................................................................ 2

    A.   General Background ............................................................................................ 2

    B.   Key Provisions and Terms of the Plan .................................................................. 4

III. DISCUSSION .................................................................................................................. 9

    A.   The Plan Cannot Be Confirmed Because It Does Not Comply With Section
        1129 .................................................................................................................... 9

        i.    *The Third-Party Releases Are Non-Consensual; There Is No Federal
            Law Governing Consent To Contracts* ...................................................... 10

        ii.   *The Exculpation Remains Impermissibly Broad* ...................................... 13

        iii.  *There Is No Jurisdiction Or Basis For A Permanent Injunction
            Barring Claims Against Non-Debtor Parties* ........................................... 14

    B.   The Court Should Not Waive the Rule 3020 Stay ................................................ 18

IV.  CONCLUSION ................................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*In re Adelphia Commc'ns Corp.*,
  368 B.R. 140 (Bankr. S.D.N.Y. 2007) .................................................................. 18

*In re Arrowmill Dev. Corp.*,
  211 B.R. 497 (Bankr. D.N.J. 1997) ...................................................................... 11

*Bank of Louisiana v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Texas, Inc.)*,
  266 F.3d 388 (5th Cir. 2001) ................................................................................ 16

*In re Breitburn Energy Partners LP*,
  582 B.R. 321 (Bankr. S.D.N.Y. 2018) .................................................................... 9

*Butner v. United States*,
  440 U.S. 48 (1979) ................................................................................................ 11

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
  596 U.S. 107 (2022) ............................................................................................. 12

*Cavanaugh v. Looney*,
  248 U.S. 453 (1919) .............................................................................................. 17

*In re Charter Commc'ns*,
  419 B.R. 221 (Bankr. S.D.N.Y. 2009) .................................................................... 9

*In re Chassix Holdings, Inc.*,
  533 B.R. 64 (Bankr. S.D.N.Y. 2015) .................................................................... 12

*In re Chemtura Corp.*,
  No. 09-11233, 2010 WL 4607822 (Bankr. S.D.N.Y. Nov. 3, 2010) ..................... 18

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ............................................................................................... 17

*In re Combustion Eng'g, Inc.*,
  391 F.3d 190 (3d Cir. 2004) ................................................................................ 15

*Cont'l Airlines Corp. v. Air Line Pilots Assn., Int'l (In re Cont'l Airlines Corp.)*,
  907 F.2d 1500 (5th Cir. 1990) ........................................................................ 11, 14

*In re Dairy Mart Convenience Stores, Inc.*,
  351 F.3d 86 (2d Cir. 2003) .................................................................................. 11

*In re Ditech Holding Corp.*,
  606 B.R. 544 (Bankr. S.D.N.Y. 2019) .................................................................... 9

*In re Dreier LLP*,
    429 B.R. 112 (Bankr. S.D.N.Y. 2010) ................................................................ 14

*Feld v. Zale Corp. (In re Zale Corp.)*
    62 F.3d 746 (5th Cir. 1995) ................................................................ 15, 16

*Harrington v. Purdue Pharma L.P.*,
    603 U.S. 204 (2024) ................................................................ *passim*

*Matter of Highland Cap. Mgmt., L.P.*,
    48 F.4th 419 (5th Cir. 2022) ................................................................ 13

*Hanna v. Plumer*,
    380 U.S. 460 (1965) ................................................................ 11

*Houston v. Holder (In re Omni Video, Inc.)*,
    60 F.3d 230 (5th Cir. 1995) ................................................................ 10

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ................................................................ 16

*In re Mallinckrodt PLC*,
    639 B.R. 837 ................................................................ 13

*In re Pac. Lumber Co.*,
    584 F.3d 229 (5th Cir. 2009) ................................................................ 13

*In re Park Ave. Radiologists, P.C.*,
    450 B.R. 461 (Bankr. S.D.N.Y. 2011) ................................................................ 15

*Patterson v. Mahwah Bergen Retail Grp., Inc.*,
    636 B.R. 641 (E.D. Va. 2022) ................................................................ 13

*In re Port Morris Tile & Marble LP*,
    645 B.R. 500, 510 (Bankr. S.D.N.Y. 2022) ................................................................ 14

*In re PTL Holdings LLC*,
    2011 WL 5509031 (Bankr. D. Del. Nov. 10, 2011) ................................................................ 13

*In re PWS Holding Corp.*,
    228 F.3d 224 (3d Cir. 2000) ................................................................ 13

*Resorts Int'l Fin., Inc. v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*,
    372 F.3d 154 (3d Cir. 2004) ................................................................ 15

*In re Robertshaw US Holding Corp.*,
    662 B.R. 300 (Bankr. S.D. Tex. 2024) ................................................................ 10

*Rodriguez v. FDIC*,
    589 U.S. 132 (2020) ................................................................ 12

*In re Roman Cath. Diocese of Rockville Ctr., N.Y,* ,
   651 B.R. 622 (Bankr. S.D.N.Y. 2023) .................................................. 15

*In re Sbarro LLC*
   No. 14-10557-MG, 2013 WL 12579564 (Bankr. S.D.N.Y. Jan. 23, 2013) ........................... 9

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.,*
   559 U.S. 393 (2010) .................................................. 11

*In re Spirit Airlines, Inc., No. 24-11988,*
   2025 WL 737068 (Bankr. S.D.N.Y Mar. 7, 2025) ................................ 10

