**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                               :

In re:                       :       Chapter 11

GOL LINHAS AÉREAS INTELIGENTES S.A.,  :
*et al.*,[1]                  :       Case No. 24-10118 (MG)

               Debtors.     :       (Jointly Administered)
                               :
------------------------------------------------------------x

### ORDER (I) CONFIRMING FIFTH MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF GOL LINHAS AÉREAS INTELIGENTES S.A. AND ITS AFFILIATED DEBTORS AND (II) GRANTING RELATED RELIEF

The Debtors having filed the *Fifth Modified Third Amended Joint Chapter 11 Plan of Reorganization of GOL Linhas Aéreas Inteligentes S.A. and Its Affiliated Debtors* [Docket No. 1643], which is attached hereto as **Exhibit A** (as it may be altered, amended, supplemented, or otherwise modified from time to time in accordance therewith, the "Plan"), and the *Disclosure Statement for Second Modified Third Amended Joint Chapter 11 Plan of Reorganization of GOL Linhas Aéreas Inteligentes S.A. and Its Affiliated Debtors* [Docket No. 1390] (including all appendices, exhibits, schedules, and supplements thereto, and as it may be altered, amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"),[2] each of which is incorporated herein by reference; and upon the *Debtors' (I) Memorandum of Law in Support of Confirmation of the Third Modified Third*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A). The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

[2]    Capitalized terms used in this Order but not otherwise defined shall have the meaning ascribed to them in the Plan.

*Amended Joint Chapter 11 Plan of Reorganization of GOL Linhas Aéreas Inteligentes S.A. and Its Affiliated Debtors and (II) Response to Objections Thereto* [Docket No. 1596], the *Declaration of John E. Luth in Support of Confirmation of Joint Chapter 11 Plan of GOL Linhas Aéreas Inteligentes S.A. and Its Affiliated Debtors* [Docket No. 1595], the *Supplemental Declaration of John E. Luth in Support of Confirmation of Joint Chapter 11 Plan of GOL Linhas Aéreas Inteligentes S.A. and Its Affiliated Debtors* [Docket No. 1625], the *Declaration of Joseph W. Bliley in Support of Confirmation of Joint Chapter 11 Plan of GOL Linhas Aéreas Inteligentes S.A. and Its Affiliated Debtors* [Docket No. 1594], and the *Declaration of Alex Orchowski of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Second Modified Third Amended Joint Chapter 11 Plan of Reorganization of GOL Linhas Aéreas Inteligentes S.A. and Its Affiliated Debtors* [Docket No. 1603]; and the Court having jurisdiction to consider the relief requested pursuant to 28 U.S.C. § 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157; and the Court having found that it may enter a final order consistent with Article III of the United States Constitution, and the Court having found that venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested having been provided, and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed or otherwise taken judicial notice of the record; and the Court having held a hearing on notice to consider confirmation of the Plan (the "Confirmation Hearing"); and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND, ORDERED, ADJUDGED, AND DETERMINED THAT:**

1.      **Confirmation.**  The facts and legal arguments set forth in the record, including the evidence and argument at the Confirmation Hearing, demonstrate that the requirements for confirmation of the Plan have been satisfied.  Further, each witness who testified or submitted a declaration on behalf of the Debtors in support of confirmation of the Plan was qualified to testify as to the topics addressed in their testimony.  The Debtors have met their burden of proving that the Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code and applicable Bankruptcy Rules by a preponderance of the evidence.  Accordingly, the Plan (as modified in the form attached hereto as **Exhibit A**), in its entirety, is **CONFIRMED** pursuant to section 1129 of the Bankruptcy Code.  Each term of the Plan, all of which are incorporated by reference herein (and any amendments, modifications, and supplements thereto), is an integral part thereof.  The failure to specifically describe or include herein any particular provision of the Plan shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be confirmed in its entirety.  Subject to the occurrence of the Effective Date, the provisions of the Plan shall be binding on the Reorganized Debtors and all parties in interest, enforceable in accordance with its terms and the terms of this Order.

2.      **Objections.**  All objections, responses, statements, reservations of rights, and comments in opposition to the confirmation of the Plan that have not been withdrawn with prejudice, waived, settled, or resolved prior to or on the record of the Confirmation Hearing are overruled on their merits with prejudice.  The record of the Confirmation Hearing is closed.

3.      **Notice.**  As reflected in the *Affidavit of Service of Solicitation Materials* [Docket No. 1567] (the "Solicitation Affidavit"), adequate and sufficient notice of the Confirmation Hearing and of the other requirements, deadlines, hearings, and matters described in the *Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting*

*Procedures; (III) Approving Forms of Ballots; (IV) Establishing Procedures for Allowing Certain Claims for Voting Purposes; (V) Scheduling a Confirmation Hearing; and (VI) Establishing Notice and Objection Procedures* [Docket No. 1388] (the "Disclosure Statement Order") was timely and properly provided to the parties in interest in compliance with the Disclosure Statement Order and, to the extent applicable, with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Due process, including an opportunity to appear and to be heard at the Confirmation Hearing, as well as to litigate all objections and issues raised, has been provided to all parties in interest. No other or further notice is or shall be required.

4.    **Solicitation.** As reflected in the Solicitation Affidavit, the Debtors have served the Solicitation Packages on the holders of Claims in the Voting Classes and conducted solicitation of votes on the Plan in accordance with the Disclosure Statement Order.

