**Hearing Date and Time:  May 30, 2025 at 3:00 PM (ET)**
**Objection Deadline:  May 30, 2025 at 9:00 AM (ET)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
                                                         :
In re                                                    :        Chapter 11
                                                         :
GOL Linhas Aéreas Inteligentes S.A. *et al.*,[1]         :        Case No. 24-10118 (MG)
                                                         :
                                    Debtors.             :        (Jointly Administered)
                                                         :
-------------------------------------------------------- x

### NOTICE OF HEARING ON (I) THE UNITED STATES TRUSTEE'S REQUEST FOR EXPEDITED DETERMINATION AND (II) THE UNITED STATES TRUSTEE'S EXPEDITED MOTION FOR A STAY OF THE CONFIRMATION ORDER [ECF NO. 1646] PENDING APPEAL PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8007

**PLEASE TAKE NOTICE** that, pursuant to Local Bankruptcy Rules 9006-1 and 9077-1

and paragraph 26 of the *Final Order Implementing Certain Notice and Case Management*

*Procedures* [ECF No. 175] (the "Case Management Order"), a hearing (the "Hearing") will be

held on **May 30, 2025 at 3:00 PM (ET)** before the Honorable Martin Glenn, Chief United States

Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One

Bowling Green, New York, NY 10004 to consider (i) the United States Trustee's request for an

expedited determination of the Stay Motion (as defined below) and (ii) the United States Trustee's

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A).  The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

Expedited Motion for a Stay of the Confirmation Order [ECF No. 1646] Pending Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8007 (the "Stay Motion").

**PLEASE TAKE FURTHER NOTICE** that the Hearing will take place remotely via Zoom for Government.  Parties wishing to appear at the Hearing, whether making a "live" or "listen-only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at

https://www.nysb.uscourts.gov/ecourt-appearances no later than **May 29, 2025 at 4:00 PM (ET)**.

**PLEASE TAKE FURTHER NOTICE** that any objections or responses to the relief requested in the Stay Motion shall: (i) be in writing; (ii) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York, and the Case Management Interim Order; (iii) be filed electronically with this Court on the docket of *In re GOL Linhas Aéreas Inteligentes S.A.*, No. 24-10118 (MG), by registered user of this Court's electronic filing system and in accordance Local Bankruptcy Rule 5005-2 (which is available on this Court's website at http://www.nysb.uscourts.gov); and (iv) be served so as to be actually received by **May 30, 2025 at 9:00 AM (ET)**.

**PLEASE TAKE FURTHER NOTICE** that your rights may be affected.  You should read the Stay Motion carefully and discuss the relief requested with your attorney, if you have one in connection with the chapter 11 cases.  (If you do not have an attorney, you may wish to consult with one.)

**PLEASE TAKE FURTHER NOTICE** that if you do not want the Court to grant the relief requested in the Stay Motion, or if you want the Court to consider your view on the Stay Motion,

then you or your attorney must attend the Hearing. If you or your attorney do not take these steps,

the Court may decide that you do not oppose the relief sought in the Stay Motion and may enter

an order granting the relief requested in the Stay Motion with no further notice or opportunity to

be heard.

**PLEASE TAKE FURTHER NOTICE** that copies of the Stay Motion can be viewed

and/or obtained by: (i) accessing the Court's website at http://www.nysb.uscourts.gov, or (ii) from

the Debtors' proposed claims and noticing agent, Kroll, at https://cases.ra.kroll.com/GOL, or by

calling 844.553.2247 (U.S./Canada) (toll free) or +1.646.777.2315 (International) or by e-mail via

GOLInfo@ra.kroll.com. Note that a PACER password is needed to access documents on the

Court's website.

Dated: New York, New York
      May 29, 2025

                                            Respectfully submitted,

                                            WILLIAM K. HARRINGTON
                                            UNITED STATES TRUSTEE

By:     /s/ *Linda A. Riffkin*
           LINDA A. RIFFKIN
           Assistant United States Trustee, S.D.N.Y.
           Alexander Hamilton Custom House
           One Bowling Green, Room 534
           New York, NY 10004
           (212) 510-0500