*In re Syncora Guarantee Inc.,*
   757 F.3d 511 (6th Cir. 2014) .................................................. 18

*Travelers Cas. & Sur. Co. of America v. Pac. Gas & Elec. Co.,*
   549 U.S. 443 (2007) .................................................. 11

*In re Washington Mut., Inc.,*
   442 B.R. 314 (Bankr. D. Del. 2011) .................................................. 13

*Weinberger v. Romero-Barcelo*
   U.S. 305 (1982) .................................................. 17

**Statutes**

11 U.S.C. § 101 .................................................. 2, 12

11 U.S.C. § 105(a) .................................................. 16

11 U.S.C. § 1102 .................................................. 2

11 U.S.C. § 1107(a) .................................................. 2

11 U.S.C. § 1108 .................................................. 2

11 U.S.C. § 1123(b) .................................................. 5

11 U.S.C. § 1125(e) .................................................. 4, 12

11 U.S.C. § 1129 .................................................. *passim*

11 U.S.C. § 1141(b) .................................................. 11

28 U.S.C. 1334(b) .................................................. 15

**Rules**

Fed. R. Bankr. P. 1015(b) .................................................. 2

Fed. R. Bankr. P. 3020 .................................................. 17

iv

William K. Harrington, the United States Trustee for Region 2 (the "United States

Trustee"), through his counsel, hereby objects to confirmation (the "Plan Objection") of the

*Second Modified Third Amended Joint Chapter 11 Plan of Reorganization* (as may be further

amended from time to time, the "Plan"[2]) of GOL Linhas Aereas Inteligentes S.A. and its

affiliated debtors (collectively, the "Debtors" or "GOL") [ECF No. 1389], in the above captioned

chapter 11 cases (the "Cases").  In support hereof, the United States Trustee respectfully states:

## I.  PRELIMINARY STATEMENT

The United States Trustee objects to confirmation of the Plan on several grounds.  First,

as set forth in the United States Trustee's Disclosure Statement Briefs[3] (which arguments are

fully incorporated herein), the Plan improperly seeks to impose non-consensual Third-Party

Releases[4] in violation of the Bankruptcy Code and established precedent.

**Second**, the United States Trustee renews its earlier objection that the Exculpation

provision in the Plan remains unnecessarily broad—both as to the parties granted such protection

(who may not be entitled to it), as well as the scope of the acts and omissions covered, including

---

[2]  The Debtors have filed multiple amended versions of the Plan, which are summarized in the *Notice of Filing of Solicitation Version of the Second Modified Third Amended Joint Chapter 11 Plan of Reorganization of GOL Linhas Aereas Inteligentes S.A. and its Affiliated Debtors* [ECF No. 1389].  At this time, further amendments to the Plan may be forthcoming.  Notwithstanding this Plan Objection, the United States Trustee intends to continue discussions with the Debtors concerning the Exculpation provision and other matters with a view towards consensual resolution.

[3]  In accordance with this Court's order dated December 26, 2024 [ECF No. 1182] (the "Briefing Order"), the United States Trustee filed the *Response of the United States Trustee to Debtors' Opening Brief in Support of the Releases and Exculpation Provisions of the Debtors' Disclosure Statement and Chapter 11 Plan* [ECF No. 1253] (the "UST Reply Brief").  Thereafter, with the consent of the Court, the United States Trustee filed a *Sur-Reply to Debtors' Reply Brief in Support of the Releases and Exculpation Provisions of the Debtors' Disclosure Statement and Chapter 11 Plan* [ECF No. 1324] (the "UST Sur-Reply," and together with the "UST Reply Brief," the "Disclosure Statement Briefs").  Copies of the United States Trustee's Disclosure Statement Briefs are annexed hereto as Exhibit 1.  The United States Trustee understands those objections to have been overruled at the March 17, 2025, hearing and therefore does not repeat them except to respond to the Court's statements at that hearing.  *See* DS Hr'g Tr. at 170:20-22.  Nevertheless, the United States Trustee renews those objections to preserve them for any possible appeal.

[4]  Capitalized terms used but not defined herein shall have the definitions ascribed to them in the Plan, Disclosure Statement, and/or the United States Trustee's Disclosure Statement Briefs, as appropriate.

for future conduct.

Third, the Plan contains an over-reaching Injunction that would effectuate and implement the non-consensual Third-Party Releases and overly broad Exculpation provision by permanently enjoining all holders of claims and interests, and other parties in interest, and their respective related parties, from taking any action against the Debtors, Reorganized Debtors, and non-debtor third-parties, that interferes with the implementation of the Plan, and in particular, in in relation to any claim or interest that has been extinguished, discharged, released, or exculpated. The Debtors cannot use this non-consensual Injunction to enforce, and indeed expand, improper Third-Party Releases and Exculpation provision.

Fourth, the Court should deny any request to waive Rule 3020(e)'s 14-day automatic stay of any entered confirmation order.

## II. RELEVANT FACTS

### A.    General Background

1.    On January 25, 2024, each of the Debtors filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

2.    The Debtors continue to manage their assets and operate their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Cases.

3.    The Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and this Court's *Order (i) Directing Joint Administration of Chapter 11 Cases and (ii) Granting Related Relief. See* ECF No. 58.

4.  On February 9, 2024, the United States Trustee appointed an official committee of unsecured creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code. *See* ECF No. 114 (Notice of Appointment of Official Committee of Unsecured Creditors).