5.    **Plan Modifications.** Any modifications to the Plan since the commencement of solicitation and prior to the entry of this Order comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and Article XI of the Plan. Such modifications do not constitute material modifications and do not adversely affect or change the treatment of any Claims or Interests. Pursuant to Bankruptcy Rule 3019, these modifications do not require either (a) any additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code or (b) that the holders of Claims or Interests be afforded an opportunity to (i) change previously cast acceptances or rejections of the Plan or (ii) withdraw or submit previously submitted or withheld Release Opt-Out Forms. The filing of the revised Plan has provided adequate and appropriate notice of these modifications under the facts and circumstances of the Chapter 11 Cases. Accordingly, the Plan is properly before the Court, and all votes cast with respect to the Plan prior

to any such modifications shall be binding and shall apply to the Plan.  Subject to the terms of the Plan, the Debtors may amend, update, supplement, or otherwise modify the Plan prior to the Effective Date.

6.    **Plan Supplement.**  The contents and filing of the compilation of documents that constitute the Plan Supplement are proper and comply with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and other applicable laws, and no other or further notice is or shall be required.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into, the Plan and are approved by the Bankruptcy Court. Subject to the terms of the Plan, the Debtors may amend, update, supplement, or otherwise modify the documents in the Plan Supplement at any time before the Effective Date.

7.    **Compromise and Settlement of Claims, Interests, and Controversies.**  In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, the provisions of the Plan shall constitute an arms'-length and good-faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan, and all distributions made to holders of Allowed Claims and Allowed Interests in accordance with the Plan are intended to be, and shall be, final.  The entry of this Order shall constitute the Court's approval of the settlements embodied in the Plan, including, but not limited to (i) the settlement among the Debtors, the Committee, and Abra, which provides for, among other things, Abra's agreement to limit its recovery and equitize a significant portion of its secured Claims resulting in meaningful distributions to general unsecured creditors (the "Abra Settlement"); (ii) the settlement resolving all disputes between the Debtors and the 2026 Ad Hoc Group, as described in the Notice of Settlement with 2026 Senior Secured Notes Ad Hoc Group and Amendments to Exit Financing

Commitment Letter, attached as Exhibit J to the *Notice of Filing of Second Plan Supplement* [Docket No. 1558], and as amended by the 2026 AHG A&R Joinder attached as Exhibit J to the *Notice of Filing of Sixth Plan Supplement* [Docket No. 1631] (collectively, the "2026 Settlement"); and (iii) the settlement resolving all disputes between the Debtors and Whitebox Advisors LLC on behalf of its managed funds and accounts that hold 2024 Senior Exchangeable Notes Claims, as described in the Notice of Settlement with Whitebox Advisors LLC, attached as Exhibit K to the *Notice of Filing of Third Plan Supplement* [Docket No. 1571] (the "Whitebox Settlement" and, together with the Abra Settlement and the 2026 Settlement, the "Plan Settlements"). The entry of this Order shall constitute the Court's approval of the Plan Settlements, as well as a finding that the Plan Settlements are in the best interests of the Debtors, their Estates, and holders of Claims and Interests, and are fair, equitable, and reasonable. The Plan Settlements are binding upon all holders of Claims and Interests and all other parties in interest pursuant to section 1141(a) of the Bankruptcy Code. After the Effective Date, the Reorganized Debtors may compromise and settle Claims and Interests without notice to or action, order, or approval of the Court.

8.      **Exit Financing**. The Exit Notes, the Incremental New Money Exit Debt, the Take-Back Notes, and any other form of exit financing contemplated by the Plan (collectively, the "Exit Financing Facilities") and all related agreements and documents are approved and authorized in all respects. The Debtors or Reorganized Debtors, as applicable, are authorized, without further approval of the Court and subject to the terms of the Plan, to take all actions necessary or desirable to consummate and perform under each of the Exit Financing Facilities, including the payment or reimbursement of any fees, indemnities, and expenses thereunder and to grant liens to secure such indebtedness. In accordance with section 1142 of the Bankruptcy Code and applicable non-bankruptcy law, such actions may be taken without further

action by stockholders, members, partners, managers, or directors.  The financial accommodations

to be extended pursuant to the Exit Financing Facilities are being extended in good faith, for

legitimate business purposes, are reasonable, and the incurrence of obligations, granting of liens

and other security interests and credit support for the benefit of the parties to the Exit Financing

Facilities, and payment of fees, interests, costs, and other amounts arising under or associated with

the Exit Financing Facilities shall not be subject to avoidance, recharacterization, or subordination

(including equitable subordination), and shall not constitute a preferential transfer, fraudulent

conveyance or other voidable transfer under the Bankruptcy Code or any other applicable non-

bankruptcy law.  On the Effective Date, the Exit Financing Facilities documents, including any

documents required in connection with the creation or perfection of liens in connection therewith,

shall constitute legal, valid, binding, and authorized indebtedness and obligations of the applicable

Reorganized Debtors, enforceable in accordance with their respective terms, and such

indebtedness and obligations shall not be, and shall not be deemed to be, enjoined or subject to

discharge, impairment, release or avoidance under the Plan, this Order, or on account of the

confirmation or Consummation of the Plan (including the injunction, release, and exculpation

provisions of the Plan and this Order).