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
--------------------------------------------------------  x
                                                          :
In re                                                     :        Chapter 11
                                                          :
GOL Linhas Aéreas Inteligentes S.A. et al.,[2]            :        Case No. 24-10118 (MG)
                                                          :
                                       Debtors.           :        (Jointly Administered)
                                                          :
--------------------------------------------------------  x
```

## THE UNITED STATES TRUSTEE'S EXPEDITED MOTION FOR A STAY OF THE CONFIRMATION ORDER [ECF NO. 1646] PENDING APPEAL PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8007

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
FREDERICK GASTON HALL
Trial Attorney

Department of Justice
Executive Office for
  United States Trustees
441 G Street, N.W., Suite 6150
Washington, DC  20530
(202) 307-1399
Fax:  (202) 307-2397

WILLIAM K. HARRINGTON
United States Trustee for Region 2
LINDA A. RIFFKIN
Assistant United States Trustee
ANNIE WELLS
RACHAEL E. SIEGEL
ANDREW D. VELEZ-RIVERA
Trial Attorneys

Department of Justice
Office of the United States Trustee
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004
(212) 510-0500
Fax:  (212) 668-2361

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A).  The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT .................................................................................... 1

BACKGROUND ........................................................................................................... 2

ARGUMENT ................................................................................................................. 9

   A.   The United States Trustee Satisfies The Likelihood Of Success Factor. ........................... 9

      1.   Sufficiently Serious Questions On The Merits. ............................................. 10

      2.   The United States Trustee Is Likely To Succeed On Appeal. ...................................... 12

   B.   The United States Trustee Faces An Imminent Risk Of Irreparable Harm Without A Stay. .......................................................................................................... 16

   C.   The Balance Of Hardships Weighs In Favor Of A Stay. .................................................. 18

BASIS FOR EMERGENCY RELIEF ......................................................................... 19

CONCLUSION ............................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*,
    361 B.R. 337 (S.D.N.Y. 2007) ...............................................................................17

*Burns v. Scott*,
    635 F. Supp. 3d 258 (S.D.N.Y. 2022) ...................................................................15

*Country Squire Assocs. of Carle Place, L.P. v. Rochester Cmty. Sav. Bank (In re Country Squire Assocs. of Carle Place, L.P.)*,
    203 B.R. 182 (B.A.P. 2d Cir. 1996) .......................................................................17

*Excess Ins. Co. v. Factory Mut. Ins. Co.*,
    769 N.Y.S.2d 487 (App. Div., 1st Dep't 2003) .....................................................14

*FishDish, LLP v. VeroBlue Farms USA, Inc. (In re VeroBlue Farms USA, Inc.)*,
    6 F.4th 880 (8th Cir. 2021) ....................................................................................16

*Harrington v. Purdue Pharma L.P.*,
    603 U.S. 204 (2024) ..................................................................................10, 12, 13, 16

*International Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*,
    363 F.3d 137 (2d Cir. 2004) ...................................................................................14

*Lutin v. U.S. Bankr. Court (In re Advanced Mining Sys., Inc.)*,
    173 B.R. 467 (S.D.N.Y. 1994) ...............................................................................17

*Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. Official Comm. of Unsecured Creditors of LTV Steel Co. (In re Chateaugay Corp.)*,
    988 F.2d 322 (2d Cir. 1993) ...................................................................................16

*Patterson v. Mahwah Bergen Retail Grp., Inc.*,
    636 B.R. 641 (E.D. Va. 2022) ................................................................................17

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................................................14

*In re Purdue Pharma L.P.*,
    634 B.R. 240 (S.D.N.Y. 2021) .................................................................................9

*In re Robertshaw US Holding Corp.*,
    662 B.R. 300 (Bankr. S.D. Tex. 2024) ..................................................................11

*Roell v. Withrow*,
  538 U.S. 580 (2003) ........................................................................................13, 15, 16

*In re Smallhold Inc.*,
  665 B.R. 704 (Bankr. D. Del. 2024) ................................................................................12

*In re Spirit Airlines, Inc.*,
  No. 24-11988 (SHL), 2025 WL 737068 (Bankr. S.D.N.Y. Mar. 7, 2025) ......................11, 12

*In re St. Johnsbury Trucking Co.*,
  185 B.R. 687 (S.D.N.Y. 1995) ......................................................................................17

*In re SunEdison, Inc.*,
  576 B.R. 453 (Bankr. S.D.N.Y. 2017) ........................................................................11, 12

*In re Tonawanda Coke Corp.*,
  662 B.R. 220 (Bankr. W.D.N.Y. 2024) .................................................................11, 12, 14

*Trump v. International Refugee Assistance Project*,
  582 U.S. 571 (2017) ....................................................................................................18

*U.S. EEOC v. AAM Holding Corp.*,
  No. 24 Misc. 103 (LGS), 2024 WL 3710151 (S.D.N.Y. Aug. 7, 2024) ...........................9, 10

*United States v. Energy Res. Co.*,
  495 U.S. 545 (1990) ....................................................................................................14

*In re Voyager Digital Holdings, Inc.*,
  No. 23 Civ. 02171 (JHR), 2023 WL 2731737 (S.D.N.Y. Apr. 1, 2023) .............................16

*Wellness Int'l Network, Ltd. v. Sharif*,
  575 U.S. 665 (2015) ........................................................................................13, 15, 16

**Statutes**

11 U.S.C. § 1123(b) ..........................................................................................................14

11 U.S.C. § 1123(b)(6) ................................................................................................12, 13

11 U.S.C. § 1126(a) ..........................................................................................................15

**Other Authorities**

Fed. R. Bankr. P. 1015(b) ....................................................................................................2

Fed. R. Bankr. P. 3020(e) ....................................................................................................9