5.  On December 9, 2024, the Debtors filed the (i) *Chapter 11 Plan / Joint Chapter 11 Plan of Reorganization of GOL Linhas Aereas Inteligentes S.A. and its Affiliated Debtors* [ECF No. 1141]; (ii) *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of GOL Linhas Aereas Inteligentes S.A. and its Affiliated Debtors* [ECF No. 1142] (as may be amended from time to time, the "Disclosure Statement"[5]); and (iii) *Motion for Entry of an Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures; (III) Approving Forms of Ballots; (IV) Establishing Procedures for Allowing Certain Claims for Voting Purposes; (V) Scheduling a Confirmation Hearing; and (VI) Establishing Notice and Objection Procedures* [ECF No. 1143] (the "DS Motion").

6.  The Disclosure Statement was opposed by, among others, the United States Trustee.  *See* ECF No. 1308 (Objection of the United States Trustee to Approval of the Disclosure Statement) (the "UST DS Objection").

7.  On March 17, 2025 (the "DS Hearing"), this Court held a hearing to consider the relief in the DS Motion.[6]  Following the DS Hearing, the Court entered the *Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures; (III) Approving Forms of Ballots; (IV) Establishing Procedures for Allowing Certain Claims for Voting*

---

[5]  The Debtors have filed multiple versions of the Disclosure Statement, which are summarized in the *Notice of Filing of Solicitation Version of the Disclosure Statement for Second Modified Third Amended Joint Chapter 11 Plan of GOL Linhas Aereas Inteligentes S.A. and its Affiliated Debtors* [ECF No. 1390].

[6]  A copy of the transcript of the DS Hearing is attached hereto as Exhibit 2.

*Purposes; (V) Scheduling a Confirmation Hearing; and (VI) Establishing Notice and Objection*

*Procedures* [ECF No. 1388] (the "DS Order").

**B.**    **Key Provisions and Terms of the Plan**

8.    The Plan sets forth the following relevant defined terms:

"*Exculpated Parties*" means, collectively, and in each case in their capacities as such: (i)(a) the Debtors, (b) the Reorganized Debtors, (c) the Committee and its members, (d) the General Unsecured Claim Observer, (e) the Ad Hoc Group of Abra Noteholders and Elliott, (f) the Abra Notes Agents, (g) the DIP Agent and the DIP Trustee, (h) the 2024 Senior Exchangeable Notes Trustee, the 2025 Senior Notes Trustee, and the Perpetual Notes Trustee, and (i) Abra; (ii) with respect to each of the Entities and Persons in clause (i), all of such Entities' and Persons' Related Parties, solely to the extent such Related Parties are fiduciaries of the Estates or otherwise to the fullest extent provided for pursuant to section 1125(e) of the Bankruptcy Code; and (iii) each other Consenting Stakeholder, its Affiliates, and each of its and their respective Related Parties; provided, that with respect to the Entities and Persons in clause (iii), any exculpations provided under the Plan or the Confirmation Order shall be granted only to the extent provided in section 1125(e) of the Bankruptcy Code.

Plan, Art. 1.A.129.

"*Related Parties*" means, with respect to any Entity or Person, in each case in its capacity as such with respect to such Entity or Person, such Entity's or Person's current and former directors, managers, officers, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

Plan, Art. 1.A.242.

"*Released Parties*" means, collectively, each of the following, in each case in its capacity as such: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Committee and its members; (iv) the other Consenting Stakeholders; (v) the DIP Noteholders, (vi) the Agents/Trustees; (vii) the Ad Hoc Group of Abra Noteholders and Elliott; and (viii) with respect to each of the foregoing Entities and Persons set forth in clause (i) through (vii), each of such Entities' and Persons' Affiliates and its and their respective Related Parties. Notwithstanding the foregoing, (i) any Entity or

Person that opts out of the releases set forth in Article IX.E shall not be deemed a
Released Party and (ii) any Entity or Person that would otherwise be a Released
Party hereunder but is party to one or more Retained Causes of Action shall not be
deemed a Released Party with respect to such Retained Causes of Action.

Plan, Art. 1.A.243.

"*Releasing Parties*" means, collectively, each of the following, in each case in its
capacity as such: (i) each of the Released Parties; (ii) all holders of Claims that vote
to accept the Plan and do not affirmatively opt out of granting the releases in Article
IX.E by checking the box on the applicable ballot; (iii) all holders of Claims or
Interests that are Unimpaired under the Plan and do not affirmatively opt out of
granting the releases in Article IX.E by checking the box on the applicable notice;
(iv) all holders of Claims in Classes that are entitled to vote under the Plan but that
(a) vote to reject the Plan or do not vote either to accept or reject the Plan and (b)
do not affirmatively opt out of granting the releases in Article IX.E by checking the
box on the applicable ballot; and (v) with respect to each of the foregoing Entities
and Persons set forth in clauses (ii) through (iv), all of such Entities' and Persons'
respective Related Parties. For the avoidance of doubt, holders of Claims or
Interests in Classes that are deemed to reject the Plan and therefore are not entitled
to vote under the Plan are not Releasing Parties in their capacities as holders of such
Claims or Interests.

Plan, Art. I.A.244.