9.    **Additional Financing Commitments.**  The Court approves (i) the Amended and

Restated Exit Financing Commitment Letter dated as of April 30, 2025, attached as Annex 3 to

the 2026 AHG Joinder filed at Docket No. 1558 (as amended by Amendment No. 1 to the

Amended and Restated Exit Financing Commitment Letter, attached as Exhibit B to Exhibit J to

the *Notice of Filing of Sixth Plan Supplement* [Docket No. 1631]); (ii) the 2026 Senior Secured

Ad Hoc Group fee letter, attached as Exhibit C to Exhibit J to the *Notice of Filing of Second Plan

Supplement* [Docket No. 1558], and (iii) the Amended and Restated Existing Backstop Parties fee

letter, attached as Exhibit D to Exhibit J to the *Notice of Filing of Second Plan Supplement* [Docket No. 1558]. These documents are each an essential element of the Plan, are necessary for confirmation and Consummation of the Plan, and are critical to the overall success and feasibility of the Plan. The Debtors are authorized to enter into, execute, deliver, and perform their obligations under these documents, including through payment of the AHG Work Fee.

10.    **New Equity.** The issuance of New Equity by New GOL Parent and the distribution of such New Equity to the applicable holders of Claims in accordance with the terms of the Plan and the Transaction Steps, as well as the General Unsecured Creditor Power of Attorney (as defined below) for the purposes thereof, are authorized and approved. All provisions of the Plan relating to New Equity, including but not limited to the exemption from registration under applicable securities laws pursuant to section 1145 of the Bankruptcy Code, procedures and actions for assignment or contribution of Claims to New GOL Parent in exchange for New Equity, procedures for distribution through DTC facilities, and mandatory redemption, exchange, and offer to purchase provisions, are approved and shall be binding on all applicable parties. Holders of Claims entitled to receive the New Equity shall be deemed to have consented to the New Organizational Documents, including any contribution or assignment of the Claims and any contribution and subscription agreement, including by way of the General Unsecured Creditor Power of Attorney (as defined below) as a condition to receipt of their distribution of the New Equity under the Plan.

11.    **Contribution of Subject Claims.** On the Effective Date, in order to implement the Transaction Steps and to effectuate the distributions under the Plan to holders of Allowed General Unsecured Claims, each holder of a Subject Claim (as defined in the Transaction Steps) shall be deemed to have, either directly or indirectly, and irrevocably, contributed, transferred,

and/or assigned as applicable such Allowed Claim to New GOL Parent or any other person appointed, selected, or designated and/or entity selected, designated, or formed for the purposes of accepting such contribution, transfer and/or assignment that subsequently contributes, transfers, and assigns such Allowed Claim to New GOL Parent in exchange for such holder's distribution of New Equity under the Plan which may be issued directly by New GOL Parent or such other person and/or entity (the "Contribution").  This Contribution shall be deemed to occur automatically without the need for execution of any further documentation by such holder and have the same effect as if each holder had executed and delivered all instruments and documents necessary to effectuate the Contribution, it being understood that the Agent (as defined below) may execute and deliver in the name and on behalf of the relevant holders any instrument and documents useful or necessary under Luxembourg law.  This provision is binding on all holders of Subject Claims and constitutes an integral part of the implementation of the Plan.

12.    Notwithstanding the foregoing, all holders of Allowed General Unsecured Claims may be required, to the extent required by applicable law and reasonably determined by the Reorganized Debtors to be reasonable and appropriate under the circumstances, to execute certain documentation, including a contribution and subscription agreement, in order to receive such holder's distribution of New Equity.  Under such circumstances, the Reorganized Debtors and New GOL Parent are authorized to withhold any applicable distribution until such documentation has been executed and received by New GOL Parent.  To the extent that any holder of an Allowed General Unsecured Claim fails to return such documentation within one year of the Effective Date

of the Plan, such holder's distribution shall be treated as an in accordance with Section VIII.D.9.
of the Plan titled "Undeliverable Distribution and Unclaimed Property."

13.       To the extent the Debtors or the Reorganized Debtors determine that in order to
comply with applicable law, and in order to best effectuate the transactions contemplated by the
Plan, including the Transaction Steps and to effectuate the distributions of New Equity to the
holders of Subject Claims, the Reorganized Debtors, with the consent of the Committee (or, if after
the Effective Date, with the consent of the General Unsecured Claim Observer), may in their
discretion appoint one or more representatives, agents, or similar persons on behalf of some or all
holders of Allowed General Unsecured Claims, which representatives, agents, or similar persons
shall be determined by the Debtors, the Committee, and Abra and identified in a notice filed on or
prior to the Effective Date, and which notice shall be deemed an exhibit hereto, to execute any
documents required under applicable law to allow for the distribution of the New Equity to the
holders of Allowed General Unsecured Claims, including any contribution and subscription
agreement, and so long as such documents are consistent with the terms of the Plan, including the
Plan Supplement Documents and does not otherwise alter the rights and benefits of such holders
under the Plan.  In the event such representatives, agents, or similar persons (the "Agents") are
appointed, such Agents shall be granted pursuant to this Order all powers and authorizations in the
name and on behalf of the holders of Allowed General Unsecured Claims to do any things or acts,
take any actions and execute and deliver any documents, necessary or useful in order to implement,
or in connection with, the Contribution, including but not limited to the execution of any
contribution and subscription agreement for the purposes of the issuance of the New Equity by the
board of directors of New GOL Parent under its authorized share capital and to be recorded before
a Luxembourg civil law notary in a deed of acknowledgment of share capital increase (*constat*