Fed. R. Bankr. P. 8007(a)(1) ............................................................................................1, 9

U.S. Const. art. I...................................................................................................................14, 15

U.S. Const. art. III................................................................................................................13, 14

TO:    **THE HONORABLE MARTIN GLENN,**
       **CHIEF UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), hereby respectfully moves pursuant to Federal Rule of Bankruptcy Procedure 8007(a)(1) for a stay in part of the Court's May 21, 2025, Order (I) Confirming Fifth Modified Third Amended Joint Chapter 11 Plan of Reorganization of GOL Linhas Aéreas Inteligentes S.A. and Its Affiliated Debtors and (II) Granting Related Relief (ECF No. 1646) (the "Confirmation Order") pending resolution of the United States Trustee's appeal (the "Stay Motion"). The United States Trustee seeks a stay of the third-party release (Article IX.E) and the related injunction (Article IX.G) provisions of the Debtors' confirmed plan pending appeal. In support thereof, the United States Trustee respectfully states:

## PRELIMINARY STATEMENT

The question of consent to non-debtor releases has divided courts around the country, as this Court has recognized. This question has generated several different answers, not only to what constitutes consent, but also to what law applies to answer that question. The question also is recurring, with "opt-out" releases a frequent feature of chapter 11 plans in this District and elsewhere. And the question is important, impacting thousands of people who are bound by the non-debtor release in these cases alone. These facts cry out for appellate review.

The United States Trustee, accordingly, has noticed an appeal of the Confirmation Order. But the threat of equitable mootness looms over this appeal. Although the plan's non-debtor release and implementing injunction are stayed through June 4, the Debtors have indicated they anticipate consummating the plan quickly.

A stay of the non-debtor release and injunction pending appeal will protect the United States Trustee's ability to obtain appellate review and is in the public interest. And the limited

1

stay he seeks will enable the Debtors to move forward with the financial transactions that are the true purpose of the confirmed plan. The balance of the equities, therefore, favors a stay, and this Court should grant one.

## **BACKGROUND**

1.      On January 25, 2024, each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.      The cases are jointly administered for procedural purposes pursuant to Bankruptcy Rule 1015(b) and this Court's *Order (i) Directing Joint Administration of Chapter 11 Cases and (ii) Granting Related Relief* [ECF No. 58].

3.      On December 9, 2024, the Debtors filed the (i) *Chapter 11 Plan / Joint Chapter 11 Plan of Reorganization of GOL Linhas Aéreas Inteligentes S.A. and its Affiliated Debtors* [ECF No. 1141]; (ii) *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of GOL Linhas Aéreas Inteligentes S.A. and its Affiliated Debtors* [ECF No. 1142] (as may be amended from time to time, the "Disclosure Statement");[3] and (iii) *Motion for Entry of an Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures; (III) Approving Forms of Ballots; (IV) Establishing Procedures for Allowing Certain Claims for Voting Purposes; (V) Scheduling a Confirmation Hearing; and (VI) Establishing Notice and Objection Procedures* [ECF No. 1143] (the "DS Motion").

4.      On December 26, 2024, this Court ordered briefing on the proposed release of non-debtors (the "Third-Party Release") and the exculpation clause in the proposed plan. *See* ECF No. 1182.

---

[3] The Debtors have filed multiple versions of the Disclosure Statement, which are summarized in the *Notice of Filing of Solicitation Version of the Disclosure Statement for Second Modified Third Amended Joint Chapter 11 Plan of GOL Linhas Aéreas Inteligentes S.A. and its Affiliated Debtors* [ECF No. 1390].

5.      The United States Trustee filed a response brief and a surreply brief on those issues. *See* ECF Nos. 1253 & 1324.

6.      The United States Trustee also objected to approval of the Disclosure Statement. *See* ECF No. 1308.

7.      On March 17, 2025, this Court held a hearing to consider the relief in the DS Motion (the "DS Hearing") and overruled the United States Trustee's objections.   Following the DS Hearing, the Court entered the *Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures; (III) Approving Forms of Ballots; (IV) Establishing Procedures for Allowing Certain Claims for Voting Purposes; (V) Scheduling a Confirmation Hearing; and (VI) Establishing Notice and Objection Procedures* [ECF No. 1388].

8.      The United States Trustee subsequently objected to confirmation of the proposed plan.  *See* ECF No. 1577.

9.      On May 20, 2025, this Court held a hearing to consider confirmation of the proposed plan (the "Confirmation Hearing").  At the Confirmation Hearing, the Court indicated that it would overrule the United States Trustee's objection and confirm the plan.

10.     Following the Confirmation Hearing, on May 21, 2025, the Court entered the Confirmation Order.

11.     Relevant to this Stay Motion, the Confirmation Order approves the Third-Party Release and a related injunction provision.

12.     The "Released Parties" are:

each of the following, in each case in its capacity as such: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Committee and its members; (iv) the other Consenting Stakeholders; (v) the DIP Noteholders, (vi) the Agents/Trustees; (vii) the Ad Hoc Group of Abra Noteholders and Elliott; and (viii) with respect to each of the foregoing Entities and Persons set forth in clause (i) through (vii), each of such Entities' and Persons' Affiliates and its and their respective Related Parties.

3

ECF No. 1646-1 at 25, art. I.A.259.

13.    The "Releasing Parties" are:

> each of the following, in each case in its capacity as such: (i) each of the Released
> Parties; (ii) all holders of Claims that vote to accept the Plan and do not
> affirmatively opt out of granting the releases in Article IX.E by checking the box
> on the applicable ballot; (iii) all holders of Claims or Interests that are Unimpaired
> under the Plan and do not affirmatively opt out of granting the releases in Article
> IX.E by checking the box on the applicable notice; (iv) all holders of Claims in
> Classes that are entitled to vote under the Plan but that (a) vote to reject the Plan or
> do not vote either to accept or reject the Plan and (b) do not affirmatively opt out
> of granting the releases in Article IX.E by checking the box on the applicable ballot;
> and (v) with respect to each of the foregoing Entities and Persons set forth in clauses
> (ii) through (iv), all of such Entities' and Persons' respective Related Parties.  For
> the avoidance of doubt, holders of Claims or Interests in Classes that are deemed to
> reject the Plan and therefore are not entitled to vote under the Plan are not Releasing
> Parties in their capacities as holders of such Claims or Interests.