9.     Article IX of the Plan contains provisions as to Releases, Exculpation and

Injunction:

*E.  Releases by Holders of Claims or Interests*

**Notwithstanding anything in the Plan to the contrary, pursuant to section
1123(b) of the Bankruptcy Code, for good and valuable consideration, on and
after the Effective Date, to the maximum extent permitted by applicable law,
each Releasing Party shall be deemed to have conclusively, absolutely,
unconditionally, irrevocably, and forever released, waived, and discharged the
Released Parties from, and covenanted not to sue on account of, any and all
claims, interests, obligations (contractual or otherwise), rights, suits, damages,
Causes of Action (including Avoidance Actions), remedies, and liabilities
whatsoever, whether known or unknown, foreseen or unforeseen, fixed or
contingent, matured or unmatured, disputed or undisputed, liquidated or
unliquidated, existing or hereafter arising, in law, equity, or otherwise, that
such Releasing Party would have been legally entitled to assert in its own right
(whether individually or collectively) or on behalf of the holder of a Claim or
Interest, including any derivative claims or Causes of Action assertable on
behalf of any Releasing Party, based on or relating to, or in any manner arising**

**from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the Chapter 11 Cases, the DIP Facility, the issuance, distribution, purchase, sale, or rescission of the purchase or sale of any security or other debt instrument of the Debtors or Reorganized Debtors, the assumption, rejection, or amendment of any Executory Contract or Unexpired Lease, the subject matter of, or the transactions or events giving rise to, any Claim or Interest dealt with in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, and the negotiation, formulation, preparation, entry into, consummation, or dissemination of (i) the DIP Facility Documents, (ii) the Plan Support Agreement, (iii) the Disclosure Statement, (iv) the Plan (including, for the avoidance of doubt, the Plan Supplement), (v) the Transaction Steps, (vi) the Restructuring Transactions, (vii) the New Debt Documents, (viii) the Incremental New Money Equity Documents, (ix) the New Equity Documents, or (x) any related agreements, instruments, or other documents, in each case, in connection with or relating to any act or omission, transaction, event, or other occurrence taking place on or before the Effective Date, other than claims unknown to such Releasing Party as of the Effective Date arising out of or relating to any act or omission of a Released Party that is determined by a Final Order of a court of competent jurisdiction to have constituted willful misconduct, intentional fraud, or gross negligence. Notwithstanding anything to the contrary in the foregoing, the releases granted in this Article IX.E do not release any post-Effective Date obligations or liabilities of any Person or Entity under the Plan, any assumed Executory Contract or Unexpired Lease, or agreement or document that is created, amended, ratified, entered into, or Reinstated pursuant to the Plan (including the New Debt Documents, the Incremental New Money Equity Documents, and the New Equity Documents).**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases described in this <u>Article IX.E</u> and shall constitute the Bankruptcy Court's finding that such releases (i) are an essential means of implementing the Plan; (ii) are an integral and non-severable element of the Plan and the transactions incorporated herein; (iii) confer substantial benefits on the Estates; (iv) are in exchange for good and valuable consideration provided by the Released Parties; (v) constitute a good-faith settlement and compromise of the claims and Causes of Action released by this <u>Article IX.E</u>; (vi) are in the best interests of the Debtors, their Estates, and all holders of Claims and Interests; (vii) are fair, equitable, and reasonable; (viii) are given after due notice and opportunity for hearing; and (ix) are a bar to any of the Releasing Parties asserting any claim or Cause of Action released by this <u>Article IX.E</u>. The releases described in this <u>Article IX.E</u> shall on the Effective Date, have the effect of res judicata to the fullest extent permissible under applicable laws of Brazil and any other jurisdiction in which the Debtors operate.**

Pursuant to section IV.B of the Solicitation and Voting Procedures, claimants that have submitted a proof of claim with respect to a particular Aircraft Equipment Transaction that are not receiving ballots in accordance with Annex 1 of the Solicitation and Voting Procedures shall be deemed to have given or not given the releases in this Article IX.E in connection with their non-voting Claims to the same extent and in accordance with whether the voting claimant for such Aircraft Equipment Transaction grants or does not grant such releases.

Plan, Art. IX.E. ("Third-Party Releases") (bold in original).

*F. Exculpation*

**Without affecting or limiting the releases set forth in Article IX.D and Article IX.E, and notwithstanding anything herein to the contrary effective as of the Effective Date, to the fullest extent permitted by law, no Exculpated Party shall have or incur, and each Exculpated Party shall be exculpated from, any Claim, claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the DIP Facility Documents, the Plan Support Agreement, the Disclosure Statement, the solicitation of votes on, or confirmation of, the Plan, the New Debt Documents, the Incremental New Money Equity Documents, the New Equity Documents, any settlement or compromise reflected in the Plan, the Transaction Steps, the Restructuring Transactions, and the Plan (including, for the avoidance of doubt, the Plan Supplement), the funding of the Plan, the occurrence of the Effective Date, the administration and implementation of the Plan or the property to be distributed under the Plan, the issuance or distribution of securities under or in connection with the Plan, the issuance, distribution, purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors under or in connection with the Plan, or the transactions in furtherance of any of the foregoing, in each case, other than claims or liabilities arising out of or relating to any act or omission of an Exculpated Party that is determined by a Final Order of a court of competent jurisdiction to have constituted willful misconduct, fraud, or gross negligence; provided, that, notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not apply to any (i) liability that cannot be exculpated pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct (22 N.Y.C.P.R. § 1200), and (ii) cause of action, liability or claim arising out of or relating to any police, regulatory, criminal, or other enforcement action by a governmental agency. The Exculpated Parties have, and upon implementation of the Plan, shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes on, and distribution of consideration under, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan. This exculpation shall be in addition to, and not in**

**limitation of, all other releases, indemnities, exculpations, and any applicable laws, rules, or regulations protecting the Exculpated Parties from liability. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any post-Effective Date obligations or liabilities of any Person or Entity under the Plan, the New Debt Documents, the Incremental New Money Equity Documents, and the New Equity Documents, or any assumed Executory Contract or Unexpired Lease.**

Plan, Art. IX.F. ("Exculpation") (bold in original).