*d'augmentation de capital*), in accordance with article 420-22 *et seq.* of the Luxembourg law of 10 August 1915 on commercial companies, as amended (the "General Unsecured Creditor Power of Attorney").   For the avoidance of doubt, for the purposes of this paragraph, The Bank of New York Mellon, in its capacity as trustee for the 2024 Senior Exchangeable Notes, the 2025 Senior Notes, and the Perpetual Notes (the "Trustee") shall be deemed a designated Agent hereunder for the legal record holder and beneficial holders of such 2024 Senior Exchangeable Notes, 2025 Senior Notes, and Perpetual Notes, and the Committee shall be deemed a designated Agent hereunder for such holders and any other holders of Allowed General Unsecured Claims, and counsel for the Committee shall be authorized to execute any documents on behalf of the Committee in its capacity as Agent hereunder.   The Agents shall have no liability whatsoever arising from, relating to, or in connection with this Order or the execution of any documentation consistent with this paragraph or any other action taken in connection with this Order.

14.    Cede & Co. ("Cede"), as nominee of The Depository Trust Company ("DTC"), The Bank of New York Mellon, in its capacity as trustee for the 2024 Senior Exchangeable Notes, the 2025 Senior Notes and the Perpetual Notes, or any nominee or agent duly authorized to act on behalf of the holders of Subject Claims, and the Committee, is each authorized to (i) take all actions necessary to effectuate the issuance of New Equity to the holders of Subject Claims, including the underlying beneficial holders (collectively, the "DTC Holders") of the DTC Holders' Subject Claims,[3] or such other holders of Allowed General Unsecured Claims, as applicable, and as

---

[3]    The "DTC Holders' Subject Claims" mean the following Allowed Claims in Classes 10(a)-(e): (i) in Class 10(a), for the 2024 Senior Exchangeable Notes Claims, securities bearing CUSIP numbers 36256KAA8 and L4441GAA8; for the 2025 Senior Notes Claims, securities bearing CUSIP numbers 36254VAA6, L4441RAA4, and L4441RAB2; for the Perpetual Notes Claims, securities bearing CUSIP numbers G3980PAA3 and 38045UAA8; (ii) in Class 10(b), for 2024 Senior Exchangeable Notes Claims, securities bearing CUSIP numbers 36256KAA8 and L4441GAA8; for 2025 Senior Notes Claims, securities bearing CUSIP numbers 36254VAA6, L4441RAA4, and L4441RAB2; for Perpetual Notes Claims, securities bearing CUSIP numbers G3980PAA3, and 38045UAA8; (iii) in Class 10(c), for 2025 Senior Notes Claims securities bearing CUSIP numbers 36254VAA6, L4441RAA4, and L4441RAB2; (iv) in Class 10(d), for Perpetual Notes Claims, securities bearing

contemplated by the Plan, including to contribute the DTC Holders' Subject Claims and/or the other Allowed General Unsecured Claims, as applicable, to New GOL Parent, (ii) execute on behalf of Cede and the DTC Holders, as applicable, the Contribution and Subscription Agreement with New GOL Parent as recipient (the "Contribution and Subscription Agreement"),[4] and (iii) execute any instruction letters and/or powers of attorney in order to authorize The Bank of New York Mellon to sign the Contribution and Subscription Agreement on behalf of Cede, the DTC Holders or their respective nominees.  Cede, DTC, The Bank of New York Mellon, any nominee or agent of the DTC Holders, the Committee, or any representative thereof, shall have no liability whatsoever arising from, relating to, or in connection with this Order or the execution of the Contribution and Subscription Agreement, any related instruction letters and/or powers of attorney, or any other action taken in connection with this Order.

15.    **GLAI Preemptive Rights Offering.**  The GLAI Preemptive Rights Offering, as described in the Transaction Steps, and required to give effect to the terms of the Plan, is approved in all respects.  The Debtors and Reorganized Debtors, as applicable, as well as all other applicable parties,  are authorized to take all actions necessary or appropriate to implement and effectuate the GLAI Preemptive Rights Offering, including approving the capitalization of the Subject Claims, the issuance of the applicable shares of GLAI in consideration thereof, and providing notice to Eligible Existing GLAI Equity Interest Holders of their right to participate in the GLAI Preemptive Rights Offering during the GLAI Preemptive Rights Offering Period in accordance with applicable Brazilian law.

---

CUSIP numbers G3980PAA3 and 38045UAA8; and (v) in Class 10(e), for 2024 Senior Exchangeable Notes Claims, securities bearing CUSIP numbers 36256KAA8 and L4441GAA8.

[4]    The Contribution and Subscription Agreement provides the mechanism through which the New Equity will be distributed to the DTC Holders and the DTC Holders' Subject Claims will be contributed to New GOL Parent.

16.     **Good Faith.**   The Plan, the Plan Settlements, and the Restructuring Transactions, including the Transaction Steps, the New Organizational Documents, the New Equity Documents, the Exit Financing Facilities, the New Debt Documents, and all other agreements and transactions contemplated by the Plan (i) have been negotiated in good faith and at arm's length, without the intent to hinder, delay, or defraud any of the Debtors' creditors; (ii) are fair and reasonable; (iii) represent a valid exercise of the Debtors' business judgment; (iv) are supported by reasonably equivalent value and fair consideration; and (v) are in the best interests of the Debtors, their Estates, and their stakeholders.