ECF No. 1646-1 at 25, art. I.A.260.

14.    The definition of "Related Parties," which appears in the definitions of both

"Released Parties" and "Releasing Parties," is:

> with respect to any Entity or Person, in each case in its capacity as such with respect
> to such Entity or Person, such Entity's or Person's current and former, in each case
> as applicable, directors, managers, officers, investment committee members,
> special committee members, equity holders (regardless of whether such interests
> are held directly or indirectly), affiliated investment funds or investment vehicles,
> managed accounts or funds, predecessors, successors, assigns, subsidiaries,
> Affiliates, partners, limited partners, general partners, principals, members,
> management companies, fund advisors or managers, employees, agents, trustees,
> advisory board members, financial advisors, attorneys, accountants, investment
> bankers, consultants, and other professionals and advisors and any such Person's
> or Entity's respective heirs, executors, estates, and nominees.

ECF No. 1646-1 at 25, art. I.A.258.

15.    And the claims released are:

> any and all claims . . . based on or relating to, or in any manner arising from, in
> whole or in part, the Debtors (including the management, ownership, or operation
> thereof), the Chapter 11 Cases, the DIP Facility, the issuance, distribution,
> purchase, sale, or rescission of the purchase or sale of any security or other debt
> instrument of the Debtors or Reorganized Debtors, the assumption, rejection, or
> amendment of any Executory Contract or Unexpired Lease, the subject matter of,

4

or the transactions or events giving rise to, any Claim or Interest dealt with in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, and the negotiation, formulation, preparation, entry into, consummation, or dissemination of (i) the DIP Facility Documents, (ii) the Plan Support Agreement, (iii) the Disclosure Statement, (iv) the Plan (including, for the avoidance of doubt, the Plan Supplement), (v) the Transaction Steps, (vi) the Restructuring Transactions, (vii) the New Debt Documents, (viii) the Incremental New Money Equity Documents, (ix) the New Equity Documents, or (x) any related agreements, instruments, or other documents, in each case, in connection with or relating to any act or omission, transaction, event, or other occurrence taking place on or before the Effective Date, other than claims unknown to such Releasing Party as of the Effective Date arising out of or relating to any act or omission of a Released Party that is determined by a Final Order of a court of competent jurisdiction to have constituted willful misconduct, intentional fraud, or gross negligence.

ECF No. 1646-1 at 87, art. IX.E (bold removed).

16.    The confirmed plan also contains an injunction (the "Injunction"):

UPON ENTRY OF THE CONFIRMATION ORDER, ALL HOLDERS OF CLAIMS AND INTERESTS AND OTHER PARTIES IN INTEREST, ALONG WITH THEIR RESPECTIVE PRESENT OR FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, PRINCIPALS, AFFILIATES, AND RELATED PARTIES SHALL BE ENJOINED FROM TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN IN RELATION TO ANY CLAIM EXTINGUISHED, DISCHARGED, OR RELEASED PURSUANT TO THE PLAN.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD, OR MAY HOLD CLAIMS AGAINST OR INTERESTS IN THE DEBTORS AND OTHER PARTIES IN INTEREST, ALONG WITH THEIR RESPECTIVE PRESENT OR FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, PRINCIPALS, AFFILIATES, AND RELATED PARTIES ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE DEBTORS, THE REORGANIZED DEBTORS, THE RELEASED PARTIES, OR THE EXCULPATED PARTIES . . . IN EACH CASE TO THE EXTENT THE CLAIMS OR INTERESTS ARE EXTINGUISHED, DISCHARGED, RELEASED, SETTLED, COMPROMISED, OR EXCULPATED PURSUANT TO THE PLAN: (I) COMMENCING OR CONTINUING ANY ACTION OR PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS OR ANY OTHER CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN; (II) ENFORCING, ATTACHING, COLLECTING,

OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR OTHER ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OF SUCH ENTITIES OR THEIR ESTATES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (IV) ASSERTING THE RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS NOTWITHSTANDING AN INDICATION IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY SUCH RIGHT.

ECF No. 1646-1 at 89, art. IX.G (all-caps in original, bold removed).

17.    Seven classes of non-insider creditors were unimpaired and not entitled to vote: Class 1, Priority Non-Tax Claims; Class 2, Other Secured Claims; Class 9, Non-U.S. General Unsecured Claims; Class 10(h), Smiles Fidelidade General Unsecured Claims; Class 10(i), Smiles Viagens General Unsecured Claims; Class 10(j), Smiles Argentina General Unsecured Claims; and Class 10(k), Smiles Viajes General Unsecured Claims.  ECF No. 1646-1 at 34-35, art. III.A.

18.    The plan deems all members of these non-voting classes to have consented to the Third-Party release unless they checked a box on a notice and returned it to Kroll Restructuring Administration LLC ("Kroll").  ECF No. 1646-1 at 25, art. I.A.260.

19.    The Declaration of Alex Orchowski of Kroll [ECF No. 1603] disclosed the following statistics regarding the unimpaired and non-voting Classes 1, 2, and 9:

| Class | Notices with Opt-Out Sent | Notices Returned as Undeliverable | Notices Returned with Opt-Out Checked | Notices Returned without Opt-Out Checked |
|---|---|---|---|---|
| Classes 1, 2, & 9 | 2,603 | 69 | 11 | 3 |

20.    Although Classes 10(h), 10(i), 10(j), and 10(k) are treated as unimpaired and non-voting in the plan as confirmed, they were impaired and entitled to vote in the plan as solicited, so they were sent ballots instead of "opt-out" notices.  The Orchowski Declaration provided the following detail on the results of their ballots:

| Class | Ballots Sent by Kroll | Ballots Returned to Kroll as Undeliverable | Ballots Received |
|---|---|---|---|
| Class 10(h) | 8 | 0 | 0 |
| Class 10(i) | 1 | 0 | 0 |
| Class 10(j) | 1 | 0 | 0 |
| Class 10(k) | 1 | 0 | 0 |

21.    Twelve classes of non-insider creditors were impaired and entitled to vote:  Class 3, 2028 Notes Claims; Class 4, 2026 Senior Secured Notes Claims; Class 5, Glide Notes Claims; Class 6, Debenture Banks Claims; Class 7, AerCap secured Note Claims; Class 8, Safra Claims; Class 10(a), GLAI General Unsecured Claims; Class 10(b), GLA General Unsecured Claims; Class 10(c), GFL General Unsecured Claims; Class 10(d), GFC General Unsecured Claims; Class 10(f), GAC General Unsecured Claims; and Class 11, General Unsecured Convenience Class Claims.  ECF No. 1646-1 at 34-35, art. III.A.

22.    These creditors are deemed to consent to the Third-Party Release unless they checked a box on a ballot and returned it to Kroll.  ECF No. 1646-1 at 25, art. I.A.260.

23.    The Orchowski Declaration disclosed the following statistics regarding these non-insider creditor classes:

| Class | Ballots Sent by Kroll | Ballots Returned to Kroll as Undeliverable | Ballots Received | Ballots Voting to Accept | Ballots Voting to Reject | Ballots Excluded | Ballots with Opt-Out Checked |