*G. Injunction*

UPON ENTRY OF THE CONFIRMATION ORDER, ALL HOLDERS OF CLAIMS AND INTERESTS AND OTHER PARTIES IN INTEREST, ALONG WITH THEIR RESPECTIVE PRESENT OR FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, PRINCIPALS, AFFILIATES, AND RELATED PARTIES SHALL BE ENJOINED FROM TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN IN RELATION TO ANY CLAIM EXTINGUISHED, DISCHARGED, OR RELEASED PURSUANT TO THE PLAN. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD, OR MAY HOLD CLAIMS AGAINST OR INTERESTS IN THE DEBTORS AND OTHER PARTIES IN INTEREST, ALONG WITH THEIR RESPECTIVE PRESENT OR FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, PRINCIPALS, AFFILIATES, AND RELATED PARTIES ARE *PERMANENTLY* ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE DEBTORS, THE REORGANIZED DEBTORS, THE RELEASED PARTIES, OR THE EXCULPATED PARTIES (TO THE EXTENT OF THE EXCULPATION PROVIDED PURSUANT TO ARTICLE IX.F WITH RESPECT TO THE EXCULPATED PARTIES): (I) COMMENCING OR CONTINUING ANY ACTION OR PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS OR ANY OTHER CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR OTHER ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OF SUCH ENTITIES OR THEIR ESTATES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (IV) ASSERTING THE RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE

PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS NOTWITHSTANDING AN INDICATION IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY SUCH RIGHT. BY ACCEPTING DISTRIBUTIONS UNDER THE PLAN, EACH HOLDER OF A CLAIM OR INTEREST EXTINGUISHED, DISCHARGED, OR RELEASED PURSUANT TO THE PLAN SHALL BE DEEMED TO HAVE AFFIRMATIVELY AND SPECIFICALLY CONSENTED TO BE BOUND BY THE PLAN, INCLUDING THE INJUNCTIONS SET FORTH IN THIS ARTICLE IX.G. THE INJUNCTIONS IN THIS ARTICLE IX.G SHALL INURE TO THE BENEFIT OF THE DEBTORS, ANY SUCCESSORS OF THE DEBTORS, THE REORGANIZED DEBTORS, THE RELEASED PARTIES, AND THE EXCULPATED PARTIES AND THEIR RESPECTIVE PROPERTY AND INTERESTS IN PROPERTY.

Plan, Art. IX.G. ("Injunction") (capitalization in original, emphasis added).

## III. <u>DISCUSSION</u>

### A. <u>The Plan Cannot Be Confirmed Because It Does Not Comply With Section 1129</u>

Pursuant to section 1129(a) of the Bankruptcy Code, the Court may confirm a plan only if it complies with all the requirements of section 1129(a). *See* 11 U.S.C. § 1129. In other words, a plan and the plan proponents must comply with the applicable provisions of this title, and a plan must be proposed in good faith and not by any means forbidden by law. *See id.* § 1129(a)(1)-(3). The plan proponent bears the burden of proof with respect to each and every element of 11 U.S.C. § 1129(a) and 1129(b), by a preponderance of the evidence. *See In re Sbarro LLC*, No. 14-10557 (MG), 2013 WL 12579564, at *7 (Bankr. S.D.N.Y. Jan. 23, 2013); *In re Ditech Holding Corp.*, 606 B.R. 544, 571 (Bankr. S.D.N.Y. 2019) (citing *In re Breitburn Energy Partners LP*, 582 B.R. 321, 349 (Bankr. S.D.N.Y. 2018)); *In re Charter Commc'ns*, 419 B.R. 221, 243 (Bankr. S.D.N.Y. 2009) (same).

The Plan, as proposed, is not confirmable because, *inter alia,* it contains non-consensual Third-Party Releases, which are forbidden under the Supreme Court's decision in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024) ("*Purdue*"). Additionally, the Plan contains an

overbroad Exculpation clause that fails to identify who is exculpated and by whom they are exculpated. As noted above, the United States Trustee raised some of these and other objections to the Plan and Disclosure Statement in his Disclosure Statement Briefs, which are fully incorporated herein by reference. At the DS Hearing, the Court addressed the United States Trustee's objections, including overruling the United States Trustee's objections concerning the Plan's opt-out mechanism with respect to the Third-Party Releases, and deferring the issues as to the language on the scope of the Releases and Exculpation to the confirmation stage. *See* DS Hr'g Tr. at 170:20-22. As such, the United States Trustee does not repeat all the arguments previously made but renews them to preserve them for appeal. Moreover, the United States Trustee hereby responds to the Court's statements at the DS Hearing.