17.     **Injunction, Exculpation, Release, Indemnification, Discharge, Settlement, and Compromise.**

a.  The Court has jurisdiction under 28 U.S.C. § 1334, and authority under 28 U.S.C. § 157, to approve the injunctions, exculpations, releases, indemnifications, discharges, settlements, and compromises set forth in the Plan (including Articles IX.D, IX.E, IX.F, and IX.G).  Sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code and Bankruptcy Rule 9019 permit issuance of the injunctions and approval of the exculpations, releases, indemnifications, discharges, settlements, and compromises set forth in the Plan.

b.  The Released Parties and Exculpated Parties have played a meaningful role in, and significantly and tangibly contributed to, the Chapter 11 Cases and their resolution, have participated in the Chapter 11 Cases and the Debtors' restructuring in good faith, and have acted in compliance with provisions of the Bankruptcy Code, including in connection with the negotiation, preparation, and pursuit of confirmation of the Plan and compromises implemented therein.  Each of the Released Parties and Exculpated Parties that owed fiduciary duties to the Debtors and their Estates fulfilled such fiduciary duties at all times.

c.  The Debtors and their management, directors, employees, professionals, attorneys, advisors, and other Related Parties have worked diligently in connection with the Debtors' restructuring efforts.  Throughout the Chapter 11 Cases, the Debtors and their Related Parties (to the extent applicable) have fulfilled their respective fiduciary duties to the Estates and protected the interests of all the case constituents with an even hand.  The Debtors and their Related Parties fairly and reasonably negotiated the DIP Facility, Plan Support Agreement, the Plan, the Plan Settlements, and the documents included in the Plan Supplement.

d.  The non-Debtor Released Parties and non-Debtor Exculpated Parties have made substantial contributions to these Chapter 11 Cases and assisted the Debtors with negotiating and developing the Plan and the transactions and settlements contemplated thereby. The Released Parties have agreed to forgo certain rights, make certain concessions, and/or incur certain obligations to permit recoveries for the Estates' creditors set forth in the Plan which might not otherwise have been achievable.

e.  Based on the record before the Court, each of the injunction, exculpation, release, indemnification, discharge, settlement, and compromise provisions set forth in the Plan (including Articles IX.D, IX.E, IX.F, and IX.G) (i) is the product of extensive good-faith and arm's length negotiations, (ii) is fair, equitable, reasonable, and appropriate under the circumstances, (iii) confers a material benefit on, and is in the best interests of, the Debtors, their Estates, and their creditors, (iv) is an essential, integral, and non-severable components of the Plan, Consummation, and resolution of the Chapter 11 Cases, (v) is appropriately and narrowly tailored, (vi) is supported by good and valuable consideration (including the Released Parties' contributions to facilitate the resolution of the Chapter 11 Cases and implementation of the Plan), (vii) is granted after due notice and opportunity for hearing, (viii) is consistent with the Bankruptcy Code and applicable law, (ix) is intended to promote finality and prevent parties from circumventing or attempting to circumvent the Plan, (x) is supported by the Debtors and their key stakeholders, including Abra, the Committee, and the other Consenting Stakeholders, (xi) constitutes a good-faith compromises and settlements of the matters covered thereby, (xii) is, with respect to the Third-Party Releases, consensual based on the opt-out mechanism provided in the Ballots and Release Opt-Out Forms and meets the requirements for third-party releases under applicable law, (xiii) with respect to the injunction provision, is necessary to preserve and enforce the Plan's discharge, release, and exculpation provisions, and (xiv) is the result of a fair exercise of the Debtors' sound business judgment.

18.  **Assumption.**  Pursuant to sections 365 and 1123 of the Bankruptcy Code, all rejections, assumptions, and assumptions and assignments of Executory Contracts and Unexpired Leases under the Plan are approved. The Debtors' determinations regarding the appropriate Cure Costs for assumed contracts are approved, subject to the resolution of any timely-filed objections in accordance with Article VI.D of the Plan. Any Assumption Disputes that have not been resolved prior to the Confirmation Hearing shall be heard on a later date, and the Reorganized Debtors shall file any replies to such objections at least seven (7) days before such hearing. During the pendency of any Assumption Dispute, the applicable counterparty shall continue to perform under the

applicable Executory Contract or Unexpired Lease.  To the extent of any Assumption Dispute, the deadline to remove such Executory Contract or Unexpired Lease from the Assumption Schedule shall be extended to a date that no less than 10 days after the resolution of such Assumption Dispute.

19.     **Rejection Damages Claims.**     Pursuant to Section VI.E of the Plan, any counterparty to an Executory Contract or Unexpired Lease that is rejected by the Debtors pursuant to the Plan must file and serve a Proof of Claim against the applicable Debtor that is party to the rejected Executory Contract or Unexpired Lease no later than thirty (30) days after the later of (i) the Confirmation Date or (ii) the effective date of rejection of such Executory Contract or Unexpired Lease.

20.     **Administrative Claims.**  Unless previously filed or as otherwise governed by an order of the Court or an agreement with the Debtors, requests for payment of Administrative Expenses (other than Professional Fees and the DIP Fees and Expenses) that accrued on or before the Effective Date but remained unpaid as of such date must be filed with the Court and served on the Debtors or the Reorganized Debtors, as applicable, no later than the Administrative Expense Bar Date or such other date as specified in an order of the Court or agreement with the Debtors. Holders of Allowed Administrative Expenses that are required to file and serve a request for payment and that do not timely file and serve such a request shall be barred from receiving any distributions under the Plan on account of such Administrative Expense; provided, however, that any parties may seek relief from the Court for authority to file a late Administrative Expense request, and all rights to object to any such request are preserved.  No provider of Exit Financing shall be required to file a request for Administrative Expense Claim on account of the Exit Financing documents or related commitment documents, and any amounts due by the Debtors

15

thereunder shall be entitled to administrative expense priority.  Objections to requests for payment of Administrative Expenses must be filed with the Court and served on the Debtors or the Reorganized Debtors, as applicable, and the requesting party no later than the date that is the later of (i) 180 days after the Effective Date and (ii) such later date as may be set by an order of the Court.