|---|---|---|---|---|---|---|---|
| Class 3 | 16 | 0 | 15 | 1 | 0 | 0 | 0 |
| Class 4 | 29 | 9 | 28 | 50 | 0 | 1 | 4 |
| Class 5 | 26 | 0 | 9 | 7 | 0 | 1 | 8 |
| Class 6 | 6 | 0 | 6 | 3 | 0 | 0 | 6 |
| Class 7 | 1 | 0 | 1 | 1 | 0 | 0 | 1 |
| Class 8 | 5 | 1 | 4 | 1 | 0 | 0 | 4 |
| Class 10 Master Ballot | 66 | 11 | 15 | N/A | N/A | N/A | 153 |
| Class 10(a) | 92 | 6 | 59 | 286 | 53 | 59 | 47 |
| Class 10(b) | 183 | 8 | 109 | 309 | 53 | 63 | 93 |
| Class 10(c) | 3 | 0 | 1 | 220 | 38 | 28 | 0 |
| Class 10(d) | 8 | 0 | 0 | 37 | 12 | 8 | 0 |
| Class 10(f) | 4 | 0 | 3 | 1 | 0 | 0 | 3 |
| Class 11 | 238 | 28 | 4 | 0 | 1 | 3 | 4 |

24.    According to the Orchowski Declaration, because of issues with ballots sent to and received from nominees and beneficial holders and with single holders voting multiple times, the numbers in the table frequently are inconsistent.

8

25.    Although the Court waived the automatic 14-day stay of the Confirmation Order provided by Bankruptcy Rule 3020(e) for most of the Confirmation Order, it did not waive the stay for the Third-Party Release and the related Injunction.  ECF No. 1646 at 24 ¶ 38.

26.    On May 22, 2025, this Court issued a 57-page opinion explaining its decision to confirm the plan, including the Third-Party Release and the related Injunction.  *See Memorandum Opinion Confirming Debtors' Chapter 11 Plan and Overruling Objections* [ECF No. 1658].

27.    On May 23, 2025, the United States Trustee filed a notice of appeal of the Confirmation Order and interlocutory orders that merged with the Confirmation Order.  *See* ECF No. 1663.  On May 27, 2025, he filed a statement of issues to be raised on appeal and a designation of items to include in the record.  *See* ECF No. 1673.

## **ARGUMENT**

This Court must consider four factors in deciding whether to issue a stay pending appeal under Rule 8007(a): (1) whether the movant is likely to succeed on the merits on appeal; (2) whether the movant will suffer irreparable injury if the stay is denied; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  *In re Purdue Pharma L.P.*, 634 B.R. 240, 246-47 (S.D.N.Y. 2021).  A likelihood of success on the merits may be satisfied where there are "sufficiently serious questions going to the merits to make them a fair ground for litigation" if the "balance of hardships tips decidedly in" the movant's favor.  *U.S. EEOC v. AAM Holding Corp.*, No. 24 Misc. 103 (LGS), 2024 WL 3710151, at *2 (S.D.N.Y. Aug. 7, 2024) (alteration omitted).  And "[w]here the government is a party, the injury and public interest factors merge."  *Purdue*, 634 B.R. at 247.

The balance of equities favors granting a stay of the Third-Party Release and the related Injunction.

### A.    **The United States Trustee Satisfies The Likelihood Of Success Factor.**

9

The Supreme Court held in *Purdue* that the Bankruptcy Code does not authorize imposing nonconsensual releases of claims belonging to non-debtors against other non-debtors. *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 227 (2024).

For the reasons explained below and in the disclosure statement and confirmation briefing, the United States Trustee is likely to succeed on the merits. At the very least, there are sufficiently serious questions going to the merits to make them a fair ground for litigation. *See AAM Holding Corp.*, 2024 WL 3710151 at *2.

The question of "consent" to a non-debtor or third-party release is one that has divided courts around the country and within this District and this Circuit. Although this Court and others (in this District and elsewhere) have approved "opt-out" procedures to determine consent, the Western District of New York has required full "opt-in" procedures. And recent published precedent from the District of Delaware permits "opt-outs" only for creditors who vote but not for creditors who remain silent. The current cases also differ as to the source of legal authority to impose a release; some look to non-bankruptcy substantive law, and others claim authority from "federal" law.

### 1.    Sufficiently Serious Questions On The Merits.

In ordering briefing on the legality of the "opt-out" Third-Party Release here, this Court stated: "caselaw has been split on permissible methods to establish consent to the granting of third-party releases." ECF No. 1158 at 1. It therefore ordered the parties to address "[s]everal important issues," including the governing substantive law and the method of obtaining consent from affected creditors. *Id.* at 2. And the Court decided that these issues were so significant that it addressed them in a 57-page opinion explaining why it "disagrees with decisions that have determined that state law controls." ECF No. 1658 at 45 (capitalization removed). Those

observations demonstrate that there are sufficiently serious questions on the merits to make fair grounds for litigation on appeal.

This Court, Judge Lane, and others have held that a non-debtor release is consensual if the parties bound by the release received notice and an opportunity to "opt out" of it. *See*, *e.g.*, ECF No. 1658 at 53-55; *In re Spirit Airlines, Inc.*, No. 24-11988 (SHL), 2025 WL 737068, at *3 (Bankr. S.D.N.Y. Mar. 7, 2025); *In re Robertshaw US Holding Corp.*, 662 B.R. 300, 323-24 (Bankr. S.D. Tex. 2024). But that conclusion is not universally accepted, even in this Circuit.

In *In re SunEdison, Inc.*, 576 B.R. 453 (Bankr. S.D.N.Y. 2017), Judge Bernstein concluded that "[a]bsent a duty to speak, silence does not constitute consent," and a creditor's "silence should [not] be deemed their consent to the Release" without demonstrating a "duty to speak." *Id.* at 459-61. Thus, Judge Bernstein found that the "opt-out" releases imposed on non-voting creditors that were proposed in that case were nonconsensual. *Id.* at 461. Judge Lane's *Spirit* opinion asserts that *SunEdison* is distinguishable because that case "did not have an opt-out mechanism at all and so the only way to withhold consent was to vote against the plan." 2025 WL 737068 at *14.[4] But *SunEdison* expressly held that consent may only be inferred from silence—*i.e.*, the failure to "opt out"—when there is a duty to speak.

And in *In re Tonawanda Coke Corp.*, 662 B.R. 220 (Bankr. W.D.N.Y. 2024), the court held that "a failure to opt out will not suffice to bind a creditor. Rather, the creditor must affirmatively sign a writing under which it expressly agrees to discharge the non-debtor parties." *Id.* at 222-23.

---

[4] *Spirit* also relied on the "substantial recovery" to affected creditors "with most being fully paid" to distinguish adverse cases from this Circuit. *Id.* at *14 & 20 n.36. The United States Trustee disagrees that this supports consent. But per the Debtors' filings, the recovery here is not as "substantial" for many unsecured creditors affected by the release. *E.g.*, ECF No. 1595 at 5-6.

11

The court in *In re Smallhold Inc.*, 665 B.R. 704 (Bankr. D. Del. 2024) agreed that "it is no longer appropriate to require creditors to object or else be subject to (or be deemed to 'consent' to) such a third-party release," although it concluded that an "opt-out" process was permissible for creditors who voted. *Id.* at 719, 723-25.