The non-consensual Third-Party Releases and the Exculpation clause are then effectuated through the Injunction that permanently enjoins any action that may interfere with the Plan or be asserted against any Exculpated or Released Parties. This Injunction was not part of the Briefing Order, so the United States Trustee addresses it for the first time here.

### i. *The Third-Party Releases Are Non-Consensual; There Is No Federal Law Governing Consent To Contracts*

A chapter 11 plan may not contain a non-consensual third-party release. *See Purdue*, 603 U.S. at 227. The United States Trustee's Disclosure Statement Briefs demonstrated that, under state law on contracts, the "opt-out" releases contemplated here are non-consensual; parties that are silent are not consenting to a contract under these circumstances.

At the DS Hearing, the Court opined that the issue of what constitutes consent is "determined by federal law, not state law." DS Hr'g Tr. at 148:19-149:17. But the Court did not specify which "federal law" applied. Insofar as this Court relied on the recent decisions in *In re Spirit Airlines, Inc.*, No. 24-11988, 2025 WL 737068, at *18, *22 (Bankr. S.D.N.Y Mar. 7,

2025), and *In re Robertshaw US Holding Corp.*, 662 B.R. 300, 323 (Bankr. S.D. Tex. 2024),[7]

and concluded that federal bankruptcy law governs, the United States Trustee respectfully

disagrees with such holdings.

"[T]he basic federal rule in bankruptcy is that state law governs the substance of claims."

*Travelers Cas. & Sur. Co. of America v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450-451 (2007)

(cleaned up); *accord Butner v. United States*, 440 U.S. 48 (1979). Thus, courts apply state law

when the question is whether a debtor has entered a valid settlement agreement. *See Houston v.

Holder (In re Omni Video, Inc.)*, 60 F.3d 230, 232 (5th Cir. 1995) ("Federal bankruptcy law fails

to address the validity of settlements and this gap should be filled by state law.").

Bankruptcy courts cannot "create substantive rights that are otherwise unavailable under

applicable law," nor do they possess a "roving commission to do equity." *In re Dairy Mart

Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003) (quotation omitted); *see also Shady

Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 416 (2010) (plurality) ("For where

neither the Constitution, a treaty, nor a statute provides the rule of decision or authorizes a

federal court to supply one, 'state law must govern because there can be no other law.'" (quoting

*Hanna v. Plumer*, 380 U.S. 460, 471-72 (1965))).

The rule is no different for third-party releases because they are separate agreements

between non-debtors governed by state law. Unlike a bankruptcy discharge, which "is an

involuntary release by operation of law," "[i]n the case of voluntary releases, the nondebtor is

released from a debt, not by virtue of 11 U.S.C. § 1141(b), but because the creditor agrees to do

so." *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 503, 507 (Bankr. D.N.J. 1997); *see also Cont'l

Airlines Corp. v. Air Line Pilots Assn., Int'l (In re Cont'l Airlines Corp.)*, 907 F.2d 1500, 1508

---

[7] *See*, *e.g.*, DS Hr'g Tr. at 149:4-6 ("The Court: I'm determining, as Judge Lane did, and as others have, Judge
Perez, Judge Lopez, this is a question that's controlled by federal law.").

(5th Cir. 1990) (holding that for settlement provisions "unrelated to substantive provisions of the

Bankruptcy Code," "the settlement itself is the source of the bankruptcy court's authority").

Thus, "the Bankruptcy Code has not altered the contractual obligations of third parties, the

parties themselves have so agreed." *Arrowmill*, 211 B.R. at 507.

Indeed, the Bankruptcy Code does not even define a "consensual release." *See* 11 U.S.C.

§ 101. Chapter 11 does not mention releases of third parties appearing in reorganization plans.

There is no Bankruptcy Code provision or Bankruptcy Rule "that specifies an 'opt out'

mechanism or a 'deemed consent' mechanism" for third-party releases. *In re Chassix Holdings,*

*Inc.*, 533 B.R. 64, 78 (Bankr. S.D.N.Y. 2015). And federal courts cannot create federal common

law that replaces state law except in limited circumstances absent here. *See, e.g., Cassirer v.*

*Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 116 (2022); *Rodriguez v. FDIC*, 589 U.S.

132, 133 (2020).

Accordingly, state-law contract principles should govern whether a third-party release is

consensual. And, as discussed previously in the Disclosure Statement Briefs, under state-law

contract principles, the opt-out ballots here are insufficient to establish that the Releasing Parties

have affirmatively and knowingly agreed to give up their property rights and legal claims against

non-debtor third parties.[8]

---

[8] Under the DS Order, Kroll, as the Debtors' balloting agent, must file the voting report on or before May 14, 2025. Thus, as of the date of this Plan Objection, there is no evidence in the record as to the implementation and results of the Plan solicitation process. It is also premature to know if any claimant or party in interest reached out to Kroll, the Debtors, and/or the Committee expressing confusion or questions as to the solicitation materials and process. This information about the responses to the solicitation process should be considered when determining if there was true consent to the Third-Party Releases.