21.    **Lufthansa Technik AG Settlement.**  Lufthansa Technik AG ("LHT") asserted a $651,142.42 claim against debtor Gol Linhas Aéreas S.A. (*see* Claim No. 1087, the "LHT Claim") in connection with a prepetition maintenance services agreement (the "LHT MSA").  After the Petition Date, LHT and the Debtors (i) entered into a new Framework Agreement which provided new terms and conditions for the Debtors to obtain services from LHT (the "LHT Framework Agreement") and (ii) agreed to compromise the amount of the LHT Claim to $470,000.00, which the Debtors paid in accordance with the various orders authorizing the payment of certain prepetition claims and in the ordinary course of Debtor's business operations (the "LHT Vendor Payment").  Notwithstanding any other provision of this Order, on the Effective Date the Debtors will (a) be deemed to, and shall, assume the LHT Framework Agreement, and (b) agree not to seek avoidance, recovery, or clawback of the LHT Vendor Payment or any other payment made to LHT on account of the LHT MSA or the LHT Framework Agreement.

22.    **Honeywell.**  As of the Petition Date, Honeywell International Inc. ("Honeywell") is owed $5,163,278.71 by Debtor GLAI.  As of the Petition Date, GLAI has a credit on the books and records of Honeywell of $6,786,564.98.  As of the Petition Date, Honeywell International SARL ("Honeywell SARL") was owed $165,484.86 by GLAI.  The books and records of Honeywell SARL reflect a credit to GLAI of $325,964.83 as of the Petition Date.  If the claims of Honeywell and Honeywell SARL are completely offset, GLAI would be entitled to a credit of

$1,783,766.24 against the purchase of goods and services from Honeywell International Inc. and Honeywell International SARL. Upon the Effective Date, Honeywell International Inc., Honeywell International SARL, and Debtors, will effectuate a setoff such that all prepetition claims of either Honeywell or Honeywell SARL will be paid in full and Honeywell will make available to Debtors $1,783,766.24 as an additional credit for the purchase of good and services from Honeywell.

23.    **BNP Paribas.**    The work letter dated May 11, 2025, between GLAI and BNP Paribas Securities Corp. (the "BNPP Work Letter") [Docket No. 1582] is approved in its entirety and the Debtors are authorized to perform their obligations thereunder. The BNPP Work Letter shall be effective *nunc pro tunc* to May 11, 2025.

24.    **Preservation of Liens.**    For the avoidance of doubt, notwithstanding Article IX.C of the Plan or any other provision in the Plan, this Order, or any other document entered into in connection with the Plan, including the New Debt Documents (other than the Amended Glide Notes Documents, the documents governing the Amended Safra Notes, and the Amended Debentures, respectively) and any documents in connection with the Exit Notes, Incremental New Money Exit Debt, and Take-Back Notes, the Glide Notes Collateral Agent, Safra, and the Debenture Banks shall retain their respective first-priority liens and security interests (including through any "fiduciary assignment" granted under Brazilian law) in any collateral securing the (i) Amended Glide Notes, (ii) Amended Safra Notes, and (iii) Amended Debentures, BdoB Letters of Credit, Santander Letters of Credit, and Bradesco Letters of Credit, respectively, which liens shall

be senior to any liens on collateral granted in connection with the Plan, including in connection with the Exit Notes, Incremental New Money Exit Debt, and Take-Back Notes.

25.    **Amended Glide Notes.**  On or about the Effective Date, each of the Amended Glide Notes Trustee and TMF Brasil Administração e Gestão De Ativos Ltda., as collateral agent, shall be authorized and permitted to execute, deliver and enter into the Amended Glide Notes Documents to which it is a party, including, as applicable, (i) the Second Supplemental Indenture to the Glide Notes Indenture and (ii) the Fifth Amendment to the Credit Rights Fiduciary Assignment Agreement, in each case (a) without further consent or direction of the holders of the Glide Notes or the Amended Glide Notes or, as applicable, the trustee under the Glide Notes Indenture or the Amended Glide Notes Indenture and (b) without the receipt of any opinion, certificate, resolutions or other documents required under the Glide Notes Indenture or the Amended Glide Notes Indenture (including, without limitation, any documents required by Article 9 or Section 11.03 thereof).