Thus, there are published decisions supporting three different views of when there is "consent" to a non-debtor release: (1) creditors affected by the release must affirmatively express their consent; (2) consent may be inferred from a failure to "opt out" only for those who vote on the plan; and (3) consent may be inferred from a failure to "opt out" by any creditor, regardless of whether the creditor votes or is entitled to vote.

Nor do the decisions agree on the governing substantive law. This Court and Judge Lane concluded that "federal law controls." ECF No. 1658 at 35 (capitalization removed); *Spirit*, 2025 WL 737068 at *18 ("a matter of federal bankruptcy law"). But *Tonawanda* and *SunEdison* applied state law as the governing substantive law. 662 B.R. at 222-23 (applying New York statutory law and judicial precedents); 576 B.R. at 458-59 (applying New York case law).

Given the range of conclusions federal judges have reached, there are sufficiently serious questions to make the "opt-out" Third-Party Release here a fair ground for litigation.

**2.    The United States Trustee Is Likely To Succeed On Appeal.**

Not only are there serious merits questions at play, but the United States Trustee also is likely to succeed on his appeal.

This Court ruled that "consensual releases *can*, though need not necessarily, be parts of plans—they can validly comprise parts of plans pursuant to section 1123(b)(6) of the [Bankruptcy] Code, even after *Purdue*." ECF No. 1658 at 35. It also held that "[t]he right which creditors are giving up by consensually releasing claims against third parties *in a bankruptcy court* is the right to have their claims heard by an Article III court, which, when they submit to releases, the creditors

12

are waiving." *Id.* at 43-44.  Because the Court concluded the Third-Party Release is the equivalent of "a creditor agreeing to have a non-core claim heard by a bankruptcy court in an adversary proceeding," it applied "[t]he standard for consent to jurisdiction [] drawn from *Wellness International*" *Network, Ltd. v. Sharif*, 575 U.S. 665 (2015) and *Roell v. Withrow*, 538 U.S. 580 (2003).  *Id.* at 49-50.  It determined, therefore, that "[c]onsent . . . can be inferred from inaction *if* there has been constitutionally adequate service of process," which the Court found occurred here because of "[t]he fact that in this case a significant number of creditors both voted and chose to opt out of releases here."  *Id.* at 53-54.  The Court did not hold that, if "federal law" did not apply, the Third-Party Release was consensual.

The United States Trustee has a likelihood of success on appeal for the following reasons.

*First*, section 1123(b)(6) does not authorize replacing state law governing agreements between non-debtors with judge-made federal law.  Although section 1123(b)(6) allows plans to include "any other appropriate provision not inconsistent with [the Bankruptcy Code]," imposing third-party releases that are invalid under nonbankruptcy law is not "appropriate."  The Supreme Court in *Purdue* held section 1123(b)(6) is not a freestanding source of authority to impose third-party releases.  603 U.S. at 218-19 (2024) ("Congress could have said in paragraph (6) that 'everything not expressly prohibited is permitted.'  But it didn't.").  The Court's reading of section 1123(b)(6) as displacing state contract law for nonbankruptcy claims would endow bankruptcy courts with a "radically different power" than adjusting a debtor's "rights and responsibilities, and its relationship with creditors."  *Id*. at 218.  Nor can support for this radically different power be found in *United States v. Energy Resources Co.*, which was expressly "consistent with the traditional understanding" of bankruptcy courts' "authority to modify *creditor-debtor relationships*." 495 U.S. 545, 549 (1990) (emphasis added).  Section 1123(b) may permit a chapter

13

11 plan to recognize the existence of a contract between non-debtors, but the contact is created through substantive nonbankruptcy law.  *See Tonawanda*, 662 B.R. at 222 ("[A]ny proposal for a non-debtor release is an ancillary offer that becomes a contract upon acceptance and consent.  Not authorized by any provision of the Bankruptcy Code, any such consensual agreement would be governed instead by state law.").

*Second*, a creditor deemed to release claims against other non-debtors does not give up only "the right to have [a non-debtor's] claims heard by an Article III court."  ECF No. 1658 at 43-44.  Those claims are not being heard by any court at all.  Rather, the Third-Party Release extinguishes a property right—a substantive claim—whether or not that claim has been asserted in litigation.  Indeed, here, there are no identified cases subject to the Third-Party Release over which any court (state, Article I, or Article III) presides.  Thus, the only thing that the Third-Party Release does here is extinguish a substantive right under non-bankruptcy law.[5]

---

[5] This Court expressed concern about multiple jurisdictions' laws potentially applying to releases for creditors in different jurisdictions.  *See* ECF No. 1658 at 45; ECF No. 1425 at 148:24 – 149:3.  Unless a party identifies a meaningful difference in the law, courts usually apply the law of the forum.  *See International Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) ("In the absence of substantive difference, however, a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it."); *Excess Ins. Co. v. Factory Mut. Ins. Co.*, 769 N.Y.S.2d 487, 489 (App. Div., 1st Dep't 2003) ("If no conflict exists, then the court should apply the law of the forum state in which the action is being heard.").

If there were a conflict of laws, however, the Supreme Court has held that difficulty in making a choice of law based on the number of parties is not an excuse to fail to apply the correct state's law.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985) (holding that "constitutional limitations on choice of law" are "not altered by the fact that it may be more difficult or more burdensome to comply with the constitutional imitations because of the large number of transactions which the State proposes to adjudicate and which have little connection with the forum").  Indeed, bankruptcy courts routinely adjudicate disputes involving the application of multiple jurisdictions' laws, such as when adjudicating disputed proofs of claim for national and transnational corporations.

*Third*, a release is not at all like a default judgment and being mailed an "opt-out" form is not equivalent to service of process.  In a default judgment, a plaintiff must establish that the defendant was served with constitutionally sufficient process, that the court has both subject-matter jurisdiction and personal jurisdiction over the defendant, that the complaint adequately alleges each element of the cause or causes of action, and that the plaintiff in fact suffered the claimed damages.  *See*, *e.g.*, *Burns v. Scott*, 635 F. Supp. 3d 258, 273-85 (S.D.N.Y. 2022).  Here, no creditor subject to the release was served with anything like a complaint and process; they received a ballot or a notice that did not describe any specific claim that would be deemed released.  And unlike a defendant who received constitutionally sufficient process and over whom the court possesses personal jurisdiction, there is no legal obligation for any creditor to participate in a bankruptcy case.  *See*, *e.g.*, 11 U.S.C. § 1126(a) (creditors "*may* accept or reject a plan") (emphasis added).