The United States Trustee and the Debtors have been engaged in good faith discussions on Plan objections and the Confirmation Hearing, including the United States Trustee's request for balloting information as to, *inter alia*, the (i) number of ballots and opt-out forms sent, (ii) number of ballots and opt-out forms returned as undeliverable, (iii) number and dollar amount of votes that were not counted (for example, due to defect); (iv) number of ballots returned with votes to reject versus accept the Plan, and (v) number of opt-outs received/returned, in each case, by class. However, as of the date hereof, the Debtors have not confirmed whether such information would or could be

### ii.    *The Exculpation Remains Impermissibly Broad*

As set forth in the UST Reply Brief, the Exculpation provision in the Plan should be rejected as overly broad in multiple respects and extending beyond the limited protection contemplated under section 1125(e) of the Bankruptcy Code.  At the DS Hearing, the Court ruled that Exculpated Parties need not be limited to estate fiduciaries.  *See* DS Hr'g Tr. at 65:22-66:5.[9] The United States Trustee disagrees with that decision.  But even assuming it were correct, that is not carte blanche authority for the Debtors to sweep an unquantified number of unknown and unknowable entities through the definition of "Related Parties" and other parties that do not yet even exist as of confirmation, under the umbrella of the Exculpation clause.  Additionally, there is no temporal limit in the Exculpation clause, so it impermissibly can extend to conduct from before the Petition Date or after the Effective Date.  *See, e.g.*, *In re Mallinckrodt PLC*, 639 B.R. 837 (Bank. D. Del. 2022) (exculpation "only extends to conduct that occurs between the Petition Date and the effective date."); *Matter of Highland Cap. Mgmt., L.P.,* 48 F.4th 419, 437 (5th Cir. 2022); *In re Pac. Lumber Co*., 584 F.3d 229, 252 (5th Cir. 2009); *In re PWS Holding Corp.,* 228 F.3d 224, 246 (3d Cir. 2000); *Patterson v. Mahwah Bergen Retail Grp., Inc*., 636 B.R. 641 (E.D. Va. 2022); *In re Washington Mut., Inc.,* 442 B.R. 314 (Bankr. D. Del. 2011); *In re PTL Holdings LLC*, No. 12-12676-BLS, 2011 WL 5509031 (Bankr. D. Del. Nov. 10, 2011).  Therefore, the Plan violates sections 1129(a)(1), and it should not be confirmed unless the Exculpation language is further limited under relevant case precedents and the Bankruptcy Code.

---

made available by Kroll.  Accordingly, the United States Trustee reserves all rights to cross-examine any witness or declarant from Kroll (or otherwise) concerning the voting report and balloting process.

[9] At the DS Hearing, the United States Trustee and the Debtors had initial discussions in an attempt to resolve the United States Trustee's objections to the Exculpation.  Although some progress was made, remaining unresolved objections were deferred to confirmation.  The United States Trustee anticipates continued discussions with the Debtors prior to the Confirmation Hearing in an effort to reach full resolution on the Exculpation language.

### iii.    *There Is No Jurisdiction Or Basis For A Permanent Injunction Barring Claims Against Non-Debtor Parties*

The Plan's Injunction clause *permanently* bars "all entities that have held, hold or may hold claims against or interest in the Debtors and other parties in interest, along with their respective present or former employee, agents, officers, directors, principals, affiliates, and Related Parties" from taking actions against the Debtors, Reorganized Debtors, Released Parties, or Exculpated Parties.

Because the Third-Party Releases are non-consensual, this Court may not approve the Injunction that implements them. *See Purdue*, 603 U.S. at 227 ("[T]he bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants.").

Even if the Third-Party Releases were consensual, that would not mean that the Court has authority to impose a permanent injunction. An injunction is critically different from a consensual non-debtor release. The legal effect of a consensual release is based on the parties' agreement. *See*, *e.g.*, *In re Cont'l Airlines Corp.*, 907 F.2d at 1508 (holding that for settlement provisions "unrelated to substantive provisions of the Bankruptcy Code," "the settlement itself is the source of the bankruptcy court's authority"). The non-debtor parties themselves are altering their relations; the court is not using its judicial power to effect that change. By contrast, an injunction relies on the Court's power to enter orders binding on parties. The Court must therefore have both constitutional and statutory authority to enter an injunction. *See generally*, *In re Port Morris Tile & Marble LP*, 645 B.R. 500, 510 (Bankr. S.D.N.Y. 2022) ("The first issue raised is whether this Court has proper statutory and constitutional jurisdiction to enjoin the Federal Action.") And, once such jurisdiction and authority are established, the Court still must

14

determine that an injunction is warranted.  But jurisdiction, authority, and a showing that injunctive relief is warranted are all absent here.

First, a bankruptcy court lacks jurisdiction to enter a *permanent* injunction barring claims between non-debtors.  *See Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 755 (5th Cir. 1995) ("[W]hile a temporary stay prohibiting a creditor's suit against a nondebtor . . . during the bankruptcy proceeding may be permissible to facilitate the reorganization process in accord with the broad approach to nondebtor stays under section 105(a) . . . , the stay may not be extended post-confirmation in the form of a permanent injunction that effectively relieves the nondebtor from its own liability to the creditor.  Not only does such a permanent injunction improperly insulate nondebtors in violation of section 524(e), it does so without any countervailing justification of debtor protection."); *see also In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225 (3d Cir. 2004) ("'Related to' jurisdiction must therefore exist independently of any plan provision purporting to involve or enjoin claims against non-debtors."); *accord, In re Dreier LLP*, 429 B.R. 112, 117 (Bankr. S.D.N.Y. 2010) (concluding that "the permanent injunction required by the GSO Settlement Agreement exceeds the Court's subject matter jurisdiction").