26.    **U.S. Specialty Insurance Company.**  Notwithstanding anything to the contrary in the Plan (including Articles V.G (Cancellation of Loans, Securities, and Agreements), VII.D (Estimation of Claims), VII.E (Adjustment to Claims Register without Objection), IX.C (Releases of Liens), IX.E (Releases by holders of Claims or Interests), IX.G (Injunction), and XIII.H (Term of Injunctions or Stays)), the Plan Supplement, the Disclosure Statement, this Order, or the New Debt Documents (including any documents relating the foregoing that is preemptory or supervening, grants an injunction, discharge, or release) (collectively, the "Plan Documents"), the Plan Documents shall not in any way prime, discharge, impair, modify, or subordinate the rights of U.S. Specialty Insurance Company (together with any and all of its surety affiliates, "Surety") as to: (i) the customs bond 23C00097Q in favor of the U.S. Bureau of Customs and Border

Protection ("CBP") (the "Customs Bond"); (ii) the General Indemnity Agreement dated February 25, 2025 (the "Indemnity Agreement"); and (iii) any cash collateral or other collateral of the Surety. Notwithstanding any provision in the Plan Documents to the contrary: (a) all set-off, recoupment, trust and lien rights, and all security interests, of the Surety and any obligee and/or beneficiary under the Customs Bond are preserved and shall not be primed against the Debtors and/or Reorganized Debtors; (b) the Customs Bond and the Indemnity Agreement are deemed and treated as executory contracts and will be assumed (but not assigned) by the Debtors pursuant to the Plan without the need or requirement of any Surety to file or serve any objection to a proposed cure amount or fee application; (c) the Surety reserves all of its rights to modify, extend and/or cancel the Customs Bond in accordance with the terms thereof but without regard to these Chapter 11 Cases; (d) the Surety has no obligation under the Plan Documents to issue or execute any new bond on behalf of any entity, and the Surety has no obligation to extend, modify or increase the amount of the Customs Bond; (e) the Surety has elected to opt out of the Third-Party Release and said election shall be effective on the Effective Date; (f) the Surety's Allowed Claim, which covers fees and costs incurred through April 30, 2025 of $6,092.50, but excludes any bond losses and additional fees and costs incurred after such date through the Effective Date of the Plan, shall be paid by the Debtors in accordance with the Plan; and (g) the Debtors' and the Surety's respective rights pursuant to Section 502(j) of the Bankruptcy Code are preserved.

27.     **General Unsecured Claim Observer.** In accordance with Article VII.C of the Plan, the Court approves the appointment of Alton Aviation Consultancy LLC as the General Unsecured Claim Observer effective as of the Effective Date. The General Unsecured Claim

Observer shall have all of the rights, powers, and duties set forth in the Plan, including those specified in Article VII.C.

28.    **Reporting**.  Prior to the Effective Date, the Debtors shall continue to file monthly operating reports for all periods prior to the Effective Date.  Following the Effective Date, the Reorganized Debtors shall have no obligation to continue filing or serving any reports that the Debtors were obligated to file during the pendency of the Chapter 11 Cases, including monthly operating reports (including for those periods for which a monthly operating report was not filed prior to the Effective Date); *provided*, however, that the Reorganized Debtors shall comply with the U.S. Trustee's quarterly reporting requirements.  Upon the filing of a motion to close the last Chapter 11 Case remaining open, the Reorganized Debtors shall file a final report with respect to all of the Chapter 11 Cases pursuant to Local Rule 3022-1.

29.    **Post-Effective Date Notice Procedures**.  After the Effective Date, notice of filings in the Chapter 11 Cases shall only be required to be served on: (i) the Reorganized Debtors and their counsel; (ii) the U.S. Trustee; (iii) Abra's counsel; (iv) any party directly affected by the relief sought; and (v) any party that specifically requests continued notice by filing a request for notice with the Clerk of the Court.  All other parties shall be removed from the Court's electronic notification list for these Chapter 11 Cases.

30.    **Notice of Confirmation Order and Occurrence of the Effective Date**.  The Debtors shall cause a notice of the entry of this Order and occurrence of the Effective Date (the "Notice of the Effective Date"), to be served upon (i) all parties listed in the creditor matrix maintained by Kroll Restructuring Administration LLC (the claims, noticing, and solicitation agent in the Chapter 11 Cases), (ii) all parties that filed proofs of claim in the Chapter 11 Cases, and (iii) such additional Persons and Entities as deemed appropriate by the Reorganized Debtors as

soon as reasonably practicable after the Effective Date the Reorganized Debtors shall use commercially reasonable efforts to publish the Notice of the Effective Date (or a notice substantially similar thereto) in the Wall Street Journal and the Folha de São Paulo within ten (10) business days after the Effective Date, or as soon as practicable thereafter (allowing reasonable time for translation and other administrative and logistical issues).  No other or further notice of the entry of this Order and occurrence of the Effective Date shall be necessary.

31.    **Retention of Jurisdiction.**  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, notwithstanding the entry of this Order and the occurrence of the Effective Date, the Court retains jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan, including those specified in Article XII of the Plan.

32.    **Final Order.**  This Order is a final order and the period in which an appeal thereof must be filed shall commence upon its entry.

33.    **Receipt of Plan Treatment.**  Each holder of a Claim or Interest's receipt of treatment set forth in the Plan shall be a full and final satisfaction of the valid obligations arising out of the relevant prepetition document.  Each holder shall be deemed to have received their Plan treatment in good faith for valid cause, fair consideration and reasonably equivalent value under all applicable law, and such receipt and application shall not constitute a fraudulent conveyance or fraudulent transfer and shall not otherwise be subject to challenge, cause of action, or defense, including impairment, set-off, right of recoupment, avoidance, attachments, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or

otherwise), attack, offset, contest, defense, counterclaims, cross-claims or "claim" (as defined in the Bankruptcy Code) under the Bankruptcy Code or applicable nonbankruptcy law.