*Fourth*, because no one has submitted the non-debtor claims being released to this Court for adjudication, the *Wellness* and *Roell* standard for consent to an Article I adjudicator does not apply.  But even if it did, particularly for the creditors who never voted or returned an "opt-out" form, there is insufficient evidence of consent even under *Wellness* and *Roell*.  In *Roell*, the Supreme Court held that "general appearances before the Magistrate Judge, after they had been told of their right to be tried by a district judge, suppl[ied] the consent necessary."  538 U.S. at 591.  The creditors who remained have not "generally appear[ed]" before this Court.  Therefore, they cannot be said to have consented under the *Roell* standard.

In sum, the Third-Party Release is an agreement between non-debtors for which the parties must have a meeting of the minds.  The Third-Party Release extinguishes property rights: litigation

---

Moreover, there would be no such concern if a creditor affirmatively consents to the release, demonstrating its agreement to be bound by a release governed, for example, by New York law.  ECF No. 1646-1 at 29, art. I.D.

claims that were never submitted to this Court for adjudication.  It is not a default judgment against the Releasing Parties.  And even if *Wellness* and *Roell* applied, the silent creditors have engaged in no conduct that would constitute consent under those cases.

Because the Third-Party Release is nonconsensual and prohibited under *Purdue*,[6] the United States Trustee is likely to succeed in his appeal.

**B.     The United States Trustee Faces An Imminent Risk Of Irreparable Harm Without A Stay.**

A stay pending appeal preserves the United States Trustee's right to meaningful appellate review of the Third-Party Releases.  *In re Voyager Digital Holdings, Inc.*, No. 23 Civ. 02171 (JHR), 2023 WL 2731737, at *10 (S.D.N.Y. Apr. 1, 2023).  As noted above, when the government is a party, the injury and public interest factors merge.  *Id.* at *7.

As is common in many appeals of chapter 11 plans, the Debtors here may attempt to argue that the United States Trustee's appeal is equitably moot after they effectuate the plan.  "[A] motion to dismiss an appeal as equitably moot has become 'part of the Plan.'  Proponents of reorganization plans now rush to implement them so they may avail themselves of an equitable mootness defense." *FishDish, LLP v. VeroBlue Farms USA, Inc. (In re VeroBlue Farms USA, Inc.)*, 6 F.4th 880, 889 (8th Cir. 2021) (quoting *In re One2One Commc'ns, LLC*, 805 F.3d 428, 446 (3d Cir. 2015) (Krause, J., concurring) (footnote omitted)).  Under equitable mootness, an appellate court may dismiss an appeal "as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." *Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. Official Comm. of Unsecured Creditors of LTV Steel Co. (In re Chateaugay Corp.)*, 988 F.2d 322, 325 (2d Cir. 1993).

---

[6] The Injunction that implements the nonconsensual Third-Party Release is also unlawful as a result.  *See Purdue*, 603 U.S. at 227.

16

The ability to appeal "is a substantial and important right" because it is "the guarantee of accountability in our judicial system." *ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 342 (S.D.N.Y. 2007). The mooting of an appeal thus is a "'quintessential form of prejudice.'" *Country Squire Assocs. of Carle Place, L.P. v. Rochester Cmty. Sav. Bank (In re Country Squire Assocs. of Carle Place, L.P.)*, 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996) (quoting *Lutin v. U.S. Bankr. Court (In re Advanced Mining Sys., Inc.)*, 173 B.R. 467, 469 (S.D.N.Y. 1994)); *accord Adelphia*, 361 B.R. at 348-49.

Courts have found that the irreparable injury from potential equitable mootness warrants a stay when, as here, the appeal involves important issues or when the loss of the ability to appeal is not the only harm from the appeal being mooted. *See Adelphia*, 361 B.R. at 351-52, 354-58 (finding irreparable harm where equitable mootness threatened denial of review of settlement, incorporated into plan, that eliminated claims without consent); *In re St. Johnsbury Trucking Co.*, 185 B.R. 687, 689-90 & n.1 (S.D.N.Y. 1995) (holding risk of equitable mootness of appeal challenging contested release that would cause the government to lose claims against releasees constituted irreparable harm); *Advanced Mining*, 173 B.R. at 468-69 (granting stay where mooting of appeal would deny appellants any recovery).

The public interest is also served by appellate review of this recurring issue. As this Court recognized, the questions presented by this appeal are significant and recurring ones. *See* ECF No. 1158. That courts in this and other districts have approved "opt-out" releases merely emphasizes the importance of appellate review. *See Patterson v. Mahwah Bergen Retail Grp., Inc.*, 636 B.R. 641, 655 (E.D. Va. 2022) ("The ubiquity of third-party releases in the Richmond Division demands even greater scrutiny of the propriety of such releases.").

17

Accordingly, avoiding equitable mootness issues satisfies the irreparable harm requirement.

### C.    The Balance Of Hardships Weighs In Favor Of A Stay.

Not only does the United States Trustee have a likelihood of success on appeal and a risk of irreparable harm, the balance of the hardships also tips decidedly in favor of a stay.

As noted above, the United States Trustee faces a risk of irreparable harm without a stay. Additionally, without a stay, the Third-Party Release will go into effect, and parties who had their causes of action extinguished will be irreparably harmed if the statute of limitations applicable to their cause of action expires during the pendency of the appeal.  Of the 2,603 creditors in Classes 1, 2, and 9 who could not vote but who would have their claims against non-debtors deemed released unless they returned a notice to Kroll, only 11 "opted out" of the Third-Party Release, compared to the 69 notices that were returned as undeliverable.

In contrast, the Debtors and third parties will not be injured with a stay.  *First*, the United States Trustee is seeking a limited stay of the Confirmation Order:  only the Third-Party Release and the related Injunction implementing it.  "This Court may, in its discretion, tailor a stay so that it operates with respect to only 'some portion of the proceeding.'"  *Trump v. International Refugee Assistance Project*, 582 U.S. 571, 580 (2017).  The Debtors may implement the remainder of the Confirmation Order, including all the financial and governance transactions it contemplates.  Thus, the primary reorganization goals of the Confirmation Order can be achieved.