Although 28 U.S.C. § 1334(b) provides concurrent jurisdiction over civil proceedings "related to" a bankruptcy case, the enjoined claims between non-debtors do not "relate to" the Debtors' chapter 11 cases.  "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  *In re Roman Cath. Diocese of Rockville Ctr., N.Y,* , 651 B.R. 622, 639 (Bankr. S.D.N.Y. 2023).  Post-confirmation jurisdiction is more limited.  *See*, *e.g.*, *In re Park Ave. Radiologists, P.C.*, 450 B.R. 461, 468 (Bankr. S.D.N.Y. 2011) ("Broadly speaking, the proceeding must affect some aspect of

the plan—its meaning, its implementation or its consummation—to come within the Court's post-confirmation jurisdiction."); *Resorts Int'l Fin., Inc. v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 168 (3d Cir. 2004) ("As stated, the jurisdiction of the non-Article III bankruptcy courts is limited after confirmation of a plan."); *Bank of Louisiana v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Texas, Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001) ("After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan.").

Here, any claims or actions between non-debtor third parties are not property of the Debtors, do not bear on the execution of the Plan, and will not impact the GOL estates.  Nor would the *post-confirmation* pursuit of such claims against non-debtors have any impact on the Debtors' bankruptcy estates, which will cease to exist at confirmation.  Accordingly, the Court has no jurisdiction to enjoin those claims.  *See*, *e.g.*, *Craig's Stores*, 266 F.3d at 391; *Zale*, 62 F.3d at 756-57.

Second, there is no authority in the Bankruptcy Code for the injunction barring claims between non-debtors, and the Debtors cite none.  To the extent the Debtors rely on section 105(a) for this authority, it is unavailing because that section "serves only to carry out authorities expressly conferred elsewhere in the code." *Purdue*, 603 U.S. at 216 n.2 (quotation marks omitted).  But no other provision in the Bankruptcy Code authorizes the Court to use its judicial power to bar claims between non-debtors. *Id.* at 227.

Finally, such an injunction is not warranted by the traditional factors that support injunctive relief.  A party seeking an injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate

to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (noting that an injunction is an "extraordinary remedy" and should issue "only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'" (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919))).

Here, the Debtors have not shown that any of these factors are met to justify the Injunction. There is no imminent threat that anyone is going to bring suit on a released or exculpated claim (particularly since the Debtors maintain that most of the known objections to the Plan have been resolved, including those from the 2026 Senior Secured Notes Ad Hoc Group, who have settled with the Debtors and signed onto the Plan Support Agreement[10]). Further, if a released claim is brought, the release may be asserted as an affirmative defense. An injunction "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (cleaned up). Moreover, the Injunction harms those bound by it because it precludes parties from challenging the applicability or enforceability of the Third-Party Releases (for example—based on mistake or lack of capacity) under applicable non-bankruptcy law.

In sum, the Injunction in the Plan should be stricken or modified because it violates *Purdue* and established caselaw.

---

[10] *See, e.g.*, Notice of Settlement with 2026 Senior Secured Notes Ad Hoc Group and Amendments to Exit Financing Commitment Letter [ECF No. 1558].

B.    **The Court Should Not Waive the Rule 3020 Stay**

The United States Trustee objects to any request to shorten the 14-day stay imposed by Rule 3020(e) of the Federal Rule of Bankruptcy Procedure. That rule states: "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 3020(e). The purpose of the rule is "to provide sufficient time for a party to request a stay pending appeal of an order confirming a plan under . . . chapter 11 . . . before the plan is implemented and an appeal becomes moot." Fed. R. Bankr. P. 3020 advisory committee's note (1999).

Plan proponents frequently include stay waiver provisions to invoke the doctrine of "equitable mootness" as a sword to evade appellate review. *See In re Chemtura Corp.*, No. 09–11233, 2010 WL 4607822, at *1 (Bankr. S.D.N.Y. Nov. 3, 2010). Courts, however, should be "wary of wholly denying any party at least an opportunity to seek a stay to avoid the mooting of its appeal" in deciding whether to waive Rule 3020(e)'s 14-day stay. *Id.*; *see also In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 282 (Bankr. S.D.N.Y. 2007) ("conclud[ing] . . . that fairness . . . requires that [the court] not take an affirmative step that would foreclose all opportunities for judicial review"). "An orderly bankruptcy process depends on a concomitantly efficient appeals process," *In re Syncora Guarantee Inc.*, 757 F.3d 511, 517 (6th Cir. 2014), and a waiver of the 14-day stay undermines this goal by forcing parties to seek an emergency stay.

The Plan contains a litany of conditions precedent to the Effective Date, coupled with the right for the Debtors to waive any of those conditions (*see* Plan, Art. X.A-B). As a result, it is not clear when the Effective Date will occur. The Debtors have not demonstrated any urgency to justify departing from Rule 3020(e)'s default imposition of the 14-day stay and impeding the ability to obtain appellate review. Accordingly, any such request to waive Rule 3020(e)'s 14-day automatic stay should be denied.

## IV.    <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, the United States Trustee respectfully requests that the Court (i) sustain this Plan Objection and deny confirmation of the Plan, and (ii) grant such other relief as is just and appropriate.

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2

By:    <u>/s/ Annie Wells</u>
Annie Wells
Rachael E. Siegel
Trial Attorneys
Office of the United States Trustee
Alexander Hamilton U.S. Custom House
One Bowling Green
New York, New York 1004