34.    **Binding Effect.** Notwithstanding any Bankruptcy Rule (including Bankruptcy Rules 3020(e) and 6004), the Local Rules, or rule 62(a) of the Federal Rules of Civil Procedure to the contrary, as of the date hereof, this Order shall be binding upon and inure to the benefit of the Debtors, Reorganized Debtors, all holders of Claims and Interests (whether or not such holders shall receive or retain any property or interest in property under the Plan and irrespective of whether such holders have accepted or are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, or injunctions set forth in the Plan, each Entity acquiring property under the Plan, all non-Debtor parties to Executory Contracts and Unexpired Leases, all other parties in interest in the Chapter 11 Cases, and the respective Related Parties of all of the foregoing. The Debtors and the Reorganized Debtors, as applicable, are authorized to take all such actions as are deemed necessary or appropriate to adjust and update the Claims register consistent with the Plan and this Order (including by directing Kroll Restructuring Administration LLC, their claims, noticing, and solicitation agent in the Chapter 11 Cases).  All Claims shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim has voted on the Plan.

35.    **Conflicts.**  The provisions of the Plan and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each; provided, however, that if there is any inconsistency between any terms and provisions of this Order and any terms and provisions of the Plan that cannot be so reconciled, then solely to the extent of such inconsistency, the

provisions of this Order shall govern, and any provision of this Order shall be deemed a modification of the Plan and shall control and take precedence.

36.    **Reversal; Liens Binding.**  If any or all of the provisions of this Order are hereafter reversed, modified, or vacated by subsequent order of the Court or any other court of competent jurisdiction, such reversal, modification, or vacatur shall not affect the validity or the enforceability of any act, obligations, indebtedness, liability, priority, or Lien incurred or undertaken by the Reorganized Debtors under or in connection with the Plan or this Order prior to the date that the Reorganized Debtors received actual written notice of the effective date of any such reversal, modification, or vacatur.  Notwithstanding any such reversal, modification, or vacatur of this Order, any act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Order, the Plan, and any amendments or modifications thereto.

37.    **Closure of Chapter 11 Cases.** The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with this Court all documents required by Bankruptcy Rule 3022 and any applicable order of this Court to close the Chapter 11 Cases. As of the Effective Date, the Reorganized Debtors may submit separate orders to this Court under certification of counsel closing certain individual Chapter 11 Cases and changing the caption of the Chapter 11 Cases accordingly. Matters concerning Claims shall be heard and adjudicated in a Debtor's Chapter 11 Case that remains open regardless of whether the applicable Claim is against a Debtor in a Chapter 11 Case that is closed. Upon the filing of a motion to close the last Chapter

11 Case remaining open, the Reorganized Debtors shall file a final report with respect to all of the Chapter 11 Cases pursuant to Local Rule 3022-1.

38.    **Waiver of Stay.**  The requirements of Bankruptcy Rules 3020(e), 6004(h) and 6006(d) regarding the stay of this Order or any of its provisions are waived, and this Order shall be effective and enforceable immediately upon its entry.   Notwithstanding the waiver of stay provided in this paragraph, no waiver shall be granted with respect to the time period contained in Bankruptcy Rule 3020(e) with respect to the opt-out releases contained in Article IX.E, and the injunction in Article IX.G (solely to the extent it applies to the releases to the non-Debtor Released Parties), and solely to the extent such opt-out releases and injunction are challenged in the *United States Trustee's Objection to Confirmation of the Second Modified Third Amended Joint Chapter 11 Plan of Reorganization of GOL Linhas Aéreas Inteligentes S.A and Its Affiliated Debtors* [Docket No. 1577].  The Debtors are authorized to consummate the Plan immediately upon entry of this Order.

39.    **Effectiveness; Scope.**  This Order shall constitute, to the greatest extent permissible under applicable law, all authority, approvals and consents, if any, required by the laws, rules or regulations of any state or U.S. or foreign governmental authority or any contract with respect to the implementation or Consummation of the Plan, the Restructuring Transactions, and the Transaction Steps, and any act that may be necessary or appropriate for the implementation or Consummation of the Plan or this Order, and the Transaction Steps.   Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized and directed to accept for filing and/or recording any and all documents and instruments (including a copy of this Order) necessary or appropriate to effectuate, implement, or consummate the transactions contemplated

by the Plan, this Order, and the Transaction Steps, to the maximum extent permitted under all applicable laws.

40.    **No Further Approvals.**   Subject to the terms of the Plan, the Debtors and the Reorganized Debtors, as applicable, are authorized to take all actions necessary or appropriate to effectuate the Plan, including without limitation, the Restructuring Transactions, and each of the Transaction Steps, without the need for any approvals, authorizations or consents except those expressly required by the Plan.   Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, before, or after the Effective Date pursuant to this Order, without further application to, or order of the Court, or further action by the Debtors and/or the Reorganized Debtors and their respective directors, officers, members, or stockholders, and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders.

41.    **Findings of Fact and Conclusions of Law.**   The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to rule 52 of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rules 7052 and 9014.   To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such; to the extent that any of the conclusions of law constitute findings of fact, they are adopted as such.   Any requirement under the Bankruptcy Rules that the conclusions of law are stated separately from the findings of fact is waived.

42.    **Headings.**   The headings contained in this Order are used for the convenience of the parties and shall not alter or affect the meaning of the text of this Order.

Dated: May 21, 2025
      New York, New York

                             **/s/Martin Glenn**
                        THE HONORABLE MARTIN GLENN
                        UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

**Plan**