*Second*, a stay of the Third-Party Release and the related Injunction will not affect the plan. As stated above, the Third-Party Release is an ancillary contract to the plan between non-debtors, and the plan merely acknowledges its existence.  Regardless, a stay of the Third-Party Release does not affect the plan because it leaves the parties in the same position as if all creditors eligible to "opt out" of the Third-Party Release had done so.  There is no provision in the plan that makes

18

its effectiveness contingent on any number of creditors failing to "opt out" of the Third-Party Release.  In other words, if 100% of parties had returned an "opt-out," there would be no non-debtor releases.  Yet, the plan would have still gone forward.  Accordingly, a stay of the Third-Party Release and the related Injunction leaves the parties no worse off than if all eligible creditors had "opted out."

*Third*, the Debtors and other parties have not identified any pending or threatened lawsuits that the Third-Party Release and the related Injunction would prohibit or bar.  Accordingly, staying the Third-Party Release and the related Injunction does not injure any party.  And even assuming there were such a lawsuit, the Released Parties would benefit from and be protected by the Third-Party Release if it were affirmed on appeal.

*Finally*, the Debtors assert that the Third-Party Release is consensual.  If it truly is consensual, there is no risk that a Releasing Party will file a suit subject to the Third-Party Release.  And a stay would not prevent parties from entering release agreements if they wish to do so.

Thus, the harms to the Debtors and third parties are small compared to the irreparable injury to the United States Trustee and the public interest.

## BASIS FOR EMERGENCY RELIEF

The Confirmation Order was entered on May 21, 2025.  The Third-Party Release and the related Injunction are presently stayed through June 4, 2025.  Accordingly, the United States Trustee requests an emergency hearing on this Stay Motion so that this Court can enter a further stay pending appeal, or the United States Trustee can seek such a stay from the district court.

## CONCLUSION

For these reasons, the United States Trustee respectfully asks this Court to grant a stay pending appeal of the Third-Party Release and the related Injunction.  But if the Debtors take the

19

position that this Court cannot stay only the Third-Party Release and the related Injunction, then

the United States Trustee alternatively requests a stay of the Confirmation Order in its entirety.

Finally, even if the Court is inclined to deny a stay pending appeal, the United States

Trustee requests a 28-day administrative stay of the Third-Party Release and the related Injunction

so the United States Trustee may renew his request for a stay in the district court without burdening

the district court with emergency briefing.

Dated: May 28, 2025

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE

By:    /s/ Linda A. Riffkin
LINDA A. RIFFKIN
Assistant United States Trustee, S.D.N.Y.

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
FREDERICK GASTON HALL
Trial Attorney

Department of Justice
Executive Office for
  United States Trustees
441 G Street, N.W., Suite 6150
Washington, DC  20530
(202) 307-1399
Fax:  (202) 307-2397

WILLIAM K. HARRINGTON
United States Trustee for Region 2
LINDA A. RIFFKIN
Assistant United States Trustee
ANNIE WELLS
RACHAEL E. SIEGEL
ANDREW D. VELEZ-RIVERA
Trial Attorneys

Department of Justice
Office of the United States Trustee
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004
(212) 510-0500
Fax:  (212) 668-2361

20

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------  x
                                                            :
In re                                                       :         Chapter 11
                                                            :
GOL Linhas Aéreas Inteligentes S.A. *et al.*,[7]           :         Case No. 24-10118 (MG)
                                                            :
                                      Debtors.              :         (Jointly Administered)
                                                            :
----------------------------------------------------------  x

## ORDER GRANTING THE UNITED STATES TRUSTEE'S EXPEDITED MOTION FOR A STAY OF THE CONFIRMATION ORDER [ECF NO. 1646] PENDING APPEAL PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8007

Upon the United States Trustee's Expedited Motion for a Stay (the "Stay Motion") of the Court's May 21, 2025, Order (I) Confirming Fifth Modified Third Amended Joint Chapter 11 Plan of Reorganization of GOL Linhas Aéreas Inteligentes S.A. and Its Affiliated Debtors and (II) Granting Related Relief (ECF No. 1646) (the "Confirmation Order"), and it appearing that the Court has jurisdiction and authority to consider the Stay Motion pursuant to 28 U.S.C. §§ 1334 and 157, and the Amended Standing Order of Reference, dated January 31, 2012 (Preska, C.J.); and it appearing that the Stay Motion is a core matter pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of the Stay Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that due and adequate notice of the Stay Motion has been given under the circumstances,

---

[7] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GOL Linhas Aéreas Inteligentes S.A. (N/A); GOL Linhas Aéreas S.A. (0124); GTX S.A. (N/A); GAC, Inc. (N/A); Gol Finance (Luxembourg) (N/A); Gol Finance (Cayman) (N/A); Smiles Fidelidade S.A. (N/A); Smiles Viagens e Turismo S.A. (N/A); Smiles Fidelidade Argentina S.A. (N/A); Smiles Viajes y Turismo S.A. (N/A); Capitânia Air Fundo de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); Sorriso Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Crédito Privado Investimento no Exterior (N/A); and Gol Equity Finance (N/A).  The Debtors' service address is Praça Comandante Linneu Gomes, S/N, Portaria 3, Jardim Aeroporto, 04626-020 São Paulo, São Paulo, Federative Republic of Brazil.

and that no other or further notice need be given; and the Court have held a hearing on May 30,

2025, to consider the relief requested in the Stay Motion, [and all objections having been overruled,

withdrawn, or resolved]; and it appearing that the relief requested in the Stay Motion is warranted,

and after due deliberation, and good and sufficient cause appearing therefore, it is hereby

ORDERED THAT:

1.      The Stay Motion is Granted as set forth herein.

2.      The Court's May 21, 2025, Confirmation Order is hereby stayed pending final

resolution of the Appeal of the United States Trustee solely as to Articles IX.E and to Article IX.G

to the extent it implements Article IX.E.

3.      Notwithstanding any rule to the Contrary, this Order shall take effect immediately

upon entry.

4.      The Court shall retain jurisdiction to hear and determine all matters arising from or

related to the implementation, interpretation, and enforcement of this order.


New York, New York
Dated: _____, 2025

                                          _____
                                          The Honorable Martin Glenn
                                          Chief United States Bankruptcy Judge